UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

```
**************************************
LISA SVENSSON,                        *
              Plaintiff,              *
                                      *
                                      *
                                      *   CIVIL ACTION NO.
v.                                    *       ,,4-12711/PBS
                                      *
PUTNAM INVESTMENTS LLC, f/k/a         *
PUTNAM INVESTMENTS, INC. and          *
LAWRENCE J. LASSER                    *
              Defendants              *
**************************************
```

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Lisa Svensson (hereinafter "Plaintiff" or "Svensson"), by her

attorneys John K. Weir Law Offices LLC and Barron & Stadfeldt P.C., alleges

upon information and belief as follows:

## PRELIMINARY STATEMENT

1.  This Complaint concerns the unlawful actions of Defendants Putnam

Investments LLC, f/k/a Putnam Investments Inc. (hereinafter "Putnam") and

Lawrence J. Lasser, former Chief Executive Officer of Putnam (hereinafter

"Lasser"), who directly aided and abetted Putnam in illegally and discriminatorily

treating and ultimately terminating Svensson, after inducing her to accept their

offer of employment by means of false pretenses and fraudulent and deceptive

representations, only to renege on their promises relating to her expected career

path, and on her ability to be treated on an equal footing with males in terms of promotions, compensation and benefits.

2. Svensson alleges that Putnam, under Lasser's direction and control, unjustifiably and improperly created artificial barriers to the career advancement of women, and Svensson in particular; maintained gender-biased attitudes and created a male-dominated culture at Putnam, particularly at the levels of Managing Director and Partner; engaged in a double standard of evaluation for male and female employees; disparately treated males and females in terms of compensation; disparately implemented employment policies which had an adverse impact on female employees; and retaliated against females, and in particular Svensson, because she objected to such discriminatory and disparate treatment, and otherwise objected to the nefarious, illegal or unethical business practices engaged in by Putnam. As a direct result of said gender bias, disparate treatment, wrongful implementation of employment policies with a disparate impact on women, and retaliation, Svensson was willfully, deliberately and maliciously denied promotions, forced to accept demotions, reductions in compensation, and, on September 15, 2003, was abruptly and unceremoniously terminated when she refused to accept any further demotions, and instead insisted on her right to be compensated and otherwise treated fairly relative to her male colleagues at Putnam.

3. At the time of her termination, Svensson advised Putnam of her strong belief that their employment action against her was motivated by gender bias. Following her termination, Svensson advised Putnam of her intent to pursue legal

claims asserting her fundamental right to be treated fairly and on a non-discriminatory basis, and thereupon refused to accede to Putnam's outrageous demands that she cede all her legal rights against Putnam and Lasser by executing a release of all such claims. Upon becoming aware of her views and her intent to pursue legal claims, Putnam's response was to further retaliate against Svensson, by withholding from her deferred compensation and stock rights to which she had become entitled by virtue of longstanding service, outstanding performance of her job responsibilities, and significant contributions to Putnam's financial revenues and profits.

4.      Plaintiff's claims herein are premised upon the litany of unkept promises, the unmitigated gender bias practiced against her, disparate treatment of her compared to her male colleagues, wrongful treatment of her because of her stated objections to certain improper, illegal and unethical business practices, wrongful termination of her employment owing to an ingrained culture of chauvinism, and a long history of wrongful treatment of females, the maintenance of a "glass ceiling", and retaliation against her for asserting, or threatening to assert, her legal rights. Svensson, by way of this Complaint, seeks substantial monetary damages, including back pay, front pay in lieu of reinstatement, other compensatory damages as may be proven at trial, attorney's fees and costs, and a significant award of punitive damages against both Defendants, in an attempt to deter Putnam and Lasser from lining their own pockets at the expense, and to the detriment, of females in Putnam's workforce, including Svensson.

5.  Defendant's conduct constitutes unlawful gender discrimination under federal and state law, violation of equal pay provisions of federal and state law, retaliation, wrongful discharge in violation of public policy, breach of contract, breach of the covenant of good faith and fair dealing, violations of the ERISA statute, fraudulent inducement, misrepresentation, conversion and unjust enrichment.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over the matter pursuant to 28 USC § 1331 in that the Complaint asserts claims under federal law, and the amount in controversy is in excess of $75,000.

7.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

8.  Venue in this District is proper because the unlawful practices of which Plaintiff complains occurred within this District, as required by 28 USC § 1391, and Putnam maintains a place of employment for male and female employees in Boston, Massachusetts, and contracts a substantial part of its business in this District. Venue in this District is proper as to the state law claims pursuant to 28 USC § 1391 (b), because a substantial number of the events or omissions giving rise to these claims occurred within this District.

## PARTIES

9.  Plaintiff Svensson is an individual currently residing at 68 Commonwealth Avenue, Boston, Massachusetts, and will be residing as of January, 2005 at 54 Hull Street, Newton MA 02460

10. Defendant Putnam is a Delaware limited liability company, with its principal place of business located at One Post Office Square, Boston, Massachusetts.

11. Defendant Lasser is an individual who, upon information and belief, resides at 342 Warren Street, Brookline, Norfolk County, Massachusetts.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff Svensson duly and timely filed with the Massachusetts Commission Against Discrimination ("MCAD") a Charge of gender discrimination against Putnam on or about March 1, 2004, was permitted to amend said Charge to name Lasser as an additional Respondent in or about July, 2004, and also filed a separate Charge of Discrimination alleging post-termination retaliation in or about July, 2004. Both Charges were also filed with the Equal Employment Opportunity Commission ("EEOC").

13. By letter dated October 21, 2004 to Plaintiff's Counsel, MCAD issued a letter order (attached as Exhibit A) allowing Svensson to pursue a private civil action for said discrimination and retaliation under Massachusetts state law.

14. By letter dated December 7, 2004, and received by fax on December 8, 2004, EEOC issued a Notice of Right to Sue to Svensson, granting her request to commence a private civil action for said discrimination and retaliation under federal law. A copy of the Notices of Right to Sue are collectively attached hereto as Exhibit B.

