UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-12711 PBS |
| PUTNAM INVESTMENTS LLC, f/k/a ) | |
| PUTNAM INVESTMENTS, INC. and ) | |
| LAWRENCE J. LASSER., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT'S MOTION FOR ENTRY OF
## PROTECTIVE ORDER CONCERNING CONFIDENTIALITY

Defendant, Putnam Investment LLC, f/k/a Putnam Investments, Inc. ("Putnam") respectfully moves the Court to enter a protective order, in the form attached hereto as Exhibit A, to preserve the confidentiality of private personnel information and other competitively sensitive information that plaintiff Lisa Svensson ("Svensson") has requested in discovery. Putnam has repeatedly attempted to resolve this matter through informal discussions with Svensson's counsel, without success. Thus far, Svensson's counsel has failed to offer any rationale for Svensson's refusal to agree to entry of the Proposed Order.

## BACKGROUND

Plaintiff, Lisa Svensson was an Assistant Director of Research for Putnam until her termination in September 2003. After prolonged and widespread problems related to Svensson's ability to successfully manage her subordinates, Putnam decided that Svensson could no longer remain in a managerial role. Putnam offered to retain Svensson in a non-managerial position, but she refused. Svensson also refused Putnam's alternative proposals that she (a) seek employment elsewhere within Putnam or (b) leave Putnam with an appropriate severance package. Svensson's refusals left Putnam with no option but to terminate her employment.

Svensson subsequently brought this lawsuit, alleging, among other things, that Putnam unlawfully failed to promote her, compensated her less than similarly situated male employees, and ultimately terminated her employment, all on account of her gender. Putnam denies all material allegations of the Amended Complaint.

On August 9, 2005, Svensson submitted her first request for production of documents to Putnam.[1] In that request, in subsequently-served interrogatories, and in depositions conducted to date, Svensson has requested a wide variety of private personnel information. For example, in her document requests, Svensson seeks "All documents and records concerning Putnam's terminations, denials of promotion, and demotions of Putnam employees from January 1, 1994 to the present including names addresses, job titles, job descriptions, seniority and gender of the persons affected by each such adverse employment decision." Other requests seek information regarding promotions and denials of promotions to non-party, current and former Putnam employees. Although Putnam has objected to many of the requests as drafted, Putnam's responses will necessarily include disclosure of some private personnel information of non-party employees or former employees. Finally, in the deposition of Josh Brooks, the head of the business unit that employed Svensson, Svensson's counsel inquired about Brooks' compensation, the compensation of other current and former Putnam employees, and the reasons why various employees were terminated. Counsel have agreed to treat Brooks' answers as confidential pending the Court's ruling on this motion.

---

[1] Putnam has served its responses, including objections. The parties' dispute regarding the proper scope of document production is currently pending in the Plaintiff's Motion to Compel Production of Documents, filed November 4, 2005.

## ARGUMENT

I. **The Proposed Confidentiality Order Is Necessary And Appropriate To Protect Private Personnel Information Requested By Svensson In Discovery.**

As noted above, Svensson has requested in discovery a wide range of private personnel information, including salary information, bonus information, performance reviews, documents regarding promotions or failures to promote and the like. She seeks this information concerning numerous current and former Putnam employees. This is precisely the type of information for which a protective order of the type sought by Putnam is appropriate.

Rule 26(c) permits the entry of "any order which justice requires" to prevent "annoyance, embarrassment, oppression, or undue burden or expense. Courts routinely have granted protective orders to protect nonparties from the harm and embarrassment potentially caused by non-confidential disclosure of their personnel files or other private personnel information. Such orders provide a means of protecting the privacy interests of nonparties while serving the needs of litigation *See Knoll v. American Telephone & Telegraph Co. and Lucent Technologies, Inc.*, 176 F.3d 359, 365 (6th Cir. 1999) (affirming granting of protective order limiting access to personnel files of non-party employees to plaintiff's counsel) *citing Donald v. Rast*, 927 F.2d 379 (8th Cir. 1991) (upholding district court's decision in a § 1983 action to limit the disclosure of police officers' personnel files to plaintiff's attorney in light of the private nature of information contained therein); *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D. Conn. 1985) (ordering defendants to produce job evaluations of nonparties only "for inspection by plaintiff's counsel in the office of counsel to the defendants"). *See also Whittingham v. Amherst College*, 164. F.R.D. 124, 127-128 (D.Mass. 1995) (noting discovery of personnel information is limited to similarly-situated employees, and stating "personnel files contain perhaps the most private information about an employee within the possession of an employer," and collecting cases recognizing the privacy interests of non-party employees). Given that courts have recognized the privacy

-3-

interests in personnel records of non-parties, and have issued protective orders limiting disclosure of such information only to attorneys, surely a less restrictive order such as Putnam's Proposed Order, which allows access to all parties and witnesses, is reasonable.

