UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,<br><br>      Plaintiff,<br><br>    v.<br><br>PUTNAM INVESTMENTS LLC, f/k/a PUTNAM INVESTMENTS, INC. and LAWRENCE J. LASSER,<br><br>      Defendant. | CIVIL ACTION<br>NO.  04-12711 PBS |

### PUTNAM INVESTMENT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendant Putnam Investments ("Putnam"), by its attorneys, hereby opposes plaintiff Lisa Svensson's ("Svensson") Motion to Compel Defendant's Production of Documents (the "Motion").  As set forth below, Putnam respectfully requests that this Court deny Svensson's motion on the grounds, among others, that she seeks to compel the production of records or documents that (1) go well beyond the issues raised in Svensson's Amended Complaint and/or do not contain information relevant to this action; (2) would be extremely burdensome to identify and collect; and/or (3) violate the work product doctrine by seeking the mental impressions of Putnam's attorneys.  Putnam states the following in support of its Opposition:

### FACTUAL BACKGROUND

As of the Summer of 2003, Svensson was an Assistant Director of Research for defendant, Putnam Investments, LLC, f/k/a Putnam Investments, Inc. ("Putnam").  Svensson supervised four analysts.  That summer, Svensson contacted Mary McNamee ("McNamee") in Putnam's Human Resources Department with highly critical comments about one of her otherwise well-regarded subordinates, Chris O'Malley ("O'Malley").  Putnam officials by then had reason to believe that another highly-regarded analyst who reported to Svensson was leaving

Putnam because of the difficulties he experienced working for Svensson. Surprised by Svensson's comments about O'Malley, McNamee and the management of Putnam's Global Equity Research ("GER") Department, the department in which Svensson worked, decided to investigate Svensson's claims about O'Malley's performance and capabilities. During that investigation, Putnam learned that key statements made by Svensson about O'Malley were false. Putnam also learned disturbing information about Svensson's management of her subordinates, including that a highly-regarded analyst was resigning in significant part due to Svensson's management style. As it turns out, O'Malley also was seriously contemplating resignation for the same reason. Based on that review and other feedback obtained about Svensson's job performance, Putnam concluded that Svensson could no longer function as a manager. Putnam offered to retain Svensson in a non-managerial position, but she refused. (Svensson also refused Putnam's alternative proposals that she (a) seek employment elsewhere within Putnam or (b) leave Putnam with an appropriate severance package.) Svensson's refusal left Putnam with no option but to terminate her employment.

## PROCEDURAL BACKGROUND

On December 23, 2004, Svensson filed her Complaint and Jury Demand and amended that Complaint on January 5, 2005. The gravamen of Svensson's complaint is that Putnam (a) terminated her employment and failed to promote her from Senior Vice President to Managing Director on account of her gender in violation of Title VII and Mass. Gen. Laws ch. 151B; (b) compensated her less than similarly situated male counterparts in violation of the Massachusetts Equal Pay Act ("MEPA"); and (c) retaliated against her for filing her charge and for complaining about internal business practices of Putnam by refusing to repurchase her Putnam equity and failing to pay her certain deferred compensation payments allegedly due her. Svensson demands damages in the amount of $25 million.

Putnam filed its Answer and Separate Defenses on March 7, 2005, denying all material allegations of the Amended Complaint. On August 9, 2005, Svensson submitted her first request for production of documents to Putnam. Subsequently, Putnam provided document responses on

September 16, 2005 and produced documents on October 3, 2005. The parties communicated in a good faith attempt to resolve the discovery disputes. Pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37.1, the parties conducted a lengthy discovery conference on October 25, 2005, to discuss Putnam's objections to Svensson's requests (the "Conference Call"). Subsequently, Putnam's counsel made various proposals to narrow the scope of Svensson's requests. Without responding to the particulars of Putnam's proposals, Svensson filed her Motion to Compel Discovery on November 4, 2005[1] See Exhibits D, E and F to Svensson's Motion.

## ARGUMENT

### SVENSSON HAS FAILED TO ESTABLISH ANY BASIS FOR THE PRODUCTION OF THE DISPUTED DOCUMENTS

**Request No. 2**

All documents and records concerning Putnam's terminations, denials of promotion, and demotions of Putnam employees from January 1, 1994 to the present including names, addresses, job titles, job descriptions, seniority and gender of the persons affected by each such adverse employment decision.

