UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,<br>    Plaintiff<br><br>VS<br><br>PUTNAM INVESTMENTS LLC, f/k/a<br>PUTNAM INVESTMETNS, INC. and<br>LAWRENCE J. LASSER,<br>    Defendants | CIVIL ACTION<br>NO: 04-12711 PBS |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF PROTECTIVE ORDER CONCERNING CONFIDENTIALITY

### 1. INTRODUCTION

Plaintiff, Lisa Svensson ("Svensson") submits this memorandum in response to Defendant, Putnam Investments ("Putnam's") Motion for Entry of Protective Order Concerning Confidentiality. Svensson opposes the Motion for Entry of Protective Order Concerning Confidentiality because the proposed Protective Order is not timely; because the request is overly broad, and allows for information and documents which would not otherwise be considered confidential to be deemed "confidential"; because Putnam has not met its burden of showing good cause as to why the Court should issue a protective order; because the public's interest in preventing unlawful gender discrimination both on an individual and class-wide basis outweighs any alleged privacy concerns that somehow accrue to, and avail, Putnam; and because Svensson will agree to more limited confidentiality protection for information respecting other current employees, employment history, compensation, job performance evaluations and the

1

purported reasons reflected in Putnam's documents for taking positive or negative employment actions, thereby vitiating the need for the overly broad Protective Order which has been proposed by Putnam. Such protective order would limit disclosure of said information to the Court and the jury, the parties, the parties' actual or potential witnesses and experts, and counsel, but would not otherwise impede the discovery process or the presentation of relevant evidence at trial.

## II. BACKGROUND

On January 11, 2005, Lisa Svensson filed a Complaint against Putnam based upon Putnam's gender discrimination against her during her nine years of employment with Putnam, as well as claims for retaliation, fraud, breach of contract and other claims as detailed more fully in the First Amended Complaint. Notably, it is specifically alleged that Putnam has repeatedly retaliated against Svensson by deliberately withholding deferred compensation and stock rights which she had received in earlier years as a portion of her compensation in those years, solely because she refused to sign a Separation Agreement under which she would be required to forever waive and forego her right to sue Putnam for gender discrimination, and under which she was further required to preserve confidentiality of Putnam's undefined "confidential" information. At trial, Svensson will need to prove facts supportive of each of these individual claims, as well as the existence at Putnam of a so-called "glass ceiling" for women, especially at the levels of Managing Director and above. Svensson will also be required to prove that she was disparately treated in comparison to her male comparators in promotions, transfers, demotions and compensation, and was ultimately terminated because two male subordinates purportedly

objected to her continuing as their supervisor, and Putnam acceded to their outrageous threats to leave unless she were removed; or that Putnam's policies respecting promotions, transfers, demotions and terminations had a disparate impact upon Putnam female employees.

Not only has Putnam stymied meaningful discovery by outright refusing to provide requested documents throughout the course of discovery,(the subject of which is currently being addressed by this Court through a Motion to Compel that is scheduled to be heard on December 13, 2005), and by producing redacted documents on the eve of key depositions which render the document incomprehensible, and by failing to provide complete and adequate responses to interrogatories served by Svensson, but Putnam has also now proposed an overly broad and burdensome Protective Order/Confidentiality Agreement which would essentially prevent Svensson from using some of the very documents that she herself produced in discovery to prove her case. Putnam's proposal for such a belated and after-the-fact Protective Order/Confidentiality Agreement is merely another example of the ways in which Putnam has utilized delaying tactics in the discovery process to impede the completion of fact discovery, and to impossibly complicate the ordered presentation of necessary evidence in open Court. If this case is to proceed expeditiously (the parties are presently operating under an increasingly unrealistic February 1, 2006 deadline for completion of all fact discovery) it is critically important that Svensson be allowed to use unredacted documents, answers to interrogatories, deposition testimony and other information obtained during the course of discovery in order to garner and present evidence in her case. In addition, Svensson should not be forced by Putnam into entering into an overly broad Protective Order/Confidentiality Agreement, especially considering that Putnam has a long history of forcing current employees and departing

employees to enter into overly restrictive confidentiality agreements, and then arbitrarily enforcing them against those employees when they attempt to pursue their civil rights against Putnam, or to use them to threaten former employees who would otherwise be potential co-Plaintiffs or witnesses in this lawsuit, or in their own lawsuit.

## III. ARGUMENT

Svensson respectfully submits that each of the following bases for her opposition to the proposed Protective Order, whether considered separately or in the aggregate, warrant denial of Putnam's motion, as follows:

Putnam's request for a protective order should be denied because it is not timely, and Putnam has therefore waived their argument regarding confidentiality of documents produced; Putnam's proposed order is burdensome and overly broad, and would allow Putnam to designate virtually any material as confidential; Putnam has not put forth sufficient reasons for "good cause" to issue a protective order because there is a strong public interest in disclosing rampant gender discrimination at Putnam and at other large corporate employers in the lucrative financial services industry, which far outweighs any alleged employee or former employee privacy interests (of which Putnam hereby casts itself as the purported beneficiary), which interests would be protected by Svensson's willingness to agree to a more limited protective order respecting confidentiality for certain categories of information for Putnam's employees.

