UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LISA SVENSSON,

                Plaintiff,

        v.

PUTNAM INVESTMENTS LLC, f/k/a
PUTNAM INVESTMENTS, INC. and
LAWRENCE J. LASSER.,

                Defendants.

CIVIL ACTION
NO. 04-12711 PBS

## AFFIDAVIT OF RACHAEL SPLAINE ROLLINS IN SUPPORT OF PUTNAM'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY DEADLINE AND OTHER CORRESPONDING DEADLINES

**RACHAEL SPLAINE ROLLINS**, being first duly sworn, deposes and says:

1.    I am an attorney at Bingham McCutchen LLP and one of the counsel for Putnam in the above matter.

2.    On May 2, 2005 Judge Saris held a Scheduling Conference and issued a Scheduling Order, allowing the parties *nine months* to conduct fact discovery.[1]

3.    On June 8, 2005 Putnam served its First Request for Production of Documents and First Set of Interrogatories on plaintiff. On July 8, 2005, one day before her responses were due, plaintiff requested a thirty-day extension. Putnam agreed to the requested extension. Plaintiff failed to proffer responses August 9 when due pursuant to the extension. Instead, on August 9,

---

[1]    A copy of the Scheduling Order is attached as Exhibit A.

2005 plaintiff served *her* First Set of Interrogatories and First Request for Production of Documents.

4.      Shortly after receiving the First Set of Interrogatories, I left plaintiff's counsel, Nancie Edgren ("Edgren"), a voicemail message indicating that the interrogatories failed to conform to the requirements off Local Rule 26.1(C) in that there were 32 propounded. I asked Edgren to leave me a voicemail designating which 25 of the 32 interrogatories plaintiff wanted Putnam to answer.

5.      Plaintiff asked for three extensions (on July 9, August 11, and August 16) before finally producing her documents, on August 31, 2005, some three months after Putnam initially served the requests.[2]

6.      On August 31, 2005, plaintiff deposed Lauren Allensmith ("Allensmith"), a former Putnam employee. During the deposition Allensmith testified that she never supervised, reported to or worked on the same team as plaintiff.[3]

7.      On September 7, 2005, having received no response from plaintiff about her non-conforming interrogatories, Mr. Rodriques sent Ms. Edgren an email and requested, again, that plaintiff designate which interrogatories she wished Putnam to answer.[4] We received no response to this email.

8.      On October 6, 2005, the date on which Putnam's responses to plaintiff's interrogatories were due, Putnam, having still received no guidance from plaintiff about which 25

---

[2]     See a copy of email correspondence, attached at Exhibit B1 – B6.

[3]     See relevant excerpt from *Allensmith depo.* at 181, attached as Exhibit C.

[4]     See September 7, 2005 email attached as Exhibit D.

-2-

interrogatories she wished Putnam to answer, timely responded to the interrogatories by objecting to the interrogatories as non-conforming with Local Rule 26.1(C).

9.    Two weeks later, on October 20, 2005, plaintiff served another set of non-conforming interrogatories, which still consisted of more than 25 interrogatories taking into account sub-parts (as required by the Local Rule).

10.    On October 25, 2005, the parties scheduled a conference call to address the discovery disputes, and during the nearly three-hour conference call, plaintiff agreed only to mildly tailor certain of her Document Requests and Interrogatories.  Without citing any authority to support his requests, plaintiff's counsel, John Weir, insisted that plaintiff was entitled to the information plaintiff sought.

11.    On November 4, 2005 plaintiff filed a Motion to Compel the Production of Documents that relied upon no legal authority in support of her position that she was entitled to the overbroad discovery that she sought.  On November 22, 2005 Putnam opposed the Motion and the Court scheduled a hearing for December 13, 2005.

12.    On November 17, 2005, plaintiff deposed Josh Brooks ("Brooks") (who was the head of the business unit in which plaintiff worked at Putnam, and whose employment at Putnam overlapped with her for less than six months) for a full 7 hours, generating 266 pages of transcript.  Plaintiff inquired into topics such as Brooks's entry level salary in 1990 at his previous employer; his compensation from that firm over various years; how Putnam compensated Brooks for the unvested deferred compensation he lost from that firm by joining Putnam; what management metrics Brooks implemented at Putnam the years following the Plaintiff's termination; and SEC inquiries relating to Putnam after the Plaintiff was terminated.

LITDOCS/627803

Plaintiff's counsel inquired, with no evidence to support such an inquiry, whether Brooks was romantically involved with the female who replaced plaintiff (he was not).[5]

13.    On November 29, 2005 plaintiff deposed Mary McNamee ("McNamee"), the Putnam Human Resources officer who was involved with plaintiff's termination. Plaintiff deposed McNamee for a full day, inquiring about a wide range of irrelevant information. For example, plaintiff inquired about McNamee's compensation despite there being no colorable basis for arguing that McNamee is a comparator of plaintiff's. [6]

14.    On December 7, 2005 I emailed plaintiff and tendered Putnam employee Kelly Morgan for deposition later that month.[7] I was also in the process of scheduling and proffering for deposition several other Putnam witnesses.

15.    On December 12, 2005, however, Mr. Weir emailed Mr. Rodriques, counsel for Putnam, and stated that plaintiff would not proceed with any further depositions until after the hearing on the Motion to Compel the Production of Documents, the hearing on the Protective Order and the Mediation. The Mediation was scheduled for January 11, 2006.[8]

16.    On December 13, 2005, this Court heard plaintiff's Motion to Compel and denied most of plaintiff's requests.

17.    The Mediation took place on January 11, 2005.

---

[5]    See relevant excerpts from *Brooks depo.* at pp. 32-33 (compensation), and 94-96 (management metrics), 128-130 (compensation for unvested shares), 224-230 (SEC investigation), and 240-243 (relationship with Maria Drew) attached as Exhibit E.

[6]    See excerpt from *McNamee depo.* at p. 12 attached as Exhibit F

[7]    See December 7, 2005 email attached as Exhibit G

[8]    See December 12, 2005 email attached as Exhibit H

-4-

Signed under the pains and penalties of perjury this 17th day of January, 2006.

/s/ Rachael Splaine Rollins
Rachael Splaine Rollins

## CERTIFICATE OF SERVICE

I, Rachael Splaine Rollins, hereby certify that on this 17th day of January, 2006, a true copy of the foregoing document was served via first class mail upon the attorney(s) of record for each other party:

Denise L. Page
Nancie Edgren
Barron & Stadfeld, P.C.
100 Cambridge Street
Boston, MA 02114

John K. Weir
John K. Weir Law Offices LLC
300 Park Avenue - Suite 1700
New York, NY 10022

/s/ Rachael Splaine Rollins
Rachael Splaine Rollins

LITDOCS/627803

EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Lisa Svensson
Plaintiff,

V.

Putnam Investments, et al
Defendant.

Civil Action Number
04-12711-PBS

May 2, 2005

## SCHEDULING ORDER

Saris, D.J.,

Fact Discovery deadline: 2/1/06

Plaintiff's expert designation deadline: 3/1/06

Defendant's expert designation deadline: 4/1/06

Expert discovery deadline: 5/1/06

Summary Judgment Motion filing deadline: 6/1/06

Opposition to Summary Judgment Motions: 7/1/06

Hearing on Summary Judgment or Pretrial Conference: 7/12/06 at 2:00 p.m.

