UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,<br><br>       Plaintiff,<br><br>      v.<br><br>PUTNAM INVESTMENTS LLC, f/k/a<br>PUTNAM INVESTMENTS, INC. and<br>LAWRENCE J. LASSER.,<br><br>       Defendants. | CIVIL ACTION<br>NO. 04-12711 PBS |

## AFFIDAVIT OF MARY G. MCNAMEE

I, Mary G. McNamee, hereby state the following under pains and penalties of perjury:

1. I have been employed by Putnam as a Human Resources ("HR") professional since December 16, 1996.

2. During the period from June 2, 2002, to date, I have served as a senior HR representative for Putnam's Investment Division. Throughout the time, I have been the HR representative for Global Equity Research ("GER"), the department in which Ms. Svensson was employed when her employment was terminated. In the above capacities, I am generally familiar with HR activities within the Division and, in particular, in GER in the months leading up to Ms. Svensson's termination.

3. As the HR representative responsible for GER in the summer and fall of 2003, I was involved in discussions with Ms. Svensson's supervisor, Josh Brooks, concerning the events leading up to Ms. Svensson's termination. So far as I am aware, Mr. Brooks made the decision to terminate Ms. Svensson. Mr. Brooks did not require, nor did he seek to my knowledge, the approval of anyone else to terminate Ms. Svensson.

LITDOCS/638991.1

4.  I have reviewed Ms. Svensson's analysis in her Second and Third Affidavits submitted in support of her motion to compel further answers to interrogatories. In particular, I have reviewed the 91 supposed comparators (67 male, 27 female) cited by Ms. Svensson, as well as the criteria she uses to analyze their comparability. Ms. Svensson's criteria are flawed, and her comparators are not in fact comparable to Ms. Svensson or each other.

5.  Many of the criteria used by Ms. Svensson are not criteria that Putnam employs when making decisions about compensation, promotions, demotions, terminations or other employment actions. For example, Putnam makes no employment decisions on the basis of criteria such as (a) employee has been invited to appear on television; (b) employee has children; (c) employee holds a CFA designation; (d) employee received management training at the same time as Ms. Svensson; (e) employee took maternity leave; (f) employee made recommendations on a significant portion of the S&P 500 on market cap or visibility; (g) employee is "held in high esteem;" or (h) employee complained to top management about unethical commission allocations.

6.  Certain of Ms. Svensson's criteria are so broad when applied to her comparators as to be meaningless. For example, Ms. Svensson uses criteria such as "similar tenure" and "similar investment experience." Yet among her 91 comparators she includes people who had tenure (at the time of her termination) that ranged from 5 months to 20 years. Similarly, she includes recent graduates from business school along with investors with decades of experience.

7.  Even when Ms. Svensson's criteria seem superficially reasonable, she defines her criteria so broadly as to render them useless as a basis for comparison. For example, she uses the criterion "has managed people" but includes some individuals who manage just 2 to 3 people along with those who have managed over 30 people. She also utilizes the criterion "held the same portfolio management position as plaintiff, as reported to the SEC" However, portfolio managers at Putnam (and those on Ms. Svensson's list) manage

-2-

portfolios of vastly different sizes and in vastly different styles or areas of the business. For example among the portfolio managers on the list are some (like Ms. Svensson) who managed relatively small funds and others who managed some of Putnam's very large mutual funds, including Putnam's largest. Similarly, some of the portfolio managers on Ms. Svensson's list manage equities and are "growth" managers, while at least 10 others (unlike Ms. Svensson) are "value" managers. Some manage in a "fundamental" style and at least 10 (unlike Ms. Svensson) are "quantitative" managers. Eight of the portfolio managers do not manage equities at all and are "fixed income" managers. Others of the portfolio managers manage funds dedicated to emerging markets or asset allocation strategies, neither of which were within Ms. Svensson's area of experience or expertise. These portfolio managers are all managed in separate groups and are compensated differently, in both the marketplace and at Putnam. They are also not interchangeable. A value manager generally does not switch to managing in a growth style, and visa versa. A quantitative manager generally does not switch to a fundamental style of managing equities. Nor does a fixed income manager all of a sudden switch to managing equities. The 91 comparators also occupied different positions at different times.

        8.    A review of the 91 people on Ms. Svensson's list of comparators reveals how widely divergent they are. Twenty-eight have had their employment with Putnam terminated involuntarily, 26 have resigned their employment and the rest remain employed. Two of Ms. Svensson's comparators are males who were her bosses during her employment, one of whom remains employed and the other of whom Putnam terminated. She does not list her other two male bosses. Ms. Svensson also lists two males who were analysts who reported to her at the time of her termination, but oddly she does not list the other analysts who reported to her at the same time. Ms. Svensson also does not list the male whom she replaced on the Global Natural Resources Fund, when Putnam terminated his employment, who made less than she, and who, like she, was not promoted to Managing Director.

9. At least 37 of the names on Ms. Svensson's list of comparators are CIOs or their equivalent. This means that these individuals managed entire business areas or investment teams, including, in many cases, several portfolio management teams. Ms. Svensson never served in such a capacity. Ms. Svensson also includes at least 3 individuals who were responsible for managing Putnam's securities trading activities, an area of the business with which Ms. Svensson had no involvement.

10. On her list of 91 comparators, Ms. Svensson includes only 3 of the 13 or so investment professionals who were affected by Putnam's decision to break up the Global Growth team in 2002 as a result of which Ms. Svensson was relocated (she claims "demoted") to Global Equity Research with continued money management responsibilities. Among these individuals she includes the male head of Global Growth, to whom she reported and whose employment Putnam terminated at the time when Ms. Svensson was relocated to GER.

11. In her Second Affidavit, Ms. Svensson cites Eric Sorenson as a male who was appointed from the outside to a position for which she had interest and qualifications. Eric Sorenson was hired from Salomon Smith Barney (where he was Head of Global Quantitative Research, managing 50 people in NY, London, Tokyo and Singapore) to serve as Putnam's Director of Financial Engineering - in effect, Putnam's head of quantitative research. Ms. Svensson had absolutely no professional quantitative experience and no similar management experience. She also expressed no interest in the position for which Mr. Sorenson was hired, nor would she have been qualified to fill it.

12. Only 4 of Ms. Svensson's comparators served as Associate Directors of Research in GER (Ms. Svensson's position) at the time when Ms. Svensson's employment was terminated. Approximately 24 of her 91 comparators worked in GER at all or at the time Ms. Svensson was terminated. None were terminated for in the same reasons that led to Ms. Svensson's termination.

13.  When Putnam disbanded Global Growth in 2002, none of the investment professionals in that group were allowed to displace another employee out of his or her job into a different group. Rather, they were reassigned to groups that could use additional support.

14.  Several of Ms. Svensson's comparators are males who were hired as Managing Directors, many are women who were hired as, or promoted to, Managing Director, and many (including at least 28 men) were never promoted to Managing Director.

                                                           */s/ Mary S. McNamee*
                                                           Mary G. McNamee

May 11, 2006

## CERTIFICATE OF SERVICE

I, Rachael Splaine Rollins, hereby certify that on this 11th day of May, 2006, a true copy of the foregoing document was served via first class mail upon the attorney(s) of record for each other party:

Kevin F. Moloney, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Boston, MA 02114

John K. Weir
John K. Weir Law Offices LLC
300 Park Avenue - Suite 1700
New York, NY 10022

/s/ Rachael Splaine Rollins
_____
Rachael Splaine Rollins

LITDOCS/638991.1