UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA SVENSSON,<br><br>     Plaintiff,<br><br>     v.<br><br>PUTNAM INVESTMENTS LLC, f/k/a<br>PUTNAM INVESTMENTS, INC. and<br>LAWRENCE J. LASSER.,<br><br>     Defendants. | CIVIL ACTION<br>NO. 04-12711 PBS |

## AFFIDAVIT OF RICHARD B. TIBBETTS

I, Richard B. Tibbetts, hereby state under the pains and penalties of perjury as follows:

1. I have been employed by Putnam Investments ("Putnam") as a human resources ("HR") professional since June 27, 1988 -- that is, throughout plaintiff Lisa Svensson's ("Ms. Svensson") entire employment by Putnam.

2. During the period from September 1996 to date, I served as the senior HR professional responsible for Putnam's Investment Division. In that capacity, I have been responsible for, participated in, and/or was generally familiar with all human resources activities involving the Division, including terminations, officer promotions and compensation decisions. Since April 2004, I have been Putnam's Chief of Human Resources, the senior HR position at Putnam.

3. In her Affidavits and motion papers in connection with her motion to compel answers to her interrogatories, Ms. Svensson asserts that throughout her tenure with Putnam, there existed in the Investment Division a committee referred to as the "Investment Division Management Committee" ("IDMC") which, she asserts, was responsible for all decisions concerning promotions, compensation and terminations within Putnam's Investment Division.

As one who regularly attended IDMC meetings, I can testify that Ms. Svensson's allegation that the IDMC made all such decisions during Ms. Svensson's tenure at Putnam is false. It is also worth noting that Ms. Svensson's assertion is uninformed, since she neither served on the IDMC nor attended its meetings.

4. The IDMC was formed in late 1998 by the then Head of the Investment Division, Tim Ferguson. As best I can determine, the last meeting of the IDMC occurred in early 2001. Hence, the IDMC was no longer meeting when Ms. Svensson was terminated, when she was allegedly "demoted" from Global Growth to Global Equity Research, and when compensation and officer promotion decisions were finalized or made for calendar years 2001, 2002 or 2003.

5. The IDMC's charter was to run the business operations of the Investment Division. The IDMC was not responsible for micro-managing individual decisions concerning terminations, officer nominations, and compensation. Throughout the period from 1999 to 2003, those decisions were made by the individual business unit manager or investment team leader responsible for managing the employees in question.

6. As is the case in any large organization, once an individual manager made a determination that a particular employee should be terminated, the manager would review that decision with HR and his or her supervisor(s). HR and senior management might well provide feedback for the manager to consider in making the ultimate decision whether or not to terminate the employee, but the ultimate decision was the manager's.

7. Similarly, when determining year-end compensation, the individual business unit manager or investment team leader would make a determination as to the bonus to be received by each employee in the unit. As a matter of corporate governance, those decisions would be presented for approval to Putnam's senior management. Nonetheless, the ultimate decision as to what to pay any individual employee was made by that person's business unit manager or investment team leader, not by Putnam's senior management.

8. The same was true for officer nominations. Each business unit manager or investment team leader nominated employees in his or her unit for promotion to Assistant Vice President, Vice President, Senior Vice President or Managing Director. Officer nominations were then discussed, and in some years voted upon, by a group consisting of some senior management personnel and HR representatives, many of whom were IMDC members. Nonetheless, the decision whether to nominate a given Senior Vice President for promotion to Managing Director was made by that Senior Vice President's manager.

9. I understand that Ms. Svensson is seeking information concerning individuals denied promotion to "partner-level positions" at Putnam. There was no job of "Partner" at Putnam, nor was "Partner" an official title at Putnam. Instead, "partners" generally were heads of business units and a very few senior, respected investment professionals that participated in a separate incentive bonus plan referred to as the Partners Incentive Compensation Plan (the "Partners Plan"). Participants in the Partners Plan were colloquially referred to as Partners. Thus, no one was "refused or denied" a "promotion" to a "partner-level position" at Putnam. Indeed, a person who became eligible to participate in the Partners Plan did not necessarily change his or her job or job duties at all, and two individuals could occupy identical positions at Putnam with only one of them participating in the Partners Plan. Ms. Svensson - like the overwhelming majority of male and female investment professionals at Putnam - never was considered for participation in the Partners Plan.

Signed under the pains an penalties of perjury this ___ day of May, 2006.

Richard B. Tibbetts

-4-

## CERTIFICATE OF SERVICE

I, Rachael Splaine Rollins, hereby certify that on this 11th day of May, 2006, a true copy of the foregoing document was served via first class mail upon the attorney(s) of record for each other party:

Kevin F. Moloney, Esq.
Barron & Stadfeld, P.C.
100 Cambridge Street
Boston, MA 02114

John K. Weir
John K. Weir Law Offices LLC
300 Park Avenue - Suite 1700
New York, NY 10022

/s/ Rachael Splaine Rollins
_____
Rachael Splaine Rollins