UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA SVENSSON,<br><br>      Plaintiff,<br><br>v.<br><br>PUTNAM INVESTMENTS LLC, f/k/a<br>PUTNAM INVESTMENTS, INC. and<br>LAWRENCE J. LASSER,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  NO. 04-12711 PBS<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT PUTNAM INVESTMENTS LLC'S
MOTION FOR A PROTECTIVE ORDER QUASHING
PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

Defendant, Putnam Investments LLC("Putnam"), moves to quash the Fed. R. Civ. P 30(b)(6) deposition notice (the "Notice") served on it by plaintiff, Lisa Svensson ("Ms. Svensson").

**I.  INTRODUCTION**

After deposing nine present and former Putnam employees, including all of those involved in the decision to terminate her employment, Ms. Swenson has now noticed, for the last day of the discovery period, a Rule 30(b)(6) deposition of Putnam. Ms. Svensson's Notice lists 34 "topics" upon which she wants to depose Putnam. Essentially, after concluding discovery, Ms. Svensson's Notice, charitably described, now asks Putnam to designate witnesses to tell her, *inter alia,* everything the institution knows about her claims and extraneous allegations; about Putnam's defenses; about 91 present and former employees; about any matter referred to in any of the questions posed or answers given in her previous 9 depositions; about the deponents in this case; about the "subject matter" of her interrogatories, document requests and Putnam's responses; and about documents withheld on privilege grounds. How one could possibly provide

witnesses to respond to such a Notice remains a mystery. Whatever else Ms. Svensson's "Notice" is, it is not a valid, meaningful or serious deposition notice. Not a single one of the deposition "topics" complies with the "reasonable particularity" requirements of Rule 30(b)(6).

Ms. Svensson also seeks to circumvent the Court's prior ruling in connection with her document requests that such requests are improper because they are overbroad and seek the mental impressions of counsel. Some of the Notice's proposed topics seek information concerning *91* individuals who, as Putnam has argued in connection with Ms. Svensson's pending motion to compel further answers to interrogatories, are not appropriate comparators in connection with Ms. Svensson's claims. Finally, Ms. Svensson proposes to examine Putnam concerning the contents of documents as to which Putnam claimed the attorney-client and work product privileges in November 2005. Because none of Ms. Svensson's examination topics is an appropriate Rule 30(b)(6) deposition topic, the Notice should be quashed.

## II.     FACTUAL BACKGROUND

In 2003, Ms. Svensson was an Associate Director of Research at Putnam, supervising four analysts. That summer, Ms. Svensson contacted Mary McNamee ("McNamee") of Putnam's Human Resources ("HR") department with highly critical comments about one of her otherwise well-regarded subordinates, Chris O'Malley ("O'Malley"). Surprised by Ms. Svensson's comments, McNamee and Josh Brooks ("Brooks"), the head of Putnam's Global Equity Research ("GER") Department, the department in which Ms. Svensson worked, investigated Ms. Svensson's claims about O'Malley. Brooks concluded that key statements made by Ms. Svensson about O'Malley were false. Brooks and McNamee also learned that another highly-regarded analyst was resigning in significant part due to Ms. Svensson's management style. O'Malley also was contemplating resignation for the same reason. Brooks concluded that Ms. Svensson should no longer function as a manager. Brooks offered to retain Ms. Svensson as an Associate Director of Research at the same salary and benefits, but without

2

managerial responsibilities. Ms. Svensson declined that offer and refused Putnam's alternative proposals that she (a) seek employment elsewhere at Putnam or (b) leave Putnam with a severance package that provided benefits valued in excess of $800,000. Instead, Ms. Svensson demanded a promotion to Managing Director and guaranteed compensation of $1 million per year for two years. Faced with these demands, Brooks concluded that he had no choice but to terminate Ms. Svensson's employment. Putnam hired a female to assume Ms. Svensson's coverage responsibilities.

### III.   PROCEDURAL BACKGROUND

The gravamen of Ms. Svensson's amended complaint is that Putnam (a) terminated her and failed to promote her to Managing Director because of her gender; (b) compensated her less than similarly situated male counterparts; and (c) retaliated against her for filing her charge of gender discrimination and for complaining about internal business practices of Putnam by refusing to repurchase her Putnam equity and failing to pay her certain deferred compensation payments allegedly due her. Ms. Svensson demands damages of $25 million.

