UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| * * * * * * * * * * * * * * * * <br> * <br> LISA SVENSSON * <br> * <br> Plaintiff, * <br> * <br> v.  * <br> * <br> PUTNAM INVESTMENTS, * <br> LLC and LAWRENCE * <br> LASSER, * <br> * <br> Defendants. * <br> * <br> * * * * * * * * * * * * * * * * | Civil Action No. 04-12711-PBS <br><br> BBO No. 351000 <br><br> Memorandum <br> of <br> Plaintiff Lisa Svensson <br> in Support of her Opposition to <br> Defendant Putnam Investments, LLC's, <br> Motion for a Protective Order Quashing <br> Plaintiff's Rule 30(b)(6) Notice of the <br> Deposition of Defendant Putnam <br> Investments, LLC |

1.   Introduction.

Plaintiff Lisa Svensson ("Svensson") submits this memorandum in opposition to the motion ("Motion") of defendant Putnam Investments, LLC ("Putnam") "for a Protective Order Quashing Plaintiff's Rule 30(b)(6) Deposition Notice." In this action, Svensson seeks to prove her single plaintiff disparate treatment and disparate impact claims. To do so, Svensson must obtain information about Putnam's treatment of other present and former employees, both to prove at trial that Svensson, because of her gender, was treated less favorably than similarly situated male employees, and to establish, through evidence of Putnam's mistreatment of other females, the existence of a discriminatory atmosphere and discriminatory motivation at Putnam, making it more likely that Putnam also discriminated against Svensson on the basis of her gender. Obviously, such information concerning Putnam's treatment of other employees is highly relevant to Svensson's claims.

Perhaps understanding the importance and potential negative impact of such evidence, Putnam has undertaken a concerted effort to prevent Svensson from discovering relevant

information necessary to her case.  Putnam's present attempt to avoid its obligation to submit to a Rule 30(b)(6) deposition is a part of that larger effort.  Putnam's overall strategy is to avoid discovery by asserting conclusions based upon evidence from its employment files to show that Svensson has not identified sufficiently similar comparators, while at the same time denying Svensson access to the very employment information which she needs in order to prove that her proposed comparators are similarly situated.  The court should not allow Putnam to manipulate the system in this unfair and intellectually dishonest  manner.

    2.        <u>Facts and procedural background</u>.

Putnam, a nationally known investment firm, is one of a number of subsidiaries of Marsh & McLellan Companies, Inc. ("MMC").[1]  Svensson, who holds a Bachelor of Science degree in petroleum engineering from Texas A&M University and the MBA degree from Cornell University, had seven years of sophisticated investment experience prior to her being employed by Putnam in 1994.[2]  Shortly after her being employed by Putnam in July 1994, Svensson served in its Investment Management Division ("IMD") as Vice President, Supervisory Analyst, in Global Equity Research ("GER"). <u>Id</u>.  Then, starting in 1997 she served Putnam as a Senior Vice President, Portfolio Manager, for the Putnam Global Growth Fund. <u>Id</u>.  In this position, among other things, Svensson was responsible for the performance of Putnam's Large Cap International Growth products: Putnam Global Growth Fund, International Large Cap Growth Equity, and Global ex-Japan. <u>Id</u>.  Also in this position, she helped develop the investment process, including development of quantitative screening, portfolio construction and risk management techniques; she recruited and trained numerous junior investment professionals, including development of

---

[1] First Affidavit of Lisa Svensson ("Svensson First affidavit"), filed April 20, 2006, ¶2.
[2] <u>See</u> Svensson's resume, a copy of which is annexed as Exhibit "1" to both the Second Affidavit of Lisa Svensson ("Svensson Second Affidavit") and the Third Affidavit of Lisa Svensson ("Svensson Third Affidavit"), each of which were filed April 20, 2006.

2

their coverage plans and evaluation of their performance; and she helped to design marketing materials and participated in new business development and ongoing client service initiatives.  Id.

