```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

| | | |
|---|---|---|
| * * * * * * * * * * * | * | Civil Action No. 04-12711-PBS |
| | * | |
| LISA SVENSSON | * | |
| | * | BBO No. 351000 |
| Plaintiff, | * | |
| | * | Plaintiff Lisa Svensson's |
| | * | Reply Memorandum |
| | * | to |
| PUTNAM INVESTMENTS, | * | Defendant Putnam Investments, |
| LLC, et al., | * | LLC's Opposition to Svensson's |
| | * | "Motion Pursuant to Fed. R. Civ. |
| Defendants. | * | P. 37(a) For Orders Compelling |
| | * | ...Tibbetts and...Oristaglio to |
| * * * * * * * * * * * | * | Resume Their Depositions to |
| | | Answer Questions That Their |
| | | Counsel Directed them not to |
| | | Answer.... " |

Plaintiff Lisa Svensson ("Svensson") submits this reply memorandum to Putnam's opposition to Svensson's "Motion, Pursuant to Fed. R. Civ. P. 37(a) For Orders Compelling ...Tibbetts and...Oristaglio to Resume Their Depositions to Answer Questions That Their Counsel Directed them not to Answer...."

1.   <u>Introduction</u>.

Svensson relies upon the facts and prior proceedings set out in her previous filings in this matter. She specifically rejects the characterizations and "cherry picking" evident in the Putnam introduction and statement of prior proceedings, confident that the evidence at trial will prove Putnam wrong. Indeed, if during the depositions taken to date, Putnam

genuinely had believed that Svensson, as Putnam now purports to claim, had "harassed and attempted to embarrass current and former Putnam employees," it would have filed a motion for a protective order.

2.  <u>For purposes of discovery, Putnam has agreed that Kamshad and Scott are comparators of Svensson</u>.

On p. 9 of its opposition filed July 13, 2006, Putnam asserts that Svensson "was not similarly situated to...Kamshad and...Scott 'in terms of performance, qualification and conduct, without such differentiating or mitigating circumstances that would distinguish their situations.' [Citation omitted]."

Putnam urges Svensson and the court to rely upon this unsubstantiated assertion without having furnished either to Svensson or to the court the relevant interrogatory answers, documents and deposition testimony upon which the court could determine whether this unsupported assertion by Putnam is true or not.

Svensson's access to Putnam's documents and information has been a long time in coming.  Indeed, it was not until July 11, 2006, at the resumption of the June 21, 2006, motion hearing before the court (Bowler, U.S.M.J.) that Putnam represented to the court that for purposes of discovery in this case, that it would answer interrogatories as to the 67 males and 24 females whom Svensson had identified as her comparators.  This change of

position by Putnam came about only because at the close of the first part of the hearing, on June 21, 2006, the court had advised Putnam that further discovery by Svensson would be allowed.

Because Putnam has not yet served the answers to interrogatories it agreed on July 11 to provide; because the Rule 30(b)(6) deposition of Putnam has not yet been taken; and because the parties are in the midst of discussions concerning unredaction of Putnam documents produced in redacted format pursuant to the First Request for Production and production of additional and unredacted documents identified in Svensson's Second Request for Production, Svensson has not received from Putnam the information and documents necessary to enable her to refute at trial, and the court to determine the truthfulness and accuracy of, Putnam's claims about Kamshad and Scott.

However, what is unquestionably clear at this pretrial stage of the case is that Putnam has agreed to make discovery as to the 67 males and 24 females that Svensson has identified as comparators and that Kamshad and Scott are two of the 67 comparator males.

3.  <u>For purposes of discovery, Putnam should not be allowed to keep from Svensson the names of persons which Putnam's counsel directed Tibbetts not to disclose when Tibbetts was questioned as to the redacted names on Putnam document PRM 01701 insofar as any of them are among the 67 males and 24 females identified by Svensson.</u>

3

Given Putnam's July 11 agreement to answer interrogatories as to the 67 males and 24 females identified by Svensson, insofar as any of the names of the persons referred to by "male" or "female" on Tibbetts deposition Exh. 23, Putnam document PRM 01701, a copy of which is annexed hereto as Exhibit "A," are included among the 67 males and 24 females, Putnam should not be allowed to keep from Svensson the names that Putnam's counsel directed Tibbetts not to disclose when Tibbetts was questioned in his deposition about them.

4.  <u>As the conduct of Kamshad and Scott was more serious than that alleged of Svensson, they are comparators of Svensson</u>.

The Putnam opposition claims, at p. 9, that <u>Conward</u> v. <u>Cambridge School Committee</u>, 171 F.3d 12 (1999) "makes clear that the misconduct at issue must be nearly identical." Notably on the prior page Putnam acknowledged, in contrast, that while the "alleged offenses do not need to be identical, [they] 'must be of comparable seriousness'." In the context of the instant case, Putnam is incorrect in its interpretation of <u>Conward</u> as the facts of that case are easily distinguishable.

