UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

```
* * * * * * * * * * * *   *    Civil Action No. 04-12711-PBS
                          *
LISA SVENSSON,            *
                          *    BBO No. 351000
         Plaintiff,       *
                          *
                          *    Memorandum of Plaintiff
v.                        *    Svensson in Support of her
                          *    Motion to Compel Production
                          *    of Documents and Things in her
                          *    Second Request for Documents
PUTNAM INVESTMENTS LLC,   *    and Things and for Other Relief
et al.,                   *    as to the Putnam Responses to
                          *    her First Interrogatories and
         Defendants       *    First Request for Production.
                          *
* * * * * * * * * * * *   *
```

Plaintiff Lisa Svensson ("Svensson") submits this memorandum
in support of her motion for orders compelling production of
documents and things requested in the various categories of her
Second Request for Production by defendant Putnam Investments,
LLC ("Putnam"), for other relief as to Putnam's responses to her
First Interrogatories to, and First Request for Production of
Documents by, Putnam, and for sanctions including attorneys'
fees.

The categories of the Second Request for Production by
Putnam that are subject to this motion, are set forth below in
accordance with the requirements of Local Rule 37.1(b)(4).

Svensson has waived or limited the scope of the categories
of documents requested in the Second Request for Production as

set forth below.

**Request No. 1**: <u>All documents</u> and things <u>concerning the criteria actually used</u> by the persons participating in the decision making process <u>in deciding whether</u> to select Svensson[1] or any of the identified males or identified females for appointment to or election as a Managing Director or Portfolio Manager in the period since January 1, 1999, whether by promotion from within the Investment Management Division, another division of Putnam or as a lateral hire from another entity.[2]

**Response No. 1**: [Putnam objects to the extent this Request seeks documents [that]...have been produced... [And] to the balance [as]...unduly vague and ambiguous, overbroad, and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing, Putnam will produce its Career Development Guide for Equity Portfolio Manager.

   **Argument**:  The documents requested concerning the

   criteria used by Putnam should be produced as they are

   highly relevant to the Putnam decision making process that

   is at the heart of this case.  Plaintiff Svensson

   ("Svensson") will accept a statement from defendant Putnam

   Investments, LLC ("Putnam") that it has produced all

   written criteria concerning Managing Director and Portfolio

   Management positions since January 1, 1999, and will

   produce any criteria for Portfolio Management Managing or

   Director positions that it has not already produced.

---

[1] The phrase "91 comparators" refers collectively to the 91 identified males and identified females that Putnam and Svensson agreed at the July 11, 2006, hearing would be deemed comparators for discovery purposes, Putnam reserving the right to contest this characterization for purposes other than discovery.
[2] All underlined emphasis of any of Svensson's requests is added.

**Request No 2**:
All <u>documents</u> and things <u>concerning the results of the</u>
<u>application of the criteria referred to</u> in the immediately
preceding category to [Svensson], any of the [91
comparators].

**Response No. 2:** To the extent this Request...relat[es] to
[Svensson], such documents [already] have been produced...
[Putnam] objects to the balance...[as] unduly vague and
ambiguous, overbroad, and...irrelevant and not reasonably
calculated to lead to the discovery of admissible
evidence...[and[... further objects [as] set forth in its
Opposition to the Plaintiff's motion to compel further
answers to her interrogatories ("Putnam's Opposition")....

**Argument:** The documents requested concerning the
results of the criteria actually used by Putnam in deciding
who should be appointed to Portfolio Management and
Managing Director positions should be produced as they are
highly relevant to the Putnam decision making process that
is at the heart of this case.

However, Svensson will reduce the scope of this
request for purposes of this category of this request to
the following 22 of the 91 comparators: 16 males: Mark
Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman,
Peter Hadden, Shigeki Makino, David Gerber, David King,
Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino
Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss,
and six females: Beth Cotner, Lauren Allansmith, Debbie
Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard. [3]

---

[3] By limiting the number of comparators for purposes of this or any

**Request No 3:** <u>In regard to the</u>...91 Comparators...<u>who were not</u>
<u>promoted from within Putnam to Portfolio Manager or</u>
<u>Managing Director but were hired on a lateral basis</u> from
anther entity in the period since January 1, 1999, <u>all</u>
<u>documents and things concerning communication between or</u>
<u>among those persons participating in the decision making</u>
<u>process as to the persons who should be elected or appointed</u>
<u>to th[ose] position[s]</u>, and which documents and things
<u>concerned evaluation of, or action or decision made, taken</u>
<u>or recommended or proposed to be made or taken, in regard</u>
<u>to any one or more of such persons</u>.

**Response No. 3:** Putnam objects...unduly vague and ambiguous,
overbroad, and...irrelevant and not reasonably calculated
to lead to the discovery of admissible evidence...[and] on
the grounds set forth in Putnam's Opposition....[and] the
Request is incomprehensible to the point that it is
unclear what additional information the Plaintiff seeks.

**Argument: D**ocuments concerning communication among

decision makers as to persons being brought in from outside

of Putnam to fill positions that Svensson and the female

comparators were qualified are certainly highly relevant to

the Putnam decision making process that is at the heart of

this case.

However, Svensson will reduce the scope of this request

to communications among the decision makers as to the

following four male comparators who were brought into Putnam

from the outside: Josh Brooks, Shigeki Makino, Colin Moore

and Eric Sorensen. Based on the deposition testimony and

Putnam documents produced to date, Svensson believes that

---

other category of this request from the 91 Comparators to some of
them, Svensson does not waive any contention on her part that all of
the 91 Comparators are her comparators.

some or all of the following individuals were decision

makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry

Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett

Browchuk, Dan Miller and Justin Scott.

Plaintiff is not aware of any female comparators who

fall within the scope of this request, but if any of the 24

female comparators were rejected for immediate Managing

Director or Portfolio Manager status upon first being hired

by Putnam, Svensson requests the court to require production

of documents concerning these decisions.

**Request No 4** In regard to the [91 Comparators] who were not
promoted from within Putnam but were hired as a Managing
Director or Portfolio Manager...from another entity in the
period since January 1, 1999, all documents and things
prepared or received by or on behalf of any one or more of
the persons participating in the decision making process as
to the persons who should be so appointed or elected to
Managing Director or Portfolio Manager, and which
documents and things concerned evaluation of, or action or
decision made, taken or recommended or proposed to be made
or taken, in regard to any one or more of such persons.

**Response No. 4** Putnam objects...unduly vague and ambiguous,
overbroad,...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence....also...on
the grounds set forth in Putnam's Opposition....[and]...the
Request is incomprehensible to the point that it is unclear
what additional information the Plaintiff seeks.

**Argument: D**ocuments concerning evaluations by decision

makers as to persons being brought in from outside of Putnam

to fill positions that Svensson and the female comparators

were qualified are certainly highly relevant to the Putnam

decision making process that is at the heart of this case.

However, Svensson will reduce the scope of this request to documents concerning evaluations by the decision makers as to the following four male comparators who were brought into Putnam from the outside: Josh Brooks, Shigeki Makino, Colin Moore and Eric Sorensen.  Based on the deposition testimony and Putnam documents produced to date, Svensson believes that some or all of the following individuals were decision makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott.

Plaintiff is not aware of any female comparators who fall within the scope of this request, but if any of the 24 female comparators were rejected for immediate Managing Director or Portfolio Manager status upon first being hired by Putnam, Svensson requests the court to require production of documents concerning these decisions.

**Request No 5**: In regard to Svensson and the [91 Comparators] and the pools of persons for consideration for appointment or election as Managing Director or Portfolio Manager at any time in the period since January 1, 1999, all documents and things concerning communication between or among those persons participating in the decision making process as to who should be included in or excluded from such pools, and which documents and things concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard...to Svensson, any of the [91 Comparators] concerning inclusion in, or exclusion from, such pools.

**Response No. 5:** Putnam objects...unduly vague and ambiguous, overbroad ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further states that this court, in response to Plaintiff's November 5, 2005 Motion to Compel Defendant's Production of Documents has already limited Putnam's obligation to produce communications between and among its personnel; and Putnam has already produced such information in accordance with this court's prior ruling.

**Argument: D**ocuments concerning communication by and among decision makers as to which persons should be included in or excluded from the pools of persons to be considered for appointment or election as Managing Director or Portfolio Manager are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this category to documents prepared or received by the above-named ten decision makers (Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott) concerning any of the 91 Comparators in regard to such inclusion or exclusion. This should not require search of e-mail accounts of any comparators, but rather review of files and e-mails of only the above referred to ten decision makers.

**Request No. 6:** In regard to the [91 Comparators] who were not promoted from within Putnam but were hired as a Managing Director or Portfolio Manager on a lateral basis from another entity in the period since January 1, 1999, all documents and things prepared or received by or on behalf

<u>of any one or more of the persons participating in the</u>
<u>decision making process as to who should be so elected or</u>
<u>appointed, and which concerned evaluation of, or action or</u>
<u>decision made, taken or recommended or proposed to be made</u>
<u>or taken, in regard to</u> Svensson [or any of the 91
Comparators]....

**Response No. 6** Putnam objects...unduly vague and ambiguous,
overbroad, irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence. Putnam
further objects to the Request on the grounds set forth in
Putnam's Opposition....

**Argument:** Documents concerning communication by and among

decision makers as to which persons should be brought in

from the outside to be appointed as Managing Director or

Portfolio Manager are certainly highly relevant to the

Putnam decision making process that is at the heart of this

case.

However, Svensson will limit the scope of this

category to documents prepared or received by the above-

named ten decision makers (Steve Oristaglio, Jack Morgan,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks, Brett Browchuk, Dan Miller and Justin Scott)

concerning any of the 91 Comparators in regard to being

brought in from the outside for such appointments.  This

should not require search of e-mail accounts of any

comparators, but rather review of files and e-mails of only

the above referred to ten decision makers.

**Request No 7:** <u>All 360s</u> prepared or received by any person at
Putnam in or for any one or more of the reporting periods

since January 1, 1999, in regard to Svensson or any one or more of the [91 Comparators]....

**Response No. 7:** To the extent this Request seeks documents relating to the Plaintiff, such documents [already]... produced....  Putnam objects to the balance...unduly vague and ambiguous, overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objects on the grounds set forth in Putnam's Opposition....

**Argument:** The "360" reviews (everyone in the Investment Management Division reviewing everyone else) in regard to the 91 Comparators are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to the requested documents concerning the following 21 males and 12 females of the 91 Comparators: John Boselli, Brian DeChristopher, Steve Dexter, Nathan Eigerman, Roland Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave King, Jeff Lindsey, Saba Malak, Paul Marrkand, Paul Warren, Hugh Mullin, Mike Nance, Justin Scott, Beth Cotner, Lauren Allansmith, Jeanne Mockard, Margaret Smith, Carmel Peters, Jean Sievert, Karen Korn, Deborah Kuenstner, Elizabeth McElwee-Jones, Fayval Williams and Erin Spatz.

