UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | Civil Action No. 04-12711-PBS | |
| * | | |
| LISA SVENSSON * | | |
| * | BBO No. 351000 | |
| Plaintiff, * | | |
| * | | |
| v. * | Reply Memorandum | |
| * | of Plaintiff Lisa | |
| PUTNAM INVESTMENTS, * | Svensson to Defendant | |
| LLC f/k/a PUTNAM INVEST- * | Putnam Investments LLC's | |
| MENTS, INC. and LAWRENCE * | Opposition to Svensson's | |
| J. LASSER, * | Motion to Compel Production | |
| * | of the Documents and Things | |
| Defendants. * | Requested in her Second | |
| * | Request for Production | |
| * * * * * * * * * * * * * * | * | |

Plaintiff Lisa Svensson submits this Reply Memorandum to the opposition of defendant

Putnam Investments, LLC ("Putnam") to her motion to compel production of the document and

things requested in her Second Request for Production ("Second RPOD") because in its

opposition ("Opposition"), Putnam has asserted incorrect or improper objections; in some cases,

has misstated the facts; in some cases, omitted other material facts; in some cases has

mischaracterized Svensson positions and contentions; and in some cases has misstated applicable

law.

Svensson also files this memorandum in reply to set out in one document on a category

by category of the Second RPOD, the category of documents requested, the Putnam objections;

the Svensson argument in support of her motion, the Putnam opposition to the motion and

Svensson's reply.

As matters preliminary to the category by category discussion that begins on p. 5, infra,

Svensson submits the following five points for consideration by the court:

1. Putnam is wrong in its objections that continue to claim that Svensson has no comparators based upon <u>Jackson</u> v. <u>Harvard University</u>, 111 F.R.D. 472 (D. Mass. 1986). and <u>Whittingham</u> v. <u>Amherst College</u>, 164 F.R.D. 124 (1995).  As set forth more particularly in Svensson's reply memorandum filed June 8, 2006 (<u>see</u> the excerpt in footnote 1 below), Putnam's arguments are based upon misrepresentation of the facts and incorrect statements of the law and neither case precludes Svensson from obtaining production of the document requested in the Second RPOD.[1]

---

[1] "At the hearing [on December 13, 2005] Putnam's counsel urged the court to rely upon  <u>Jackson</u> v.<u>Harvard University</u>, 111 F.R.D. 472 (D. Mass. 1986). and <u>Whittingham</u> v. <u>Amherst College</u>, 164 F.R.D. 124 (1995), for the proposition that "typically you don't look outside of the group in which the employee is employed; that is, you look at the decisions by the same decision maker. We cited those cases in our opposition to the  motion to compel, and Mr. Weir doesn't cite any contrary authority. Yet the case is pretty clear, both the Jackson case and the Whittingham case, that decisions by other people in other parts of the company aren't probative on the question of whether or not there was discrimination in her unit. Transcript, pp. I-6 through I-7.  Ruling upon the motion, Magistrate Bowler made clear that she was denying the motion to compel RPOD No. 2 without prejudice, stating that the denial was "as to those individuals <u>at this time</u>."  (Emphasis added.)  Putnam has not explained "why" it now seeks to rely on an order issued without prejudice as the basis for preclusion.

     "Further, even if Magistrate Bowler's order was not expressly without prejudice, it was still interlocutory and can and should be revised because it was based on Putnam's factual misrepresentations. By citing <u>Jackson</u> and <u>Whittingham</u> for the proposition that the only valid comparators are those persons who worked on the same investment team as Svensson (a proposition which so far has resulted in the production of no documents or information as to any comparators of Svensson), not others holding similar positions on other teams in Putnam's Investment Management Division, Putnam's counsel clearly represented as fact to the court that the various investment teams within the Investment Management Division, one of at least four divisions of Putnam, was administered in the same autonomous manner as the various virtually independent graduate schools at Harvard with regard to employment decisions.  To claim that such investment teams are analogous to the independently administered graduate schools at Harvard is absurd.  A more apt analogy would be to compare the graduate schools of Harvard with the other corporate subsidiaries of Putnam's corporate parent, Marsh & McLennan Companies, Inc.**.**

     "Because Magistrate Bowler's December 2005 ruling with respect to RPOD Category No. 2 was expressly without prejudice, and in any event was based on Putnam's factual misrepresentations, it does not preclude consideration of Svensson's motion to compel answers to interrogatories....

     "Putnam argues in its Opposition (p. 7) that the decision in <u>Whittingham</u>, denying a plaintiff's motion to compel production of employment files, also governs the present case.  However, <u>Whittingham</u> is easily distinguished. Putnam cites <u>Whittingham</u> for the proposition that,"[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer. Nonetheless, Plaintiff requests the Court to order the Defendant to hand over entire files of employees without any particularized showing that any, let alone all, of the information therein is relevant to his claims. Again, while discovery is usually broad, Plaintiff has not demonstrated that the files he seeks, even if marginally relevant, outweigh the privacy interests of these individuals." <u>Id</u>. at 127-28.  While that statement may be true so far as it goes, Putnam fails to disclose to the court  other portions of

(2) There is no reason "why" Putnam should not make discovery in response to the Second RPOD as to the 91 persons Svensson contends are her comparators as the court required it do when, on September 1, 2006, it answered interrogatories and produced unredacted documents in regard to those comparators.

(3) Putnam is wrong in its objections that, based upon Conward v. The Cambridge School Committee, 171 F.3d 12, 19 (1st Cir.1999), the conduct of a comparator engaging in bad conduct must be "nearly identical."  As set forth more particularly in Svensson's reply memorandum filed June 8, 2006 (see the excerpt in footnote 2 below), the correct standard applicable to the present case is whether the bad conduct of the comparator is as serious or more serious.[2]  Conward does not preclude Svensson from obtaining discovery in regard to

---

Whittingham that strongly support Svensson's motion to compel in the present case.  The language Putnam relies on appears in a section of Whittingham in which the court denied the plaintiff applicant for promotion within the college's office of admissions discovery of the "complete personnel files of [three former minority] deans in the Admissions Office...."  The court did so because plaintiff,"has made no real showing that these three individuals suffered similar treatment and, without a showing of such relevance, Plaintiff is not entitled to discovery." Id. at 127.  Thus, the Whittingham court focused on the fact that the plaintiff in that case had not shown that the personnel files sought pertained to persons who had suffered similar treatment.  Had such a showing been made, the court would have allowed discovery.

"In the present case, unlike Whittingham, Svensson can show that the female Putnam investment professionals whose files she seeks were similarly situated and may well have suffered similar mistreatment.  Therefore, under Whittingham, the files of those other women should be discoverable.  Moreover, the files of males promoted by Putnam to Managing Director are discoverable under Whittingham.  The Whittingham court distinguished Weahkee v. Norton, 621 F.2d 1080 (10th Cir. 1980), cited by the plaintiff in Whittingham, because Weahkee concerned the, "discoverability of personnel files of those who are 'hired or promoted' over the plaintiff...."  In the present case,  Svensson seeks exactly the type of information at issue in Weahkee but not at issue in Whittingham: the files of males who were hired or promoted over her into the Managing Director position.

"Of course, Putnam will argue that Svensson has not provided enough evidence to prove that the comparators she identifies actually were similarly situated and actually did suffer similar mistreatment or were hired or promoted over her.  The court should decline to place Svensson in such a "Catch 22" situation.  The very purpose of the discovery Svensson seeks is to obtain sufficient information to establish at trial that the comparators were similarly situated."

[2]  Putnam asserts that Conward v. Cambridge School Committee, 171 F.3d 12 (1999) "makes clear that the misconduct at issue must be nearly identical."  Notably, however, on p. 8 of its memorandum in opposition to Svensson's motion for an order requiring Tibbetts and Oristaglio to resume their depositions, Docket No. __, Putnam acknowledged, in contrast, that while the "alleged offenses do not need to be identical, [they] 'must be of comparable seriousness'."  In the context of the instant case,

comparators engaging in bad conduct such as Scott, Kamshad and Paul Warren.

(4) Putnam's conduct in refusing until September 1 to unredact documents concerning comparators and answering interrogatories is the cause for the extension of the discovery period to December 31, 2006. The charts that are Exhibits "A" and "B" to this memorandum demonstrate in vivid terms the impact of Putnam's refusals to make discovery in a proper and timely manner.

(5) That Putnam has exaggerated any issue of searching e-mails is established by a comparison of its rhetoric when last December it opposed Svensson's initial request for production when the scope was the entire Putnam workforce and the years covered commenced with 1994 ("thousands" of e-mails) with, when the scope has been dramatically reduced in terms of years (only since January 1, 1999) and persons covered (mostly e-mails of only the decision-makers and in regard to some of the limited numbers of comparators), Putnam's current rhetoric of "millions" of e-mails. It is illogical to believe that as the scope has decreased, the number of e-mails to be searched has increased.

---

Putnam is incorrect in its interpretation of <u>Conward</u> as the facts of that case are easily distinguishable.

"Unlike in <u>Conward</u>, the comparator conduct in the present case Warren is egregious and far more serious than that alleged of Svensson. The plaintiff's difficulty in <u>Conward</u> was that, as District Judge O'Toole put it, 1998 WL 151248, *3, ___ Conward had not established that the school committee had failed to terminate teachers "outside the protected class who engaged in misconduct <u>as serious or more serious than</u> Conward's." (Emphasis added.) In affirming Judge O'Toole's grant of summary judgment to the defendant school committee, the Court of Appeals did not disagree with this statement by the District Court. In fact, the First Circuit's analysis of the facts shows that the appellate court, like Judge O'Toole in the District Court, found the conduct the plaintiff in <u>Conward</u> relied upon, was not "as serious or more serious" than Conward's.

"In <u>Lynn</u> v. <u>Deaconess Medical Center-West Campus</u>, 160 F.3d 484 (8th Cir. 1998), cited by Svensson at p. 14 of her initial memorandum in support of her motion for an order to Tibbetts and Oristaglio to resume their depositions, Docket No,. __, the United States Court of Appeals for the 8th Circuit said, "To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach."

If the court is unwilling to decide that Putnam's e-mail claims are meritless without further input on the facts from the parties, Svensson suggests that the court adopt for this case at this point the new e-discovery rules that are to become effective on December 1, 2006, which, among other things, would require Putnam to furnish Svensson with accurate information as to Putnam's computer systems, search capabilities and other matters so that the parties could work out any e-mail search issues by agreement based upon knowledge of the facts rather than over-heated rhetoric, recognizing that under the new e-discovery rules the burden is on the responding party to establish that it does not have to produce the requested information.

Svensson's replies to the oppositions of Putnam on a category by category basis follow:

Svensson Request No. 1:

> All documents and things concerning the criteria actually used by the persons participating in the decision making process in deciding whether to select Svensson or any of the identified males or identified females[3] for appointment to or election as a Managing Director or Portfolio Manager in the period since January 1, 1999, whether by promotion from within the Investment Management Division, another division of Putnam or as a lateral hire from another entity.

Putnam Response No. 1: [Putnam objects to the extent this Request seeks documents [that]...have been produced... [And] to the balance [as]...unduly vague and ambiguous, overbroad, and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing, Putnam will produce its Career Development Guide for Equity Portfolio Manager.

Svensson's Initial Argument
in Support of Motion to Compel:

The documents requested concerning the criteria used by Putnam should be produced as they are highly relevant to the Putnam decision making process that is at the heart of this case. Plaintiff Svensson ("Svensson") will accept a statement from defendant Putnam Investments, LLC ("Putnam") that it has produced all written criteria

---

[3] The phrase "91 comparators" refers collectively to the 91 identified males and identified females that Putnam and Svensson agreed at the July 11, 2006, hearing would be deemed comparators for discovery purposes, Putnam reserving the right to contest this characterization for purposes other than discovery.

concerning Managing Director and Portfolio Management positions since January 1,

1999, and will produce any criteria for Portfolio Management Managing or Director

positions that it has not already produced.

Putnam Opposition:

- A number of deponents have already testified concerning the criteria to become Managing Director and Portfolio Manager.

- Putnam has already produced all documents setting forth such written criteria concerning this title and position, respectively.

Svensson's Reply:  If the Putnam opposition is correct as to fact, Svensson will accept a

statement under oath from an authorized Putnam official that no documents other than to

be specified unredacted Bates numbered ("PRM___") documents exist for the Portfolio

Manager and Managing Director positions.

Svensson Request No. 2:

All documents and things concerning the results of the application of the criteria referred to in the immediately preceding category to [Svensson], any of the [91 comparators].

Putnam Response No. 2:

To the extent this Request...relat[es] to [Svensson], such documents [already] have been produced...  [Putnam] objects to the balance...[as] unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence...[and[... further objects [as] set forth in its Opposition to the Plaintiff's motion to compel further answers to her interrogatories ("Putnam's Opposition")....

Svensson's Initial Argument
in Support of Motion to Compel:

The documents requested concerning the results of the criteria actually used by

Putnam in deciding who should be appointed to Portfolio Management and Managing

Director positions should be produced as they are highly relevant to the Putnam decision

making process that is at the heart of this case.

However, Svensson will reduce the scope of this request for purposes of this category of this request to the following 22 of the 91 comparators:  16 males: Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman, Peter Hadden, Shigeki Makino, David Gerber, David King, Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss, and six females: Beth Cotner, Lauren Allansmith, Debbie Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard. [4]

Putnam Opposition:

- Putnam has already produced all lists naming each of the 91 considered for Managing Director, along with a list of those elected for each of 1999 - 2003.

- With respect to documents concerning who should be appointed to Portfolio Manager, this request would require Putnam to search an indefinite number of email boxes for 22 individuals. The request would require Putnam to locate and review potentially hundreds of thousands of emails, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- With respect to requests for information about Portfolio Managers, Ms. Svensson fails to provide any basis to believe that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply: First, the "lists" referred to do not furnish the reasons for certain comparators obtaining  promotions or appointments to PM or MD positions.  The lists tell the "what" and not the "why"; and it is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination.  The "why" has not been furnished in the prior production or in the answers to interrogatories.

---

[4] By limiting the number of comparators for purposes of this or any other category of this request from the 91 Comparators to some of them, Svensson does not waive any contention on her part that all of the 91 Comparators are her comparators.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u> p. 2 , <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  <u>See</u> pp. 4-5, <u>supra</u>.  The scope of the documents required has been drastically limited.  Svensson seeks in this category only the e-mails of the decision-makers in regard to the 22 comparators referred to, not the e-mails of the 22 comparators.

Svensson Request No. 3:

> In regard to the...91 Comparators...who were not promoted from within Putnam to Portfolio Manager or Managing Director but were hired on a lateral basis from anther entity in the period since January 1, 1999, all documents and things concerning communication between or among those persons participating in the decision making process as to the persons who should be elected or appointed to th[ose] position[s], and which documents and things concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to any one or more of such persons.

Putnam Response No. 3:  Putnam objects...unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence...[and] on the grounds set forth in Putnam's Opposition....[and] the Request is incomprehensible to the point that it is unclear "what" additional information the Plaintiff seeks.

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning communication among decision makers as to persons being brought in from outside of Putnam to fill positions that Svensson and the female comparators were qualified are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will reduce the scope of this request to communications among the decision makers as to the following four male comparators who were brought into Putnam from the outside:  Josh Brooks, Shigeki Makino, Colin Moore and Eric

Sorensen.  Based on the deposition testimony and Putnam documents produced to date, Svensson believes that some or all of the following individuals were decision makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott.

Plaintiff is not aware of any female comparators who fall within the scope of this request, but if any of the 24 female comparators were rejected for immediate Managing Director or Portfolio Manager status upon first being hired by Putnam, Svensson requests the court to require production of documents concerning these decisions.

Putnam Opposition:

- Ms. Svensson's argument fails to explain "why" employees hired laterally are relevant to one of her claims. Because, as Ms. Svensson has learned in discovery, there was no fixed number of Managing Directors, there is no basis for believing that any laterally hired male was given the title of Managing Director to the exclusion of Ms. Svensson.

- A search for any "communication" about decisions to elect or appoint these 4 individuals would require Putnam to restore and review potentially hundreds of thousands of emails without any basis for believing that relevant communications exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims

Svensson's Reply:

First, Svensson seeks to know not the "what" and but the "why" the four identified males were brought in from the outside over Svensson and other females who had "paid their dues" and were qualified for the positions.  It is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination.  The "why" has

not been furnished in the prior production or in the answers to interrogatories.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  <u>See</u> pp. 4-5, <u>supra</u>.  The scope of the documents required has been drastically limited to only the documents including e-mails to and from the ten identified decision-makers as to the four imports.

Svensson Request No. 4:

In regard to the [91 Comparators] who were not promoted from within Putnam but were hired as a Managing Director or Portfolio Manager...from another entity in the period since January 1, 1999, all documents and things prepared or received by or on behalf of any one or more of the persons participating in the decision making process as to the persons who should be so appointed or elected to Managing Director or Portfolio Manager, and which documents and things concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to any one or more of such persons.

