UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | Civil Action No. 04-12711-PBS |
| LISA SVENSSON, | * | BBO Bo. 351000 |
| | * | Opposition |
| Plaintiff, | * | of |
| | * | Plaintiff Svensson |
| v. | * | to |
| | * | Defendant Putnam's |
| | * | Motion to Quash |
| PUTNAM INVESTMENTS, LLC | * | her Notice of Deposition |
| et al., | * | of Putnam Pursuant to |
| Defendants. | * | Fed. R. Civ. P. 30(b)(6) |
| * * * * * * * * * * * * * * | | and |
| | | Request for Hearing and Oral Argument |

<u>MEMORANDUM IN OPPOSITION</u>.

Plaintiff Lisa Svensson ("Svensson")'s notice for the Rule 30(b)(6) deposition of defendant Putnam Investments, LLC complies with the requirements of Fed. R. Civ. P. 30(b)(6) that the notice such an entity describe "with reasonable particularity the matters on which examination is requested".

The Rule puts the burden on Putnam, not on Svensson, to "designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf," and provides further that Putnam "may set forth, for each person designated, the matters on which the person will testify."  The rule expressly provides that the "persons" so designated "shall testify as to matters known or reasonably available to the

organization," i.e., in a 30(b)(6) deposition, the designated witness(es) are required to become informed as to the entity's knowledge, which may well be matters not within the respective knowledge of individuals.  Thus, the fact that they may have been deposed previously on their personal knowledge does not preclude them from testifying again but as to the entity's knowledge.  Moreover, the designee or designees must be, <u>at the time of the Rule 30(b)(6) deposition</u>, officers, directors or managing agents or persons who consent to testify on behalf of the entity.

    Moreover, Rule 30(b)(6) provides that, "This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules". Thus, Rule 30(b)(6) specifically contemplates that a person deposed as to his or her personal knowledge may be deposed again as to corporate knowledge.  This makes sense because one of the main purposes of a Rule 30 (b)(6) deposition is to elicit corporate admissions and other testimony as to disputed factual matters that may be introduced into evidence at the trial under Fed,. R. Civ. P. 32.

    Notably, Rule 30(b)(6) is silent as to the timing of an entity's deposition.  Thus, the fact that it was originally noticed as Svensson's tenth deposition at the end of the discovery period is irrelevant, especially since Putnam delayed during discovery unredacting documents and answering

interrogatories and until September 1, 2006, only after the court took action in the several hearings since June 21, 2006. precluded our getting critical documents before taking the deposition.

The date scheduled by the notice for the Rule 30(b)(6) deposition< November 17, 2006, is well within the extended deadline for discovery, December 31, 2006.

Accordingly, the only legitimate issue Putnam raises on this motion is whether the requirement of reasonable particularity is satisfied on this Notice, to which we now turn.

The specific bases for the categories on which testimony is sought:

1. <u>Designation or naming of a person as a "partner" at Putnam at any time in the period 1999 through 2004, and elements of, and aggregate totals of, total compensation paid or payable to partners at Putnam for each year in the period January 1, 1999, through December 31, 2004</u>

To date, Putnam has disclosed very little information on this issue, particularly who the partners were, the aggregate amount of their compensation in the years in question, the individual compensation provided to most of the partners, and why the system was discontinued after Svensson filed suit and raised her inability to become a partner as an issue of discrimination.

In short, this whole issue badly needs further airing, which can only come through corporate knowledge of this system. Svensson could not become a partner unless she first became a Managing Director, a promotion that she repeatedly was denied. Only males such as Haldeman and Brooks ever were made partner directly from the outside. Since defendant Lasser apparently made the decision as to who became a partner, this issue also bears directly on his liability as an aider and abettor of discrimination.

2. <u>Managers' performance ratings for the 91 Comparators 1999 through 2004 (whether or not any one or more of the 91 Comparators were "partners"), including any alterations of managers' performance ratings by one or more members of top management or by any other person at Putnam</u>.
This is a very detailed and unambiguous category for corporate testimony and admissions. Putnam documents (produced only after Svensson served the original Notice) disclose that Svensson's rating was changed in the year 2000 (1999 performance) from a 4.8 Manager's Rating from Robert Swift to a 3.0. Oristaglio testified in June 2006 that many performance ratings were changed all the time because top management felt that managers were being too charitable in their evaluations, yet Svensson has been unable so far to determine the accuracy of this testimony because the document reflecting the extraordinary 1.8 decline on Svensson's rating had been redacted for all other investment professionals. It was not until

4

September 1, 2006, that Putnam produced the document in unredacted form.

