UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LISA SVENSSON, | | ) |
| | Plaintiff, | ) |
| v. | | ) |
| | | ) |
| PUTNAM INVESTMENTS LLC | | ) |
| | | ) |
| and | | ) |
| | | ) |
| LAWRENCE LASSER, | | ) |
| | | ) |
| | Defendants | ) |
| | | ) |
| | | ) |
| | | ) |

CIVIL ACTION
NO. 04-12711-PBS

**DEFENDANT PUTNAM INVESTMENT'S MOTION FOR A PROTECTIVE ORDER QUASHING ANY RESUMPTION OF THE RULE 30(B)(6) DEPOSITION**

## I.    INTRODUCTION

Defendant, Putnam Investments LLC ("Putnam"), moves for a protective order quashing any resumption of the Rule 30(b)(6) deposition taken by Plaintiff Lisa Svensson ("Ms. Svensson") on November 29, 2006.

## II.  BACKGROUND and ARGUMENT

On November 29, 2006, Putnam produced a corporate witness for deposition pursuant to Rule 30(b)(6) as ordered by the Court on October 29, 2006.  After 6 hours, Putnam suspended the deposition, but only after Putnam had first tried unsuccessfully to seek guidance from the Court during the deposition -- guidance that it could not obtain because Ms. Svensson's counsel could not manage to transfer even one of the Court's 4 telephone calls into the conference room where the deposition was being held.  Having been unable to obtain guidance from the

Court, Putnam had no choice but to suspend the deposition in the face of Ms. Svensson's persistent (a) questioning concerning matters outside the scope of the Rule 30(b)(6) notice, (b) repetition of questions asked of persons previously deposed (including the Rule 30(b)(6) deponent, who had himself been twice deposed in his individual capacity on the same subjects), and (c) refusal to accept Putnam's repeated offers to stipulate that the prior testimony of several of its employees could be deemed to be Rule 30(b)(6) testimony as well.  Ms. Svensson's conduct at the November 29 deposition, together with her failure to pay heed to Magistrate Judge Bowler's instructions on October 26 that she narrow and prioritize her deposition topics, amply demonstrates that Ms. Svensson's Rule 30(b)(6) deposition had less to do with legitimate discovery needs than with her repeated effort to generate discovery disputes and make discovery an end in itself.  Thus, any resumption of the Rule 30(b)(6) deposition is unwarranted and inappropriate.

### A.    The Hearing on Putnam's Motion to Quash the Plaintiff's Rule 30(b)(6) Deposition.

On October 26, 2006, the parties were before this Court on Putnam's motion to quash Ms. Svensson's Rule 30(b)(6) deposition.[1]  At the hearing, Magistrate

---

[1]    This was not the first time the parties were before this Court on the motion to quash the Rule 30(b)(6) deposition.  On July 11, 2006, Magistrate Judge Bowler ordered the Plaintiff to narrow her initial list of topics to the alleged adverse employment actions at issue in this case, and to "identify a person who you think has information that you haven't been able to get so far, relevant to this case, [because] so far, . . . I'm not satisfied." July 11, 2006 Hearing Transcript at p. 18, attached hereto as Exhibit A.  Plaintiff waited three months before serving her

(Footnote Continued on Next Page.)

Judge Bowler permitted the deposition to go forward, but made a number of specific rulings about the parameters under which it would be conducted. In particular, Magistrate Judge Bowler ordered:

- "One deposition, one day. [Plaintiff's counsel] sit down with Mr. Kociubes *in the next few days and decide who it's going to be and you better decide what areas you want to prioritize* because you're only going to get one day and *you may not get everything you want.*" October 26, 2006 Hearing Transcript (hereafter, the "Tr.") at p. 55 - 56, attached hereto as Exhibit B (emphasis added.)

- "[P]rioritize it as what you want because you're only going to get one witness and you're only going to get one day, *and if one person only knows about one area, that's all you're going to get.*" *Id.* (emphasis added.)

Plaintiff ignored both of these instructions.

## B.     Plaintiff Refused to Comply With This Court's Instructions.

Despite Magistrate Judge Bowler's clear instructions, Ms. Svensson failed to comply with either the letter or spirit of this Court's ruling. First, Ms. Svensson waited *11* days before contacting Putnam about the Rule 30(b)(6) deposition, and then only contacted Putnam's counsel to confirm the date of the deposition. Second, Ms. Svensson refused to narrow her topics to make them manageable, or to prioritize her topics, stating "I do not believe there is a legal obligation to remove any of the areas of expected testimony from our Notice, and nothing in the transcript would suggest otherwise." *See* the November 7, 2006 email from Plaintiff's counsel to Putnam, attached hereto as Exhibit C. Only after Putnam cited the transcript to Ms. Svensson's counsel did they ostensibly "prioritize" ten

---

(Footnote Continued from Previous Page.)

amended Notice, then failed to (1) limit her topics to the employment actions, or (2) identify a person who had information not previously accessible to her.

of the fifteen topics listed, and then only after reserving Ms. Svensson's right to examine Putnam on the remaining five "if time permits." *See* email of November 7, 2006 from Plaintiff's counsel to Putnam, attached hereto as Exhibit C: "As to the balance of the areas, Plaintiff will examine if time permits, and in no way is withdrawing these items as proper subjects of examination, as to which the 30(b)(6) witness is expected to be knowledgeable." At no point did Ms. Svensson respond to the particular concern raised by Putnam during or after the October 26 hearing -- namely, that some of the topics were so broad that no witness could be prepared to answer the breadth of potential questions concerning the topics.[2]

By refusing to comply with this Court's order to meet "within a few days" or to "prioritize what you want," Ms. Svensson demonstrated her intent to prolong the discovery process by generating discovery controversies -- a tactic she has used time and again over the past year and a half of discovery. Indeed, it appears Plaintiff's intent always has been to get a "second bite" at the Rule 30(b)(6) deposition. *See* Plaintiff's email to Putnam of November 8, 2006, attached hereto as Exhibit E, in which counsel simply ignores the Court's instruction that Ms. Svensson work with Putnam concerning the scope of the topics :

> As the motion to quash the 30(b)(6) deposition has been "denied" by
> Magistrate Judge Bowler, and as you have not sought timely relief

---

[2]    Plaintiff's Rule 30(b)(6) notice, attached hereto as Exhibit D, required Putnam's corporate witness to become knowledgeable about, for example, the manager's performance ratings for 91 current and former Putnam employees over a five year period; and all employment decisions made about 24 current and former female investment professionals, with respect to promotions, demotions, transfers, reduction in compensation and  terminations.

> from Judge Saris, it is Plaintiff's view that the issue of the scope of the areas of questioning has now been fully adjudicated. . . In the event that Putnam's designated witness fails to have or obtain knowledge "reasonably available to the organization", or otherwise fails to adhere to the standards required by the Rule, Plaintiff fully intends to seek appropriate relief, *including the possibility of a further deposition*, plus sanctions under Rules 37(b)(2) and 37(c) (emphasis added).

Ms. Svensson's intent to generate discovery controversies was amply demonstrated during the November 29 deposition.

### C.    Plaintiff Acted in Bad Faith While Conducting Her Rule 30(b)(6) Deposition

Despite Ms. Svensson's unwillingness to compromise on the Notice topics, and the difficulty of readying a witness on such overbroad subjects, Putnam extended considerable efforts to prepare Richard B. Tibbetts ("Mr. Tibbetts"), Putnam's Head of Human Resources, to serve as its Rule 30(b)(6) witness.  Indeed, Mr. Tibbetts and his Human Resources staff spent weeks gathering and synthesizing information, meeting, and discussing the topics on the Notice. During the deposition Putnam produced detailed spreadsheets containing much of the information called for by the Rule 30(b)(6) Notice (despite being under no obligation to do so) in order to facilitate a smooth deposition (examples attached hereto at Exhibit F).   Notwithstanding the obvious depth of Mr. Tibbetts' knowledge about an extremely broad range of topics, at the deposition Ms. Svensson persisted in her efforts to create discovery  controversies.

