UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * *    *    Civil Action No. 04-12711-PBS
                           *
LISA SVENSSON             *
                           *    BBO No. 351000
         Plaintiff,       *
                           *    Plaintiff Lisa Svensson's
                           *    Memorandum in Support of:
                           *    (1) Her Opposition to
PUTNAM INVESTMENTS,       *    Defendant Putnam's
LLC, et al.,              *    a Protective Order...";
         Defendants.      *    and,
                           *    (2) Her Cross Motion for
* * * * * * * * * * * *    *    Orders and Sanctions
```

1.   <u>Introduction</u>

With two hours seven minutes of testimony time remaining and several of the subjects on the 30(b)(6) deposition notice, which the court had allowed for examination not yet discussed with the witness, in-house counsel for defendant Putnam Investments, LLC ("Putnam"), Jason A. Tucker ("Tucker"), directed Attorneys Rodriques, Kurker, Campion and the witness to leave the deposition room. "Let's go, let's go" he ordered, and, turning toward plaintiff Lisa Svensson and looking at and only to her, said,

> I hope you aren't paying these amateurs by the hour.
> It would be very, very expensive.[1]

This arrogant, crude and unprofessional statement lays bare the mind-set and intent of Putnam and its scorched earth, win at any cost tactics to make discovery as needlessly difficult,

---

[1] Deposition Transcript, November 29, 2006 ("Tr."), a complete copy of which is filed herewith as Exhibit "A, p. 207, ll. 18-23.

unproductive, time consuming and expensive for plaintiff Svensson as Putnam possibly can make it.

For this and the other reasons set forth particularly below, Svensson opposes Putnam's motion for a protective order to quash resumption of the 30(b)(6) deposition and cross moves for orders: (1) Directing the resumption of the deposition for the rest of the time remaining when the deposition was halted (two hours seven minutes) plus, as authorized by Rule 30(d)(2),[2] such additional time as the court finds warranted under the circumstances; and, (2) Entering sanctions, including attorneys' fees and costs, against Putnam and its attorneys for their conduct.

2. <u>There was no plot, plan or intent of Svensson counsel or anyone else at Barron & Stadfeld to prevent Mr. Duffy's calls from reaching the Conference room, and it is scandalous and absurd of Putnam to claim otherwise</u>.

The Putnam motion makes the bizarre contention that Svensson's counsel concocted a plot to prevent any calls from Courtroom Clerk Mark Duffy to reach Conference Room A at Barron & Stadfeld, P.C. where the deposition was taking place. Putnam complains:

> <u>Mr. Moloney provided his firm's general phone number rather than the direct number into the conference room</u>...[and]...for reasons beyond Putnam's

---

[2] Fed. R. Civ. P. 30(d)(2) states, "Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. <u>The court must allow additional time</u> consistent with Rule 26(b)(2) <u>if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination</u>. (Emphasis added.)

> understanding, none of the Court's 4 attempts to
> call... were transferred into the conference room....

Putnam motion, p. 9.  (Emphasis added.)  The facts, however, are
as follows:

At the Barron & Stadfeld, P.C. office, whatever may be the
case at Ms. Kurker's firm, it always has been and is the
practice, when instructing others how to reach a participant in
a conference room deposition or meeting by telephone, to direct
the caller to dial the firm's main number, 617.723.9800, and,
when the receptionist answers the call, to request the
receptionist to transfer the call to "Conference Room ___."[3]
This is because the telephone system at the firm does not
provide direct dial access to conference rooms.[4]  Any calls to
the firm seeking a person in a conference room, must be dialed
to the main number and be transferred.[5]

The Moloney Affidavit states that after the second of
Mr. Duffy's four attempts to be transferred to Conference
Room A, failed to get through,

> I left the conference room and went to the
> receptionist's desk in the area just outside
> Conference Room A to find out why transfer of the
> calls had failed.

(Emphasis added.)  At the time, Heidi Moore, a Northeastern
University Co-op student, who works in the Barron & Stadfeld,

---

[3] Third Affidavit of Kevin F. Moloney ("Moloney Affidavit"), filed
herewith as Exhibit "B," p. 1, ¶2.
[4] Id.
[5] Id.

P.C. fileroom,[6] was filling in at reception.[7]  Moore told Moloney
that she did not know why Mr. Duffy's calls were not going
through as she was using the proper procedures to transfer the
calls.[8]

At that point, Moloney concluded that a mechanical or
electrical problem with the telephone system was the cause of
the failed transfers.[9]  Thus, very soon after the Putnam forces
had left,

> I received a message that Mr. Duffy had called again
> and had requested that I call him back.  I called Mr.
> Duffy back and explained to him that there had been
> some kind of problem with the telephone system, which
> had caused his calls not to get through to the
> conference room.  I also told him, in response to his
> question, that there had been a disagreement during
> the deposition; that Putnam had left after announcing
> that it would be filing a motion; and that if Putnam
> filed a motion, Svensson would file an opposition.[10]

(Emphasis added.)

The true cause of the failed transfers did not emerge until
the next day.  When she had tried to transfer Mr. Duffy's calls
to Conference Room A, Heidi Moore had used the button sequences
necessary to transfer calls to attorneys' offices when she

---

[6] Where her duties "include assisting in the File Room with document
copying, messenger services to other law firms and the various courts,
filing and related duties."  Affidavit of Heidi Moore ("Moore
Affidavit"), filed herewith as Exhibit "C," pp. 1-2, ¶¶ 2-3.

[7] Id.

[8] Id., Moloney Affidavit, pp.1-2, ¶3.

[9] Id.

[10] Id

should have used the different button sequence required to transfer calls to conference rooms.[11]

