UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON, Plaintiff, v. PUTNAM INVESTMENTS, LLC, et al., Defendants. | Civil Action No. 04-12711-PBS<br>BBO No. 351000<br>Affidavit of Nicole M. Panos<br>(Declaration Pursuant to 28 U.S.C. § 1746) |

1. My name is Nicole M. Panos. I am Director of Client Development for Target Litigation Consulting, Inc. ("Target") of 268 Summer Street, Boston Massachusetts, which is engaged in litigation support and electronic discovery services for law firms and corporate clients. Prior thereto I swerved as Target's Sr. Technical Consultant/Project Manager. Before my service with Target, I had five years of large law firm experience in e-discovery and computer related litigation issues in both civil and criminal matters with Palmer & Dodge and Brown Rudnick Berlack & Israels, both of Boston. My resume is filed herewith as Exhibit "1." I have personal knowledge of the facts set forth herein.

2. I have reviewed the contentions of both plaintiff Lisa Svensson ("Svensson") and defendant Putnam Investments, LLC ("Putnam") as to the e-mail issues in this case, which are included in Svensson's Reply Memorandum, filed October 25, 2006. I also have reviewed the four e-mails (and attachments as applicable) between Attorney Moloney for Svensson and Attorney Rodriques for Putnam concerning the e-mail discovery issues, copies of which are filed herewith as Exhibits 2-5, and which are dated, respectively, November 17, 2006 (Moloney to Rodriques, Exhibit 2), November 21, 2006 (Rodriques to Moloney, Exhibit 3), November 22, 2006 (Moloney to Rodriques, Exhibit 4) and December 12, 2006 (Rodriques to Moloney, Exhibit 5).

3. Based upon my education, training and experience, the draft search terms sent by Svensson's counsel to Putnam's counsel are reasonable as they are limited in number of search terms and the complexity of search. Some of the terms may result in false hits as they are general terms used in everyday conversations (e.g. make, move, took out, take out). I would suggest that those search terms be used in conjunction with other, relevant terms to yield a higher likelihood of responsive hits. The search methodology and terms may require modification depending upon the answers to the technological and other inquires set out in the questionnaire ("November 17 e-discovery questionnaire")

that accompanied Attorney Moloney's November 17, 2006, e-mail to Attorney Rodriques (Exhibit 2).

4. Based upon my education, training and experience, it is impossible to analyze and evaluate the propriety, integrity and legitimacy of the Putnam contentions as to time and expense and the other issues set out in Attorney Rodriques' e-mail of December 12, 2006 (Exhibit 5), without first having obtained, analyzed and evaluated in the light of the technological issues and the varying conditions of the market place concerning vendors, the answers to the questions set out in the November 17 e-discovery questionnaire. In past projects I have consulted on, the cost and time estimations from vendors for tape restoration and searching, for example, has ranged from days to weeks and from one-hundred dollars per tape to one-thousand dollars per tape based on the vendor and the type of tape. These types of issues can be resolved with open discovery exchange.

Signed under the penalty for perjury this 27th day of December 2006,

Nicole M. Panos

_________________________
Nicole M. Panos

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin F. Moloney__________

Dated: December 27, 2006

EXHIBIT 1

# NICOLE M. PANOS

700 Center Street
Pembroke, MA 02359
(617) 763-8666 Mobile

**PROFESSIONAL EXPERIENCE:**

**Target Litigation Consulting, Inc. (Boston, MA)**

Director Client Development — October 2006 to Present

- Coordinate client development activities including eDiscovery seminars, technical training on discovery software packages, product demonstrations and client appreciation events.
- Review and respond to Requests for Proposal of Services (RFP) from law firm and corporate clients.
- Develop Statements of Work (SOW) for incoming projects.
- Design and implement internal workflow for eDiscovery processing.
- Manage the project life cycle from inception through delivery and maintenance.
- Manage partner relationships.
- Assist with client billing and account reconciliation with clients.

