## Exhibit D

## Putnam Repeatedly has Made Misrepresentations of Fact to the Court.

| Item | Date | Attorney | Statement to the Court<br>(bold emphasis added) | Facts |
|---|---|---|---|---|
| 1 | 12/13/2005 | Rodriques | Represents to the Court that **Putnam Investment Division investment teams are as independently administered as the various autonomous graduate schools of Harvard University.** "I just direct your honor to Jackson." | Unlike Harvard's graduate schools, Putnam's Investment Division is administered centrally.<br>Former co-head of the Investment Division Stephen Oristaglio testified .<br><br>"Q: ...investment professionals within the investment division were compared with each other?<br>A: They would need to be, because the bonus pool was allocated to the investment division..." |
|   |   |   | Source: Transcript, December 13, 2005, hearing, p. I-15, ll. 6-7 | Source: Stephen Oristaglio dep., p. 96, ll. 10-19 |
| 2 | 12/13/2005 | Rodriques | "**Mr. Lasser never used e-mail**." | • At his deposition, Konstantin Stoev produced an e-mail from defendant Lasser that Lasser sent to Stoev through a surrogate |
|   |   |   | Transcript, December 13, 2005, hearing, p I-14, l. 11 | Source: Stoev dep. Exhibit 3 |
| 3 | 12/13/2005 | Rodriques | "**The group she was in consisted of about 10 to 15 portfolio managers**." | There were seven portfolio managers on the International Growth Equity team as of March 2002 |
|   |   |   | Source: Transcript, December 13, 2005, hearing, p.I-7, ll 20-21 | Source: Oristaglio dep., Exh 2 and Putnam SEC filings |

1

**Exhibit D**

| Item | Date | Attorney | Statement to the Court<br>(bold emphasis added) | Facts |
|---|---|---|---|---|
| 4 | 12/13/2005 | Rodriques | "**[T]hat group was disbanded.**"<br><br>Source: Transcript, December 13, 2005, hearing,; p. I-7, l. 22 | But, according to Richard Tibbetts:<br><br>"Q: Were you involved at all in the disbanding of something called the Global Growth Team?<br>A: Well, I am not sure what you mean by disbanding. There was a reorganization, if that is what you are referring to."<br>and, in his deposition, Oristaglio stated '<br>"I knew I wanted to make the team smaller", and ".once I decided that Steve Dexter was going to be the person to lead this effort how many did we need."<br><br>Sources: Tibbetts dep., p., 141, ll. 18-23;  Oristaglio dep., p. 122, ll. 21-22;  p. 128, ll 6-8 |
| 5 | 5/11/2006 | Rodriques/ Kociubes | Putnam counsel file **affidavit** of Putnam HR's Mary McNamee **concerning transfers by members of investment teams**: "These portfolio managers are all **managed in separate groups** and are compensated differently, in both the marketplace **and** at Putnam.  **They are** also **not interchangeable.**"<br><br>Source: Affidavit of Mary McNamee, May 11, 2006,  p.3, ll.12-15 | But according to head of Putnam HR, Tibbetts:<br><br>"Q: ...were [there] circumstances where individuals would have the opportunity to and did move from one department or team within the Investment Division to another?<br>A: Was I aware of people moving?  Yes, people moved.<br>Q: Does that occur with some frequency?<br>A: A fair amount, yes."<br><br>Source Tibbetts dep., p. 49, ll 18 - p. 50, l.2. |

2

## Exhibit D

| Item | Date | Attorney | Statement to the Court<br>(bold emphasis added) | Facts |
|---|---|---|---|---|
| 6 | 8/28/2006 | Kociubes | Arguing against Svensson's motion to resume the Tibbetts and Oristaglio depositions, Putnam counsel makes the following statements regarding the Tibbetts deposition:<br><br>". . . [the instruction not to answer] comes in a context where **we were at 6:00**, once that genie is out of the bottle it is out of the bottle. There's no choice of going to the court at that point." (13)<br><br>". . . here we had sort of an intent to inquire at a point where **seven hours were used up anyway**, into an area that has nothing and no conceivable relevance the plaintiff's claim." (14)<br><br>". . . this witness having been **there till 6:00, after six** when we finally shut it down because more than the seven hours had elapsed, we closed it." (15)<br><br>Source: (Transcript, August 28, 2006, hearing; p. 9, ll. 14-16; p. 10, l 22 -- p. 11, l. 1; p. 11, ll. 6-8 | The transcript of the Tibbetts deposition shows that: (1) Attorney Kociubes' instructions not to answer first occurred on p.109 of a 226 page transcript; and, (2) The lunch recess was taken from 1:20 to 1:55 pm. Since the deposition resumed after lunch at p. 108, the first instruction not to answer occurred not at 6:00 p.m. but just after lunch, at approximately 1:55 p.m. The deposition ended that day four hours later at 6:00 pm at p. 226.<br><br>(16) Tibbetts dep., p. 141, ll. 18-23 |
| 7 | 10/26/2006 | Kociubes | "[T}**he bulk of the list [of decision makers] that you just gave were individuals who were all deposed.**"<br><br>Source: Transcript, October 26, 2006, hearing; p.19, ll. 9-10 | Only four of the ten decision-makers had been deposed, and they were deposed before Putnam produced unredacted documents on September 1, 2006, and Oristaglio's deposition, as per the court order, resumed for two hours subsequent to the September 1, 2006, production of unredacted documents. |