15. Plaintiff Svensson has fulfilled all conditions precedent to the institution of this action, and has filed the Complaint within ninety (90) days from receipt of

the Notice of Right to Sue from the EEOC. Plaintiff has duly exhausted all available administrative remedies, and hereby invokes her right to a trial by jury with respect to her claims of gender discrimination and retaliation against Putnam, her claim of "aider and abettor" liability for gender discrimination against Lasser, and for various state law claims asserted herein.

## ALLEGATIONS COMMON TO ALL CLAIMS

16. Plaintiff Svensson is a female, and as such is a member of a protected class under both federal and Massachusetts state discrimination laws.

17. Svensson, in 1994, was gainfully employed as an Analyst at Lord Abbett & Co., in New York, with seven years of experience in the industry and reasonable expectations for significant career advancement, promotions and increased income potential.

18. In or about June, 1994, plaintiff was recruited away from this position through promises made to her by Putnam, principally through Mr. Patrick O' Donnell ("O'Donnell"), that, after an initial period of time during which Plaintiff would be assigned to the Research Department, she would be transferred to the Portfolio Management area, which, at Putnam, constituted a far more promising career path, with significantly higher compensation and a better opportunity to become a Managing Director, and ultimately a Partner, than would have existed for an employee who had remained in the Research Department.

19. By offer letter from O'Donnell dated June 9,1994, plaintiff was promised an annualized salary of $125,000, guaranteed prorated bonuses for 1994 and 1995 of $150,000 each year, and eligibility, after one year of employment, for the

Putnam Profit Sharing Retirement Plan, as well as a broad array of employee benefit programs. Although she was admonished by a male with whom she interviewed that Putnam was not a good place for women to work, she relied upon Putnam's assurances as to her projected career path, and their statements that Putnam was implementing procedures, such as diversity groups for females and persons of color, to assure that gender-based discrimination would not be tolerated and would not be a hindrance to Svensson's advancement.

20. Acting in reliance on the promises respecting career advancement and non-discrimination made by Putnam, Plaintiff, on June 14, 1994, signed the offer letter and commenced a new career at Putnam, and thereby forsook her anticipated compensation and career path at Lord Abbett. Shortly after her arrival, Svensson joined, and began to participate in, a women's advisory committee formed for the purpose of discussing and resolving gender-based issues in the workplace.

21. From July, 1994 until her termination of employment on September 15, 2003, Svensson was employed by Putnam, initially in the Equity Research Department, then from December, 1997 until March, 2002 as a member of the newly-formed International Growth Equity Team. Throughout this entire period, Svensson received excellent annual performance evaluations, repeated praise from supervisors and colleagues, salary increases, bonuses, restricted stock grants and the opportunity to participate in various employee benefit programs, as well as stock plans, stock option plans, and deferred compensation plans.

22. In March, 2002, despite having received positive job performance evaluations from her supervisors, repeated praise from her colleagues, and having achieved financial performance results equal to or better than similarly-positioned male colleagues, Svensson was forcibly required by Putnam to return to the Global Equity Research Department ("GER"). This forced demotion was in breach of the express promises made to her at the outset of her employment by O'Donnell, and in breach of the implied promise to be free from pernicious gender discrimination, at a time when her male colleagues, despite lesser experience and inferior performance records, were allowed to remain in Portfolio Management positions, and thereby continued to enjoy extraordinarily high compensation with maintenance of their expected career paths.

23. Plaintiff's 2002 demotion, albeit abrupt, exacerbated a disturbing long-term trend at Putnam, by which highly-qualified, intelligent and experienced women, such as Svensson, were repeatedly and consistently denied promotional opportunities granted to male colleagues with lesser qualifications, experience and intelligence, particularly promotions to the level of Managing Director and Partner, at which levels women, who were significantly under-represented in all non-clerical and managerial employment at Putnam, were even more egregiously short-changed. This deliberate under-representation of women imposed a so-called "glass ceiling" on their career opportunities, especially married women with children or who had plans to have children, including Svensson. Many women denied such career advancement either left in disgust and sought employment elsewhere, or were demoted or terminated. The women's advisory

8

group withered and died as the direct result of these departures and the perception by those who stayed on that the situation was beyond repair.

24. In particular, Svensson, in 2000, 2001, 2002 and 2003, was denied promotion to the Managing Director level in favor of male employees with equivalent or lesser ability, intelligence and achievement, despite a positive recommendation from her supervisor, thereby preventing Svensson from achieving the significantly-higher compensation, ascendant career path within the organization, and opportunity to become one of the Partners at Putnam, for which becoming a Managing Director was a necessary prerequisite.

25. After Svensson was denied the Managing Director position in 2001, she inquired as to why she had not been selected, and was told that it was a bad year for her to get promoted because she had been out on maternity leave at the end of 2000. She approached Mr. Robert Swift to object to that response. When she then approached Mr. Steve Oristaglio to ask why she had not been promoted, she was instead advised that she lacked "that certain something", and had a "volatile" nature. Plaintiff thus became aware that, as a female, she was being held by Putnam to a higher standard for advancement than were her male colleagues, who, almost without exception, were deemed by management to have had "that certain something", and for whom volatility translated as much-admired, and financially rewarded, aggressiveness.

26. At the time of, and after, plaintiff's involuntary demotion and departure from the International Growth Equity Team in March, 2002, and her return to the Global Equity Research Department (GER), she repeatedly inquired of Putnam

whether there were other positions in Money Management, especially on the Growth Teams, to which she could be transferred, and was told there were none. However, similarly-situated but lesser-performing males were allowed to remain in Portfolio Management positions, including on the Growth Teams, were not demoted, and did not experience significant reductions in compensation, as occurred to Svensson. When she brought this seemingly disparate treatment to the attention of management, she was told there was "no room" on the Growth Team for her. However, "room" had been found for a more junior male employee. When she asked about a position on the Domestic Growth Team, she was advised that Putnam wanted certain skills in that job, and when she responded that she had equal or better skills than the males who were being retained in or transitioned to Domestic Growth, she was told repeatedly by management that she needed to "go back to GER", and was not even offered any interview opportunities for alternative positions.