There is no justification for Svensson's insistence upon a right to freely disseminate materials produced in discovery, and she has offered none. The First Circuit has repeatedly held, in accordance with the Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), that materials produced in discovery but not filed with the Court are ordinarily private. *See, e.g.*, *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1233 (1st Cir. 1992) (collecting cases); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 10-13 (1st Cir. 1986). The Proposed Order seeks only to ensure the documents produced are afforded the protection to which they are ordinarily entitled. Under the terms of the Proposed Order, each party's litigation needs will be met, while at the same time protecting non-parties from public disclosure of private information. *See Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 (D. Mass. 1991) ("In assessing whether to issue a protective order, courts generally balance the harm to the [moving party] against the relevance of and necessity for the information . . . .") (internal citation omitted).

In light of the privacy interests of those non-party employees whose personnel information may be disclosed during the litigation, and the plaintiff's lack of any legitimate reason to use such information outside the litigation, an order allowing entry of the Proposed Protective Order is appropriate.

## II. Svensson's Breach of Her Confidentiality Obligations Further Demonstrates The Need For The Protective Order.

Wholly apart from the fact that protective orders are routinely granted to protect private personnel information, Svensson's improper retention and use of Putnam's Confidential Information to date demonstrates that the Proposed Order is necessary to protect the privacy interests of non-party employees as well as to secure future compliance with the various confidentiality agreements that Svensson previously executed.

LITDOCS/621996.1

During the course of her employment by Putnam, Svensson signed various confidentiality agreements that restricted the use of Putnam Confidential Information. Those agreements defined Confidential Information to include "financial information or plans . . . salary, bonus or other personnel information of any type, information concerning methods of operation . . . ." *See* June 9, 1994 Offer Letter and attached Confidentiality Agreement, a true and accurate copy of which is attached hereto as Exhibit B; Certificate and Confidentiality Agreement, a true and accurate copy of which is attached hereto as Exhibit C; 1998 Certificate and Confidentiality Agreement, a true and accurate copy of which is attached hereto as Exhibit D. The agreements further provided that Svensson understood all "Confidential Information . . . shall be Putnam's sole property, and shall not be removed . . . from Putnam's custody or premises without Putnam's prior written consent." *Id.* Svensson agreed that, upon termination of her employment, she would "deliver to Putnam all copies of all documents, equipment, property or materials of any type . . . that belong to Putnam, or that contain, in whole or in part, any Confidential Information. *Id.*

Discovery in this matter has revealed that Svensson already has breached her obligations under her confidentiality agreements by removing and retaining numerous documents constituting or containing Confidential Information. Svensson has produced, for example, documents containing private personnel information, including confidential salary and bonus information, as well as confidential financial information and analysis. *See* Affidavit of Rachael Splaine Rollins, submitted herewith, at ¶¶ 3-8.

Svensson's breach of her confidentiality agreements is significant in two respects. First, Svensson is already contractually bound not to use or disseminate the information protected by the Proposed Order. That she refuses to sign a Confidentiality Agreement preventing her from doing that which she is contractually prevented from doing is inexplicable. Svensson has no right to posses, and indeed no valid use for, the information she possesses and has asked for in discovery other than to conduct this litigation. Second,

-5-

Svensson's flagrant violation of her confidentiality agreements demonstrates the necessity for a Court order requiring that she not misuse the private personnel information of non-party employees, or other Confidential Information, that she will gain access to through this litigation.

## CONCLUSION

For all of the foregoing reasons, defendant respectfully requests that its motion be granted, and that the Court enter the Proposed Protective Order attached hereto as Exhibit A.