**Response No. 2**

Putnam objected to Request No. 2 on the ground, among others, that it (a) called for information concerning a wide range of employees who were not similarly situated to Svensson, and (b) covered an excessively long time period. Putnam further objected to this request in that it called for the production of confidential and proprietary information. Although the parties

---

[1] Svensson has engaged in other questionable discovery tactics. For example, on June 8, 2005, Svensson served a First Set of Interrogatories that contained 32 interrogatories, many of which contained multiple sub-parts, in excess of the 25 (including sub-parts) permitted by Local Rule 26.1(C). Putnam's counsel promptly asked Svensson's counsel which 25 interrogatories Svensson wanted Putnam to answer. Svensson ignored this request, forcing Putnam to object to the interrogatories as propounded. Svensson then re-served virtually the same interrogatories, simply grouping the 32 interrogatories into fewer interrogatories with numerous sub-parts. Similarly, given the sensitivity of the detailed personnel information requested by Svensson in discovery, Putnam requested that Svensson enter into a standard confidentiality order that would ensure that confidential information produced in discovery be used or disclosed solely in connection with the litigation. Svensson has refused to agree to such an order, forcing Putnam to move for a protective order.

narrowed the scope and time period of this Request during their Conference Call, in her Motion Svensson continues to insist on production of documents concerning investment professionals in Putnam's Domestic or International Value, Core and Growth Teams. Putnam continues to object to the discovery as so limited because Svensson was never a member of any of these teams.

In her motion to compel, Svensson asserts, in conclusory terms and without any supporting legal authority, that the information she seeks is information to which she is entitled. Svensson has utterly failed to carry her burden on this point. This Court has held that Svensson may discover only that personnel information that is relevant and sufficiently necessary to outweigh the privacy rights of current and former Putnam employees. *Whittingham v. Amherst College*, 164 F.R.D. 124, 127 (D.Mass. 1995). Svensson must show that the files she requests are relevant to her claims - that is, that the files relate to people who are similarly situated to her, and that have suffered similar treatment. *Id.* (denying plaintiff's motion to compel discovery of personnel files of three minority former deans in the admissions office, where plaintiff "made no real showing that these three [former deans] suffered similar treatment.").

In an inadequate attempt to meet her burden, Svensson simply baldly asserts that Putnam's adverse employment decisions disproportionately affected female investment professionals and sales and marketing officers. See Svensson Motion, p 3. This conclusory assertion - devoid of any factual support - rests on mere speculation regarding the contents of the requested documents, and is thus no basis for the type of broad-based discovery sought by Svensson. See *United States v. Concemi*, 957 F.2d 942, 949 (1st Cir. 1992) ("Mere speculation as to the content of the documents is hardly a showing of relevance."). Svensson makes no showing that any of the individuals as to which she seeks information actually were terminated or suffered adverse employment actions, on account of their gender. Moreover, the termination, promotion or non-promotion of Putnam employees of whose departments Svensson was never a member is simply not relevant to the issue of whether she was discriminated against based on her gender. *Jackson v. Harvard University*, 111 F.R.D. 472, 474 (D.Mass. 1986) (denying discovery of information relating to schools other than the Business School because the Plaintiff offered no

- 4 -

evidence to refute the Defendant's assertion that each school was autonomous in its personnel decisions). This Court has made clear that, without such a direct showing of relevance, Svensson is not entitled to discovery. *Whittingham*, 164 F.R.D.at 127. Putnam has been, and remains willing to produce documents concerning relevant comparators, including the other Portfolio Managers in Global Growth from 2000 and 2001, and the Analysts in GER in 2002. These are the departments of which Svensson was a member during the years in question.

Beyond the issue of relevance, Svensson must show that the personnel information that she seeks, even if relevant, is of such importance to her case that it outweighs the privacy interests of Putnam's current and former employees. *Id.*, at 128. Svensson has requested confidential information with respect to compensation, performance reviews, disciplinary sanctions, and so on, concerning scores of employees. She is not entitled to such information because she has failed to make a "showing that any, let alone all, of the information is relevant to [her] claims." *Id.* at 127. As noted above, Svensson was never a member of Domestic or International Value, Core and Growth Teams. Nor has she established that all members of the Research Department possessed the same "skills, knowledge and abilities," such that they are relevant comparators. *Id.* at 128. Finally, Svensson has not established that every single document that in any way relates to every one of the relevant individuals is relevant to her claims.