A.     <u>PUTNAM'S MOTION FOR PROTECTIVE RODER CONCERNING CONFIDENTIALITY IS NOT TIMELY</u>

Svensson should not be forced to enter into a protective order concerning confidential information because Putnam's request for a Protective Order concerning confidentiality is not

4

timely and Putnam has therefore waived its right to argue that certain information should be the subject of a protective order. Putnam did not raise the issue of confidentiality until long after Putnam's document responses were due, and until well after Svensson had produced voluminous documents, in response to Putnam's own discovery requests, on August 31, 2005. Svensson served her First Request for Production of Documents and First Set of Interrogatories on Putnam on or about August 9, 2005. Putnam has opposed producing most of the requested documents and in fact, to date, has produced little more than Svensson's personnel file and some emails respecting communications between Svensson and the two Putnam witnesses already deposed (which, in each instance, were delivered on the very eve of the depositions). There was no mention from Putnam or their counsel of a proposed Confidentiality Agreement in Putnam's Response to Request for Production of Documents, no mention until long after Putnam's document responses were overdue, no mention of same until after Plaintiffs counsel had requested a pre-motion discovery conference in order to file a Motion to Compel, and no mention at the pre-motion conference itself. Indeed, the very first mention of a confidentiality agreement was in an email from Putnam's counsel in late October, 2005, in which Putnam's counsel indicated that Putnam was awaiting a response to their proposed confidentiality agreement, which Plaintiffs counsel had never seen. When Plaintiff's counsel pointed out to Putnam's counsel that he had never received any proposed confidentiality agreement to consider, and indicated that it was unlikely, given the belated nature of the request, that Plaintiff would voluntarily agree to it, Putnam then waited until November to do anything further. At that time, Plaintiff's counsel received an email purporting to forward a draft Confidentiality Agreement, but the email failed to contain the enclosure. When this oversight was pointed out to Putnam's

counsel, a further email, this one containing a proposed draft of a Confidentiality Agreement, was, for the very first time, received by Plaintiff. A review of Putnam's proposed Agreement indicated to Plaintiff that it was clearly overbroad and therefore objectionable, but before those views could even be communicated to Putnam's counsel, the instant Motion was filed with the Court. At this point in time, long after Putnam's documents are overdue and Svensson has answered interrogatories, produced voluminous documents and been deposed, Putnam's request for a broadside Protective Order regarding confidential information should be regarded as nothing more than another attempt at further unwarranted delay in critical discovery, and should properly be denied as untimely.

B.  **PUTNAM'S REQUEST FOR A PROTECTIVE ORDER IS TOO BROAD**

Putnam's proposed order is, by its terms, unduly oppressive and burdensome. Entry of Putnam's proposed order will unduly prejudice Svensson's ability to prosecute her case and will further delay these proceedings. Putnam's current proposal allows Putnam to designate virtually any information gathered during the course of discovery as "protected", including documents, transcripts, answers to interrogatories, and motions, among other items. Discovery is meant to include full disclosure by all parties of all relevant, unprivileged information which is not a trade secret or otherwise truly confidential, even information which might lead to the discovery of admissible evidence. It is not meant to thwart the ability of the Plaintiff to prove her case. The requested documents and answers to interrogatories, as well as the discovery previously produced by Svensson, which Putnam now claims are "confidential" are required to prove Svensson's claims as detailed in her First Amended Complaint. To date, Svensson has requested

6

only minimally necessary information regarding current and former Putnam employees pertaining to their gender, positions held, reasons for termination, demotion or other employment action, salary information, performance reviews and the like, and has not yet sought the entire personnel files of Plaintiff's male or female comparators. To the extent that Svensson will require production of personnel files of other current employees of Putnam, she is willing to agree to confidential treatment of this information, although many of the female investment professionals who are or would be the subjects of this discovery have, upon information and belief, been demoted or forced out of Putnam and would likely embrace broad disclosure if Putnam would allow it. In seeking this information, Svensson is merely trying to obtain enough evidence to prove that Putnam's employment practices show a pattern of discrimination against female investment professionals, as alleged in her Complaint. The information sought is not what one would consider "confidential" to Putnam, in that no trade secrets, client information or commercial information is contained.

 Furthermore, Putnam has a notable reputation for forcing its employees to enter into restrictive and overly broad confidentiality agreements, and then punishing them arbitrarily for any alleged breaches of those agreements. Svensson is therefore hesitant to enter into an agreement which is any broader than is absolutely necessary to protect whatever legitimate interests (if any) Putnam has in preserving confidentiality. In light of Svensson's stated willingness to abide by a more narrowly defined Protective Order regarding confidentiality for other Putnam employees' private information, as detailed more fully below, Putnam's request for the Court to enter a protective order should be denied.