Case to be referred to Mediation program: Fall, 2005

By the Court,

/s/ Robert C. Alba
Deputy Clerk

# EXHIBIT B1

**Rollins, Rachael Splaine**

---

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Thursday, August 11, 2005 1:27 PM |
| **To:** | 'Nancie Edgren' |
| **Cc:** | 'Campion, Carrie'; Rollins, Rachael Splaine |
| **Subject:** | Svennson v. Putnam |

Nancie:

In Rachael's absence, I am following up on the status of Ms. Svennson's responses to Putnam's discovery requests.  As you know, we agreed to an extension of time within which Ms. Svennson was to respond to Putnam's discovery requests.  That extension expired on August 9.  Yesterday (August 10) we received your discovery requests to Putnam, but we have yet to receive Ms. Svennson's now-overdue responses.  Please forward those responses as soon as possible.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

---

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above.  Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.  Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion.  A formal opinion could reach a different result.  We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

*Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations, including a requirement that such opinions contain extensive factual and legal discussion and analysis.  Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations.  Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose.  The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.*

# EXHIBIT B2

**Rollins, Rachael Splaine**

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Thursday, August 11, 2005 3:17 PM |
| **To:** | 'Nancie Edgren' |
| **Subject:** | RE: Svennson v. Putnam |

Nancie:

I'll have to check and Rachael or I will get back to you.

Lou

-----Original Message-----
From: Nancie Edgren [mailto:nle@barronstad.com]
Sent: Thursday, August 11, 2005 2:48 PM
To: Rodriques, Louis A.
Subject: RE: Svennson v. Putnam


Lou, I apologize for the oversight.  Is it possible to get an additional
30 days to respond to discovery requests??

Thanks


Nancie L. Edgren, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Suite 1310
Boston, MA  02114
(617) 723-9800 x577
Facsimile:  (617) 523-8359
nle@barronstad.com



The information transmitted in this e-mail is for the exclusive use of
the person or entity to which it is addressed and may contain legally
privileged or confidential information.  If you are not the intended
recipient of this e-mail, you are prohibited from reading, printing,
duplicating, disseminating or otherwise using or acting in reliance upon
this information. If you have received this information in error, please
notify the sender at Barron & Stadfeld, P.C. immediately, delete this
information from your computer and destroy all copies of the
information.


-----Original Message-----
From: Rodriques, Louis A. [mailto:louis.rodriques@bingham.com]
Sent: Thursday, August 11, 2005 1:27 PM
To: Nancie Edgren
Cc: Campion, Carrie; Rollins, Rachael Splaine
Subject: Svennson v. Putnam

Nancie:

In Rachael's absence, I am following up on the status of Ms. Svennson's
responses to Putnam's discovery requests.  As you know, we agreed to an
extension of time within which Ms. Svennson was to respond to Putnam's
discovery requests.  That extension expired on August 9.  Yesterday
(August 10) we received your discovery requests to Putnam, but we have
yet to receive Ms. Svennson's now-overdue responses.  Please forward
those responses as soon as possible.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050


The information in this transmittal (including attachments, if any) is
privileged and confidential and is intended only for the recipient(s)
listed above.  Any review, use, disclosure, distribution or copying of
this transmittal is prohibited except by or on behalf of the intended
recipient.  If you have received this transmittal in error, please
notify me immediately by reply email and destroy all copies of the
transmittal.  Thank you.

You should recognize that responses provided by means of this email are
akin to ordinary telephone or face-to-face conversations and do not
reflect the level of factual or legal inquiry or analysis which would be
applied in the case of a formal legal opinion.  A formal opinion could
reach a different result.  We would, of course, be happy to prepare such
a definitive statement or formal opinion if you would like us to.

> Circular 230 Disclosure:  Internal Revenue Service regulations provide
that, for the purpose of avoiding certain penalties under the Internal
Revenue Code, taxpayers may rely only on opinions of counsel that meet
specific requirements set forth in the regulations, including a
requirement that such opinions contain extensive factual and legal
discussion and analysis.  Any tax advice that may be contained in this
message does not constitute an opinion that meets the requirements of
the regulations.  Any such tax advice therefore cannot be used, and was
not intended or written to be used, for the purpose of avoiding any
federal tax penalties that the Internal Revenue Service may attempt to
impose.  The legal advice expressed in this message is being delivered
to you solely for your use in connection with the matters addressed
herein and may not be made available to or relied upon by any other
person or entity or used for any other purpose without our prior written
consent.
>
>

# EXHIBIT B3

**Rollins, Rachael Splaine**

| | |
|---|---|
| **From:** | Rollins, Rachael Splaine |
| **Sent:** | Tuesday, August 16, 2005 4:08 PM |
| **To:** | 'Nancie Edgren' |
| **Cc:** | Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie' |
| **Subject:** | FW: Svennson v. Putnam |

**Importance:**      High

Hi Nancie,

I left you a voicemail yesterday and am now following up with an email.  In response to your second request for a 30 day extension, we would like to have any responses to the Interrogatories and Document Requests that involve Ms. Allensmith by the end of this week (Friday, August 19th).  To be clear, we would like to receive communications of any kind with Ms. Allensmith and any of Ms. Svensson's diaries, journals, date books and calendars in their entirety by this Friday.  In addition, we would like to receive responses to Interrogatory Nos. 1, 6, 18, 21, 22 and 24, and Document Request Nos. 5, 10, 14, 16, 22, 27 and 28(b) to the extent that they involve Ms. Allensmith.  If there are Interrogatories and Document Requests that I have not listed that do in fact involve Ms. Allensmith, please provide those responses to me within the above-mentioned time frame.

With respect to the remaining outstanding discovery requests, we ask that those responses and documents be provided before the close of business on Wednesday, August 31st.  Thank you and please contact me with any questions or concerns.

Rachael Splaine Rollins
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
P 617.951.8791  F 617.951.8736
Email: rachael.rollins@bingham.com

The information in this transmittal is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this transmittal is prohibited.  If you have received this transmittal in error, please notify me immediately at (617) 951-8791.

Attachment:  The attachment in this e-mail message is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this attachment to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this attachment is prohibited.  If you receive this attachment in error, please notify me immediately at (617) 951-8791.

Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations, including a requirement that such opinions contain extensive factual and legal discussion and analysis.  Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations.  Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose.  The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.

-----Original Message-----
From: Rodriques, Louis A.
Sent: Thursday, August 11, 2005 3:17 PM
To: 'Nancie Edgren'
Subject: RE: Svennson v. Putnam


Nancie:

I'll have to check and Rachael or I will get back to you.

Lou

-----Original Message-----
From: Nancie Edgren [mailto:nle@barronstad.com]
Sent: Thursday, August 11, 2005 2:48 PM
To: Rodriques, Louis A.
Subject: RE: Svennson v. Putnam


Lou, I apologize for the oversight.  Is it possible to get an additional
30 days to respond to discovery requests??

Thanks


Nancie L. Edgren, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Suite 1310
Boston, MA  02114
(617) 723-9800 x577
Facsimile:  (617) 523-8359
nle@barronstad.com



The information transmitted in this e-mail is for the exclusive use of
the person or entity to which it is addressed and may contain legally
privileged or confidential information.  If you are not the intended
recipient of this e-mail, you are prohibited from reading, printing,
duplicating, disseminating or otherwise using or acting in reliance upon
this information. If you have received this information in error, please
notify the sender at Barron & Stadfeld, P.C. immediately, delete this
information from your computer and destroy all copies of the
information.