A scheduling conference occurred on May 2, 2005, after which the parties were free to commence discovery. On June 8, 2005, Ms. Svensson served her first set of interrogatories and first request for production of documents. Putnam objected to Ms. Svensson's first document request on the ground, among others, that, like her interrogatories, Ms. Svensson requested documents concerning every Putnam employee and issues having nothing to do with her claims. On November 4, 2005, Ms. Svensson moved to compel production of documents. On December 13, 2005, this Court (per Magistrate Judge Bowler) largely denied Ms. Svensson's motion (which requested substantially the same information sought here) and ordered a limited further production by Putnam by January 6, 2006. Putnam complied with this Order. On January 13, 2006, Ms. Svensson sought a six-month extension of the discovery deadline but this Court extended the discovery deadline only to April 30, 2006. In late March 2006, Ms. Svensson

3

requested, and Putnam agreed to, a second 30-day extension of the discovery deadline to accommodate the parties scheduling of additional depositions.  Discovery is now scheduled to close on June 1, 2006.

This is not a case in which Ms. Svensson filed a Rule 30(b)(6) notice because she does not know the names of potential witnesses or needs some other basic corporate information.  Ms. Svensson has obtained thousands of pages of documents and deposed her two supervisors, the HR representative responsible for her business unit, one of her former colleagues at Putnam, one of the analysts who reported to her and who resigned largely due to her mismanagement of him, Putnam's current Chief Executive Officer ("CEO"), and Putnam's former CEO.  She has scheduled depositions of Putnam's Chief of Human Resources, and of a former co-head of Putnam's Investment Division.  These include the relevant people involved in Putnam's decision to terminate Ms. Svensson's employment.  Despite that extensive discovery, Ms. Svensson now seeks new, broad discovery by means of an entirely inappropriate Rule 30(b)(6) deposition.

## IV.    ARGUMENT

### A.    Ms. Svensson's Proposed Examination Topics Fail to Satisfy Rule 30(b)(6)'s "Reasonable Particularity" Requirement.

Ms. Svensson's Notice lists the following examination topics for her Rule 30(b)(6) deposition of Putnam:

1. The facts alleged by Svensson in any one or more of ¶¶ 18-54, 58-59, 63-67, 71-72, 76-77, 79-81, 83-84, 86-91, 93-94, 96-105, 107-108, 110-112 and 114-115 of the complaint.

2. Any contention on Putnam's or Lasser's part that the facts alleged in any one or more of ¶¶ 1-5, 18-54, 58-59, 63-67, 71-72, 76-77, 79-81, 83-84, 86-91, 93-94, 96-105, 107-108, 110-112 and 114-115 of the complaint in any respect(s) is (are): (a) not true, (b) incorrect, (c) inaccurate, (d) incomplete, and/or (e) false.

3. The factual basis(es) of any contention on Putnam's or Lasser's part that the facts alleged in any one or more of ¶¶ 1-5, 18-54, 58-59, 63-67, 71-72, 76-77, 79-81, 83-84, 86-91, 93-94, 96-105, 107-108, 110-112 and 114-115 of the complaint in any respect(s) is (are): (a) not true, (b) incorrect, (c) inaccurate, (d) incomplete, and/or (e) false.

4

4. Putnam's and Lasser's responses to ¶¶ 1-5, 18-54, 58-59, 63-67, 71-72, 76-77, 79-81, 83-84, 86-91, 93-94, 96-105, 107-108, 110-112 and 114-115 of the complaint.

5. The factual basis(es) of Putnam's and Lasser's responses to ¶¶ 1-5, 18-54, 58-59, 63-67, 71-72, 76-77, 79-81, 83-84, 86-91, 93-94, 96-105, 107-108, 110-112 and 114-115 of the complaint.

6. Putnam's and Lasser's affirmative defenses alleged in their respective answers to the complaint.

7. The factual basis(es) of Putnam's and Lasser's affirmative defenses alleged in their respective answers to the complaint.

8. The subject matters of Svensson's interrogatories to Putnam.

9. Putnam's responses (and the subject matters thereof) to Svensson's interrogatories.

10. The subject matters of the categories of the documents and things requested by Svensson in Svensson's first and/or second requests for the production of documents and things in this case.