In or about March 2002, Svensson was demoted from this portfolio management position to a position in GER and, ultimately, her employment was terminated on September 15, 2003. On August 28, 2003, Putnam, acting through Joshua Brooks ("Brooks") , a male hired by Putnam from the outside approximately five months earlier, offered Svensson three options:  (1) to be demoted to an entry level analyst position with no chance to earn more money or to be promoted; (2) to accept a severance package consisting of 18 weeks of her base pay and half of her prior year's bonus, which, she later learned was subject to her signing a release of all of her legal rights with respect to her position as a member of a protected class under Title VII); and, (3) to pretend to work as an analyst for Putnam while she sought employment elsewhere, with the explicit statement that she would leave Putnam by a date to be agreed upon, but without any severance payment.  See Fourth Affidavit of Lisa Svensson, which accompanies this memorandum, ¶ 14.  Putnam did not offer Svensson the option to seek employment elsewhere within Putnam.  Id.

It is Svensson's position, among others in this case, that her demotion and ultimate termination were the result of unlawful discrimination by Putnam on the basis of her gender. Specifically, Svensson contends that the male investment professionals at Putnam, including those who were promoted to, or were hired from the outside as, Managing Directors, who are identified in Exhibit 2 to the Second Affidavit of Lisa Svensson ("Second Svensson Affidavit"), filed April 20, 2006, and as restated and amended in Exhibit 1 to the Fourth Affidavit of Lisa Svensson, ("Fourth Svensson Affidavit"), which accompanies this memorandum, are, for the reasons referred to in that Analysis of Male Comparators, her male comparators.  Svensson's

3

contends that the female investment professionals identified in Exhibit 2 to the Svensson Third Affidavit and as restated and amended in Exhibit 2 to the Fourth Svensson Affidavit, which accompanies this memorandum, are, for the reasons set forth in that analysis, her female comparators.

Yet Putnam has taken the startling position that, during Svensson's nine years of employment as an investment professional in Putnam's IMD, Svensson had no comparators. Indeed, Putnam's counsel has announced that Svensson will not get comparator information from Putnam absent a court order.[3] However, the Putnam position that Svensson had, and has, no comparators not only is belied by facts but also is in stark contrast to the information in documents that Putnam itself has produced. The issue of comparators to Svensson is the central, overriding issue in this case, and will be a major focus of the Rule 30(b)(6) deposition which Putnam so desperately seeks to avoid.

By way of background, as set forth more particularly in ¶¶ 3-9 of the First Affidavit of Lisa Svensson ("First Svensson Affidavit"), the investment teams and the research functions in the IMD, were not administered independently within the IMD by team or function, as titles, compensation and other significant employment and administrative matters concerning those in the various Putnam divisions were decided within and by the respective divisions.[4] For

---

[3] During the deposition of Putnam's Chief Executive Officer Charles Haldeman on Tuesday, April 11, 2006, when Haldeman was being questioned by Svensson's counsel as to the information about the redactions concerning male investment professionals in Putnam document PRM-01563-64, a copy of which is annexed as Exhibit "1" to the Affidavit of Kevin F. Moloney ("Moloney Affidavit"), filed April 20, 2006, Putnam's counsel said, "[P]eople who are not comparators of the claimant have been redacted. [Svensson is] not entitled to personnel information about them, so whether or not there is a document, you're not getting it absent the court deciding that we are wrong in our assessment." (Emphasis added.) Excerpt from the Haldeman deposition., p. 87, ll. _3-8 a copy of which is annexed as Exhibit "2" to the Moloney Affidavit.

[4] In addition to the IMD that managed client portfolios, there were the Operations Division (services to customers including answering client questions and mailing fund information); the Distribution Division, which marketed and sold products to institutional and retail clients; and the Corporate Division, which supported the overall business through activities such as corporate finance. Id.