Unlike in <u>Conward</u>, the comparator conduct in the present case is egregious and far more serious than that alleged of Svensson. The plaintiff's difficulty in <u>Conward</u> was that, as District Judge O'Toole put it, 1998 WL 151248, *3, ___ Conward had not established that the school committee had failed to

4

terminate teachers "outside the protected class who engaged in misconduct as serious or more serious than Conward's." (Emphasis added.)  In affirming Judge O'Toole's grant of summary judgment to the defendant school committee, the Court of Appeals did not disagree with this statement by the District Court.  In fact, the First Circuit's analysis of the facts shows that the appellate court, like Judge O'Toole in the District Court, found the conduct the plaintiff in Conward relied upon, was  not "as serious or more serious" than Conward's.

In Lynn v. Deaconess Medical Center-West Campus, 160 F.3d 484 (8th Cir. 1998), cited by Svensson at p. 14 of her initial memorandum, the United States Court of Appeals for the 8th Circuit said,

> To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination.  Common sense as well as our case law dictate that we reject such an approach.

(Emphasis added.)  See also the cases cited at pp. 14-17 of Svensson's initial memorandum.

3.  Putnam's belated action against Kamshad and Scott, the result only of public scandal and intense pressure from the Securities and Exchange Commission and the newspapers, does not preclude them from being Svensson's comparators.

Putnam argues, opposition p. 10, that Kamshad and Scott are "not comparators because Putnam terminated all three."  This is

5

disingenuous in the extreme. Ultimately, Kamshad and Scott were terminated. But this occurred in late 2003 only after their conduct at Putnam, which had been ongoing since at least 2000, had become a public scandal and the Securities and Exchange Commission, The <u>Boston Globe</u>, the <u>New York Times</u> and the <u>Wall Street Journal</u> were in hot pursuit. For at least three years Putnam had allowed Kamshad and Scott, both males, to pursue their wrongful conduct. According to defendant Lasser,

> I knew there was a problem.... I didn't ask for details."[1]

Yet Putnam in the summer of 2003 "investigated" Svensson on a complaint from a junior male analyst for alleged deficiencies in her "management style" of him, and terminated her employment within weeks.

The only fair and reasonable inference is that, absent the pressure from the regulators, the newspapers and investors who learned about the wrongful conduct and started withdrawing their money from Putnam management, Kamshad and Scott, both males, would be at Putnam today.

On the facts of the instant case, Putnam's action against Kamshad and Scott, which was forced upon it when public scandal had placed Putnam virtually on its financial death bed, does not

---

[1] Lasser letter to George Putnam, November 5, 2003, <u>Boston Globe</u>, March 24, 2004, p. C4.

preclude them from being Svensson's comparators.

          LISA SVENSSON, plaintiff,

          By her attorneys,

          BARRON & STADFELD, P.C.

          s/ Kevin F. Moloney_____
          Kevin F. Moloney BBO No. 351000
          100 Cambridge Street, Suite 1310
          Boston, Massachusetts 02114
          Tel.: 617.723.9800/531.6569

Dated: July 21, 2006

## Certificate of Service.

    This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

          /s/ Kevin F. Moloney_____

Dated: July 21, 2006

[364934.1]

**Exhibit A**



|  | Justin Scott /BOS/Putnaminv<br>04/25/2003 06:52 PM | To | Sherrie Holder-Watts/BOS/Putnaminv@PUTNAM, Richard Tibbetts/BOS/Putnaminv@PUTNAM, Paul Warren/BOS/Putnaminv@PUTNAM, Omid Kamshad/BOS/Putnaminv@PUTNAM |
|  |  | cc |  |
|  |  | bcc |  |
|  |  | Subject | Officer Nomination Process: PLEASE READ |

Sherri,

The important titles will be the MD title.

There is no turning back the MD title inflation. I resisted for a long time(ask Paul) but whether we create a more senior title to distinguish some existing MDs if we like , or recognize seniority thru committees fact is we need to make a bunch of MDs this year :-

Incl :-
**Male**      ....We (Tim, Omid and I) gave him a committment.
**Male**      .....Head of Intl Grwth.
**Male**      /........We pushed back on widely held view that he shld be MD on arrival......He is clearly at least equiv of   **Male**
   **Male**     .. Core Growth.
   **Male**     i.... I know,Incredible but true....we want him to stay and take on Mid Cap Growth..its the currency that most matters to him...The single biggest
           angst for him has been seeing all his peers from research ( He was head of tech/ADR 4 years ago). recieve MD.
 **Female**   .... Similar to **Male** this is the year !

During their desperate encirclement and ultimately succesful defense in the battle of the Bulge, the 101st airborne made dozens of field commissions....we lost $1.3bn of net outflows last month in a up month for the industry....time for field commissions !

Regards,

Justin

PS We shluld not delay the MDs for more than a coup[le of weeks.

----- Forwarded by Justin Scott/BOS/Putnaminv on 04/25/03 06:24 PM -----

REDACTED