**Request No. 8:** All documents and things concerning year end reviews, performance reviews, Investment Division & ISD Human Resources Updates, PDPRs and other documents analyzing or evaluating work performance in the [Investment Management Division], that were prepared or received by any person at Putnam in or for any one or more of the

reporting periods since January 1, 1999, <u>in regard to
Svensson [and/or]</u> any one or more of the [91 Comparators].

**Response No. 8:** To the extent this Request seeks documents
relating to the Plaintiff, such...have been produced....
Putnam objects to the balance...unduly vague and
ambiguous, overbroad, and...irrelevant and not reasonably
calculated to lead to the discovery of admissible
evidence. Putnam further objects on the grounds set forth
in Putnam's Opposition....

**Argument** The Year end reviews, performance reviews, Investment

Division & ISD Human Resources Updates, Performance

Development and Planning Reviews (PDPRs) and other

documents analyzing or evaluating work performance in the

[Investment Management Division] are certainly highly

relevant to the Putnam decision making process that is at

the heart of this case.

However, Svensson will limit the scope of this request

to the 91 Comparators.

**Request No. 9:** <u>All documents</u> and things <u>concerning the factual
basis(es) of any numerical score in any 360s, year end
reviews, performance reviews, Investment Division & ISD
Human Resources Updates, PDPRs and/or other documents
concerning analysis or evaluation of work performance</u> in
the Investment Management Division, that were prepared or
received by any person at Putnam in or for any one or more
of the reporting periods since January 1, 1999, <u>in regard
to Svensson [and/or] any one or more of the [91
Comparators]</u>....

**Response No. 9:** The 360s and performance reviews are self-
explanatory; and Putnam does not possess any document or
other thing that provides a factual basis of any numerical
score for any type of performance review. To the
extent...seeks the underlying performance reviews of
[Svensson], Putnam has provided those documents in
response to the Plaintiff's first request for documents.

> To the extent this request seeks the underlying
> performance reviews of the identified males or females,
> Putnam objects ...overbroad, burdensome... irrelevant and not
> reasonably calculated to lead to the discovery of
> admissible evidence. Putnam further objects on the grounds
> set forth in Putnam's Opposition....

**Argument:** The documents concerning the factual bases of any

numerical score in any 360s, year end reviews, performance

reviews, Investment Division & ISD Human Resources

Updates, PDPRs and/or other documents concerning analysis

or evaluation of work performance are certainly highly

relevant to the Putnam decision making process that is at

the heart of this case.

However, Svensson will limit the scope of this request

to the requested documents concerning the following 21

males and 12 females of the 91 Comparators: John Boselli,

Brian DeChristopher, Steve Dexter, Nathan Eigerman, Roland

Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave King,

Jeff Lindsey, Saba Malak, Paul Marrkand, Paul Warren, Hugh

Mullin, Mike Nance, Justin Scott, Beth Cotner, Lauren

Allansmith, Jeanne Mockard, Margaret Smith, Carmel Peters,

Jean Sievert, Karen Korn, Deborah Kuenstner, Elizabeth

McElwee-Jones, Fayval Williams and Erin Spatz.

**Request No 10**: All documents and things concerning the
organizational structure and/or jurisdiction of the
Investment Management Division as existing at any time or
from time to time in the period since January 1, 1999.

**Response No. 10:** Putnam objects... unduly vague and ambiguous,

overbroad,...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence...Putnam further
objects to producing documents concerning the period after
the Plaintiff's termination [as] such information is
unrelated...and/or not reasonably calculated to lead to the
discovery of admissible evidence.  Without limiting the
foregoing, Putnam will produce organizational charts
responsive to the Request.

**Argument:** Putnam's Tibbetts testified in deposition at p. 48, l.

8 – p. 49, l. 9, that after a certain period, Putnam kept

organizational charts on-line.  If this testimony is

accurate, the organizational charts on-line which have not

previously been produced for the period after January 1,

1999, should now be produced.  If the testimony is not

accurate, Svensson will accept a statement under oath that

Putnam has already produced all organizational charts for

the relevant period, together with any document(s) that

identify changes to the organizational structure of IMD

after the organizational charts ceased to be prepared.

**Request No 11:** All documents and things concerning the
administrative reporting relationships within the Investment
Management Division as existing at any time or from time to
time in the period since January 1, 1999.

**Response No. 11**: To the extent that the Plaintiff seeks information
other than that contained in the organizational charts, Putnam
objects on the grounds that the Plaintiff has failed to define
"administrative reporting relationship" and...vague,
ambiguous, and difficult to understand. Without limiting the
foregoing, Putnam will produce the organizational charts
responsive to the Request in response to Request No. 10.

**Argument:** Putnam's Tibbetts testified in deposition at p. 48, l.

8 – p.49, l. 9, that after a certain period, Putnam kept

organizational charts on-line.  If this testimony is accurate the organizational charts on-line which have not previously been produced for the period after January 1, 1999, should now be produced.  If the testimony is not accurate, Svensson will accept a statement under oath that Putnam has already produced all organizational charts for the relevant period, together with any document(s) that identify changes to the organizational structure of IMD after the organizational charts ceased to be prepared.

**Request No. 12:** All documents and things concerning the membership, structure and/or jurisdiction of the Operating Committee as existing at any time or from time to time in the period since January 1, 1999.

**Response No. 12:** Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**Argument:** The membership, structure and/or jurisdiction of the Operating Committee are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to documents that identify the membership and duties and responsibilities of the Operating Committee in regard to promotions, transfers, demotions, compensation or terminations of Svensson and/or any of the 91 Comparators in each year since January 1, 1999.

**Request No. 13:**

All documents and things <u>concerning the membership, structure and/or jurisdiction</u> at any time or from time to time in the period since January 1, 1999, <u>of the [Investment Division Management Committee</u>].

**Response No. 13:**

Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without limiting the foregoing, Putnam will produce documents responsive to the Request.

**Argument**: The membership, structure and/or jurisdiction of the

Investment Division Management Committee are certainly

highly relevant to the Putnam decision making process that

is at the heart of this case.

However, Svensson will limit the scope of this request

to documents that identify the membership and duties and

responsibilities of the Investment Division Management

Committee in regard to promotions, transfers, demotions,

compensation or terminations of Svensson and/or any of the

91 Comparators in each year since January 1, 1999.

**Request No 14:** All <u>documents</u> and things <u>concerning the membership, structure and/or jurisdiction of any committee or entity howsoever known or described, other than the IDMC or the Operating Committee, which had or has any administrative function or responsibility concerning Svensson, any of the [91 Comparators</u>]...at any time or from time to time in the period since January 1, 1999.

**Response No. 14:**

Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence.

**Argument**: The membership, structure and/or jurisdiction of any committee or entity howsoever known or described, other than the IDMC or the Operating Committee, which had or has any administrative function or responsibility concerning Svensson, and/or any of the [91 Comparators]are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to documents that identify the membership and duties and responsibilities any such other group of decision makers for decisions in regard to promotions, transfers, demotions, compensation or terminations of Svensson and/or any of the 91 Comparators in each year since January 1, 1999.

**Request No 15:** All <u>documents</u> and things <u>concerning the actual criteria used</u> by Putnam <u>for deciding whom of Svensson [and/or any of the 91 Comparators] should be or would be demoted</u> in the period since January 1, 2002:

    A.   <u>From Portfolio Manager to any other professional position</u> within the Investment Management Division;

    B.   <u>From ADR to any other professional position</u> within the Investment Management Division;

    C.   <u>From CIO to any other professional position</u> within the Investment Management Division;

      D.    <u>From ADR to Analyst within the Investment Management Division</u>; and/or,

      E.    <u>From CIO to ADR within the Investment Management Division</u>.

**Response No. 15:** Putnam objects inasmuch as it did not "demote" Svensson..... Putnam has already produced all documents with respect to any transfer of the Plaintiff. Putnam objects to the balance...[as] unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument**: The criteria used by Putnam in deciding upon the above referred to employment actions are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to the comparators identified in the argument sections to Nos. 1 and 2, above (22 of the 91 comparators: 16 males: Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman, Peter Hadden, Shigeki Makino, David Gerber, David King, Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss, and six females: Beth Cotner, Lauren Allansmith, Debbie Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard).

**Request No. 16:** All <u>documents</u> and things <u>concerning the results of the application of the criteria referred to</u> in the immediately preceding category to Svensson, any of the identified males and/or any of the identified females who were Portfolio Managers, ADRs, CIOs or holders of other Investment Management Division investment professional

positions.

**Response No. 16**: Putnam objects inasmuch as it did not "demote" Svensson during the relevant time period. Putnam has already produced all documents with respect to any transfer of the Plaintiff. Putnam objects to the balance ...unduly vague and ambiguous, overbroad, and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file with the Court.

**Argument:** The results of the application of the criteria used by Putnam in deciding upon the above referred to employment actions are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to the comparators identified in the argument sections to Nos. 1 and 2, above (22 of the 91 comparators: 16 males: Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman, Peter Hadden, Shigeki Makino, David Gerber, David King, Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss, and six females: Beth Cotner, Lauren Allansmith, Debbie Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard).

**Request No 17:** In regard to Svensson, any of the [91 Comparators]...who were selected for consideration for possible demotion to take place in the period since January 1, 2002 (whether or not actually demoted) from Managing Director or from Portfolio Manager or other professional position in the Investment Management Division, all documents and things concerning communication between or among the persons participating at any time or from time to time in the decision making process to so consider Svensson, any of the [91 Comparators] and which

communication concerned evaluation of, or action or decision made, taken, recommended or proposed to be made or taken, in regard to any of such persons.

**Response No. 17:** Putnam objects...as it did not "demote" Svensson during the relevant period. Putnam has already produced all documents with respect to any transfer of the Plaintiff...objects to the balance...unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** Documents concerning communication among the decision makers as to persons selected as potential or possible demotes are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, as this request calls for decision maker documents only, Svensson will limit the scope of this category to the following decision makers: Steve Oristaglio, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks and Brett Browchuk, and the following of the 91 Comparators: Beth Cotner, Carmel Peters, Josh Byrne, Dana Clark, Steve Dexter, Nathan Eigerman, Richard England, Roland Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave King, Jeff Lindsey, Paul Marrkand, Dan Miller, Michael Mufson, David Santos, Tino Sellito, Paul Warren, Justin Scott, Manuel Weiss, Jean Sievert, Margaret Smith, Lauren Allansmith, Susan McCormack, Peter Hadden, Colin Moore, Eric Sorensen, and Michael Yogg.