Putnam Response No. 4 Putnam objects...unduly vague and ambiguous, overbroad,...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence....also...on the grounds set forth in Putnam's Opposition....[and]...the Request is incomprehensible to the point that it is unclear "what" additional information the Plaintiff seeks.

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning evaluations by decision makers as to persons being brought in from outside of Putnam to fill positions that Svensson and the female comparators were qualified are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will reduce the scope of this request to documents concerning evaluations by the decision makers as to the following four male comparators who were brought into Putnam from the outside: Josh Brooks, Shigeki Makino, Colin Moore and Eric Sorensen.  Based on the deposition testimony and Putnam documents produced to

date, Svensson believes that some or all of the following individuals were decision makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott.

Plaintiff is not aware of any female comparators who fall within the scope of this request, but if any of the 24 female comparators were rejected for immediate Managing Director or Portfolio Manager status upon first being hired by Putnam, Svensson requests the court to require production of documents concerning these decisions.

Putnam Opposition:

- Ms. Svensson's argument fails to explain "why" employees hired laterally are relevant to one of her claims. Because, as Ms. Svensson has learned in discovery, there was no fixed number of Managing Directors, there is no basis for believing that any laterally hired male was given the title of Managing Director to the exclusion of Ms. Svensson.

- A search for any "communication" about decisions to elect or appoint these 4 individuals would require Putnam to restore and review potentially hundreds of thousands of emails without any basis for believing that relevant communications exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

Svensson's Reply:

First, Svensson seeks to know not the "what" but the "why" of the four identified males being brought in from the outside over Svensson and other females who had "paid their dues" and were qualified for the positions. It is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination. The "why" has not been furnished in the prior production or in the answers to interrogatories.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. __ , <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  See pp. 4-5, <u>supra</u>.  The scope of the documents required has been drastically limited to only the documents including e-mails to and from the ten decision-makers as to the four imports.

Svensson Request No. 5:

   In regard to Svensson and the [91 Comparators] and the pools of persons for consideration for appointment or election as Managing Director or Portfolio Manager at any time in the period since January 1, 1999, all documents and things concerning communication between or among those persons participating in the decision making process as to who should be included in or excluded from such pools, and which documents and things concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard...to Svensson, any of the [91 Comparators] concerning inclusion in, or exclusion from, such pools.

Putnam Response No. 5:  Putnam objects...unduly vague and ambiguous, overbroad ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further states that this court, in response to Plaintiff's November 5, 2005 Motion to Compel Defendant's Production of Documents has already limited Putnam's obligation to produce communications between and among its personnel; and Putnam has already produced such information in accordance with this court's prior ruling.

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning communication by and among decision makers as to which persons should be included in or excluded from the pools of persons to be considered for appointment or election as Managing Director or Portfolio Manager are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this category to documents prepared or received by the above-named ten decision makers (Steve Oristaglio, Jack Morgan, Tim

Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott) concerning any of the 91 Comparators in regard to such inclusion or exclusion. This should not require search of e-mail accounts of any comparators, but rather review of files and e-mails of only the above referred to ten decision makers.

Putnam Opposition:

- Because Ms. Svensson's name appeared on a list of potential nominees to Managing Director for each of 1999 - 2003, that one or more of the 91 also appeared on that list is not relevant to any of her claims

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of 10 former or current Putnam employees, run 91 searches, and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist. Thus the request is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, Svensson seeks to know not only the "what" but the "why" of the inclusion in or exclusion from the pools at issue. It is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination. This information has not been furnished in the prior production or in the answers to interrogatories.

Second, Putnam is wrong on Jackson and Whittingham. See p. 2 , supra.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. See pp. 4-5, supra. The scope of the documents required has been drastically limited to only the documents including e-mails

to and from the decision-makers not the 91 comparators.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Fifth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 6:

> In regard to the [91 Comparators] who were not promoted from within Putnam but were hired as a Managing Director or Portfolio Manager on a lateral basis from another entity in the period since January 1, 1999, all documents and things prepared or received by or on behalf of any one or more of the persons participating in the decision making process as to who should be so elected or appointed, and which concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to Svensson [or any of the 91 Comparators]....

Putnam Response No. 6 Putnam objects...unduly vague and ambiguous, overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objects to the Request on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning communication by and among decision makers as to which persons should be brought in from the outside to be appointed as Managing Director or Portfolio Manager are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this category to documents prepared or received by the above-named ten decision makers (Steve Oristaglio, Jack Morgan, Tim

Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan

Miller and Justin Scott) concerning any of the 91 Comparators in regard to being brought

in from the outside for such appointments.  This should not require search of e-mail

accounts of any comparators, but rather review of files and e-mails of only the above

referred to ten decision makers.

Putnam Opposition:

- Ms. Svensson's argument fails to explain "why" employees hired laterally are relevant to one of her claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of 10 former or current Putnam employees, run 91 searches, and review potentially hundreds  of thousands or millions of emails without any basis for believing that relevant documents exist. Thus the request is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, Svensson seeks to know not only the "what" but the "why" of the decisions.

It is the "why" that is key to a determination as to whether Putnam engaged in gender

discrimination.  This information has not been furnished in the prior production or in the

answers to interrogatories.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p.2 , <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-

discovery rules should be applied to this case.  <u>See</u> pp.4-5, <u>supra</u>.  The scope of the

documents required has been drastically limited to only the documents including e-mails

to and from the ten identified persons as decision-makers.

Fourth, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner." That

simply is an assertion without proof. Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Fifth, this request does not seek to try any person's gender discrimination case

other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 7:

All 360s prepared or received by any person at Putnam in or for any one or more of
the reporting periods since January 1, 1999, in regard to Svensson or any one or more of
the [91 Comparators]....

Putnam Response No. 7: To the extent this Request seeks documents relating to the Plaintiff,
such documents [already]... produced.... Putnam objects to the balance...unduly vague
and ambiguous, overbroad, irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence. Putnam further objects on the grounds set forth in
Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

The "360" reviews (everyone in the Investment Management Division reviewing

everyone else) in regard to the 91 Comparators are certainly highly relevant to the

Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to the requested documents

concerning the following 21 males and 12 females of the 91 Comparators: John Boselli,

Brian DeChristopher, Steve Dexter, Nathan Eigerman, Roland Gillis, Peter Hadden, Joe

Joseph, Omid Kamshad, Dave King, Jeff Lindsey, Saba Malak, Paul Marrkand, Paul

Warren, Hugh Mullin, Mike Nance, Justin Scott, Beth Cotner, Lauren Allansmith, Jeanne

Mockard, Margaret Smith, Carmel Peters, Jean Sievert, Karen Korn, Deborah Kuenstner,

Elizabeth McElwee-Jones, Fayval Williams and Erin Spatz.

Putnam Opposition:

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 33 former or current Putnam employees.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Ms. Svensson's argument fails to provide any basis to suggest that documents responsive to this request exist that would be relevant to one of her claims exist.

Svensson's Reply:

First, the "360s" are discrete documents that contain evaluations by top

management, Svensson's peers and comparators and those whom she supervised.

Second, Svensson has limited the scope to 21 males and 12 females.

Fourth, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner." That

simply is an assertion without proof. Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam

Fifth, this request does not seek to try any person's gender discrimination case

other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Svensson Request No. 8:

>All documents and things concerning year end reviews, performance reviews, Investment Division & ISD Human Resources Updates, PDPRs and other documents analyzing or evaluating work performance in the [Investment Management Division], that were prepared or received by any person at Putnam in or for any one or more of the reporting periods since January 1, 1999, in regard to Svensson [and/or] any one or more of the [91 Comparators].

Putnam Response No. 8:  To the extent this Request seeks documents relating to the Plaintiff, such...have been produced.... Putnam objects to the balance...unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objects on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

>The Year end reviews, performance reviews, Investment Division & ISD Human Resources Updates, Performance Development and Planning Reviews (PDPRs) and other documents analyzing or evaluating work performance in the [Investment Management Division] are certainly highly relevant to the Putnam decision making process that is at the heart of this case.
>
>However, Svensson will limit the scope of this request to the 91 Comparators.

Putnam Opposition

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- This request fails to provide any basis to suggest that responsive documents

exist that would be relevant to one of Ms. Svensson's claims.

Svensson's Reply:

First the reviews requested are discrete documents.  They will show, for example, if a male who was promoted or paid more received lower evaluations than Svensson received when she was not promoted or was demoted.

Second, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam

Third, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Svensson Request No. 9:

All documents and things concerning the factual basis(es) of any numerical score in any 360s, year end reviews, performance reviews, Investment Division & ISD Human Resources Updates, PDPRs and/or other documents concerning analysis or evaluation of work performance in the Investment Management Division, that were prepared or received by any person at Putnam in or for any one or more of the reporting periods since January 1, 1999, in regard to Svensson [and/or] any one or more of the [91 Comparators]....

Putnam Response No. 9:  The 360s and performance reviews are self-explanatory; and Putnam does not possess any document or other thing that provides a factual basis of any numerical score for any type of performance review. To the extent…seeks the underlying performance reviews of [Svensson], Putnam has provided those documents in response to the Plaintiff's first request for documents.  To the extent this request seeks the underlying performance reviews of the identified males or females, Putnam objects ...overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objects on the grounds set forth in

Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

The documents concerning the factual bases of any numerical score in any 360s,

year end reviews, performance reviews, Investment Division & ISD Human

Resources Updates, PDPRs and/or other documents concerning analysis or evaluation

of work performance are certainly highly relevant to the Putnam decision making

process that is at the heart of this case.

However, Svensson will limit the scope of this request to the requested

documents concerning the following 21 males and 12 females of the 91 Comparators:

John Boselli, Brian DeChristopher, Steve Dexter, Nathan Eigerman, Roland Gillis, Peter

Hadden, Joe Joseph, Omid Kamshad, Dave King, Jeff Lindsey, Saba Malak, Paul

Marrkand, Paul Warren, Hugh Mullin, Mike Nance, Justin Scott, Beth Cotner, Lauren

Allansmith, Jeanne Mockard, Margaret Smith, Carmel Peters, Jean Sievert, Karen Korn,

Deborah Kuenstner, Elizabeth McElwee-Jones, Fayval Williams and Erin Spatz.

Putnam Opposition

- As Putnam stated in its initial response to this request, no relevant documents
  exist.

Svensson's Reply: If the Putnam opposition is correct as to fact, Svensson will accept a statement

under oath from an authorized Putnam official that none of the requested documents

exist.

Svensson Request No. 10:

All documents and things concerning the organizational structure and/or jurisdiction of the
Investment Management Division as existing at any time or from time to time in the period
since January 1, 1999.

Putnam Response No. 10:  Putnam objects... unduly vague and ambiguous, overbroad,...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence...Putnam further objects to producing documents concerning the period after the Plaintiff's termination [as] such information is unrelated...and/or not reasonably calculated to lead to the discovery of admissible evidence.  Without limiting the foregoing, Putnam will produce organizational charts responsive to the Request.

Svensson's Initial Argument
in Support of Motion to Compel:

Putnam's Tibbetts testified in deposition at p. 48, l. 8 – p. 49, l. 9, that after a certain period, Putnam kept organizational charts on-line.  If this testimony is accurate, the organizational charts on-line which have not previously been produced for the period after January 1, 1999, should now be produced.  If the testimony is not accurate, Svensson will accept a statement under oath that Putnam has already produced all organizational charts for the relevant period, together with any document(s) that identify changes to the organizational structure of IMD after the organizational charts ceased to be prepared.

Putnam Opposition:

Putnam has previously produced all documents relevant to this request.

Svensson's Reply: If the Putnam opposition is correct as to fact, Svensson will accept a statement under oath from an authorized Putnam official that none of the requested documents other than to be specified unredacted Bates numbered ("PRM___"), exist.

Svensson Request No. 11:

All documents and things concerning the administrative reporting relationships within the Investment Management Division as existing at any time or from time to time in the period since January 1, 1999.

Putnam Response No. 11:

To the extent that the Plaintiff seeks information other than that contained in the organizational charts, Putnam objects on the grounds that the Plaintiff has failed to define "administrative

reporting relationship" and...vague, ambiguous, and difficult to understand. Without limiting the foregoing, Putnam will produce the organizational charts responsive to the Request in response to Svensson's Reply:

Svensson's Initial Argument
in Support of Motion to Compel:

Putnam's Tibbetts testified in deposition at p. 48, l. 8 – p.49, l. 9, that after a

certain period, Putnam kept organizational charts on-line.  If this testimony is accurate

the organizational charts on-line which have not previously been produced for the period

after January 1, 1999, should now be produced.  If the testimony is not accurate,

Svensson will accept a statement under oath that Putnam has already produced all

organizational charts for the relevant period, together with any document(s) that identify

changes to the organizational structure of IMD after the organizational charts ceased to

be prepared.

Putnam Opposition:

Putnam has previously produced all documents relevant to this request.

Svensson's Reply: If the Putnam opposition is correct as to fact, Svensson will accept a statement

under oath from an authorized Putnam official that no documents other than to be

specified unredacted Bates numbered ("PRM___") documents exist for the Portfolio

Manager and Managing Director positions.

Svensson Request No. 12:

All documents and things concerning the membership, structure and/or jurisdiction of the Operating Committee as existing at any time or from time to time in the period since January 1, 1999.

Putnam Response No. 12:  Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument

in Support of Motion to Compel:

> The membership, structure and/or jurisdiction of the Operating Committee are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

> However, Svensson will limit the scope of this request to documents that identify the membership and duties and responsibilities of the Operating Committee in regard to promotions, transfers, demotions, compensation or terminations of Svensson and/or any of the 91 Comparators in each year since January 1, 1999.

Putnam Opposition

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner.

- This request would require Putnam to restore the email boxes of scores of former and current employees, and run a searches with no outer limits. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

Svensson's Reply:

> First, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

> Second, obtaining the requested documents is not likely to involve search of e-mails.

Svensson Request No. 13:

All documents and things concerning the membership, structure and/or jurisdiction at any time or from time to time in the period since January 1, 1999, of the [Investment Division Management Committee].

Putnam Response No. 13: Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without limiting the foregoing, Putnam will produce documents responsive to the Request.

Svensson's Initial Argument
in Support of Motion to Compel:

The membership, structure and/or jurisdiction of the Investment Division

Management Committee are certainly highly relevant to the Putnam decision making

process that is at the heart of this case.

However, Svensson will limit the scope of this request to documents that identify

the membership and duties and responsibilities of the Investment Division Management

Committee in regard to promotions, transfers, demotions, compensation or terminations

of Svensson and/or any of the 91 Comparators in each year since January 1, 1999.

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of scores of former and present employees, and run 91 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands of emails, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Second, obtaining documents as to the identity of the "membership and duties and responsibilities" of the committee referred to "in regard to promotions, transfers, demotions, compensation or terminations" is not likely to involve search of e-mails.

Third, such a committee is relevant as it is a key to Putnam decision-making as it affected Svensson.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam

Fifth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. __ , <u>supra</u>.

Svensson Request No. 14:

All documents and things concerning the membership, structure and/or jurisdiction of any committee or entity howsoever known or described, other than the IDMC or the Operating Committee, which had or has any administrative function or responsibility concerning Svensson, any of the [91 Comparators]...at any time or from time to time in the period since January 1, 1999.

Putnam Response No. 14: Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

The membership, structure and/or jurisdiction of any committee or entity howsoever known or described, other than the IDMC or the Operating Committee, which had or has any administrative function or responsibility concerning Svensson, and/or any of the [91 Comparators]are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to documents that identify the membership and duties and responsibilities any such other group of decision makers for decisions in regard to promotions, transfers, demotions, compensation or terminations of Svensson and/or any of the 91 Comparators in each year since January 1, 1999.

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of scores of former and present employees, and run 91 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Second, obtaining documents as to the identity of the "membership and duties and responsibilities" of the committee referred to "in regard to promotions, transfers, demotions, compensation or terminations" is not likely to involve search of e-mails.

Third, such a committee is relevant as it is a key to Putnam decision-making as it affected Svensson.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam

Fifth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Svensson Request No. 15:

All documents and things concerning the actual criteria used by Putnam for deciding whom of Svensson [and/or any of the 91 Comparators] should be or would be demoted in the period since January 1, 2002:

    A.    From Portfolio Manager to any other professional position within the Investment Management Division;

    B.    From ADR to any other professional position within the Investment Management Division;

    C.    From CIO to any other professional position within the Investment

Management Division;

D.    From ADR to Analyst within the Investment Management Division; and/or,

E.    From CIO to ADR within the Investment Management Division.

Putnam Response No. 15: Putnam objects inasmuch as it did not "demote" Svensson..... Putnam has already produced all documents with respect to any transfer of the Plaintiff. Putnam objects to the balance...[as] unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

The criteria used by Putnam in deciding upon the above referred to employment

actions are certainly highly relevant to the Putnam decision making process that is at the

heart of this case.