    Thus, Svensson is entitled to <u>corporate</u> testimony concerning the rating system, alterations to Svensson's ratings, and alterations of ratings of male and female comparators. Svensson deserves the chance to obtain evidence of how this manipulation of the ratings system was used to justify discriminatory employment decisions.

3.   <u>Criteria for "guarantees" of compensation paid or payable to any one or more of the 91 Comparators for each year in the period January 1, 1999, to December 31, 2004, including identities of decision makers, reason(s) for such decisions, amounts of each such "guarantee" and aggregate amount(s) of guarantees paid or payable in each such year or thereafter</u>

This item is an excellent example of how Putnam's discovery tactics have created the critical need for a corporate deposition late in the discovery process. The issue of "guarantees" of a certain level of compensation has been an issue in the case for months, in that Svensson asked for a guarantee of a certain level of compensation at the time of her September 12, 2003, meeting with Brooks, because she believed that guarantees were being given to certain of her male colleagues at a level significantly higher than her existing compensation. Brooks agreed to consider this request; but returned on September 15, 2003, and told Svensson that Putnam could not agree to her request. In Brooks' deposition, it was disclosed that he himself had successfully negotiated a

5

compensation guarantee at the time of his arrival in April, 2003. However, it was not until the receipt of unredacted Putnam documents in September 2006 that Svensson learned that "guarantees" were being promised to certain of her male colleagues. At that point, the only depositions remaining were the limited in scope second depositions of Tibbetts and Oristaglio.

Thus, there has never been adequate discovery taken on the important issue of whether Putnam discriminated against female investment professionals in awarding guarantees, or even on who made the determination as to which investment professionals would receive guarantees, and what criteria were used to determine the availability of guarantees to retain certain comparators, but to deny those guarantees to the Plaintiff.

4. <u>Designation of Putnam investment professionals as "key players" or "franchise players" at any time in the period January 1, 1999, to December 31, 2004,, including identities of decision makers, reason(s) for such decisions, and the effect of each such designation on comparators' total compensation paid or payable for each such year</u>.

These designations were totally unknown to Svensson until the September 1, 2006, unredaction of previously-produced documents, because Svensson had never been designated as either a "franchise player" or a "key player".

The relevant document (PRM 03312-03328, and marked Oristaglio 32 at his second deposition) identifies eight males

6

and no females as "franchise players" and 19 males and six females as "key players.  Oristaglio testified he could not recall seeing the document, which is dated February 2, 2003, and bears the notation "2002 Investments A&P.xls for LJL Feb 3.xls", so presumably it relates to 2002 or 2003 compensation and was prepared for defendant Lasser.  Thus, this document, and testimony about this document, is not only relevant but indeed is critical to Svensson's case, and no such testimony could have been obtained before the June 1, 2006, discovery deadline as the document, because of Putnam's tactics that impeded any meaningful discovery in this case, had not been produced at the time Svensson served the original Notice.

5.   <u>Awarding of deferred compensation (voluntary and involuntary), stock and/or stock options to Putnam investment professionals in the period January 1, 1999, to December 31, 2004, including identities of decision makers, criteria utilized and basis for awards to any one or more of the 91 Comparators</u>.

There has not been much testimony regarding deferred compensation, stock grants or stock options, as alternative forms of compensation to comparators because Putnam produced documents regarding these topics in unredacted form only for Svensson so there was never a basis on which to question any other witness on these subjects.

Indeed, the unredacted documents provide even now information only with respect to salary and bonus with the result that without the Rule 30(b)(6) deposition, , Svensson's

presentation at trial of compensation concerning comparators in all likelihood will understate significantly the total compensation awarded to other investment professionals in the form of deferred compensation, stock or stock options.

The payment of unvested deferred compensation to a terminated comparator is a subject which is directly relevant to this case. Putnam's arguments in opposition to the deposition of Putnam are meritless because there has been virtually no prior testimony about these other forms of compensation paid to comparators, and the documents produced in September by Putnam do not include information in these respects. The issue of what witness to produce on this subject is, as indicated above, Putnam's to make, but surely Putnam does not contend that, because of Schultz's departure from Putnam, Putnam has NO witness who has, or reasonably could obtain, knowledge of this subject.