1.    Plaintiff Repeatedly Inquired Into Areas Outside the Scope of the Listed Topics.

A Rule 30(b)(6) deposition, by its very nature, is limited to the topics listed on the Notice**.**   Instead of hewing to the list that she had refused to consider

particularizing, Ms. Svensson actually tried to expand the list by repeatedly inquiring about matters not listed on her Rule 30(b)(6) notice. For example, Ms. Svensson inquired about the alleged "market-timing" of certain former Putnam employees -- this, despite having questioned Mr. Tibbetts about this very topic at two prior depositions, and despite the fact that "market-timing" nowhere appears on the noticed list of topics. See Exhibits E and G, Ms. Svensson's 30(b)(6) notice and the Rule 30(b)(6) deposition transcript at p. 44-45, respectively.

> MR. WEIR: Did Putnam make a determination that those two individuals had made gains in connection with their market timing activities?
>
> MR. RODRIQUES: Objection. Where is this in the 30(b)(6) notice? And you've already just acknowledged that he's testified about this previously.
> . . .
> MR. WEIR: Item one.
>
> MR. RODRIQUES: "Designation or naming of a person as a 'partner' at Putnam at any time in the period 1999 through 2004, and elements of, and aggregate totals of, total compensation paid or payable to partners at Putnam in those years"?
>
> MR. WEIR: Yes.
>
> MR. RODRIQUES: And how does that --
>
> MR. WEIR: We're talking about the compensation paid to Mr. Justin Scott and Mr. Omid Kamshad who it's been testified to be partners.
>
> MR. RODRIQUES: No, you're not. He's answered that question. They were paid nothing. You are now asking him whether they made a decision that he engaged in excessive short-term trading, something you've already asked him already as an individual.

Ms. Svensson did not limit her efforts to expand the Rule 30(b)(6) notice to her unrelated "market-timing" questions. For example, she also questioned Mr.

Tibbetts about whether a former Putnam *Human Resources* officer left Putnam on a "voluntary" basis, who initiated discussions about this employee's termination and what the purpose was for initiating that conversation. None of this material was included on the Notice. Moreover how the departure of a male, non-investment professional has any relevance, not only to Ms. Svensson's claims, but to the topics listed on her Notice, remains an enigma.

       2.     Plaintiff Refused Putnam's Stipulation to Adopt Prior Testimony on Certain Topics About Which Putnam Employees Have Already Testified.

Despite Ms. Svensson's refusal to particularize her topics, and despite her efforts to expand her notice, Mr. Tibbetts testified extensively for 6 hours on many of the noticed topics. What forced Putnam to seek guidance from the Court, and what ultimately forced Putnam to suspend the deposition, was Ms. Svensson's stubborn insistence that she had the right to inquire about topics as to which the witness, *and every other knowledgeable employee at Putnam*, had testified previously. Indeed, Ms. Svensson persisted in her demands even after Putnam offered to stipulate that the testimony of the previously-deposed witnesses could be deemed to be Rule 30(b)(6) testimony.

Specifically, as discussed above, Putnam made every effort to educate Mr. Tibbetts on the overly broad list of topics included on Ms. Svensson's Notice. However, several of the topics, such as those concerning the termination of Ms. Svensson, the reasons for the termination, the investigation leading up to the termination, and the like, had already been the subject of hours of previous deposition testimony by Putnam employees -- including the people who made the

- 7 -

decision to terminate Ms. Svensson and who conducted the "investigation" leading up to that termination.[3]  Despite having the testimony of every current Putnam employee who knew anything about these topics,  Ms. Svensson insisted on examining Mr. Tibbetts again about the very same topics in the guise of a Rule 30(b)(6) deposition..

Mr. Tibbetts answered dozens of questions on these topics.  Not surprisingly, however, he did not purport to have -- and could not practically have -- memorized each deponent's prior testimony or anticipate every question raised by the Plaintiff.  Consequently, Putnam offered to stipulate that the previous testimony, proffered by those with non-hearsay knowledge about the employment actions taken with respect to Ms. Svensson, be adopted by, and binding upon, the Company:

> For the record, we are perfectly happy to accept Mary MacNamee's [sic] testimony and to accept -- let me finish what I have to say.  And to accept Josh Brooks's testimony as what happened back then are for purposes of 30(b)(6) binding Putnam or otherwise but for this witness to sit here and repeat, try to memorize their testimony because that's all he would have to do and repeat it back makes no sense, Jack.  Rule 30(b)(6) Deposition Tr. at p. 170, attached hereto at Exhibit H.

-------------------

[3]      The Human Resources manager for Investments, Mary McNamee, provided seven hours of testimony about subjects such as these, as did Ms. Svensson's supervisor, Joshua Brooks.  Mr. Tibbetts, prior to the Rule 30(b0(6) deposition, had already provided nine hours of testimony on subjects such as these.

Without explaining why Putnam's proposal made no sense, Ms. Svensson simply refused to accept Putnam's stipulation, responding "[w]e're not interested in your stipulation. You're wasting time."[4]  *Id.* at p. 172, attached hereto at Exhibit I.

Believing an impasse had been reached, Allyson Kurker, one of Putnam's attorneys, attempted to reach this Court for guidance.  Kurker Affidavit at ¶ 6, attached hereto at Exhibit J.  The courtroom clerk, Mark Duffy, reported that this Court was prepared to hear from the parties on a conference call.  *Id.* at ¶ 7.  When Ms. Kurker asked Ms. Svensson's counsel for a telephone number at which the Magistrate could reach the parties, Mr. Moloney provided his firm's general phone number rather than the direct number into the conference room in which the deposition was being conducted.  *Id.* at ¶ 9-10.  Apparently, this Court was gracious enough to make 4 attempts to reach the parties.  *Id.* at ¶ 13.  For reasons beyond Putnam's understanding, none of this Court's 4 attempts to call into the deposition were transferred into the conference room, nor was a note delivered to the conference room to the effect that the Court had attempted to call so that the parties might call the Court if some problem with the switchboard at Plaintiff's law firm existed.  *Id.* at ¶ 14.  Faced with Ms. Svensson's refusal to cooperate at the deposition, and only after inexplicably having failed to reach the Court for guidance, did Putnam suspend the deposition.

---

[4]      Plaintiff's co-counsel, Kevin Moloney, *who was not conducting the deposition,* interrupted the proceedings on a number of occasions to interject with comments like this.

LITDOCS/663761.1/0398860-0000312913

After Putnam suspended the deposition, and *only* then, did Ms. Svensson suggest that she needed to cover this thrice-covered old ground because of some alleged inconsistencies in the prior testimony about the employment decisions made about Ms. Svensson.   True to form, Ms. Svensson neither identified the alleged inconsistencies ahead of time (in the notice) so that the Rule 30(b)(6) witness could have been prepared to resolve them at the deposition, nor identified an inconsistency during the deposition itself.   Indeed, in the 6 hours during which Mr. Tibbetts *did* testify he was *never* asked about a single alleged inconsistency.

In short, Ms. Svensson's conduct before and during the deposition (and the inability of her lawyers to transfer any of 4 calls from this Court into the deposition room or to notify counsel that the Court was attempting to call) amply demonstrates that this Rule 30(b)(6) deposition had less to do with legitimate discovery needs than with the ongoing effort to generate discovery disputes and make discovery an end into itself.

LITDOCS/663761.1/0398860-0000312913

## III.        CONCLUSION

For the foregoing reasons, Putnam respectfully requests that this Court grant

Putnam a protective order quashing any resumption of the Rule 30(b)(6) deposition

and grant such other relief as is just.