There was no plot, plan or intent of Svensson counsel or anyone else at Barron & Stadfeld to prevent Mr. Duffy's calls from reaching Conference Room A, and it is absurd and scandalous of Putnam and its attorneys to claim otherwise.

It was a simple matter of an inexperienced young person filling in for the receptionist and who was not aware of the correct procedure required to transfer calls to the conference room.

3.  <u>Putnam halted the deposition when there were two hour and seven minutes of testimony time remaining and several subjects, which the court on October 26, 2006, allowed for examination not yet discussed under oath with the witness</u>.

   3.1  <u>There were two hours seven minutes of testimony time remaining when Tucker and the other Putnam attorneys halted the deposition</u>.

The Putnam motion would have the court believe that when Attorney Tucker and his colleagues brought the 30(b)(6) deposition to a halt, its witness, Richard Tibbetts ("Tibbetts"), had reached the virtual end of the seven hours of testimony allowed by Rule 26.  "<u>After</u> 6 hours, Putnam suspended the deposition,...."  Putnam motion, p. 1.  (Emphasis added.) This is entirely incorrect and misleads the court.

The transcript shows that Svensson began the deposition at 10:14 a.m.,[12] and that Putnam halted the deposition at 4:00

---

[11] Moore Affidavit, pp. 1-2, ¶¶ 3-4; Moloney Affidavit, pp. 1-2, ¶ 3..

p.m.,[13] for a time difference of five hours 46 minutes.  The
transcript also shows that during that time there had been six
breaks, including a recess for lunch, amounting to a total of 52
minutes of break time.[14]  Thus, at 4:00 p.m. on November 29,
Tibbetts had not testified for more than six hours as claimed by
Putnam.  In fact, as proved by the transcript, he had testified
for only four hours, 53 minutes, with the result that there were
two hour seven minutes of testimony remaining when Tucker
ordered the Putnam forces to leave.

   3.2.  <u>Putnam's unilateral suspension of the deposition,
         prevented Svensson from obtaining testimony on several
         subject matters the October 26, 2006 order allowed</u>.

   Svensson's October 10, 2006, notice for the 30(b)(6)
deposition, a copy of which is filed herewith as Exhibit "E,"
listed 15 subjects to be discussed at the deposition.  When
Tucker directed the witness and his three colleagues to leave
the deposition, Svensson had obtained testimony on six of the
subjects listed on the notice.[15]  Thus, Putnam's action prevented
Svensson from obtaining that day any testimony at all on any of

_____

[12] Tr., p. 1.
[13] Tr., p. 210.
[14] Tr., p. 15, "Discussion of the Record," 10:27-10:28 a.m. (1 minute);
Tr., p. 61, "Recess," 11:30 - 11: 46 a.m. (7 minutes); Tr. P. 108,
"Lunch Recess," 12:58 - 1:32 p.m. (34 minutes); Tr., p. 156, "Recess,"
2:46 - 2:54 p.m. (8 minutes);  Tr., p. 192, "Fire Alarm," 3:42-3:43
p.m. (1 minute); and Tr., p. 200, "Discussion off the record," 3: 53 -
3:54 (1 minute); a total of 52 minutes of break time.
[15] Nos. 1 (Designation as and compensations of "partners" at Putnam); 2
(managers' performance ratings and changes of scores); 3 (compensation
guarantees); 4 ("key" and "franchise" players); 10 (payment of Darren
Peers's business school tuition costs); and, 11 (the "investigation"
of Svensson in summer 2003).

the other important subjects listed in the notice,[16] including, among others, No. 7 (factual basis for Putnam's claim that not one of the 91 identified males and females is a comparator of Svensson); Nos. 6 and 8 (employment actions taken against other female investment professionals by Putnam)and No. 13 (removal of Svensson in March 2002 from portfolio management while retaining males as such managers and promoting other males to those positions)

As Rule 26 provides that a deposition as of right can be seven hours long, and the court's October 26, 2006, order

---

[16] 5. ...deferred compensation...stock...options to...investment professionals...including identities of decision makers, criteria utilized and basis for awards...
6. All actions...to hire, promote, not to demote or transfer and/or not to terminate the employment of female investment professionals or deprive...of...management responsibilities.
7. The factual bases for any contentions...that any one or more of the 91 Comparators in this case are not, in fact, comparators of Svensson.
8. In regard to...females...terminations of or separations from employment...demotions, transfers...identities of the decision makers, the factual bases for...decision[s], ...persons who assumed the responsibilities of any such...comparators, and the effect on ...compensation....
9. ...documents produced or ordered to be produced...as a result of any decision by the court...on October 26, 2006,....
12. Communication between Putnam and...O'Malley...Eckland or...Peers concerning Svensson...March 1, 2002, to December 31, 2003.
13. The factual basis for the decision to remove Svensson from...Portfolio Management...while retaining male comparators ...and...promotions to [such] positions...March 1, 2002, to September 15, 2003.
14. The decisions to deprive Svensson of her management responsibilities and...to terminate her..., including the factual bases for such decisions, the identities of all persons consulted ... whether and how any...written criteria for...terminations were utilized, and the decision to draft a Termination Agreement...on or about August 27, 2003.
15.    Authentication of documents and tangible things produced by Putnam in this case unless agreed to by counsel or admitted in response to requests for admission.

allowed the deposition to go forward on the subjects identified
by Svensson in the deposition notice, Svensson was and is
entitled to the remaining two hours and seven minutes of Rule
30(b)(6) testimony from Putnam on any of the designated
subjects, at a minimum.

4.    <u>In denying the motion to quash on October 26, 2006, the
      court rejected Putnam's arguments that depositions taken
      before the production of unredacted documents and answering