**Target Litigation Consulting, Inc. (Boston, MA)**

Sr. Technical Consultant/Project Manager — March 2006 to October 2006

- Responsible for overall planning and management of litigation discovery projects, including civil/criminal litigations and government investigations (involving the SEC, DOJ, and state attorneys general), in which challenging EDD tasks are the norm.
- These projects involve processing, organization/review and production of such large document collections that the application of cutting-edge technologies becomes a necessity.
- Project management, day-to-day discussions with customers, and support of the multiple Litigation Support technologies sold and delivered to by Target Litigation.
- Apply best-of-breed project management techniques to effectively manage multiple, diverse projects with different clients, project teams, scopes, and deadlines
- Assess client needs and act as the point person in developing and managing program specifications and procedures that will ensure quality, efficiency and profitability.
- Facilitate integration of the assigned programs, driving efforts to integrate strategic, creative, and technical aspects into cohesive and functional delivery solutions
- Conducting planning meetings with clients to explore and craft case plans and document review strategies that best leverage chosen software tools.
- Understanding various technologies and processes used in EDD and ability to work with partner companies that can provide complementary services for overall success of the project.
- Acquiring detailed knowledge of the leading Legal Discovery softwares to be able to manage or direct: document processing & creation of databases, advanced methods of search, workflow management during review, reporting tools, and production of documents.
- Tracking delivery schedules, ensuring proper quality assurance, and managing changes in work scope.
- Conduct on-site training for law firm and corporate customers.
- Lead and motivate internal and external cross-functional project teams, managing resources and schedules for full efficiency. Monitor resources, work flows, schedules, and deadlines.
- Monitor and isolate potential errors, issues, miscommunication, and sub-optimal performance by reviewing daily order level data; recommend improvement and implement changes based on results of research

**Palmer & Dodge (Boston, MA)**

Litigation Support Coordinator May 2004 to March 2006

- Responsible for managing and coordinating all litigation technology and services for individual cases.
- Serve as the single point of contact for case team attorneys, paralegals, IT staff, and vendors for all cases employing litigation support technology and services.
- Duties include running project design meetings for litigation teams consisting of attorneys, paralegals, clients, and vendors; advising legal teams on database design.
- Extensive e-Discovery project management.
- Solicit project bids from vendors, analyzed resulting vendor proposals, and made processing recommendations to case teams.
- Manage vendors to assure that high-quality data deliverables and services are provided within the negotiated schedules, budgets and specifications.
- Supervise and perform the set up and maintenance of in-house scanning projects.
- Import and export data into the firm's litigation support applications.
- Link images to the corresponding database files.
- Perform technical data management activities such as: data loading into database applications, image loading into imaging viewing applications, CD-ROM creation, building production subsets, and database maintenance.
- Prepare attorneys for travel by transferring data from the network onto laptops.
- Load TIFF images onto network servers, and assist with duplication and burning of data onto CD-ROM.
- Troubleshoot litigation support applications and databases.
- Provide user support for litigation support software and image scanning and printing when required.
- Assist with analyzing and testing new or new versions of litigation support software.

**Brown Rudnick Berlack Isreals (Boston, MA)**

Litigation Support Analyst & Technical Trainer August 2000 to May 2004

- Managed three full-time litigation support staff, and provided litigation support services to four offices.
- Work with Professional Development Manager to conduct needs assessments with attorneys in various practice areas.
- Conduct research of practice support technology products.
- Prepare product recommendations listing product advantages and disadvantages.
- Assist in the organization of product demonstrations for the IT Department, Training and Development Department and branch offices.
- Worked with IT and T&D to provide cost justification and data on improved efficiency in period following application implementation.
- Attended tradeshows and external industry user groups to stay apprised of the technology being used by other competitive laws firms.
- Worked with T&D to provide training for new and existing applications and/or work with them to schedule training and support for the recommended applications.
- Worked with T&D to create documentation to support new technology that is introduced to the firm.
- Provide training on MSOffice, PCDOCS and other department specific technology currently being used by the firm.
- Provide New Hire Orientation training for incoming employees.
- Coordinate activities with Human Resources and Information Technology.

Litigation Support Case Coordinator & Imaging Specialist February 1998 to August 2000

- Managed the Brown, Rudnick Information Technology Systems department.
- Charged with document management of all tobacco litigation related documents for the Commonwealth, Maine, Rhode Island and New Hampshire litigation.
- Responsible for litigation support media management of over 225 CD ROMS, 110 Diskettes, and over 25 full text databases (MS Access and Summation).
- Daily tasks include document review, imaging, writing and designing databases, importing and exporting images and data into databases, document coding, CD-ROM burning, legal research, drafting of memos and correspondence and electronic management of all related deposition transcripts.
- Responsible for maintaining constant contact with vendors, soliciting price quotes and reviewing vendor invoices for services rendered.
- Played a significant role in the Commonwealths' Trial Exhibit Production.