## Exhibit  D

| Item | Date | Attorney | Statement to the Court<br>(bold emphasis added) | Facts |
|---|---|---|---|---|
| 8 | 10/26/2006 | Kociubes | Arguing against Svensson's motion to compel production of documents requested in her 2d RPOD in regard to discrete documents, Putnam counsel likens the Performance and Development Planning and Review Form ("PDPR") to the Human Resources Update, an on-going non-discrete document: "**This is really not a discrete group, your honor.**"<br><br>Source: Transcript, October 26, 2006, hearing; p. 36, ll. 10-11 | But according to the Putnam 30(b)(6) witness, the PDPR is a discrete document, as it is "the form that was made available to managers to use for documenting performance."<br><br>Source: Transcript  30(b)(6) dep , p. 110, ll. 20-22 |
| 9 | 10/26/2006 | Kociubes | "**Ms. Svensson rather than being terminated was given the opportunity to go to GER, same title** …Everybody has so testified. **There is no document or anything that is inconsistent**."<br><br>Source: Transcript, October 26, 2006, hearing; p. 47, ll. 20-22 | The functional title was a demotion from "Senior Portfolio Manager" to "Analyst."<br><br>Source: Putnam document, PRM 1750, cost center title change |
| 10 | 12/4/2006 | Kociubes | The Putnam motion to quash resumption of the  30(b)(6) deposition,  repeatedly represents to the Court that **6 hours of testimony has been given at the Rule 30(b)(6) deposition:**<br><br>"After 6 hours, Putnam suspended the deposition."<br><br>"Mr. Tibbetts testified extensively for 6 hours on many of the noticed topics.<br><br>"...in the 6 hours during which Mr. Tibbetts did testify..."<br><br>Source¨ Putnam  motion to quash Rule 30(b)(6), p. 1, § II, ll. 2-3;  p. 7, ¶ 2,  l 2;  p. 10, ll.  7-8 | The transcript shows that while the deposition began at 10:14 a.m. and ended at 6:00 p.m.(approximately 5 hours and 46 minutes) after the breaks and recesses are taken into account)' the witness actually testified for only 4 hours and 53 minutes of the full seven hours allowed under the rules. |

4

## Exhibit D

| Item | Date | Attorney | Statement to the Court<br>(bold emphasis added) | Facts |
|---|---|---|---|---|
| 11 | 12/4/2006 | Kociubes | In the same motion, Putnam states, "**Putnam extended considerable efforts to prepare Richard B. Tibbetts…to serve as its Rule 30(b)(6) witness.**" | Mr. Tibbetts testified that he had not met with anyone in the investment division in preparation for his testimony (26).<br><br>"Q: Did you...meet with Mr. Brooks concerning the 30(b)(6) deposition?<br>A: No.<br>Q: Did you...meet with Mr. Haldeman concerning the 30(b)(6) deposition?<br>A: No.<br>Q: Did you...to meet with anyone within the Investment Division outside of Human Resources?<br>A: No." |
| | | | Source: Putnam motion to quash; p. 5, ¶ C, ll. 2-4 | (26) Transcript, 30(b)(6) deposition, p. 7, l. 20 - p. 8, l 5 |
| 12 | 12/13/2006 | Kociubes | In its December 13, 2006 motion to terminate discovery, Putnam states falsely that the documents ordered by the Court on October 26, 2006, have been produced (" **. . . this Court ordered certain documents produced (which Putnam has since done) . . .**"). | As of December 27, 2006, incomplete production of the "360s"; six statements under oath have not been produced; information re: the Operating Committee has not been produced; court directed negotiations as to the discrete items of the 2d RPOD are at a standstill since Putnam has failed and refused even to advise Svensson counsel of the Putnam positions on production of the discrete items; and court directed negotiations as to e-mail issues are also at a standstill due to Putnam's refusal to provide requested e-discovery information as to its computer and e-mail systems . |
| | | | Source: Putnam motion to terminate discovery, p. 1, ll. 10-11 | Source: Exhibit __, October 26 Hearing - Status of Compliance |