27. As a direct result of Putnam's willful demotion of Svensson and her forced return to GER, plaintiff suffered a loss of compensation of approximately $1,000,000 in 2002, and was put on a descendent career path, while similarly-situated male colleagues were not so demoted, did not suffer any significant declines in compensation, and were not put on descendent career paths, but instead were permitted to become Managing Directors, and, in some cases, Partners, in far greater numbers than their female colleagues, and particularly compared to married female employees with children.

28. After her forced return to GER, Svensson continued to perform her job capably, while also continuing to seek out other job opportunities within Putnam more in line with her expected and promised career path. Despite these efforts, she was consistently denied these opportunities by Putnam and Lasser.

29. On one occasion in 2002, Svensson was advised of an available position as Portfolio Manager on The Global Core Team, but was told by Mr. Bill Landes ("Landes") that the job was being given to a younger male because they wanted someone "more junior" than Svensson. When Svensson indicated to Landes her belief that it was because "they wanted a guy", Landes admitted that her statement was true.

30. On another occasion in 2002, Svensson was advised by Landes that they wanted to promote a more junior male to become Associate Director of Research, but he was unsure whether this male employee could do the job, and he knew Plaintiff could do it, and thus wanted Svensson to function as the male's "right-hand person", and actually perform all the people management aspects of the job. Although Svensson inquired as to why she was being asked to do most of the work, while a less capable, more junior male was being offered the title, the credit and the enhanced compensation, Putnam failed to come forward with any response.

31. In October, 2002, Mr. Charles "Ed" Haldeman became Putnam's Head of Investments, reporting to Lasser. At a meeting of analysts on October 31, 2002, two days after he assumed his new position, Mr. Haldeman was asked what style of investor he was, and he replied that he would give his own answer, which

11

answer had not been "vetted by the EEOC". He said that, if his son asked him in the privacy of his own home whether, not knowing anything else, a 25 year-old woman or a 53 year-old woman would be more attractive, and with all other things being equal, he would have a bias in favor of the 25 year old, although at his age (53) he was not going to be "running around" with any 25 year-olds. Because this was Svensson's first meeting with Mr. Haldeman, because defendant Lasser had long tolerated, and even promoted, a hostile work environment for women at Putnam, particularly married women with children, and because Haldeman had a reputation for mass firings earned at his previous employer (where he was known as "The Sweeper"), plaintiff Svensson became extremely concerned about this remark, which she felt was highly discriminatory toward women employees, particularly those older than 25, as was Plaintiff.

32.  In January, 2003, after receiving highly-positive performance evaluations in her annual review, Svensson was appointed by Landes as the Associate Director of Research, a month before his own departure. However, although Svensson was fully qualified, experienced and able to assume Landes' own position as Director of Research upon his departure, Putnam and Lasser decided to pass on Svensson, and other qualified females, and instead went outside the company to hire a male, Joshua Brooks, ("Brooks") as Director of Research. Brooks commenced his responsibilities in April 2003, and thereby became Plaintiff Svensson's new boss, with compensation, upon information and belief, far exceeding that of Svensson.

33. Although Svensson continued to search for money management opportunities within Putnam after Haldeman's arrival and Brooks' ascendancy, she never received any available opportunities, while more junior male analysts and Portfolio Managers with lesser performance records, obtained or retained such promotions or transfers, and were allowed to earn or retain compensation approximating, or in some instances far exceeding, $1 million.

34. Upon information and belief, after Brooks' arrival in April, 2003, Lasser, Haldeman and Brooks conspired to further discriminate against females, and especially married females with children, by denying them promotional opportunities, demoting them and, in Svensson's case, by concocting a scheme to force her to quit Putnam.

35. In the late spring and summer of 2003, plaintiff, on a number of occasions raised with Brooks significant concerns which she had about the allocation of brokerage commissions on the "buy" side to reserve shelf space, believing that this business practice was a breach of Putnam's fiduciary duties to its clients, and thereby, quite possibly, illegal or, at the least, unethical and improper, and that it was only a matter of time until the SEC started to investigate. Brooks stated that he would report Plaintiff's concerns to Lasser, but never reported back to Plaintiff on Lasser's reaction.

36. Very shortly thereafter, and in furtherance of the scheme concocted by Lasser, Haldeman and Brooks, Human Resources personnel began conducting interviews of Plaintiff's colleagues in GER to "check up" on her performance, in the stated guise of evaluating her for a higher-level position, but in reality, they

13

were seeking to develop negative information sufficient to justify her termination. No similar interviews were conducted with respect to similarly-situated male employees at Putnam at this time. Upon information and belief, the Human Resources persons performing the interviews were instructed to engage in this discriminatory conduct by Brooks, Haldeman and/or Lasser.

37. Without any discussion of the results, or even the existence, of the aforementioned interviews, and without any other explanation, on August 28, 2003, Svensson was informed by Brooks that she would be summarily removed from her position as Associate Director of Research, and that she was being given three options: 1) Continue employment as an analyst, a significant demotion with no long term career opportunities, and with the explicit statement that she would not be able to make any more money or be eligible for future promotion; or 2) Accept a severance package of 18 weeks of salary, half of her 2002 bonus, and her accumulated deferred compensation, with no bonus for 2003, while providing for a release of all legal claims she might assert against Putnam; or 3) continue employment at Putnam for a limited period of time in the lesser capacity, during which time she would be expected to search out alternative employment, with no severance package and a "voluntary" resignation at the end of the brief period of continued employment.

38. On September 12, 2003, Svensson met with Brooks in his office, and advised Brooks that none of the three proposed options for continued employment were acceptable to her, that she would instead need some type of written assurance that her career at Putnam could be put back "on track", and that her

future promotions and compensation would be based on her contributions, and not impacted by her gender. Brooks stated that he would see what he could do.