PUTNAM, LLC,
By its attorneys,


/s/ Rachael Splaine Rollins
Joseph L. Kociubes, BBO# 276360
Louis A. Rodriques, BBO# 424720
Rachael Splaine Rollins, BBO# 641972
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000


Dated: November 17, 2005


### Local Rules 7.1(A)(2) and 37.1 Certification

Pursuant to Local Rules 7.1(A)(2) and 37.1, counsel for the parties conferred regarding this Motion. Counsel for Putnam inquired of plaintiff's counsel whether the plaintiff would enter into the Proposed Order. Plaintiff's counsel refused. Prior to filing this Motion, on November 15, 2005, counsel for Putnam sent an email to plaintiff's counsel, attaching the Proposed Order and asking whether plaintiff would reconsider her refusal to enter into the Order. Plaintiff's counsel has not replied.

## CERTIFICATE OF SERVICE

I, Rachael Splaine Rollins, hereby certify that on this 17th day of November, 2005, a true copy of the foregoing document was served via first class mail upon the attorney(s) of record for each other party:

Denise L. Page
Nancie Edgren
Barron & Stadfeld, P.C.
100 Cambridge Street
Boston, MA 02114

John K. Weir
John K. Weir Law Offices LLC
300 Park Avenue - Suite 1700
New York, NY 10022

/s/ Rachael Splaine Rollins
Rachael Splaine Rollins

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,<br><br>                Plaintiff,<br><br>                  v.<br><br>PUTNAM INVESTMENTS LLC, f/k/a<br>PUTNAM INVESTMENTS, INC. and,<br>LAWRENCE J. LASSER<br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>      CIVIL ACTION<br>      NO. 04-12711 PBS |

## [PROPOSED] STIPULATION AND ORDER GOVERNING
## DISCOVERY OF CONFIDENTIAL INFORMATION

The parties having agreed to the entry of a mutual protective order, pursuant to Fed. R. Civ. P 26(c), to maintain the confidentiality of certain information to be produced in the action, and the Court having approved such order:

IT IS HEREBY ORDERED:

1.     All documents, things or information (in whatever format) produced in discovery in this litigation shall be used solely for purposes of this litigation.

2.     For purposes of this Protective Order, "CONFIDENTIAL INFORMATION" shall include any information or document (whether in writing, in electronic form, on magnetic tape or in any other format), tangible thing, transcript of oral testimony or recorded statement of counsel, such as, by way of example and not limitation, transcripts, answers to interrogatories and other responses to discovery requests, pleadings, briefs, summaries, notes, abstracts, motions, drawings, company records and reports, and any instrument that comprises, embodies or summarizes information that a producing party considers confidential and desires not to be made public.

3.     If, in the course of proceeding in this action, any party, or non-party subpoenaed in connection with the action, (hereinafter, the "producing party") is required or undertakes to disclose CONFIDENTIAL INFORMATION, the following procedures shall be employed. Any CONFIDENTIAL INFORMATION contained in any document or tangible thing shall be designated as such by the producing party marking each page with the following legend: "CONFIDENTIAL". Any copy made of such document or thing or any abstract, summary or memorandum embodying said CONFIDENTIAL INFORMATION shall likewise bear on its face one of the aforesaid legends. In the event such labeling or marking is inadvertently omitted, such marking shall be made within five (5) days after production of the document or tangible thing to be marked. Until such five (5) day period has elapsed after receipt, the receiving party will treat documents and things, which have been received and which have not been so marked, as being "CONFIDENTIAL" information. Further, material that a producing party neglects to designate as "CONFIDENTIAL" within five (5) days of production, may at any time after production be so designated by appropriate written notice to counsel for the receiving party or parties, but no party shall be in breach of this Order for any disclosures made prior to receipt of such notice that would otherwise have been authorized by this Order but for the subsequent designation by notice.

4.     Depositions

a.     Oral deposition testimony may be designated as "CONFIDENTIAL" by the producing party making an appropriate statement on the record at the time of the deposition or by identifying, within fifteen (15) days following receipt of a copy of the transcript, in writing to counsel for the party taking the deposition, the specific pages of the transcript that are so designated. The designation should be made on the record whenever possible. However, irrespective of whether any designation is made at the time a deposition is taken, the entire transcript of each such deposition shall be regarded as "CONFIDENTIAL" during said fifteen (15) day term. Further, material that a party neglects to designate as "CONFIDENTIAL" within fifteen (15) days following receipt of a copy of the deposition transcript, may at any time after

-2-

receipt of the deposition transcript be so designated by appropriate written notice to counsel for the other party or parties, but no party shall be in breach of this Order for any disclosures made prior to receipt of such notice that would otherwise have been authorized by this Order but for the subsequent designation by notice.