**Request No. 7**

All documents which relate to or support any of the admissions, denials, denials of knowledge or information or other allegations contained in Defendant's Answer, including but not limited to paragraphs.

**Response No. 7**

Putnam objected to Request No. 7 on the grounds that it was incomplete in that Svensson did not indicate any specific paragraphs in Putnam's Answer. Putnam further objected on the grounds that the Request failed to describe any specific categories of document(s) that Svensson sought to have produced and therefore, could not be responded to by Putnam without revealing

information protected by the work-product doctrine.   During the Conference Call, the parties were unable to resolve this dispute.   Putnam continues to assert that this request is objectionable because it requires Putnam's attorneys to look at thousands of documents and make a determination about which documents might be relevant to Svensson's claims or supportive of one or more of Putnam's defenses.   In effect, Putnam can only respond to this request by revealing the mental impressions, thoughts and analysis of its counsel.

Rule 26(b)(3) guards against the disclosure of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."   Requiring Putnam's attorneys to produce all documents relating to Svensson's claims or to the admissions or denials contained in Putnam's Answer would necessarily reveal its attorneys' mental impressions with respect to relevant documents.   A request that requires a party to produce all documents relied upon to support admissions or denials is thus improper. *See Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) (ruling that an attorney need not reveal whether her client possessed documents supporting the plaintiff's Complaint. The court held that the work-product doctrine protected this type of information since it would reflect the attorney's professional judgment in identifying, examining, and selecting from her client's voluminous files those documents she would rely upon in preparing her client's case); *Flynn v. Church of Scientology*, 116 F.R.D. 1, 7 (D.Mass. 1986) (denying defendant's motion to compel information about the plaintiff's subjective physical condition from the plaintiff's attorney on the grounds that such observations are relevant to the attorneys thought processes and personal beliefs concerning the case).

**Request No. 8**

All documents which relate to, or support, any of the affirmative defenses asserted in Putnam's Answer.

**Response No. 8**

Putnam objected to Request No. 8 on the grounds that it does not describe any specific category of document(s) that Svensson seeks to have produced and thus cannot be responded to

- 6 -

by Putnam without revealing information protected by the work-product doctrine. For the reasons articulated in Response No. 7, Putnam continues to object to this request.

**Request No. 10**

Any and all documents concerning Plaintiff's employment with Putnam, including, without limitation, job descriptions, manuals, handbooks, performance reviews and evaluations, warnings, documents concerning job performance, company policies, and documents concerning denial of promotions to Plaintiff, demotions of Plaintiff, transfers of Plaintiff, and the termination of Plaintiff on September 15, 2003.

**Response No. 10**

Putnam objected to Request No. 10 on the grounds that it was vague, overly broad and unduly burdensome and called for the production of documents unrelated to the instant litigation and/or documents not reasonably calculated to lead to the discovery of admissible evidence. Read literally, Svensson's initial request sought practically every document Svensson touched over her nine years at Putnam. During the Conference Call, counsel for both parties agreed to narrow the scope of this request to the following categories of documents relevant to Svensson's job performance: (1) her alleged demotion to GER in March 2002; (2) the alleged denial of a Managing Director position; (3) her removal from her managerial position on August 28, 2003; and (4) the September 15, 2003 termination (for convenience, the "Employment Actions").

To the extent that, by filing her motion, Svensson now seeks production of the documents described in the Request as originally worded, the Request is objectionable. It is not the case that "all documents concerning Plaintiff's employment with Putnam" are relevant to this case. Literally tens of thousands of documents fit that description, and Svensson's motion makes no showing that all of those documents are relevant or likely to lead to the discovery of admissible evidence.

With respect to documents relating to Svensson's nomination to Managing Director, Putnam responds that it remains willing to produce any document relating to her nomination for the officer title Managing Director in any year in which she was so nominated.

- 7 -

**Request No. 11**

Any and all documents concerning any and all meetings, communications, and conversations between Putnam's Management and any former or current employee of Putnam relating in any manner to the issues raised in Plaintiff's Complaint.