### C. PUTNAM HAS NOT SHOWN GOOD CAUSE AS TO WHY A PROTECTIVE ORDER SHOULD BE ENTERED

Svensson's right to pursue her causes of action against Putnam for gender discrimination and other claims far outweighs any alleged showing of good cause for the issuance of protective order. Rule 26(c) permits the entry of a protective order for "good cause shown." "[The court] may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Putnam has not met the burden of showing that disclosure of the requested information will harm any employees, let alone annoy, embarrass or oppress them, so as to rise to the level of becoming "good cause". Putnam cites privacy rights of other employees as being one of the reasons why a Protective Order should be allowed, without showing either that the affected employees, many of whom are now former Putnam employees, are in any way concerned about the privacy of their compensation in earlier years, or the circumstances which led to their departures from Putnam. Indeed, but for the separation agreements that Putnam requires departing employees in protected groups to sign as a condition of receipt of any severance, (which agreements require confidentiality), it could just as easily be the case that these former employees want the circumstances and the involuntary nature of their departures, and their demeaning treatment prior to their forced departures, to be fully aired in open Court.

Furthermore, Svensson is not seeking the disclosure of highly personal or private information of other employees. Rather, she has, to date, sought principally demographic information regarding names of employees, gender, positions held, promotions, demotions, job evaluations compensation, terminations and other employment- related information, all of which are essential to Plaintiff if she is going to be able to prove her claims. Moreover, even if Putnam

were to show that Svensson were seeking private information regarding Putnam employees, Svensson's right to pursue her causes of action against Putnam far outweighs any alleged privacy concerns accruing to Putnam, especially considering the strong public interest in disclosing gender-based discriminatory practices at Putnam and large financial services employers. There is a discernible public interest in allowing the disclosure of information regarding the number and names of male/female employees at Putnam, and the relative rates at which they are subject to positive or adverse employment action correlated to their gender, often in spite of strong job performance records by female investment professionals (as reflected in their job evaluations), while male colleagues with equivalent or inferior job performance (also as reflected in their job evaluations) are given promotions, transfers and higher compensation than the females, and are not subjected to the demeaning specter of demotion, reduced compensation and, often, termination of employment. In fact, newspaper articles have already chronicled Putnam's questionable employment practices in this regard, and Svensson believes it has become a subject of significant public debate in Boston. In view of all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the community or public interest involved, and Putnam's reason(s) for the request, the Court should find that no good cause exists to allow Putnam's request for a Protective Order, and it should therefore be denied.

   D.   SVENSSON IS WILLING TO ENTER INTO A REASONABLE
        CONFIDENITALITY AGREEMENT

Putnam's counsel cites Svensson's outright refusal to enter into a Confidentiality Agreement/Protective Order as a reason why this Court should impose such an order when

in fact Svensson has not outright refused to enter into a Confidentiality Agreement/ Protective Order. Indeed, Putnam full well knows that, when it brought on this Motion, Svensson had not yet taken a position with respect to any confidentiality agreement in this case, and in particular the more recent and more limited Confidentiality Agreement currently under consideration by the Court, other than indicating that Svensson was not likely to be willing to enter into a broad confidentiality agreement without actually seeing it. In fact, at the depositions conducted to date, Plaintiff has voluntarily agreed to interim confidentiality protection to protect employment status and compensation information respecting current or former Putnam employees, pending a ruling by the Court. However, Plaintiff will not agree to any agreement that, without limitation, would allow Putnam to designate virtually every document, or testimony respecting documents, as being confidential, as Putnam still proposes to do. Indeed, Putnam proposes to designate documents which were produced by Svensson, although Putnam did not assert a confidentiality objection at the time of their production and Putnam has no justifiable or legitimate interest that would outweigh Plaintiff's public policy interest in proving her case. Nor does Plaintiff in any way agree that Putnam has the right to utilize belated assertions of confidentiality to thwart the prosecution of legitimate claims of gender discrimination rampant at Putnam for many years solely because, years earlier, Putnam coerced her, under the false pretense that she would actually be able to pursue her chosen career path at Putnam, into signing a document generally providing for return of "confidential documents" upon her termination. This is especially true because Plaintiff, when confronted with a written demand that she sign a Separation Agreement mandating confidentiality at the time of her termination, expressly refused to do so.

    Nonetheless, since Svensson is willing to enter into a Confidentiality Agreement with regard to information pertaining to other current employees, Putnam should not be allowed to manipulate the discovery process to its tactical advantage by forcing Svensson into signing an overly broad and unfair Confidentiality Agreement through a Court ordered Protective Order.

IV. CONCLUSION

For all of the reasons set forth above, the Court should deny Putnam's Motion for Entry of Protective Order Concerning Confidentiality, and pursuant to Rule 37(a)(4), require Putnam to bear all the attorneys' fees and costs incurred by Plaintiff in opposing the instant motion.

Respectfully submitted,

The Plaintiff, By her attorneys,

/s/ Nancie L. Edgren
Denise L. Page, Esq.
BBO No. 119415
Nancie L. Edgren, Esq.
BBO No. 648665
BARRON & ST ADFELD, P.e.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
617.723.9800

and

/s/ John K. Weir
John K. Weir, Esq. Admitted Pro Hac Vice
John K. Weir Law Offices
300 Park Avenue
Suite 1700
New York, New York, 10022 212-572-5374

Date: December 12, 2005

[341915]