-----Original Message-----
From: Rodriques, Louis A. [mailto:louis.rodriques@bingham.com]
Sent: Thursday, August 11, 2005 1:27 PM
To: Nancie Edgren
Cc: Campion, Carrie; Rollins, Rachael Splaine
Subject: Svennson v. Putnam


Nancie:

In Rachael's absence, I am following up on the status of Ms. Svennson's
responses to Putnam's discovery requests.  As you know, we agreed to an
extension of time within which Ms. Svennson was to respond to Putnam's
discovery requests.  That extension expired on August 9.  Yesterday
(August 10) we received your discovery requests to Putnam, but we have
yet to receive Ms. Svennson's now-overdue responses.  Please forward
those responses as soon as possible.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050


The information in this transmittal (including attachments, if any) is
privileged and confidential and is intended only for the recipient(s)
listed above.  Any review, use, disclosure, distribution or copying of
this transmittal is prohibited except by or on behalf of the intended
recipient.  If you have received this transmittal in error, please
notify me immediately by reply email and destroy all copies of the
transmittal.  Thank you.

You should recognize that responses provided by means of this email are
akin to ordinary telephone or face-to-face conversations and do not
reflect the level of factual or legal inquiry or analysis which would be
applied in the case of a formal legal opinion.  A formal opinion could
reach a different result.  We would, of course, be happy to prepare such
a definitive statement or formal opinion if you would like us to.


> Circular 230 Disclosure:  Internal Revenue Service regulations provide
that, for the purpose of avoiding certain penalties under the Internal
Revenue Code, taxpayers may rely only on opinions of counsel that meet
specific requirements set forth in the regulations, including a
requirement that such opinions contain extensive factual and legal
discussion and analysis.  Any tax advice that may be contained in this
message does not constitute an opinion that meets the requirements of
the regulations.  Any such tax advice therefore cannot be used, and was
not intended or written to be used, for the purpose of avoiding any
federal tax penalties that the Internal Revenue Service may attempt to
impose.  The legal advice expressed in this message is being delivered
to you solely for your use in connection with the matters addressed
herein and may not be made available to or relied upon by any other
person or entity or used for any other purpose without our prior written
consent.
>
>

# EXHIBIT B4

**Rollins, Rachael Splaine**

| | |
|---|---|
| **From:** | Rollins, Rachael Splaine |
| **Sent:** | Thursday, August 25, 2005 1:27 PM |
| **To:** | 'nle@barronstad.com' |
| **Cc:** | Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie' |
| **Subject:** | FW: Svennson v. Putnam |

**Importance:**    High

Nancie,

I have yet to receive any information from you regarding the agreed upon production of "communications of any kind with Allensmith; Svensson's diaries, journals, date books and calendars in their entirety; responses to Interrogatory Nos. 1, 6, 18, 21, 22 and 24; Document Request Nos. 5, 10, 14, 16, 22, 27 and 28(b) to the extent that they involve Allensmith, as well as; any other Interrogatories and Document Requests that I may have not listed that do in fact involve Allensmith[.]"

As you know, you missed the extended deadline for production (August 9th) and only after we informed you of such did you request an additional 30 days.  In response to your additional request, we asked that all Allensmith related documents and responses be produced by the close of business on August 19th and all remaining responses be produced by the close of business on August 31st.  You immediately called me and asked for an additional extension, regarding the Allensmith production, to the close of business on August 23rd.  Today is August 25th and we have yet to receive anything from you - not a document, not a response, not a call.  We need these documents to prepare for the upcoming Allensmith deposition.  Please contact me to discuss this matter.

Rachael Splaine Rollins
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
P 617.951.8791  F 617.951.8736
Email: rachael.rollins@bingham.com


The information in this transmittal is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this transmittal is prohibited.  If you have received this transmittal in error, please notify me immediately at (617) 951-8791.

Attachment:  The attachment in this e-mail message is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this attachment to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this attachment is prohibited.  If you receive this attachment in error, please notify me immediately at (617) 951-8791.

Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations, including a requirement that such opinions contain extensive factual and legal discussion and analysis.  Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations.  Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose.  The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.

```
-----Original Message-----
From: Rollins, Rachael Splaine
Sent: Tuesday, August 16, 2005 5:34 PM
To: 'Nancie Edgren'
Cc: Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie'
Subject: RE: Svennson v. Putnam
```

Nancie,

After receiving my email, you contacted me and requested to provide: communications of any kind with Allensmith; Svensson's diaries, journals, date books and calendars in their entirety; responses to Interrogatory Nos. 1, 6, 18, 21, 22 and 24; Document Request Nos. 5, 10, 14, 16, 22, 27 and 28(b) to the extent that they involve Allensmith, as well as; any other Interrogatories and Document Requests that I may have not listed that do in fact involve Allensmith, by the close of business on Tuesday, August 23rd.  That will be fine. We will also expect responses to all of our outstanding discovery requests by the close of business on Wednesday, August 31st.  Thanks.

```
-----Original Message-----
From: Rollins, Rachael Splaine
Sent: Tuesday, August 16, 2005 4:08 PM
To: 'Nancie Edgren'
Cc: Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie'
Subject: FW: Svennson v. Putnam
Importance: High
```

Hi Nancie,

I left you a voicemail yesterday and am now following up with an email.  In response to your second request for a 30 day extension, we would like to have any responses to the Interrogatories and Document Requests that involve Ms. Allensmith by the end of this week (Friday, August 19th).  To be clear, we would like to receive please provide those responses to me within the above-mentioned time frame.

With respect to the remaining outstanding discovery requests, we ask that those responses and documents be provided before the close of business on Wednesday, August 31st.  Thank you and please contact me with any questions or concerns.

Rachael Splaine Rollins
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
P 617.951.8791  F 617.951.8736
Email: rachael.rollins@bingham.com


The information in this transmittal is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this transmittal is prohibited.  If you have received this transmittal in error, please notify me immediately at (617) 951-8791.

Attachment:  The attachment in this e-mail message is privileged and confidential and is intended only for the recipient(s) listed above.  If you are neither the intended recipient(s) nor a person responsible for the delivery of this attachment to the intended recipient(s), you are hereby notified that any unauthorized distribution or copying of this attachment is prohibited.  If you receive this attachment in error, please notify me immediately at (617) 951-8791.

Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations,

2

including a requirement that such opinions contain extensive factual and legal discussion and analysis. Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations. Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose. The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.


-----Original Message-----
From: Rodriques, Louis A.
Sent: Thursday, August 11, 2005 3:17 PM
To: 'Nancie Edgren'
Subject: RE: Svennson v. Putnam


Nancie:

I'll have to check and Rachael or I will get back to you.

Lou

-----Original Message-----
From: Nancie Edgren [mailto:nle@barronstad.com]
Sent: Thursday, August 11, 2005 2:48 PM
To: Rodriques, Louis A.
Subject: RE: Svennson v. Putnam


Lou, I apologize for the oversight. Is it possible to get an additional 30 days to respond to discovery requests??