11. The documents and things (and the information or opinion contained therein) requested by Svensson in Svensson's first and/or second requests for the production of documents and things in this case.

12. Putnam's responses to Svensson's first and second requests for the production of documents in this case.

13. The documents and things produced by Putnam in response to Svensson's first or second requests for the production of documents in this case.

14. The information or opinion in the documents and things produced by Putnam in response to Svensson's first or second requests for the production of documents in this case.

15. The information or opinion in the documents and things produced by Putnam in response to Svensson's first or second requests for the production of documents in this case, which, in any respect, was redacted by Putnam in whole or in part.

16. The documents referred to in the Putnam privilege log as amended.

17. The information or opinion in the documents referred to in the Putnam privilege log as amended.

18. The factual basis of the claims in the Putnam privilege log as amended that non-production, in whole or in part, of the documents or the

5

information or opinion contained therein, is pursuant to, or justified by, the attorney-client privilege or the work product doctrine.

19. Any one or more of the identified males.

20. Any one or more of the identified females.

21. Putnam's decision making in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified males.

22. The factual basis of Putnam's decision making in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified males.

23. Putnam's employment actions in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified males.

24. The factual basis of Putnam's employment actions in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified males.

25. Putnam's decision making in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified females.

26. The factual basis of Putnam's decision making in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified females.

27. Putnam's employment actions in the period since January 1, 11 1999, in regard to Svensson and/or any one or more of the identified females.

28. The factual basis of Putnam's employment actions in the period since January 1, 1999, in regard to Svensson and/or any one or more of the identified females.

29. The criteria used by Putnam in the period since January 1, 1999, in its decision making and in its employment actions in regard to Svensson and/or any one or more of the identified males and the identified females.

30. The results of the application in the period since January 1, 1999, of the criteria referred to in the immediately preceding paragraph to Svensson and/or any one or more of the identified males and the identified females.

31. Any of the witnesses in any deposition in this case taken prior to this Rule 30(b)(6) deposition of Putnam.

32. Any of the matters, information or opinion referred to in either the questions or the answers in any deposition in this case taken prior to this Rule 30(b)(6) deposition of Putnam.

33. The participants in the decision making and employment actions in the

LITDOCS/641732.1

> period since January 1, 1999, concerning Svensson and/or any of the identified males and/or any of the identified females.
>
> 34. The respective actions, statements and communications of or by the participants referred to in the immediately preceding paragraph in the period since January 1, 1999, concerning Putnam decision making and employment actions concerning Svensson and/or any of the identified males and/or any of the identified females.

Ms. Svensson's proposed examination topics do not comport with Rule 30(b)(6)'s "reasonable particularity" requirement. Rule 30(b)(6) requires that the Notice "describe with reasonable particularly the matters on which examination is requested." The purpose of Rule 30(b)(6) is to put the corporation on notice of the scope of the inquiry. *See* 8A Charles A. Wright & Arthur R. Miller, "Federal Practice and Procedures," § 2103, n.72 (2d ed. 1994). Because the designated individuals are responsible for answering questions concerning the identified topics, "[a]n over broad Rule 30(b)(6) notice subjects the noticed party to an impossible task." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

All of Ms. Svensson's proposed topics fail to satisfy Rule 30(b)(6)'s "reasonable particularity" requirement. Topics 1 through 15 of the Notice all seek information concerning every allegation in the complaint, every denial or affirmative defense by Putnam, every document request or interrogatory propounded by Ms. Svensson, every document produced by Putnam or any Putnam answer to an interrogatory, and the like. Without a more particularized statement of the proposed examination topics, Putnam not only cannot prepare a corporate witness, it cannot even identify what witnesses are the appropriate Rule 30(b)(6) deponents. Not surprisingly, therefore, topics such as these have been held to be inappropriate examination topics under Rule 30(b)(6). Thus, in *Skladzien v. St. Francis Regional Medical Center*, 1996 WL 807353, *1 (D. Kan. 1996) the court held:

> While the notice does call for the designation of a witness to testify to any statement of fact set forth in the amended complaint to which the defendant has denied, such a request does not provide with reasonable particularity the matters upon which examination is requested.