4

example, in the IMD there was the Investment Division Management Committee ("IDMC"), which made decisions for all of the IMD concerning, among other things, bonuses and promotions. Id.[5] Putnam documents produced in this case confirm that there was a centralized structure for promotions and demotions that applied across all levels of officers within the IMD. For example, Putnam document PRM 1789-1792, a copy of which in the redacted form in which it was produced by Putnam is annexed to the Affidavit of Kevin F. Moloney ("Moloney Affidavit"), filed April 20, 2006, as Exhibit 3, evidences a meeting of Putnam officials from across the entire IMD at which the candidacies of various persons, including, among others, Svensson, from across the entire IMD, for promotion to Managing Director were discussed. Putnam document PRM-1518, a copy of which in the redacted form in which it was produced by Putnam is annexed to the Moloney Affidavit as Exhibit 4, shows that this centralized structure for promotions applied across all levels of officers in the IMD, including also Quant, Fixed Income Trading, Currency and GAA. Persons who were hired as, or promoted to, Managing Director in the periods when Svensson was eligible for appointment to the position are, by definition, comparators of Svensson, a fact that Putnam obviously recognized since Putnam documents, PRM-1792, PRM-1886-1887 and PRM 1891-1893, copies of which in the redacted form in which they were produced by Putnam are annexed to the Moloney Affidavit as Exhibits 5, 6 and 7, respectively, show that Svensson was included with others in the various promotion pools for Managing Director.

Candidates for demotion to GER, to which Svensson was demoted in 2002, were selected from across the same broad range of portfolio teams in the IMD. Unredaction of Putnam

---

[5] There was an Operating Committee at Putnam, the members of which included the heads of each of the four Putnam divisions as well as the head of Human Resources and Putnam's Chief Financial Officer. The Operating Committee reported to defendant Lawrence J. Lasser ("Lasser") who also was a member of this committee. All of the members of the Operating Committee were located at Putnam's Boston office. Svensson First Affidavit, ¶¶ 6-7.

5

document PRM 1691, a copy of which in the redacted form in which it was produced by Putnam, is annexed to the Moloney Affidavit as Exhibit 8, handwritten notes describing another meeting with Brett Browchuk during which the demotion of Lisa Svensson was discussed, undoubtedly will identify others who were considered for demotion.  Putnam document PRM 1308-1309, a copy of which in the redacted form in which it was produced by Putnam, is annexed to the Moloney Affidavit as Exhibit 9, is a January 30, 2003, e-mail from Chief Investment Officer of Specialty Growth, Daniel Miller, which shows that management decisions at Putnam were being made by a broader range of officials than those assigned only to GER.  According to the document, Miller's input had been requested by Managing Director and Chief Operating Officer Brett Browchuk who was looking across a range of teams, of which Lisa Svensson's was one, for ways to cut salary burden.  In this process, Putnam was comparing Svensson to other persons from a number of investment teams.  Unredaction of the redacted portion of this document undoubtedly will identify other persons with whom Miller compared Svensson.

Upon information furnished to Svensson and her belief, at least one male Managing Director was considered for demotion to the position that Lisa Svensson in 2002 was forced to take.  Based upon this alone, every SVP/Senior Portfolio Manager and Managing Director during the year of Svensson's demotion, whether or not demoted, is properly a comparator of Svensson.

There was an Operating Committee at Putnam, the members of which included the heads of each of the four Putnam divisions as well as the head of Human Resources and Putnam's Chief Financial Officer.  The Operating Committee reported to defendant Lawrence J. Lasser ("Lasser") who also was a member of this committee.  All of the members of the Operating Committee were located at Putnam's Boston office.  Svensson First Affidavit, ¶¶ 6-7. 3.

Argument.

3.1  Svensson's Rule 30(b)(6) deposition notice lists specific and limited topics of examination, thereby complying with the Rules requirement that such topics be stated with "reasonable particularity."

Putnam argues that Svensson's Rule 30(b)(6) deposition notice fails to comply with the requirement of that Rule that the topics of examination be identified in the notice with "reasonable particularity." In support of this assertion, Putnam cites Tri-State Hospital Corp. v. U.S., 226 F.R.D. 118, 125 (D.D.C. 2005) and Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000), both of which held that the Rule 30(b)(6) deposition notices at issue were insufficiently particularized. However, the deposition notices in those two cases bear no resemblance to Svensson's notice, a copy of which is annexed hereto as Exhibit "1."