**Request No 18:** In regard to Svensson [and/or] any of the [91

Comparators] <u>who were considered for demotion to take</u>
<u>place in the period since January 1, 2002 (whether or not</u>
<u>actually demoted) from Managing Director of from Portfolio</u>
<u>Manager or other professional position</u> in the Investment
Management Division, all <u>documents</u> and things
<u>concerning</u> <u>communication between or among the persons</u>
<u>participating in the decision making process to so</u>
<u>consider Svensson</u>, any of the [91 Comparators] <u>and which</u>
communication <u>concerned evaluation of, or action or</u>
<u>decision made, taken or recommended or proposed to be</u>
<u>made or taken</u>, in regard to, any of such persons.

**Response No. 18:** Putnam objects...as it did not "demote"
Svensson...already produced all documents with respect to
any transfer of the Plaintiff...objects to the
balance...unduly vague and ambiguous, overbroad, and
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Documents concerning communication among the decision

makers as to persons who were considered for demotion are

certainly highly relevant to the Putnam decision making

process that is at the heart of this case.

However, as this request calls for decision maker

documents only, Svensson will limit the scope of this

category to the following decision makers: Steve Oristaglio,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks and Brett Browchuk.

**Request No 19:** <u>In regard to</u> Svensson, any of the [91
Comparators] <u>who actually were demoted</u> in the period since
January 1, 2002, <u>from Managing Director or from Portfolio</u>
<u>Manager or other professional position in the Investment</u>
<u>Management Division,</u> all <u>documents</u> and things <u>concerning</u>
<u>communication between or among the persons participating</u>
<u>in the decision making process as to who</u> of Svensson, any
of the [91 Comparators] would be demoted, <u>and which</u>
communication <u>concerned evaluation of, or action or</u>

<u>decision made, taken or recommended or proposed to be made</u>
<u>or taken, in regard to, any one or more of such persons</u>.

**Response No. 19:** Putnam objects...as it did not "demote"
Svensson...already produced all documents with respect to
any transfer of the Plaintiff...objects to the balance of
this Request...unduly vague and ambiguous, overbroad, and
...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Documents concerning communication among the decision
makers as to persons who actually were demoted are
certainly highly relevant to the Putnam decision making
process that is at the heart of this case.

However, as this request calls for decision maker
documents only, Svensson will limit the scope of this
category to the following decision makers: Steve Oristaglio,
Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh
Brooks and Brett Browchuk.

**Request No. 20:**

Svensson withdraws category No. 20.

**Request No. 21:**

Svensson withdraws category No. 21.

**Request No 22:** All <u>documents</u> and things <u>concerning the Putnam</u>
<u>policy</u> in the period since January 1, 1999, <u>in regard to</u>
<u>persons of the status and position of persons such as Darren</u>
<u>Peers (Peers) concerning payment or reimbursement of tuition</u>
<u>costs for the MBA degree</u>.

**Response No. 22:** Putnam objects...unduly vague and ambiguous,
overbroad, and...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence. Without
limiting the foregoing, Putnam will produce documents

responsive to the Request.

**Argument:** Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No 23:** All documents and things concerning communication
between or among Putnam, any affiliate of Putnam, Peers, NWQ
Investment Management Company, LLC ("NWQ"), any affiliate of
NWQ and/or any other persons) concerning Peers' leaving his
employment at Putnam, compliance with, or satisfaction,
fulfillment or other disposition of, the terms, provisions
and/or condition of Peers' employment at Putnam, or financial
obligations.

**Response No. 23:** Putnam objects...irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.
...plaintiff has...deposed Mr. Peers on the subject of this
request. Without limiting the foregoing, Putnam will produce
responsive documents.

**Argument:** Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No. 24:** All documents and things concerning the payment to, or reimbursement of, any person concerning tuition costs of Peers' MBA degree.

**Response No. 24:** Without limiting the foregoing, please see Putnam's response to Request 23.

**Argument:**  Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No. 25:** All document and things prepared or received by Putnam concerning the satisfaction, fulfillment or other disposition of the terms and conditions of Peers' employment in regard to the payment to, or reimbursement of, any person or tuition costs of Peers' MBA degree.

**Response No. 25:** Without limiting the foregoing, please see Putnam's response to Request 23.

**Argument:**  Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, including, without limitation, any cancelled check, or other documents that identify the payor and the circumstances.

**Request No. 26:** All <u>documents</u> and things <u>concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other persons concerning the making, maintaining and/or furnishing by Peers to, or receipt by, Putnam, of any diary, notes or other documents or things concerning Svensson or any of the identified males and/or of the identified females prepared by Peers</u>.

**Response No. 26:** Putnam represents Mr. Peers in connection with this litigation, and objects to this Request to the extent that it seeks documents protected by the attorney-client privilege and the work-product doctrine. Furthermore,...already produced all such information not covered by such privileges in response to the Plaintiff's first request....

**Argument:** Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested to the extent not previously produced, such as cancelled checks, or other documents that identify the payor, the amount and the circumstances.

To the extent claiming privilege due to an attorney-client relationship between Putnam and Peers, Putnam should be required to amend its privilege log as per the applicable discovery rules, so the court and Svensson may assess the propriety of the claim.  Insofar as the documents requested t concern communications between Peers and Putnam prior to any such relationship, a claim of privilege is improper.

**Request No 27:** All documents and things <u>concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other persons(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Peers or by any of the identified males and/or any of the identified females who at the time of such communication were no longer in the employ of Putnam.</u>

**Response No.27:** Putnam objects to this request on the grounds that it seeks disclosure of information that is not discoverable due to the <u>attorney-client privilege and the attorney work-product doctrine</u>.

**Argument:**  Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of his employment by Putnam or by the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 – 27 highly relevant, and Putnam should be required to produce the documents requested, cancelled check, or other documents that identify the payor and the circumstances.

To the extent claiming privilege due to an attorney-

client relationship privilege between Putnam and Peers,

Putnam should be required to amend its privilege log as per

the applicable discovery rules, so the court and Svensson may

assess the propriety of the claim.

Insofar as there documents requested that concern

communication between Peers and Putnam prior to any such

relationship, a claim of privilege is improper.

Moreover, the category seeks documents concerning NWQ,

Peers' subsequent and present employer and concerning persons

other than Peers or Putnam.

**Request No. 28:** All documents and things concerning the factual basis of any numerical or other rating, evaluation, analysis or score concerning Svensson in connection with consideration of her by Putnam in the period since January 1, 1999, for promotion; demotion; salary or other compensation increase; salary or other compensation decrease; and/or other employment action.

**Response No. 28:** Putnam objects...it is incomprehensible to the point that it is unclear...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition..... Putnam further objects Plaintiff's failure to define "numerical or other rating" has rendered the request vague, ambiguous, and difficult to understand. Plaintiff's performance reviews are self-explanatory; and Putnam does not possess any document or other thing that provides a factual basis of any numerical score for any type of performance review. To the extent ...seeks the underlying performance reviews of the Plaintiff, Putnam has provided those documents....  To the extent that the Plaintiff seeks information concerning her promotions, transfer, or any other employment action, Putnam has already produced such information in response to the Plaintiff's first request.... To the extent this Request seeks information relating to the Plaintiff's compensation, Putnam will produce responsive documents.

**Argument:** To the extent the documents requested have not been

produced or not produced in unredacted format, the court

should order Putnam to produce in unredacted format the

documents requested, including any documents concerning

alteration of Plaintiff's numerical performance ratings

between January 1, 1999, and September 15, 2003, the date

of her termination.

**Request No 29:** The terms and conditions offered by Putnam in the
period since January 1, 2002, to any of the [91 Comparators]
in connection with leaving the employ of Putnam by any of
such persons, whether voluntarily or involuntarily.

**Response No. 29:** Putnam objects...unduly vague and ambiguous,
overbroad,...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence....also...on the
grounds set forth in Putnam's Opposition....

**Argument:** Whether and to what extent Putnam has required any of

the 91 Comparators who have left Putnam either voluntarily

or involuntarily to agree to conditions that might affect

their testimony makes the subject matter of this category

highly relevant, and Putnam should be ordered to produce

such documents.

**Request No 30:** All documents and things concerning any notes,
minutes or other document of or in regard to meetings or
decisions of the Putnam trustees in the period May -
September 2003 concerning directed brokerage commissions.

**Response No. 30:** Putnam objects... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence
...also...[as] set forth in Putnam's Opposition....

**Argument:**    That Svensson complained at Putnam as to Putnam's

policies and practices as to directed brokerage commissions
makes the subject matter of this category highly relevant.
As her complaints may have affected the decision makers in
dealing with Svensson, Svensson and the court should be
informed by document production in this regard.

**Request No 31:** All <u>documents</u> and things <u>concerning</u>
<u>communication between or among, Haldeman, Lasser and any of</u>
<u>the Putnam trustees</u> in the period May - September 2003
concerning directed brokerage commissions.

**Response No. 31:** Putnam objects...irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.

**Argument:** That Svensson complained at Putnam as to Putnam's
policies and practices as to directed brokerage commissions
makes the subject matter of this category highly relevant.
As her complaints may have affected the decision makers in
dealing with Svensson, Svensson and the court should be
informed by document production in this regard.

**Request No 32:** All <u>documents</u> and things <u>concerning coverage</u>
<u>reports for O'Malley and</u> the [91 Comparators] for each of
the reporting periods in 2002, 2003, 2004, 2005 and 2006.

**Response No. 32:** Putnam objects...overbroad, burdensome
...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition on file....

**Argument:** As this category concerns only Global Equity Research,
the comparators for this category are limited to R. J.
Bukovac, Mark Bogar, Chris O'Malley, Saba Malak, Michael
Yogg, Brian DeChristopher, John Boselli, Lauren Allansmith,

Maria Drew, Jeanne Sievert and (if not already produced) Lisa Svensson.

**Request No 33:** All <u>documents</u> and things <u>concerning communication between or among Stoev and Morgan or other persons at Putnam in regard to the termination of Stoev's employment and the stated reasons</u> for it.

**Response No. 33:** Putnam objects...overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and...[as]...set forth in Putnam's Opposition.....

**Argument:** Stoev, whose deposition was taken over the objection of Putnam and pursuant to an order of this court, will be through his deposition testimony a witness for Svensson at the trial. The documents requested are highly relevant as they may show that what was testified in depositions or told to Stoev or others by Putnam officials differed from what they told Stoev, each other or the Federal immigration authorities in regard to, among other things, Stoev's "green card" and his termination. Accordingly the documents requested should be produced.

**Request No 34:** All documents and things <u>concerning the "green card" application for Stoev that Morgan filled out</u>.

**Response No. 34:** Putnam objects...overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and [as]... in Putnam's Opposition on file with the Court.

**Argument:** Stoev, whose deposition was taken over the objection of Putnam and pursuant to an order of this court, will be through his deposition testimony a witness for Svensson at

the trial.  The documents requested are highly relevant as they may show that what was testified in depositions or told to Stoev or others by Putnam officials differed from what they told Stoev, each other or the Federal immigration authorities in regard to, among other things, Stoev's "green card" and his termination.  Accordingly the documents requested should be produced.