However, Svensson will limit the scope of this request to the comparators

identified in the argument sections to Nos. 1 and 2, above (22 of the 91 comparators: 16

males: Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman, Peter Hadden,

Shigeki Makino, David Gerber, David King, Jeff Lindsey, Dan Miller, Mike Mufson,

Dave Santos, Tino Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss, and six

females: Beth Cotner, Lauren Allansmith, Debbie Farrell, Carmel Peters. Margaret Smith

and Jeanne Mockard).

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 22 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of scores of former

and present employees, and run 22 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

-

Svensson's Reply:

First, the subject matter of this request is highly relevant as bearing on why it was that Svensson was demoted back to research some years after she had been promoted from research to a PM position, and then fired, while males were not demoted but promoted.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p.2 , <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>. The scope of the documents required has been drastically limited. Svensson seeks in this category only the e-mails of decision-makers in regard to the 22 comparators referred to.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam. Putnam has produced no information as to the basis of the decisions referred to.

Fifth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 16:

>All documents and things concerning the results of the application of the criteria referred to in the immediately preceding category to Svensson, any of the identified males and/or any of the identified females who were Portfolio Managers, ADRs, CIOs or holders of other Investment Management Division investment professional positions.

Putnam Response No. 16:  Putnam objects inasmuch as it did not "demote" Svensson during the relevant time period. Putnam has already produced all documents with respect to any transfer of the Plaintiff. Putnam objects to the balance ...unduly vague and ambiguous, overbroad, and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file with the Court.

Svensson's Initial Argument
in Support of Motion to Compel:

>The results of the application of the criteria used by Putnam in deciding upon the above referred to employment actions are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

>However, Svensson will limit the scope of this request to the comparators identified in the argument sections to Nos. 1 and 2, above (22 of the 91 comparators: 16 males: Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman, Peter Hadden, Shigeki Makino, David Gerber, David King, Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss, and six females: Beth Cotner, Lauren Allansmith, Debbie Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard).

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 22 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of scores of former and present employees, and run 22 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, the subject matter of this request is highly relevant as bearing on why it was that Svensson was demoted back to research some years after she had been promoted from research to a PM position, and then fired, while males were not demoted but promoted.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u> p. 2  , <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  <u>See</u> pp. 4-5, <u>supra</u>.  The scope of the documents required has been drastically limited.  Svensson seeks in this category only the e-mails of decision-makers in regard to the 22 comparators referred to.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.  Putnam has produced no information as to the basis of the decisions referred to.

Fifth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 17:

> In regard to Svensson, any of the [91 Comparators]...who were selected for consideration for possible demotion to take place in the period since January 1, 2002 (whether or not actually demoted) from Managing Director or from Portfolio Manager or other professional position in the Investment Management Division, all documents and things concerning communication between or among the persons participating at any time or from time to time in the decision making process to so consider Svensson, any of the [91 Comparators] and which communication concerned evaluation of, or action or decision made, taken, recommended or proposed to be made or taken, in regard to any of such persons.

Putnam Response No. 17: Putnam objects...as it did not "demote" Svensson during the relevant period. Putnam has already produced all documents with respect to any transfer of the Plaintiff...objects to the balance...unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning communication among the decision makers as to persons selected as potential or possible demotes are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, as this request calls for decision maker documents only, Svensson will limit the scope of this category to the following decision makers: Steve Oristaglio, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks and Brett Browchuk, and the following of the 91 Comparators: Beth Cotner, Carmel Peters, Josh Byrne, Dana Clark, Steve Dexter, Nathan Eigerman, Richard England, Roland Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave King, Jeff Lindsey, Paul Marrkand, Dan Miller, Michael Mufson, David Santos, Tino Sellito, Paul Warren, Justin Scott, Manuel Weiss, Jean Sievert, Margaret Smith, Lauren Allansmith, Susan McCormack, Peter Hadden, Colin Moore, Eric Sorensen, and Michael Yogg.

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 29 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of 7 former and present employees, and run 29 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, the subject matter of this request is highly relevant as bearing on why it was that Svensson was demoted back to research some years after she had been promoted from research to a PM position, and then fired, while males were not demoted but promoted.

Second, Putnam is wrong on Jackson and Whittingham.  See  p. 2 , supra.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  See pp. 4-5, supra.  The scope of the documents required has been drastically limited.  Svensson seeks in this category only the e-mails in regard to the decision-makers referred to above and the limited number of comparators referred to above.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.  Putnam has produced no

information as to the basis of the decisions referred to.

Fifth, this request does not  seek to try any person's gender discrimination case

other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 18:

In regard to Svensson [and/or] any of the [91 Comparators] who were considered for demotion to take place in the period since January 1, 2002 (whether or not actually demoted) from Managing Director of from Portfolio Manager or other professional position in the Investment Management Division, all documents and things concerning communication between or among the persons participating in the decision making process to so consider Svensson, any of the [91 Comparators] and which communication concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to, any of such persons.

Putnam Response No. 18: Putnam objects...as it did not "demote" Svensson...already produced all documents with respect to any transfer of the Plaintiff...objects to the balance...unduly vague and ambiguous, overbroad, and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning communication among the decision makers as to persons

who were considered for demotion are certainly highly relevant to the Putnam decision

making process that is at the heart of this case.

However, as this request calls for decision maker documents only, Svensson will

limit the scope of this category to the following decision makers: Steve Oristaglio, Tim

Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks and Brett Browchuk.

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of 7 former and present employees, and run 91 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, the subject matter of this request is highly relevant as bearing on why it was that Svensson was demoted back to research some years after she had been promoted from research to a PM position, and then fired, while males were not demoted but promoted.

Second, Putnam is wrong on Jackson and Whittingham. See p. 2 , supra.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. See pp. 4-5, supra. The scope of the documents required has been drastically limited. Svensson seeks in this category only the e-mails in regard to the decision-makers referred to above and the limited number of comparators referred to above.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam. Putnam has produced no

information as to the basis of the decisions referred to.

Fifth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 19:

In regard to Svensson, any of the [91 Comparators] who actually were demoted in the period since January 1, 2002, from Managing Director or from Portfolio Manager or other professional position in the Investment Management Division, all documents and things concerning communication between or among the persons participating in the decision making process as to who of Svensson, any of the [91 Comparators] would be demoted, and which communication concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to, any one or more of such persons.

Putnam Response No. 19:

Putnam objects...as it did not "demote" Svensson...already produced all documents with respect to any transfer of the Plaintiff...objects to the balance of this Request...unduly vague and ambiguous, overbroad, and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning communication among the decision makers as to persons who actually were demoted are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, as this request calls for decision maker documents only, Svensson will limit the scope of this category to the following decision makers: Steve Oristaglio, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks and Brett Browchuk.

Putnam Opposition:

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of 7 former and present employees, and run 91 separate searches on each. The request would require Putnam to locate and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

Svensson's Reply:

First, the subject matter of this request is highly relevant as bearing on why it was that Svensson was demoted back to research some years after she had been promoted from research to a PM position, and then fired, while males were not demoted but promoted.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. 2, <u>supra</u>.

Third, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>. The scope of the documents required has been drastically limited. Svensson seeks in this category only the e-mails in regard to the decision-makers referred to above and the limited number of comparators referred to above.

Fourth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam. Putnam has produced no

information as to the basis of the decisions referred to.

Fifth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 20:

Prior to filing her motion to compel, Svensson withdrew category No. 20.

Svensson Request No. 21:

Prior to filing her motion to compel, Svensson withdrew category No. 21.

Svensson Request No. 22:

All documents and things concerning the Putnam policy in the period since January 1, 1999, in regard to persons of the status and position of persons such as Darren Peers (Peers) concerning payment or reimbursement of tuition costs for the MBA degree.

Putnam Response No. 22:  Putnam objects...unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without limiting the foregoing, Putnam will produce documents responsive to the Request.

Svensson's Initial Argument
in Support of Motion to Compel:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, including, without limitation, any cancelled check, or other documents that identify the payor and the circumstances.

Putnam Opposition

- Putnam has previously produced a document responsive to this request, at PRM 2803, which shows NWQ's reimbursement of Peers' MBA tuition.

Svensson's Reply: Whether Darren Peers' testimony in deposition and at trial was or will be

affected by the circumstances of the payment by another of his obligation to reimburse

Putnam for Putnam's payment of Peer's business school tuition education leading to his

MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam

should be required to produce the documents requested, including, without limitation, any

cancelled check, or other documents that identify the payor and the circumstances.

   Page: 39

[0]PRM 2803 is an accounting entry made November 28, 2003, for a credit, weeks after

Peers left Putnam, but it is not the check or other evidence of the payment or the identity

of the payor,  nor has  Putnam produced, as requested, documents concerning

"communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment

Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons)

concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction,

fulfillment or other disposition of, the terms, provisions and/or condition of Peers'

employment at Putnam, or financial obligations."

Svensson Request No. 23:

   All documents and things concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons) concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction, fulfillment or other disposition of, the terms, provisions and/or condition of Peers' employment at Putnam, or financial obligations.

Putnam Response No. 23: Putnam objects...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. ...plaintiff has...deposed Mr. Peers on the subject of this request. Without limiting the foregoing, Putnam will produce responsive documents.

Svensson's Initial Argument

in Support of Motion to Compel:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, including, without limitation, any cancelled check, or other documents that identify the payor and the circumstances.

Putnam Opposition

Putnam has previously produced a document responsive to this request, at PRM 2803, which shows NWQ's reimbursement of Peers' MBA tuition.

Svensson's Reply:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, including, without limitation, any cancelled check, or other documents that identify the payor and the circumstances.

Page: 40

[0]PRM 2803 is an accounting entry made November 28, 2003, for a credit, weeks after Peers left Putnam, but, left Putnam, but it is not the check or other evidence of the payment or the identity of the payor,  nor has  Putnam produced, as requested, documents concerning "communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons) concerning Peers' leaving his employment at Putnam, compliance with, or

satisfaction, fulfillment or other disposition of, the terms, provisions and/or condition of

Peers' employment at Putnam, or financial obligations."

Svensson Request No. 24:

All documents and things concerning the payment to, or reimbursement of, any person
concerning tuition costs of Peers' MBA degree.

Putnam Response No. 24:  Without limiting the foregoing, please <u>See</u> Putnam's response to
Request 23.

Svensson's Initial Argument
in Support of Motion to Compel:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by

the circumstances of the payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education leading to his MBA degree,

makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including, without limitation, any cancelled

check, or other documents that identify the payor and the circumstances.

Putnam Opposition:  Putnam has previously produced a document responsive to this request,
at PRM 2803, which shows NWQ's reimbursement of Peers' MBA tuition.

Svensson's Reply: Whether Darren Peers' testimony in deposition and at trial was or

will be affected by the circumstances of the payment by another of his obligation to

reimburse Putnam for Putnam's payment of Peer's business school tuition education leading

to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and

Putnam should be required to produce the documents requested, including, without

limitation, any cancelled check, or other documents that identify the payor and the

circumstances.

Page: 41

[0]PRM 2803 is an accounting entry made November 28, 2003, for a credit, weeks after Peers left Putnam, but it is not the check or other evidence of the payment or the identity of the payor,  nor has  Putnam produced, as requested, documents concerning "communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons) concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction, fulfillment or other disposition of, the terms, provisions and/or condition of Peers' employment at Putnam, or financial obligations."

Svensson Request No. 25:

All document and things prepared or received by Putnam concerning the satisfaction, fulfillment or other disposition of the terms and conditions of Peers' employment in regard to the payment to, or reimbursement of, any person or tuition costs of Peers' MBA degree.

Putnam Response No. 25:  Without limiting the foregoing, please
See Putnam's response to Request 23.

Svensson's Initial Argument
in Support of Motion to Compel:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, including, without limitation, any cancelled check, or other documents that identify the payor and the circumstances.

Putnam Opposition  Putnam has previously produced a document responsive to this request, at PRM 2803, which shows NWQ's reimbursement of Peers' MBA tuition.

Svensson's Reply: Whether Darren Peers' testimony in deposition and at trial was or will be

affected by the circumstances of the payment by another of his obligation to reimburse

Putnam for Putnam's payment of Peer's business school tuition education leading to his

MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam

should be required to produce the documents requested, including, without limitation, any

cancelled check, or other documents that identify the payor and the circumstances.

Page: 43

[0]PRM 2803 is an accounting entry made November 28, 2003, for a credit, weeks after

Peers left Putnam, but it is not the check or other evidence of the payment or the identity

of the payor,  nor has  Putnam produced, as requested, documents concerning

"communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment

Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons)

concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction,

fulfillment or other disposition of, the terms, provisions and/or condition of Peers'

employment at Putnam, or financial obligations."

Svensson Request No. 26:

> All documents and things concerning communication between or among Putnam,
> any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other
> persons concerning the making, maintaining and/or furnishing by Peers to, or
> receipt by, Putnam, of any diary, notes or other documents or things
> concerning Svensson or any of the identified males and/or of the identified
> females prepared by Peers.

Putnam Response No. 26:  Putnam represents Mr. Peers in connection with this litigation, and
objects to this Request to the extent that it seeks documents protected by the attorney-client
privilege and the work-product doctrine. Furthermore,...already produced all such
information not covered by such privileges in response to the Plaintiff's first request....

Svensson's Initial Argument
in Support of Motion to Compel:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by

the circumstances of the payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education leading to his MBA degree,

makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested to the extent not previously produced, such as

cancelled checks, or other documents that identify the payor, the amount and the

circumstances.

     To the extent claiming privilege due to an attorney-client relationship between

Putnam and Peers, Putnam should be required to amend its privilege log as per the

applicable discovery rules, so the court and Svensson may assess the propriety of the claim.

Insofar as the documents requested t concern communications between Peers and Putnam

prior to any such relationship, a claim of privilege is improper.

Putnam Opposition

- Putnam has previously produced a document responsive to this request, at
  PRM 2803, which shows NWQ's reimbursement of Peers' MBA tuition.

Svensson's Reply: Whether Darren Peers' testimony in deposition and at trial was or will be

affected by the circumstances of the payment by another of his obligation to reimburse

Putnam for Putnam's payment of Peer's business school tuition education leading to his

MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam

should be required to produce the documents requested to the extent not previously

produced, such as cancelled checks, or other documents that identify the payor, the amount

and the circumstances.

     To the extent claiming privilege due to an attorney-client relationship between

Putnam and Peers, Putnam should be required to amend its privilege log as per the

applicable discovery rules, so the court and Svensson may assess the propriety of the claim.

Insofar as the documents requested concern communications between Peers and Putnam

prior to any such relationship, a claim of privilege is improper.

Svensson Request No. 27:

All documents and things concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other persons(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Peers or by any of the identified males and/or any of the identified females who at the time of such communication were no longer in the employ of Putnam.

Putnam Response No.27:  Putnam objects to this request on the grounds that it seeks disclosure of information that is not discoverable due to the attorney-client privilege and the attorney work-product doctrine.

Svensson's Initial Argument
in Support of Motion to Compel:

Whether Darren Peers' testimony in deposition and at trial was or will be affected by

the circumstances of the payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education leading to his MBA degree,

makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested to the extent not previously produced, such as

cancelled checks, or other documents that identify the payor, the amount and the

circumstances.

To the extent claiming privilege due to an attorney-client relationship between

Putnam and Peers, Putnam should be required to amend its privilege log as per the

applicable discovery rules, so the court and Svensson may assess the propriety of the claim.

Insofar as the documents requested t concern communications between Peers and Putnam

prior to any such relationship, a claim of privilege is improper.

To the extent claiming privilege due to an attorney-client relationship privilege

between Putnam and Peers, Putnam should be required to amend its privilege log as per the

applicable discovery rules, so the court and Svensson may assess the propriety of the claim.

Insofar as there documents requested that concern communication between Peers and Putnam prior to any such relationship, a claim of privilege is improper.

Moreover, the category seeks documents concerning NWQ, Peers' subsequent and present employer and concerning persons other than Peers or Putnam.

Putnam Opposition

- Putnam has previously produced a document responsive to this request, at PRM 2803, which shows NWQ's reimbursement of Peers' MBA tuition.

- No documents responsive to the remainder of this request exist.

Svensson's Reply: Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, including, without limitation, any cancelled check, or other documents that identify the payor and the circumstances.

Page: 46

[0]PRM 2803 is an accounting entry made November 28, 2003, for a credit, weeks after Peers left Putnam, but it is not the check or other evidence of the payment or identity of the payor nor has Putnam produced, as requested, documents concerning "communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons) concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction, fulfillment or other disposition of, the terms, provisions and/or condition of Peers' employment at Putnam, or financial obligations."

If the Putnam opposition ("No documents responsive to the remainder of this

request exist") is correct as to fact, Svensson will accept a statement under oath from an

authorized Putnam official that no such documents exist.

Svensson Request No. 28:

All documents and things concerning the factual basis of any numerical or other rating,
evaluation, analysis or score concerning Svensson in connection with consideration of her
by Putnam in the period since January 1, 1999, for promotion; demotion; salary or other
compensation increase; salary or other compensation decrease; and/or other employment
action.