6. <u>All actions by Putnam in the period January 1, 1999, to the present, to hire, promote, not to demote or transfer and/or not to terminate the employment of female investment professionals or deprive them of their management responsibilities.</u>

Although there has been much testimony concerning what happened to Svensson, there has been an absence of testimony concerning the "glass ceiling", demotion, deprivation of management responsibilities and forced departures of other female comparators (the lone exceptions being Lauren Allansmith

(demoted, and later terminated) and Kelly Morgan (demoted, but later promoted only after Lisa Svensson filed suit).  Svensson has every right to obtain such testimony, which is clearly relevant to the issues raised by the complaint, and to obtain Putnam's corporate admissions concerning the reasons and circumstances for treating Plaintiff's female comparators adversely (vis a vis her male comparators) in these respects.

Putnam has a duty under Rule 30(b)(6) to produce a witness who must educate himself or herself as to the corporate knowledge of this and the other issues in the notice.

7.  <u>The factual bases for any contentions by Putnam that any one or more of the 91 Comparators in this case are not, in fact, comparators of Svensson</u>.

Putnam repeatedly has stated in recent months that it intends to contest on summary judgment and/or at trial that the 91 persons designated by Svensson as "similarly situated" comparators.  In order to oppose Putnam's specious argument that Lisa had NO comparators, Svensson is entitled top know the factual basis of Putnam's contentions, which Putnam intends to bring before the court and jury and the discovery, if not taken now, would need to be taken at the summary judgment stage under Rule 56(f).

8.  <u>In regard to the females among the 91 Comparators in the period January 1, 1999, to December 31, 2004 (whether or not viewed by Putnam as voluntary or involuntary): terminations of or separations from employment by Putnam demotions, transfers and/or reductions in compensation including the identities of the decision makers, the</u>

9

<u>factual bases for each such decision, the identities of any persons who assumed the responsibilities of any such of the 91 Comparators, and the effect on aggregate and average compensation of males and females included in the 91 Comparators for each such year</u>.

Although Svensson believes that this subject is included in No. 6, above, it added individually to prevent Putnam from arguing that Svensson had not noticed with "reasonable particularity" that Svensson required corporate testimony with respect to the decisions taken and the decision-makers who made them concerning the adverse treatment of female comparators.

9.  <u>Issues arising from any documents produced or ordered to be produced by Putnam as a result of any decision by the court at the hearing to be held on October 26, 2006 before the court (Bowler, U.S.M.J.).</u>

This item is included to obtain testimony, including authentication and corporate admissions, concerning any documents which Putnam has previously withheld from discovery, and which are ordered to be produced at the hearing on October 26, 2006.

10. <u>Payment of the tuition reimbursement obligation of Darren Peers, including the accounting treatment of this transaction.</u>

Putnam is disingenuous when it states that the Darren Peers issue "does not concern any of the alleged Employment Actions". Not only do they utilize Peers' objections to Lisa's leadership and his disagreements over stock recommendations as a basis for terminating Peers' boss, but discovery has revealed that Putnam sought and obtained notes from Peers after he had resigned

10

Putnam and moved to Los Angeles to assume a better position at NWQ.

Thus, the issue of Peers' motivation for providing the notes and for testifying at deposition (where he was represented by Putnam's counsel) is certainly an issue on which corporate admissions at the 30(b)(6) deposition may properly be obtained.

11. <u>The "investigation" of Lisa Svensson undertaken by Putnam in the summer of 2003, including, without limitation, the notes taken by any Putnam HR representative, including Eric Hutcherson, of interviews of, or conferences with, any person at Putnam including, without limitation, Konstantin Stoev</u>.

While there was previous testimony by Brooks and McNamee concerning their investigation of Svensson in the period immediately prior to her termination, it was not until the court-ordered deposition of Konstantin Stoev in late August, 2006 that it was revealed that (1) Putnam had approached Stoev at that time and suggested that it was looking into Svensson's performance as Stoev's direct report for the purpose of giving Svensson a promotion and not for the purpose of demoting or terminating her; and (2) that there were notes taken by the interviewer, Eric Hutcherson, about this meeting, notes which have never been produced in this case by Putnam.