By its attorneys,
/s/ Joseph L. Kociubes, BBO #276360
Joseph L. Kociubes, BBO #276360
Louis A. Rodriques, BBO #424720
Allyson E. Kurker, BBO #665231
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: December 4, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 4, 2006.

/s/ Joseph L. Kociubes, BBO #276360

LITDOCS/663761.1/0398860-0000312913

EXHIBIT A

1    compel when somebody says, you know, it's 1,000 pages of

2    deposition.  How do I deal - I mean, if they've go it--

3         THE COURT:  I'll permit a deposition if you can

4    identify a person who you think has information that you

5    haven't been able to get so far relevant to this case, but so

6    far, I mean, the way it's, it's present form I'm not satisfied.

7         MR. MOLONEY:  Your Honor, if we could get a hold of

8    the documents with respect to, the unredacted documents that

9    is, we could narrow the scope of--

10        THE COURT:  What's your position on the unredacted

11   documents?

12        MR. KOCIUBES:  There's two positions, Your Honor.

13   Let me tell you first of all why they were, actually, second,

14   why they were redacted, but to the extent there are particular

15   documents that he thinks should or should have been unredacted,

16   he can file a motion on that.  That's how you deal with that

17   issue.  Documents were redacted for one of three reasons.  One,

18   it was about individuals for whom they never asked that were

19   not part of the 91.  There is no theory that gets him that kind

20   of information.  One of the things that last time you were

21   given a big book for example that every week HR sort of writes

22   a running log of what it is they worked on so if they dealt

23   with one individual, it might be good, it might be bad, it

24   might be somebody referred to some training.  The next week

25   they don't change that.  The next week they'll add a sentence

EXHIBIT B

55

1    testimony.  We discovered when the documents were produced on

2    September the 1st of this year that we discovered for the very

3    first time that these, the performance ratings that were given

4    to the Comparators plus there were alterations to these

5    performance ratings.  And, indeed, Ms. Svensson's performance

6    rating in the 2000 timeframe was changed from 4.8 to 3.0 on a

7    five scale.  And then in September we got the, there appear to

8    be some alterations with respect to other performance ratings,

9    but we haven't had a fair opportunity to examine anybody about

10   that issue.  And it's certainly germane that if Ms. Svensson's

11   performance rating was dropped by a factor of 1.8 and other

12   male Comparators did not have such precipitous changes in their

13   performance ratings, that's an issue that's very pertinent to

14   this case.  Let me give you, can I give you another one?

15            THE COURT:  No.  I've heard enough.

16            MR. KOCIUBES:  Can I just--

17            THE COURT:  The motion to quash is denied.  One

18   deposition.  One day.  You sit down with Mr. Kociubes in the

19   next few days and decide who it's going to be and you better

20   decide what areas you want to prioritize because you're only

21   going to get one day and you may not get everything you want

22   done.

23            MR. KOCIUBES:  Your Honor--

24            MR. MOLONEY:  Yes, Your Honor.

1      MR. KOCIUBES:  --I understand the ruling, but I just

2  think it's conceivable we're going to be back here.  I just

3  want you to understand what my difficulty is because it will be

4  the same difficulty in providing a witness for one day.  For

5  example, with respect to what Mr. Weir just said, they just

6  want the managers, that's topic too and let me just tell you

7  what it is.  Managers performance ratings for the 91

8  Comparators.

9      MR. MOLONEY:  Simply, Your Honor, is Mr. Kociubes

10  going to reargue?

11      MR. KOCIUBES:  Well can I finish, Your Honor?

12      MR. WEIR:  I thought you've made a ruling?

13      THE COURT:  I've made a ruling.  And what you both

14  have to do is to sit down and prioritize it as what you want

15  because you're only going to get one witness and you're only

16  going to get one day, and if one person only knows about one

17  area that's, all you're going to get.

18      MR. MOLONEY:  Your Honor, if I may?  Under the Rule

19  if they're going to produce one witness to testify about all

20  matters, that witness must be an educated witness and the

21  testimony under 30(b)(6) and Rule 32 it has to be an educated

22  witness.  To limit us to one day--

23      THE COURT:  I realize - I know what the rule is.

24      MR. MOLONEY:  Okay.

25      THE COURT:  And I know what the language says.

EXHIBIT C

-----Original Message-----
From: JohnKWeir47@aol.com <JohnKWeir47@aol.com>
To: Kociubes, Joseph L. <joe.kociubes@bingham.com>; Rodriques, Louis A.
<louis.rodriques@bingham.com>
CC: kfm@barronstad.com <kfm@barronstad.com>; moloneys@verizon.net
<moloneys@verizon.net>
Sent: Tue Nov 07 18:05:25 2006
Subject: Re: 30(b)(6) and conference call


Dear Joe and Lou:

  Particularly in light of the fact that the Court "denied" Putnam's motion to quash the
30(b)(6) deposition, I do not believe there is a legal obligation to remove any of the
areas of expected testimony from our Notice, and nothing in the transcript would
suggest otherwise. However, in accordance with the Court's instruction that we
"prioritize" these areas of testimony, I hereby advise Putnam that priority will be given
to the following areas: 1-5, 8, 10-11 and 13-14. As to the balance of the areas,
Plaintiff will examine if time permits, and in no way is withdrawing these items as
proper subjects of examination, as to which the 30(b)(6) witness is expected to be
knowledgeable. As to item 15, however, Plaintiff believes that this item is best
handled by stipulation or by requests to admit to be served after the 30(b)(6)
deposition is completed, and would request Putnam's cooperation in that regard.
Accordingly, I would appreciate it if you would answer Kevin's original question, which
I understood to be whether you intend to permit the deposition to go forward on
11/17/06, as scheduled. Please advise. Jack Weir.

EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * *     Civil Action No. 04-12711-PBS
                                *
                                *     BBO Bo. 351000
LISA SVENSSON,                  *
                                *
                                *     Notice, Pursuant to
                Plaintiff,      *     Fed. R. Civ. P. 26 and
                                *     30(b)(6), of the Taking
v.                              *     of the Deposition of
                                *     Defendant Putnam Investments,
                                *     LLC on November 17,
PUTNAM INVESTMENTS, LLC         *     2006
et al.,                         *
                Defendants.     *
                                *
* * * * * * * * * * * * * * *
```

To:  All parties and counsel of record:

Please take notice that, pursuant to Fed. R. Civ. P. 26 and

30(b)(6), at 10:00 a.m. on Friday, November 17, 2006, at the

offices of Kevin F. Moloney, Barron & Stadfeld, P.C., 100

Cambridge Street, Suite 1310, Boston, Massachusetts 02114,

plaintiff Lisa Svensson ("Svensson"), by her attorneys, will

take the deposition upon oral examination of defendant Putnam

Investments, LLC ("Putnam") before a Notary Public in and for

the Commonwealth of Massachusetts or before some other officer

authorized by law to administer oaths.

You are invited to attend and cross-examine.

The oral examination will continue from day-to-day until

completed.

The definitions used herein and the matters on which examination is requested are set forth below.

## DEFINITIONS.[1]

1.  Communication: "communication" means the transmittal of information or opinion (in the form of facts, ideas, inquiries, or otherwise).

2.  Document: "document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) ("...including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information or opinion can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form...."), and a draft or non-identical copy is a separate document within the meaning of this term.  E-mail and film, video and digital recordings are included within the meaning of "document."

3.  Thing or tangible thing: "thing" and "tangible thing" are both synonymous in meaning and equal in scope to the usage of term, tangible thing, in Fed. R. Civ. P. 34(a).

4.  Identify (with respect to persons): When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

5   Identity (with respect to persons): When referring to a person, "identity" means, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that

---

[1] Svensson reserves the right to amend prior to the deposition this statement of definitions.

2

person need be listed in response to subsequent discovery requesting the identification of that person.

6. <u>Identify (with respect to documents)</u>: When referring to documents, to "identify" means to give, to the extent known, the

     (a) type of document;
     (b) general subject matter;
     (c) date of the document; and,
     (d) author(s), addressee(s), and recipient(s).

7. <u>Identity (with respect to documents)</u>: When referring to documents, "identity" means, to the extent known, the

     (a) type of document;
     (b) general subject matter;
     (c) date of the document; and,
     (d) author(s), addressee(s), and recipient(s).

8. <u>Parties</u>: plaintiff, defendant-in-counterclaim, defendant, plaintiff-in counterclaim, as well as a party's full or abbreviated name or a pronoun referring to a party means that party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

9. <u>Person</u>: "person" means any natural person or any business, legal, or governmental entity or association.

10. <u>Concern and concerning</u>: "concern" and "concerning" mean, respectively, refer to, describe, evidence or constitute, and referring to, describing, evidencing, or constituting.

11. <u>State the Basis</u>: When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall,

     a. identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information or opinion regarding the alleged facts or legal conclusions referred to by the interrogatory;

3

b.  identify each and every communication that forms any
    part of the source of the party's information or
    opinion regarding the alleged facts or legal
    conclusions referred to by the interrogatory;

c.  state separately the acts or omissions to act on the
    part of any person (identifying the acts or omissions
    to act by stating their nature, time, and place
    identifying the personal involved) which form any part
    of the party's information or opinion regarding the
    alleged facts or legal conclusions referred to in the
    interrogatory; and,

d.  state separately any other fact, which forms the basis
    of the party's information or opinion regarding the
    alleged facts or conclusions, referred to in the
    interrogatory.

13. Factual basis: "factual basis" includes, without
    limitation,

a.  the identity of each and every document (and, where
    pertinent, the section, article, or subparagraph
    thereof), which forms any part of the source of the
    party's information or opinion regarding the alleged
    facts or legal conclusions referred to;

b.  the identity of each and every communication which
    forms any part of the source of the party's
    information or opinion regarding the alleged facts or
    legal conclusions referred to;

c.  the statement of the acts or omissions to act on the
    part of any person (identifying the acts or omissions
    to act by stating their nature, time, and place
    identifying the personal involved) which form any part
    of the party's information or opinion regarding the
    alleged facts or legal conclusions referred to; and,

d.  the separate statement of any other fact that forms
    the basis of the party's information or opinion
    regarding the alleged facts or conclusions referred
    to.

14. Affiliate: "affiliate" means any person who or which
    directly, or indirectly through one or more intermediaries,

4

controls, is controlled by, or is under common control with, any other person.

15. <u>You</u>, <u>your</u>, <u>yourself</u>: "you," "your" and "yourself" mean the person(s) to whom or which the following interrogatories, request for production of documents or request for admissions, as the case may be, is directed and by whom they are to be answered or responded to, and any <u>Affiliate</u> thereof.

16. <u>Svensson</u>: "Svensson" means plaintiff Lisa Svensson.

17. <u>Putnam</u>: "Putnam" means defendant Putnam Investments, LLC.

18. <u>Lasser</u>: "Lasser: means defendant Lasser.

19. <u>Haldeman</u>: "Haldeman" means Putnam's resent Chief Executive Officer.

20. <u>IMD</u>: "IMD" means Putnam's Investment Management Division.

21. <u>IDMC</u>: "IDMC" means the Investment Division Management Committee at Putnam.

22. <u>360</u>: "360" means the Putnam 360° Peer Feedback Survey as used at Putnam.

23. <u>Year end review</u>: "year end review" means t means a document evidencing a review of a person's performance at Putnam for the year involved.

24. <u>Performance review</u>: "Performance review" means a document evidencing a review of a person's performance at Putnam.