      of Svensson's interrogatories should preclude Svensson from
      obtaining Rule 30(b)(6) testimony and that the designated
      subject matters were too broad</u>.

At and for the October 26, 2006, hearing of Putnam's motion
to quash the notice for the deposition, Putnam raised again the
argument the court on July 16 had rejected when the court
indicated that a 30(b)(6) deposition could be taken but on a
revised list of subject matters.  The argument the court
rejected was the contention that no Rule 30(b)(6) deposition
should be allowed because Svensson has taken the depositions of,
among others, Joshua Brooks, Svensson's boss when she was fired,
and Mary McNamee of the HR Department.  Putnam also claimed on
October 26 that even the reduced number of subjects on the
revised 30(b)(6) deposition list were too broad.

It is no wonder that Putnam pushed yet again the first of
these arguments as Brooks (November 17, 2005) and McNamee
(November 29, 2005) were deposed <u>ten months</u>, and Lasser,
Haldeman and Tibbetts were deposed approximately <u>three months or
more</u>, <u>before</u> Putnam on September 1, 2006, at the direction of

the court, produced unredacted documents and served answers to Svensson's interrogatories.

At the October 26 hearing, the court did not accept either of Putnam's arguments:

> <u>The motion to quash is denied.  One deposition.  One day</u>.  You sit down with Mr. Kociubes in the next few days and decide who it's going to be and you better decide what areas you want to prioritize because you're only going to get one day and you may not get everything you want done.

Transcript, October 26, 2006, p. 101.  (Emphasis added.)

5.  <u>The court's caution to Svensson to "prioritize" the subject matters of the deposition given the time limit imposed when the court "denied" the Putnam motion, did not require Svensson to obtain Putnam's pre-deposition approval either of the questions to be asked or of how she planned to use the deposition time the court had allowed; nor did the court in doing so re-write Rule 30(b)(6)to eliminate the requirement of an educated and prepared witness</u>.

The court's statement to Svensson to "prioritize" the subject matters listed on the notice, was simply and directly a caution to Svensson to be very mindful at the deposition that the court had said, "One deposition. One day."  It was a warning to spend the time wisely "because ...you may not get everything you want done."

Although as long ago as January 20, 2006, Attorney Rodriques had represented to the court that in all likelihood the Putnam 30(b)(6) witness would be Brooks or McNamee, Putnam changed course and advised Svensson that the witness would be Tibbetts.  By e-mail on November 7,

2006, <u>three weeks before the November 29 deposition</u>,

Svensson's counsel set out for Putnam Svensson's priorities

as to the subjects in the notice:

> ...in accordance with the Court's instruction that we
> "prioritize" the...areas of testimony, <u>I hereby advise
> Putnam that priority will be given to the following
> areas</u>: 1-5, 8, 10-11 and 13-14. As to the balance of
> the areas, Plaintiff will examine if time permits, and
> in no way is withdrawing these items as proper
> subjects of examination, as to which the 30(b)(6)
> witness is expected to be knowledgeable....

(Emphasis added.)

It would not be fair or reasonable to conclude from the

court's remarks following the announcement of the above ruling

"deny[ing]" the Putnam motion, that Svensson was being required

by the court to obtain Putnam's approval of the questions to be

asked at the deposition, or to obtain Putnam's assent to how

many minutes Svensson might devote to any given subject; nor

would it be reasonable to believe that, in permitting the

deposition to go forward, that the court in effect had re-

written Rule 30(b)(6) to eliminate the requirement of a witness

educated and prepared on each of the noticed subjects.[17]

6.  <u>Despite Putnam's having had almost two months to prepare
    Tibbetts for his 30(b)(6) testimony, Tibbetts was not the
    educated and prepared witness the rules require</u>.

---

[17] When, in response to Attorney Kociubes' attempt to re-argue the motion
after the court had announced its ruling, Svensson's counsel referred to the
requirement of Rule 30(b)(6) for an educated witness, the court said, "I
realize -- I know what the rule is." "And I know what the language says."
Tr., October 26, 2006, pp. 101-02.

Rule 30(b)(6) requires the person designated to testify in a deposition on behalf of an organization like Putnam, be prepaered and educated to "testify as to matters <u>known or reasonably available to the organization</u>."  (Emphasis added.) In other words, the witness is to be prepared to testify as to the noticed subject matters not just from his or her own personal knowledge, if any, but, more significantly, as to the knowledge of the entire organization on matters "known or reasonably available" to it.  This is important not only to discover the knowledge of the entity but also to obtain the entity's testimony that, under Rule 32, at trial, "may be used by an adverse party for any purpose."

Svensson's notice for the Putnam deposition,[18] served October 10, 2006, set a deposition date more than a month later, November 17, 2006.  In a November 10 e-mail, Putnam requested additional witness "prepar[ation]" time.  Svensson agreed, the parties settling on November 29 for the deposition date.

But despite the command of Rule 30(b)(6)() to present an educated and prepared witness, and the fact that prior to the actual deposition start on November 29, Putnam had had close to two months to prepare Tibbetts, Tibbetts in many significant respects was neither educated or prepared.  Even though the subject matters of the deposition dealt with the goings on,

---

[18] A copy of the notice is filed herewith as Exhibit "D."

decisions and actions taken in the Investment Division, the

witness admitted that he had not prepared with, or obtained any

knowledge or information from, anyone in the Putnam Investment

Division.  He testified,

6