**LITIGATION SOFTWARE & TECHNOLOGY PROFICIENCY:**[1]

- Concordance
- Summation*
- iConect
- Citrix*
- FTP
- MS Word*
- MS Excel*
- MS PowerPoint*
- LiveNote*
- MS Access*
- DB TextWorks
- DocuLex*
- LAW
- CD Writer*
- MS Outlook*
- MS I-Explorer*
- CaseMap
- TimeMap
- RealTime*
- IPRO*
- OmniPage
- OCR Software
- PC Docs*
- Windows XP*
- Trial Director
- Sanction*
- DiscoveryCracker
- Adobe Acrobat*
- WANG Image Viewer
- CaseCentral
- Lexis-Nexis
- Windows 2000*

**EDUCATION:**

- B.A. English (Dean's List)
  University of Massachusetts at Amherst (Amherst, MA)

*References available upon request.*

# EXHIBIT 2

**Susan Irving**

---

**From:** kevin f. moloney
**Sent:** Friday, November 17, 2006 5:00 PM
**To:** joseph kociubes; KFM Home; louis rodrigues
**Cc:** 'john k. weir'
**Subject:** e-mail issues
**Attachments:** 378224_1.DOC

Joe and Lou:

The attached sets out the information that will help us move forward with discussion of the e-mail issues Putnam has raised.

Please let me know if Putnam will supply the information requested by the attached so that we might discuss this matter on a more informed basis.

Thank you.

/s/ *Kevin F. Moloney*

Kevin F. Moloney
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617 723 9800/531 6569
Fax: 617 523.8359
e-mail: kfm@barronstad.com:

1. Is there for the period January 1, 1999, through December 31, 2004, a document retention policy ("DRP") in place?

______________________________________________________________

2. Is there for the period January 1, 1999, through December 31, 2004, an e-mail retention policy in place?

______________________________________________________________

3. Is there a litigation hold in place? ____________________

4. Where is the data being stored?

   Back Up Tapes ____________________________

   Local Hard Drives __________________________

   Network Drives ____________________________

   Blackberries ______________________________

   Palm Pilots _______________________________

   Flash Drives ______________________________

   External Media (CD/DVD/Diskettes) ____________________

   Home Computers ____________________________

   Cell Phones _______________________________

   HR/Accounting/CRM Database(s) ______________

   Internet Based e-mail Accounts _____________

   In-House Instant Messaging_________________

5. Proposed Key Words/Search Terms? Attach separate sheet) (to include, among other things, the named persons set out in the Svensson reply memorandum)

6. What is the mail server and version being used?

   Microsoft Exchange 5.5 Service Pack 4 ___

______________________________________

Lotus Notes R5 ______________________

Lotus Notes __________________________

Microsoft Exchange 5.5 _______________

Lotus Domino _______________________

Microsoft Exchange 5.0 ______________

Lotus CC: Mail ____________________

7. Define Duplicate

Identical metadata and identical Custodian _____

Identical metadata and different Custodian _____

8. What is the backup Software and version being used?

Arcserve 2000 ___________________

Backup Exec. 8.6 ________________

NT Backup ________________________

Other ____________________________

9. What type of backup media is being used?

DLT IV (40/70/80GB) ______________

A1T (A1T1, A1T2, A1T3) ____________

DLT 11 (20GB) ____________________

DTF (DTF1, DTF2) _________________

DAT (DDS2, DDS3, DDS40 ____________

LTO (LTO1, LTO2, LT03 _____________

10. What type of tape drives are being used?______

______________________________________

11. How many tapes do you anticipate having? ______
________________________________________

12. Are the tapes at capacity? ____________________

13. What is the retention/recycle process for back up tapes?
________________________________________________________
(daily, weekly, monthly, quarterly, incremental, full)

14. How are the tapes labeled? - Organized/labeled by date, custodian, server, etc.?______________________________

______________________________________________________

15. Earliest Dated Back Up Tape - Email? __________________

16. Earliest Dated Back Up Tape - NAS? ____________________

17. Have there been any server/software/OS migrations? ____

From What? To What? Date of Migration?

_____________________________________________

_____________________________________________

From What? To What? Date of Migration?

_____________________________________________

_____________________________________________

18. Review - What type of review tool do you propose to use?

In House Software ___________________________________

Online Review Tool __________________________________

Paper Review ________________________________________

19. Production:

Paper ________________________________

Native Files__________________________

Tiff + Bates Number __________________

Tiff + Metadata ______________________

Other: ________________________________

CD ____________________________________

DVD ________________________________

Hard Drive __________________________

[378224.1]

# EXHIBIT 3

**Susan Irving**

**From:** Rodriques, Louis A. [louis.rodriques@bingham.com]
**Sent:** Tuesday, November 21, 2006 10:39 AM
**To:** kevin f. moloney; Kurker, Allyson E.
**Cc:** johnkweir47@aol.com; Kociubes, Joseph L.
**Subject:** Email Questions

Kevin:

We received your email late Friday afternoon concerning certain questions regarding Putnam's email system. Missing from the material you sent us (although clearly contemplated by the questions themselves - see question #5) was a list of the search terms that you propose to have Putnam use in conducting any email search. We cannot assess the difficulty, cost or time involved in any email search without knowing those terms. At the October 26 hearing, Magistrate Bowler asked for those terms, and you suggested that you didn't want to shoot from the hip at the hearing. She then ordered us to confer about email discovery within one week (see Transcript of October 26 hearing at pages 14-23), yet we still have not received the proposed search terms. If we are going to determine whether the conduct of an extensive email search is feasible and reasonable within the time frame ordered by the Magistrate Judge, we need to know what you are proposing that we search for.

In addition, could you please forward the list of individuals whose email boxes you propose to have searched. At the October 26 hearing, you or Jack told the Magistrate that it was, variously, 10, 14 and 22 different people. So that there is no confusion, and, once again, so that we can assess cost, difficulty and time consumption in conducting any such search, we need the definitive list of names that you are proposing..

Please provide this information as soon as possible.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial: 617-951-8340
Direct Fax: 617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

==================================================================

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

==========================================================================

EXHIBIT 4

**Susan Irving**

---

**From:** kevin f. moloney
**Sent:** Wednesday, November 22, 2006 12:35 PM
**To:** joseph kociubes; KFM Home; louis rodrigues
**Cc:** 'john k. weir'
**Subject:** e-mail issues
**Attachments:** e-mail questionaire.DOC; e-mail search terms .doc

Lou:

As you know, the questionnaire I sent over to you folks (copy attached) requests, in the spirit of the new e-discovery rules as discussed with Judge Bowler, basic information needed to help us understand Putnam's computer systems and capabilities as they may affect resolution of the the e-mail discovery issues in this case. Thus, I was disappointed to see that the Putnam response so far consists only of questions about one of the 19 categories rather than the information requested.

Nonetheless, in regard to Putnam's question about Item No.5 of the questionnaire, Item No. 5 was intended as an inquiry as to the search terms that Putnam has used and./or would propose to use to obtain the information; but we have no problem in presenting to Putnam some possible search terms that we have developed. They are set out in the other attachment. Of course, we reserve the right to make refinements, additions and changes without prejudice.

In response your other e-mailed question, wherever in our reply memorandum in regard to the Second Request for Production the term "decision-makers" is used in regard to e-mail or the following are named as such such decision-makers in regard to e-mail, we are seeking the e-mails to or from any one or more of the following ten decision-makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott and, as appears to be the case of at least defendant Lasser, persons sending and/or receiving e-mail on behalf of any such persons, which e-mails concern one or more of the employees or lateral hires named in the respective categories of the Second Request for Production discussed in our reply memorandum.

*/s/ Kevin F. Moloney*

Kevin F. Moloney
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
kfm@barronstad.com

1. Is there for the period January 1, 1999, through December 31, 2004, a document retention policy ("DRP") in place?

_______________________________________________

2. Is there for the period January 1, 1999, through December 31, 2004, an e-mail retention policy in place?

_______________________________________________

3. Is there a litigation hold in place? _____________________

4. Where is the data being stored?

   Back Up Tapes ______________________________

   Local Hard Drives __________________________

   Network Drives _____________________________

   Blackberries _______________________________

   Palm Pilots ________________________________

   Flash Drives _______________________________

   External Media (CD/DVD/Diskettes) ____________________

   Home Computers _____________________________

   Cell Phones ________________________________

   HR/Accounting/CRM Database(s) ______________

   Internet Based e-mail Accounts _____________

   In-House Instant Messaging__________________

5. Proposed Key Words/Search Terms? Attach separate sheet) (to include, among other things, the named persons set out in the Svensson reply memorandum)