39. On September 15, 2003, Plaintiff Svensson met with Brooks and Ms. Mary McNamee ("McNamee") of Human Resources. Brooks stated that Svensson had made demands that Putnam could not meet, and that therefore Putnam had unilaterally determined that Svensson had elected the third option. Svensson objected that she had not chosen this option and instead was being fired, and stated that she wanted a document to this effect. McNamee thereupon presented to and reviewed with Svensson a letter outlining a severance package, and incorporating a release of all legal claims against Putnam. She also presented a separate document which stated that there would be no problem with the proceeds from the stock sale Svensson had recently submitted, and that the final 750 shares would vest on schedule, and that Svensson would also get stock options, but that the stock needed to be held for at least 6 months before she could sell it.

40. Approximately 15 minutes after the meeting ended, McNamee presented Svensson with a revised document, this time indicating that Putnam was indeed terminating Svensson's employment. After her termination, Plaintiff refused to accept the written severance agreement because it provided for a complete release of all her legal claims, and offered her paltry compensation as consideration for same, particularly given Putnam's promise relating to the stock and stock options as well as the deferred compensation to which she had already become legally entitled.

15

41. Her gender, female, and her status as a married female with children, were substantial motivating factors in Putnam's overall treatment of Svensson, in their unwarranted denials of promotions to her, in their unwarranted reductions in her compensation, in their refusals to compensate her in accordance with the compensation packages received by her male colleagues, in their inexplicable and unjustifiable demotions of her, in their refusals to allow her even to interview for positions outside of GER, and in their decision to mandate her invidious and unlawful termination.

42. At all times relevant herein, Putnam consistently treated women less favorably than men, especially married women with children or with plans to have children, particularly with respect to those women who sought promotion to, or who wished to remain at, the Managing Director level or above. After the arrivals of Haldeman and Brooks, and continuing after Svensson's termination, the rate of non-promotions, demotions and forced departures of women accelerated.

43. Similarly, upon information and belief, of the approximately fifty Partners at Putnam between 1999 and 2003, only six were women, with no more than three at any one time. The disparity in the number of males versus females in the highly secretive Partnership occurred as a direct result of the failure and refusal by Putnam and Lasser to promote Svensson and other qualified female employees to the position of Managing Director, and the conscious maintenance of a "glass ceiling" or, alternatively, the conscious maintenance of facially neutral

employment policies which had, and continue to have, a disparate impact upon women at Putnam.

44. Defendant Lasser participated in, and helped to sustain, a corporate culture at Putnam that fostered gender discrimination. Lasser aided and abetted Putnam directly in the gender discrimination which was perpetrated against Svensson by his participation in the decision-making process which led to denial of promotions, denial of equivalent pay, demotions and, ultimately, Svensson's termination. Upon information belief, his conspiratorial conduct, as herein set forth, led directly to Svensson's termination of employment, and was undertaken because of his desire to reduce the number of females, and especially married females with children, within the Putnam workforce, and to prevent their accession to top management.

45. At the time of Svensson's termination, she possessed a portfolio of significant Putnam stock options and grants, as well as a significant sum in the deferred compensation plan at Putnam.

46. Following her termination and despite the promises made by McNamee at the time of her departure, Svensson's stock portfolio remained in Putnam's possession and control; nevertheless, Svensson continued to receive periodic dividend statements and dividends on the stocks in her portfolio.

47. On November 12, 2003, Svensson, through her attorney, wrote to Putnam's then General Counsel and notified Putnam in writing of her intention to prosecute her claims of gender discrimination and violations of state and federal law.

48. On or about March 1, 2004, Svensson, by letter of her counsel dated February 27, 2004, filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination, which Charge was thereafter also filed with the Equal Employment Opportunity Commission in early March, 2004.

49. Through correspondence sent to Putnam on March 5, 2004, Svensson instructed Putnam to sell her shares of Putnam stock in her portfolio.

50. On March 10, 2004, Putnam informed Svensson by return correspondence that it had retroactively divested Svensson of the 750 shares of Putnam stock promised to her by McNamee, and on which she had been receiving dividends and dividend statements, because Svensson had decided not to execute a Separation Agreement incorporating a release of all legal claims against Putnam.

51. Putnam further has continuously maintained custody and control of Plaintiff's deferred compensation account, and since becoming aware of Plaintiff's claims of gender discrimination, has continuously failed to pay the monies in said account to Plaintiff.

52. Putnam, through its agents, servants, or employees, thereby retaliated against Svensson for asserting her claims of gender discrimination at the time of her termination; for notifying Putnam of her intent to file, and thereafter filing, a claim of gender discrimination with the MCAD and EEOC; and for her decision not to sign the Separation Agreement, under which she would have released and relinquished important legal rights.

53. As a result of Svensson's non-promotions, demotions and her termination, she has suffered monetary damages, including loss of compensation, loss of raises

in compensation, loss of bonuses, loss of employee benefits and enhancements of those benefits, loss of stock grants and stock options, loss of deferred compensation, loss of the opportunity for further career advancement, extraordinary damage to her business reputation, emotional distress damages and other compensatory damages.

54. In addition thereto, Svensson is entitled to punitive damages because certain of the Partners, officers, directors and members of the management of Putnam, including but not limited to defendant Lasser, as former Chief Executive Officer, acted deliberately, maliciously, and with conscious intent to discriminate against women at Putnam, particularly married women with children, such as Svensson; or, at the very least, were recklessly indifferent to the lawful rights of female employees such as Svensson to equal opportunity in their employment. Svensson is further entitled to punitive damages because of defendants' deliberate and malicious acts in retaliating against Svensson because of her assertion of gender discrimination claims, and other claims of legal wrongdoing or breaches of ethical obligations, and because of their willful conversion, to their own account and for their own financial benefit, of monies properly due and owing to Plaintiff.

## COUNT I
## SEX DISCRIMINATION (TITLE VII)

55. Plaintiff repeats and re-alleges the allegations contained in paragraph 1 through 54, as though fully set forth herein.