b.      If an attorney for any producing party believes that questions put to a witness being examined in a deposition will disclose CONFIDENTIAL INFORMATION of his or her client, or that the answers to any question or questions require such disclosure, or if documents to be used as exhibits during the examination contain such CONFIDENTIAL INFORMATION, such attorney shall so notify the attorney of the inquiring party and may, at his or her option, direct that the deposition of such witness, or confidential portions thereof, shall be taken in the presence of only qualified recipients for the parties and the reporter.

c.      No copy of any transcript of any deposition that is designated as containing CONFIDENTIAL INFORMATION shall be prepared or furnished by the reporter to any person other than the attorneys of record for the parties.

d.      Subject to the foregoing, any person may be examined as a witness at depositions and trial and may testify concerning all CONFIDENTIAL INFORMATION of which such person has prior knowledge.  If any witness is represented by an attorney who is not a qualified recipient with respect to such information, then a written Undertaking shall be made by such attorney in the form of Exhibit A hereto, that he or she will comply with the terms of this Protective Order and maintain the confidentiality of CONFIDENTIAL INFORMATION disclosed during the examination.

5.      Disclosure of Information Designated "CONFIDENTIAL"

Information designated "CONFIDENTIAL" shall not, without the consent of the producing party or further Order of the Court or as may be required by law, be disclosed to anyone other than a "qualified recipient," which term shall mean:

a.      Attorneys of record for a party in the above-captioned action;

-3-

      b.     Persons regularly members of, employed by or associated with the law firms retained by a party, or lawyers or paralegals engaged in whole or in part to assist the law firms of record;

      c.     Expert witnesses and consultants retained in connection with the above-captioned action, subject to said person's executing, prior to disclosure, an Undertaking, in the form annexed hereto as Exhibit A, stating that he or she has read this Protective Order and agrees to be bound by its provisions. Counsel to whom CONFIDENTIAL INFORMATION is to be provided shall keep in their files the originals of all such signed Undertakings.;

      d.     The parties; and

      e.     Witnesses at deposition or trial, to the extent that such witnesses had prior knowledge of the CONFIDENTIAL INFORMATION being disclosed to them.

      6.     Filing of Information Designated as "CONFIDENTIAL"

Notwithstanding the aforesaid, the provisions of this Order shall not preclude the filing of "CONFIDENTIAL" information in any affidavits, briefs, memorandum of law, or other papers, or at trial, without prejudice to the producing party's right to seek impoundment. The parties shall provide the producing party five (5) business days notice prior to filing any "CONFIDENTIAL" information, thereby providing the producing party opportunity to seek impoundment.

      7.     General Provisions

      a.     All CONFIDENTIAL INFORMATION shall be held in confidence by each qualified recipient with respect to such information to whom it is disclosed, shall be used only for purposes of this action, shall not be used for any business purpose, and shall not be disclosed to any person who is not a qualified recipient with respect to such information. All disclosed CONFIDENTIAL INFORMATION shall be carefully maintained so as to preclude access by persons who are not qualified recipients with respect to such information, including appropriate storage when not in use by the qualified recipient.

      b.     Nothing herein shall, however, restrict a qualified recipient with respect to such information from making working copies, abstracts, digests, and analyses of

CONFIDENTIAL INFORMATION solely for use in connection with this action, and all such working copies, abstracts, digests and analyses shall be deemed CONFIDENTIAL INFORMATION, respectively, under the terms of this Order.

8.    A party shall not be obligated to challenge the propriety of a "CONFIDENTIAL" information designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.  In the event that any party to this litigation disagrees at any stage of these proceedings with the propriety of a designation by the producing party of any information as "CONFIDENTIAL" information, the parties shall give written notice to the producing parties of such disagreement and the party and the producing party shall use reasonable efforts first to dispose of such dispute in good faith on an informal basis.  This Protective Order shall not foreclose any party to this action from moving this Court, with prior notice to the producing party, for an order that materials designated as CONFIDENTIAL INFORMATION are, in fact, not confidential.  On such motion, the party challenging confidentiality shall have the burden of proving that the material in question is not within the scope of protection afforded by Rule 26(c) of the Federal Rules of Civil Procedure.  Nothing in this Protective Order shall be deemed to preclude any party, including any producing party, from applying to the Court for additional protective orders, or from the parties agreeing between themselves to modification of this Protective Order, subject to the approval of the Court, or from complying with other legal obligations.