**Response No. 11**

Putnam objected to Request No. 11 on the grounds that it is vague, overly broad and unduly burdensome, requires Putnam to speculate as to what Svensson considers to be the "issues raised in Plaintiff's Complaint" and calls for the production of documents unrelated to the instant litigation and/or documents not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objected to this Request on the grounds that the Request does not describe any specific category of document(s) that Svensson seeks to have produced and thus cannot be responded to by Putnam without revealing information protected by the work-product doctrine. During the Conference Call, the parties had agreed to limit the subject matter of this Request to the Employment Actions referenced in Response No. 10.

To the extent that, by filing her motion, Svensson once again seeks all communications "relating in any manner to the issues raised in Plaintiff's Complaint", that Request is objectionable. Once again, the Request does not specify specific issues or categories of documents and requires Putnam's counsel to reveal their mental impressions concerning Svensson's claims. See discussion above concerning Requests 7 and 8.

In addition, the Request as propounded is unduly burdensome, calling as it does for production of "any communications" on a wide range of unspecified issues. Employees at Putnam – like employees at most large corporations – communicate largely by email. On any given day, an employee may send and receive in excess of 100 emails, such that searching for any communications by any of Putnam's thousands of current and former employees about a broad range of undefined subject matters would constitute an undue burden and expense to Putnam. For example, a search for any email mentioning Svensson would produce every email sent to Svensson even if it was nothing more than an email to her and every other Putnam

- 8 -

employee announcing the annual United Way drive.[2] There is no "smart search" that can be done to eliminate such emails, so all would need to be reviewed by counsel. As presently requested, therefore, production of responsive documents would require the review of potentially hundreds of thousands of emails, the overwhelming majority of which have no bearing on the present action. Svensson cannot require Putnam to search for any document that *may* be relevant. Discovery is not "a fishing expedition." *Milazzo v. Sentry Ins.,* 856 F.2d 321 (1st Cir. 1988). This Court has recognized that electronic discovery is enormously burdensome and potentially endless. *See Cognex Corp. v. Electric Scientific Indus. Inc.*, 2002 WL 2309413 (D.Mass., July 2, 2002). As such, Svensson should be required to disclose some relevant factual basis for the broad electronic discovery she seeks before such discovery will be allowed.

### Request No. 12

Any and all documents concerning any litigation, complaints, or charges involving gender discrimination, marital status discrimination, sexual harassment or denial of equal pay claims by female employees of the Defendant, from January 1, 1994 to the present.

### Response No. 12

Putnam objected to Request No. 12 on various grounds, including that the Request was overly broad and unduly burdensome and called for the production of documents unrelated to the instant litigation and/or documents not reasonably calculated to lead to the discovery of admissible evidence. Finally, Putnam objected to the request for any documents relating to any

---

[2] For example, on November 16, 2005, in preparation for Josh Brooks's deposition (Brooks headed Svensson's department for a few months in 2003), Putnam's counsel reviewed Brooks' in and out email boxes for the eight months during which his employment at Putnam overlapped with Svensson's. A narrow search just for emails to or from Mr. Brooks that contained "Svensson" in the text, returned over five hundred emails. When Putnam's lawyer expanded that search to include both "Lisa" and "Svensson" in the text, and limited the search to *one month*, the computer stopped producing emails when the count reached 500. As an estimate, to search just Josh Brooks' email over eight months simply for emails with Lisa or Svensson in the text would require Putnam attorneys to review in excess of 4000 emails. If Svensson has her way, Putnam would need to search the mail boxes of many other employees over many years on many subject matters. To do so would require the review of hundreds of thousands of emails.

LITDOCS/622679.1

alleged "marital status discrimination" as "marital status" is not a protected characteristic under federal or Massachusetts law.

In the Conference Call, Mr. Weir acknowledged that "marital status" is not a protected category, and agreed to limit his inquiry to gender discrimination and complaints by women. Despite this understanding, in Svensson's Motion she reiterates her demand for information respecting marital status discrimination until the Court determines that marital status is not a protected characteristic. Svensson is not entitled to information relating to allegations of discrimination on the basis of non-protected characteristics, and marital status is not a protected characteristic under federal or Massachusetts law. *Fontneau v. Town of Sandwich*, 251 F.Supp. 2d 994 (D.Mass. 2003) (holding that marital status is not a protected class).