Thanks


Nancie L. Edgren, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Suite 1310
Boston, MA  02114
(617) 723-9800 x577
Facsimile:  (617) 523-8359
nle@barronstad.com


The information transmitted in this e-mail is for the exclusive use of the person or entity to which it is addressed and may contain legally privileged or confidential information. If you are not the intended recipient of this e-mail, you are prohibited from reading, printing, duplicating, disseminating or otherwise using or acting in reliance upon this information. If you have received this information in error, please notify the sender at Barron & Stadfeld, P.C. immediately, delete this information from your computer and destroy all copies of the information.

-----Original Message-----
From: Rodriques, Louis A. [mailto:louis.rodriques@bingham.com]
Sent: Thursday, August 11, 2005 1:27 PM
To: Nancie Edgren
Cc: Campion, Carrie; Rollins, Rachael Splaine
Subject: Svennson v. Putnam

Nancie:

In Rachael's absence, I am following up on the status of Ms. Svennson's responses to Putnam's discovery requests. As you know, we agreed to an extension of time within which Ms. Svennson was to respond to Putnam's discovery requests. That extension expired on August 9. Yesterday (August 10) we received your discovery requests to Putnam, but we have yet to receive Ms. Svennson's now-overdue responses. Please forward those responses as soon as possible.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.

> Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations, including a requirement that such opinions contain extensive factual and legal discussion and analysis. Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations. Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose. The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.
>
>

# EXHIBIT B5

**Rollins, Rachael Splaine**

| | |
|---|---|
| **From:** | Nancie Edgren [nle@barronstad.com] |
| **Sent:** | Monday, August 29, 2005 5:43 PM |
| **To:** | Rollins, Rachael Splaine |
| **Subject:** | RE: Svennson v. Putnam |

Rachael, I this afternoon spoke wtih Attorney Weir.  As far as the discovery, he says that there is very little regarding Allansmith, just a few documents that he will have available prior to the deposition.  As far as answers to interrogatories, the only answer in which Lauren Allansmith's name is mentioned is Answer to Interrogatory No.6, and from what I understand, her name is merely being listed and there are no other interrogatory answers pertaining to her.

As far as starting the deposition at 10:30, that is fine.


Nancie L. Edgren, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Suite 1310
Boston, MA  02114
(617) 723-9800 x577
Facsimile:  (617) 523-8359
nle@barronstad.com


The information transmitted in this e-mail is for the exclusive use of the person or entity to which it is addressed and may contain legally privileged or confidential information.  If you are not the intended recipient of this e-mail, you are prohibited from reading, printing, duplicating, disseminating or otherwise using or acting in reliance upon this information. If you have received this information in error, please notify the sender at Barron & Stadfeld, P.C. immediately, delete this information from your computer and destroy all copies of the information.


-----Original Message-----
From: Rollins, Rachael Splaine [mailto:rachael.rollins@bingham.com]
Sent: Monday, August 29, 2005 4:40 PM
To: Nancie Edgren
Cc: Kociubes, Joseph L.; Rodriques, Louis A.; Campion, Carrie
Subject: RE: Svennson v. Putnam
Importance: High

Hi Nancie,

I just left you a message requesting that the Allensmith deposition start at 10:30 AM instead of 10:00 AM this Wednesday because Joe has to attend a funeral earlier that morning.  Please let me know if you can accommodate this request.

I also indicated in the voicemail, and during our conference call on Friday about Putnam's outstanding discovery requests, that if we do not receive the documents that we requested we will be filing a Motion to Compel.

Rachael Splaine Rollins
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110

P 617.951.8791   F 617.951.8736
Email: rachael.rollins@bingham.com

The information in this transmittal is privileged and confidential and
is intended only for the recipient(s) listed above.  If you are neither
the intended recipient(s) nor a person responsible for the delivery of
this transmittal to the intended recipient(s), you are hereby notified
that any unauthorized distribution or copying of this transmittal is
prohibited.  If you have received this transmittal in error, please
notify me immediately at (617) 951-8791.

Attachment:  The attachment in this e-mail message is privileged and
confidential and is intended only for the recipient(s) listed above.  If
you are neither the intended recipient(s) nor a person responsible for
the delivery of this attachment to the intended recipient(s), you are
hereby notified that any unauthorized distribution or copying of this
attachment is prohibited.  If you receive this attachment in error,
please notify me immediately at (617) 951-8791.

Circular 230 Disclosure:  Internal Revenue Service regulations provide
that, for the purpose of avoiding certain penalties under the Internal
Revenue Code, taxpayers may rely only on opinions of counsel that meet
specific requirements set forth in the regulations, including a
requirement that such opinions contain extensive factual and legal
discussion and analysis.  Any tax advice that may be contained in this
message does not constitute an opinion that meets the requirements of
the regulations.  Any such tax advice therefore cannot be used, and was
not intended or written to be used, for the purpose of avoiding any
federal tax penalties that the Internal Revenue Service may attempt to
impose.  The legal advice expressed in this message is being delivered
to you solely for your use in connection with the matters addressed
herein and may not be made available to or relied upon by any other
person or entity or used for any other purpose without our prior written
consent.

-----Original Message-----
From: Rollins, Rachael Splaine
Sent: Thursday, August 25, 2005 1:27 PM
To: 'nle@barronstad.com'
Cc: Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie'
Subject: FW: Svensson v. Putnam
Importance: High


Nancie,

I have yet to receive any information from you regarding the agreed upon
production of "communications of any kind with Allensmith; Svensson's
diaries, journals, date books and calendars in their entirety; responses
to Interrogatory Nos. 1, 6, 18, 21, 22 and 24; Document Request Nos. 5,
10, 14, 16, 22, 27 and 28(b) to the extent that they involve Allensmith,
as well as; any other Interrogatories and Document Requests that I may
have not listed that do in fact involve Allensmith[.]"

As you know, you missed the extended deadline for production (August
9th) and only after we informed you of such did you request an
additional 30 days.  In response to your additional request, we asked
that all Allensmith related documents and responses be produced by the
close of business on August 19th and all remaining responses be produced
by the close of business on August 31st.  You immediately called me and
asked for an additional extension, regarding the Allensmith production,
to the close of business on August 23rd.  Today is August 25th and we
have yet to receive anything from you - not a document, not a response,
not a call.  We need these documents to prepare for the upcoming
Allensmith deposition.  Please contact me to discuss this matter.

Rachael Splaine Rollins
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
P 617.951.8791  F 617.951.8736
Email: rachael.rollins@bingham.com


The information in this transmittal is privileged and confidential and
is intended only for the recipient(s) listed above.  If you are neither
the intended recipient(s) nor a person responsible for the delivery of
this transmittal to the intended recipient(s), you are hereby notified
that any unauthorized distribution or copying of this transmittal is
prohibited.  If you have received this transmittal in error, please
notify me immediately at (617) 951-8791.

Attachment:  The attachment in this e-mail message is privileged and
confidential and is intended only for the recipient(s) listed above.  If
you are neither the intended recipient(s) nor a person responsible for
the delivery of this attachment to the intended recipient(s), you are
hereby notified that any unauthorized distribution or copying of this
attachment is prohibited.  If you receive this attachment in error,
please notify me immediately at (617) 951-8791.