Similarly, topics 19 through 34 propose to examine Putnam about "[a]ny one or more of [67] identified males" (topic 19), or "[a]ny one or more of [24] identified females" (topic 20), Putnam's "decision-making" about Ms. Svensson or the 91 identified individuals from 1999 to 2003, any "employment actions" involving Ms. Svensson and the 91 individuals during the same period and the factual basis for that "decision-making" (topics 21-30, 33-34), and other similar topics. Again, Putnam cannot possibly determine who the appropriate deponents are given the vagueness and breadth of these topics, much less prepare these witnesses for deposition.[1] Given the far-ranging nature of Ms. Svensson's topics (*e.g.*, every employment action relating to Ms. Svensson and the alleged 91 comparators), Putnam would likely need to prepare and produce literally dozens of deponents, making a mockery of the 10 deposition limit prescribed by the Local Rules. Indeed, absent any further specification, the most likely person with knowledge concerning "any one or more of the [91 comparators]" (topics 19 and 20) would be all of the 91 comparators themselves.

Finally, Ms. Svensson's proposed topics include "[a]ny of the witnesses in any deposition in this case…", or any matter referred to in "either the questions or answers in any deposition in this case…." *See* topics 31 and 32. She makes no effort to identify what about these witnesses, or the thousands of questions or answers put to them, will be the subject of her Rule 30(b)(6) inquiry, making the task of identifying and preparing appropriate deponents impossible.

It is surely the case that Ms. Svensson does not intend for her examination to be as broad as her topics literally read. For example, she cannot seriously expect a Rule 30(b)(6) deponent to be prepared to address <u>anything</u> about "any one or more of [the 91 alleged comparators]." Topics 19 and 20. Yet, during the process of conferring with respect to this motion, Ms.

---

[1] For example, Putnam presumably would need to have legions of witnesses ready to explain, for Ms. Svensson and the 91 alleged comparators, every employment decision ever made regarding any of them – from hiring and termination to the decision whether to approve sick time or a vacation day.

8

Svensson refused to narrow her topics in any way. Putnam is thus faced with an impossible task. To comply with Rule 30(b)(6), Putnam must identify knowledgeable individuals who have "a duty to answer questions" concerning the designated topics. *Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727, 730 (D.Mass. 1985). Yet the breadth of Ms. Svensson's topics make it impossible for Putnam to do so. Where, as here, "the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Tri-State Hospital Corp. v. U.S.*, 226 F.R.D. 118, 125 (D.D.C. 2005), quoting *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

Ms. Svensson also is using Rule 30(b)(6) improperly. Typically, Rule 30(b)(6) depositions are used early in a case to identify knowledgeable witnesses or to obtain an "official" corporate position on a discrete topic. Indeed, the purpose of the Rule is to enable a plaintiff to examine a knowledgeable corporate officer about a discrete subject matter, thereby avoiding the problem that arose when the "particular officer whose deposition had been noticed knew nothing about [the discrete topic]." *Paparelli, supra*, 180 F.R.D. at 730. Ms. Svensson has experienced no such difficulty here. Rather, noticed as it was the very last day of the discovery period, it is evident that Ms. Svensson hopes to use her Rule 30(b)(6) Notice to reprise all of her discovery to date on every conceivable topic. Yet, "[r]ule 30(b)(6) was never intended to be a culminating stage at which a party's entire proof would be synthesized for the benefit of the other side, organized, then restated orally by one omniscient witness's integration." *Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms*, 50 Ala. L.Rev. 651, 699 (Spring 1999). Having failed to specify her Rule 30(b)(6) examination topics with specificity, Ms. Svensson's Notice should be quashed.

**B.     Ms. Svensson's Notice Ignores Prior Rulings of the Court and Impermissibly Seeks Discovery She Has Already Obtained.**

As noted above, Topics 1 through 15 of Ms. Svensson's Notice topics seek to depose Putnam on every fact alleged in the complaint, every denial or affirmative defense in Putnam's

9

answers, and every discovery response by Putnam or defendant Lasser to date.[2] These topics flagrantly disregard Magistrate Judge Bowler's prior ruling that such discovery requests are inappropriate.

In her Request for Production of Documents, Ms. Svensson sought the following:

Request No. 7:

All documents which relate to or support any of the admissions, denials, denials of knowledge or information or other allegations contained in Defendant's Answer, including but not limited to paragraphs (sic).

Request No. 8:

All documents which relate to, or support, any of the affirmative defenses asserted in Putnam's Answer.