In both Tri-State and Reed, the topics listed in the deposition notices were unlimited in scope. In each, topics included the phrase "including but not limited to," and thus failed to identify the outer limits of the area of inquiry. In Tri-State, the court explained:

> Categories 1, 3, 6, 8, 9, and 13 of plaintiff's 30(b)(6) notice contain the phrase "including but not limited to." According to defendant, this phrase renders each category overbroad. In support of its contention, defendant cites Reed v. Bennett, 193 F.R.D. 689 (D.Kan.2000), which states: "Where ... the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." ...
>
> In Reed, the court found that the 30(b)(6) notice was overbroad because witnesses could be questioned about any number of topics "including but not limited to" those set out in the notice.... Thus, Reed dealt with a 30(b)(6) notice that listed certain categories but stated that the topics were not exclusive and questions would not be limited to those categories. In this case, plaintiff's notice enumerates a finite list of 19 specific categories and contains the phrase "including but not limited to" within each category. Thus, while the situation is slightly different, the problem is the same. The purpose of designating matters for the 30(b)(6)

7

>  deposition is to give the opposing party notice of the areas
>  of inquiry that will be pursued so that it can identify
>  appropriate deponents and ensure they are prepared for the
>  deposition.  Listing several categories and stating that the
>  inquiry may extend beyond the enumerated topics defeats
>  the purpose of having any topics at all.  Accordingly, this
>  court will strike the "but not limited to" language within
>  each of these categories.

226 F.R.D. at 125.

The topics listed in Svensson's Rule 30(b)(6) deposition notice are entirely different from those in Tri-State and Reed.  Svensson's topics are specific and limited.  For example, Topics 1-5 indicate an intent to question Putnam about facts related to specified paragraphs of the complaint and Putnam's responses to those paragraphs.  All of the other topics are similarly limited.  No topic includes the phrase, "but not limited to" or otherwise states that it is not limited to the matters stated within it.

A Rule 30(b)(6) deposition notice need only "inform [the deponent corporation] of the matters which will be inquired into at the deposition so that [the deponent] can determine the identity and number of persons whose presence will be necessary to provide an adequate response to any ... potential questions." Mitsui & Co. (USA), Inc. v. Puerto Rico Water Resources Authority, 93 F.R.D. 62, 66 (D.P.R. 1981).  Because each and every topic listed in the Rule 30(b)(6) deposition notice identifies its outer limits, they adequately inform Putnam and comply with the Rule's "reasonable particularity" requirement.  Tri-State, 226 F.R.D. at 125, Reed, 193 F.R.D. at 692; Steil v. Humana Kansas City, Inc., 197 F.R.D. 442, 444 (D. Kan. 2000).[6]

---

[6] Putnam relies on Skladzien v. St. Francis Regional Medical Center, 1996 WL 807353, * 1 (D. Kan. 1996) in support of its claim that a topic seeking to question a Rule 30(b)(6) witness about any statement in the complaint denied by the corporation, does not meet the reasonable particularity requirement.  In view of the case law cited above, including later cases from the District of Kansas, indicating that a topic need only identify the outer limits of examination, Svensson submits that Skladzien is simply wrong if it requires greater specificity.  Moreover, even if Skladzien is an accurate statement of the law, the topics in

      3.2    <u>Topics 19-34, seeking information concerning Putnam's knowledge as to employment actions involving any of Svensson's comparators, are not overbroad</u>.

Topics 19-34 of Svensson's deposition notice seek to examine Putnam concerning the male and female comparators Svensson has identified, Putnam's knowledge of employment actions involving those comparators, and Putnam's decisionmaking process related to those actions. Putnam claims this is overbroad, and that it would "likely need to prepare and produce literally dozens of deponents, making a mockery of the 10 deposition limit prescribed by the Local Rules." Putnam motion, p. 8. Putnam further claims that the persons with the most knowledge of these topics would be the 91 comparators themselves.