**Request No. 35:** All documents and things <u>concerning calendar entry(ies) (Lotus notes or otherwise) for Haldeman concerning any communication with Peers</u>.

**Response No. 35:** No such documents exist.

**Argument:** The deposition testimony of Haldeman ( p. 71, l. and

11,  14-16) and Putnam document PRM 1755 evidence that the

documents exist. If they do not exist, Svensson will accept

a sworn statement to that effect, plus any other documents

which would pinpoint the date of the Peers-Haldeman meeting.

**Request No 36:** All documents and things <u>concerning communication between Morgan and Allansmith in the period 2002-2004 concerning comments upon or other feedback as to Allansmith's work performance</u>.

**Response No. 36:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:**  The treatment of Svensson and other women at Putnam

including Allansmith, who were terminated or forced out, is

highly relevant.  The documents requested should be

produced.

**Request No. 37:** All documents and things <u>concerning communication in the period 2002-2004 between Morgan and McNamee, Scordato and/or Brooks concerning Svensson's or Allansmith's work performance or reasons or justifications for Svensson or Allansmith leaving Putnam's employment</u>.

**Response No.37:** With respect to the Plaintiff, Putnam has already produced communications between Morgan, McNamee, Scordato and/or Brooks....  With respect to Ms. Allansmith, Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:**  The treatment of Svensson and other women at Putnam including Allansmith, who were terminated or forced out, is highly relevant.  The documents requested should be produced.

**Request No 38:** All documents and things <u>concerning GER Active Portfolio Performance in the period January 1, 1999, through September 15, 2003, for Svensson [and/or] any of the [91 Comparators]</u>.

**Response No. 38:** With respect to the Plaintiff, Putnam will produce documents responsive to this Request. With respect to the balance...Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** As the request relates to Global Equity Research, it is limited to Svensson and the following of the 91 Comparators:  Bukovac,  Bogar,  O'Malley,  Malak,  Yogg, DeChristopher,  Boselli,  Allansmith,  Drew,  Sievert,  Smith, Spatz,  Williams,  Korn,  Kalus-Bystricky,  Cervone,  Lannum, Marrkand, Mehta and Norchi.

The performance in the work place of Svensson as compared to the others is highly relevant.

**Request No 39:** All documents and things <u>concerning comparisons in work performance in the period January 1, 1999, through September 15, 2003, of Svensson,</u>[and/or any of the 91 Comparators].

**Response No. 39:** Putnam has produced all of the Plaintiff's performance reviews....  Putnam objects to the balance of ...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** As the request relates to Global Equity Research, it is limited to Svensson and the following of the 91 Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

The performance in the work place of Svensson as compared to the others is highly relevant.

**Request No. 40:** All <u>documents</u> and things, including, without limitation <u>Human Resources Action Request and Requisition for Employee documents, concerning the move or transfer of any of the identified males out of GER</u> in the period since January 1, 1999.

**Response No. 40:** Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds...in Putnam's Opposition on file...

**Argument:** Documents concerning the move or transfer of any of the males in the 91 Comparators is a highly relevant subject.

However, Svensson will limit the scope of the category
to: Bogar, Bukovac, Cervone, DeChristopher, Malak, Marrkand
and Mehta.

**Request No. 41:**

Svensson withdraws category No. 41.

**Request No. 42:**

Svensson withdraws category No. 42.

**Request No 43:** Putnam's Officers' Directories for the years
2003-2005.

**Response No. 43:** The Putnam Officer's Directory is a listing of
personal contact information for 1,296 officers of Putnam,
and as such, this Request seeks information that is
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.

**Argument:** As there is a confidentiality order in place, Putnam's

objections are meritless.  The Directories provide highly

relevant information as to the 91 Comparators in regard to

their titles and job responsibilities, and enable the

comparisons of one person to another and positions and

responsibilities from one year to another.  As Svensson has

such Directories for some of the relevant periods, Svensson

limits the scope of this request to the Directories for

July-December 2003; July-December 2005; and 2004 through

December.

**Request No 44:** All documents and things concerning bonus
worksheets prepared or maintained at any time or from time to
time in the period since January 1, 1999, in regard to the
teams of which Svensson, any of the [91 Comparators] were

members, including, without limitation, Core International,
Core Domestic, Core Growth (later called Large Cap Growth),
Value, Specialty Growth and GER.

**Response No. 44**: With respect to the Plaintiff, Putnam will produce
documents concerning her bonus worksheets. With respect to
the balance...Putnam objects...overbroad, burdensome and
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Which of the 91 Comparators did or did not get bonuses

in any of the relevant years and the size of bonuses if

received are highly relevant matters to all claims of

Svensson in this case, including, among others, the equal

pay claim, as bonuses are obviously a significant part of

total compensation.  The documents requested concerning the

91 Comparators should be produced.

**Request No. 45:** All documents and things concerning the reports,
analyses, measurements and/or rankings of the types
included in documents LS-501, 503-506 for any of the [91
Comparators] prepared in the period since January 1, 1999.

**Response No. 45:** Putnam objects...overbroad, burdensome and...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition....

**Argument:** Documents such as reports, analyses, measurements

and/or rankings are highly relevant as they provide ways to

compare one person from another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No 46:** All documents and things <u>concerning the reports,</u>
<u>analyses, measurements and/or rankings of the types</u>
<u>included in document LS-502 for the fund referred to and</u>
<u>for the other Putnam funds,</u> which were prepared <u>in the</u>
<u>period since January 1, 1999</u>.

**Response No. 46:** <u>Putnam objects</u>...overbroad, burdensome
and...irrelevant and not reasonably calculated to lead to
the discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Documents such as reports, analyses, measurements

and/or rankings are highly relevant as they provide ways to

compare one investment professional to another.

    Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 47:** All documents and things <u>concerning attribution</u>
<u>reports of the type included in LS-507-12 for the fund</u>
<u>referred to and</u> any <u>other funds</u>, which were prepared in the
period <u>since January 1, 1999</u>.

**Response No. 47:** Putnam objects. overbroad, burdensome and...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition....

**Argument**: Documents such as the requested attribution reports

are highly relevant as they provide bases for comparing one

investment professional with another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 48:** All documents and things <u>concerning sector level performance index ranks</u> of the <u>type included in LS-513-515</u> prepared in the period <u>since January 1, 1999</u>.

**Response No. 48:** Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file....

**Argument:** Documents such as the requested sector level

performance index ranks are highly relevant as they provide

bases for comparing one with another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 49:** All documents and things <u>concerning scorecards and second scorecards in regard to O'Malley, other MBAs and</u> any of the [91 Comparators] prepared or maintained in the period since January 1, 1999.

**Response No. 49:** Putnam objects...overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** If the documents referenced in Morgan's testimony at

p. 95, l. 24 - p. 96, l. 6 are different from documents in
the format of documents LS 503-506, then such documents
should be produced as they enable comparisons between one
person and another.  They should be produced.

Svensson limits the scope of the category to the
following of the 91 Comparators:  Bukovac, Bogar, O'Malley,
Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew,
Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky,
Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 50**: The "notes" prepared by Tibbetts, which,
"according to the Putnam privilege log, **concerned "female
partners**."

**Response No. 50:** Putnam objects to this Request on the grounds
that such documents are protected by the attorney-client
privilege and the work-product doctrines, *as* so noted in
Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in
its Amended Privilege Log has Putnam made the showings
required to support the claims of attorney-client privilege
or work product.

Accordingly Svensson requests the court first to order
Putnam to disclose to Svensson and the court the relevant
information necessary to enable Svensson and the court to
assess the applicability of the claims.  Svensson requests
the court after the disclosure of this information to
review in camera the withheld documents to assist the court

in making its determinations as to these categories.

**Request No. 51:** The "undated" "notes" by an "unknown" author to an unidentified recipient, which, according to the Putnam privilege log, concerns "Svensson employment history."

**Response No. 51:** Putnam objects to this Request on the grounds these documents were created by Putnam's Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus, are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson request the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

**Request No. 52:** The 1998 "maternity leave summary" prepared, according to the Putnam privilege log, by an "unknown" author for an unidentified recipient.

**Response No. 52:** Putnam objects to this Request on the grounds these documents were created by Putnam's Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus, are protected by the attorney-client privilege and

the work-product doctrines, as so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

**Request No. 53:** The September 3, 2003, "e-mail re: litigation forwarded with e-mail from [Attorney] Rodrigues..." authored by McNamee and sent to the recipient, Brooks, as referred to in the Putnam privilege log but redacted so as to not disclose only the words used by the author or Attorney Rodrigues in a "communication," within the meaning of U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), each other, but disclosing the other words and information in either of the e-mails, including, without limitation, the identity of the author, the identity of the recipient(s), the date and time of the transmission and the words in the subject line.

**Response No. 53:** Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in

its Amended Privilege Log has Putnam made the showings
required to support the claims of attorney-client privilege
or work product.

Accordingly Svensson requests the court first to order
Putnam to disclose to Svensson and the court the relevant
information necessary to enable Svensson and the court to
assess the applicability of the claims.  Svensson requests
the court after the disclosure of this information to
review in camera the withheld documents to assist the court
in making its determinations as to these categories.

**Request No. 54:** The August 27, 2003, "e-mail re: Draft termination
agreement" from author Hadley to recipients McNamee and
Attorney Rodrigues, as referred to in the Putnam privilege
log but redacted so as to not disclose the words used by the
author or Attorney Rodrigues in a "communication," within
the meaning of U.S. v. United Shoe Machinery Corp., 89 F.
Supp. 357, 358-59 (D. Mass. 1950), with each other but
disclosing the other words and information in the e-mail,
including, without limitation, the identity of the author,
the identity of the recipient(s), the date and time of the
transmission, the words in the subject line and the
attachment.

**Response No. 54:** Putnam objects to this Request on the grounds that
such documents are protected by the attorney-client privilege
and the work-product doctrines, *as* so noted in Putnam's
privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in
its Amended Privilege Log has Putnam made the showings
required to support the claims of attorney-client privilege

or work product.

Accordingly Svensson requests the court first to order
Putnam to disclose to Svensson and the court the relevant
information necessary to enable Svensson and the court to
assess the applicability of the claims.  Svensson requests
the court, after the disclosure of this information, to
review in camera the withheld documents to assist the court
in making its determinations as to these categories.

**Request No. 55:** All documents and things concerning the amounts
and types of compensation, including, without limitation,
salary and bonus, paid or payable to Svensson [and the 91
Comparators] for each of the years 1999-2004.

**Response No. 55:** With respect to the Plaintiff, Putnam has
already produced documents....  With respect to the balance
...overbroad, burdensome and...irrelevant and not
reasonably calculated to lead to the discovery of admissible
evidence, and on the grounds set forth in Putnam's
Opposition....