Putnam Response No. 28: Putnam objects...it is incomprehensible to the point that it is
unclear...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition.....
Putnam further objects Plaintiff's failure to define "numerical or other rating" has rendered
the request vague, ambiguous, and difficult to understand. Plaintiff's performance reviews are
self-explanatory; and Putnam does not possess any document or other thing that provides a
factual basis of any numerical score for any type of performance review. To the extent
...seeks the underlying performance reviews of the Plaintiff, Putnam has provided those
documents.... To the extent that the Plaintiff seeks information concerning her promotions,
transfer, or any other employment action, Putnam has already produced such information in
response to the Plaintiff's first request.... To the extent this Request seeks information
relating to the Plaintiff's compensation, Putnam will produce responsive documents.

Svensson's Initial Argument
in Support of Motion to Compel:

To the extent the documents requested have not been  produced or not produced

in unredacted format, the court should order Putnam to produce in unredacted format the

documents requested, including any documents concerning alteration of Plaintiff's

numerical performance ratings between January 1, 1999, and September 15, 2003, the

date of her termination.

Putnam Opposition

- Putnam has previously produced all documents relevant to this request in
  unredacted form.

Svensson's Reply: If the Putnam opposition is correct as to fact, Svensson will accept a statement

under oath from an authorized Putnam official that no documents that concern the change

in Svensson's rating of 4.8 out of 5.0 to a 3.0. other than to be specified unredacted Bates

numbered ("PRM___") documents, exist.

**Svensson Request No. 29:**

The terms and conditions offered by Putnam in the period since January 1, 2002, to any of
the [91 Comparators] in connection with leaving the employ of Putnam by any of such
persons, whether voluntarily or involuntarily.

**Putnam Response No. 29:** Putnam objects...unduly vague and ambiguous, overbroad,...irrelevant
and not reasonably calculated to lead to the discovery of admissible evidence....also...on the
grounds set forth in Putnam's Opposition....

**Svensson's Initial Argument
in Support of Motion to Compel:**

Whether and to "what" extent Putnam has required any of the 91 Comparators

who have left Putnam either voluntarily or involuntarily to agree to conditions that might

affect their testimony makes the subject matter of this category highly relevant, and

Putnam should be ordered to produce such documents.

**Putnam Opposition:**

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel
  Answers to Interrogatories, Putnam does not agree that these individuals are
  Ms. Svensson's legal comparators.

- Ms. Svensson fails to explain "why" the details of other employees' Separation
  Agreements are relevant to her claims. Putnam requires every employee
  leaving Putnam's employ on a voluntary or involuntary basis, and who
  receives a severance package, to sign a Separation Agreement waiving claims
  against the Company.

**Svensson's Reply:**

First, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Second, Svensson is entitled to know whether males were treated more favorably

than females and also to know the magnitude of the impact of the agreement that may

affect the willingness of the person involved to give candid and accurate testimony.

Svensson Request No. 30:

>All documents and things concerning any notes, minutes or other document of or in regard to meetings or decisions of the Putnam trustees in the period May - September 2003 concerning directed brokerage commissions.

Putnam Response No. 30:  Putnam objects... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence ...also...[as] set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

>That Svensson complained at Putnam as to Putnam's policies and practices as to directed brokerage commissions makes the subject matter of this category highly relevant. As her complaints may have affected the decision makers in dealing with Svensson, Svensson and the court should be informed by document production in this regard.

Putnam Opposition

- Ms. Svensson fails to provide any basis for believing that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

Svensson's Reply:

>The issue of "directed commissions" was very controversial at Putnam, pitting the trustees of the funds against top management of the company.  According to the Wall Street Journal, November 26, 2003, p. C1, "Putnam Ends Directed Commissions,"

>>The decision to stop the commission arrangement also came after an internal dispute at Putnam between the company and the trustees of the Putnam funds.  [John} Hill [Chairman of the Board of Trustees] said the Putnam funds board of trustees argued with Putnam management for 12 to 18 months about ending the practice of rewarding favored brokers with commissions.

>Accordingly, Svensson is entitled to know what impact her complaints as to the brokerage

commission issue made just weeks before Putnam took action against her had on Putnam's

decision-making.

 Svensson Request No. 31:

> All documents and things concerning communication between or among, Haldeman, Lasser and any of the Putnam trustees in the period May - September 2003 concerning directed brokerage commissions.

Putnam Response No. 31:  Putnam objects...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

> That Svensson complained at Putnam as to Putnam's policies and practices as to directed brokerage commissions makes the subject matter of this category highly relevant. As her complaints may have affected the decision makers in dealing with Svensson, Svensson and the court should be informed by document production in this regard.

Putnam Opposition

Putnam objects to this Request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Reply:  The issue of "directed commissions" was very controversial at Putnam, pitting the trustees of the funds against top management of the company.  According to the Wall Street Journal, November 26, 2003, p. C1, "Putnam Ends Directed Commissions,"

> The decision to stop the commission arrangement also came after an internal dispute at Putnam between the company and the trustees of the Putnam funds.  [John} Hill [Chairman of the Board of Trustees] said the Putnam funds board of trustees argued with Putnam management for 12 to 18 months about ending the practice of rewarding favored brokers with commissions.

Accordingly, Svensson is entitled to know what impact her complaints as to the brokerage commission issue made just weeks before Putnam took action against her had on Putnam's decision-making.

Svensson Request No. 32:

> All documents and things concerning coverage reports for O'Malley and the [91 Comparators] for each of the reporting periods in 2002, 2003, 2004, 2005 and 2006.

Putnam Response No. 32: Putnam objects...overbroad, burdensome ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file....

Svensson's Initial Argument
in Support of Motion to Compel:

> As this category concerns only Global Equity Research, the comparators for this category are limited to R. J. Bukovac, Mark Bogar, Chris O'Malley, Saba Malak, Michael Yogg, Brian DeChristopher, John Boselli, Lauren Allansmith, Maria Drew, Jeanne Sievert and (if not already produced) Lisa Svensson.

Putnam Opposition

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Ms. Svensson does not craft any argument in response to Putnam's objection.

Svensson's Reply:

> First, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

> Second, the information contained in "coverage reports" will show whether or not one or more males in Global Equity Research had fewer stocks under coverage and thereby were less productive than Svensson.  This information, with other documents and

evidence, will show that to the extent these males nonetheless were rewarded and not

demoted or fired, Putnam engaged in unequal treatment and gender discrimination.

Svensson Request No. 33:

All documents and things concerning communication between or among Stoev and
Morgan or other persons at Putnam in regard to the termination of Stoev's employment
and the stated reasons for it.

Putnam Response No. 33: Putnam objects...overbroad, burdensome... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence, and...[as]...set forth in Putnam's
Opposition.....

Svensson's Initial Argument
in Support of Motion to Compel:

Konstantin Stoev, who resides and works in Zurich, Switzerland, and whose

deposition was taken over the objection of Putnam, pursuant to an order of this court, will

be, through his deposition testimony, a witness for Svensson at the trial.  The documents

requested are highly relevant as they may show that what was testified in depositions or

told to Stoev or others by Putnam officials differed from what they told Stoev, each other

or the Federal immigration authorities in regard to, among other things, Stoev's "green

card" and his termination.

Accordingly the documents requested should be produced.

Putnam Opposition

- Mr. Stoev's greencard application explains Putnam's basis for believing that Mr.
  Stoev should be issued a green card. Mr. Stoev's greencard application thus has no
  colorable relevance to any of the issues raised in the Plaintiff's Amended Complaint.

Svensson's Reply: Konstantin Stoev, who resides and works in Zurich, Switzerland, and whose

deposition was taken over the objection of Putnam, pursuant to an order of this court, will

be, through his deposition testimony, a witness for Svensson at the trial.

Svensson is entitled to know if Stoev's high opinion of Svensson and her

management skills, based upon Svensson's supervision of Stoev while at Putnam, had any

effect on Putnam's decision to terminate Stoev.

Moreover, Page: 53

[0]what Putnam stated and represented to the government in its efforts to have the

Immigration Service issue Stoev a "green card" permitting him, a Bulgarian national, to

stay in the U.S. and work at Putnam, is highly relevant.  Production of the documents

requested may well enable the court and the jury determine if what Putnam told the

government in 2003 about Stoev to assist in his staying in the U.S. and working for

Putnam, is consistent with what its deposition witnesses have testified to about Stoev and

whether it is consistent with what Putnam told Stoev directly concerning termination of

his employment at Putnam.

Svensson Request No. 34:

All documents and things concerning the "green card" application for Stoev that Morgan
filled out.

Putnam Response No. 34:  Putnam objects...overbroad, burdensome and... irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence, and [as]... in Putnam's
Opposition on file with the Court.

Svensson's Initial Argument
in Support of Motion to Compel:

Page: 53

[0]What Putnam stated and represented to the government in its efforts to have the

Immigration Service issue Stoev a "green card" permitting him, a Bulgarian national, to

stay in the U.S. and work at Putnam, is highly relevant.  Production of the documents

requested may well enable the court and the jury determine if what Putnam told the

government in 2003 about Stoev to assist in his staying in the U.S. and working for

Putnam, is consistent with what its deposition witnesses have testified to about Stoev and whether it is consistent with what Putnam told Stoev directly concerning termination of his employment at Putnam.

Putnam Opposition

Putnam objects to this Request on the grounds that it is overbroad, burdensome and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file with the Court.

Svensson's Reply: Konstantin Stoev, who resides and works in Zurich, Switzerland, and whose deposition was taken over the objection of Putnam, pursuant to an order of this court, will be, through his deposition testimony, a witness for Svensson at the trial.

Svensson is entitled to know if Stoev's high opinion of Svensson and her management skills, based upon Svensson's supervision of Stoev while at Putnam, had any effect on Putnam's decision to terminate Stoev.

Moreover, Page: 54

[0]what Putnam stated and represented to the government in its efforts to have the Immigration Service issue Stoev a "green card" permitting him, a Bulgarian national, to stay in the U.S. and work at Putnam, is highly relevant. Production of the documents requested may well enable the court and the jury determine if what Putnam told the government in 2003 about Stoev to assist in his staying in the U.S. and working for Putnam, is consistent with what its deposition witnesses have testified to about Stoev and whether it is consistent with what Putnam told Stoev directly concerning termination of his employment at Putnam.

Svensson Request No. 36:

All documents and things concerning communication between Morgan and Allansmith in the period 2002-2004 concerning comments upon or other feedback as to Allansmith's work performance.

Putnam Response No. 36: Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

The treatment of Svensson and other women at Putnam including Allansmith,

who were terminated or forced out, is highly relevant. The documents requested should

be produced.

Putnam Opposition

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that Ms. Allansmith is Ms. Svensson's legal comparator.

- Putnam has already provided all objective data necessary to determine if Putnam treated women in a discriminatory manner. Ms. Svensson is not a plaintiff in a class action lawsuit.

Svensson's Reply:

First, the documents requested are discrete documents concerning a female

comparator who was terminated and who was a deposition witness in this case.

Second, Putnam is wrong on Jackson and Whittingham. See p. 2 , supra.

Third, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner." That

simply is an assertion without proof. Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Fourth, this request does not seek to try any person's gender discrimination

case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant

to the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 37:

> All documents and things concerning communication in the period 2002-2004 between Morgan and McNamee, Scordato and/or Brooks concerning Svensson's or Allansmith's work performance or reasons or justifications for Svensson or Allansmith leaving Putnam's employment.

Putnam Response No.37:  With respect to the Plaintiff, Putnam has already produced communications between Morgan, McNamee, Scordato and/or Brooks....  With respect to Ms. Allansmith, Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

> The treatment of Svensson and other women at Putnam including Allansmith,

who were terminated or forced out, is highly relevant.  The documents requested should

be produced.

Putnam Opposition

- As Putnam stated in its initial response to this Request, it has already produced documents responsive to this request with respect to Ms. Svensson.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that Ms. Allansmith is Ms. Svensson's legal comparator.

- Putnam has already provided all objective data necessary to determine if Putnam treated women in a discriminatory manner. Ms. Svensson is not a plaintiff in a class action lawsuit

Svensson's Reply:

> First, the documents requested are discrete documents concerning a female

comparator who was terminated and who was a deposition witness in this case.

> Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Third, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Fourth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 38:

All documents and things concerning GER Active Portfolio Performance in the period January 1, 1999, through September 15, 2003, for Svensson [and/or] any of the [91 Comparators].

Putnam Response No. 38: With respect to the Plaintiff, Putnam will produce documents responsive to this Request. With respect to the balance...Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

As the request relates to Global Equity Research, it is limited to Svensson and the following of the 91 Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

The performance in the work place of Svensson as compared to the others is highly relevant.

Putnam Opposition

- Putnam did not terminate Ms. Svensson because she was a poor "stock picker." It removed her supervisory responsibilities when it discovered that she was

mismanaging subordinates. Therefore, this request is not material to any of the issues raised in the Amended Complaint.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 20 former or current Putnam employees. This request would require Putnam to restore the email boxes of 20 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

Svensson's Reply:

First, the test for discovery under Fed. R. Civ. P. 26 is not whether the discovery requested is, in the trial context, evidence that is "material." The test under the rule is simply whether or not the discovery sought is "relevant to the claims or defenses of any party," with the court having the discretion to allow discovery that is "relevant to the subject matter" of the litigation. Whether evidence is material to any given issue at trial is a trial, not a discovery, issue.

Second, the documents sought in all likelihood will show that Putnam terminated the employment of Svensson, an extremely high-performing female investment professional and in doing so did not take into account her actual performance. Svensson was the No. 1 analyst out of 58 in terms of the "alpha per recommendation" measure that was stated at the time to be the most important measurement to Putnam.

Third, it is Svensson's position that her termination on the complaint of two male subordinates for her management "style" was and is pretext. Svensson is entitled to discover Putnam documents that she believes will show that when terminated she was a top performer in the research department. The documents sought will provide objective

data.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  See pp. 4-5, supra

Svensson Request No. 39:

All documents and things concerning comparisons in work performance in the period January 1, 1999, through September 15, 2003, of Svensson,[and/or any of the 91 Comparators].

Putnam Response No. 39:  Putnam has produced all of the Plaintiff's performance reviews.... Putnam objects to the balance of ...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

As the request relates to Global Equity Research, it is limited to Svensson and the following of the 91 Comparators:  Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

The performance in the work place of Svensson as compared to the others is highly relevant.

Putnam Opposition

- Putnam did not terminate Ms. Svensson because she was a poor "stock picker." It removed her supervisory responsibilities when it discovered that she was mismanaging subordinates. Therefore, this request is not material to any of the issues raised in the Amended Complaint.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam

made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 20 former or current Putnam employees.

- This request would require Putnam to restore the email boxes of 20 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

Svensson's Reply:

First, the test for discovery under Fed. R. Civ. P. 26 is not whether the discovery sought is, in the trial context, evidence that is "material." The test under the rule is simply whether or not the discovery sought is "relevant to the claims or defenses of any party," with the court having the discretion to allow discovery that is "relevant to the subject matter" of the litigation. Whether evidence is material to any given issue at trial is a trial, not a discovery, issue.

Second, it is Svensson's position that her termination on the complaint of two male subordinates for her management "style" was and is pretext. Svensson is entitled to discover Putnam documents that she believes will show that when terminated she was a top performer. The documents sought will provide objective data.

Third, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. 2 , <u>supra</u>.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>. The scope of the documents required has been drastically limited to only 20 comparators in GER.

Fifth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Sixth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 40:

All documents and things, including, without limitation Human Resources Action Request and Requisition for Employee documents, concerning the move or transfer of any of the identified males out of GER in the period since January 1, 1999.

Putnam Response No. 40:  Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds...in Putnam's Opposition on file...

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning the move or transfer of any of the males in the 91 Comparators is a highly relevant subject.

However, Svensson will limit the scope of the category to: Bogar, Bukovac, Cervone, DeChristopher, Malak, Marrkand and Mehta.

Putnam Opposition

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made transfers in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 7 former or current Putnam employees.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

Svensson's Reply:

First, the documents requested are discrete documents that are relevant to provide information as to Putnam decision-making as to transfers or moves of males from one position to another to be compared with those affecting Svensson and other females.

Second, Putnam is wrong on Jackson and Whittingham. See p. 2 , supra.

Third, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Svensson Request No. 41:

Prior to filing her motion to compel, Svensson withdrew category No. 41.

Svensson Request No. 42:

Prior to filing her motion to compel, Svensson withdrew category No. 42.

Svensson Request No. 43:

Putnam's Officers' Directories for the years 2003-2005.

Putnam Response No. 43:  The Putnam Officer's Directory is a listing of personal contact information for 1,296 officers of Putnam, and as such, this Request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

As there is a confidentiality order in place, Putnam's objections are meritless. The Directories provide highly relevant information as to the 91 Comparators in regard to their titles and job responsibilities, and enable the comparisons of one person to another and positions and responsibilities from one year to another. As Svensson has such Directories for some of the relevant periods, Svensson limits the scope of this request to the Directories for July-December 2003; July-December 2005; and 2004 through

December.