Surely, Svensson is entitled to take a deposition of Putnam to determine the facts of this purported "investigation", and to elicit appropriate corporate admissions concerning its manipulation of Stoev in its drive to fire Svensson.

11

12.  <u>Communication between Putnam and Chris O'Malley, Ellis Eckland or Darren Peers concerning Svensson in the period March 1, 2002, to December 31, 2003</u>.

The testimony required by this item directly concerns the alleged Employment Actions, in that Putnam has contended throughout that information obtained from O'Malley and Peers led directly to Svensson's termination of employment. Furthermore, because of the ten deposition limit, Svensson has not deposed either O'Malley (who is still at Putnam and who has been designated by Putnam as a witness with knowledge) or Eckland (who is no longer there). Thus, there is a critical need for the testimony (see the preceding discussion) and at least one witness who could provide relevant information to the Putnam designee on this topic.

13.  <u>The factual basis for the decision to remove Svensson from any Portfolio Management position in or about March 2002 while retaining male comparators in such positions, and any promotions to Portfolio Management positions of any persons in the period March 1, 2002, to September 15, 2003</u>.

and

14.  <u>The decisions to deprive Svensson of her management responsibilities and the decision on to terminate her employment, including the factual bases for such decisions, the identities of all persons consulted concerning the decisions, whether and how any of Putnam's written criteria for effecting terminations were utilized, and the decision to draft a Termination Agreement for Lisa Svensson on or about August 27, 2003</u>.

Surely, Putnam does not contend that these two topics, which relate directly to two of the Employment Actions taken against Svensson is not a fair topic for deposition testimony

under Rule 30(b)(6). Putnam's objections once again attempt to obscure the important difference between discovery depositions of individual corporate employees as to their personal knowledge, and the corporate deposition under Rule 30(b)(6), which seeks corporate knowledge and corporate admissions useable at trial under Fed . R. Civ. P. 32, which allows the introduction into evidence by an adverse party for any purpose of the deposition of "anyone who at the time of taking the deposition was an officer, director or managing agent of a public or private corporation, partnership or association."

15.  <u>Authentication of documents and tangible things produced by Putnam in this case unless agreed to by counsel or admitted in response to requests for admission</u>.

Because of the discovery tactics utilized by Putnam in this case, virtually all of the relevant documents were not produced in unredacted and useable form until September 1, 2006, three months after the June 1, 2006, discovery deadline. When witnesses were deposed about these significantly-redacted documents, they frequently were not able to authenticate the documents or provide relevant testimony about Svensson's comparators because the information respecting the comparators had been withheld deliberately and with full knowledge by Putnam that the redactions of critically-pertinent information would be likely to preclude authentication and meaningful testimony.

These documents, only in the last 2 months were partially unredacted to provide this critical information respecting male and female comparators. As Svensson intends to prove at trial both disparate treatment and disparate impact in regard to the Employment Actions, the provision of some useable information on the face of the documents is not sufficient, particularly if Svensson cannot get these documents authenticated for purpose of their admission into evidence at trial. Putnam's objections merely demonstrate their on-going efforts to preclude this meritorious case from being fairly tried before the jury and justifies the imposition of sanctions based upon an ongoing pattern of discovery abuse.

For all of the above reasons, the Putnam motion to quash the Rule 30(b)(60 notice for the depositions of Putnam should be denied.

<u>REQUEST FOR HEARING AND ORAL ARGUMENT</u>.

Svensson requests a hearing and oral argument.

                LISA SVENSSON, plaintiff,

                By her attorneys,

                BARRON & STADFELD, P.C.

                <u>s/Kevin F. Moloney</u>
                Kevin F. Moloney BBO No. 351000
                100 Cambridge Street, Suite 1310
                Boston, Massachusetts 02114
                Tel.: 617.723.9800/531.6569

                and

>/s/ John K. Weir
>John K. Weir, Admitted PHV
>John K. Weir Law Offices, LLC
>300 Park Avenue, Suite 1700
>New York, New York, 10022
>Tel.: 212.572.5374

Dated: October 25, 2006

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

>/s/ Kevin F. Moloney

Dated: October 25, 2006

[375563.1]