25. <u>Investment Division & ISD Human Resources Updates</u>: "Investment Division & ISD Human Resources Updates" means a form of the same name as used at Putnam.

26. <u>PDPR</u>: "PDPR" means the Performance and Development Planning and Review form as used at Putnam.

27. <u>Managing Director</u>: "Managing Director" means the position of that name at Putnam.

28. <u>MD</u>: "MD" means Managing Director.

29. Partner: "partner" means the position of that name used at Putnam.

30. Complaint: "complaint" means Svensson's complaint in this case as amended.

31. Putnam's answer: "Putnam's answer" means Putnam's answer filed in this case.

32. Lasser's answer: "Lasser's answer" means Lasser's answer filed in this case.

33. 91 Comparators: "91 Comparators" means the 91 persons agreed to by Svensson and defendants as comparators for purposes of discovery.

THE SUBJECT MATTERS.[2]

The subject matters of the deposition will be one or more

of the following:

1. Designation or naming of a person as a "partner" at Putnam at any time in the period 1999 through 2004, and elements of, and aggregate totals of, total compensation paid or payable to partners at Putnam for each year in the period January 1, 1999, through December 31, 2004.

2. Managers' performance ratings for the 91 Comparators 1999 through 2004 (whether or not any one or more of the 91 Comparators were "partners"), including any alterations of managers' performance ratings by one or more members of top management or by any other person at Putnam.

3. Criteria for "guarantees" of compensation paid or payable to any one or more of the 91 Comparators for each year in the period January 1, 1999, to December 31, 2004, including identities of decision makers, reason(s) for such decisions, amounts of each such "guarantee" and aggregate amount(s) of guarantees paid or payable in each such year or thereafter.

4. Designation of Putnam investment professionals as "key players" or "franchise players" at any time in the period January 1, 1999, to December 31, 2004,, including

---

[2] Svensson reserves the right to amend prior to the deposition this statement of the subject matters.

identities of decision makers, reason(s) for such decisions, and the effect of each such designation on comparators' total compensation paid or payable for each such year.

5.  Awarding of deferred compensation (voluntary and involuntary), stock and/or stock options to Putnam investment professionals in the period January 1, 1999, to December 31, 2004, including identities of decision makers, criteria utilized and basis for awards to any one or more of the 91 Comparators.

6.  All actions by Putnam in the period January 1, 1999, to the present, to hire, promote, not to demote or transfer and/or not to terminate the employment of female investment professionals or deprive them of their management responsibilities.

7.  The factual bases for any contentions by Putnam that any one or more of the 91 Comparators in this case are not, in fact, comparators of Svensson.

8.  In regard to the females among the 91 Comparators in the period January 1, 1999, to December 31, 2004 (whether or not viewed by Putnam as voluntary or involuntary): terminations of or separations from employment by Putnam demotions, transfers and/or reductions in compensation including the identities of the decision makers, the factual bases for each such decision, the identities of any persons who assumed the responsibilities of any such of the 91 Comparators, and the effect on aggregate and average compensation of males and females included in the 91 Comparators for each such year.

9.  Issues arising from any documents produced or ordered to be produced by Putnam as a result of any decision by the court at the hearing to be held on October 26, 2006 before the court (Bowler, U.S.M.J.).

10. Payment of the tuition reimbursement obligation of Darren Peers, including the accounting treatment of this transaction.

11. The "investigation" of Lisa Svensson undertaken by Putnam in the summer of 2003, including, without limitation, the notes taken by any Putnam HR representative, including Eric Hutcherson, of interviews of, or conferences with, any

7

person at Putnam including, without limitation, Konstantin Stoev.

12. Communication between Putnam and Chris O'Malley, Ellis Eckland or Darren Peers concerning Svensson in the period March 1, 2002, to December 31, 2003.

13. The factual basis for the decision to remove Svensson from any Portfolio Management position in or about March 2002 while retaining male comparators in such positions, and any promotions to Portfolio Management positions of any persons in the period March 1, 2002, to September 15, 2003.

14. The decisions to deprive Svensson of her management responsibilities and the decision on to terminate her employment, including the factual bases for such decisions, the identities of all persons consulted concerning the decisions, whether and how any of Putnam's written criteria for effecting terminations were utilized, and the decision to draft a Termination Agreement for Lisa Svensson on or about August 27, 2003.

15. Authentication of documents and tangible things produced by Putnam in this case unless agreed to by counsel or admitted in response to requests for admission.

        LISA SVENSSON, plaintiff,

        By her attorneys,

        BARRON & STADFELD, P.C.

        *Kevin F. Moloney (gah)*
        Kevin F. Moloney    BBO No. 351000
        100 Cambridge Street, Suite 1310
        Boston, Massachusetts 02114
        Tel.: 617.723.9800/531.6569

Dated: October 10, 2006

## Certificate of Service.

A copy of the within document was delivered by messenger to counsel of record: Joseph L. Kociubes, Louis A. Rodriques, BINGHAM, MCCUTCHEN, LLP, 150 Federal Street, Boston, Massachusetts 02110; David S. Rosenthal, NIXON PEABODY LLP, 100

Summer Street, Boston, Massachusetts 02110.

Kevin F. Moloney

Dated: October 10, 2006

[373564.1]

9

**BARRON** & **STADFELD** PC
ATTORNEYS

100 CAMBRIDGE STREET SUITE 1310
BOSTON, MASSACHUSETTS 02114

DIRECT DIAL
(617) 531-6569

(617) 723-9800
FAX (617) 523-8359
WWW.BARRONSTAD.COM

E-MAIL
kfm@barronstad.com

October 10, 2006

Via messenger

Joseph L. Kociubes
Bingham McCutchen, LLP
150 Federal Street
Boston, Massachusetts 02110

RE:  Lisa Svensson v. Putnam Investments, LLC, et al.,
     United States District Court, District of Massachusetts,
     Civil Action No. 04-12711-PBS

Dear Joe:

    Enclosed please find "Notice, Pursuant to Fed. R. Civ. P. 26 and
30(b)(6), of the Taking of the Deposition of Defendant Putnam
Investments, LLC on Friday, November 17, 2006."

                    Cordially,

                    BARRON & STADFELD, P.C.

                    Kevin F. Moloney

KFM/sli

cc:  David S. Rosenthal (via messenger)
     Lisa Svensson (via e-mail)
     Jack Weir (via e-mail)

[373451.1]

EXHIBIT E

**From:** JohnKWeir47@aol.com
**Sent:** Wednesday, November 08, 2006 5:12 PM
**To:** Rodriques, Louis A.
**Cc:** kfm@barronstad.com; moloneys@verizon.net; Kurker, Allyson E.; Kociubes, Joseph L.
**Subject:** Re: 30(b)(6) and conference call

Lou:

As the motion to quash the 30(b)(6) deposition has been "denied" by Magistrate Judge Bowler, and as you have not sought timely relief from Judge Saris, it is Plaintiff's view that the issue of the scope of the areas of questioning has now been fully adjudicated. Furthermore, in accordance with the Court's direction, we have prioritized the areas to be covered in order to attempt to fit within the allotted one day of testimony. Nothing in the Rule or in the transcript of the hearing in Court in any way imposes upon Plaintiff the obligation to "further narrow the topics or to identify the precise questions to which you need answers" in advance of the deposition. Instead, Rule 30(b)(6) specifically requires Putnam to designate a witness or witnesses to "testify as to matters known or reasonably available to the organization", and it is to that standard that we expect Putnam to adhere. In the event that Putnam's designated witness fails to have or obtain knowledge "reasonably available to the organization", or otherwise fails to adhere to the standards required by the Rule, Plaintiff fully intends to seek appropriate relief, including the possibility of a further deposition, plus sanctions under Rules 37(b)(2) and 37 (c). Please be guided accordingly. Jack

12/4/2006

EXHIBIT F

## Partners
1999-2003

| | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|
| Bibi,Philippe | | | X | X | X |
| Boneparth,John F. | X | X | X | X | X |
| Bradford Jr.,Linwood E. | | | X | X | X |
| Brooks,Joshua H. | | | | | X |
| Browchuk,Brett C. | X | X | X | X | X |
| Brown,John M. | X | X | X | X | X |
| Burke,Robert W. | X | | | | |
| Coburn,Gary N. | | | | | |
| Collman,Kathleen M. | X | X | | | |
| Connolly,William T. | X | X | X | X | X |
| Cotner,C. Beth | X | X | X | | |
| Cronin,Kevin M. | | | X | X | X |
| Curtin,William J. | | | | | |
| D'Alelio,Edward H. | X | X | | | |
| DeTore,John A. | X | | | | |
| Durgarian,Karnig H. | X | X | X | X | X |
| Esposito,Vincent | X | X | X | | |
| Esteves,Irene M. | X | X | X | X | X |
| Ferguson,Tim | X | X | X | X | |
| Forrester,Gordon M. | | | | X | X |
| Gallary,Peter H. | X | X | X | X | X |
| Gillis,Roland W. | | X | X | X | X |
| Goodman,Robert | | X | X | X | X |
| Habakus,Louise Kuo | X | X | | | |
| Haldeman Jr.,Charles E. | | | | X | X |
| Haslett,Thomas R. | X | X | X | X | |
| Hoffman,Theron S. | | | X | | |
| Jacobs,Jerome J. | X | X | X | X | X |
| Joseph,Joseph P. | | | | X | X |
| Kamshad,Omid | | X | X | X | |
| Kanwal,Amrit | | | | X | X |
| King,David L. | | | | X | X |
| Kohli,D. William | | | | | |
| Kreisel,Anthony I. | X | | | | |
| Krichmar,Steven D. | | | X | X | X |
| Kuenstner,Deborah F. | | | X | X | X |
| Landes,William J. | X | X | X | X | X |
| Leibovitch,Richard G. | X | X | X | X | |
| Lucey,Robert F. | X | X | | | |
| Lucey,Thomas J. | X | X | X | | |
| Maxwell,Scott M. | X | | | | |
| McCracken,Donald F. | X | X | | | |
| McMullen,Carol C. | X | X | | | |
| Miller,Daniel L. | X | X | X | X | X |
| Miller,Janis E. | | | | | |
| Monaghan,Richard A. | X | X | X | X | X |
| Morgan Jr.,John J. | X | | | | |

| | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|
| O'Donnell,Patrick | | | | | |
| Oristaglio,Stephen M. | X | X | X | X | X |
| O'Toole,Brian P. | | | | X | X |
| Palombo,Joseph R. | | | | | |
| Papa,Virginia A. | | X | X | X | X |
| Peacher,Stephen C. | | | | X | X |
| Peters,Jeffrey F. | | | | X | X |
| Porcelli,Francis M. | | | | X | X |
| Price,Quintin | X | X | X | | |
| Regan,Anthony W. | | | | | |
| Reilly,Thomas V. | X | X | X | | |
| Scott,Justin M. | X | X | X | X | |
| Shadek Jr.,Edward T. | | | | X | X |
| Shiebler,William N. | | | | | |
| Silver,Gordon H. | X | X | X | X | X |
| Sorensen,Eric H. | | X | X | X | X |
| Spiegel,Steven | X | X | X | X | X |
| Swift,Robert | X | X | X | | |
| Taylor,Gavan A. | X | X | | | |
| Turpin,Thomas M. | | X | X | | |
| Waldman,David L. | | | | | |
| Warren,Paul C. | | | X | X | |
| Wetlaufer,Eric M. | | X | X | X | |
| Whiston,Sandra C. | | | | X | X |
| Woolverton,William H. | X | X | X | X | X |
| Zieff,William E. | | | | | |
| | 37 | 39 | 39 | 42 | 36 |

| 1999 | |
| --- | --- |
| **Name** | **Annual** |
| Allansmith,Lauren L. | $400,000 |
| Bloemker,Rob Allan | $200,000 |
| Dexter,Stephen P. | $425,000 |
| Divney,Kevin M. | $200,000 |
| Elavia,Tony H. | $240,000 |
| Hamlin,David E. | $350,000 |
| Melhuish,Nicholas J. A. | $140,000 |
| Morris,Dirk | $575,000 |
| Scanlon,Paul D. | $175,000 |
| Sievert,Jean I. | $450,000 |
| Smith Jr,Leo J. | $1,000,000 |
| Sullivan,William J. | $500,000 |
| Wheeler,Diane D.F. | $125,000 |
| **13** | **$4,780,000** |

| 2000 | |
| --- | --- |
| **Name** | **Annual** |
| Bloemker,Rob Allan | $600,000 |
| Davis,Simon | $550,000 |
| Geer,Bartlett R. | $1,000,000 |
| Makino,Shigeki | $1,250,000 |
| Moore,Colin | $1,500,000 |
| Morris,Dirk | $575,000 |
| Sellitto III,Anthony R. | $600,000 |
| Sorensen,Eric H. | $3,000,000 |
| Wiess,James C. | $1,200,000 |
| **9** | **$10,275,000** |

**2001**

| Name | Annual |
|---|---|
| Makino,Shigeki | $1,250,000 |
| Nance,Michael E. | $775,000 |
| O'Malley,Christopher J. | $30,000 |
| Sorensen,Eric H. | $3,000,000 |
| Wiess,James C. | $1,200,000 |
| **5** | **$6,255,000** |

**2002**

| Name | Annual |
|---|---|
| Norchi,Terrence W. | $725,000 |
| **1** | **$725,000** |

**2003**

| Name | Annual |
|---|---|
| Brooks,Joshua H. | $1,775,000 |
| Drew,Maria Elena | $225,000 |
| **2** | **$2,000,000** |

**2004**

| Name | Annual |
|---|---|
| Brooks,Joshua H. | $1,775,000 |
| Drew,Maria Elena | $250,000 |
| **2** | **$2,025,000** |

**Performance Ratings of 91 Comparators 1999-2004**

| Employee Name | 1999 / 1999 Manager | 2000 / 2000 Manager | 2001 / 2001 Manager | 2002 / 2002 Manager | 2003 / 2003 Manager | 2004 / 2004 Manager | Notes |
|---|---|---|---|---|---|---|---|
| Bacon, Richard | 4.05 Browchuck, Brett | 4.5 Lebowich, Richard | 4.5 Lebowich, Richard | 4.5 Lebowich, Richard | | | 2002 review changed to 3.5 |
| Blocher, Robert | 4.5 Cronin, Kevin | 4.5 Cronin, Kevin | 3.7 Cronin, Kevin | 3.7 Cronin, Kevin | | | 2004 review changed to 4.0 |
| Boecker, Mark | 3.6 Bocelli/Allansmith | 4.5 Allansmith/Landes | 4 Makino, Shigeki | 4 Makino, Shigeki | | 3.78 Makino, Shigeki | 2001 review changed to 4.0 |
| Boelli, John | 4 Price, Quinten | 3.73 Farrel, Deborah | 4.35 Morgan, Kelly | | | | |
| Brooks, Joshua | | | | | | | |
| Byrnes, R.J. | 4.6 Bocelli/Allansmith | 4.2 Allansmith | 4.5 Allansmith/Landes | 4.5 Cotner/Morgan | | | 2000 & 2001 reviews changed to 5.0 |
| Calip, Joshua | 4.75 Joseph, Joseph | 4.8 Kamshad, Omid | 4.5 Kamshad, Omid | 4.5 Kamshad, Omid | | | 2001 review changed to 4.0 |
| Capone, Richard | 3.5 Sullivan, Roger | 3.8 Sullivan, Roger | | 3 Warren, Paul | | | |
| Clark, Dana | | 3 Wetlaufer, Eric | | 4.8 Kamshad, Omid | | | |
| Curci, Simon | | 3.5 Kamshad, Omid | 3 Kamshad, Omid | 4.8 Kamshad, Omid | | | 2002 review changed to 5.0 |
| DeChristopher, Brian | | 3.5 Kamshad, Omid | 3.5 Gorman, Steve | 2.5 Morgan, Kelly | | | 2001 review changed to 3.5 |
| Dexter, Stephen | 3 Swift, Robert | 4 Swift, Robert | 3.5 Swift, Robert | 4 Kamshad, Omid | | | 1999 rating changed from 3.35 to 3.0 |