```
21        Did you review the 30(b)(6) notice of
22    deposition?
23        A.  Yes.
24        Q.  Did you review the various categories
```
7
```
 1    of subject matters of the testimony that you're
 2    to give here today?
 3        A.  Yes.
 4        Q.  And with respect to the various
 5    categories, did you seek to obtain from others
 6    within Putnam knowledge with respect to the
 7    various categories?
 8        A.  Yes.
 9        Q.  From whom did you seek such knowledge?
10        A.  I met with several members of my staff
11    in the Human Resources Department.
12        Q.  And who were they?
13        A.  Mary McNamee, Michelle Juergens, and
14    Beth Nelson.
15        Q.  Did you meet with anyone outside of
16    the Human Resources Department?
17        A.  The only other people I met with were
18    counsel.
19        Q.  Did you ...meet with
20    Mr. Brooks concerning the 30(b)(6) deposition?
21        A.  No.
22        Q.  Did you...meet with
23    Mr. Haldeman concerning the 30(b)(6) deposition?
24        A.  No.
```
8
```
 1        Q.  Did you... meet with
 2    anyone within the Investment Division outside of
 3    Human Resources?
 4        A.  No.
```

Incredibly, even on the subject of the Svensson termination, Tibbetts admitted that at no time in the two month preparation period did he have any discussion with Joshua Brooks, the Director of Global Equity Research and alleged sole decision-maker as to Svensson's termination.("Q Did you consult with Josh Brooks on this subject? A. No." [19]

Even his discussions with his staff in HR were inadequate. He testified that his preparation included discussing only "ssome" of the subject matters of the deposition with McNamee,[20] even though, he testified, she had been the "lead" HR person who had "service[ed] the research organization"[21] where Svensson in the months before here termination had been working, and, he admitted that his preparation had not included any discussions at all with McNamee concerning Lisa Svensson's termination.

That Tibbetts was so unprepared and uneducated was not a mistake; it was deliberate on the part of Putnam and its attorneys.  The best witness on this point is the statement of Attorney Rodriques when Svensson, at p. 183, l. 14-15, attempted to inquire at the deposition if Putnam had had "discussions internally regarding the termination of the employment of Lisa Svensson?":

15 **Mr. Rodriques: objection. [Brooks]**
16    **and [McNamee] have already testified to all the**

---

[19] Tr., p. 172, ll. 20-22.
[20] Tr., p.172, l. 17.
[21] Tr., p. 170, ll. 13-16.

17    **discussions. He can testify to his personal**
18    **participation. He is not prepared and is not**
19    **proffered to testify about anything else**.
20  By M. Weir:
21    Q. You can answer.
22    A. Well, so **the only way I guess I can**
23    **answer that is did I personally have a role?**
24    The role that I played, again, was hearing what...

(Emphasis added.)

Putnam and its attorneys deliberately flaunted the rules in an effort to prevent Svensson from obtaining the testimony the court had permitted her to obtain.

7.    <u>Putnam had no right to demand, and Svensson had no duty to agree to, Putnam's "stipulation."</u>

There is no rule that a party may not seek information about the same subjects from multiple sources. Indeed, multiple witnesses may have different information to offer about a given subject or occurrence, such that complete information can be obtained only by examining more than one witness. The courts have recognized that a Rule 30(b)(6) deposition properly may cover matters which also were the subject of other depositions or discovery. In <u>Tri-State Hospital Corp</u>. v. <u>U.S</u>., 226 F.R.D. 118, 125-126 (D.D.C. 2005), the court stated:

> ...I am aware of no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices.
>
> By its very nature, the discovery process entails asking witnesses questions about matters that have been the subject of other discovery. There are, of course, only a finite number of pertinent events in

any lawsuit, and how they occurred is a topic that may be pursued by all forms of discovery, even though the information provided by one form of discovery repeats and duplicates information yielded by another. <u>Thus, the fact that information has been provided to plaintiff concerning a particular category does not, in itself, make that category an impermissible subject of a 30(b)(6) deposition</u>.[22] [23]

(Emphasis added.)

There is nothing in the discovery rules or any circumstance in this case that required Svensson to accept Putnam's proffer of its "stipulation."  First, as shown in § 4, p. 8, <u>supra</u>, the prior testimony proffered as a part of the "stipulation" was taken many months before Putnam had served the court directed answers to Svensson's interrogatories and unredacted as the court also had directed, the previously redacted documents.

Moreover, the subject being discussed with the witness at the time of Putnam's unwarranted cessation of the deposition,

---

[22] Although the <u>Tri-State</u> court recognized that a court may enter a protective order to ensure that a Rule 30(b)(6) deposition is not used to waste the deponent's time, it also recognized that courts should not be involved in managing the Rule 30(b)(6) deposition or engaging pre-deposition in a topic-by-topic review.  <u>Id</u>., at 126.

[23] Moreover, in earlier depositions, Putnam failed to provide adequate answers.  In fact, Putnam has been consistently evasive and obstructive.  For example, when shown by Svensson in deposition some of the numerous redacted documents Putnam produced and asked a question about them, defendant Lasser, Putnam's former Chief Executive Officer, testified that he could not answer the questions. He testified at p. 11:1