6. What is the mail server and version being used?

   Microsoft Exchange 5.5 Service Pack 4 ___

______________________________________________

Lotus Notes R5 ___________________________

Lotus Notes ______________________________

Microsoft Exchange 5.5 __________________

Lotus Domino __________________________

Microsoft Exchange 5.0 ________________

Lotus CC: Mail _________________________

7. Define Duplicate

Identical metadata and identical Custodian ______

Identical metadata and different Custodian ______

8. What is the backup Software and version being used?

Arcserve 2000 ______________________

Backup Exec. 8.6 ___________________

NT Backup ____________________________

Other _________________________________

9. What type of backup media is being used?

DLT IV (40/70/80GB) _________________

A1T (A1T1, A1T2, A1T3) _______________

DLT 11 (20GB) _________________________

DTF (DTF1, DTF2) ______________________

DAT (DDS2, DDS3, DDS40 _______________

LTO (LTO1, LTO2, LT03 ________________

10. What type of tape drives are being used?______

______________________________________________

11. How many tapes do you anticipate having? ______

_______________________________________________

12. Are the tapes at capacity? ____________________

13. What is the retention/recycle process for back up tapes?

_______________________________________________________
(daily, weekly, monthly, quarterly, incremental, full)

14. How are the tapes labeled? - Organized/labeled by date, custodian, server, etc.?______________________________

____________________________________________________

15. Earliest Dated Back Up Tape - Email? __________________

16. Earliest Dated Back Up Tape - NAS? ____________________

17. Have there been any server/software/OS migrations? ____

From What? To What? Date of Migration?

______________________________________________

______________________________________________

From What? To What? Date of Migration?

______________________________________________

______________________________________________

18. Review - What type of review tool do you propose to use?

In House Software ___________________________________

Online Review Tool __________________________________

Paper Review ________________________________________

19. Production:

Paper ________________________________

Native Files__________________________

Tiff + Bates Number ___________________

Tiff + Metadata ____________________

Other: ____________________________

CD ________________________________

DVD _______________________________

Hard Drive _________________________

[378224.1]

Email Search Terms

"Take out"

"Took out"

Make

Appoint

Elect

Issue*

Promot*

Move

Terminat*

Chang*

Downsiz*

Coverage

"Coverage loads"

"Make a change"

Credibility

Leader

Approv*

Recommend*

Nominat*

Fire*

Demot*

Separat*

Packag*

Role

Distinguish*

Recognize

"Push* back"

Pushback

# EXHIBIT 5

## Susan Irving

**From:** Rodriques, Louis A. [louis.rodriques@bingham.com]
**Sent:** Tuesday, December 12, 2006 9:54 AM
**To:** kevin f. moloney; john k. weir; KFM Home
**Cc:** Kociubes, Joseph L.; Kurker, Allyson E.
**Subject:** E-discovery Issues

Kevin and Jack:

Having spent a great deal of time in connection with the Rule 30(b)(6) deposition, we have turned our attention to the document discovery issues. We've reviewed your search terms and have spoken at length with Putnam personnel and e-discovery experts and have concluded that the process of restoring and searching the email boxes of even 10 individuals regarding the 91 comparators using your proposed 27 search terms is prohibitively expensive and unreasonably burdensome. Specifically, as we have discussed previously, Putnam's systems cannot perform a true Boolean search of the type that you envision. The only way to have such search performed is to have an e-discovery vendor convert the entire email boxes of your 10 identified decisionmakers into a searchable database on which such a Boolean search can be performed. Putnam has determined that to prepare the emails for delivery to a vendor will take about a month, even making no allowances for the upcoming holiday season. That is because the emails apparently reside on roughly 100 different backup tapes that need to be first identified and located (it's not at all clear which emails are on which of the many hundreds of backup tapes), and then retrieved from storage. Thereafter, the email boxes need to be restored to the email archiving system that Putnam uses and re-indexed for accuracy and searchability. Because, for a portion of this period, Putnam used CC-Mail and not Lotus Notes, a similar process needs to done to restore the CC-Mails. Once the email boxes have been restored, they needed to be loaded onto hard drives for delivery to a vendor. This process will take several weeks, to say nothing of the strain that it will put on Putnam's IT department.

Once at the vendor, the vendor needs to process the emails into a searchable database. Our information is that a vendor can process approximately 50 gigabytes per week at a cost of $1000 per gigabyte. Estimates are that your request will generate 250 gigabytes of material that will need to be processed. Simple math says that the creation of the database will take 5 weeks (over and above the month or so that Putnam needs to get the email boxes to the vendor) and will cost roughly $250,000.

After that, of course, the email boxes would still need to be searched for the 91 comparators and 27 search terms, and reviewed for responsiveness and privilege. Given that you have chosen to insist on a series of common verbs and nouns for which you want the emails searched (e.g., "make", "issue") the process will obviously be a long and expensive one. Weeding out responsive documents will also be a difficult task, since with search terms like "make" and "issue" we are going to see hoards of irrelevant material.

Given the magnitude of the task and the fact that we did not receive these terms until the Wednesday afternoon before Thanksgiving, this discovery cannot be completed before 12/31 as ordered by the Magistrate Judge, to say nothing of the burden and expense or searching 250 gigabytes worth of emails without any reason to believe that there is anything to be found. We see no choice but to seek relief from the Court.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial: 617-951-8340
Direct Fax: 617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

===================================================================

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

===================================================================