56. It is unlawful under Title VII of the Civil Rights Act of 1964, for any covered employer to refuse to hire, to discharge, or to otherwise discriminate against any person regarding promotions, demotions compensation or other terms

and conditions of employment because of said person's race, color, religion, sex

or national origin, to pay male employees higher compensation for substantially

equivalent work, or to retaliate against any person because they assert, or attempt

to assert, Title VII rights.

57. Plaintiff Svensson in a member of a protected group under Title VII

because she is a women.  Defendant Putnam is a covered employer.

58. By the above described conduct, Defendant Putnam has discriminated

against Svensson, because of her sex in the terms, conditions, and privileges of

her employment, in violation of Title VII, 42 U.S.C. § 2000e-(5).

59. As a result of Putnam's gender discrimination, Svensson has suffered loss

of employment, loss of substantial income, loss of valuable employee benefits,

loss of stock, stock options and deferred compensation, loss of personal and

professional opportunities, loss of business reputation, emotional distress,

attorney's fees and costs and other compensatory damages.  Putnam is further

obligated to pay to plaintiff punitive damages for said discrimination.

## COUNT II
## VIOLATION OF M.G.L.CH. 151B§ 4

60. Plaintiff repeats and re-alleges all of the allegations contained in

Paragraphs 1 through 59 above, as if set forth here in their entirety;

61. Under Massachusetts law, it is a violation of the Fair Employment

Practices Law (M.G.L.CH. 151B) for an employer to refuse to hire, to discharge,

or to discriminate against any individual in compensation or in terms, conditions,

or privileges of employment, because of that individual's genetics, race, color,

religious creed, national origin, sex, age, sexual orientation, or ancestry;

62. Plaintiff, Svensson is a member of a protected class under M.G.L.CH151B because she is a woman.

63. Putnam discriminated against Svensson due to her gender in their treatment and termination of her.

64. The above acts and practices of Putnam constitute unlawful discriminatory acts in violation of M.G.L.Ch. 151B §4.

65. Putnam's decision to target Svensson for demotions and termination, while less qualified, younger males were retained and promoted or not demoted, was willful, intentional and committed with reckless disregard for the rights of Plaintiff.

66. Svensson was, at all times relevant herein, fully qualified to perform her job, as well as the jobs to which she aspired or sought promotion, and which she was denied because of gender discrimination.

67. As a result of Putnam's discrimination, Svensson suffered loss of employment, loss of substantial income, loss of valuable employee benefits, loss of stock, stock options and deferred compensation, loss of personal and professional opportunities, loss of business reputation, emotional distress, attorney's fees and costs, and other compensatory damages.

### COUNT III
### VIOLATION OF THE
### MASSACHUSETTS EQUAL RIGHTS ACT, M.G.L.Ch.93, §102

68. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 67 above as if set forth here in their entirety.

69. Pursuant to M.G.L.Ch.93,§102, all persons within the Commonwealth, regardless of sex, race, color, creed, or national origin, shall have, except as otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts; to inherit, purchase, lease, sell, hold and convey real and personal property; to sue, be parties to suits, give evidence in suits, and to enjoy the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

70. The above-recited acts and practices of Putnam constitute unlawful discriminatory acts in violation of M.G.L.C.93,§102;

71. Putnam's and Lasser's decision to target Svensson for demotions and termination, while less qualified, younger white males were retained, promoted or not demoted, was willful, intentional and committed with reckless disregard for Plaintiff's rights;

72. As a result of Putnam's discrimination, Svensson suffered loss of employment, loss of substantial income, loss of valuable employee benefits, loss of stock, stock options and deferred compensation, loss of personal and professional opportunities, loss of business reputation, emotional distress, attorney's fees and costs, and other compensatory damages. Svensson is further entitled to an award of punitive damages.

## COUNT IV
## VIOLATION OF THE
## MASSACHUSETTS EQUAL PAY ACT, M.G.L.Ch.149, §105A

73.  Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 72 above as if set forth here in their entirety;

74. Under the Massachusetts Equal Pay Act (MEPA), Putnam was required to pay, and Svensson was entitled to receive, equal wages from work "of like comparable character";

75. The above acts and practices of Putnam constituted unlawful discriminatory acts in violation of M.G.L.Ch.149, §105A;

76. Putnam's decision to refuse to promote Svensson, to target Svensson for demotion and termination, and to compensate Svensson at a considerably lower level than her male counterparts for the same or substantially equivalent work, was willful, intentional and committed with reckless disregard for Plaintiff's rights;

77. As a result of Putnam's discrimination, Svensson suffered loss of employment, loss of substantial income, loss of valuable employee benefits, loss of stock, stock options and deferred compensation, loss of business and professional opportunities, loss of business reputation, emotional distress, attorney's fees and costs, and other compensatory damages.  Svensson is further entitled to an award of punitive damages.

## COUNT V
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

78. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 77 above as if set forth herein their entirety;

23

79. There existed an implied covenant of good faith and fair dealing, which Putnam breached in its dealings with Svensson, by failing to promote her to various positions she sought at Putnam, and for which she was fully qualified; by demoting her without adequate reason while retaining or promoting, or not demoting, less qualified male employees in equivalent positions; and by terminating her from employment at Putnam on September 15, 2003;

80. The above acts and practices of Putnam, as more fully set forth herein, constitute a breach of the implied covenant of good faith and fair dealing;

81. As a result of Putnam's breach of the covenant of good faith and fair dealing, Svensson has suffered loss of employment, loss of substantial income, loss of valuable employee benefits, loss of stock, stock options and deferred compensation, loss of personal and professional opportunities, loss of business reputation, emotional distress, attorney's fees and costs and other compensatory damages.

## COUNT VI
## BREACH OF CONTRACT

82. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 81 above, as if set forth here in their entirety;

83. By its actions as set forth above, Putnam has breached the implied contract it had with Svensson to promote her to available positions for which she was qualified based upon her performance; to compensate her for the work she had performed at a level substantially equivalent to the level of compensation of male employees performing the same work; not to demote her, or reduce her compensation, should she perform her job satisfactorily and achieve satisfactory

or better financial results for Putnam; and not to terminate her based upon contrived excuses when she attempted to assert important civil rights in the workplace.