9.    Upon final termination of this action, whether by dismissal, final judgment after appeal, or by settlement, each party shall return to the producing party all documents and things or transcripts of deposition or trial, together with all copies, summaries, and abstracts thereof, in whatever form stored or reproduced which have been designated as including "CONFIDENTIAL INFORMATION" pursuant hereto.  Alternatively, an attorney of record for the party to whom documents were produced may certify in writing to the producing party that all original and reproductions or portions thereof that have not been so returned have been shredded beyond recognition.

IT IS SO ORDERED THIS ____ day of November, 2005.

_____

United States District Court Judge Saris

AGREED TO:

**LISA SVENNSON**

By her attorneys,

**PUTNAM INVESTMENTS, LLC**

By its attorneys,

Nancie Edgren, BBO# 648665
Denise L. Page, BBO# 119415
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, MA 02114
(617) 723-9800
and
John K. Weir
Admitted Pro Hoc Vice
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, NY 10022

Joseph L. Kociubes, BBO# 276360
Louis A. Rodriques, BBO# 424720
Rachael Splaine Rollins, BBO# 641972
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

**LAWRENCE J. LASSER**

By his attorneys,

David S. Rosenthal BBO# 429260
Carrie J. Campion BBB# 656451
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

Date: November __, 2005

EXHIBIT <u>A</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,      Plaintiff, <br><br> v. <br><br> PUTNAM INVESTMENTS LLC, f/k/a <br> PUTNAM INVESTMENTS, INC. and, <br> LAWRENCE J. LASSER <br>      Defendants. | CIVIL ACTION <br> NO. 04-12711 PBS |

**UNDERTAKING OF** _____

I, _____, being duly sworn, state that:

1.     My present home address is _____

2.     My present employer is and the address of my present employment is
_____

3.     My present occupation or job description is: _____
_____.

4.     I have received a copy of the Stipulated Protective Order in the above-captioned matter.

5.     I have carefully read and understand the provisions of the Stipulated Protective Order.

6.     I have been designated by a party to this action to receive CONFIDENTIAL INFORMATION designated as "CONFIDENTIAL" pursuant to the Stipulated Protective Order.

7.     I will comply with all of the provisions of the Stipulated Protective Order.

8.     I will hold in confidence, will not disclose to anyone not qualified under the Stipulated Protective Order, and will use only for purposes of this action, any CONFIDENTIAL INFORMATION that may be disclosed to me.

9.    I will return all CONFIDENTIAL INFORMATION that comes into my possession, and documents or things that I have prepared related thereto, to counsel for the party that designated me to receive CONFIDENTIAL INFORMATION.

10.   I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulated Protective Order in this action.

_____

[signature]

SUBSCRIBED and SWORN to
me before this ___ day
of November, 2005.


_____
Notary Public

My Commission Expires:

# EXHIBIT B

Patrick O'Donnell
*Managing Director*

**Putnam Investment Management**
Director of Research
*One Post Office Square*
*Boston, Massachusetts 02109*
617 348-4638  fax 617 292-1154

# **PUTNAM** INVESTMENTS

June 9, 1994

Ms. Lisa A. Heitman
225 Rector Place, 8N
New York, NY 10280

Dear Lisa,

We would like to invite you to become a Vice President, Equity Analyst in the Equity Research Group of Putnam Investments reporting to me. Your initial responsibilities would include coverage of the integrated oil companies, the independents, the oil service companies and the pipeline companies. As you and I discussed during our conversation this week, I will assign additional coverage responsibility to you as you settle in at Putnam, and as our coverage needs exist at that time.

I am enthusiastic about the contribution you can make to the Research Group. Your professional standards are obviously high. You write and speak well about your companies and your recommendations. Your ability to come to an investment conclusion is impressive. You should be able to set a strong example to newer analysts and, I hope, assist in their training over the next few years. From our conversations, I am aware of and respect your current goal of becoming a portfolio manager ; I will work with you to round out your analytical skills in order to achieve your goal over the next four years.