Svensson contends in her Motion that other complaints of gender discrimination are evidence of animus and are relevant to her claims. This argument lacks merit. Svensson seeks documents relating to other claims of gender discrimination against Putnam over a nine-year period, without regard to department or decision maker. Putnam has had as many as 6500-7000 employees at any one time at various times during Svensson's employment. The fact that other gender discrimination claims, if they exist, may involve decision-makers who had absolutely no role in any employment action relating to Svensson is determinative that such a request is inappropriate. *Medina-Munoz v. R.H. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir. 1990) (the biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case); *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 138 (W.D. Okla. 1977) (denying motion to compel discovery of other complaints of discrimination because they are not relevant.) Svensson's blanket request for all gender related discrimination complaints, over a nine-year period, is thus overly broad and inappropriate.

**Request No. 16**

Any and all documents prepared by any Putnam employee that relate to each and every personnel decision made with respect to Plaintiff by Putnam, including, but not limited to, all documents reflecting the reasons for, or circumstances surrounding, such personnel decisions.

**Response No. 16**

Putnam objected to Request No. 16 on various grounds, including that it failed to define what Svensson meant by "personnel decision." During the Conference Call, Svensson's attorney agreed to narrow this request to the Employment Actions referenced in Response No. 10. Putnam cannot tell from the present Motion whether Svensson's counsel has repudiated his prior agreement. To the extent that Svensson is agreeable to the Request as so narrowed and limits the Request to the time period from 2000 to 2003 (as discussed during the Conference Call), Putnam remains willing to produce responsive documents, with the caveat discussed below.

In connection with this request, as discussed during the Conference Call, and as Mr. Kociubes noted in his October 27 email, Svensson Motion, Exhibit F, Putnam is prepared to have the electronic-in and out-boxes of the following individuals searched for communications which mention Svensson: Mary McNamee, Rick Tibbetts, Josh Brooks, William Landes, Kelly Morgan, Ed Haldeman, Christine Scordato, Sherrie Holder-Watts, Larry Lasser and Mitch Schultz. For the reasons articulated in Putnam's discussion with respect to Request No. 11 above, Putnam objects to searching the email boxes of any individual other than those discussed above – that is, of anyone as to whom Svensson has not shown a particularized need and relevance. Putnam also objects to searching for any emails about a broad set of unspecified topics. For example, during the Conference Call, Svensson's counsel suggested that he wanted Putnam to search the email boxes of all of Putnam's Human Resources personnel and the members of its Operating Committee for the period 1999-2003. In just calendar year 2003, Putnam employed roughly 95 non-administrative employees in its Human Resources Department. The Operating Committee consisted of at least 8 to 10 additional individuals. Only a few of these Human Resources and Operating Committee professionals had any significant interaction with Svensson, and those people are listed above. No broader request is necessary or appropriate.

- 11 -

**Request No. 18**

Plaintiff's pay stubs, payroll records, earnings records, and other documents reflecting any and all sources and/or amounts of income, earnings or other remuneration from Putnam, obtained during the period from the commencement of Plaintiff's employment with Putnam to the present.

**Response No. 18**

Putnam never objected to Request No. 18.  In its initial response, Putnam agreed to produce Svensson's W-2's for the period of her employment by Putnam, together with a summary of any deferred or equity compensation that Svensson received while employed by Putnam.  In her Motion, Svensson claims that there are additional documents pertaining to her deferred or equity compensation and Putnam stocks that have not been produced.  Putnam has not, and does not intend, to withhold non-duplicative or non-cumulative documents reflecting compensation paid to Svensson.  If Svensson has such additional documents that she believes exist, and describes them to Putnam, Putnam will attempt to locate them.

After serving the Requests, Svensson now seeks information concerning the aggregate amount of compensation available to pay investment professionals.  As set forth above, Request No 18 is limited to documents (pay stubs, etc.) evidencing Svensson's compensation, stock grants and stock option grant.  Putnam objects to producing information not requested in the Request as propounded.  Moreover, information about compensation pools across the entire company is not relevant to the claims presented by Svensson.  *Whittingham,* 164 F.R.D. at 128 (denying plaintiff's request for salary recommendations relating to employees who were not similarly situated).