Circular 230 Disclosure:  Internal Revenue Service regulations provide
that, for the purpose of avoiding certain penalties under the Internal
Revenue Code, taxpayers may rely only on opinions of counsel that meet
specific requirements set forth in the regulations, including a
requirement that such opinions contain extensive factual and legal
discussion and analysis.  Any tax advice that may be contained in this
message does not constitute an opinion that meets the requirements of
the regulations.  Any such tax advice therefore cannot be used, and was
not intended or written to be used, for the purpose of avoiding any
federal tax penalties that the Internal Revenue Service may attempt to
impose.  The legal advice expressed in this message is being delivered
to you solely for your use in connection with the matters addressed
herein and may not be made available to or relied upon by any other
person or entity or used for any other purpose without our prior written
consent.


-----Original Message-----
From: Rollins, Rachael Splaine
Sent: Tuesday, August 16, 2005 5:34 PM
To: 'Nancie Edgren'
Cc: Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie'
Subject: RE: Svennson v. Putnam


Nancie,

After receiving my email, you contacted me and requested to provide:
communications of any kind with Allensmith; Svensson's diaries,
journals, date books and calendars in their entirety; responses to
Interrogatory Nos. 1, 6, 18, 21, 22 and 24; Document Request Nos. 5, 10,
14, 16, 22, 27 and 28(b) to the extent that they involve Allensmith, as
well as; any other Interrogatories and Document Requests that I may have
not listed that do in fact involve Allensmith, by the close of business
on Tuesday, August 23rd.  That will be fine.  We will also expect
responses to all of our outstanding discovery requests by the close of
business on Wednesday, August 31st.  Thanks.

-----Original Message-----
From: Rollins, Rachael Splaine
Sent: Tuesday, August 16, 2005 4:08 PM
To: 'Nancie Edgren'

Cc: Kociubes, Joseph L.; Rodriques, Louis A.; 'Campion, Carrie'
Subject: FW: Svennson v. Putnam
Importance: High


Hi Nancie,

I left you a voicemail yesterday and am now following up with an email.
In response to your second request for a 30 day extension, we would like
to have any responses to the Interrogatories and Document Requests that
involve Ms. Allensmith by the end of this week (Friday, August 19th).
To be clear, we would like to receive please provide those responses to
me within the above-mentioned time frame.

With respect to the remaining outstanding discovery requests, we ask
that those responses and documents be provided before the close of
business on Wednesday, August 31st.  Thank you and please contact me
with any questions or concerns.

Rachael Splaine Rollins
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
P 617.951.8791  F 617.951.8736
Email: rachael.rollins@bingham.com


The information in this transmittal is privileged and confidential and
is intended only for the recipient(s) listed above.  If you are neither
the intended recipient(s) nor a person responsible for the delivery of
this transmittal to the intended recipient(s), you are hereby notified
that any unauthorized distribution or copying of this transmittal is
prohibited.  If you have received this transmittal in error, please
notify me immediately at (617) 951-8791.

Attachment:  The attachment in this e-mail message is privileged and
confidential and is intended only for the recipient(s) listed above.  If
you are neither the intended recipient(s) nor a person responsible for
the delivery of this attachment to the intended recipient(s), you are
hereby notified that any unauthorized distribution or copying of this
attachment is prohibited.  If you receive this attachment in error,
please notify me immediately at (617) 951-8791.

Circular 230 Disclosure:  Internal Revenue Service regulations provide
that, for the purpose of avoiding certain penalties under the Internal
Revenue Code, taxpayers may rely only on opinions of counsel that meet
specific requirements set forth in the regulations, including a
requirement that such opinions contain extensive factual and legal
discussion and analysis.  Any tax advice that may be contained in this
message does not constitute an opinion that meets the requirements of
the regulations.  Any such tax advice therefore cannot be used, and was
not intended or written to be used, for the purpose of avoiding any
federal tax penalties that the Internal Revenue Service may attempt to
impose.  The legal advice expressed in this message is being delivered
to you solely for your use in connection with the matters addressed
herein and may not be made available to or relied upon by any other
person or entity or used for any other purpose without our prior written
consent.


-----Original Message-----
From: Rodriques, Louis A.
Sent: Thursday, August 11, 2005 3:17 PM
To: 'Nancie Edgren'
Subject: RE: Svennson v. Putnam

Nancie:

I'll have to check and Rachael or I will get back to you.

Lou

-----Original Message-----
From: Nancie Edgren [mailto:nle@barronstad.com]
Sent: Thursday, August 11, 2005 2:48 PM
To: Rodriques, Louis A.
Subject: RE: Svennson v. Putnam


Lou, I apologize for the oversight.  Is it possible to get an additional
30 days to respond to discovery requests??

Thanks


Nancie L. Edgren, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Suite 1310
Boston, MA  02114
(617) 723-9800 x577
Facsimile:  (617) 523-8359
nle@barronstad.com


The information transmitted in this e-mail is for the exclusive use of
the person or entity to which it is addressed and may contain legally
privileged or confidential information.  If you are not the intended
recipient of this e-mail, you are prohibited from reading, printing,
duplicating, disseminating or otherwise using or acting in reliance upon
this information. If you have received this information in error, please
notify the sender at Barron & Stadfeld, P.C. immediately, delete this
information from your computer and destroy all copies of the
information.


-----Original Message-----
From: Rodriques, Louis A. [mailto:louis.rodriques@bingham.com]
Sent: Thursday, August 11, 2005 1:27 PM
To: Nancie Edgren
Cc: Campion, Carrie; Rollins, Rachael Splaine
Subject: Svennson v. Putnam

Nancie:

In Rachael's absence, I am following up on the status of Ms. Svennson's
responses to Putnam's discovery requests.  As you know, we agreed to an
extension of time within which Ms. Svennson was to respond to Putnam's
discovery requests.  That extension expired on August 9.  Yesterday
(August 10) we received your discovery requests to Putnam, but we have
yet to receive Ms. Svennson's now-overdue responses.  Please forward
those responses as soon as possible.


Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above.  Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.  Thank you.

You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion.  A formal opinion could reach a different result.  We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.

> Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations, including a requirement that such opinions contain extensive factual and legal discussion and analysis.  Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations.  Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose.  The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.
>
>

# EXHIBIT B6

**Rollins, Rachael Splaine**

| | |
|---|---|
| **From:** | Connolly, Sheila H. |
| **Sent:** | Tuesday, August 30, 2005 5:10 PM |
| **To:** | 'nle@barronstad.com' |
| **Cc:** | Rollins, Rachael Splaine |
| **Subject:** | Svensson v. Putnam document production |

Ms. Edgren -- I left a voicemail message for you stating Joe Kociubes' approval to pay copy charges relevant to the document production involved with respect to tomorrow's Allansmith deposition.  Thanks very much for your attention to this matter.   Please call me if you have any questions.

Sheila H. Connolly
Joe Kociubes' Office
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
(617) 951-8688
sheila.connolly@bingham.com

1

# EXHIBIT C

1    is that wrong?

2       A.   I believe she was an associate

3    director at the time, and a team leader,

4    so I believe she reported directly to Josh

5    Brooks.  And I reported to various people

6    during the years.

7       Q.   And since -- after Ms. Svensson

8    left, how many times have you spoken to

9    her?

10      A.   Ten times.  I'm roughly guessing.

11      Q.   And did those tend to be like

12   telephone or getting together?

13      A.   She would call me.  I went to her

14   house once for lunch with the kids.