Putnam objected to these requests because they were overbroad and because by their nature they sought to discover the mental impressions of counsel. *See, e.g., Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *Flynn v. Church of Scientology*, 116 F.R.D. 1 (D.Mass. 1986). At the hearing on Ms. Svensson's motion to compel further production of documents, Magistrate Judge Bowler ruled that Ms. Svensson's requests were inappropriate. *See* Transcript of Hearing on December 13, 2005 (Exhibit A hereto), pp. I-8 to I-10. Topics 1 through 15 of Ms. Svensson's Notice are substantially similar to her earlier document requests and are equally inappropriate.

Ms. Svensson's Notice also seeks to reprise discovery that she has already conducted. Thus, Ms. Svensson has listed topics such as "[a]ny of the witnesses in any deposition in this case…" (topic 31), "[a]ny of the matters, information or opinion referred to in either the questions or answers in any deposition in this case…" (topic 32), the subject of Ms. Svensson's

---

[2] How Putnam can possibly produce a Rule 30 (b)(6) deponent concerning co-defendant Lasser's answers, affirmative defenses and discovery responses is mysterious. Similarly, Ms. Svensson asks Putnam to designate a deponent knowledgeable about <u>her</u> allegations.

interrogatories (topic 8), Putnam's responses to Ms. Svensson's interrogatories (topic 9), and the responses and documents already produced by Putnam in discovery (topics 10-15). Apart from the lack of particularity in these topics, Ms. Svensson simply seeks to repeat the discovery she has already conducted. Who better, for example, to testify to each witness' answers than the witness – who already has been deposed? Absent some explanation concerning the inadequacy of prior discovery (which ordinarily should be raised by a motion to compel), Ms. Svensson's effort to obtain a second bite at the apple should be rejected.

        **C.    Ms. Svensson Seeks Inappropriate Discovery Concerning 91 Alleged Comparators.**

Topics 19 to 30 and 33-34 in Ms. Svensson's Notice seek a broad range of discovery concerning 91 individuals who she believes are her comparators for purposes of her various claims. Apart from the lack of particularity in these topics addressed above, Putnam has argued in opposition to Ms. Svensson's motion to compel further answers to interrogatories (now pending before Magistrate Judge Bowler) that these 91 individuals are not appropriate comparators. For the reasons set forth in Putnam's opposition (which Putnam incorporates herein by reference), Ms. Svensson's examination topics involving her 91 alleged comparators are not appropriate Rule 30(b)(6) topics.

        **D.    Ms. Svensson Seeks Discovery Concerning Matters as to Which Putnam Already Has Claimed a Privilege.**

Topics 15 through 18 of Ms. Svensson's Notice seek information concerning documents redacted by Putnam on attorney-client privilege and work product grounds (topic 15), documents identified in Putnam's privilege log (topic 16), the information in such documents (topic 17), and the basis for the claims of privilege (topic 18). Because the topics seek privileged materials, they are an appropriate subject for a protective order. *See In Re Indp. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651 (D. Kan. 1996) (privileged material not an appropriate topic for Rule 30(b)(6) deposition notice). Ms. Svensson's recourse is to move to compel the materials as to which the

11

privilege has been asserted, a motion she has not made despite the fact that Putnam claimed the privilege when it produced documents last November. Having failed to do so, her proposed Notice is improper.

## V.    CONCLUSION

For the foregoing reasons, Putnam respectfully requests that the Court quash the Notice and grant such other relief as is just.

**PUTNAM INVESTMENTS LLC, f/k/a
PUTNAM INVESTMENTS, INC.,**

By its attorneys,


 /s/ Rachael Splaine Rollins
Joseph L. Kociubes, BBO #276360
Louis A. Rodriques, BBO #424720
Rachael Splaine Rollins, BBO #641972
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

May 24, 2006

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that counsel for Putnam has conferred with counsel for plaintiff on May 23, 2006 and attempted in good faith to resolve or to narrow the issues presented by this motion.

/s/ Rachael Splaine Rollins
Rachael Splaine Rollins, BBO #641972


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 24, 2006.

LITDOCS/641732.1

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12711-PBS

**LISA SVENSSON**
    Plaintiff

        v.