Not one of these arguments has any merit whatsoever. The topics are not vague or overbroad. They obviously seek information about Putnam's decision making process underlying its employment actions relative to the males and females Svensson claims as comparators. Because the focus is on <u>Putnam's</u> actions and decision making process, Putnam is not correct when it asserts that the comparators themselves would be most knowledgeable.

Nor would Putnam have to produce "literally dozens of deponents." The Rule 30(b)(6) witness need not have personal knowledge of the matters testified to. <u>Briddell</u> v. <u>Saint Gobain Abrasives Inc.</u>, 233 F.R.D. 57, 60 (D. Mass. 2005). Therefore, a single witness or a modest number of additional witnesses adequately educated as to the facts, could testify on Putnam's behalf. Nor, even if Putnam were to designate multiple representatives to testify at the Rule 30(b)(6) deposition, would the Local Rule 10 deposition limit be violated. A Rule 30(b)(6) deposition counts as a single deposition because it is a deposition of a single party, the corporation. That the corporation may need to designate more than one representative is immaterial.

---

Svensson's deposition notice (which identified particular paragraphs) were more specific than those in <u>Skladzien</u> (which apparently did not).

Putnam also asserts that Svensson's counsel improperly failed to limit the scope of the deposition topics when the parties conferred with regard to Putnam's motion. Yet there was no need to do so. Because Rule 26 limits discovery to matters relevant to "the claim or defense of any party," Svensson's examination of Putnam concerning Svensson's comparators necessarily must be limited to matters pertaining to the comparators' employment relationships with Putnam, and employment actions and decisions by Putnam relative to those comparators, because only that information is relevant to Svensson's claims.

    3.3    <u>Svensson does not ignore the rulings of this court and does not seek to examine Putnam concerning the mental impressions of counsel</u>.

Putnam claims that Topics 1-15 of Svensson's Rule 30(b)(6) deposition notice impermissibly seek the mental impressions of its counsel, in violation of the order of this court (Bowler, U.S.M.J.) ), entered at the December 13, 2005, hearing. Topics 1-15 identify as the subject matter of examination facts underlying Svensson's complaint, Putnam's response to the complaint, Putnam's affirmative defenses, Svensson's interrogatories to Putnam and Putnam's answers thereto, and facts relative to the subjects covered by Svensson's requests for production of documents and Putnam's responses thereto.

However, Svensson does not seek to examine Putnam concerning the mental impressions of its counsel. Transcript, December 13, 2005, hearing, p. I-9, ll. 11-13.

    3.4    <u>The topics identified in Svensson's Rule 30(b)(6) deposition notice are not invalid merely because, in some cases, they seek information on topics already covered in other depositions, interrogatories or requests for production of documents</u>.

Putnam argues (p.10) that Svensson's Rule 30(b)(6) deposition notice is invalid because it identifies topics already covered in other discovery. Putnam is wrong for two reasons. First, there is no rule that a party may not seek information about the same subjects from multiple sources. Indeed, multiple witnesses may have different information to offer about a given subject

10

or occurrence, such that complete information can be obtained only by examining more than one witness. The courts have recognized that a Rule 30(b)(6) deposition properly may cover matters which also were the subject of other depositions or discovery. In Tri-State, a case relied upon by Putnam, the court stated:

> A review of the 30(b)(6) notice and the applicable interrogatories and document requests reveals that defendant is correct: each of the categories listed above is duplicative of information sought via other discovery mechanisms. ...
>
> I have reviewed the defendant's answers to the interrogatories and document requests and find them to be sufficient. Nevertheless, I am aware of no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices. By its very nature, the discovery process entails asking witnesses questions about matters that have been the subject of other discovery. There are, of course, only a finite number of pertinent events in any lawsuit, and how they occurred is a topic that may be pursued by all forms of discovery, even though the information provided by one form of discovery repeats and duplicates information yielded by another. Thus, the fact that information has been provided to plaintiff concerning a particular category does not, in itself, make that category an impermissible subject of a 30(b)(6) deposition.