**Argument:** Total compensation paid or payable over time whether

in cash, securities other things of value to Svensson and

the 91 Comparators is highly relevant as, among other

things, evidencing comparisons made by Putnam between and

among the 91 Comparators.  The information requested is

relevant to, among others, the Svensson equal pay claim.

The documents that should be produced in response to this

category include documents evidencing the total compensation

including bonus compensation paid or payable to any of the

91 Comparators whether he or she was a participant in the

partners' pool, so-called, and/or in the A&P pool, so-
called, plus any compensation derived from Putnam equity
partnership units or stock options, or MMC restricted stock
or stock options of the parent holding company ("MMC").

**Request No. 56:** All documents and things <u>identifying any of the</u>
<u>[91 Comparators who] left the employ of Putnam on a voluntary</u>
<u>basis</u> in the period 1999 to date.

**Response No. 56:** Putnam objects to this Request on the grounds that
it is overbroad, burdensome and seeks information that is
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition on file with the Court.

**Argument:** Category Nos. 56-60 seek documents concerning the
circumstances of and reasons for any one or more of the 91
Comparators who left their employment at Putnam whether on
an involuntary or voluntary basis. This is a highly
relevant area of inquiry, as the reasons and circumstances
affecting Svensson must be compared to those affecting
others of the 91 Comparators who left Putnam, either
"voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of
the 91 Comparators who departed Putnam during the period
since January 1, 1999, and to those instances in which the
decision to depart was initiated by Putnam unless Svensson
contends that the decision was initiated by the comparator.

Svensson expects that included as investment

professionals whose departure was initiated by Putnam are,
at least, the following of the 91 Comparators: Allansmith,
Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen,
Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler
and Williams.  If Putnam contends otherwise, then Putnam
also must produce documents evidencing that the decision to
depart was initiated by the comparator.

**Request No. 57:** All documents and things <u>concerning the
circumstances and reasons for the voluntary terminations</u>
referred to in the immediately preceding category.

**Response No. 57:** Putnam objects... overbroad, burdensome and
...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition....

**Argument:**  Category Nos. 56-60 seek documents concerning the
circumstances of and reasons for any one or more of the 91
Comparators leaving of the employ of Putnam whether
involuntary or voluntary.  This is a highly relevant are of
inquiry as the reasons and circumstances affecting Svensson
must be compared to those affecting others of the 91
Comparators who left Putnam either "voluntarily" or
"involuntarily."

Plaintiff will limit the respective category to any of
the 91 Comparators who departed Putnam during the period
since January 1, 1999, and to those instances in which the

decision to depart was initiated by Putnam unless Svensson

contends that the decision was initiated by the comparator.

Svensson expects that included as investment

professional whose departure initiated by Putnam are at

least the following of the 91 Comparators: Allansmith,

Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen,

Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler

and Williams.  If Putnam contends otherwise, then Putnam

also must produce documents evidencing that the decision to

depart was initiated by the comparator.

**Request No. 58:** All documents and things identifying any of the
identified males and any of the identified females who left
the employ of Putnam on an involuntary basis in the period
1999 to date.

**Response No. 58:** Putnam objects to this Request on the grounds
that the Request is overbroad, burdensome and seeks
information that is irrelevant and not reasonably calculated
to lead to the discovery of admissible evidence, and on the
grounds set forth in Putnam's Opposition on file with the
Court.

**Argument:**  Category Nos. 56-60 seek documents concerning the

circumstances of and reasons for any one or more of the 91

Comparators whose departure was initiated by Putnam whether

involuntary or voluntary.  This is a highly relevant area of

inquiry as the reasons and circumstances affecting Svensson

must be compared to those affecting others of the 91

Comparators who left Putnam either "voluntarily" or

"involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose leaving was initiated by Putnam are at least the following of the 91 Comparators: Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

**Request No. 59:** All documents and things concerning the circumstances and reasons for the involuntary terminations referred to in the immediately preceding category.

**Response No. 59:** Putnam objects...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:**  Category Nos. 56-60 seek documents concerning the circumstances of and reasons for any one or more of the 91 Comparators leaving of the employ of Putnam whether involuntary or voluntary.  This is a highly relevant are of inquiry as the reasons and circumstances affecting Svensson

must be compared to those affecting others of the 91
Comparators who left Putnam either "voluntarily" or
"involuntarily."

Plaintiff will limit the respective category to any of
the 91 Comparators who departed Putnam during the period
since January 1, 1999, and to those instances in which the
decision to depart was initiated by Putnam unless Svensson
contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose
leaving was initiated by Putnam are at least the following
of the 91 Comparators: Allansmith, Cotner, Farrell,
MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith,
Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam
contends otherwise, then Putnam also must produce documents
evidencing that the decision to depart was initiated by the
comparator.

**Request No. 60:** All documents and things concerning any severance
package agreed to buy Putnam and any of the [91 Comparators]
in regard to his or her leaving the employ of Putnam (whether
voluntarily or involuntarily) in the period 1999 to date.

**Response No. 60:** With respect to the Plaintiff, Putnam has
already produced documents....  With respect to the balance
...overbroad, burdensome and irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence,
and on the grounds...in Putnam's Opposition....and
duplicative of the documents sought in Request No. 29.

**Argument:**  Category Nos. 56-60 seek documents concerning the

circumstances of, and reasons for, any one or more of the 91
Comparators leaving of the employ of Putnam, whether on a
voluntary or involuntary basis.  This is a highly relevant
area of inquiry as the reasons and circumstances affecting
Svensson must be compared to those affecting others of the
91 Comparators who left Putnam either "voluntarily" or
"involuntarily."

Plaintiff will limit the respective categories to any
of the 91 Comparators who departed Putnam unless Putnam
contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose
leaving was initiated by Putnam are at least the following
of the 91 Comparators: Allansmith, Cotner, Farrell,
MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith,
Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam
contends otherwise, then Putnam also should be ordered to
produce documents evidencing that the decision to depart
was initiated by the comparator.

**Request No. 61:** All documents and things concerning communication
between or among Putnam, any affiliate of Putnam, and Landes,
Eckland and/or Oristaglio/or any other person(s) concerning
the testimony or possible testimony in a deposition or at
trial in this case by Landes, Eckland and/or Oristaglio.

**Response No. 61:** Putnam objects...not discoverable due to the
attorney-client privilege and the attorney work-product
doctrine.

**Argument:** Neither in its response to this category nor in its

Amended Privilege Log has Putnam made the showings required
to support the claims of attorney-client privilege or work
product.

Accordingly Svensson requests the court first to order
Putnam to disclose to Svensson and the court the relevant
information necessary to enable Svensson and the court to
assess the applicability of the claims.  Svensson requests
the court after the disclosure of this information to
review in camera the withheld documents to assist the court
in making its determinations as to this category.

**Request No.62:** All documents and things concerning identifying or
stating the total bonus pool available to Putnam for each
year since January 1, 1999.

**Response No.62:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.

**Argument:** The information sought is relevant because it is
necessary to know the total bonus pool available for each
year in order to enable the court and the jury at trial to
determine if Putnam acted lawfully in its decisions to
divide up the bonus pool among the 91 Comparators, and to
know if there was any additional money or anything of value
available from the total that might have been or should
have been distributed to one or more of the 91 Comparators.

**Request No. 63.** All documents and things concerning identifying
or stating the total bonus pool available to the Investment
Management Division for each year since January 1, 1999.

**Response No. 63:** Putnam objects... overbroad, burdensome...
     irrelevant and not reasonably calculated to lead to the
     discovery of admissible evidence.

**Argument:** The information sought is relevant because it is

     necessary to know the total bonus pool available for each

     year in order to be enable the court to determine if Putnam

     acted lawfully in its decisions to divide up the bonus pool

     among the 91 Comparators.

**Request No. 64:** All documents and things concerning the amounts of
     the bonuses allocated for each year since January 1, 1999, to
     such of the [91 Comparators] receiving a bonus.

**Response No. 64:** Putnam objects... overbroad, burdensome...
     irrelevant and not reasonably calculated to lead to the
     discovery of admissible evidence.

**Argument:** The information sought is relevant because it is

     necessary to know the total bonus pool available for each

     year in order to be enable the court to determine if Putnam

     acted lawfully in its decisions to divide up the bonus pool

     among the 91 Comparators.

**Request No. 65:** The "anonymous" letter concerning Warren, which
     is referred to at p. 357 of the McNamee deposition.

**Response No. 65:** Putnam objects... overbroad, burdensome...
     irrelevant and not reasonably calculated to lead to the
     discovery of admissible evidence.

**Argument:** The conduct of Paul Warren, one of the 91 Comparators,

     described in the letter referred to (see McNamee deposition

     p. 357 ("...And what bad behavior over the years did it

allege Paul Warren had [engaged in]?  That he frequented

strip clubs...[a]nd that he over -- he utilized

entertainment from brokers excessively and accepted gifts

from brokers excessively")) is relevant to show the nature

of the conduct of this person and to be able to compare his

conduct in the workplace to that alleged of Svensson.

**Request No. 66:** All documents and things concerning the language
used and/or the behavior of Warren of the type referred to at
pp. 18-21 and 357 of the McNamee deposition.

**Response No. 66:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.

**Argument:** The conduct of Paul Warren, one of the 91 Comparators,

described in the letter referred to (see McNamee deposition

p. 357 ("...And what bad behavior over the years did it

allege Paul Warren had [engaged in]?  That he frequented

strip clubs...[a]nd that he over -- he utilized

entertainment from brokers excessively and accepted gifts

from brokers excessively")) and at pp. 18-2 ("They were

talking about a --someone leaving the group and that would

leave a hole in the work...and he stood up and grabbed his

crotch and said, "You could fill it with this") is relevant

to show the nature of the conduct of this person and to be

able to compare his conduct in the workplace to that

alleged of Svensson.

**Request No. 67:** All documents and things concerning communication

between Lasser or Haldeman and the Human Relations Department at Putnam and/or any other person concerning the language used by and/or behavior of Warren referred to at pp. 18-21 and 357 of the McNamee deposition.

**Response No. 67:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**Argument:** Communication at Putnam concerning the conduct of Paul Warren, one of the 91 Comparators, described in the letter referred to (see McNamee deposition p. 357 ("...And what bad behavior over the years did it allege Paul Warren had [engaged in]?  That he frequented strip clubs...[a]nd that he over -- he utilized entertainment from brokers excessively and accepted gifts from brokers excessively")) and at pp. 18-2 ("They were talking about a --someone leaving the group and that would leave a hole in the work...and he stood up and grabbed his crotch and said, "You could fill it with this") is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females among the 91 Comparators.