Putnam Opposition

- Ms. Svensson states she needs Officer Directories because they provide information with regard to the "titles and job responsibilities" of the 91. Ms. Svensson's argument ignores the fact that Putnam has already provided this information, (and much more) that enable Ms. Svensson to compare "one person to another and positions and responsibilities from one year to another."

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

Svensson's Reply:

First, Svensson is entitled to these Directories in order to determine the accuracy and completeness of other information furnished.

Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Third, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Fourth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No.  No 44:

All documents and things concerning bonus worksheets prepared or maintained at any time

or from time to time in the period since January 1, 1999, in regard to the teams of which Svensson, any of the [91 Comparators] were members, including, without limitation, Core International, Core Domestic, Core Growth (later called Large Cap Growth), Value, Specialty Growth and GER.

Putnam Response No. 44:  With respect to the Plaintiff, Putnam will produce documents concerning her bonus worksheets.  With respect to the balance...Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Which of the 91 Comparators did or did not get bonuses in any of the relevant

years and the size of bonuses if received are highly relevant matters to all claims of

Svensson in this case, including, among others, the equal pay claim, as bonuses are

obviously a significant part of total compensation.  The documents requested concerning

the 91 Comparators should be produced.

Putnam Opposition

- Putnam has already unredacted for the 91 previously produced bonus worksheets. Any additional search would be duplicative of Putnam's already extensive production.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 91 former or current Putnam employees.

Svensson's Reply:

First, is Putnam seriously contending that a comparison of bonus decisions as to

males when compared to females is not relevant?

Second, Putnam is wrong on Jackson and Whittingham.  See  p. 2 , supra.

Third, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Fourth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 45:

All documents and things concerning the reports, analyses, measurements and/or rankings of the types included in documents LS-501, 503-506 for any of the [91 Comparators] prepared in the period since January 1, 1999.

Putnam Response No. 45: Putnam objects...overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents such as reports, analyses, measurements and/or rankings are highly relevant as they provide ways to compare one person from another.

Svensson limits the scope of this category to the following 20 of the 91 Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

Putnam Opposition

- This request would require Putnam to restore the email boxes of 20 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is

grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 20 former or current Putnam employees.

- 

Svensson's Reply:

First, the request is limited to reports from decision-makers evaluating 20 people

Second, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. See pp. 4-5, supra. The scope of the documents required has been drastically limited to only the documents including e-mails to and from the ten identified persons as decision-makers.

Third, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Fourth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 46:

All documents and things concerning the reports, analyses, measurements and/or rankings of the types included in document LS-502 for the fund referred to and for the other Putnam funds, which were prepared in the period since January 1, 1999.

Putnam Response No. 46:  Putnam objects...overbroad, burdensome and...irrelevant and not
     reasonably calculated to lead to the discovery of admissible evidence, and on the grounds
     set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

   Documents such as reports, analyses, measurements and/or rankings are highly

relevant as they provide ways to compare one investment professional to another.

   Svensson limits the scope of this category to the following 20 of the 91

Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli,

Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone,

Lannum, Marrkand, Mehta and Norchi.

Putnam Opposition

- This request would require Putnam to restore the email boxes of 20 former or current
  Putnam employees, review potentially hundreds of thousands or millions of
  emails without any basis for believing that relevant documents exist, and thus is
  grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to
  Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal
  comparators.

- Putnam has already provided all objective data necessary to determine if Putnam
  made decisions in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 20 former or
  current Putnam employees.

Svensson's Reply:

   First, the request is limited to reports from decision-makers evaluating 20 people

   Second, the claim as to the e-mails is exaggerated and meritless; and the new e-

discovery rules should be applied to this case.  See pp. 4-5, supra.  The scope of the

documents required has been drastically limited to only  the documents including e-mails

to and from the ten identified persons as decision-makers.

Third, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Fourth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 47:

All documents and things concerning attribution reports of the type included in LS-507-12 for the fund referred to and any other funds, which were prepared in the period since January 1, 1999.

Putnam Response No. 47: Putnam objects. overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents such as the requested attribution reports are highly relevant as they provide bases for comparing one investment professional with another.

Svensson limits the scope of this category to the following 20 of the 91

Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

Putnam Opposition

- Putnam did not terminate Ms. Svensson because she was a poor "stock

picker." It removed her supervisory responsibilities when it discovered that she was mismanaging subordinates. Therefore, this request is not material to any of the issues raised in the Amended Complaint.

- This request would require Putnam to restore the email boxes of 20 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 20 former or current Putnam employees.

Svensson's Reply:

First, the test for discovery under Fed. R. Civ. P. 26 is not whether the discovery sought is, in the trial context, evidence that is "material." The test under the rule is simply whether or not the discovery sought is "relevant to the claims or defenses of any party," with the court having the discretion to allow discovery that is "relevant to the subject matter" of the litigation. Whether evidence is material to any given issue at trial is a trial not a discovery issue.

Second, the documents sought (attribution reports) in all likelihood will show that Putnam terminated the employment of Svensson, an extremely high-performing female investment professional and in doing so did not take into account her actual performance. Svensson was the No. 1 analyst out of 58 in terms of the "alpha per recommendation" measure that was the most important measurement to Putnam.

Third, it is Svensson position that her termination on the complaint of two male

subordinates for her management "style" was and is pretext.  Svensson is entitled to

discover Putnam documents that she believes will show that when terminated she was a

top performer in the research department.  The documents sought will provide objective

data.

Fourth, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Fifth, the claim as to the e-mails is exaggerated and meritless; and the new e-

discovery rules should be applied to this case.  <u>See</u> pp. 4-5, <u>supra</u>.  The scope of the

documents required has been limited drastically.

Sixth, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner."  That

simply is an assertion without proof.  Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Seventh, this request does not  seek to try any person's gender discrimination

case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant

to the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 48:

All documents and things concerning sector level performance index ranks of the type
included in LS-513-515 prepared in the period since January 1, 1999.

Putnam Response No. 48: Putnam objects...overbroad, burdensome and irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition on file....

Svensson's Initial Argument
in Support of Motion to Compel:

Documents such as the requested sector level performance index ranks are highly

relevant as they provide bases for comparing one with another.

Svensson limits the scope of this category to the following 20 of the 91

Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli,

Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone,

Lannum, Marrkand, Mehta and Norchi.

Putnam Opposition

- Putnam did not terminate Ms. Svensson because she was a poor "stock picker." It removed her supervisory responsibilities when it discovered that she was mismanaging subordinates. Therefore, this request is not material to any of the issues raised in the Amended Complaint.

- This request would require Putnam to restore the email boxes of 20 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 20 former or current Putnam employees.

Svensson's Reply:

First, the test for discovery under Fed. R. Civ. P. 26 is not whether the discovery

sought is, in the trial context, evidence that is "material." The test under the rule is

simply whether or not the  discovery sought is "relevant to the claims or defenses of any

party," with the court having the discretion to allow discovery that is "relevant to the

subject matter" of the litigation. Whether evidence is material to any given issue at trial is

a trial not a discovery issue.

Second, the documents sought (sector level performance index ranks) in all likelihood will show that Putnam terminated the employment of Svensson, an extremely high-performing female investment professional and in doing so did not take into account her actual performance. Svensson was the No. 1 analyst out of 58 in terms of the "alpha per recommendation" measure that was the most important measurement to Putnam.

Third, it is Svensson position that her termination on the complaint of two male subordinates for her management "style" was and is pretext. Svensson is entitled to discover Putnam documents that she believes will show that when terminated she was a top performer in the research department. The documents sought will provide objective data.

Fourth, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. 2 , <u>supra</u>.

Fifth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>. The scope of the documents required has been limited drastically.

Sixth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Seventh, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 49:

All documents and things concerning scorecards and second scorecards in regard to O'Malley, other MBAs and any of the [91 Comparators] prepared or maintained in the period since January 1, 1999.

Putnam Response No. 49: Putnam objects...overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

If the documents referenced in Morgan's testimony at p. 95, l. 24 - p. 96, l. 6 are

different from documents in the format of documents LS 503-506, then such documents

should be produced as they enable comparisons between one person and another.  They

should be produced.

Svensson limits the scope of the category to the following of the 91 Comparators:

Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew,

Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand,

Mehta and Norchi.

Putnam Opposition

- Putnam did not terminate Ms. Svensson because she was a poor "stock picker." It removed her supervisory responsibilities when it discovered that she was mismanaging subordinates. Therefore, this request is not material to any of the issues raised in the Amended Complaint.

- This request would require Putnam to restore the email boxes of 20 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 20 former or current Putnam employees.

Svensson's Reply:

First, the test for discovery under Fed. R. Civ. P. 26 is not whether the discovery sought is, in the trial context, evidence that is "material." The test under the rule is simply whether or not the discovery sought is "relevant to the claims or defenses of any party," with the court having the discretion to allow discovery that is "relevant to the subject matter" of the litigation. Whether evidence is material to any given issue at trial is a trial not a discovery issue.

Second, the documents sought (concerning scorecards and second scorecards) in all likelihood will show that Putnam terminated the employment of Svensson, an extremely high-performing female investment professional and in doing so did not take into account her actual performance. The document in all likelihood will sow that Svensson was one of the top performers.

Third, it is Svensson position that her termination on the complaint of two male subordinates for her management "style" was and is pretext. Svensson is entitled to discover Putnam documents that she believes will show that when terminated she was a top performer in the research department. The documents sought will provide objective data.

Fourth, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. 2 , <u>supra</u>.

Fifth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>. The scope of the documents required has been limited drastically.

Sixth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Seventh, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, If the Putnam opposition is correct as to fact, Svensson will accept a statement under oath from an authorized Putnam official that the documents described by Morgan do not exist.

Svensson Request No. 50:

The "notes" prepared by Tibbetts, which, "according to the Putnam privilege log, concerned "female partners."

Putnam Response No. 50:

Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the

court to assess the applicability of the claims.  Svensson requests the court after the

disclosure of this information to review in camera the withheld documents to assist the

court in making its determinations as to these categories.

Putnam Opposition

- Putnam continues to respond that because these documents were either prepared for, or directed to, Putnam's counsel, they are within the protection of the attorney-client and work-product privileges.

Svensson's Reply:

Svensson requests the court first to order Putnam to disclose to Svensson and the

court the relevant information necessary to enable Svensson and the court to assess the

applicability of the claims.  Svensson requests the court after the disclosure of this

information to review in camera the withheld documents to assist the court in making its

determinations as to these categories.

Svensson Request No. 51:

The "undated" "notes" by an "unknown" author to an unidentified recipient, which, according to the Putnam privilege log, concerns "Svensson employment history."

Putnam Response No. 51:  Putnam objects to this Request on the grounds these documents were created by Putnam's Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus, are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log

has Putnam made the showings required to support the claims of attorney-client privilege

or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to

Svensson and the court the relevant information necessary to enable Svensson and the

court to assess the applicability of the claims.  Svensson requests the court after the

disclosure of this information to review in camera the withheld documents to assist the

court in making its determinations as to these categories.

Putnam Opposition

- Putnam continues to respond that because these documents were either prepared for, or directed to, Putnam's counsel, they are within the protection of the attorney-client and work-product privileges.

Svensson's Reply:

Svensson requests the court first to order Putnam to disclose to Svensson and the

court the relevant information necessary to enable Svensson and the court to assess the

applicability of the claims.  Svensson requests the court after the disclosure of this

information to review in camera the withheld documents to assist the court in making its

determinations as to these categories.

Svensson Request No. 52:

The 1998 "maternity leave summary" prepared, according to the Putnam privilege log, by an "unknown" author for an unidentified recipient.

Putnam Response No. 52: Putnam objects to this Request on the grounds these documents were created by Putnam's Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus, are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log

has Putnam made the showings required to support the claims of attorney-client privilege

or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to

Svensson and the court the relevant information necessary to enable Svensson and the

court to assess the applicability of the claims.  Svensson requests the court after the

disclosure of this information to review in camera the withheld documents to assist the

court in making its determinations as to these categories.

Putnam Opposition

Putnam objects to this Request on the grounds these documents were created by Putnam's
Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus,
are protected by the attorney-client privilege and the work-product doctrines, as so noted
in Putnam's privilege log.

Svensson's Reply:

Svensson requests the court first to order Putnam to disclose to Svensson and the

court the relevant information necessary to enable Svensson and the court to assess the

applicability of the claims.  Svensson requests the court after the disclosure of this

information to review in camera the withheld documents to assist the court in making its

determinations as to these categories.

Svensson Request No. 53:

The September 3, 2003, "e-mail re:  litigation forwarded with e-mail from [Attorney]

Rodrigues..." authored by McNamee and sent to the recipient, Brooks, as referred to in

the Putnam privilege log but redacted so as to not disclose only the words used by the

author or Attorney Rodrigues in a "communication," within the meaning of U.S. v.

United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), each other, but

disclosing the other words and information in either of the e-mails, including, without

limitation, the identity of the author, the identity of the recipient(s), the date and time of

the transmission and the words in the subject line.

Putnam Response No. 53:  Putnam objects to this Request on the grounds that such documents are

-                                              78

protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Putnam Opposition

Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

Svensson's Reply:

Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Svensson Request No. 54:

The August 27, 2003, "e-mail re: Draft termination agreement" from author Hadley to recipients McNamee and Attorney Rodrigues, as referred to in the Putnam privilege log but redacted so as to not disclose the words used by the author or Attorney Rodrigues in a

"communication," within the meaning of U.S. v. United Shoe Machiner[y] Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), with each other but disclosing the other words and information in the e-mail, including, without limitation, the identity of the author, the identity of the recipient(s), the date and time of the transmission, the words in the subject line and the attachment.

Putnam Response No. 54:  Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims.  Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Putnam Opposition

Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log

Svensson's Reply: Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims.  Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Svensson Request No. 55:

All documents and things concerning the amounts and types of compensation, including, without limitation, salary and bonus, paid or payable to Svensson [and the 91 Comparators] for each of the years 1999-2004.

Putnam Response No. 55: With respect to the Plaintiff, Putnam has already produced documents....  With respect to the balance ...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Total compensation paid or payable over time whether in cash, securities other things of value to Svensson and the 91 Comparators is highly relevant as, among other things, evidencing comparisons made by Putnam between and among the 91 Comparators.  The information requested is relevant to, among others, the Svensson equal pay claim.  The documents that should be produced in response to this category include documents evidencing the total compensation including bonus compensation paid or payable to any of the 91 Comparators whether he or she was a participant in the partners' pool, so-called, and/or in the A&P pool, so-called, plus any compensation derived from Putnam equity partnership units or stock options, or MMC restricted stock or stock options of the parent holding company ("MMC").

Putnam Opposition

- Putnam has already produced the salary and bonus information for each of the 91 for years 1999 - 2003. Ms. Svensson cannot have "a second bite at the apple" and now request compensation information, such as equity, that she did not initially request.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators

Svensson's Reply:

First, Svensson's request for documents concerning total compensation when the

Putnam opposition admits that it previously produced only salary and bonus information not including stock is not an improper "second bite at the apple." Svensson's request for documents concerning total compensation was made within the discovery period.

While Putnam has furnished some information as to total compensation, strangely, it appears to ask the court for permission to withhold all such information. On September 29, 2006, in her notice to Putnam, Svensson demonstrated the deficiencies as to total compensation as follows:

Total compensation needed in full for every year.

"what" has been provided at PRM 4135-4144 is only salary and bonus for the 91. However, total compensation has not been furnished in all respects as Putnam has furnished total compensation information for only some years and for only for some of the 91. Complete production of this information for all concerned and for all years 1999 - 2003 is needed. "what" was provided is summarized as follows:

1999 (79 Comparators as of 12/31/99):

> PRM 3192-3195
> 29 Comparators given
> "Top 50" Total Compensation

2000 (82 Comparators as of 12/31/00):

> PRM 3937-3956
> 66 Comparators given
> Total Comp >400K, no
> Partners included

2001 (81 Comparators as of 12/31/01):

> PRM 3196-3220
> 71 Comparators given
> Total Compensation
> Sorted High to Low

2002 (71 Comparators as of 12/31/02):

PRM 3221-3226
43 Comparators given
"Top 100" Total Incentive
Recipients

2003 (61 Comparators as of 12/31/03):

No documents

Second, Second, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Svensson Request No. 56:

All documents and things identifying any of the [91 Comparators who] left the employ of

Putnam on a voluntary basis in the period 1999 to date.

Putnam Response No. 56:  Putnam objects to this Request on the grounds that it is overbroad,
burdensome and seeks information that is irrelevant and not reasonably calculated to lead to
the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on
file with the Court.

Svensson's Initial Argument
in Support of Motion to Compel:

Category Nos. 56-60 seek documents concerning the circumstances of and

reasons for any one or more of the 91 Comparators who left their employment at Putnam

whether on an involuntary or voluntary basis.  This is a highly relevant area of inquiry, as

the reasons and circumstances affecting Svensson must be compared to those affecting

others of the 91 Comparators who left Putnam, either "voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who

departed Putnam during the period since January 1, 1999, and to those instances in which

the decision to depart was initiated by Putnam unless Svensson contends that the decision

was initiated by the comparator.