| Dney, Kevin | | 3.6 Haslet/Elavia | 3.5 Elavia/Wess | 4.5 Elavia/Wess | | | 2000 rating changed from 4.1 to 4.0 |
| Eigerman, Nathan | 3.5 DeTore, John | 4.5 Elavia/Swift | 4.5 Elavia/Swift | 3.5 Elavia/Kamshad | | | 2001 rating changed from 3.65 to 3.5 |
| Elena, Tony | | 3.67 Landes | 4.05 Sorenson/Landes | 4.5 Sorenson | | | 2002 rating changed from 4.2 to 4.0 |
| England, Richard | 3.91 | 4 Cotner | 3 Cotner | 3 Warren, Paul | | | |
| Geier, Bart | | 3.5 Rositanko | 3.5 Kuestner, Deb | 3.5 Kuestner, Deb | | 4 Kuestner, Deb | |
| Getner, David | 4.5 Rositanko | 4.5 Miller, Dan | 4 | 3.5 Oler, Steve | | 4.1 Makino, Shigeki | 2001 review by Ostraglio 2.75 |
| Gish, Roland | 4.5 Miller, Dan | 3.5 | 3.5 Miller | 3.5 Miller, Dan | | | 2001 rating changed from 2.75 |
| Gorman, Steve | 4.5 Maloney, Kevin | 4.5 Landes | | 3.5 Landes | | | 2002 rating changed from 3.75 |
| Graham, Andrew | | 4.5 Joseph, Joe | | 2.5 Joseph, Joe | | | |
| Greenleaf, Brad | | | 4.75 Scott | | | | |
| Hayden, Peter | 4 Gillis/Miller | 3.5 Swift | 3.5 Swift | 3.5 Dexter, Steve | | 4.2 Dexter, Steve | |
| Loughlin, David | 4 Jacobs, Jerry | 3.5 Jacobs | 4 Jacobs | 3 Jacobs | | | 2001 additional 5 |
| Macleet, Tom | 4 Scott, Justin | 3.5 Scott | | | | | |
| JsJohn, Joe | | | | | | | |
| Kamshad, Omid | 5 Scott, Justin | 4.5 Scott, Justin | 4.75 Scott | | | | |
| Kamp, David | | 4.5 Kuestner | 4 Kuestner | 4 Kuestner | | 5 Kuestner | |
| Kohabi, Jeff | 3.5 Landes | 4 Landes | 4 Kuestner | 4 Sorenson | | 5 Kuestner | 1999 additional 4 |
| Lamam, Cole | 3.5 Smith, Margaret | 3.7 Smith/Kuestner | 4 Kuestner | 3.5 Kuestner | | 3.5 Kuestner | |
| LeDisay, Jeff | 4.5 Cotner | 3.75 Cotner | 3.5 Cotner | | | | |
| Lode, Geir | 3 Landes | 3.5 Elavia/Haslet | 3.5 Wess/Elavia | 4 Warren | | | |
| Makino, Shing | | 3.5 | 3.5 Beck/Warren | 4.5 Warren | | | 2001 additional 3.5 |
| Mdak, Saba | 4.6 Farrel, Deb | 3.9 Farrel, Deb | 4 Morgan | 4.5 Morgan | | | |

## Performance Ratings of 91 Comparators 1999-2004

| Employee Name | 1999 | 1999 Manager | 2000 | 2000 Manager | 2001 | 2001 Manager | 2002 | 2002 Manager | 2003 | 2003 Manager | 2004 | 2004 Manager | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wayland, Paul | 4.5 | Beck | 4 | Warren/Beck | 4 | Warren | 4 | Warren | | | | | |
| Myers, Andy | 4.5 | McMullen, Carol | 4.5 | Price, Quintin | 4 | Landes | 4.5 | Landes | | | | | |
| Mehta, Sandeep | 4 | Joseph, Joe | 4.5 | Joseph, Joe | 4 | Joseph, Joe | | | | | 3.5 | Kuestner | |
| Melhuish, Nick | 4 | Gorman | 4 | Kamshad | 3.5 | Kamshad | 3 | Kamshad | | | 3.5 | Kamshad | |
| Vice, Chris | 4 | Morgan | 3 | Oristaglio | 3.5 | Elavia/Sorenson | 3.5 | Elavia/Kuestner | | | 3.5 | Kuestner | |
| Vice, Dan | | | | | | | | | | | | | |
| Ross, Colin | | | 3.5 | Kuestner | 3 | Oristaglio | 3 | Joseph | | | | | |
| Moore, Corey | | | | | 3.5 | Kuestner | 3.5 | Landes | | | | | |
| Matic, Dirk | 4 | Gillis/Miller | 3.5 | Joseph, Joe | 3 | Landes | 3 | Kuestner | | | | | |
| Nelson, Mike | 4 | Landes | 3 | Landes | 2.5 | Miller, Dan | 3.5 | Miller, Dan | | | | | |
| Nolan, Hugh | 5 | Miller, Dan | 3.5 | Miller, Dan | 3 | Kuestner | 3 | Kuestner | | | 3.5 | Kuestner | |
| Nagac, Mike | | | | | | | | | | | | | |
| O'Malley, Chris | | | | | 3.5 | Warren, Paul | 4.5 | Warren, Paul | | | | | |
| Cruz, Steve | 4.5 | Haslett | 4 | Kamshad | 3 | Gorman, Steve | 3.5 | Svensson, Lisa | | | 3.33 | Davis/Byrne | 2002 changed from 4.25 |
| Presto, Jim | 4 | Cronin/Waldman | 4 | Cronin | 3.5 | Kamshad | 3 | Kamshad | | | | | |
| Santos, Dave | | | 3.5 | Cotner | 3.5 | Cronin | 3.75 | Cronin | | | 3.5 | Davis/Byrne | |
| Scanlon, Paul | 3.5 | Cotner | 4.5 | Quistberg/Paul | 4.1 | Cotner | 3.5 | O'Toole | | | | | |
| Scott, Justin | 4 | Morgan/Jack | | | | | 4.5 | Peacher | | | | | |
| Sepho, Tino | | | | | 4.5 | Ferguson | | | | | | | |
| Shtek, Ned | 3.5 | Reilly, Tom | 4 | Cotner | 2.5 | Cotner | 3 | Kuestner | | | | | |
| Reilly, Tom | | | 4 | Ferguson | 4 | Cotner | 3 | Kuestner | | | | | |
| Simon, Sheldon | | | 3 | Shadek | | | | | | | | | |
| Smith, Leo | 4 | Browchuck | 3 | Lebrovitch | 4 | Shadek | 4.5 | Landes | | | | | 2002 changed from 4.25 |
| Swenson, Eric | | | 3 | Lebrovitch | 4 | Lebrovitch | | | | | | | |
| Sheck, Mike | 4.5 | Beck | 4 | Beck/Warren | 4 | Landes | | | | | | | |
| Sloan, George | 3.9 | unknown signature | 2.5 | Moore, Colin | 2.5 | Kamshad | 4 | Kamshad | | | 3.43 | Davis/Byrne | |
| Sloan, William | 3.83 | Browchuck | 4 | Lebrovitch | 3.5 | Lebrovitch | 4 | Lebrovitch | | | | | 2000 additional 4 |
| Serif, Robert | | | 4 | Morgan/Jack | 3 | Oristaglio | | | | | | | |
| Warren, Paul | 5 | Scott, Justin | 4.5 | Scott, Justin | 4 | Scott, Justin | | | | | | | 2001 additional 4 |
| Weiss, Manny | 4.33 | | 4 | Cotner | 4 | Cotner | 3.5 | Knutzen | | | | | |
| Wyganter, Eric | | | 4 | Morgan/Jack | 3 | Cotner | | | | | | | |
| Wyss, Jim | | | 4.3 | Haslett/Tom | 3.5 | Warren | 5 | Warren | | | | | |
| Diep, Michael | 3.5 | Price | 3 | Price | 3.5 | Gorman | 3 | Cotner/Morgan | | | 4 | Bloemker | |
| Amunsmith, Lauren | 4.5 | Boselli/Price | 4 | Price | 3 | Landes | 3 | Kohli/Bloemker | 3 | Bloemker | 4 | Bloemker | 2000 additional 3.25 and 2.65 |
| Justic, Andrea | 3.5 | Martino | 3.5 | Kohli/Cronin | | | | | | | | | |
| Oster, Beth | | | 3.5 | Morgan/Jack | 3.5 | Morgan/Jack | | | | | | | |
| Orta, Maria | | | | | | | | | | | | | |
| Farrell, Debbie | 4.5 | Price | 3.9 | Price | | | | | | | 4 | Kuestner | |
| Frieling, Pam | 4 | McMullen, Carol | 3.5 | Price | 3.5 | Landes | 3.5 | Kuestner | | | | | 2000 and 2002 changed from 3.7 |
| MacElwee-Jones | | | 4 | Ferguson | | | | | | | 4 | Kuestner | 2000 changed from 3.8 |
| Slee-Bystrysky, Jvka | 3.5 | Yogg | | | | | | | | | | | |
| Nom, Karen | 3.5 | Smith | 3.3 | Price | | | | | | | | | |

**Performance Ratings of 91 Comparators
1999-2004**

| Employee Name | 1999 1999 Manager | 2000 2000 Manager | 2001 2001 Manager | 2002 2002 Manager | 2003 2003 Manager | 2004 2004 Manager | Notes |
|---|---|---|---|---|---|---|---|
| Koehler, Deb | 3.5 Reilly,Tom | 4.5 Ferguson, Tim | 4.2 Ferguson,Tim | | | | |
| Lentler, Jennifer | 3 Peacher | 2 Peacher | | | | | |
| McCormack, Sue | 3 Hamlin | 3 Hamlin | 4 Hamlin | 4 Jacobs | | 4.125 Hamlin | |
| McMullen, Carol | | | | | | | |
| Morand, Jeanne | | 3.5 Kuestner | 5 Kuestner | 4.5 Kuestner | | 4.25 Kuestner | 2004 changed to 4.5 |
| Morgan, Kelly | 4.78 Swift | 4.5 Swift | 3.5 Swift | 4.5 Landes | | | 2002 changed from 4.25 |
| Parker, Margery | 3.5 Wetlaufer | 4 Wetlaufer | 3.5 Wetlaufer | 2.5 Wetlaufer | | | |
| Peters, Carmel | | 3 Kamshad/Davis | 3.5 Kamshad | 3.5 Kamshad | | | |
| Scace, Jean | 4.5 Warren | | 4.5 Kamshad | 4.5 Kamshad | | | |
| Speer, Margaret | 4 Price/Holding | 3.5 Price | 3 Sullivan,Roger | 4 Sullivan,Roger | | | |
| Speer, Erin | 3.5 Price | 4 Price | 3.5 Price | | | | |
| Svensson, Lisa | 4.78 Swift | 4 Swift | 3.5 Swift | 3.5 Swift | | | 2001 changed from 3.45 |
| Thomson, Rosemary | 4 Peacher | 4 Peacher | 4 Peacher | 3.5 Peacher | | | 1999 changed from 3.8 |
| Wheeler, Diane | 2 Cronin | 2.5 Peacher | | | | | |
| Williams, Fayval | 4.3 Boselli/Allansmith | 3.4 Farrell | 3.5 Gorman | 3.5 Gorman | | | |

EXHIBIT G

JONES REPORTING COMPANY
(617) 451-8900

44