    Q.    Okay. Is it your testimony that other
    2        than those documents, you have never seen these
    3        other documents before?
    4  A.    No, I didn't say that. I said I don't
    5        specifically recall. <u>You showed me a bunch of</u>
    6        <u>blank pages, so it's hard to remember</u>.
(Emphasis added.)

No. 11, the "investigation" of Svensson in the summer of 2003, was one of the subjects the court's October 26, 2006, order "den[ying"] the Putnam motion to quash, had allowed for testimony over the very argument that Putnam made at the deposition and which it now makes to justify its hardball tactics.[24] [25]

Putnam's attempts at self help in violation of the rules should not be rewarded.

8.   The rulings of the court in favor of Svensson as the result of the hearings on June 21, August 16 and , August 28, 2006, amply demonstrate that Putnam is the

---

[24] One of the reasons for including the subject of the "investigation" of Svensson is that there conflicts in the prior testimony of the individual Putnam employees.  For example, Brooks and Tibbetts did not agree on whether Brooks had consulted with Tibbetts during the investigation.  Brooks testified that he did "not have a specific recollection of talking to [Tibbetts] but [he] probably would have." Brooks dep, p. 172, ll. 19-24; p. 173, ll. 1-6.  At his deposition, Tibbetts said he did not remember whether he talked to Brooks or not ("I may have.  I just don't recall any specific conversations.") Tibbetts dep., p. 210, ll. 3-8.  McNamee did not mention Tibbetts when she testified about the investigation and how Putnam carried it out. McNamee dep., p. 160, ll. 16-24; p. 161, ll. 1-15.
    Brooks and Tibbetts differed as well as to the options offered to Svensson at the end of the investigation.  Brooks testified that he gave Svensson the three options described in Brooks Deposition Exhibit 5, which does not include looking for another position within Putnam. Brooks dep., p. 196, ll. 23-24.  In his deposition Tibbetts first said that the three options did include looking within Putnam for another position, p. 171, ll. 4-24, p. 172, ll. 1-2, but later in the deposition he testified that the three options did not include looking within Putnam.  Tibbetts dep., p. 212, ll. 10-24; p. 213, ll. 1-17.
[25] Putnam also complains that Svensson "repeatedly inquired into areas outside the scope of the topics listed." Putnam motion p. 5.  Even assuming for the sake of argument that Putnam's challenge of outside the scope or lack of relevance to only six of the numerous questions during the four hours, 45 minutes of testimony (p. 32, l.3; p. 44, l. 14; p. 55, l.4; p. 132, l. 12; p. 133, l. 23; p. 145, l. 5; p. 161, l. 15) had any merit (and Svensson does not concede that there was any merit to the objections), the issue had no adverse effect on  the proper conduct of the deposition as each time the issue was dealt with either by the witness answering the question as the corporate representative, or by his answering as an individual or by Svensson's moving on to another question.

party in this case that has provoked discovery disputes.

The Putnam claim that Svensson has "prolong[ed]" discovery "by generating discovery disputes," is laughable.  Surely, Putnam must recall that it was only through the action of the court at hearing held on June 21, July 11, and August 28, 2006, that Putnam was forced to answer interrogatories and unredact documents, to say nothing of being ordered to resume the depositions of Oristaglio and Tibbetts because Attorney Kociubes improperly had instructed them not answer deposition questions. It was the improper conduct of Putnam that caused the need for the hearings and the court's orders and directions to Putnam.

9. Conclusion.

For all of the above reasons, Svensson requests the court:

1.  To order resumption of the deposition for the rest of the time remaining when the deposition was halted (two hours seven minutes) plus, as authorized by Rule 30(d)(2), such additional time as the court finds warranted under the circumstances[26]; and,

2.  To enter sanctions against Putnam and its attorneys for its and their improper actions,

---

[26] Fed. R. Civ. P. 30(d)(2) states, "Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination. (Emphasis added.)

including Svensson's costs and attorneys' fees
incurred as the result of such conduct.

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.


/s/ Kevin F. Moloney_____
Kevin F. Moloney BBO No. 351000
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and


/s/ John K. Weir_____
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.5374

Dated: December 18, 2006

## Certificate of Service.

This document, filed through the ECF system, will be sent
electronically to the registered participants as identified on
the Notice of Electronic Filing.

/s/ Kevin F. Moloney_____

Dated: December 18, 2006




[381124.1]

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * *    Civil Action No. 04-12711-PBS
                            *
LISA SVENSSON,              *    BBO No. 351000
                            *
            Plaintiff,      *
                            *    Third Affidavit of
                            *    Kevin F. Moloney
                            *
PUTNAM INVESTMENTS, LLC and *    (Declaration pursuant to
LAWRENCE LASSER,            *    28 U.S.C. § 1746
                            *
            Defendants.     *
                            *
* * * * * * * * * * * * * * *
```