84. As a result of Putnam's breach of contract, Svensson has suffered loss of employment, loss of substantial income, loss of valuable employee benefits, loss of stock, stock options and deferred compensation, loss of personal and professional opportunities, loss of business reputation, emotional distress, attorney's fees and costs and other compensatory damages.

## COUNT VII
## RETALIATION FOR ALLEGING RIGHTS UNDER FEDERAL ANTI-DISCRIMINATION STATUTES

85. Plaintiff repeats and re-alleges Paragraphs 1 through 84 above as if set forth herein in their entirely.

86. At the time of plaintiff's termination and thereafter, Plaintiff, directly or through her counsel, made verbal and written statements to Defendant Putnam, objecting to and opposing Putnam's actions as violative of federal anti-discrimination statutes, and refused to accede to Putnam's demand that she release her civil rights by signing Putnam's proposed Separation Agreement.

87. After Plaintiff objected to, and opposed, Putnam's actions, Putnam unlawfully withheld, and continues to withhold, monies due and owing to Plaintiff under Putnam's deferred compensation plans.

88. In further retaliation for complaining about Putnam's unlawful discrimination, defendant Putnam took action to prevent Plaintiff from trading certain stock grants which had been given to her as compensation for the

25

exceptional professional services she had consistently rendered throughout her career at Putnam, and as a reward for achieving outstanding financial results in the year preceding the year in which the stock was granted.

89. Putnam's wrongful withholding of Plaintiff's deferred compensation, and its interference with Plaintiff's exercise of her right to sell her stock, were undertaken in retaliation for Plaintiff's opposition to Putnam's discriminatory employment practices as set forth herein, and her refusal to release Putnam from legal liability in connection with said discrimination.

90.  The aforementioned acts of Defendant constitute unlawful retaliation discrimination against Plaintiff.

91. As a result of Putnam's retaliatory conduct, Plaintiff is entitled to damages, for loss of employment, loss of substantial income, loss of valuable employee benefits, loss of stock, stock options and deferred compensation, emotional distress, attorney's fees and costs, all because of Putnam's outrageous and malicious conduct in retaliating against her for assertion of her civil rights. Plaintiff is further entitled to an award of punitive damages in an amount to be determined by the trier of fact.

## COUNT VIII
## RETALIATION UNDER MASS. GEN. LAW. CH 151B

92.  Plaintiff repeats and re-alleges Paragraph 1 through 91 above as though fully and completely set forth herein.

93. The aforementioned acts of Defendant constitute unlawful retaliation discrimination against Plaintiff in violation of the Massachusetts anti-discrimination law.

94. As a result of Putnam's unlawful retaliatory actions, Svensson is entitled to monetary damages for loss of employment; loss of substantial income; loss of valuable employee benefits; loss of stock, stock options and deferred compensation; damages for emotional distress; attorney's fees and costs; prejudgment interest, other compensatory damages and punitive damages.

## COUNT IX
## FRAUDUALENT INDUCEMENT AND MISREPRESENTATION

95.    Plaintiff repeats and re-alleges Paragraph 1 through 94 above as though fully and completely set forth herein.

96.    During Putnam's aggressive recruitment efforts, Putnam's representatives made certain material representations to Svensson concerning the terms and conditions of her employment to induce her to leave Lord Abbett in New York, to move to Boston and to join Putnam.

97.    In reasonable and intended reliance on the representations made by Putnam's representatives, Plaintiff left her employment with Lord Abbett & Co., and accepted a position with Putnam as an Analyst with a base compensation of One Hundred Twenty-Fifty Thousand Dollars ($125,000), with a guaranteed bonus of at least $150,000, valuable employment benefits, with promises of long-term employment in a specified career path, with significant enhancements of base compensation, bonuses and benefits, and with promised opportunities for females to work, and to succeed, in a non-discriminatory working environment.

98.    Plaintiff thereafter relocated herself to Boston, purchased a home in Boston, entering into a long-term financing arrangement for this purchase, all in reliance on Putnam's assurances of long-term employment pursuant to a specified

27

career path in a non-discriminatory environment, accepting of females and receptive to their promotion to top positions within the organization based solely on merit.

99.   Defendant Putnam possessed superior knowledge as to matters to which its material representations related, and Plaintiff reasonably relied on their superior knowledge in believing these representations to be true.

100.   The material representations made by Defendant Putnam to induce Plaintiff to take a position with Putnam were false, and were known by Putnam to be false at the time they were made, in that defendant Putnam never intended to fulfill its promises respecting the advancement of women, including Svensson, up the corporate ladder, and instead intended to impose a "glass ceiling" on her advancement within the organization, and on the advancement of other females.

101.   In particular, Putnam's representations were false in that Plaintiff was not given the opportunity to remain in Putnam's Portfolio Management business, was not given the opportunity to become a Managing Director or a Partner, and was instead forcibly demoted, inequitably compensated, and ultimately terminated without any justification, and without payment of earned, but deferred, compensation.   Moreover, Putnam's representations in 1997 that Plaintiff would be granted valuable stock were false, and known to be false when made.

102.   Plaintiff reasonably relied to her detriment on Putnam's representations and has incurred substantial monetary damages as a result thereof, including, but not limited to, the loss of her Analyst position at Lord & Abbett & Co., the loss of the opportunity for advancement within that organization, the disruption of her

personal and family life, the expenses related to the purchase of a home in Boston, the diminution (and ultimately complete loss) of earned income associated with her position at Putnam, and loss of business reputation because of her unwarranted termination.

103.  Defendant Putnam, by acting as described herein, did so knowingly, or in such a reckless manner as to constitute a fraud and deceit upon the Plaintiff, and fraudulently induced her to perform valuable services for Putnam based upon false promises, in exchange for compensation of substantially lesser value than had been promised to her, or which was paid to male employees for equivalent work.