Your starting base salary will be at an annualized rate of $125,000, or $5,208.34, paid semi-monthly. In addition, we will guarantee you a 1994 bonus award of $150,000, pro-rated from the time you join Putnam, payable in March, 1995 and a 1995 bonus of $150,000, payable in March, 1996. This award will be charged against any award you receive from the Associates and Principals Plan.  Effective immediately, you will enter the Putnam Associates and Principals Plan. Your salary will be reviewed annually commencing March, 1995.

This position entitles you to four weeks of vacation and three "floating" holidays for the 1995 calendar year. In the 1994 calendar year, your vacation time will be prorated, based on your date of hire, affording you two weeks of vacation and two floating holidays.

You become eligible to enter The Putnam Profit Sharing Retirement Plan on the first day of the month after one year of employment. Contributions to the plan have historically been 15% of eligible salaries, although the amount of contribution is subject to management's discretion.



BOSTON · LONDON · TOKYO

LS-0405

Putnam also offers a broad array of benefit programs designed to meet your needs and those of your family. Please refer to the enclosed "Highlights of Your Benefits" brochure which summarizes many of these valuable programs. The complete benefits program will be explained to you when you begin work.

To assist you in your relocation to the Boston area, Putnam will reimburse you for the following expenses. Ed Whalen will be happy to offer any clarification you may require regarding any aspect of your relocation.

- Packing and transportation of household goods through final destination.
- Storage of household goods for up to 90 days.
- Temporary housing for up to 90 days.
- The use of Humboldt Storage and Moving Co., move coordinators.
- The use of Dewolfe Relocation Inc., to assist you with apartment hunting.
- One apartment hunting trip to the Boston area.

The foregoing describes the compensation and benefits which you are entitled to receive for so long as you remain employed by Putnam, but is not a contract or guarantee of employment for any particular period of time. At all times you will be an employee at will, and you and Putnam are free to terminate your employment at any time for any reason. Should you or Putnam terminate your employment for any reason at any time during the compensation guarantee period, you shall be entitled to receive the pro rata portion of your base salary and bonus through the date of your termination, together with such other compensation or benefits to which you may be entitled by law or under the terms of Putnam's compensation and benefit plans then in effect.

Both during and after your employment at Putnam, you will treat all proprietary or other confidential information as strictly confidential. Further, you agree to comply with the terms and conditions of the enclosed confidentiality and non-solicitation agreements.

Lisa, we hope you decide to join Putnam. The challenges here are great, as are the opportunities. If you have additional questions, please feel free to be in touch with me.

To indicate your acceptance of our offer to you, please sign and return one copy of this letter and the confidentiality agreement to Ed Whalen, in Human Resources; the other copy is for your records.

Sincerely,

Patrick O'Donnell
Director of Equity Research


Lisa A. Heitman                                    6/14/94
                                                   Date

Enclosure

## NON-SOLICITATION AGREEMENT
## FOR PUTNAM INVESTMENTS

I agree that, during my employment with Putnam Investments, Inc. or any of its affiliates (collectively, "the Company"), and for a period of two (2) years after my employment terminates for any reason, I will not, directly or indirectly, on my behalf or on behalf of any third person or entity:

    a) solicit or accept business from any (i) institutional clients of the Company or its affiliates at the time of such termination, or (ii) any prospects of the Company or its affiliates who had been solicited within two (2) years prior to such termination directly by me or where I supervised, directly or indirectly, in whole or in part, the solicitation activities related to such prospective institutional clients, or (iii) former institutional clients who were clients of the Company or its affiliates within one (1) year prior to such termination, or (iv) Putnam fund shareholders by means of any targeted solicitation; or

    b) hire any employee of the Company, or solicit or induce any employee of the Company to terminate his/her employment with the Company.

I understand that merely working for a competing fund group and arranging for a particular dealer or brokerage firm, that offers funds from a variety of fund groups and does not have an exclusive arrangement with Putnam, to add such funds to the mix of funds available to the clients of that dealer or brokerage firm would not violate this non-solicitation agreement.

This Agreement shall be governed by and enforced in accordance with the laws of the Commonwealth of Massachusetts, and all disputes arising under this Agreement shall be brought in courts located within the Commonwealth of Massachusetts.