**Request No. 19**

Any and all statements or other communications from financial institutions reflecting stock grants or stock options, whether vested or unvested, provided to Plaintiff from the commencement of her employment with Putnam to the present, including but not limited to Plaintiff's monthly statements during the aforestated period.

- 12 -

**Response No. 19**

Putnam objected to Request No. 19 on various grounds, including that Putnam does not understand what Svensson means by the phrase "communications from financial institutions." Putnam or its parent company are the only entities that would have communicated with Svensson about the subject of the Interrogatory. Putnam has produced, and continues to be willing to produce, documents summarizing Svensson's Putnam and/or Marsh and McLennan restricted shares and/or stock options throughout her employment.

With regard to Svensson's retirement account, Putnam has never withheld this money from her. Per the terms of the applicable plan, Svensson need only contact Putnam's Human Resources Department to arrange for the disposition of her 401(k) account per the terms of the Plan. During the Conference Call, Putnam's attorneys informed Svensson's counsel about this process. For Svensson to continue to suggest that Putnam is unlawfully withholding her 401(k) monies is disingenuous.

**Request No. 20**

Any and all documents prepared by, signed by, sent to Plaintiff by, given to Plaintiff by, or received from any employee or former employee of Putnam concerning Plaintiff's job duties or job performance while in Putnam's employ.

**Response No. 20**

Putnam objected to Request No. 20 on various grounds, including that, read literally, the Request encompasses all communications and work product generated by Svensson or her teams, along with all communications by or about her by any Putnam employee over the nine years that she worked at Putnam. In her Motion, Svensson claimed that other relevant documents exist that Putnam has not produced. Putnam responds that, to the extent that any documents were part of Svensson's personnel file, such documents have been produced. To the extent that any additional such documents may exist on Putnam's email servers, Putnam is prepared to produce relevant emails that mention Svennson that were sent or received by the individuals mentioned in the discussion with respect to Request 16 above as soon as those email boxes have been restored

- 13 -

and reviewed. Putnam objects to any broader search for the reasons discussed above with respect to Request 11.

**Request No. 22**

Any and all documents that relate to any communications between Putnam and present or former employees or agents of Putnam which relate to Plaintiff during the period of her employment with Putnam.

**Response No. 22**

During the Conference Call, the parties narrowed this request to communications relating to the Employment Actions referenced in Response No. 10 by the individuals listed in Response No. 16, along with Patrick O'Donnell, Robert Swift, Steve Gorman, Darren Peers, Konstantin Stoev, Ellis Ecklund, Chris O'Malley, Carol MacMullen and Tim Ferguson. By filing her Motion, Svensson appears to have repudiated this agreement.

Putnam is prepared to produce relevant emails that mention Svennson that were sent or received by the individuals mentioned in the discussion with respect to Request 16 above as soon as those email boxes have been restored and reviewed. Putnam objects to any broader search for the reasons discussed above with respect to Request 11. Requiring Putnam to search the email files of the additional individuals mentioned will impose a substantial additional burden on Putnam without any showing by Svensson that such a search is likely to yield anything relevant or useful. For example, Patrick O'Donnell hired Svensson in 1994, has been gone from Putnam for many years, and played no role in any of the Employment Actions. His email may not even be restorable since all or most of his emails would predate substantial system conversions at Putnam. Similarly, Messrs. Stoev, Peers and O'Malley worked for Svensson and will thus likely have voluminous email exchanges with her, the bulk of which are wholly irrelevant. They will need to be found and reviewed nonetheless, at great expense. Putnam should not be required to produce such a vast array of documents without a particularized showing of relevance by Svensson.

LITDOCS/622679.1

WHEREFORE, Putnam respectfully requests that the Court deny Plaintiff's Motion to Compel the Defendant's Production of Documents, and grant such other relief as it determines to be just.

**PUTNAM, LLC,**

By its attorneys,

/s/ Rachael Splaine Rollins
Joseph L. Kociubes, BBO #276360
Louis A. Rodriques, BBO #424720
Rachael Splaine Rollins, BBO #641972
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: November 22, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon plaintiff's counsel by facsimile and hand (Boston) and by regular mail (New York) on November 22, 2005.

/s/ Rachael Splaine Rollins
Rachael Splaine Rollins

- 15 -