15      Q.   And in any of those occasions, do

16   you recall conversations about

17   Putnam-related conversations?

18      A.   We would talk about things that we

19   had read in the news.  Did you see that

20   article on this guy?  And we would talk

21   about -- sometimes we'd call up and talk

22   about like Eric Wentblocker (phonetic)

23   getting his job at Fidelity.  And she

24   would talk about her job search, and she

# EXHIBIT D

## Rollins, Rachael Splaine

**From:** Rodriques, Louis A.
**Sent:** Wednesday, September 07, 2005 2:35 PM
**To:** 'Nancie Edgren'
**Cc:** Rollins, Rachael Splaine
**Subject:** Svennson v. Putnam

Nancie:

In Ms. Svennson's First Set of Interrogatories to Putnam, she has propounded 32 interrogatories, even before taking into account subparts as the rule requires.  Local Rule 26.1(C) limits Ms. Svennson to one set of 25 interrogatories, including subparts.  Rather than simply answer the first 25 interrogatories, we thought we'd suggest that you designate which 25 you would like Putnam to answer.  Please advise as soon as possible.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above.  Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.  Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion.  A formal opinion could reach a different result.  We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

*Circular 230 Disclosure:  Internal Revenue Service regulations provide that, for the purpose of avoiding certain penalties under the Internal Revenue Code, taxpayers may rely only on opinions of counsel that meet specific requirements set forth in the regulations, including a requirement that such opinions contain extensive factual and legal discussion and analysis.  Any tax advice that may be contained in this message does not constitute an opinion that meets the requirements of the regulations.  Any such tax advice therefore cannot be used, and was not intended or written to be used, for the purpose of avoiding any federal tax penalties that the Internal Revenue Service may attempt to impose.  The legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be made available to or relied upon by any other person or entity or used for any other purpose without our prior written consent.*

# EXHIBIT E

**11/17/2005  Brooks, Joshua H.**

```
1     to be some provision that it is not used

2     or disseminated beyond the confines of

3     this lawsuit.

4              MR. WEIR:  Well, off the

5     record.

6              (Discussion off the record).

7              MR. WEIR:  We agreed off

8     the record that pending a determination by

9     the court concerning the confidentiality

10    issues in this case, that all of the

11    parties and attorneys at this deposition

12    will keep information respecting

13    compensation of individuals who are

14    referenced in the deposition confidential.

15             MR. KOCIUBES:  I don't know

16    what you are going to ask, obviously.

17    There may be other issues of that nature

18    which arise, but we can deal with it as

19    they arise, but subject to that, that's

20    acceptable.

21             MR. WEIR:  Okay.

22        BY MR. WEIR:

23    Q.   What was your compensation at the

24    time that you left Delaware?
```

**11/17/2005  Brooks, Joshua H.**

```
1               MR. KOCIUBES:  You can

2      answer.

3      A.    I don't remember specifically what

4      I had received in the prior year, but I

5      can remember that the new CEO at Delaware

6      had talked with me about my total

7      compensation for the year 2002 being -- I

8      believe it was 1.75 million dollars.

9      Q.    Do you recall what the compensation

10     was at the team you had joined Delaware in

11     1990?

12     A.    I believe roughly $25,000.

13     Q.    Now, back to the initial question

14     which was, what were the discussions

15     concerning compensation if you were to

16     join Putnam in either or any of the roles

17     that were possibly being considered for

18     you?

19               MR. KOCIUBES:  These are

20     included in the confidentiality -- to the

21     extent you're asking about numbers, are

22     included in the confidentiality arrangement

23     we just worked out.

24               Go head, Josh.
```

1    unified large cap team with a large cap

2    domestic value, domestic core, domestic

3    growth portfolio managers sitting with

4    domestically oriented analysts, and then

5    international large cap value core and

6    growth sitting in Boston with the

7    similarly oriented analysts.  But also in

8    London, we have analysts and portfolio

9    managers oriented towards non-U.S. markets,

10    and in Tokyo we have analysts oriented

11    towards non-U.S. markets.

12      Q.   How does this differ from the

13    structure that existed in September of

14    2003?

15      A.   Several ways.  One, the portfolio

16    managers and analysts are managed by the

17    same person at this point, which they

18    weren't in the past.  Furthermore --

19      Q.   Who is that person?

20      A.   Me.  The incentive structure for

21    the analysts and portfolio managers is

22    largely in common, focused on the

23    investment performance of our client

24    portfolios as I've already discussed,

**11/17/2005  Brooks, Joshua H.**

```
1    although for a portfolio manager it will
2    be the sum of all of the sector
3    performance within the portfolio.  The
4    analysts and portfolio managers now sit
5    together as well so that's different in
6    terms of the physical proximity of the two
7    teams -- or to say two teams at this
8    point isn't really accurate.  There is one
9    large cap equity team.
10       Q.   When were those implemented?
11       A.   Those changes have been
12   evolutionary, let's say.  The first step I
13   think we've already talked about to some
14   extent, or one of the first steps, was the
15   alignment of measurement incentives.  A
16   next step was taken at the end of 2004
17   when we combined the core portfolio
18   management teams with the research team.
19   And then another steps was taken at the
20   end of 2004 when we also combined the
21   growth and value portfolio management teams
22   into that structure.
23       Q.   Were those initiatives all that you
24   obtained approval for?
```

**11/17/2005 Brooks, Joshua H.**

```
1     A.    No, I didn't obtain approval for

2    any of those.

3     Q.    Who was responsible for

4    implementing those changes?

5     A.    In -- At end of 2004, Ed Haldeman

6    and Steve Oristaglio were the co-heads of

7    investment, and as such, I believe they

8    made that decision jointly.  Sorry, that's

9    at the end of 2003, not the end of 2004,

10   I'm sorry, relative to the core team.  At

11   the end of 2004, Steve Oristaglio was the

12   head of investments solely, and he made

13   that decision.

14    Q.    Did you have any input into the

15   decision prior to it being implemented?

16    A.    Yeah, my opinion was sought in both

17   cases, certainly.

18    Q.    What was that opinion?

19    A.    That we should bring our portfolio

20   managers and analysts closer together.

21    Q.    Did you consider that to be a

22   problem under the prior system?

23    A.    Yes.

24    Q.    And what was the manifestation of
```

1   about now, is approved by the board of

2   Marsh and McLennan, MMC, and specifically,

3   it's approved by the compensation committee

4   at MMC and then they make a recommendation

5   to the final -- to the full board at

6   Putnam.  Sort of the end determinant, if

7   you will, is now Ed Haldeman who is the

8   CEO.  And I guess, therefore, in all case

9   that would apply that he was CEO at the

10   time of award.

11   Q.   If I understood you correctly, you

12   received a certain amount of stock or

13   stock options when you first joined Putnam

14   to compensate you for what you had had at

15   Delaware.

16   A.   Correct.

17   Q.   Thereafter, you then received

18   periodic additional awards of stock or

19   stock options?

20   A.   Yeah, although, again, it's hard to

21   be pedantic, but in ca lender year 2005,

22   there have been two what I'll call awards,

23   which is to say outside of the regular

24   bonus payment cycle.  And that's not

**11/17/2005  Brooks, Joshua H.**

1     applied to me sort of personally, that's

2     applied to a broad group of people, more

3     than one hundred.  And also in terms of

4     at the time of bonus payments, a portion

5     of my bonus has been paid in stock in

6     lieu of cash?