**PUTNAM INVESTMENT, et al**
    Defendants

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
HELD ON DECEMBER 13, 2005

APPEARANCES:

For the plaintiff:  John K. Weir, Esquire, John K. Weir Law Offices, LLC, 300 Park Avenue, Suite 1700, New York, NY 10022, 212-572-6374.

Nancie Edgren, Esquire, Barron & Stadfield PC, 100 Cambridge Street, Suite 1310, Boston, MA 02114, 617-723-9800.

For the Defendant:  Louis A. Rodriques, Esquire, Bingham McCutchen LLP, 150 Federal Street, Boston, MA 02110, 617-951-8340.

Court Reporter:

Proceedings recorded by digital sound recording, transcript produced by transcription service.

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

I-8

1  to those 10 or 15 people to see where they went and why, but
2  I don't think Mr. Weir is seriously arguing that Putnam had an
3  obligation to bump somebody in another job and put her there.
4           THE COURT:  No, as to those individuals at this time.
5           All right, next.
6           MR. WEIR:  Request number 7, all documents which
7  relate or support any of the admissions, denials, denials,
8  acknowledge or information or other allegations contained in
9  defendant's answer, then we limited that--
10          THE COURT:  It's pretty broad.
11          MR. WEIR:  I accept it was broad, Your Honor.  At the
12 pre-motion conference we limited that to the specific
13 paragraphs of the complaint which contained the events of which
14 are the guts of this lawsuit.
15          MR. RODRIQUES:  We have two objections to this, Your
16 Honor.  First, as Your Honor correctly points out, it's very
17 broad, and in the second objection, which is one that has been
18 approved by this Court in other cases, is to ask a request that
19 says produce all documents that support your denial, ask the
20 lawyer to produce documents and that in effect would be of the
21 mental impressions of counsel.  I can't give that
22 interrogatory, that document request to my client and say
23 produce those documents.  They're going to say to me, well,
24 which documents are, they and there are cases which we cite in
25 our brief which say that that request is improper.  This is

1  also the issue with respect to number 8.  What Mr. Weir has
2  said is that he is limited, he's limiting that now to the
3  allegations in the complaint.  The allegations in the complaint
4  obviously are very, very broad.  What we said we'd be willing
5  to do is to produce all documents that relate to the specific
6  employment actions taken against Mr. Svensson about which she
7  complains.  In other words--
8        THE COURT:  All right, so you'll produce those.
9        MR. RODRIQUES:  And that we've done.  That we've
10 done.  We want to--
11       MR. WEIR:  That's acceptable to us.  We're not
12 seeking any documents which constitute the mental impressions
13 of counsel.
14       THE COURT:  Okay.  He's produced them.
15       MR. RODRIQUES:  And that we've done with one
16 exception, Your Honor, which are emails, and I think those have
17 to be addressed separately.  I think we're going to come to
18 those when we get to communications.
19       THE COURT:  All right.  Next.
20       Mr. Shapiro, you were on for 2:00?
21       MR. SHAPIRO:  That was before Judge Saris.  I'm the
22 duty attorney for the day and--
23       THE COURT:  Okay.  Next time just have them give us a
24 call, but we'll get Mr. Berman and we'll proceed as soon as I
25 finish this.

```
 1              MR. SHAPIRO:  I apologize.
 2              THE COURT:  You're welcome.
 3              MR. WEIR:  Request number 8, all documents which
 4    relate to support any of the affirmative defenses asserted in
 5    Putnam's answers.
 6              THE COURT:  Again, very general.
 7              MR. RODRIQUES:  And the same mental impressions
 8    issue, and again to the extent this goes to - in our answer we
 9    said we are producing documents that would be responsive to
10    this in response to other requests.  Our objection is saying,
11    here are all, this pile of documents support our affirmative
12    defense.  There's no way to do that without--
13              THE COURT:  All right, I agree.
14              MR. RODRIQUES:  --without our expressing our view of
15    the case obviously.
16              THE COURT:  Next.
17              MR. WEIR:  Request number 10, any and all documents
18    concerning plaintiff's employment with Putnam including without
19    limitation job descriptions, manuals, handbooks, performance
20    reviews and evaluations, warnings, documents concerning job
21    performance, company policies and documents concerning denial
22    of promotions to plaintiff, demotions of plaintiff, transfers
23    of plaintiff and the termination of plaintiff on September 15$^{th}$,
24    2003.
25              THE COURT:  Sounds acceptable.
```