226 F.R.D. at 125-26. (Emphasis added.) Although the Tri-State court recognized that a court may enter a protective order to ensure that a Rule 30(b)(6) deposition is not used to waste the deponent's time, it also recognized that courts should not be involved in managing the Rule 30(b)(6) deposition or engaging pre-deposition in a topic-by-topic review. Id. at 126.

The second reason Svensson's Rule 30(b)(6) deposition should cover topics raised at other depositions and through other discovery methods is that while Svensson has inquired about those subjects, Putnam has never provided adequate answers. In fact, Putnam has been consistently evasive and obstructive. For example, when shown in deposition by Svensson's counsel some of

the numerous redacted documents Putnam produced[7] and asked a question about them, defendant Lasser, Putnam's former Chief Executive Officer, testified that he could not answer the questions. He testified at p. 11:

```
1    Q.    Okay. Is it your testimony that other
2          than those documents, you have never seen these
3          other documents before?
4    A.    No, I didn't say that. I said I don't
5          specifically recall. You showed me a bunch of
6          blank pages, so it's hard to remember.
```

(Emphasis added.)

Because Svensson has not yet been able to obtain information critical to her case, she is entitled to renew her inquiries at the Rule 30(b)(6) deposition.

    3.6    <u>Topics 19-30 and 33-34 of Svensson's Rule 30(b)(6) deposition notice, seeking information concerning identified comparators, are proper subjects of inquiry at the Rule 30(b)(6) deposition, because those persons are appropriate comparators.</u>

Putnam claims that topics 19-30 and 33-34 are invalid because they relate to persons whom Svensson claims as comparators but who are not, in Putnam's opinion, valid comparators. The comparator issue has been fully briefed in Svensson's "Memorandum ... in Support of Her Motion ... for an Order Compelling ... Putnam ... to Answer Interrogator[ies]..."and her "Reply ... to the Opposition of ... Putnam ... to [her] ... Motion ... for an order Compelling ... Putnam ... to Answer Interrogator[ies]...," filed herewith, which are incorporated herein by reference.

    3.7    <u>Svensson does not seek to examine Putnam's Rule 30(b)(6) witness concerning the content of communications as to which Putnam claims the attorney client privilege or work product protection.</u>

Putnam incorrectly asserts that Svensson seeks to examine it about the content of communications it claims are subject to the attorney client privilege or work product protection.

---

[7] Of the 2862 pages of documents produced by Putnam in response to Svensson's requests for production, 509 of them (17.8%) are redacted in whole or in part. Copies of those redacted documents accompany the Second Affidavit of Kevin F. Moloney as Exhibit "1," filed herewith."

12

That is not true.  Svensson seeks only to examine Putnam about facts forming the factual basis for its claim of privilege or work product protection (e.g. the circumstances surrounding a given communication) in order to determine if the privilege properly protects the document, not at this point about the allegedly protected content of the communication itself.  Once such information is obtained, Svensson will be able to determine whether to challenge Putnam's assertion of the privilege.

    4. <u>Conclusion.</u>

For all of the foregoing reasons, the court should deny Putnam's motion for a protective order quashing Svensson's Rule 30(b)(6) deposition notice.

                      LISA SVENSSON, plaintiff

                      By her attorneys

                      BARRON & STADFELD, P.C.

                      /s/ Kevin F. Moloney
                      Kevin F. Moloney    BBO No. 351000
                      Roger T. Mainwaring BBO No. 548041
                      100 Cambridge Street, Suite 1310
                      Boston, Massachusetts 02114
                      Tel.: 617.723.9800/531.6569

                      and

                      /s/ John K. Weir
                      John K. Weir, admitted PHV
                      JOHN K. WEIR LAW OFFICES, LLC
                      300 Park Avenue, Suite 1700
                      New York, New York 10022
                      Tel.: 212.572.6374

Dated: June 8, 2006.

<u>Certificate of Service</u>.

    This document filed through the ECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                      /s/ Kevin F. Moloney

Dated: June 8, 2006.
[360402.1]]