**Request No. 68:** All documents and things concerning the investigation of Warren by Tibbetts, which is referred to at p. 358 of the McNamee deposition.

**Response No. 68:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.

**Argument:** Documents concerning the investigation at Putnam

concerning the conduct of Paul Warren, one of the 91

Comparators, described in the letter referred to (<u>see</u>

McNamee deposition p. 357 ("...And what bad behavior over

the years did it allege Paul Warren had [engaged in]?  That

he frequented strip clubs...[a]nd that he over -- he

utilized entertainment from brokers excessively and

accepted gifts from brokers excessively")) and at pp. 18-2

("They were talking about a --someone leaving the group and

that would leave a hole in the work...and he stood up and

grabbed his crotch and said, "You could fill it with this")

is relevant to show the nature of the conduct of this

person and to be able to compare his conduct in the

workplace to that alleged of Svensson, and to determine if

there has been any gender discrimination in the treatment

of Svensson and the females among the 91 Comparators.

**Request No. 69:** <u>If the "investigation" of Warren was not "handled"</u>
<u>as the McNamee deposition states, by Tibbetts, but was</u>
<u>"handled" in whole or in part by one or more other persons,</u>
<u>all documents and things concerning the investigation of</u>
<u>Warren by such other person or persons</u>.

**Response No. 69:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.

**Argument:** Documents concerning the investigation at Putnam

concerning the conduct of Paul Warren, one of the 91

Comparators, described in the letter referred to (see
McNamee deposition p. 357 ("...And what bad behavior over
the years did it allege Paul Warren had [engaged in]?  That
he frequented strip clubs...[a]nd that he over -- he
utilized entertainment from brokers excessively and
accepted gifts from brokers excessively")) and at pp. 18-2
("They were talking about a --someone leaving the group and
that would leave a hole in the work...and he stood up and
grabbed his crotch and said, "You could fill it with this")
is relevant to show the nature of the conduct of this
person and to be able to compare his conduct in the
workplace to that alleged of Svensson, and to determine if
there has been any gender discrimination in the treatment
of Svensson and the females among the 91 Comparators.

**Request No. 70:** All documents and things <u>concerning the
compensation figures, studies and statistics referred to in
the Allansmith deposition at pp. 88-90</u>.

**Response No. 70:** The compensation figures, studies and statistics
referenced in the Allansmith deposition were performed by Ms.
Allansmith, and Putnam does not possess any documents
concerning such information.  Putnam further objects...
overbroad, burdensome... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.

**Argument:** Assuming for the sake of argument that Putnam was
correct in representing in June and July to Svensson and
the court that it did not keep statistics on which males
and females had children, it simply cannot be that Putnam

**"**does not possess any documents concerning (which, as per

Local Rule 26.5, means "referring to, describing,

evidencing, or constituting". [the] other information

referred to by Ms. Allansmith in her deposition, which

includes, as more particularly set forth in the excerpt from

the Allansmith deposition, Exhibit "A" to this memorandum, the

following from her testimony:

89

4 ... Almost
5 all men were promoted. The number of
6 terminations -- even though women made up
7 a quarter or less of the department,
8 almost all of the terminations in that
9 five-year period were 100 percent women.
10 I think only two men were terminated. I
11 also had some compensation figures and I
12 ran some statistics on those as well.
13 ...I'm not sure what violates my
14 severance agreement with Putnam so I'm
15 going to remain quiet on the results of
16 those.
17 Q. What was the group, was that the
18 class of 2000?
19 A. For which?
20 Q. For your study. I mean, what group y
21  were you using?
22 A. I did extensive statistics. I used
23 the class of 2000 and tracked them. I
24 tracked the department for every year. I

90

1 tracked senior analysts and what happened
2 to those. I tracked junior analysts and

3 <u>what happened to them</u>. I mean, I did --
4 you know, I'm an analyst.
5 Q. Did you retain hard copies of those
6 studies?
7 A. Yes
8 Q. Do you still have them?
9 A. I do

\*\*\*

22 ...<u>the penalties are quite</u>
23 <u>severe if I violate [my Putnam severance] agreement.</u>

The documents requested are relevant and Putnam should

be required to produce them

**Request No. 71:** All documents and things <u>concerning the Women's</u>
<u>leadership Forum referred to at p. 180 of the Haldeman</u>
<u>deposition</u>.

**Response No. 71:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.  Putnam further objects on
the ground that the Women's Leadership Forum (referred to at
p. 180 of the Haldeman deposition) was not formed until after
the plaintiff's termination.

**Argument:** Documents concerning the Women's Leadership Forum at

Putnam are relevant to show the concerns and complaints of

women at Putnam and what, if anything, Putnam did in

response to those complaints and concerns.  That, if true,

the Forum was formed after Svensson's termination is beside

the point.  Evidence as to actions and omissions even

taking place after the Svensson termination are relevant. [4]

---

[4] Case law from the First Circuit and elsewhere also makes clear that
    evidence of an employer's discriminatory conduct towards other
    similarly situated employees is relevant even if such conduct took

place well before or after the conduct giving rise to the
plaintiff's action.  The United States Court of Appeals for the
First Circuit stated in the Conway case that, "evidence of a
corporate state-of-mind or a discriminatory atmosphere is not
rendered irrelevant by its failure to coincide precisely with the
particular actors or timeframe involved in the specific events
that generated a claim of discriminatory treatment. 825 F.2d at
597. (Emphasis added.) See also Carey, 156 F.3d at 37. In
Conway, the court allowed the introduction of evidence of
discriminatory statements made up to 22 months prior to the
plaintiff's termination.  In Jackson, the District Court expanded
the time period for which the plaintiff was allowed to seek
discovery as to tenure decisions in the Harvard Business School
from three to 10 years, including 7 years prior to the time tenure
consideration of the plaintiff had begun, stating, "In the court's
view, this three-year time period is unduly restrictive and
contrary to the law governing the scope of permissible discovery.
Fed. R. Civ. P. 26(b)(1).... Accordingly, a time frame which
merely brackets the contested employment action would foreclose
plaintiff from elucidating past practices or identifying a pattern
which might suggest that defendants' reasons for denying plaintiff
tenure are pretextual. Relevancy for discovery purposes is much
broader than for admissibility purposes at trial. If the
information sought appears reasonably calculated to lead to the
discovery of admissible evidence, it is within the limits set
forth in Fed. R. Civ. P. 26(b)(1). Therefore, the court expands
the time frame ordered by the magistrate from three years to ten,
commencing June, 1974 and ending June, 1984. 111 F.R.D. at 475.
And in Hernandez, the District Court noted that "a variety of
courts 'have held that prior discriminatory conduct is recognized
as probative in an employment discrimination case on the issue of
motive or intent.'"  190 F.Supp.2d at 271-72. (italics in
original). See also Briddell, 233 F.R.D at 60 (allowing discovery
as to other acts of discrimination for three year period including
14 months prior to any discriminatory acts against the
plaintiff.).

     Conduct occurring entirely after the discrimination
complained of by plaintiff also is relevant and admissible.  In
Brown, the United States Court of Appeals for the First Circuit
admitted statements made by the university president to another
professor being considered for tenure, even though those
statements were made after the decision on plaintiff's tenure
application had been made.  According to the Brown court: "That
the remarks occurred subsequent, rather than prior, to the
allegedly discriminatory conduct does not alter their
admissibility. The jury was entitled to infer that any
discriminatory animus toward women manifested in 1982 and 1983
would have existed in 1980 and 1981, when President Silber acted
on Brown's case. 891 F.2d at 350. See also Briddell, 233 F.R.D
at 60 (Court cited a case from the District of Kansas in which the
time period extended two years after the discrimination alleged by

**Request No. 72:** All documents and things <u>concerning studies,</u>
<u>analyses and reports and the results thereof by or on behalf</u>
<u>of the above referred to Women's Leadership Forum</u>.

**Response No. 72:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.  Putnam further objects on
the ground that the Women's Leadership Forum (referred to at
p. 180 of the Haldeman deposition) was not formed until after
the plaintiff's termination.

**Argument:** Documents concerning the Women's Leadership Forum at

Putnam are relevant to show the concerns and complaints of

women at Putnam and what, if anything, Putnam did in

response to those complaints and concerns.  That, if true,

the Forum was formed after Svensson's termination is beside

the point.  Evidence as to actions and omissions even

---

the plaintiff); <u>Ryder</u>, 128 F.3d at 130-33 (allowing introduction
of statements made one year after plaintiff's termination);
<u>Stumph</u>, 770 F.2d at 95, 97 (allowing testimony of other employees
as to discrimination they encountered after plaintiff was
terminated); <u>Cordova</u> v. <u>State Farm Ins. Companies</u>, 124 F.3d 1145,
1149(9th Cir. 1997) (Mexican plaintiff, alleging that she was not
promoted to trainee agent due to national origin discrimination,
allowed to introduce evidence that after hiring decision had been
made, manager made discriminatory comment about another Mexican
employee); <u>Stacks</u> v. <u>Southwestern Bell Yellow Pages</u>, 27 F.3d 1316,
1327 n.5 (8th Cir. 1994) (in sexual harassment case, evidence that
after plaintiff's termination a sexual video involving other
female employees had been shown at a company function was relevant
and admissible); <u>Martinez</u> v. <u>Potter</u>, 347 F.3d 1208, (10th Cir.
2003) (incidents of retaliation against plaintiff occurring after
plaintiff filed Title VII complaint, as to which administrative
remedies had not been exhausted, could still be introduced as
background evidence to support exhausted claims set forth in
complaint); <u>Schindler</u> v. <u>Bierwirth Chrysler/Plymouth</u>, 15 F.Supp.2d
1054, 1059 (D. Kan. 1998) (defendant's decisions to discharge two
other 60+ year old employees months after plaintiff's termination
"lend support to plaintiff's pretext argument"); <u>Wilson</u> v. <u>Seven
Seventeen HB Philadelphia Corp</u>., 2003 WL 22709073, * 10 (E.D. Pa.
11/14/03) (allowing introduction of corporate memoranda and notes
reflecting procedures in effect more than a year after plaintiff's
termination).

taking place after the Svensson termination are relevant.[5]

**Request No. 73:** All documents and things <u>concerning communication</u>
<u>from Haldeman to any other person and to Haldeman from any</u>
<u>other person in regard to any one or more of the subject</u>
<u>matters of...categor[y] [Nos. 71 and 72, above].</u>

**Response No. 73:** Putnam objects...overbroad, burdensome and
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence [and]...further [that]
the Women's Leadership Forum (referred to at p. 180 of the
Haldeman deposition) was not formed until after the
plaintiff's termination.