Svensson expects that included as investment professionals whose departure was

initiated by Putnam are, at least, the following of the 91 Comparators:  Allansmith,

Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

Putnam Opposition

- Putnam has already produced worksheets detailing which of the 91 left Putnam's employ, and whether it was on a voluntary or involuntary basis.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam terminated employees in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 14 former Putnam employees.

- This request would require Putnam to restore the email boxes of 14 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- Putnam notes the irony that Ms. Svensson only is concerned with females she believes were involuntarily terminated from Putnam, even though the list provided by Putnam names twice as many men among the 91 who were involuntarily terminated.

Svensson's Reply:

First, whether terminations were voluntary or involuntary is a question of fact.  Putnam has been neither consistent nor accurate in responding to discovery requests about terminations.  For example, on the one hand, Haldeman testified at p. 147, ll. 22-24, that "Steve [Oristaglio] and I concluded that it would probably be best if Paul [Warren] moved on and I was the one who decided that I would talk to him."  On the other hand, Putnam document PRM 4134 produced as part of its answers under oath to

Svensson's Interrogatories, states that Warren's departure was voluntary ("Vol").

Second, the "lists" referred to do not furnish the reasons for the terminations. The lists tell the "what" and not the "why"; and it is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination. The "why" has not been furnished in the prior production or in the answers to interrogatories. The circumstances of the terminations of other females and of the males are relevant to showing whether or not Svensson was the victim of gender discrimination

Third, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. 2 , <u>supra</u>.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>. The scope of the documents required has been drastically limited. Svensson seeks in this category only the e-mails of the decision-makers in regard to the comparators who left.

Fifth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Sixth, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, the issue is not absolute numbers, it is the percentage that counts. It is no surprise that in terms of absolute numbers there were more male terminations than of females since the males far outnumbered the females, when Putnam downsized after the

public scandal (which came to notice after Svensson was fired).

Svensson Request No. 57:

All documents and things concerning the circumstances and reasons for the voluntary terminations referred to in the immediately preceding category.

Putnam Response No. 57:  Putnam objects... overbroad, burdensome and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Category Nos. 56-60 seek documents concerning the circumstances of and reasons for any one or more of the 91 Comparators leaving of the employ of Putnam whether involuntary or voluntary.  This is a highly relevant are of inquiry as the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either "voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator.

Svensson expects that included as investment professional whose departure initiated by Putnam are at least the following of the 91 Comparators:  Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

Putnam Opposition

- Putnam has already produced worksheets detailing which of the 91 left Putnam's employ, and whether it was on a voluntary or involuntary basis.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam terminated employees in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 14 former Putnam employees.

- This request would require Putnam to restore the email boxes of 14 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- Putnam notes the irony that Ms. Svensson only is concerned with females she believes were involuntarily terminated from Putnam, even though the list provided by Putnam names twice as many men among the 91 who were involuntarily terminated.

Svensson's Reply:

First, whether terminations were voluntary or involuntary is a question of fact. Putnam has been neither consistent nor accurate in responding to discovery requests about terminations. For example, on the one hand, Haldeman testified at p. 147, ll. 22-24, that "Steve [Oristaglio] and I concluded that it would probably be best if Paul [Warren] moved on and I was the one who decided that I would talk to him." On the other hand, Putnam document PRM 4134 produced as part of its answers under oath to Svensson's Interrogatories, states that Warren's departure was voluntary ("Vol").

Second, the "lists" referred to do not furnish the reasons for the terminations. The lists tell the "what" and not the "why"; and it is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination. The "why" has not been furnished in the prior production or in the answers to interrogatories. The circumstances

of the terminations of other females and of the males are relevant to showing whether or not Svensson was the victim of gender discrimination

Third, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  <u>See</u> pp. 4-5, <u>supra</u>.  The scope of the documents required has been drastically limited to only the documents the comparators who left.

Fifth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Sixth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, the issue is not absolute numbers, it is the percentage that counts. It is no surprise that in terms of absolute numbers there were more male terminations than of females since the males far outnumbered the females and  especially when Putnam downsized after the public scandal (which came to notice after Svensson was fired).

Svensson Request No. 58:

All documents and things identifying any of the identified males and any of the identified females who left the employ of Putnam on an involuntary basis in the period 1999 to date.

Putnam Response No. 58: Putnam objects to this Request on the grounds that the Request is overbroad, burdensome and seeks information that is irrelevant and not reasonably

calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file with the Court.

Svensson's Initial Argument
in Support of Motion to Compel:

Category Nos. 56-60 seek documents concerning the circumstances of and reasons for any one or more of the 91 Comparators leaving of the employ of Putnam whether involuntary or voluntary. This is a highly relevant are of inquiry as the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either "voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator.

Svensson expects that included as investment professional whose departure initiated by Putnam are at least the following of the 91 Comparators: Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams. If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

Putnam Opposition

- Putnam has already produced worksheets detailing which of the 91 left Putnam's employ, and whether it was on a voluntary or involuntary basis.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam terminated employees in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 14 former Putnam employees.

- This request would require Putnam to restore the email boxes of 14 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- Putnam notes the irony that Ms. Svensson only is concerned with females she believes were involuntarily terminated from Putnam, even though the list provided by Putnam names twice as many men among the 91 who were involuntarily terminated.

Svensson's Reply:

First, whether terminations were voluntary or involuntary is a question of fact. Putnam has been neither consistent nor accurate in responding to discovery requests about terminations. For example, on the one hand, Haldeman testified at p. 147, ll. 22-24, that "Steve [Oristaglio] and I concluded that it would probably be best if Paul [Warren] moved on and I was the one who decided that I would talk to him." On the other hand, Putnam document PRM 4134 produced as part of its answers under oath to Svensson's Interrogatories, states that Warren's departure was voluntary ("Vol").

Second, the "lists" referred to do not furnish the reasons for the terminations. The lists tell the "what" and not the "why"; and it is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination. The "why" has not been furnished in the prior production or in the answers to interrogatories. The circumstances of the terminations of other females and of the males are relevant to showing whether or not Svensson was the victim of gender discrimination

Third, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>. <u>See</u> p. 2 , <u>supra</u>.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-

discovery rules should be applied to this case.  <u>See</u> pp. 4-5, <u>supra</u>.  The scope of the

documents required has been drastically limited.  Svensson seeks in this category only

the e-mails limited to the comparators who left.

Fifth, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner."  That

simply is an assertion without proof.  Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Sixth, this request does not  seek to try any person's gender discrimination case

other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, the issue is not absolute numbers, it is the percentage that counts.  It is no

surprise that in terms of absolute numbers there were more male terminations than of

females since the males far outnumbered the females when Putnam downsized after the

public scandal (which came to notice after Svensson was fired).

Svensson Request No. 59:

All documents and things concerning the circumstances and reasons for the involuntary
terminations referred to in the immediately preceding category.

Putnam Response No. 59:  Putnam objects...overbroad, burdensome and...irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

Svensson's Initial Argument
in Support of Motion to Compel:

Category Nos. 56-60 seek documents concerning the circumstances of and

reasons for any one or more of the 91 Comparators leaving of the employ of Putnam

whether involuntary or voluntary.  This is a highly relevant are of inquiry as the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either "voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator.

Svensson expects that included as investment professional whose departure initiated by Putnam are at least the following of the 91 Comparators:  Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

Putnam Opposition

- Putnam has already produced worksheets detailing which of the 91 left Putnam's employ, and whether it was on a voluntary or involuntary basis.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam terminated employees in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 14 former Putnam employees.

- This request would require Putnam to restore the email boxes of 14 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- Putnam notes the irony that Ms. Svensson only is concerned with females she believes were involuntarily terminated from Putnam, even though the list provided by Putnam names twice as many men among the 91 who were involuntarily terminated.

Svensson's Reply:

First, whether terminations were voluntary or involuntary is a question of fact. Putnam has been neither consistent nor accurate in responding to discovery requests about terminations.  For example, on the one hand, Haldeman testified at p. 147, ll.  22-24, that "Steve [Oristaglio] and I concluded that it would probably be best if Paul [Warren] moved on and I was the one who decided that I would talk to him."  On the other hand, Putnam document PRM 4134 produced as part of its answers under oath to Svensson's Interrogatories, states that Warren's departure was voluntary ("Vol").

Second, the "lists" referred to do not furnish the reasons for the terminations.  The lists tell the "what" and not the "why"; and it is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination.  The "why" has not been furnished in the prior production or in the answers to interrogatories.  The circumstances of the terminations of other females and of the males are relevant to showing whether or not Svensson was the victim of gender discrimination

Third, Putnam is wrong on Jackson and Whittingham.  See  p. 2 , supra.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  See pp. 4-5, supra.  The scope of the documents required has been drastically limited.  Svensson seeks in this category only the e-mails limited to the comparators who left.

Fifth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That

simply is an assertion without proof.  Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Sixth, this request does not  seek to try any person's gender discrimination case

other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, the issue is not absolute numbers, it is the percentage that counts. It is no

surprise that in terms of absolute numbers there were more male terminations than of

females since the males far outnumbered the females and  especially when Putnam

downsized after the public scandal (which came to notice after Svensson was fired).

**Svensson Request No. 60:**

All documents and things concerning any severance package agreed to buy Putnam and any
of the [91 Comparators] in regard to his or her leaving the employ of Putnam (whether
voluntarily or involuntarily) in the period 1999 to date.

**Putnam Response No. 60:**   With respect to the Plaintiff, Putnam has already produced
documents....  With respect to the balance ...overbroad, burdensome and irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence, and on the grounds...in
Putnam's Opposition....and duplicative of the documents sought in Svensson's Reply:

**Svensson's Initial Argument**
**in Support of Motion to Compel:**

Category Nos. 56-60 seek documents concerning the circumstances of, and

reasons for, any one or more of the 91 Comparators leaving of the employ of Putnam,

whether on a voluntary or involuntary basis.  This is a highly relevant area of inquiry as

the reasons and circumstances affecting Svensson must be compared to those affecting

others of the 91 Comparators who left Putnam either "voluntarily" or "involuntarily."

Plaintiff will limit the respective categories to any of the 91 Comparators who

departed Putnam unless Putnam contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose leaving was initiated by Putnam are at least the following of the 91 Comparators: Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams. If Putnam contends otherwise, then Putnam also should be ordered to produce documents evidencing that the decision to depart was initiated by the comparator.

Putnam Opposition

- Putnam has already produced worksheets detailing which of the 91 left Putnam's employ, and whether it was on a voluntary or involuntary basis.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Putnam has already provided all objective data necessary to determine if Putnam terminated employees in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 14 former Putnam employees.

- This request would require Putnam to restore the email boxes of 14 former or current Putnam employees, review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist, and thus is grossly overbroad and burdensome for the reasons stated in this Introduction.

- Putnam notes the irony that Ms. Svensson only is concerned with females she believes were involuntarily terminated from Putnam, even though the list provided by Putnam names twice as many men among the 91 who were involuntarily terminated.

-

Svensson's Reply:

First, whether terminations were voluntary or involuntary is a question of fact.

Putnam has been neither consistent nor accurate in responding to discovery requests

about terminations.  For example, on the one hand, Haldeman testified at p. 147, ll.  22-24, that "Steve [Oristaglio] and I concluded that it would probably be best if Paul [Warren] moved on and I was the one who decided that I would talk to him."  On the other hand, Putnam document PRM 4134 produced as part of its answers under oath to Svensson's Interrogatories, states that Warren's departure was voluntary ("Vol").

Second,  the "lists" referred to do not furnish the reasons for the terminations.  The lists tell the "what" and not the "why"; and it is the "why" that is key to a determination as to whether Putnam engaged in gender discrimination.  The "why" has not been furnished in the prior production or in the answers to interrogatories.  The circumstances of the terminations of other females and of the males are relevant to showing whether or not Svensson was the victim of gender discrimination

Third, Putnam is wrong on <u>Jackson</u> and <u>Whittingham</u>.  <u>See</u>  p. 2 , <u>supra</u>.

Fourth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  <u>See</u> pp. 4-5,  <u>supra</u>.  The scope of the documents required has been drastically limited.  Svensson seeks in this category only the e-mails limited to the comparators who left.

Fifth, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Sixth, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, the issue is not absolute numbers, it is the percentage that counts. It is no surprise that in terms of absolute numbers there were more male terminations than of females since the males far outnumbered the females and especially when Putnam downsized after the public scandal (which came to notice after Svensson was fired).

Svensson Request No. 61:

All documents and things concerning communication between or among Putnam, any affiliate of Putnam, and Landes, Eckland and/or Oristaglio/or any other person(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Landes, Eckland and/or Oristaglio.

Putnam Response No. 61:  Putnam objects...not discoverable due to the attorney-client privilege and the attorney work-product doctrine.

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its response to this category nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims.  Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to this category.

Putnam Opposition:

- Putnam continues to respond that because these documents were either prepared for, or directed to, Putnam's counsel, they are within the protection of the attorney-client and work-product privileges.

- Messrs. Landes, Eckland and Oristaglio are no longer in Putnam's employ.

Therefore, this request calls for Putnam to restore and search each of its 3000 employees electronic mailboxes to find documents (that may or may not exist) that may be responsive. So far as Putnam is aware, no one from the Company has communicated with Messrs. Eckland or Landes regarding testifying on deposition or at trial. Any communication with Mr. Oristaglio was either a logistical email to arrange for his testimony, or a substantive email that rendered legal advice.

Svensson's Reply:

First, Svensson has reason to believe that the above contention that there has been no contact with Eckland as to testifying is not true.

Second, Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to this category.

Svensson Request No.62:

All documents and things concerning identifying or stating the total bonus pool available to Putnam for each year since January 1, 1999.

Putnam Response No.62: Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

The information sought is relevant because it is necessary to know the total bonus pool available for each year in order to enable the court and the jury at trial to determine if Putnam acted lawfully in its decisions to divide up the bonus pool among the 91 Comparators, and to know if there was any additional money or anything of value available from the total that might have been or should have been distributed to one or more of the 91 Comparators.

Putnam Opposition

- Putnam has already provided all objective data necessary to determine if Putnam awarded bonuses in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 91 present and former Putnam employees.

- This request fails to provide any basis to suggest that responsive documents exist would be relevant to one of Ms. Svensson's claims. Ms. Svensson fails to explain how the total dollar amount of the bonus pool is relevant to proof of discrimination against her.

Svensson's Reply:

First, the documents sought are relevant because it is necessary to know both the total money available in "A&P" bonus pool for the investment professionals as well as the additional money available in the bonus pool for partners to determine if there has been any discrimination in the decision to divide up the funds available.

Second, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Third, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 63.

All documents and things concerning identifying or stating the total bonus pool available to the Investment Management Division for each year since January 1, 1999.

Putnam Response No. 63:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably

calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

> The information sought is relevant because it is necessary to know the total bonus pool available for each year in order to be enable the court to determine if Putnam acted lawfully in its decisions to divide up the bonus pool among the 91 Comparators.

Putnam Opposition

- Putnam has already provided all objective data necessary to determine if Putnam awarded bonuses in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 91 present and former Putnam employees.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

- Ms. Svensson fails to explain how the total dollar amount of the bonus pool is relevant to proof of discrimination against her.

Svensson's Reply:

> First, the documents sought are relevant because it is necessary to know both the total money available in "A&P" bonus pool for the investment professionals as well as the additional money available in the bonus pool for partners to determine if there has been any discrimination in the decision to divide up the funds available.

> Second, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

> Third, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 64:

> All documents and things concerning the amounts of the bonuses allocated for each year since January 1, 1999, to such of the [91 Comparators] receiving a bonus.

Putnam Response No. 64: Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

> The information sought is relevant because it is necessary to know the total bonus

pool available for each year in order to be enable the court to determine if Putnam acted

lawfully in its decisions to divide up the bonus pool among the 91 Comparators.

Putnam Opposition

- Putnam has already provided all objective data necessary to determine if Putnam awarded bonuses in a discriminatory manner.

- This request seeks to improperly try the gender discrimination cases of 91 present and former Putnam employees.

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claims.

Svensson's Reply:

> First, the documents sought are relevant because it is necessary to know both the

total money available in "A&P" bonus pool for the investment professionals as well as

the additional money available in the bonus pool for partners to determine if there has

been any discrimination in the decision to divide up the funds available.

> Second, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner."  That

simply is an assertion without proof. Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Third, this request does not seek to try any person's gender discrimination case

other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to

the claims" she has made as to disparate treatment and disparate impact and, with the

discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 64:

All documents and things concerning the amounts of the bonuses allocated for each year
since January 1, 1999, to such of the [91 Comparators] receiving a bonus.