1  receive any allocation of bonus for that year?

2  A.  No.

3  Q.  Now, there's been prior testimony in

4  this case, by you, in fact, concerning the

5  market timing activities of those two

6  individuals, Mr. Scott and Mr. Kamshad.  Do you

7  recall that testimony, sir?

8  A.  I do.

9  Q.  Did Putnam make a determination that

10  those two individuals had made gains in

11  connection with their market timing activities?

12  MR. RODRIQUES:  Objection.  Where

13  is this in the 30(b)(6) notice?  And you've

14  already just acknowledge that he's testified

15  about this previously.

16  He is not here to testify about

17  anything that strikes your fancy, Jack.  He's

18  here to testify about the subject matters of the

19  notice.

20          MR. WEIR:  And I think it's part of

21   the --

22          MR. RODRIQUES:  Can you show me

23   where?

24          MR. WEIR:  Item one.


JONES REPORTING COMPANY
(617) 451-8900


45


1          MR. RODRIQUES:  "Designation or

2   naming of a person as a 'partner' at Putnam at

3   any time in the period 1999 through 2004, and

4   elements of, and aggregate totals of, total

5   compensation paid or payable to partners at

6   Putnam in those years"?

7          MR. WEIR:  Yes.

8          MR. RODRIQUES:  And how does

9   that --

10          MR. WEIR:  We're talking about the

11   compensation paid to Mr. Justin Scott and

12   Mr. Omid Kamshad who it's been testified to be

13   partners.

14        MR. RODRIQUES:  No, you're not.

15   He's answered that question.  They were paid

16   nothing.

17        You are now asking him whether they

18   made a decision that he engaged in excessive

19   short-term trading, something you've already

20   asked him already as an individual.

21        MR. WEIR:  I simply --

22        MR. RODRIQUES:  By rule he is not

23   required to answer that question, and so he

24   won't.

EXHIBIT H

170

1     Q.  Did you consult with Mary MacNamee on

2    this subject prior to your deposition here

3    today?

4          MR. RODRIQUES:  For the record, we

5    are perfectly happy to accept Mary MacNamee's

6    testimony and to accept -- let me finish what I

7    have to say.  And to accept Josh Brooks's

8    testimony as what happened back then are for

9    purposes of 30(b)(6) binding Putnam or otherwise

10   but for this witness to sit here and repeat, try

11   to memorize their testimony because that's all

12   he would have to do and repeat it back makes no

13   sense, Jack.

14         MR. WEIR:  Let me continue, please.

15    Q.  Did you consult with Mary MacNamee in

16   connection with your preparation for your

17   testimony here today as a 30(b)(6) witness on

18   behalf of Putnam?

19    A.  On some of these items, yes.

20     Q.  On this subject?

21     A.  No.

22     Q.  Did you consult with Josh Brooks on

23   this subject?

24     A.  No.

EXHIBIT I

172

1    stipulation.  I want testimony from a witness

2    who is an officer, director or managing agent as

3    I'm entitled to get under Rule 30(b)(6).

4        MR. RODRIQUES:  He is a designee,

5    and all he is going to do is tell you he doesn't

6    know anything more than the witnesses that have

7    already testified.

8        MR. MOLONEY:  We are not interested

9    in your stipulation.  You're wasting time.

10   BY MR. WEIR:

11       Q.  Did you assign Eric Hutcherson to the

12   task of pursuing interviews of other individuals

13   within the research department?

14       A.  I did not.

15       Q.  Do you know who did?

16       A.  I believe it was a joint decision

17   between Eric, Mary and Josh.

18       Q.  Do you know whether Eric Hutcherson

19   performed interviews of the individuals to whom

20   Lisa Svensson or who reported to Lisa Svensson?

21       A.  It's my understanding that he did

22  speak to some of the people who reported.  I

23  don't know if it was all of them, but, yes, he

24  did speak with some of them.

EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON, <br><br> Plaintiff, <br><br> v. <br><br> PUTNAM INVESTMENTS, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    CIVIL ACTION <br> NO. 04-12711-PBS |

### AFFIDAVIT OF ALLYSON E. KURKER
### IN SUPPORT OF PUTNAM'S MOTION FOR A PROTECTIVE ORDER QUASHING
### ANY RESUMPTION OF THE PLAINTIFF'S RULE 30(B)(6) DEPOSITION

**ALLYSON E. KURKER**, being first duly sworn, deposes and says:

1.    I am an associate at the law firm of Bingham McCutchen LLP and am one of the attorneys representing the defendant Putnam Investments LLC f/k/a Putnam Investments, Inc. ("Putnam") in connection with this matter.

2.    On November 29, 2006, the Plaintiff in this case, Lisa Svensson ("Ms Svensson") conducted a Rule 30(b)(6) deposition of Putnam at the office of one of her attorneys, Kevin Maloney Barron & Stadfeld, PC, 100 Cambridge Street, Boston, MA. 02114.  I, along with Louis Rodriques of Bingham McCutchen, attended that deposition to represent Putnam.

3.    Richard B. Tibbetts, Putnam's Head of Human Resources, was the designated Rule 30(b)(6) witness of Putnam.

4.    The parties reached an impasse at approximately 3:30 PM, concerning questions asked about employment decisions taken with respect to Ms. Svensson.

5.    Thereafter, I contacted this Court for guidance.

6.    The courtroom clerk, Mark Duffy, told me that he would speak with Magistrate Judge Bowler and call me back on my cell phone.

7.    Minutes later, Mr. Duffy called me on my cell phone to inform me that this Court was prepared to hear from the parties on a conference call at 3:45 PM.

8.    I reported this Court's willingness to hear from the parties, and asked Mr. Moloney for a phone number at which this Court could reach the parties.

9.    Mr. Moloney provided his firm's central phone number, not the direct number into the conference room in which the deposition was being conducted. I relayed that number to Mr. Duffy.

10.    Because the deposition had resumed, I turned off my cell phone.

11.    Having not heard from this Court by 3:55 PM, I turned on my cell phone and checked my voicemail.

12.    Mark Duffy had left me a message indicating that he had made four unsuccessful attempts to reach the parties. (Upon returning to my office, I instructed my assistant to transcribe Mr. Duffy's voicemail message. A copy is attached hereto at Exhibit 1.)

13.    No call from this Court was ever transferred into the conference room and at no time, did anyone from Barron & Stadfeld P.C. indicate to me or Mr. Rodriques that this Court had attempted to call into the deposition.

- 2 -

Signed under the pains and penalties of perjury this 4th day of December,

2006.

/s/ Allyson E. Kurker

Allyson E. Kurker

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 4, 2006.

/s/ Allyson E. Kurker, BBO #665231

Allyson E. Kurker

LITDOCS/663763.1/0398860-0000312913

EXHIBIT 1

Hello Allyson:

Mark Duffy, I'm calling for Judge Bowler's office, I'm calling we made 4 tries to try to reach you in Conference A at the number you had given us and all has failed and so at this time you should call me perhaps because it looks like we are not going to get through. Anyways 617-748-9222. Bye