1.   My name is Kevin F. Moloney.  I am a member of the bar of
     this court and co-counsel of record to plaintiff Lisa
     Svensson in this case.  I have personal knowledge of the
     facts set forth herein.

2.   The telephones in our conference rooms at Barron &
     Stadfeld, P.C. cannot be reached on a direct dial basis.
     Calls coming in to the firm must be transferred by the
     receptionist to the conference rooms.

3.   On November 29, 2006, some minutes Before the Rule 30(b)(6)
     deposition of Putnam was adjourned unilaterally at 4:00
     p.m. by Putnam's attorneys (Rodriques, Tucker and Kurker),
     I answered the telephone in Conference Room A, where the
     deposition was being taken, and was told that a call from
     the court was about to be transferred to the conference
     room telephone.  The call did not get through.  Three other

attempts also failed.  After the second call failed to get through, I left the conference room and went to the receptionist's desk in the reception area just outside Conference Room A to find out why the calls were not getting through.  Heidi Moore, one of our Northeastern University Co-op students, was filling in at reception at the time.  She told me that she believed that she was using the proper procedures to transfer the calls and that she did not know why the calls were not going through.  At the time I thought that here must be some mechanical or electrical problem with the telephone system that was the cause of the failed transfers.

4.    Very soon after the Putnam forces had left, I received a message that Mr. Duffy had called again and had requested a call back.  I called Mr. Duffy and explained to him that there had been some kind of problem with the telephone system, which had caused his calls not to get through to the conference room.  I also told him, in substance, that there had been a disagreement during the deposition; that Putnam had announced that it would be filing a motion; and that plaintiff would be filing an opposition.

5.    I did not learn until the next day, November 30, that there had been no electrical or mechanical problem with the telephone system; that the transfer procedure required to

2

move calls from reception to a conference room, is a

different procedure than the one required to transfer calls

from reception to attorneys' offices and secretarial

stations; and that Heidi Moore had not used the correct

button sequence to transfer the calls.

Signed under the penalty for perjury this 18th day of

December 2006.

/s/ Kevin F. Moloney

Date: December 18, 2006


## Certificate of Service.

This document, filed through the ECF System, will be sent
electronically to the registered participants as identified on
the Notice of Electronic Filing.

/s/ Kevin F. Moloney


Dated: December 18, 2006

[380654.1]

3

Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * *    Civil Action No. 04-12711-PBS
                        *
LISA SVENSSON           *
                        *    BBO No. 351000
        Plaintiff,      *
                        *    Affidavit
v.                      *    of
                        *    Heidi Moore
PUTNAM INVESTMENTS,     *
LLC f/k/a PUTNAM INVEST- *   (Declaration pursuant
MENTS, INC. and LAWRENCE *   to 28 U.S.C. §1746)
J. LASSER,              *
                        *
        Defendants.     *
                        *
* * * * * * * * * * * * *
```

1.   My name is Heidi Moore.  I am an undergraduate student at
     Northeastern University.  As a participant in the
     Northeastern University Co-op program, I have been working
     this semester at Barron & Stadfeld, P.C., 100 Cambridge
     Street, Suite 1310, Boston, Massachusetts.  I have personal
     knowledge of the facts set forth herein.

2.   My duties at Barron & Stadfeld, P.C. include assisting in
     the File Room with document copying, messenger services to
     other law firms and the various courts, filing and related
     duties.

3.   In the afternoon of Wednesday, November 29, 2006, I was
     asked to fill in at the receptionist desk.  A series of
     four calls from the federal court asking to be transferred

to Conference Room A came in to me at the desk and, using
the same button sequence and procedure that is necessary to
transfer calls to attorneys' offices and secretarial
stations, I tried to transfer the calls to Conference Room
A but was unable to do so.  During this series of calls,
Attorney Moloney came out of Conference Room A to the desk
and asked why the calls were not coming through to the
conference room.  I told him that I believed that I was
using the proper sequences and procedures and that I did
not know why the calls were not getting through.  He
returned to the conference room and then another call from
the court came in but I still was not able to put the call
through.

4.    I have learned since that afternoon, that there is a
separate and different sequence of buttons at the desk that
is not used to transfer call to attorneys' offices and
secretarial stations, but which is necessary to transfer
calls to conference rooms.

Signed under penalty for perjury December 6, 2006.

_____
Heidi Moore.

## Certificate of Service.

This document, filed through the ECF system, will be sent
electronically to the registered participants as identified on

the Notice of Electronic Filing.

/s/ Kevin F. Moloney
Kevin F. Moloney BBO No. 351000
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

Dated: December __, 2006

[379835.1]

3

Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