104.  In particular, at the time Putnam's misrepresentations were made, they were aware that Svensson would not ultimately be allowed to advance to the levels of Managing Director or Partner, would not be able to remain in Portfolio Management, would not be paid equivalent compensation to males, and would instead be demoted or terminated, thereby allowing Putnam to reap substantial financial benefit through its fraud, deceit and misrepresentation of the true facts.

105.  In reasonable and intended reliance on Putnam's representations, and ignorant of the true and complete facts, Plaintiff continued her performance of services for Putnam, until September 15, 2003, at which time Putnam abruptly terminated Plaintiff, and attempted to deprive her of valuable compensation and stock.

## COUNT X
## (VIOLATION OF § 510 OF ERISA, 29 U.S.C. § 1140)

106. Plaintiff repeats and re-alleges Paragraphs 1 through 105 above as though fully and completely set forth herein.

107. Defendant Putnam wrongfully terminated Plaintiff's certain employment on September 15, 2003. Putnam's decision to terminate Plaintiff was, in part, motivated by its desire to avoid paying Plaintiff employee benefits of significant value, and in particular medical benefits, and was thereby intended to interfere with Plaintiff's attainment of employee benefits and rights.

108. By reason of the foregoing, Putnam has violated Section 510 of ERISA, and Plaintiff is entitled to damage sin accordance with the provisions of that statute.

## COUNT XI
## CONVERSION / UNJUST ENRIICHMENT

109. Plaintiff repeats and re-alleges Paragraph 1 through 108 above as though fully and completely set forth herein.

110. Defendant Putnam granted bonuses, stock, stock options and the right to participate in Putnam's deferred compensation plans to Plaintiff, in exchange for the valuable services rendered by Plaintiff to the financial benefit of Putnam, and represented that the bonuses, stock, stock options and right to deposit monies into the deferred compensation plans were valuable, and thereby induced Plaintiff to continue to perform said valuable services for Putnam through remaining employed at the company.

30

111. As a result of Defendants' unlawful conduct, Plaintiff has been, and is being, prevented from receiving a bonus for 2003, and Putnam has retained stock and monies in Plaintiff's deferred compensation account, and has thereby converted said monies and stock for its own use and benefit, and has been unjustly enriched to Plaintiff's detriment.

112.   By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, representing the value of the 2003 bonus, plus interest; the value of the stock in Plaintiff's account as of September 15, 2003, plus interest; the value of the deferred compensation in Plaintiff's account as of September 15, 2003, plus interest; attorney's fees and costs, and other compensatory and punitive damages.

**COUNT XII**
**AIDING AND ABETTING DISCRIMINATION IN VIOLATION**
**OF TITLE VII AND M.G.L.CH 151B**

113. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 112 as though fully and completely set forth herein.

114. As more fully described elsewhere herein, defendant Lasser aided and abetted Putnam's discriminatory agenda in deliberately (and with specific discriminatory intent) creating or fostering a work environment hostile to women; in conspiring to deprive Svensson of promotional opportunities; in conspiring to deprive Svensson of equivalent compensation compared to her male colleagues; in conspiring to repeatedly demote her; and in conspiring to effect her termination because of her gender, in violation of Title VII and M.G.L.Ch.151B, and because

of her legitimate inquires concerning Putnam's illegal or unethical business practices.

115. As a direct and proximate result of Lasser's conduct as described herein, Svensson was caused to suffer loss of employment, loss of substantial income, loss of valuable employee benefits, loss of personal and professional opportunities, loss of business reputation, emotional distress, attorney's fees and costs, and other compensatory damages. Plaintiff is further entitled to an award of substantial punitive damages because of the willful, deliberate and malicious nature of Lasser's conduct, or his reckless indifference to Plaintiff's civil rights.

WHEREFORE, Plaintiff Lisa Svensson respectfully prays that this Court award the following relief:

1. that Defendant Putnam be found liable for damages on Count I in an amount to be determined at trial, and believed to be excess of $25,000,000, plus punitive damages;

2. that Defendant Putnam and Lasser be found liable for damages on Count II in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

3. that Defendant Putnam be found liable for damages on Count III in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

4. that Defendant Putnam be found liable for damages on Count IV in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

5. that Defendant Putnam be found liable for damages on Count V in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

6. that Defendant Putnam be found liable for damages on Count VI in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

32

7. that Defendant Putnam be found liable for damages on Count VII in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

8. that Defendant Putnam be found liable for damages on Count VIII in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

9. that Defendant Putnam be found liable for damages on Count IX in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

10. that Defendant Putnam be found liable for damages on Count X in an amount to be determined at trial, and believed to be in excess of $15,000,000, plus punitive damages;

11. that Defendant Putnam be found liable for damages on Count XI in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

12. that Defendant Putnam be found liable for damages on Count XII in an amount to be determined at trial, and believed to be in excess of $25,000,000, plus punitive damages;

13. that plaintiff be awarded interest, attorney's fees and costs, as appropriate;

14. that, because an award of monetary damages to Plaintiff in this lawsuit will not prove sufficient to fully and adequately redress the harm caused to current and former female employees of Putnam by the aforesaid acts of gender discrimination and retaliation, and by the ongoing hostile environment toward women at Putnam, Plaintiff hereby petitions the Court to grant appropriate injunctive or declaratory relief, in such form as the Court may deem just and proper in the circumstance

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff demands a Trial by Jury.

Respectfully submitted,
Lisa Svensson,
By Her Attorneys,

Denise L. Page, Esq., BBO #119415
Nancie L. Edgren, Esq., BBO #648665
BARRON & STADFELD, P.C.
100 Cambridge Street
Boston, MA 02114
(617) 723-9800

and

John K. Weir Law Offices LLC
300 Park Avenue - Suite 1700
New York, NY 10022
(212) 572-6374

Dated: January 5, 2005

310648/file no. 21312-1

34

# EXHIBIT A



10/21/04

**The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024**

Date Issued: 10/21/2004

John K. Weir, Esq.
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, NY 10022

Re:    Complainant(s)    Lisa Svensson

                                                    Vs.