_____
Signature

6/14/94
_____
Date

LS-0407

## CONFIDENTIALITY AGREEMENT

I agree that I will not at any time, during or after my employment by Putnam Investments, Inc. or any of its affiliates (collectively "Putnam"), without Putnam's prior written consent, reveal or disclose to any person outside of Putnam, or use for my own benefit or the benefit of any other person or entity, any confidential information concerning the business or affairs of Putnam, or concerning Putnam's customers, clients or employees ("Confidential Information"). For purposes of this Agreement, Confidential Information shall include, but shall not be limited to, financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; investment models, practices, procedures, strategies or related information; research and/or analysis; and information concerning new or potential investors, customers, clients, or shareholders. confidential Information shall not include Confidential Information already available to the public through no act of mine.

I further understand and agree that all such Confidential Information, however or whenever produced, shall be Putnam's sole property, and shall not be removed by me (or anyone acting at my direction or on my behalf) from Putnam's custody or premises without Putnam's prior written consent. Upon termination of my employment, I will deliver to Putnam all copies of all documents, equipment, property or materials of any type in my possession, custody or control, that belong to Putnam, and/or that contain, in whole or in part, any Confidential Information

_____
Signature

_____
6/14/94
Date

# EXHIBIT C

## CERTIFICATE & CONFIDENTIALITY AGREEMENT

1.  <u>Code of Ethics Certification</u>.  I certify that I have read, understand and will comply with Putnam's Code of Ethics.  I also certify that (a) I have complied with the Code's requirement to have my broker send all confirmations of personal securities transactions to the Code of Ethics Assistant, and (b) I have no brokerage accounts other than the ones for which confirmations are provided.

2.  <u>Confidentiality Agreement</u>.  I agree that I will not at any time, during or after my employment by Putnam Investments, Inc. or any of its affiliates (collectively, "Putnam"), without Putnam's prior written consent, reveal or disclose to any person outside of Putnam, or use for my own benefit or the benefit of any other person, any Confidential Information, as defined below.

For the purposes of this Agreement, "Confidential Information" means any confidential information concerning the business or affairs of Putnam or concerning Putnam's customers, clients, or employees, including but not limited to the following:

> financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; investment models, practices, procedures, strategies or related information; research and/or analysis; and information concerning new or potential investors, customers, clients or shareholders.

Confidential Information shall not include Confidential Information already available to the public through no act of mine.

I further understand and agree that all such Confidential Information, however or whenever produced, shall be Putnam's sole property, and shall not be removed by me (or anyone acting at my direction or on my behalf) from Putnam's custody or premises without Putnam's prior written consent.  I also agree to comply with procedures in effect from time to time at Putnam with respect to the destruction of confidential material.  Upon termination of my employment, I will deliver to Putnam all copies of all documents, equipment, property or materials of any type in my possession, custody or control, that belong to Putnam, or that contain, in whole or in part, any Confidential Information.

Date:

Signature

Print name: Lisa H. Svansson

Social Security number: 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

# EXHIBIT D

# CERTIFICATE & CONFIDENTIALITY AGREEMENT

1. **Code of Ethics Certification**.  I certify that I have read, understand and will comply with Putnam's Code of Ethics.  I also certify that (a) I have complied with the Code's requirement to have my broker send all confirmations of personal securities transactions to the Code of Ethics Assistant, and (b) I have no brokerage accounts other than the ones for which confirmations are provided.

2. **Confidentiality Agreement**.  I agree that I will not at any time, during or after my employment by Putnam Investments, Inc. or any of its affiliates (collectively, "Putnam"), without Putnam's prior written consent, reveal or disclose to any person outside of Putnam, or use for my own benefit or the benefit of any other person, any Confidential Information, as defined below.

For the purposes of this Agreement, "Confidential Information" means any confidential information concerning the business or affairs of Putnam or concerning Putnam's customers, clients, or employees, including but not limited to the following:

financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; investment models, practices, procedures, strategies or related information; research and/or analysis; and information concerning new or potential investors, customers, clients or shareholders.

Confidential Information shall not include Confidential Information already available to the public through no act of mine.

I further understand and agree that all such Confidential Information, however or whenever produced, shall be Putnam's sole property, and shall not be removed by me (or anyone acting at my direction or on my behalf) from Putnam's custody or premises without Putnam's prior written consent. I also agree to comply with procedures in effect from time to time at Putnam with respect to the destruction of confidential material. Upon termination of my employment, I will deliver to Putnam all copies of all documents, equipment, property or materials of any type in my possession, custody or control, that belong to Putnam, or that contain, in whole or in part, any Confidential Information.

Date: 7/9/98

Signature

Print name: Lisa Svensson

Social Security number: 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

6