7        Q.   What was the value of the stock and

8     stock options that were paid to you to

9     compensate you for the stock that you left

10    behind at Delaware?

11       A.   At this point, that value is zero

12    because I was paid in stock options and

13    the strike price of those options is

14    significantly higher than the current price

15    of the stock.

16       Q.   Do you remember what the value was

17    at the time you received it?

18    A.   No, I don't.

19       Q.   Can you give me an approximation?

20    A.   In the zone of a million dollars,

21    but I'm not sure.

22       Q.   And I'm not sure I quite got an

23    answer to the question.  Leaving that

24    approximate million dollars that you got

**11/17/2005  Brooks, Joshua H.**

```
1     at the outset, with respect to the awards
2     prior to 2005, who made the determination
3     as to whether you would or would not
4     receive stock or stock options?
5        A.    Sure.   Anything prior to 2005,
6     which is to say 2004, was paid -- that
7     was paid as a portion of my bonus.   At
8     that point, Steve Oristaglio was the head
9     of the investment division.   Ed Haldeman
10    was the CEO of the firm.   Mike Trakasky
11    (phonetic) had CEO of MMC, et cetera.   And
12    so to say awarded, I was given a bonus
13    that was larger than the original
14    guarantee I had been given, given that I
15    was at that point still under my guarantee
16    and received a little but more than that
17    guarantee, and that came in the form of
18    stock.
19       Q.   So then prior to 2005, you hadn't
20    received any stock or stock option awards
21    that were not part of your guarantee.
22       A.    That were not part of the bonus,
23    because my guarantee was for a base salary
24    and any cash bonus, and then I received a
```

**11/17/2005  Brooks, Joshua H.**

1   opinions on both sides.

2      Q.    Did there come a time when Putnam

3   became aware that it was being probed by

4   the Securities and Exchange Commission?

5              MR. KOCIUBES:  What does

6   that have to do with Ms. Svensson's --

7              MR. WEIR:  I'm just trying

8   to get a time frame here.

9              MR. KOCIUBES:  That begs the

10  question, what is the relevance to any

11  issue in this lawsuit?

12             MR. WEIR:  In reference to

13  this issue, I believe, that he has just

14  been testifying on.

15             MR. KOCIUBES:  What issue?

16  The soft dollar commission investigation.

17             MR. WEIR:  Um-hmm.

18             MR. KOCIUBES:  Why don't you

19  put a specific question to him?  Let's

20  start over with the question.

21             MR. WEIR:  I got a specific

22  question.

23             MR. KOCIUBES:  You didn't

24  limit it to anything.

```
 1            BY MR. WEIR:
 2       Q.   After you joined Putnam, did you
 3    become aware that Putnam was being probed
 4    for anything by the Securities and
 5    Exchange Commission?
 6            MR. KOCIUBES:  What's that
 7    got to do with Ms. Svensson?  In the
 8    wildest definition, broadest definition of
 9    relevance, what paragraph in the complaint
10    is that relative to -- or which claims is
11    that relative to, I should say?
12            MR. WEIR:  It is relevant
13    to the allocation of commissions claim.
14            MR. KOCIUBES:  I'm sorry?
15            MR. WEIR:  The allocation of
16    commissions claim.
17            MR. KOCIUBES:  Any -- If
18    they investigated on any topic at all,
19    it's relevant to allocation --
20            MR. WEIR:  I'll get to
21    that, don't worry about it.  Are you
22    instructing him not to answer?
23            MR. KOCIUBES:  In that form.
24    I mean, if you want to ask him about
```

**11/17/2005  Brooks, Joshua H.**

1    allocations of commissions, go right ahead,

2    or whether he was aware of any kind of

3    investigation. If you want to limit it to

4    anything that is alleged by Ms. Svensson,

5    feel free.

6         BY MR. WEIR:

7    Q.    How about this -- Maybe this will

8    satisfy your counsel's problem.  Did you

9    -- At any time after you joined Putnam,

10   did you become aware that Putnam was being

11   probed by Attorney General Elliot Spitzer

12   concerning allocation of commissions on the

13   south side?

14   A.    No.

15   Q.    And did you become aware at any

16   time after you joined Putnam that Mr.

17   Spitzer or any other legal authority was

18   investigating Putnam for allocation of

19   commissions on the buy side?

20   A.    Can I cut through this a little?

21   Q.    Sure.

22   A.    You are using buy side and south

23   side.  Yeah, at some point I became aware

24   that Putnam was subpoenaed in conjunction

1    with an investigation relating to practices

2    in the industry.

3        Q.    When did you become aware of that?

4        A.    I don't know.  I want to say -- I

5    don't know, but I can give -- Shall I

6    give a broad brush guess?

7        Q.    Yeah.

8                MR. KOCIUBES:  I don't want

9    you to guess, but give me your best

10   memory.

11       A.    Late fall 2003, maybe November,

12   maybe December, potentially early 2004.

13       Q.    Okay.  And who was investigating?

14       A.    There was an FCC investigation of

15   industry practices.

16       Q.    Is there any investigation

17   undertaken by the State of Massachusetts?

18       A.    To that issue specifically, not to

19   my knowledge.

20       Q.    More of industry practices?

21       A.    There -- No, I don't think so.

22       Q.    When you brought this issue up to

23   Mr. Lasser, did he have a response at that

24   time as opposed to some later date?

**11/17/2005 Brooks, Joshua H.**

1    A.   I'm certain he did because I am

2    pretty certain that I would have raised it

3    to him verbally and in person.  But the

4    substance of that response I have no

5    recollection of whatsoever.

6    Q.   Okay.  If he had given a response,

7    did you report that back to Lisa Svensson?

8    A.   I could have referenced it in a

9    conversation we had, but from there, there

10   wasn't any sort of subsequent response.  I

11   had had that conversation with Larry prior

12   to Lisa talking to me about it.

13   Q.   Do you recall any discussions with

14   anyone between the time that you reported

15   it to Lasser and the time of Lisa's

16   departure in September -- on that subject?

17   A.   On that subject, if you mean

18   allocation of commissions, yeah, I think I

19   probably talked to Steve and Ed about it,

20   Steve Oristaglio and Ed Haldeman.  But

21   again, what we're talking about is -- you

22   used the word reported.  What we're talk

23   about wasn't then and isn't now illegal.