**Argument:** Documents concerning the Women's Leadership Forum at

Putnam are relevant to show the concerns and complaints of

women at Putnam and what, if anything, Putnam did in

response to those complaints and concerns.  That, if true,

the Forum was formed after Svensson's termination is beside

the point.  Evidence as to actions and omissions even

taking place after the Svensson termination are relevant.[6]

**Request No. 74:** <u>The personnel files of Allansmith,</u>
<u>DeChristopher, O'Malley, Peers and Warren</u>.

**Response No. 74:** Putnam objects...overbroad, burdensome
and...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition....

**Argument:** The files requested are relevant in order to show in

comparison to the treatment of Svensson: (1) the treatment

of DeChristopher who, according to PRM 4026, had "poor

three years performance record" and a "volatile

---

[5] <u>See</u> note 4, <u>supra</u>.
[6] <u>See</u> note 4, <u>supra</u>.

personality" yet was promoted in 2003 while Svensson was

terminated; (2) the treatment of Allansmith who was fired

and had been demoted while on maternity leave; (3) the

treatment of O'Malley, who, complained about Svensson, and

whose complaints, at least in part, according to Putnam,

provoked her termination and later received a promotion and

took over some of her responsibilities; and, (4) The

treatment of Warren's behavior. <u>See</u> Nos. 65-69, <u>supra</u>.

**Request No.75:** All documents and things <u>concerning communication</u>
<u>within Putnam in regard to the issue of "deprivation of</u>
<u>[Svensson's] management responsibilities," as used in the</u>
<u>Brooks deposition at p. 184), which</u> communication <u>took</u>
<u>place</u> in the period <u>prior to the Brooks' presenting to</u>
<u>Svensson on August 28, 2003, of a document with three</u>
<u>options concerning the status of her employment</u>.

**Response No.75:** Putnam has already produced non-privileged
communications and...  All privileged communications have
been noted in Putnam's privilege log [and]...further ...
this court, in response to Plaintiff's November 5, 2005
Motion to Compel Defendant's Production of Documents has
already limited Putnam's obligation to produce communications
between and among its personnel; and Putnam has already
produced such.....

**Argument:** Neither in its responses to this Category nor in its

Amended Privilege Log has Putnam made the showings required

to support the claims of attorney-client privilege or work

product.

Accordingly Svensson requests the court first to order

Putnam to disclose to Svensson and the court the relevant

information necessary to enable Svensson and the court to

assess the applicability of the claims.  Svensson requests

the court after the disclosure of this information to

review in camera the withheld documents to assist the court

in making its determinations as to these categories.

**Request No. 76:** All documents and things concerning communication
within Putnam in regard to the issue of "deprivation of
[Svensson's] management responsibilities" and/or termination
of her employment, which communication took place in the
period following the Brooks presentation to Svensson referred
to in the immediately preceding category, and the
termination of Svensson's employment on September 15, 2003.

**Response No. 76:** Putnam has already produced non-privileged
communications and documents responsive to this request....
All privileged communications have been noted in Putnam's
privilege log [and] further...that this court, in response
to Plaintiff's November 5, 2005 Motion to Compel... has
already limited Putnam's obligation to produce communications
between and among its personnel; and Putnam has already
produced such....

**Argument:** Neither in its responses to this Category nor in its

Amended Privilege Log has Putnam made the showings required

to support the claims of attorney-client privilege or work

product.

Accordingly Svensson requests the court first to order

Putnam to disclose to Svensson and the court the relevant

information necessary to enable Svensson and the court to assess

the applicability of the claims.  Svensson requests the court

after the disclosure of this information, to review in camera

the withheld documents to assist the court in making its

determinations as to these categories.

_____

On September 29, 2006, in accordance with the revised schedule approved by the court (Bowler, U.S.M. J.), Svensson sent a notice, a copy of which accompanies this memorandum as Exhibit "B, to point out to Putnam four instances in which Svensson contends that the Putnam responses to the First Interrogatories and the First Request for Production of Documents, were insufficient, as Svensson believes that the agreements reached at the June and July hearings in this case, required Putnam to respond to the first three items on the list[7] by supplying the additional information referred to.  Putnam takes the position that it did not agree to  do so.

As the items are covered by Category Nos. 8 and 55 of the Second Request for Production, to the extent the court order Putnam to produce the documents described in those categories it will not be necessary for the court to resolve this dispute as to the scope of the agreements reached in July. .

                              LISA SVENSSON, plaintiff,

                              By her attorneys,

                              BARRON & STADFELD, P.C.


                              /s/ Kevin F. Moloney_____

_____

[7] Putnam has agreed in regard to item No, 4 to furnish a  legible copy
    of the document at issue.

-                              60

Kevin F. Moloney BBO No. 351000
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir_____
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.5374

Dated: October 10, 2006

Certificate of Service.

    This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin F. Moloney_____

Dated: October 10, 2006

[373580.1]

# CONDENSED TRANSCRIPT

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## CIVIL ACTION NUMBER:   04-12711


LISA SVENSSON,

       Plaintiff,

VS

PUTNAM INVESTMENTS, LLC,

F/K/A PUTNAM INVESTMENTS, INC.

AND LAWRENCE J. LASSER,

       Defendants.


     ~~~~~~~~~~~~~~~~


     DEPOSITION of LAUREN ALLANSMITH, taken
on behalf of the Plaintiff, pursuant to the
applicable provisions of the Massachusetts Rules
of Federal Procedure, before Claudette M.
Paradis, Registered Professional Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Barron &
Stadfeld, P.C., 100 Cambridge Street, Boston,
Massachusetts, on August 31, 2005, commencing
at 10:58 a.m.



**Jack Daniel**
Court Reporting & Video Services
Inc

Technologies you can Use • Experience you can Trust
141 Portland Street, Suite 200, Boston, MA 02114
Phone: 617.557.0039 • Toll Free: 1.888.922.JACK • Fax: 617.557.0040
www.jackdanielreporting.com

LAUREN ALLANSMITH  08/31/05

1 (Pages 1 to 4)

**Page 1**

1    UNITED STATES DISTRICT COURT
     DISTRICT OF MASSACHUSETTS
2    CIVIL ACTION NUMBER:  04-12711
3
4
5    LISA SVENSSON,
6         Plaintiff,
7    VS
8    PUTNAM INVESTMENTS, LLC,
9    F/K/A PUTNAM INVESTMENTS, INC.
10   AND LAWRENCE J. LASSER,
11        Defendants.
12
13   ~~~~~~~~~~~~~~~~
14
15        DEPOSITION of LAUREN ALLANSMITH, taken
16   on behalf of the Plaintiff, pursuant to the
17   applicable provisions of the Massachusetts Rules
18   of Federal Procedure, before Claudette M.
19   Paradis, Registered Professional Reporter and
20   Notary Public in and for the Commonwealth of
21   Massachusetts, at the Offices of Barron &
22   Stadfeld, P.C., 100 Cambridge Street, Boston,
23   Massachusetts, on August 31, 2005, commencing
24   at 10:58 a.m.

**Page 2**

1              APPEARANCES:
2    .
3    ON BEHALF OF PLAINTIFF:
4    JOHN K. WEIR, ESQ.
5    John K. Weir Law Offices, LLC
6    8 Sound Shore Drive, Suite 240
7    Greenwich, CT 06830
8    203.622.1701
9    johnkweir47@aol.com
10
11   ON BEHALF OF PUTNAM INVESTMENTS, LLC:
12   JOSEPH L. KOCIUBES, ESQ.
13   RACHEL SPLAINE ROLLINS, ESQ.
14   Bingham McCutchen, LLP
15   150 Federal Street
16   Boston, Massachusetts 02110-1726
17   617.951.8337
18   joe.kociubes@bingham.com
19   617.951.8791
20   rachel.rollins@bingham.com
21   .
22   .
23   .
24   .

**Page 3**

1         APPEARANCES CONTINUED:
2    .
3    ON BEHALF OF PUTNAM INVESTMENTS, LLC:
4    JASON A. TUCKER, ESQ.
5    Putnam Investments
6    One Post Office Square
7    Boston, Massachusetts 02109
8    617.760.1977
9    jason_tucker@putnam.com
10   .
11   ON BEHALF OF LAWRENCE J. LASSER:
12   DAVID S. ROSENTHAL, ESQ.
13   Nixon Peabody, LLC
14   100 Summer Street
15   Boston, Massachusetts 02110-2131
16   617.345.6183
17   drosenthal@nixonpeabody.com
18   .
19   ALSO PRESENT:
20   LISA SVENSSON
21   .
22   .
23   .
24   .

**Page 4**

1    EXAMINATION INDEX OF LAUREN ALLANSMITH
2              AUGUST 31, 2005
3    .
4    EXAMINATION OF              PAGE
5    .
6    LAUREN ALLANSMITH:
7    EXAMINATION BY MR. WEIR        5
8    .EXAMINATION BY MR. KOCIUBES      124
9    EXAMINATION BY MR. ROSENTHAL    193
10   FURTHER EXAM BY MR. WEIR      213
11   FURTHER EXAM BY MR. KOCIUBES    216
12   .
13   .
14   .
15   .
16   .
17   .
18   .
19   .
20   .
21   .
22   .
23   .
24   .


**Jack Daniel**
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE          141 Portland Street . Boston, MA 02114          EXPERIENCE YOU CAN TRUST
617.557.0039                      www.jackdanielreporting.com
                                  888.922.JACK                            FAX 617.557.0040

LAUREN ALLANSMITH  08/31/05

2 (Pages 5 to 8)

### Page 5

1  DEPOSITION OF LAUREN ALLANSMITH
2  AUGUST 31, 2005
3  PROCEEDINGS:
4  LAUREN ALLANSMITH, the deponent,
5  having been satisfactorily identified and
6  duly sworn by the Notary Public, was
7  examined and testified as follows:
8  EXAMINATION
9  BY MR. WEIR:
10  Q.  Good morning.  My name is John Weir
11  and I am the attorney representing Lisa
12  Svensson, the plaintiff in a lawsuit
13  pending in the Federal Court of
14  Massachusetts against Putnam Investments
15  and Lawrence J. Lasser.  I'm going to be
16  asking you a series of questions at this
17  deposition, and afterwards, other counsel
18  may be asking you some questions.
19  Have you ever had your deposition
20  taken before?
21  A.  No, I have not.
22  Q.  You understand that you're under
23  oath --
24  A.  I do.