Putnam Response No. 64

Putnam objects to this Request on the grounds that the Request is overbroad,
burdensome and seeks information that is irrelevant and/or not reasonably calculated
to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's
Opposition on file with the Court.

Svensson's Initial Argument
in Support of Motion to Compel:

The information sought is relevant because it is necessary to know the total bonus

pool available for each year in order to be enable the court to determine if Putnam acted

lawfully in its decisions to divide up the bonus pool among the 91 Comparators.

Putnam Opposition

- Putnam has already provided all objective data necessary to determine if Putnam
  awarded bonuses in a discriminatory manner. This request seeks to improperly try
  the gender discrimination cases of 91 present and former Putnam employees.

- This request fails to provide any basis to suggest that responsive documents exist
  that would be relevant to one of Ms. Svensson's claims.

Svensson's Reply:

First, the documents sought are relevant because it is necessary to know both the

total money available in the "A&P" bonus pool for the investment professionals as well as the additional money available in the bonus pool for partners to determine if there has been any discrimination in the decision to divide up the funds available.

Second, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner."  That simply is an assertion without proof.  Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Third, this request does not  seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Svensson Request No. 65:

The "anonymous" letter concerning Warren, which is referred to at p. 357 of the McNamee deposition.

Putnam Response No. 65:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

The conduct of Paul Warren, one of the 91 Comparators, described in the letter referred to (see McNamee deposition p. 357 ("...And "what" bad behavior over the years did it allege Paul Warren had [engaged in]?  That he frequented strip clubs...[a]nd that he over -- he utilized entertainment from brokers excessively and accepted gifts from brokers excessively")) is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson.

Putnam Opposition

- Mr. Warren, like Ms. Svensson, was terminated. By definition, therefore, Mr. Warren is not a legal comparator of Ms. Svensson.

- The conduct for which Putnam discharged Ms. Svensson must be nearly identical to that engaged in by an employee outside the protected class whom Putnam retained. Conward v. The Cambridge, School Committee, 171 F.3d 12, 19 (1st Cir.1999). Because mismanaging subordinates and the behavior of Mr. Warren were not "nearly identical" this request is not legally relevant.

Svensson's Reply:

First, the Putnam characterization of Conward is incorrect. The standard is not "nearly identical;" it is as serious or more serious. See discussion of Conward at p. 3, supra.

Second, whether or not Warren was "terminated" is an issue of fact as Putnam in its answers to interrogatories has described Warren's leaving of Putnam as "voluntary." See Putnam document PRM 4134, furnished as part of its September 1, 2006, answers to the Svensson's Interrogatories.

Third, even if it turns out that Warren's January 2004 departure from Putnam (a year and a quarter after Svensson's) was involuntary, that does not mean that he was not a comparator of Svensson for compensation, promotion, demotion and termination purposes.

Fourth, the conduct of Warren is relevant also to show the workplace atmosphere tolerated and encouraged by Putnam. [0]

Svensson Request No. 66:

All documents and things concerning the language used and/or the behavior of Warren of the type referred to at pp. 18-21 and 357 of the McNamee deposition.

Putnam Response No. 66: Putnam objects...overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

The conduct of Paul Warren, one of the 91 Comparators, described in the letter referred

to (see McNamee deposition p. 357 ("...And "what" bad behavior over the years did it

allege Paul Warren had [engaged in]?  That he frequented strip clubs...[a]nd that he over -

- he utilized entertainment from brokers excessively and accepted gifts from brokers

excessively")) and at pp. 18-2 ("They were talking about a --someone leaving the group

and that would leave a hole in the work...and he stood up and grabbed his crotch and

said, "You could fill it with this") is relevant to show the nature of the conduct of this

person and to be able to compare his conduct in the workplace to that alleged of

Svensson.

Putnam Opposition

- Mr. Warren, like Ms. Svensson, was terminated. By definition, therefore, Mr. Warren is not a legal comparator of Ms. Svensson.

- The conduct for which Putnam discharged Ms. Svensson must be nearly  identical to that engaged in by an employee outside the protected class whom Putnam retained. Conward v. The Cambridge, School Committee, 171 F.3d 12, 19 (1st Cir.1999). Because mismanaging subordinates and the behavior of Mr. Warren were not "nearly identical" this request is not legally relevant.

- This request would require Putnam to restore and review email boxes of an indefinite number of former and present Putnam employees for information or communications about Mr. Warren's behavior.

Svensson's Reply:

First, Putnam's characterization of Conward is incorrect.  See discussion of

Conward, p.3, supra.

Second, whether or not Warren was "terminated" is an issue of fact as Putnam in

its answers to interrogatories has described Warren's leaving of Putnam as "voluntary."

See Putnam document PRM 4134, furnished as part of its September 1, 2006, answers to

the Svensson's Interrogatories.

Third, even if it turns out that Warren's January 2004 departure from Putnam (a

year and a quarter after Svensson's) was involuntary, that does not mean that he was not a

comparator of Svensson for compensation, promotion, demotion and termination

purposes.

Fourth, the conduct of Warren is relevant also to show the workplace atmosphere

tolerated and encouraged by Putnam.

Finally, the claim as to the e-mails is exaggerated and meritless; and the new e-

discovery rules should be applied to this case.  See pp. 4-5,  supra.

Svensson Request No. 67:

All documents and things concerning communication between Lasser or Haldeman and the
Human Relations Department at Putnam and/or any other person concerning the language
used by and/or behavior of Warren referred to at pp. 18-21 and 357 of the McNamee
deposition.

Putnam Response No. 67:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

Communication at Putnam concerning the conduct of Paul Warren, one of the 91

Comparators, described in the letter referred to (see McNamee deposition p. 357 ("...And

"what" bad behavior over the years did it allege Paul Warren had [engaged in]?  That he

frequented strip clubs...[a]nd that he over -- he utilized entertainment from brokers

excessively and accepted gifts from brokers excessively")) and at pp. 18-2 ("They were

talking about a --someone leaving the group and that would leave a hole in the work...and

he stood up and grabbed his crotch and said, "You could fill it with this") is relevant to

show the nature of the conduct of this person and to be able to compare his conduct in the

workplace to that alleged of Svensson, and to determine if there has been any gender

discrimination in the treatment of Svensson and the females among the 91 Comparators.

Putnam Opposition

- Mr. Warren, like Ms. Svensson, was terminated. By definition, therefore, Mr. Warren is not a legal comparator of Ms. Svensson.

- The conduct for which Putnam discharged Ms. Svensson must be nearly identical to that engaged in by an employee outside the protected class whom Putnam retained. Conward v. The Cambridge, School Committee, 171 F.3d 12, 19 (1st Cir.1999). Because mismanaging subordinates and the behavior of Mr. Warren were not "nearly identical" this request is not legally relevant.

- This request would require Putnam to restore and review email boxes of an indefinite number of former and present Putnam employees for information or communications about Mr. Warren's behavior.

Svensson's Reply:

First, Putnam's characterization of Conward is incorrect.  The conduct must be "as

serious or more serious." See discussion of Conward, p. 3, supra.

Second, whether or not Warren was "terminated" is an issue of fact as Putnam in

its answers to interrogatories has described Warren's leaving of Putnam as "voluntary."

See Putnam document PRM 4134, furnished as part of its September 1, 2006, answers to

the Svensson's Interrogatories.

Third, even if it turns out that Warren's January 2004 departure from Putnam (a

year and a quarter after Svensson's) was involuntary, that does not mean that he was not a

comparator of Svensson for compensation, promotion, demotion and termination

purposes.

Fourth, the conduct of Warren is relevant also to show the workplace atmosphere

tolerated and encouraged by Putnam.

Finally, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  See pp. 4-5, supra.

Svensson Request No. 68:

All documents and things concerning the investigation of Warren by Tibbetts, which is referred to at p. 358 of the McNamee deposition.

Putnam Response No. 68:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning the investigation at Putnam concerning the conduct of Paul Warren, one of the 91 Comparators, described in the letter referred to (see McNamee deposition p. 357 ("...And "what" bad behavior over the years did it allege Paul Warren had [engaged in]?  That he frequented strip clubs...[a]nd that he over -- he utilized entertainment from brokers excessively and accepted gifts from brokers excessively")) and at pp. 18-2 ("They were talking about a --someone leaving the group and that would leave a hole in the work...and he stood up and grabbed his crotch and said, "You could fill it with this") is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females among the 91 Comparators.

Putnam Opposition

- Mr. Warren, like Ms. Svensson, was terminated. By definition, therefore, Mr. Warren is not a legal comparator of Ms. Svensson.
- 
- The conduct for which Putnam discharged Ms. Svensson must be nearly identical to that engaged in by an employee outside the protected class whom Putnam retained. Conward v. The Cambridge, School Committee, 171 F.3d 2, 19 (1st Cir.1999). Because mismanaging subordinates and the

behavior of Mr. Warren were not "nearly identical" this request is not legally relevant.

- This request would require Putnam to restore and review email boxes of an indefinite number of former and present Putnam employees for information or communications about Mr. Warren's behavior.

- As these requests recognize, Ms. Svensson has already deposed Ms. McNamee and Mr. Tibbetts at length about this subject matter.

Svensson's Reply:

First, Putnam's characterization of Conward is incorrect.  The conduct must be "as serious or more serious." See discussion of Conward, p. 3, supra.

Second, whether or not Warren was "terminated" is an issue of fact as Putnam in its answers to interrogatories has described Warren's leaving of Putnam as "voluntary." See Putnam document PRM 4134, furnished as part of its September 1, 2006, answers to the Svensson's Interrogatories.

Third, even if it turns out that Warren's January 2004 departure from Putnam (a year and a quarter after Svensson's) was involuntary, that does not mean that he was not a comparator of Svensson for compensation, promotion, demotion and termination purposes.

Fourth, the conduct of Warren is relevant also to show the workplace atmosphere tolerated and encouraged by Putnam.

Fifth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case.  See pp. 4-5, supra.

Finally, although there may have been some deposition testimony, it was taken without the benefit of the documents requested, and cannot properly be an excuse for not producing the documents.

Svensson Request No. 69:

> If the "investigation" of Warren was not "handled" as the McNamee deposition states, by Tibbetts, but was "handled" in whole or in part by one or more other persons, all documents and things concerning the investigation of Warren by such other person or persons.

Putnam Response No. 69:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument
in Support of Motion to Compel:

> Documents concerning the investigation at Putnam concerning the conduct of Paul Warren, one of the 91 Comparators, described in the letter referred to (See McNamee deposition p. 357 ("...And "what" bad behavior over the years did it allege Paul Warren had [engaged in]?  That he frequented strip clubs...[a]nd that he over -- he utilized entertainment from brokers excessively and accepted gifts from brokers excessively")) and at pp. 18-2 ("They were talking about a --someone leaving the group and that would leave a hole in the work...and he stood up and grabbed his crotch and said, "You could fill it with this") is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females among the 91 Comparators.

Putnam Opposition

- Mr. Warren, like Ms. Svensson, was terminated. By definition, therefore, Mr. Warren is not a legal comparator of Ms. Svensson.

- The conduct for which Putnam discharged Ms. Svensson must be nearly identical to that engaged in by an employee outside the protected class whom Putnam retained. Conward v. The Cambridge, School Committee, 171 F.3d 2, 19 (1st Cir.1999). Because mismanaging subordinates and the behavior of Mr. Warren were not "nearly identical" this request is not legally relevant.

- This request would require Putnam to restore and review email boxes of an indefinite number of former and present Putnam employees for information or communications about Mr. Warren's behavior.

Svensson's Reply:

First, Putnam's characterization of <u>Conward</u> is incorrect. The conduct must be "as serious or more serious." <u>See</u> discussion of <u>Conward</u>, , p. 3, <u>supra</u>.

Second, whether or not Warren was "terminated" is an issue of fact as Putnam in its answers to interrogatories has described Warren's leaving of Putnam as "voluntary." <u>See</u> Putnam document PRM 4134, furnished as part of its September 1, 2006, answers to the Svensson's Interrogatories.

Third, even if it turns out that Warren's January 2004 departure from Putnam (a year and a quarter after Svensson's) was involuntary, that does not mean that he was not a comparator of Svensson for compensation, promotion, demotion and termination purposes.

Fourth, the conduct of Warren is relevant also to show the workplace atmosphere tolerated and encouraged by Putnam.

Fifth, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. <u>See</u> pp. 4-5, <u>supra</u>.

Svensson Request No. 70:

All documents and things concerning the compensation figures, studies and statistics referred to in the Allansmith deposition at pp. 88-90.

Putnam Response No. 70:   The compensation figures, studies and statistics referenced in the Allansmith deposition were performed by Ms. Allansmith, and Putnam does not possess any documents concerning such information.  Putnam further objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Svensson's Initial Argument

in Support of Motion to Compel:

Assuming for the sake of argument that Putnam was correct in representing in
June and July to Svensson and the court that it did not keep statistics on which males and
females had children, it simply cannot be that Putnam "does not possess any documents
concerning (which, as per Local Rule 26.5, means "referring to, describing, evidencing, or
constituting". [the] other information referred to by Ms. Allansmith in her deposition, which
includes, as more particularly set forth in the excerpt from the Allansmith deposition, Exhibit
"A" to this memorandum, the following from her testimony:

89

4 ... Almost
5 all men were promoted. The number of
6 terminations -- even though women made up
7 a quarter or less of the department,
8 almost all of the terminations in that
9 five-year period were 100 percent women.
10 I think only two men were terminated. I
11 also had some compensation figures and I
12 ran some statistics on those as well.
13 ...I'm not sure "what" violates my
14 severance agreement with Putnam so I'm
15 going to remain quiet on the results of
16 those.
17 Q. "what" was the group, was that the
18 class of 2000?
19 A. For which?
20 Q. For your study. I mean, "what" group y
21  were you using?
22 A. I did extensive statistics. I used
23 the class of 2000 and tracked them. I
24 tracked the department for every year. I

90

1 tracked senior analysts and "what" happened
2 to those. I tracked junior analysts and
3 "what" happened to them. I mean, I did --

4 you know, I'm an analyst.
5 Q. Did you retain hard copies of those
6 studies?
7 A. Yes
8 Q. Do you still have them?
9 A. I do

*** 

22 ...the penalties are quite
23 severe if I violate [my Putnam severance] agreement.

The documents requested are relevant and Putnam should be required to produce

them

Putnam Opposition

- Putnam has already provided all objective data necessary to determine if Putnam treated females in a discriminatory manner.

- Ms. Svensson's "argument" does not respond to Putnam's objection, and states only that the documents are "relevant" and "Putnam should be required to produce them."

- This request fails to provide any basis to suggest that responsive documents exist that would be relevant to one of Ms. Svensson's claim.

- Putnam restates its initial objection.

Svensson's Reply:

First, the documents requested are relevant to show the treatment and decision-

making of Putnam as affecting females as compared to males.

Second, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner." That

simply is an assertion without proof. Moreover, even if true (it is not), the subjective

information is necessary to evaluate intent of Putnam.

Request No. 71:

All documents and things concerning the Women's leadership Forum referred to at p. 180

of the Haldeman deposition.

Putnam Response No. 71:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Putnam further objects on the ground that the Women's Leadership Forum (referred to at p. 180 of the Haldeman deposition) was not formed until after the plaintiff's termination.

Svensson's Initial Argument
in Support of Motion to Compel:

> Documents concerning the Women's Leadership Forum at Putnam are relevant to show the concerns and complaints of women at Putnam and "what", if anything, Putnam did in response to those complaints and concerns.  That, if true, the Forum was formed after Svensson's termination is beside the point.  Evidence as to actions and omissions even taking place after the Svensson termination are relevant. [5]

---

[5] Case law from the First Circuit and elsewhere also makes clear that evidence of an employer's discriminatory conduct towards other similarly situated employees is relevant even if such conduct took place well before or after the conduct giving rise to the plaintiff's action.  The United States Court of Appeals for the First Circuit stated in the Conway case that, "evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment. 825 F.2d at 597.  (Emphasis added.)  See also Carey, 156 F.3d at 37. In Conway, the court allowed the introduction of evidence of discriminatory statements made up to 22 months prior to the plaintiff's termination.  In Jackson, the District Court expanded the time period for which the plaintiff was allowed to seek discovery as to tenure decisions in the Harvard Business School from three to 10 years, including 7 years prior to the time tenure consideration of the plaintiff had begun, stating, "In the court's view, this three-year time period is unduly restrictive and contrary to the law governing the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1)....  Accordingly, a time frame which merely brackets the contested employment action would foreclose plaintiff from elucidating past practices or identifying a pattern which might suggest that defendants' reasons for denying plaintiff tenure are pretextual. Relevancy for discovery purposes is much broader than for admissibility purposes at trial. If the information sought appears reasonably calculated to lead to the discovery of admissible evidence, it is within the limits set forth in Fed. R. Civ. P. 26(b)(1). Therefore, the court expands the time frame ordered by the magistrate from three years to ten, commencing June, 1974 and ending June, 1984. 111 F.R.D. at 475.  And in Hernandez, the District Court noted that "a variety of courts 'have held that prior discriminatory conduct is recognized as probative in an employment discrimination case on the issue of motive or intent.'"  190 F.Supp.2d at 271-72. (italics in original).  See also Briddell, 233 F.R.D at 60 (allowing discovery as to other acts of discrimination for three year period including 14 months prior to any discriminatory acts against the plaintiff.).
Conduct occurring entirely after the discrimination complained of by plaintiff also is relevant and admissible.  In Brown, the United States Court of Appeals for the First Circuit admitted statements made by the university president to another professor being considered for tenure, even though those statements

Putnam Opposition

- The cases relied upon by Ms. Svensson to suggest that evidence of a corporate state of mind or a discriminatory atmosphere is relevant beyond the time period of the plaintiff's employment are inapposite. The cases Ms. Svensson relies upon concern situations where there was direct evidence of discrimination. As for the plaintiff's termination, no such evidence exists, nor will pouring through every document mentioning the Women's Leadership Forum likely provide such evidence.