```
* * * * * * * * * * * * * * * *     Civil Action No. 04-12711-PBS
                                *
LISA SVENSSON,                  *   BBO Bo. 351000
                                *
                                *   Notice, Pursuant to
              Plaintiff,        *   Fed. R. Civ. P. 26 and
                                *   30(b)(6), of the Taking
v.                              *   of the Deposition of
                                *   Defendant Putnam Investments,
                                *   LLC on November 17,
PUTNAM INVESTMENTS, LLC         *   2006
et al.,                         *
              Defendants.       *
                                *
* * * * * * * * * * * * * * * *
```

To:  All parties and counsel of record:

Please take notice that, pursuant to Fed. R. Civ. P. 26 and

30(b)(6), at 10:00 a.m. on Friday, November 17, 2006, at the

offices of Kevin F. Moloney, Barron & Stadfeld, P.C., 100

Cambridge Street, Suite 1310, Boston, Massachusetts 02114,

plaintiff Lisa Svensson ("Svensson"), by her attorneys, will

take the deposition upon oral examination of defendant Putnam

Investments, LLC ("Putnam") before a Notary Public in and for

the Commonwealth of Massachusetts or before some other officer

authorized by law to administer oaths.

You are invited to attend and cross-examine.

The oral examination will continue from day-to-day until

completed.

The definitions used herein and the matters on which examination is requested are set forth below.

DEFINITIONS.[1]

1.  Communication: "communication" means the transmittal of information or opinion (in the form of facts, ideas, inquiries, or otherwise).

2.  Document: "document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) ("...including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information or opinion can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form....."), and a draft or non-identical copy is a separate document within the meaning of this term. E-mail and film, video and digital recordings are included within the meaning of "document."

3.  Thing or tangible thing: "thing" and "tangible thing" are both synonymous in meaning and equal in scope to the usage of term, tangible thing, in Fed. R. Civ. P. 34(a).

4.  Identify (with respect to persons): When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

5   Identity (with respect to persons): When referring to a person, "identity" means, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that

---

[1] Svensson reserves the right to amend prior to the deposition this statement of definitions.

person need be listed in response to subsequent discovery requesting the identification of that person.

6.  Identify (with respect to documents):  When referring to documents, to "identify" means to give, to the extent known, the

    (a)  type of document;
    (b)  general subject matter;
    (c)  date of the document; and,
    (d)  author(s), addressee(s), and recipient(s).

7.  Identity (with respect to documents):  When referring to documents, "identity" means, to the extent known, the

    (a)  type of document;
    (b)  general subject matter;
    (c)  date of the document; and,
    (d)  author(s), addressee(s), and recipient(s).

8.  Parties: plaintiff, defendant-in-counterclaim, defendant, plaintiff-in counterclaim, as well as a party's full or abbreviated name or a pronoun referring to a party means that party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

9.  Person: "person" means any natural person or any business, legal, or governmental entity or association.

10.  Concern and concerning: "concern" and "concerning" mean, respectively, refer to, describe, evidence or constitute, and referring to, describing, evidencing, or constituting.

11.  State the Basis:  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall,

    a.  identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information or opinion regarding the alleged facts or legal conclusions referred to by the interrogatory;

3

b.  identify each and every communication that forms any part of the source of the party's information or opinion regarding the alleged facts or legal conclusions referred to by the interrogatory;

c.  state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place identifying the personal involved) which form any part of the party's information or opinion regarding the alleged facts or legal conclusions referred to in the interrogatory; and,

d.  state separately any other fact, which forms the basis of the party's information or opinion regarding the alleged facts or conclusions, referred to in the interrogatory.

13. Factual basis: "factual basis" includes, without limitation,

a.  the identity of each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information or opinion regarding the alleged facts or legal conclusions referred to;

b.  the identity of each and every communication which forms any part of the source of the party's information or opinion regarding the alleged facts or legal conclusions referred to;

c.  the statement of the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place identifying the personal involved) which form any part of the party's information or opinion regarding the alleged facts or legal conclusions referred to; and,

d.  the separate statement of any other fact that forms the basis of the party's information or opinion regarding the alleged facts or conclusions referred to.

14. Affiliate: "affiliate" means any person who or which directly, or indirectly through one or more intermediaries,

4

controls, is controlled by, or is under common control with, any other person.

15. <u>You</u>, <u>your</u>, <u>yourself</u>: "you," "your" and "yourself" mean the person(s) to whom or which the following interrogatories, request for production of documents or request for admissions, as the case may be, is directed and by whom they are to be answered or responded to, and any <u>Affiliate</u> thereof.

16. <u>Svensson</u>: "Svensson" means plaintiff Lisa Svensson.

17. <u>Putnam</u>: "Putnam" means defendant Putnam Investments, LLC.

18. <u>Lasser</u>: "Lasser: means defendant Lasser.

19. <u>Haldeman</u>: "Haldeman" means Putnam's resent Chief Executive Officer.

20. <u>IMD</u>: "IMD" means Putnam's Investment Management Division.

21. <u>IDMC</u>: "IDMC" means the Investment Division Management Committee at Putnam.

22. <u>360</u>: "360" means the Putnam 360° Peer Feedback Survey as used at Putnam.