        Respondent(s)    Putnam Investment, Inc., Lawrence J. Lasser

**MCAD Docket Number: 04BEM02175
EEOC/HUD Charge Number: 16CA402289**

Dear Counsel:

The Commission has received notice that a civil action is being filed in *Superior Court* in the above-referenced matter. Pursuant to M.G.L.A. 151B, Section 9 (Chapter 478 of the Acts of 1974), the complaint before the Commission is hereby dismissed without prejudice as to the merits.

**Please be advised that pursuant to 804 CMR 1.15(2), the parties are required to serve upon the Commission's General Counsel a copy of any final order obtained in court. In addition, any party filing an appeal of such final order is required to serve a notice of appeal upon the Commission's General Counsel.**

Please be advised the Complainant is barred from subsequently bring a complaint on the same matter before this Commission.

Very truly yours,

Walter J. Sullivan Jr. (re)
Commissioner

Cc:

Putnam Investment, Inc.
Director, Human Resources
One Post Office Square
Boston, MA 02109

# THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
### ONE ASHBURTON PLACE
#### BOSTON, MA 02108-1518]

Tel: (617) 994-6000       TTY: (617) 994-6196       Fax: (617) 994-6024

| | |
|---|---|
| TO: | File |
| FR: | Robin Edwards-King |
| RE: | Lisa Svensson v. Putman Investment, Inc., |
| | Lawrence J. Lasser |
| MCAD # | 04BEM02175 |
| EEOC # | 16CA402289 (25+ employees) |
| DATE: | October 21, 2004 |

## RECOMMENDATION: CASE CLOSURE – WITHDRAWN IN ORDER TO FILE A PRIVATE RIGHT OF ACTION ON THE SAME MATTER IN CIVIL COURT

On July 9, 2004 Complainant filed a complaint with the Massachusetts Commission Against Discrimination and the EEOC. Complainant alleged Respondents discriminated against her on or around March 10, 2003 on the basis of Sex and Retaliation in violation of M.G.L. c.151B§4 (16A)(1) and Title VII.

On October 15, 2004 Complainant's Counsel submitted a request to withdraw this complaint from the MCAD and EEOC in order to pursue the matter as a private right of action in civil court.

The Commission finds no reason to investigate this matter further. Therefore, it is recommended that Complainant be allowed to withdraw this complaint.

Robin Edwards-King
Administrative Assistant

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place, Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

*10/21/04*

Date Issued: 10/21/2004

John K. Weir, Esq.
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, NY 10022

Re:   Complainant(s)   **Lisa Svensson**

Vs.

Respondent(s)   **Putnam Investment, Inc.**

MCAD Docket Number: 04BEM00757
EEOC/HUD Charge Number: 16CA401238

Dear Counsel:

The Commission has received notice that a civil action is being filed in *__Superior Court__* in the above-referenced matter. Pursuant to M.G.L.A. 151B, Section 9 (Chapter 478 of the Acts of 1974), the complaint before the Commission is hereby dismissed without prejudice as to the merits.

**Please be advised that pursuant to 804 CMR 1.15(2), the parties are required to serve upon the Commission's General Counsel a copy of any final order obtained in court. In addition, any party filing an appeal of such final order is required to serve a notice of appeal upon the Commission's General Counsel.**

Please be advised the Complainant is barred from subsequently bring a complaint on the same matter before this Commission.

Very truly yours,

Walter J. Sullivan Jr.
Commissioner

Cc:

Louis A. Rodrigues, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA 02109

MCAD Docket Number 04BEM00757, Case Removed to Court Cover Letter          Page   1

# THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
### ONE ASHBURTON PLACE
#### BOSTON, MA 02108-1518]

Tel: (617) 994-6000       TTY: (617) 994-6196       Fax: (617) 994-6024

| | |
|---|---|
| TO: | File |
| FR: | Robin Edwards-King |
| RE: | Lisa Svensson v. Putman Investment, Inc., |
| MCAD # | 04BEM00757 |
| EEOC # | 16CA401238 (25+ employees) |
| DATE: | October 21, 2004 |

## RECOMMENDATION: CASE CLOSURE – WITHDRAWN IN ORDER TO FILE A PRIVATE RIGHT OF ACTION ON THE SAME MATTER IN CIVIL COURT

On March 1, 2004 Complainant filed a complaint with the Massachusetts Commission Against Discrimination and the EEOC. Complainant alleged Respondents discriminated against her on or around September 15, 2003 on the basis of Sex in violation of M.G.L. c.151B§4 (1) and Title VII.

On October 15, 2004 Complainant's Counsel submitted a request to withdraw this complaint from the MCAD and EEOC in order to pursue the matter as a private right of action in civil court.

The Commission finds no reason to investigate this matter further. Therefore, it is recommended that Complainant be allowed to withdraw this complaint.

Robin Edwards-King
Administrative Assistant

# EXHIBIT B

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Lisa Svensson<br>68 Commonwealth Avenue<br>Boston, MA 02116 | From: Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16C-2004-01238 | Rance A. O'Quinn,<br>Enforcement Supervisor | (617) 565-3192 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

———————————————————
Robert L. Sanders,
Area Office Director

DEC 7 2004
(Date Mailed)

Enclosure(s)

cc:  PUTNAM INVESTMENT, INC.
One Post Office Square
Boston, MA 02109

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Lisa Svensson<br>68 Commonwealth Avenue<br>Boston, MA 02116 | From: Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16C-2004-02289 | Rance A. O'Quinn,<br>Enforcement Supervisor | (617) 565-3192 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

DEC 7 2004

Robert L. Sanders,
Area Office Director

(Date Mailed)

Enclosure(s)

cc: PUTNAM INVESTMENT, INC.
One Post Office Square
Boston, MA 02109



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Charge Number *16C-2004-02289*

## CERTIFICATE

Pursuant to 1601.28 (a) (2) of the Equal Employment Opportunity Commission's Regulations, this is to certify that it is probable that the Commission will be unable to complete its administrative processing of the above referenced charge, due to pending workload within 180 days from the filing of the charge.

DEC  7 2004

Date

Robert L. Sanders
Area Director