24   It wasn't something to report as much as

**11/17/2005  Brooks, Joshua H.**

```
1     it was something to have an opinion about.

2     I registered my opinion with Larry, with

3     Ed, with Steve.  Lisa registered her

4     opinion with me.  It coincided with mine.

5     I didn't particularly -- I may have well

6     have mentioned it to somebody that Lisa

7     happened to share my opinion, but it

8     wasn't any big deal.

9     Q.   It wasn't any big deal to Mr.

10    Lasser; is that what you are saying?

11    A.   I can't speak to whether my opinion

12    carried weight with Mr. Lasser or not.  I

13    don't think my opinion was the one that

14    won the day or changed the practice.

15    Q.   Did you consider it not a big deal

16    at the time that you voiced an opinion?

17              MR. KOCIUBES:  The practice

18    or whether Mr. Lasser considered his

19    opinion to be a big deal?

20              MR. WEIR:  No, I'm talking

21    about the practice.

22              MR. KOCIUBES:  The question

23    is ambiguous.

24              BY MR. WEIR:
```

**11/17/2005 Brooks, Joshua H.**

```
1     Q.   Do you have the question?

2     A.   I do have the question, and I

3  wouldn't have raised it with him if I

4  didn't think it was something worth

5  raising.

6     Q.   And just so I'm clear, you said

7  that raised it with Lasser before you had

8  your discussion with Lisa.

9     A.   Yeah.  And, in fact, as I recall,

10  I told that to Lisa.  So my conversation

11  with Lisa was along the lines of, Hey,

12  yeah, I think you're right.  In fact, I

13  have already told Larry that's where I am

14  on the issue.

15     Q.   Let's go back to the period between

16  -- or after August 28th.  You gave some

17  indefinite period for Lisa to consider the

18  matter.  Did you meet with her at some

19  subsequent point in time?

20     A.   I believe I did, yeah.

21     Q.   When was that, sir?  Approximately

22  how long?

23     A.   I don't recall, but not more than

24  two weeks certainly.
```

**11/17/2005 Brooks, Joshua H.**

1    A.   It would have been held at some

2    point post being relatively clear that

3    Darren might leave or once he had already

4    declared his desire to leave, but actually

5    I don't remember talking to Frank in any

6    great detail about coming to Putnam.

7    Q.   That was because you didn't think

8    Mr. Morris was going to leave Delaware

9    Management.

10   A.   Yeah, that was part of it.  Also,

11   actually when I left Delaware Management,

12   I didn't -- I felt I had the potential to

13   hire a lot of people from that

14   organization and I didn't want to cripple

15   it so I decided I wouldn't hire anyone

16   from that organization that didn't ask to

17   be hired first.  And Frank never asked to

18   be hired so I never would have broached

19   the topic.

20   Q.   How about Maria Drew?

21   A.   She did ask to be hired.  Well,

22   maybe I should say that differently.  I'm

23   sorry.  She called me around that same

24   time, so let's say August of 2003, to say

**11/17/2005  Brooks, Joshua H.**

1    she had decided to leave Delaware and to

2    ask my opinion whether that was the right

3    thing to do and to ask whether I knew of

4    any opportunities, more particularly in New

5    York or London.  If I remember correctly,

6    at the time she was living in New York.

7    And again, around that time, Darren it had

8    decided to leave, so...

9        Q.   Did you have your discussion with

10   Mr. Morris before you had this discussion

11   with Maria Drew?

12       A.   Yeah.  Again, I don't really -- I

13   don't really remember a discussion with

14   Frank, so...

15       Q.   You said former colleagues at

16   Delaware Management.  I'm just trying to

17   find out who those are.

18       A.   Yeah.  Certainly, we can say Maria

19   because obviously I ultimately hired her.

20   Whether I talked to Frank about coming to

21   work at Putnam, I'm pretty sure I didn't.

22       Q.   So who are the others?

23       A.   Let me be more specific.  A former

24   colleague at Delaware.  I may well have

```
1    actually, though, talked to Frank about

2    who he knew in the industry that might be

3    available and that seems entirely likely

4    to me that I would have done that.

5       Q.   Did he give you any names?

6       A.   I don't know.  He might well have.

7    I certainly talked to more than just

8    Maria.  I don't remember, though.

9       Q.   Have Maria Drew worked for you at

10   Delaware Management?

11      A.   She was part of the team I was

12   responsible for, yeah.  She reported to

13   Frank, though.

14      Q.   Did you have a romantic

15   relationship with Maria Drew?

16      A.   Nice.  No.

17           MR KOCIUBES:  As much as

18   your client apparently wants to turn this

19   into a mud-wrestling contest, we are not

20   going to go very far on matters other than

21   related to her claims.  It's nonsense.

22   Anyway, you have your answer.

23           BY MR. WEIR:

24      Q.   Anybody else that you recall that
```

**11/17/2005  Brooks, Joshua H.**

1    you talked to?

2    A.    Not in specific, no.

3    Q.    How long after you had your

4    discussion with Maria Drew did she get

5    hired?

6    A.    We would have talked in probably

7    August, and she, I don't believe,

8    overlapped with Lisa so that means she

9    would have been -- she would have come to

10   Putnam sometime after September, but I

11   don't remember specifics.

12   Q.    When you met with Lisa, did she

13   communicate willingness to accept one of

14   those alternatives?

15   A.    No.

16   Q.    What did she say?

17   A.    Again, I don't remember how many

18   times we talked about it, but her response

19   -- and I believe it was more than once,

20   and I remember her responses to be

21   anywhere from no response whatsoever to,

22   at one point, demanding that she be as, I

23   remember it, promoted to managing director

24   and guaranteed incentive compensation, I

# EXHIBIT F

**11/29/2005 McNamee, Mary**

1    same --

2    A.   Yes.

3    Q.   -- functions that you did in the

4    period after June 2002 --

5    A.   Yes.

6    Q.   -- that you testified about?

7    A.   Yes.

8    Q.   Any additional responsibilities?

9    A.   Nothing in particular that I can

10   think of.

11   Q.   And when did this occur, that is,

12   that you took over all of the investment

13   divisions and risk management?

14   A.   I believe it was the summer of

15   2004, spring -- spring or summer 2004.

16   Q.   Did that change in your duties also

17   involve a change in job title?

18   A.   No.

19   Q.   And did the change in duties also

20   involve a change in your compensation?

21   A.   No.

22   Q.   When you said that you interviewed

23   the parties, did you also interview

24   witnesses or other individuals who might

# EXHIBIT G

## Rollins, Rachael Splaine

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Wednesday, December 07, 2005 3:48 PM |
| **To:** | 'JohnKWeir47@aol.com' |
| **Cc:** | Kociubes, Joseph L.; Rollins, Rachael Splaine |
| **Subject:** | Kelly Morgan Deposition |

Jack:

Kelly Morgan is available to be deposed on December 22. Does that work for you. If so, please advise ASAP since Kelly's calendar is crowded and we need to fix the date if you want it.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

# EXHIBIT H

## Rollins, Rachael Splaine

**From:** Rodriques, Louis A.

**Sent:** Monday, December 12, 2005 10:49 AM

**To:** Kociubes, Joseph L.

**Cc:** Rollins, Rachael Splaine; Kurker, Allyson E.

**Subject:** FW: FW: Kelly Morgan Deposition

FYI.  I assume we should go ahead and release Kelly from the dates she set aside.

Lou

-----Original Message-----
**From:** JohnKWeir47@aol.com [mailto:JohnKWeir47@aol.com]
**Sent:** Monday, December 12, 2005 10:40 AM
**To:** Rodriques, Louis A.
**Subject:** Re: FW: Kelly Morgan Deposition


Louis:

I am not able to proceed with any further depositions of Putnam executives at this time because Putnam has failed to produce documents in accordance with Plaintiff's First Document Request, and has failed to answer fully Plaintiff's First Set of Interrogatories, thereby necessitating the intervention of the Court. Once the Court has determined the appropriate scope of production of documents and answers to interrogatories, and has further resolved the issues relating to confidentiality and unilateral redaction of critical documents, I will be in touch with you to schedule depositions of Ms. Morgan and the other Putnam witnesses identified in your Initial Disclosures. This will likely mean that these depositions will take place in the month of January, 2006. Jack Weir