### Page 6

1  Q.  -- and have sworn to tell the
2  truth.  And do you understand that we're
3  here to try to probe the extent of your
4  knowledge of particular facts that are
5  relevant to this lawsuit?
6  A.  I do.
7  Q.  Can you state your full name for
8  the record?
9  A.  Lauren Lee Allansmith.
10  Q.  And your present residence address.
11  A.  Seven Jericho Road, Scituate,
12  Massachusetts.
13  Q.  Okay.  And for how long have you
14  resided at that location?
15  A.  At that location, for two months.
16  Q.  And prior to --
17  A.  Prior to that, I resided at 66
18  Egypt Ave. in Scituate, and I resided
19  there for eight years.
20  Q.  Okay.  And do you have any present
21  plans to move from the Seven Jericho Road
22  address?
23  A.  Yes.  In approximately May or June
24  of next year, I have plans to move to

### Page 7

1  Bainbridge Island, Washington.
2  Q.  And do you know the location at
3  which you will be residing in Washington?
4  A.  I do not.
5  Q.  Okay.  Are you currently employed?
6  A.  I am not.
7  Q.  Are you married?
8  A.  Yes, I am.
9  Q.  What is your husband's name?
10  A.  His name, I-T-A-I, last name is
11  H-A-L-E-V-I.
12  Q.  Okay.  And do you have children?
13  A.  Yes.
14  Q.  How many children?
15  A.  Two children.
16  Q.  And how old are the children?
17  A.  Two-and-a-half years and four
18  years.
19  Q.  So one was born in 2001 --
20  A.  Correct.
21  Q.  -- and one was born in --
22  A.  2003.
23  Q.  -- 2003.  Okay.  Now, were you --
24  When were you last -- Strike that.

### Page 8

1  Have you previously been employed?
2  A.  Yes.
3  Q.  When were you last employed?
4  A.  The date of my last employment was
5  September 16th, 2003 -- I mean four.
6  Sorry.
7  Q.  That's the date that you ceased to
8  be employed?
9  A.  Correct.
10  Q.  Okay.  And by whom were you
11  employed prior to September 16th, 2004?
12  A.  Putnam Investments.
13  Q.  And that's here in Boston?
14  A.  Correct.
15  Q.  And for what period of time were
16  you employed by Putnam?
17  A.  I was employed from August of 1999
18  till that date.
19  Q.  Okay.  Prior to August of 1999,
20  were you employed?
21  A.  Yes.
22  Q.  By whom?
23  A.  I was employed by Loomis Sayles,
24  L-O-O-M-I-S, second word, S-A-Y-L-E-S, here

**Jack Daniel**
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE          141 Portland Street . Boston, MA 02114          EXPERIENCE YOU CAN TRUST
617.557.0039                www.jackdanielreporting.com
888.922.JACK                      FAX 617.557.0040

LAUREN ALLANSMITH   08/31/05

22  (Pages 85 to 88)

### Page 85

1  mean?
2    A.  Well, that they sometimes swore in
3  the meetings, that they would cut people
4  off, that they would, without giving any
5  explanation, call somebody's work baseless.
6  They just -- I don't know how much detail
7  you want, but...
8    Q.  As much detail as you can remember.
9    A.  Attacking each other even across
10  the table.  Saying the most ridicules
11  things about investing such as they would
12  put the chart of the stock on the screen
13  and say that they wouldn't invest in any
14  stock where the price line went into the
15  volume box.  I mean, just completely --
16  And you were not allowed to question any
17  of that.  They were allowed to -- If you
18  were trying to make a point on a stock,
19  you're saying this is new management, I
20  think that the company can make some good
21  moves here, and then Hugh Mullin would say
22  he's followed that company for 30 years
23  and there's no way that they could ever
24  turn around.  He would override your work.

### Page 86

1    Q.  Did there come a time when you
2  became aware that Lisa Svensson had been
3  terminated?
4    A.  I believe it was August of 2003.
5  I had returned from a trip and she was
6  gone.  And Josh Brooks stopped by my
7  office, he almost never stopped by my
8  office, I almost never saw him, but he did
9  stop by my office and said that he wanted
10  to explain why Lisa Svensson was gone.
11  And I said, That's good because the number
12  of women in the department had been
13  decreasing steadily.  I had calculated
14  that there were -- the department, when I
15  started, was 28 percent women and it had
16  dwindled down to 12 percent.  And he
17  explained to me, and I believe this is the
18  phrase he used, that Lisa Svensson had
19  gone crazy and that she had tried to get
20  a junior analyst fired behind his back.
21    And I don't know if he mentioned
22  Darrin Pierce (phonetic), who was the
23  analyst in question at that time by name
24  or not, but everybody knew it was Darrin

### Page 87

1  Pierce.  And that she was acting
2  inappropriately and was trying to use
3  human resources in order to get people
4  fired on her team.  And that when it came
5  down to it, they had asked Lisa to step
6  down from her management roles and just be
7  a straight equity analyst, and when she
8  refused to do so, Josh Brooks said that
9  she requested that she be fired in order
10  to sue Putnam.  She goes, he said,
11  something to the effect, well, she wanted
12  us to fire her so I guess she could sue
13  Putnam or something.  That was what it
14  sounded like to me.  He also said at that
15  point that he acknowledged that the number
16  of women in the department had gone down
17  markedly and he said to me, I'm thinking
18  about hiring only female analysts going
19  forward.  How un-PC is that?
20    Q.  Okay.  Anything else you recall
21  that he said?
22    A.  I think that was the extent of it.
23    Q.  Did he indicate to you why he felt
24  compelled to tell you this at this

### Page 88

1  particular time?
2    A.  I don't know and I didn't ask.
3    Q.  You said you calculated some
4  figures that showed that the number of
5  females had been down from 28 percent to
6  12 percent in the department.  How did you
7  accomplish that?
8    A.  Well, I knew the composition of
9  equity research for all those years, and I
10  knew -- I just sorted it into buckets,
11  like women versus men.  And I calculated
12  the changes over time, and then I
13  calculated women with children and tracked
14  what happened to them, and men with
15  children and what happened to them.  And
16  then I took the class of 2000 and I
17  tracked what happened to each of the
18  people, whether they got promoted or quit
19  or were demoted or fired, and I ran every
20  statistic that I could think of, actually.
21    Q.  You mentioned the results of women
22  versus men.  What were the results of men
23  with children versus women with children?
24    A.  Women with children, almost as a


**Jack Daniel**
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE        141 Portland Street . Boston, MA 02114        EXPERIENCE YOU CAN TRUST
617.557.0039                       www.jackdanielreporting.com
                                      888.922.JACK                          FAX 617.557.0040

LAUREN ALLANSMITH   08/31/05

23  (Pages 89 to 92)

---

**Page 89**

1  rule, were either demoted or terminated 18
2  months after they had their child.  Men
3  with children, almost as a rule, were
4  promoted after having children.  Almost
5  all men were promoted.  The number of
6  terminations -- even though women made up
7  a quarter or less of the department,
8  almost all of the terminations in that
9  five-year period were 100 percent women.
10  I think only two men were terminated.  I
11  also had some compensation figures and I
12  ran some statistics on those as well.  At
13  this point, I'm not sure what violates my
14  severance agreement with Putnam so I'm
15  going to remain quiet on the results of
16  those.
17  Q.  What was the group, was that the
18  class of 2000?
19  A.  For which?
20  Q.  For your study.  I mean, what group
21  were you using?
22  A.  I did extensive statistics.  I used
23  the class of 2000 and tracked them.  I
24  tracked the department for every year.  I

**Page 90**

1  tracked senior analysts and what happened
2  to those.  I tracked junior analysts and
3  what happened to them.  I mean, I did --
4  you know, I'm an analyst.
5  Q.  Did you retain hard copies of those
6  studies?
7  A.  Yes.
8  Q.  Do you still have them?
9  A.  I do.
10  Q.  Would you be willing to provide
11  them to us?
12  A.  I am a little bit concerned about
13  what would violate my severance agreement,
14  since in the severance agreement I agreed
15  not to make disparaging comments about
16  Putnam or to share any information about
17  Putnam or my experience at Putnam, et
18  cetera.  I believe that being subpoenaed
19  here does allow me to have some of those
20  discussions, but now we're in a territory
21  where I don't know how much information I
22  can divulge.  And the penalties are quite
23  severe if I violate that agreement.
24      MR. WEIR:  Off the record.

---

**Page 91**

1      (Discussion off the record).
2      MR. WEIR:  Well, my request
3  stands.  I would like, if possible, to
4  have you produce the studies that you have
5  done which you've indicated in your
6  testimony you retain in your possession.
7  And let's just leave it at that.
8      THE WITNESS:  Okay.
9      MR. WEIR:  I don't want you
10  to run afoul with any issues with respect
11  to your severance agreement.
12      BY MR. WEIR:
13  Q.  Did I understand that these studies
14  -- Strike that.
15      How would you determine who was --
16  who had children and who didn't have
17  children?
18  A.  I knew them all.
19  Q.  So you knew from your own
20  knowledge?
21  A.  Yeah.
22  Q.  When you had your discussion with
23  Josh Brooks after you learned that Lisa
24  Svensson had been terminated, did you

**Page 92**

1  indicate that you had noticed that older
2  women tended to be gone, almost as a rule,
3  I think you said, older women with
4  children.
5      MR. KOCIUBES:  Objection.
6      MR. ROSENTHAL:  Objection.
7  A.  It wasn't only women, it was any
8  woman.  Yes.  And he -- That's when he
9  made the comment, I agree.  And he thought
10  he would hire all female analysts from
11  that point on.
12  Q.  Okay.  Do you know whether female
13  analysts, after he made the statement,
14  were, in fact, hired in Josh Brooks'
15  department?
16  A.  One was hired to replace Lisa
17  Svensson.
18  Q.  Okay.  Other than Lisa Svensson and
19  yourself, were there other female analysts
20  who left the department after he made the
21  comment?
22  A.  Yeah.
23  Q.  Who?  Who do you recall?
24  A.  Okay.  Other people.  I can't



**Jack Daniel**
Court Reporting & Video Services

TECHNOLOGIES YOU CAN USE          141 Portland Street . Boston, MA 02114          EXPERIENCE YOU CAN TRUST
617.557.0039                          www.jackdanielreporting.com
                                      888.922.JACK                          FAX 617.557.0040

1.    <u>Manager ratings for comparators who were partners</u>:

It appears from <u>SEC</u> v <u>Scott et al</u> (defendants' summary
judgment motion Appendix, Tab E Parts I and III concerning
Scott and Kamshad) that partners had manager reviews.  As
Putnam has not produced manager ratings for those of the
"91" who were partners, manager ratings information for the
comparators who were partners is needed.

2.    <u>Total Compensation Needed in Full for Every Year</u>

What has been provided at PRM 4135-4144 is only salary and
bonus for the 91.  However, total compensation has not been
furnished in all respects as Putnam has furnished total
compensation information for only some years and for only
for some of the 91.  Complete production of this
information for all concerned and for all years 1999 - 2003
is needed.

3. <u>Ratings for 2003 Needed</u>

Ratings information has been furnished for 1999-2002. but
not for 2003.  Thus, ratings information for 2003 is
needed.

4. <u>A Readable, Unredacted Copy of PRM 2059-2063 is Needed</u>

It is impossible to tell if PRM 2059 - PRM 2063h has been
produced in unredacted form.  The shading makes it
impossible to read.  A readable copy of this document is
needed.