- This request would require Putnam to restore the email boxes of scores of former or current Putnam employees who may have been involved with the Women's Leadership Forum, and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist; thus the request is grossly overbroad and burdensome for the reasons stated in this Introduction.

Svensson's Reply:

First, assuming for the sake of argument, that Putnam's argument might be applicable to a trial context, the present case is in discovery and Svensson is entitled to have discovery as to matters that are relevant to her claims. It is certainly relevant to

---

were made after the decision on plaintiff's tenure application had been made. According to the Brown court:

"That the remarks occurred subsequent, rather than prior, to the allegedly discriminatory conduct does not alter their admissibility. The jury was entitled to infer that any discriminatory animus toward women manifested in 1982 and 1983 would have existed in 1980 and 1981, when President Silber acted on Brown's case. 891 F.2d at 350. See also Briddell, 233 F.R.D at 60 (Court cited a case from the District of Kansas in which the time period extended two years after the discrimination alleged by the plaintiff); Ryder, 128 F.3d at 130-33 (allowing introduction of statements made one year after plaintiff's termination); Stumph, 770 F.2d at 95, 97 (allowing testimony of other employees as to discrimination they encountered after plaintiff was terminated); Cordova v. State Farm Ins. Companies, 124 F.3d 1145, 1149(9th Cir. 1997) (Mexican plaintiff, alleging that she was not promoted to trainee agent due to national origin discrimination, allowed to introduce evidence that after hiring decision had been made, manager made discriminatory comment about another Mexican employee); Stacks v. Southwestern Bell Yellow Pages, 27 F.3d 1316, 1327 n.5 (8th Cir. 1994) (in sexual harassment case, evidence that after plaintiff's termination a sexual video involving other female employees had been shown at a company function was relevant and admissible); Martinez v. Potter, 347 F.3d 1208, (10th Cir. 2003) (incidents of retaliation against plaintiff occurring after plaintiff filed Title VII complaint, as to which administrative remedies had not been exhausted, could still be introduced as background evidence to support exhausted claims set forth in complaint); Schindler v. Bierwirth Chrysler/Plymouth, 15 F.Supp.2d 1054, 1059 (D. Kan. 1998) (defendant's decisions to discharge two other 60+ year old employees months after plaintiff's termination "lend support to plaintiff's pretext argument"); Wilson v. Seven Seventeen HB Philadelphia Corp., 2003 WL 22709073, * 10 (E.D. Pa. 11/14/03) (allowing introduction of corporate memoranda s reflecting procedures in effect more than a year after plaintiff's termination).

know if the establishment of the forum was the result of, or was undertaken by Putnam to

attempt to deal with discriminatory treatment of females and whether Svensson's refusing

to relinquish her rights played a part.

Second, the claim as to the e-mails is exaggerated and meritless; and the new e-

discovery rules should be applied to this case.  See pp. 4-5, supra.

Svensson Request No. 72:

All documents and things concerning studies, analyses and reports and the results thereof
by or on behalf of the above referred to Women's Leadership Forum.

Putnam Response No. 72:  Putnam objects... overbroad, burdensome... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.  Putnam further objects on the
ground that the Women's Leadership Forum (referred to at p. 180 of the Haldeman deposition)
was not formed until after the plaintiff's termination.

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning the Women's Leadership Forum at Putnam are relevant to

show the concerns and complaints of women at Putnam and "what", if anything, Putnam

did in response to those complaints and concerns.  That, if true, the Forum was formed

after Svensson's termination is beside the point.  Evidence as to actions and omissions

even taking place after the Svensson termination are relevant.[6]

Putnam Opposition

- The cases relied upon by Ms. Svensson to suggest that evidence of a corporate
  state of mind or a discriminatory atmosphere is relevant beyond the time
  period of the plaintiff's employment are inapposite.   The cases Ms. Svensson
  relies upon concern situations where there was direct evidence of
  discrimination. As for the plaintiff's termination, no such evidence exists, nor
  will pouring through every document mentioning the Women's Leadership
  Forum likely provide such evidence.

- This request would require Putnam to restore the email boxes of scores of
  former or current Putnam employees who may have been involved with the

---

[6] See note 4, supra.

Women's Leadership Forum, and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist; thus the request is grossly overbroad and burdensome for the reasons stated in this Introduction.

Svensson's Reply:

First, assuming for the sake of argument, that Putnam's argument might be applicable to a trial context, the present case is in discovery and Svensson is entitled to have discovery as to matters that are relevant to her claims. It is certainly relevant to know if the establishment of the forum was the result of, or was undertaken by Putnam to attempt to deal with discriminatory treatment of females and whether Svensson's refusing to relinquish her rights played a part.

Second, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. See pp. 4-5, supra.

Svensson Request No. 73:

All documents and things concerning communication from Haldeman to any other person and to Haldeman from any other person in regard to any one or more of the subject matters of...categor[y] [Nos. 71 and 72, above].

Putnam Response No. 73:

Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence [and]...further [that] the Women's Leadership Forum (referred to at p. 180 of the Haldeman deposition) was not formed until after the plaintiff's termination.

Svensson's Initial Argument
in Support of Motion to Compel:

Documents concerning the Women's Leadership Forum at Putnam are relevant to show the concerns and complaints of women at Putnam and "what", if anything, Putnam did in response to those complaints and concerns. That, if true, the Forum was formed after Svensson's termination is beside the point. Evidence as to actions and omissions

even taking place after the Svensson termination are relevant.[7]

Putnam Opposition

- The cases relied upon by Ms. Svensson to suggest that evidence of a corporate state of mind or a discriminatory atmosphere is relevant beyond the time period of the plaintiff's employment are inapposite. The cases Ms. Svensson relies upon concern situations where there was direct evidence of discrimination. As for the plaintiff's termination, no such evidence exists, nor will pouring through every document mentioning the Women's Leadership Forum likely provide such evidence.

- This request would require Putnam to restore the email boxes of scores of former or current Putnam employees who may have been involved with the Women's Leadership Forum, and review potentially hundreds of thousands or millions of emails without any basis for believing that relevant documents exist; thus the request is grossly overbroad and burdensome for the reasons stated in this Introduction.

- 

Svensson's Reply:

First, assuming for the sake of argument, that Putnam's argument might be applicable to a trial context, the present case is in discovery and Svensson is entitled to have discovery as to matters that are relevant to her claims. It is certainly relevant to know if the establishment of the forum was the result of, or was undertaken by Putnam to attempt to deal with discriminatory treatment of females and whether Svensson's refusing to relinquish her rights played a part.

Second, the claim as to the e-mails is exaggerated and meritless; and the new e-discovery rules should be applied to this case. See pp. 4-5, supra.

Svensson Request No. 74:

The personnel files of Allansmith, DeChristopher, O'Malley, Peers and Warren.

Putnam Response No. 74: Putnam objects...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

---

[7] See note 4, supra.

Svensson's Initial Argument
in Support of Motion to Compel:

The files requested are relevant in order to show in comparison to the treatment of Svensson (1) the treatment of DeChristopher who, according to PRM 4026, had "poor three years performance record" and a "volatile personality" yet was promoted in 2003 while Svensson was terminated; (2) the treatment of Allansmith who was fired and had been demoted while on maternity leave; (3) the treatment of O'Malley, who complained about Svensson, and whose complaints, at least in part, according to Putnam, provoked her termination and later received a promotion and took over some of her responsibilities; and, (4) The treatment of Warren's behavior. See Nos. 65-69, supra.

Putnam Opposition

- This is not a class action lawsuit, and access to an employee's most private information is improper.

- Putnam has already provided all objective data necessary to determine if Putnam treated women in a discriminatory manner. This request seeks to improperly try the gender discrimination cases of other former or current Putnam employees to prove Ms. Svensson's case.

- For the reasons stated in its Opposition to Ms. Svensson's Motion to Compel Answers to Interrogatories, Putnam does not agree that these individuals are Ms. Svensson's legal comparators.

- Ms. Svensson offers no explanation concerning the relevance of these particular files.
-

Svensson's Reply:

First, these files are relevant for the reasons set out in Svensson's initial argument above. Moreover, they may well provide information as to others making complaints about Peers, DeChristopher, Warren and/or O'Malley.

Second, it is not true that "Putnam has already provided all objective data

necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Third, this request does not seek to try any person's gender discrimination case other than Svensson's, who is entitled as of right under Rule 26 to discovery "relevant to the claims" she has made as to disparate treatment and disparate impact and, with the discretion of the court, to discovery "relevant to the subject matter" of this litigation.

Finally, it is not true that "Putnam has already provided all objective data necessary to determine if Putnam made decisions in a discriminatory manner." That simply is an assertion without proof. Moreover, even if true (it is not), the subjective information is necessary to evaluate intent of Putnam.

Svensson Request No.75:

All documents and things concerning communication within Putnam in regard to the issue of "deprivation of [Svensson's] management responsibilities," as used in the Brooks deposition at p. 184), which communication took place in the period prior to the Brooks' presenting to Svensson on August 28, 2003, of a document with three options concerning the status of her employment.

Putnam Response No.75:    Putnam has already produced non-privileged communications and...
All privileged communications have been noted in Putnam's privilege log
[and]...further ... this court, in response to Plaintiff's November 5, 2005 Motion to
Compel Defendant's Production of Documents has already limited Putnam's obligation to
produce communications between and among its personnel; and Putnam has already produced
such.....

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to this Category nor in its Amended Privilege Log has

Putnam made the showings required to support the claims of attorney-client privilege or

work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Putnam Opposition

- Putnam continues to respond that because these documents were either prepared for, or directed to, Putnam's counsel, they are within the protection of the attorney-client and work-product privileges.

Svensson's Reply:

Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Svensson Request No. 76:

All documents and things concerning communication within Putnam in regard to the issue of "deprivation of [Svensson's] management responsibilities" and/or termination of her employment, which communication took place in the period following the Brooks presentation to Svensson referred to in the immediately preceding category, and the termination of Svensson's employment on September 15, 2003.

Putnam Response No. 76: Putnam has already produced non-privileged communications and documents responsive to this request.... All privileged communications have been noted in Putnam's privilege log [and] further...that this court, in response to Plaintiff's November 5, 2005 Motion to Compel... has already limited Putnam's obligation to produce communications between and among its personnel; and Putnam has already produced such....

Svensson's Initial Argument
in Support of Motion to Compel:

Neither in its responses to this Category nor in its Amended Privilege Log has

Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information, to review in camera the withheld documents to assist the court in making its determinations as to these categories.

Putnam Opposition

- Putnam continues to respond that because these documents were either prepared for, or directed to, Putnam's counsel, they are within the protection of the attorney-client and work-product privileges.
-

Svensson's Reply:

Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.

s/Kevin F. Moloney
Kevin F. Moloney BBO No. 351000
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.5374

Dated: October 25, 2006

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin F. Moloney

Dated: October 25, 2006

[375508.1]

**Defendant's redaction pattern reduced effective pages per production, even as the total number of pages climbed.**





**Putnam redacted far more *after* the entry of the protective order than *before***

**Defendant's redaction pattern reduced effective pages per production, even as the total number of pages climbed.**



***Due to Defendant's increasing rate of redaction, discovery could not move forward for a period of eleven months.***





**Discovery was scheduled to be completed by February 1, 2006. Due to Defendant's delay tactics, discovery is still ongoing on October 25, and Plaintiff has only recently begun to receive the information requested and promised.**

276 Days

Discovery period per Court's 5/2/05 scheduling order

May 1, 2005   6/1  7/1  8/1  9/1  10/1  11/1  12/1  1/1  2/1  3/1  4/1  5/1  6/1  7/1  8/1  9/1  10/1   Oct 25, 2006

Actual discovery period including multiple delays by Defendant

542 Days and counting

## *Comparator Delay (232 days)*

**Defendant delayed answering the interrogatories with respect to comparators for a total of 231 days.**
- **98 days related to a confidentiality motion that had no effect on data production**
- **134 days related to an inappropriate comparison of the facts of this case to Jackson v. Harvard University.**





**10/6**
Defendant answers zero interrogatories after 30-day extension

**10/20**
Defendant agrees to answer a reduced list of 16 interrogatories w/in 1 week

**11/18**
Defendant serves answers to 9 of 16 interrogatories; refuses to answer remaining 7

**2/28**
Defendant serves notice that they cannot distinguish comparators by job action

**3/14**
Plaintiff sends list of comparators grouped by employment action

**3/23**
Defendant responds with refusal to provide comparators

Oct 1, 2005    11/1    12/1    1/1    2/1    3/1    4/1    5/1    6/1    7/1    8/1    Sep 1, 2006

**11/18 - 2/23**
**Confidentiality Motion**

*Elapsed delay: 98 days*

**4/20 - 9/1**
**Motion to Compel Answers to Interrogatories**

*Elapsed delay: 134 days*

**11/17**
Defendant files motion for protective order concerning confidentiality

**1/20**
Hearing on confidentiality motion

**2/23**
Confidentiality order entered by MJ Bowler; side letter agreement for defendant to produce comparator data w/in 5 days of confidentiality order being entered

**4/20**
Motion to compel answers to interrogatories 3,4,5,7,9,10,12

**6/21**
Hearing on motion to compel before MJ Bowler; negotiation directed; hearing continued to 7/11

**7/11**
Hearing on motion to compel answers to 3,4,5,7,9,10,12; agreement reached on 91 comparators

**9/1**
Defendant produced some of the agreed upon comparator data by 9/1

2





# ***Mediation Delay (61 Days)***

***Defendant delayed key depositions, forcing a 61-day delay in mediation, then opposed Plaintiff's motion to extend the discovery deadline.***

**Document Production Delay (243 Days)**

**Defendant has delayed response to Plaintiff's requests for documents, using a strategy of stonewalling, redaction, and misinformation.**

*Area of Detail*

267 Days

Discovery period

6/1 7/1   9/1 10/1 11/1 12/1 1/1 2/1 3/1 4/1 5/1 6/1 7/1 8/1 9/1 10/1

Actual discovery

542 Days and counting

| 8/9 | 9/16 | 11/4 | 12/13 | 1/6 | 4/28 | 6/14 | 7/11 | 8/24 | 9/1 | 10/10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Plaintiff serves first document request for 22 items | Defendant states intention to provide 9 of 22 documents requested | Plaintiff files motion to compel documents | Hearing on motion to compel documents. Court orders additional documents. Defendant misrepresents the facts of this case as being on all fours with Jackson v. Harvard. Also makes claim that Larry Lasser never used e-mail. | Defendant produces documents required by the Court | Plaintiff's second request for documents; 22 items requested | Defendant submits documents with 90% redaction | In response to Court's urged negotiation, Defendant agrees to provide data on 91 comparators "for purposes of discovery" | Stoev deposition reveals e-mail forwarded by Larry Lasser | Defendant unredacts all documents previously produced with respect to 91 comparators | Plaintiff files motion to compel second document request |

Aug 1, 2005   9/1   10/1   11/1   12/1   1/1   2/1   3/1   4/1   5/1   6/1   7/1   8/1   9/1   10/1   Oct 25, 2006

**11/4 - 1/6**
**Motion to Compel Documents**

*Elapsed delay: 63 days*

**4/28 - 10/25**
**Still Awaiting Defendant's Response to Plaintiff's Second Request for Documents**

*Elapsed delay: 180 days and counting*

**Defendant's document production:**

| Date | 10/03 | 11/28 | 12/08 | 1/06 | 3/01 | 5/15 | 6/14 | 9/1 |
|---|---|---|---|---|---|---|---|---|
| Production number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Pages produced | 1-761 | 762-1086 | 1087-1528 | 1529-1783 | 1784-1935 | 1936-1992 | 1993-2873 | 2874-4144 |
| Percent redacted | 2.8% | 29.2% | 3.4% | 27.1% | 89.4% | 59.7% | 89.6% | 0% |
| Comments | | Arrives late the night before the McNamee deposition | | Compelled by the court | Found in newly discovered "banker's boxes" | Found in "Mr.Lasser's files," which Lasser testifies reside at Defendant's offices | | Result of agreement reached in 7/11 hearing |

4