23. <u>Year end review</u>: "year end review" means t means a document evidencing a review of a person's performance at Putnam for the year involved.

24. <u>Performance review</u>: "Performance review" means a document evidencing a review of a person's performance at Putnam.

25. <u>Investment Division & ISD Human Resources Updates</u>: "Investment Division & ISD Human Resources Updates" means a form of the same name as used at Putnam.

26. <u>PDPR</u>: "PDPR" means the Performance and Development Planning and Review form as used at Putnam.

27. <u>Managing Director</u>: "Managing Director" means the position of that name at Putnam.

28. <u>MD</u>: "MD" means Managing Director.

29.  Partner: "partner" means the position of that name used at
     Putnam.

30.  Complaint: "complaint" means Svensson's complaint in this
     case as amended.

31.  Putnam's answer: "Putnam's answer" means Putnam's answer
     filed in this case.

32.  Lasser's answer: "Lasser's answer" means Lasser's answer
     filed in this case.

33.  91 Comparators: "91 Comparators" means the 91 persons
     agreed to by Svensson and defendants as comparators for
     purposes of discovery.

### THE SUBJECT MATTERS.[2]

The subject matters of the deposition will be one or more

of the following:

1.   Designation or naming of a person as a "partner" at Putnam
     at any time in the period 1999 through 2004, and elements
     of, and aggregate totals of, total compensation paid or
     payable to partners at Putnam for each year in the period
     January 1, 1999, through December 31, 2004.

2.   Managers' performance ratings for the 91 Comparators 1999
     through 2004 (whether or not any one or more of the 91
     Comparators were "partners"), including any alterations of
     managers' performance ratings by one or more members of top
     management or by any other person at Putnam.

3.   Criteria for "guarantees" of compensation paid or payable
     to any one or more of the 91 Comparators for each year in
     the period January 1, 1999, to December 31, 2004, including
     identities of decision makers, reason(s) for such
     decisions, amounts of each such "guarantee" and aggregate
     amount(s) of guarantees paid or payable in each such year
     or thereafter.

4.   Designation of Putnam investment professionals as "key
     players" or "franchise players" at any time in the period
     January 1, 1999, to December 31, 2004,, including

---

[2] Svensson reserves the right to amend prior to the deposition this statement
of the subject matters.

identities of decision makers, reason(s) for such decisions, and the effect of each such designation on comparators' total compensation paid or payable for each such year.

5.  Awarding of deferred compensation (voluntary and involuntary), stock and/or stock options to Putnam investment professionals in the period January 1, 1999, to December 31, 2004, including identities of decision makers, criteria utilized and basis for awards to any one or more of the 91 Comparators.

6.  All actions by Putnam in the period January 1, 1999, to the present, to hire, promote, not to demote or transfer and/or not to terminate the employment of female investment professionals or deprive them of their management responsibilities.

7.  The factual bases for any contentions by Putnam that any one or more of the 91 Comparators in this case are not, in fact, comparators of Svensson.

8.  In regard to the females among the 91 Comparators in the period January 1, 1999, to December 31, 2004 (whether or not viewed by Putnam as voluntary or involuntary): terminations of or separations from employment by Putnam demotions, transfers and/or reductions in compensation including the identities of the decision makers, the factual bases for each such decision, the identities of any persons who assumed the responsibilities of any such of the 91 Comparators, and the effect on aggregate and average compensation of males and females included in the 91 Comparators for each such year.

9.  Issues arising from any documents produced or ordered to be produced by Putnam as a result of any decision by the court at the hearing to be held on October 26, 2006 before the court (Bowler, U.S.M.J.).

10.  Payment of the tuition reimbursement obligation of Darren Peers, including the accounting treatment of this transaction.

11.  The "investigation" of Lisa Svensson undertaken by Putnam in the summer of 2003, including, without limitation, the notes taken by any Putnam HR representative, including Eric Hutcherson, of interviews of, or conferences with, any

7

)                                  )

person at Putnam including, without limitation, Konstantin Stoev.

12. Communication between Putnam and Chris O'Malley, Ellis Eckland or Darren Peers concerning Svensson in the period March 1, 2002, to December 31, 2003.

13. The factual basis for the decision to remove Svensson from any Portfolio Management position in or about March 2002 while retaining male comparators in such positions, and any promotions to Portfolio Management positions of any persons in the period March 1, 2002, to September 15, 2003.

14. The decisions to deprive Svensson of her management responsibilities and the decision on to terminate her employment, including the factual bases for such decisions, the identities of all persons consulted concerning the decisions, whether and how any of Putnam's written criteria for effecting terminations were utilized, and the decision to draft a Termination Agreement for Lisa Svensson on or about August 27, 2003.

15. Authentication of documents and tangible things produced by Putnam in this case unless agreed to by counsel or admitted in response to requests for admission.

                    LISA SVENSSON, plaintiff,

                    By her attorneys,

                    BARRON & STADFELD, P.C.

                    Kevin F. Moloney (Gali)
                    Kevin F. Moloney    BBO No. 351000
                    100 Cambridge Street, Suite 1310
                    Boston, Massachusetts 02114
                    Tel.: 617.723.9800/531.6569

Dated: October 10, 2006

                    Certificate of Service.

    A copy of the within document was delivered by messenger to counsel of record: Joseph L. Kociubes, Louis A. Rodriques, BINGHAM, MCCUTCHEN, LLP, 150 Federal Street, Boston, Massachusetts 02110; David S. Rosenthal, NIXON PEABODY LLP, 100

                              8

Summer Street, Boston, Massachusetts 02110.

Kevin F. Moloney

Dated: October 10, 2006

[373564.1]