UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

```
* * * * * * * * * * * *    *    Civil Action No. 04-12711-PBS
                           *
LISA SVENSSON,             *
                           *    BBO No. 351000
        Plaintiff,         *
                           *
                           *    Memorandum of Plaintiff
v.                         *    Svensson in Support of her
                           *    Motion to Compel Production
                           *    of Documents and Things in her
                           *    Second Request for Documents
PUTNAM INVESTMENTS LLC,    *    and Things and for Other Relief
et al.,                    *    as to the Putnam Responses to
                           *    her First Interrogatories and
        Defendants         *    First Request for Production.
                           *
* * * * * * * * * * * *    *
```

Plaintiff Lisa Svensson ("Svensson") submits this memorandum in support of her motion for orders compelling production of documents and things requested in the various categories of her Second Request for Production by defendant Putnam Investments, LLC ("Putnam"), for other relief as to Putnam's responses to her First Interrogatories to, and First Request for Production of Documents by, Putnam, and for sanctions including attorneys' fees.

The categories of the Second Request for Production by Putnam that are subject to this motion, are set forth below in accordance with the requirements of Local Rule 37.1(b)(4).

Svensson has waived or limited the scope of the categories of documents requested in the Second Request for Production as

set forth below.

**Request No. 1**: <u>All documents</u> and things <u>concerning the criteria
    actually used</u> by the persons participating in the decision
    making process <u>in deciding whether to select Svensson or
    any of the identified males or identified females</u>[1] <u>for
    appointment to or election as a Managing Director or
    Portfolio Manager</u> in the period since January 1, 1999,
    whether by promotion from within the Investment Management
    Division, another division of Putnam or as a lateral hire
    from another entity.[2]

**Response No. 1**: [Putnam objects to the extent this Request seeks
    documents [that]...have been produced... [And] to the balance
    [as]...unduly vague and ambiguous, overbroad, and
    ...irrelevant and not reasonably calculated to lead to the
    discovery of admissible evidence. Without waiving the
    foregoing, Putnam will produce its Career Development Guide
    for Equity Portfolio Manager.

    **Argument**:  The documents requested concerning the

    criteria used by Putnam should be produced as they are

    highly relevant to the Putnam decision making process that

    is at the heart of this case.  Plaintiff Svensson

    ("Svensson") will accept a statement from defendant Putnam

    Investments, LLC ("Putnam") that it has produced all

    written criteria concerning Managing Director and Portfolio

    Management positions since January 1, 1999, and will

    produce any criteria for Portfolio Management Managing or

    Director positions that it has not already produced.

---

[1] The phrase "91 comparators" refers collectively to the 91 identified
males and identified females that Putnam and Svensson agreed at the
July 11, 2006, hearing would be deemed comparators for discovery
purposes, Putnam reserving the right to contest this characterization
for purposes other than discovery.
[2] All underlined emphasis of any of Svensson's requests is added.

**Request No 2**:

   All <u>documents</u> and things <u>concerning the results of the</u>
   <u>application of the criteria referred to</u> in the immediately
   preceding category to [Svensson], any of the [91
   comparators].

**Response No. 2:** To the extent this Request...relat[es] to
   [Svensson], such documents [already] have been produced...
   [Putnam] objects to the balance...[as] unduly vague and
   ambiguous, overbroad, and...irrelevant and not reasonably
   calculated to lead to the discovery of admissible
   evidence...[and[... further objects [as] set forth in its
   Opposition to the Plaintiff's motion to compel further
   answers to her interrogatories ("Putnam's Opposition")....

   **Argument:** The documents requested concerning the

results of the criteria actually used by Putnam in deciding

who should be appointed to Portfolio Management and

Managing Director positions should be produced as they are

highly relevant to the Putnam decision making process that

is at the heart of this case.

   However, Svensson will reduce the scope of this

request for purposes of this category of this request to

the following 22 of the 91 comparators: 16 males: Mark

Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman,

Peter Hadden, Shigeki Makino, David Gerber, David King,

Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino

Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss,

and six females: Beth Cotner, Lauren Allansmith, Debbie

Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard. [3]

---

[3] By limiting the number of comparators for purposes of this or any

**Request No 3:** <u>In regard to the</u>...<u>91 Comparators</u>...<u>who were not</u>
<u>promoted from within Putnam to Portfolio Manager or</u>
<u>Managing Director but were hired on a lateral basis</u> from
anther entity in the period since January 1, 1999, <u>all</u>
<u>documents and things concerning communication between or</u>
<u>among those persons participating in the decision making</u>
<u>process as to the persons who should be elected or appointed</u>
<u>to th[ose] position[s]</u>, and which documents and things
<u>concerned evaluation of, or action or decision made, taken</u>
<u>or recommended or proposed to be made or taken, in regard</u>
<u>to any one or more of such persons</u>.

**Response No. 3:** Putnam objects...unduly vague and ambiguous,
overbroad, and...irrelevant and not reasonably calculated
to lead to the discovery of admissible evidence...[and] on
the grounds set forth in Putnam's Opposition....[and] the
Request is incomprehensible to the point that it is
unclear what additional information the Plaintiff seeks.

**Argument: D**ocuments concerning communication among

decision makers as to persons being brought in from outside

of Putnam to fill positions that Svensson and the female

comparators were qualified are certainly highly relevant to

the Putnam decision making process that is at the heart of

this case.

However, Svensson will reduce the scope of this request

to communications among the decision makers as to the

following four male comparators who were brought into Putnam

from the outside: Josh Brooks, Shigeki Makino, Colin Moore

and Eric Sorensen.  Based on the deposition testimony and

Putnam documents produced to date, Svensson believes that

---

other category of this request from the 91 Comparators to some of
them, Svensson does not waive any contention on her part that all of
the 91 Comparators are her comparators.

some or all of the following individuals were decision

makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry

Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett

Browchuk, Dan Miller and Justin Scott.

Plaintiff is not aware of any female comparators who

fall within the scope of this request, but if any of the 24

female comparators were rejected for immediate Managing

Director or Portfolio Manager status upon first being hired

by Putnam, Svensson requests the court to require production

of documents concerning these decisions.

**Request No 4** In regard to the [91 Comparators] who were not
promoted from within Putnam but were hired as a Managing
Director or Portfolio Manager...from another entity in the
period since January 1, 1999, all documents and things
prepared or received by or on behalf of any one or more of
the persons participating in the decision making process as
to the persons who should be so appointed or elected to
Managing Director or Portfolio Manager, and which
documents and things concerned evaluation of, or action or
decision made, taken or recommended or proposed to be made
or taken, in regard to any one or more of such persons.

**Response No. 4** Putnam objects...unduly vague and ambiguous,
overbroad,...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence....also...on
the grounds set forth in Putnam's Opposition....[and]...the
Request is incomprehensible to the point that it is unclear
what additional information the Plaintiff seeks.

**Argument: D**ocuments concerning evaluations by decision

makers as to persons being brought in from outside of Putnam

to fill positions that Svensson and the female comparators

were qualified are certainly highly relevant to the Putnam

decision making process that is at the heart of this case.

However, Svensson will reduce the scope of this request to documents concerning evaluations by the decision makers as to the following four male comparators who were brought into Putnam from the outside: Josh Brooks, Shigeki Makino, Colin Moore and Eric Sorensen.  Based on the deposition testimony and Putnam documents produced to date, Svensson believes that some or all of the following individuals were decision makers: Steve Oristaglio, Jack Morgan, Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh Brooks, Brett Browchuk, Dan Miller and Justin Scott.

Plaintiff is not aware of any female comparators who fall within the scope of this request, but if any of the 24 female comparators were rejected for immediate Managing Director or Portfolio Manager status upon first being hired by Putnam, Svensson requests the court to require production of documents concerning these decisions.

**Request No 5**: In regard to Svensson and the [91 Comparators] and the pools of persons for consideration for appointment or election as Managing Director or Portfolio Manager at any time in the period since January 1, 1999, all documents and things concerning communication between or among those persons participating in the decision making process as to who should be included in or excluded from such pools, and which documents and things concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard...to Svensson, any of the [91 Comparators] concerning inclusion in, or exclusion from, such pools.

**Response No. 5:** Putnam objects...unduly vague and ambiguous,
overbroad ...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence. Putnam
further states that this court, in response to Plaintiff's
November 5, 2005 Motion to Compel Defendant's Production
of Documents has already limited Putnam's obligation to
produce communications between and among its personnel;
and Putnam has already produced such information in
accordance with this court's prior ruling.

**Argument:** **D**ocuments concerning communication by and among

decision makers as to which persons should be included in

or excluded from the pools of persons to be considered for

appointment or election as Managing Director or Portfolio

Manager are certainly highly relevant to the Putnam

decision making process that is at the heart of this case.

However, Svensson will limit the scope of this

category to documents prepared or received by the above-

named ten decision makers (Steve Oristaglio, Jack Morgan,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks, Brett Browchuk, Dan Miller and Justin Scott)

concerning any of the 91 Comparators in regard to such

inclusion or exclusion.  This should not require search of

e-mail accounts of any comparators, but rather review of

files and e-mails of only the above referred to ten

decision makers.

**Request No. 6:** In regard to the [91 Comparators] who were not
promoted from within Putnam but were hired as a Managing
Director or Portfolio Manager on a lateral basis from
another entity in the period since January 1, 1999, all
documents and things prepared or received by or on behalf

<u>of any one or more of the persons participating in the</u>
<u>decision making process</u> as to who should be so elected or
appointed, and which concerned evaluation of, or action or
decision made, taken or recommended or proposed to be made
or taken, <u>in regard to</u> Svensson [or any of the 91
Comparators]....

**Response No. 6** Putnam objects...unduly vague and ambiguous,
overbroad, irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence. Putnam
further objects to the Request on the grounds set forth in
Putnam's Opposition....

**Argument:** **D**ocuments concerning communication by and among

decision makers as to which persons should be brought in

from the outside to be appointed as Managing Director or

Portfolio Manager are certainly highly relevant to the

Putnam decision making process that is at the heart of this

case.

However, Svensson will limit the scope of this

category to documents prepared or received by the above-

named ten decision makers (Steve Oristaglio, Jack Morgan,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks, Brett Browchuk, Dan Miller and Justin Scott)

concerning any of the 91 Comparators in regard to being

brought in from the outside for such appointments.  This

should not require search of e-mail accounts of any

comparators, but rather review of files and e-mails of only

the above referred to ten decision makers.

**Request No 7:** <u>All 360s</u> prepared or received by any person at
Putnam in or for any one or more of the reporting periods

<u>since January 1, 1999, in regard to Svensson or any one or more of</u> the [91 Comparators]....

**Response No. 7:** To the extent this Request seeks documents relating to the Plaintiff, such documents [already]... produced....  Putnam objects to the balance...unduly vague and ambiguous, overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objects on the grounds set forth in Putnam's Opposition....

**Argument:** The "360" reviews (everyone in the Investment Management Division reviewing everyone else) in regard to the 91 Comparators are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to the requested documents concerning the following 21 males and 12 females of the 91 Comparators: John Boselli, Brian DeChristopher, Steve Dexter, Nathan Eigerman, Roland Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave King, Jeff Lindsey, Saba Malak, Paul Marrkand, Paul Warren, Hugh Mullin, Mike Nance, Justin Scott, Beth Cotner, Lauren Allansmith, Jeanne Mockard, Margaret Smith, Carmel Peters, Jean Sievert, Karen Korn, Deborah Kuenstner, Elizabeth McElwee-Jones, Fayval Williams and Erin Spatz.

**Request No. 8:** <u>All documents</u> and things <u>concerning year end reviews, performance reviews, Investment Division & ISD Human Resources Updates, PDPRs and other documents analyzing or evaluating work performance</u> in the [Investment Management Division], that were prepared or received by any person at Putnam in or for any one or more of the

reporting periods since January 1, 1999, <u>in regard to Svensson [and/or]</u> any one or more of the [91 Comparators].

**Response No. 8:** To the extent this Request seeks documents relating to the Plaintiff, such...have been produced.... Putnam objects to the balance...unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Putnam further objects on the grounds set forth in Putnam's Opposition....

**Argument** The Year end reviews, performance reviews, Investment

Division & ISD Human Resources Updates, Performance

Development and Planning Reviews (PDPRs) and other

documents analyzing or evaluating work performance in the

[Investment Management Division] are certainly highly

relevant to the Putnam decision making process that is at

the heart of this case.

However, Svensson will limit the scope of this request

to the 91 Comparators.

**Request No. 9:** <u>All documents</u> and things <u>concerning the factual basis(es) of any numerical score in any 360s, year end reviews, performance reviews, Investment Division & ISD Human Resources Updates, PDPRs and/or other documents concerning analysis or evaluation of work performance</u> in the Investment Management Division, that were prepared or received by any person at Putnam in or for any one or more of the reporting periods since January 1, 1999, <u>in regard to Svensson [and/or] any one or more of the [91 Comparators</u>]....

**Response No. 9:** The 360s and performance reviews are self-explanatory; and Putnam does not possess any document or other thing that provides a factual basis of any numerical score for any type of performance review. To the extent...seeks the underlying performance reviews of [Svensson], Putnam has provided those documents in response to the Plaintiff's first request for documents.

To the extent this request seeks the underlying
performance reviews of the identified males or females,
Putnam objects ...overbroad, burdensome... irrelevant and not
reasonably calculated to lead to the discovery of
admissible evidence. Putnam further objects on the grounds
set forth in Putnam's Opposition....

**Argument:** The documents concerning the factual bases of any

numerical score in any 360s, year end reviews, performance

reviews, Investment Division & ISD Human Resources

Updates, PDPRs and/or other documents concerning analysis

or evaluation of work performance are certainly highly

relevant to the Putnam decision making process that is at

the heart of this case.

However, Svensson will limit the scope of this request

to the requested documents concerning the following 21

males and 12 females of the 91 Comparators: John Boselli,

Brian DeChristopher, Steve Dexter, Nathan Eigerman, Roland

Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave King,

Jeff Lindsey, Saba Malak, Paul Marrkand, Paul Warren, Hugh

Mullin, Mike Nance, Justin Scott, Beth Cotner, Lauren

Allansmith, Jeanne Mockard, Margaret Smith, Carmel Peters,

Jean Sievert, Karen Korn, Deborah Kuenstner, Elizabeth

McElwee-Jones, Fayval Williams and Erin Spatz.

**Request No 10**: All documents and things concerning the
organizational structure and/or jurisdiction of the
Investment Management Division as existing at any time or
from time to time in the period since January 1, 1999.

**Response No. 10:** Putnam objects... unduly vague and ambiguous,

overbroad,...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence...Putnam further
objects to producing documents concerning the period after
the Plaintiff's termination [as] such information is
unrelated...and/or not reasonably calculated to lead to the
discovery of admissible evidence.  Without limiting the
foregoing, Putnam will produce organizational charts
responsive to the Request.

**Argument:** Putnam's Tibbetts testified in deposition at p. 48, l.

8 – p. 49, l. 9, that after a certain period, Putnam kept

organizational charts on-line.  If this testimony is

accurate, the organizational charts on-line which have not

previously been produced for the period after January 1,

1999, should now be produced.  If the testimony is not

accurate, Svensson will accept a statement under oath that

Putnam has already produced all organizational charts for

the relevant period, together with any document(s) that

identify changes to the organizational structure of IMD

after the organizational charts ceased to be prepared.

**Request No 11:** All documents and things concerning the
administrative reporting relationships within the Investment
Management Division as existing at any time or from time to
time in the period since January 1, 1999.

**Response No. 11**: To the extent that the Plaintiff seeks information
other than that contained in the organizational charts, Putnam
objects on the grounds that the Plaintiff has failed to define
"administrative reporting relationship" and...vague,
ambiguous, and difficult to understand. Without limiting the
foregoing, Putnam will produce the organizational charts
responsive to the Request in response to Request No. 10.

**Argument:** Putnam's Tibbetts testified in deposition at p. 48, l.

8 – p.49, l. 9, that after a certain period, Putnam kept

organizational charts on-line.  If this testimony is

accurate the organizational charts on-line which have not

previously been produced for the period after January 1,

1999, should now be produced.  If the testimony is not

accurate, Svensson will accept a statement under oath that

Putnam has already produced all organizational charts for

the relevant period, together with any document(s) that

identify changes to the organizational structure of IMD

after the organizational charts ceased to be prepared.

**Request No. 12:** All <u>documents</u> and things <u>concerning the</u>
<u>membership, structure and/or jurisdiction of the Operating</u>
<u>Committee</u> as existing at any time or from time to time <u>in</u>
<u>the period since January 1, 1999</u>.

**Response No. 12:** Putnam objects to this Request on the grounds
that is unduly vague and ambiguous, overbroad,
and...irrelevant and not reasonably calculated to lead to
the discovery of admissible evidence.

**Argument:** The membership, structure and/or jurisdiction of the

Operating Committee are certainly highly relevant to the

Putnam decision making process that is at the heart of this

case.

    However, Svensson will limit the scope of this request

to documents that identify the membership and duties and

responsibilities of the Operating Committee in regard to

promotions, transfers, demotions, compensation or

terminations of Svensson and/or any of the 91 Comparators

in each year since January 1, 1999.

**Request No. 13:**

All documents and things <u>concerning the membership, structure and/or jurisdiction</u> at any time or from time to time in the period since January 1, 1999, <u>of the [Investment Division Management Committee</u>].

**Response No. 13:**

Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without limiting the foregoing, Putnam will produce documents responsive to the Request.

**Argument**: The membership, structure and/or jurisdiction of the

Investment Division Management Committee are certainly

highly relevant to the Putnam decision making process that

is at the heart of this case.

However, Svensson will limit the scope of this request

to documents that identify the membership and duties and

responsibilities of the Investment Division Management

Committee in regard to promotions, transfers, demotions,

compensation or terminations of Svensson and/or any of the

91 Comparators in each year since January 1, 1999.

**Request No 14:** All <u>documents</u> and things <u>concerning the membership, structure and/or jurisdiction of any committee or entity howsoever known or described, other than the IDMC or the Operating Committee, which had or has any administrative function or responsibility concerning Svensson, any of the [91 Comparators</u>]...at any time or from time to time in the period since January 1, 1999.

**Response No. 14:**

Putnam objects to this Request on the grounds that is unduly vague and ambiguous, overbroad, and...irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence.

**Argument**: The membership, structure and/or jurisdiction of any committee or entity howsoever known or described, other than the IDMC or the Operating Committee, which had or has any administrative function or responsibility concerning Svensson, and/or any of the [91 Comparators]are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to documents that identify the membership and duties and responsibilities any such other group of decision makers for decisions in regard to promotions, transfers, demotions, compensation or terminations of Svensson and/or any of the 91 Comparators in each year since January 1, 1999.

**Request No 15:** All <u>documents</u> and things <u>concerning the actual criteria used</u> by Putnam <u>for deciding whom of Svensson [and/or any of the 91 Comparators] should be or would be demoted</u> in the period since January 1, 2002:

    A.    <u>From Portfolio Manager to any other professional position</u> within the Investment Management Division;

    B.    <u>From ADR to any other professional position</u> within the Investment Management Division;

    C.    <u>From CIO to any other professional position</u> within the Investment Management Division;

      D.    <u>From ADR to Analyst within the Investment Management Division</u>; and/or,

      E.    <u>From CIO to ADR within the Investment Management Division</u>.

**Response No. 15:** Putnam objects inasmuch as it did not "demote" Svensson..... Putnam has already produced all documents with respect to any transfer of the Plaintiff. Putnam objects to the balance...[as] unduly vague and ambiguous, overbroad, and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** The criteria used by Putnam in deciding upon the above referred to employment actions are certainly highly relevant to the Putnam decision making process that is at the heart of this case.

However, Svensson will limit the scope of this request to the comparators identified in the argument sections to Nos. 1 and 2, above (22 of the 91 comparators: 16 males: Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman, Peter Hadden, Shigeki Makino, David Gerber, David King, Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss, and six females: Beth Cotner, Lauren Allansmith, Debbie Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard).

**Request No. 16:** All <u>documents</u> and things <u>concerning the results of the application of the criteria referred to</u> in the immediately preceding category to Svensson, any of the identified males and/or any of the identified females who were Portfolio Managers, ADRs, CIOs or holders of other Investment Management Division investment professional

positions.

**Response No. 16**: Putnam objects inasmuch as it did not
"demote" Svensson during the relevant time period. Putnam
has already produced all documents with respect to any
transfer of the Plaintiff. Putnam objects to the balance
...unduly vague and ambiguous, overbroad, and
...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition on file with the Court.

**Argument:** The results of the application of the criteria used by

Putnam in deciding upon the above referred to employment

actions are certainly highly relevant to the Putnam decision

making process that is at the heart of this case.

However, Svensson will limit the scope of this request

to the comparators identified in the argument sections to

Nos. 1 and 2, above (22 of the 91 comparators: 16 males:

Mark Bogar, Richard Cervone, Steve Dexter, Nathan Eigerman,

Peter Hadden, Shigeki Makino, David Gerber, David King,

Jeff Lindsey, Dan Miller, Mike Mufson, Dave Santos, Tino

Sellito, Brian DeChristopher, Hugh Mullin, Manuel Weiss,

and six females: Beth Cotner, Lauren Allansmith, Debbie

Farrell, Carmel Peters. Margaret Smith and Jeanne Mockard).

**Request No 17:** In regard to Svensson, any of the [91
Comparators]...who were selected for consideration for
possible demotion to take place in the period since
January 1, 2002 (whether or not actually demoted) from
Managing Director or from Portfolio Manager or other
professional position in the Investment Management Division,
all documents and things concerning communication between
or among the persons participating at any time or from
time to time in the decision making process to so consider
Svensson, any of the [91 Comparators] and which

communication concerned evaluation of, or action or
decision made, taken, recommended or proposed to be made or
taken, in regard to any of such persons.

**Response No. 17:** Putnam objects...as it did not "demote"
Svensson during the relevant period. Putnam has already
produced all documents with respect to any transfer of the
Plaintiff...objects to the balance...unduly vague and
ambiguous, overbroad, and...irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence,
and on the grounds set forth in Putnam's Opposition....

**Argument:** Documents concerning communication among the decision

makers as to persons selected as potential or possible

demotes are certainly highly relevant to the Putnam

decision making process that is at the heart of this case.

However, as this request calls for decision maker

documents only, Svensson will limit the scope of this

category to the following decision makers: Steve Oristaglio,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks and Brett Browchuk, and the following of the 91

Comparators: Beth Cotner, Carmel Peters, Josh Byrne, Dana

Clark, Steve Dexter, Nathan Eigerman, Richard England,

Roland Gillis, Peter Hadden, Joe Joseph, Omid Kamshad, Dave

King, Jeff Lindsey, Paul Marrkand, Dan Miller, Michael

Mufson, David Santos, Tino Sellito, Paul Warren, Justin

Scott, Manuel Weiss, Jean Sievert, Margaret Smith, Lauren

Allansmith, Susan McCormack, Peter Hadden, Colin Moore, Eric

Sorensen, and Michael Yogg.

**Request No 18:** In regard to Svensson [and/or] any of the [91

Comparators] <u>who were considered for demotion to take
place in the period since January 1, 2002 (whether or not
actually demoted) from Managing Director of from Portfolio
Manager or other professional position</u> in the Investment
Management Division, all <u>documents</u> and things
<u>concerning</u> <u>communication between or among the persons
participating in the decision making process to so
consider Svensson</u>, any of the [91 Comparators] <u>and which</u>
communication <u>concerned evaluation of, or action or
decision made, taken or recommended or proposed to be
made or taken</u>, in regard to, any of such persons.

**Response No. 18:** Putnam objects...as it did not "demote"
Svensson...already produced all documents with respect to
any transfer of the Plaintiff...objects to the
balance...unduly vague and ambiguous, overbroad, and
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Documents concerning communication among the decision

makers as to persons who were considered for demotion are

certainly highly relevant to the Putnam decision making

process that is at the heart of this case.

However, as this request calls for decision maker

documents only, Svensson will limit the scope of this

category to the following decision makers: Steve Oristaglio,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks and Brett Browchuk.

**Request No 19:** <u>In regard to</u> Svensson, any of the [91
Comparators] <u>who actually were demoted</u> in the period since
January 1, 2002, <u>from Managing Director or from Portfolio
Manager or other professional position in the Investment
Management Division,</u> all <u>documents</u> and things <u>concerning
communication between or among the persons participating
in the decision making process as to who</u> of Svensson, any
of the [91 Comparators] would be demoted, <u>and which</u>
communication <u>concerned evaluation of, or action or</u>

<u>decision made, taken or recommended or proposed to be made
or taken, in regard to, any one or more of such persons.</u>

**Response No. 19:** Putnam objects...as it did not "demote"
Svensson...already produced all documents with respect to
any transfer of the Plaintiff...objects to the balance of
this Request...unduly vague and ambiguous, overbroad, and
...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Documents concerning communication among the decision

makers as to persons who actually were demoted are

certainly highly relevant to the Putnam decision making

process that is at the heart of this case.

However, as this request calls for decision maker

documents only, Svensson will limit the scope of this

category to the following decision makers: Steve Oristaglio,

Tim Ferguson, Larry Lasser, Bill Landes, Ed Haldeman, Josh

Brooks and Brett Browchuk.

**Request No. 20:**

Svensson withdraws category No. 20.

**Request No. 21:**

Svensson withdraws category No. 21.

**Request No 22:** All <u>documents</u> and things <u>concerning the Putnam
policy</u> in the period since January 1, 1999, <u>in regard to
persons of the status and position of persons such as Darren
Peers (Peers) concerning payment or reimbursement of tuition
costs for the MBA degree</u>.

**Response No. 22:** Putnam objects...unduly vague and ambiguous,
overbroad, and...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence. Without
limiting the foregoing, Putnam will produce documents

responsive to the Request.

**Argument:**  Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No 23:** All documents and things concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons) concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction, fulfillment or other disposition of, the terms, provisions and/or condition of Peers' employment at Putnam, or financial obligations.

**Response No. 23:** Putnam objects...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. ...plaintiff has...deposed Mr. Peers on the subject of this request. Without limiting the foregoing, Putnam will produce responsive documents.

**Argument:**  Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No. 24:** All documents and things concerning the payment
to, or reimbursement of, any person concerning tuition costs
of Peers' MBA degree.

**Response No. 24:** Without limiting the foregoing, please see
Putnam's response to Request 23.

**Argument:**  Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No. 25:** All document and things prepared or received by
Putnam concerning the satisfaction, fulfillment or other
disposition of the terms and conditions of Peers' employment
in regard to the payment to, or reimbursement of, any person
or tuition costs of Peers' MBA degree.

**Response No. 25:** Without limiting the foregoing, please see
Putnam's response to Request 23.

**Argument:**  Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested, including,

without limitation, any cancelled check, or other documents

that identify the payor and the circumstances.

**Request No. 26:** All <u>documents</u> and things <u>concerning</u>
<u>communication between or among Putnam, any affiliate</u>
<u>of Putnam, Peers, NWQ, any affiliate of NWQ and/or any</u>
<u>other persons concerning the making, maintaining</u>
<u>and/or furnishing by Peers to, or receipt by, Putnam,</u>
<u>of any diary, notes or other documents or things</u>
<u>concerning Svensson or any of the identified males</u>
<u>and/or of the identified females prepared by Peers</u>.

**Response No. 26:** Putnam represents Mr. Peers in connection with
this litigation, and objects to this Request to the extent
that it seeks documents protected by the attorney-client
privilege and the work-product doctrine.
Furthermore,...already produced all such information not
covered by such privileges in response to the Plaintiff's
first request....

**Argument:** Whether Darren Peers' testimony in deposition and at

trial was or will be affected by the circumstances of the

payment by another of his obligation to reimburse Putnam for

Putnam's payment of Peer's business school tuition education

leading to his MBA degree, makes the subject matter of

Categories 23 - 27 highly relevant, and Putnam should be

required to produce the documents requested to the extent not

previously produced, such as cancelled checks, or other

documents that identify the payor, the amount and the

circumstances.

To the extent claiming privilege due to an attorney-client relationship between Putnam and Peers, Putnam should be required to amend its privilege log as per the applicable discovery rules, so the court and Svensson may assess the propriety of the claim.  Insofar as the documents requested t concern communications between Peers and Putnam prior to any such relationship, a claim of privilege is improper.

**Request No 27:** All documents and things <u>concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other persons(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Peers or by any of the identified males and/or any of the identified females who at the time of such communication were no longer in the employ of Putnam.</u>

**Response No.27:** Putnam objects to this request on the grounds that it seeks disclosure of information that is not discoverable due to the <u>attorney-client privilege and the attorney work-product doctrine</u>.

**Argument:**  Whether Darren Peers' testimony in deposition and at trial was or will be affected by the circumstances of his employment by Putnam or by the payment by another of his obligation to reimburse Putnam for Putnam's payment of Peer's business school tuition education leading to his MBA degree, makes the subject matter of Categories 23 - 27 highly relevant, and Putnam should be required to produce the documents requested, cancelled check, or other documents that identify the payor and the circumstances.

To the extent claiming privilege due to an attorney-

client relationship privilege between Putnam and Peers,
Putnam should be required to amend its privilege log as per
the applicable discovery rules, so the court and Svensson may
assess the propriety of the claim.

Insofar as there documents requested that concern
communication between Peers and Putnam prior to any such
relationship, a claim of privilege is improper.

Moreover, the category seeks documents concerning NWQ,
Peers' subsequent and present employer and concerning persons
other than Peers or Putnam.

**Request No. 28:** All documents and things concerning the factual
basis of any numerical or other rating, evaluation, analysis
or score concerning Svensson in connection with consideration
of her by Putnam in the period since January 1, 1999, for
promotion; demotion; salary or other compensation increase;
salary or other compensation decrease; and/or other employment
action.

**Response No. 28:** Putnam objects...it is incomprehensible to the
point that it is unclear...overbroad, burdensome and
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition..... Putnam further objects
Plaintiff's failure to define "numerical or other rating"
has rendered the request vague, ambiguous, and difficult to
understand. Plaintiff's performance reviews are self-
explanatory; and Putnam does not possess any document or
other thing that provides a factual basis of any numerical
score for any type of performance review. To the extent
...seeks the underlying performance reviews of the
Plaintiff, Putnam has provided those documents....  To the
extent that the Plaintiff seeks information concerning her
promotions, transfer, or any other employment action, Putnam
has already produced such information in response to the
Plaintiff's first request.... To the extent this Request
seeks information relating to the Plaintiff's compensation,
Putnam will produce responsive documents.

**Argument:** To the extent the documents requested have not been

produced or not produced in unredacted format, the court

should order Putnam to produce in unredacted format the

documents requested, including any documents concerning

alteration of Plaintiff's numerical performance ratings

between January 1, 1999, and September 15, 2003, the date

of her termination.

**Request No 29:** The terms and conditions offered by Putnam in the
period since January 1, 2002, to any of the [91 Comparators]
in connection with leaving the employ of Putnam by any of
such persons, whether voluntarily or involuntarily.

**Response No. 29:** Putnam objects...unduly vague and ambiguous,
overbroad,...irrelevant and not reasonably calculated to
lead to the discovery of admissible evidence....also...on the
grounds set forth in Putnam's Opposition....

**Argument:** Whether and to what extent Putnam has required any of

the 91 Comparators who have left Putnam either voluntarily

or involuntarily to agree to conditions that might affect

their testimony makes the subject matter of this category

highly relevant, and Putnam should be ordered to produce

such documents.

**Request No 30:** All documents and things concerning any notes,
minutes or other document of or in regard to meetings or
decisions of the Putnam trustees in the period May –
September 2003 concerning directed brokerage commissions.

**Response No. 30:** Putnam objects... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence
...also...[as] set forth in Putnam's Opposition....

**Argument:**   That Svensson complained at Putnam as to Putnam's

policies and practices as to directed brokerage commissions
makes the subject matter of this category highly relevant.
As her complaints may have affected the decision makers in
dealing with Svensson, Svensson and the court should be
informed by document production in this regard.

**Request No 31:** All <u>documents</u> and things <u>concerning</u>
<u>communication between or among, Haldeman, Lasser and any of</u>
<u>the Putnam trustees</u> in the period May - September 2003
concerning directed brokerage commissions.

**Response No. 31:** Putnam objects...irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.

**Argument:**  That Svensson complained at Putnam as to Putnam's
policies and practices as to directed brokerage commissions
makes the subject matter of this category highly relevant.
As her complaints may have affected the decision makers in
dealing with Svensson, Svensson and the court should be
informed by document production in this regard.

**Request No 32:** All <u>documents</u> and things <u>concerning coverage</u>
<u>reports for O'Malley and</u> the [91 Comparators] for each of
the reporting periods in 2002, 2003, 2004, 2005 and 2006.

**Response No. 32:** Putnam objects...overbroad, burdensome
...irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition on file....

**Argument:** As this category concerns only Global Equity Research,
the comparators for this category are limited to R. J.
Bukovac, Mark Bogar, Chris O'Malley, Saba Malak, Michael
Yogg, Brian DeChristopher, John Boselli, Lauren Allansmith,

Maria Drew, Jeanne Sievert and (if not already produced) Lisa Svensson.

**Request No 33:** All <u>documents</u> and things <u>concerning communication between or among Stoev and Morgan or other persons at Putnam in regard to the termination of Stoev's employment and the stated reasons</u> for it.

**Response No. 33:** Putnam objects...overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and...[as]...set forth in Putnam's Opposition.....

**Argument:** Stoev, whose deposition was taken over the objection of Putnam and pursuant to an order of this court, will be through his deposition testimony a witness for Svensson at the trial. The documents requested are highly relevant as they may show that what was testified in depositions or told to Stoev or others by Putnam officials differed from what they told Stoev, each other or the Federal immigration authorities in regard to, among other things, Stoev's "green card" and his termination. Accordingly the documents requested should be produced.

**Request No 34:** All documents and things <u>concerning the "green card" application for Stoev that Morgan filled out</u>.

**Response No. 34:** Putnam objects...overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and [as]... in Putnam's Opposition on file with the Court.

**Argument:** Stoev, whose deposition was taken over the objection of Putnam and pursuant to an order of this court, will be through his deposition testimony a witness for Svensson at

the trial.   The documents requested are highly relevant as
they may show that what was testified in depositions or told
to Stoev or others by Putnam officials differed from what
they told Stoev, each other or the Federal immigration
authorities in regard to, among other things, Stoev's "green
card"   and his termination.   Accordingly the documents
requested should be produced.

**Request No. 35:** All documents and things <u>concerning calendar
entry(ies) (Lotus notes or otherwise) for Haldeman
concerning any communication with Peers</u>.

**Response No. 35:** No such documents exist.

**Argument:** The deposition testimony of Haldeman ( p. 71, l. and

11,   14-16) and Putnam document PRM 1755 evidence that the

documents exist. If they do not exist, Svensson will accept

a sworn statement to that effect, plus any other documents

which would pinpoint the date of the Peers-Haldeman meeting.

**Request No 36:** All documents and things <u>concerning communication
between Morgan and Allansmith in the period 2002-2004
concerning comments upon or other feedback as to
Allansmith's work performance</u>.

**Response No. 36:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:**   The treatment of Svensson and other women at Putnam

including Allansmith, who were terminated or forced out, is

highly relevant.   The documents requested should be

produced.

**Request No. 37:** All documents and things <u>concerning communication in the period 2002-2004 between Morgan and McNamee, Scordato and/or Brooks concerning Svensson's or Allansmith's work performance or reasons or justifications for Svensson or Allansmith leaving Putnam's employment</u>.

**Response No.37:** With respect to the Plaintiff, Putnam has already produced communications between Morgan, McNamee, Scordato and/or Brooks.... With respect to Ms. Allansmith, Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** The treatment of Svensson and other women at Putnam including Allansmith, who were terminated or forced out, is highly relevant. The documents requested should be produced.

**Request No 38:** All documents and things <u>concerning GER Active Portfolio Performance in the period January 1, 1999, through September 15, 2003, for Svensson [and/or] any of the</u> [91 Comparators].

**Response No. 38:** With respect to the Plaintiff, Putnam will produce documents responsive to this Request. With respect to the balance...Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** As the request relates to Global Equity Research, it is limited to Svensson and the following of the 91 Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

The performance in the work place of Svensson as compared to the others is highly relevant.

**Request No 39:** All documents and things concerning comparisons in work performance in the period January 1, 1999, through September 15, 2003, of Svensson, [and/or any of the 91 Comparators].

**Response No. 39:** Putnam has produced all of the Plaintiff's performance reviews.... Putnam objects to the balance of ...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** As the request relates to Global Equity Research, it is limited to Svensson and the following of the 91 Comparators: Bukovac, Bogar, O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

The performance in the work place of Svensson as compared to the others is highly relevant.

**Request No. 40:** All documents and things, including, without limitation Human Resources Action Request and Requisition for Employee documents, concerning the move or transfer of any of the identified males out of GER in the period since January 1, 1999.

**Response No. 40:** Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds...in Putnam's Opposition on file...

**Argument:** Documents concerning the move or transfer of any of the males in the 91 Comparators is a highly relevant subject.

However, Svensson will limit the scope of the category

to: Bogar, Bukovac, Cervone, DeChristopher, Malak, Marrkand

and Mehta.

**Request No. 41:**

Svensson withdraws category No. 41.

**Request No. 42:**

Svensson withdraws category No. 42.

**Request No 43:** Putnam's Officers' Directories for the years
2003-2005.

**Response No. 43**: The Putnam Officer's Directory is a listing of
personal contact information for 1,296 officers of Putnam,
and as such, this Request seeks information that is
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.

**Argument:** As there is a confidentiality order in place, Putnam's

objections are meritless.  The Directories provide highly

relevant information as to the 91 Comparators in regard to

their titles and job responsibilities, and enable the

comparisons of one person to another and positions and

responsibilities from one year to another.  As Svensson has

such Directories for some of the relevant periods, Svensson

limits the scope of this request to the Directories for

July-December 2003; July-December 2005; and 2004 through

December.

**Request No 44**: All documents and things concerning bonus
worksheets prepared or maintained at any time or from time to
time in the period since January 1, 1999, in regard to the
teams of which Svensson, any of the [91 Comparators] were

members, including, without limitation, Core International,
Core Domestic, Core Growth (later called Large Cap Growth),
Value, Specialty Growth and GER.

**Response No. 44**: With respect to the Plaintiff, Putnam will produce
documents concerning her bonus worksheets. With respect to
the balance...Putnam objects...overbroad, burdensome and
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set
forth in Putnam's Opposition....

**Argument:** Which of the 91 Comparators did or did not get bonuses

in any of the relevant years and the size of bonuses if

received are highly relevant matters to all claims of

Svensson in this case, including, among others, the equal

pay claim, as bonuses are obviously a significant part of

total compensation.  The documents requested concerning the

91 Comparators should be produced.

**Request No. 45:** All documents and things concerning the reports,
analyses, measurements and/or rankings of the types
included in documents LS-501, 503-506 for any of the [91
Comparators] prepared in the period since January 1, 1999.

**Response No. 45:** Putnam objects...overbroad, burdensome and...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition....

**Argument:** Documents such as reports, analyses, measurements

and/or rankings are highly relevant as they provide ways to

compare one person from another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No 46:** All documents and things <u>concerning the reports,</u> <u>analyses, measurements and/or rankings of the types</u> <u>included in document LS-502 for the fund referred to and</u> <u>for the other Putnam funds</u>, which were prepared <u>in the</u> <u>period since January 1, 1999</u>.

**Response No. 46:** <u>Putnam objects</u>...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** Documents such as reports, analyses, measurements

and/or rankings are highly relevant as they provide ways to

compare one investment professional to another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 47:** All documents and things <u>concerning attribution</u> <u>reports of the type included in LS-507-12 for the fund</u> <u>referred to and</u> any <u>other funds</u>, which were prepared in the period <u>since January 1, 1999</u>.

**Response No. 47:** Putnam objects. overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** Documents such as the requested attribution reports

are highly relevant as they provide bases for comparing one

investment professional with another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 48:** All documents and things concerning sector level performance index ranks of the type included in LS-513-515 prepared in the period since January 1, 1999.

**Response No. 48:** Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file....

**Argument:** Documents such as the requested sector level

performance index ranks are highly relevant as they provide

bases for comparing one with another.

Svensson limits the scope of this category to the

following 20 of the 91 Comparators: Bukovac, Bogar,

O'Malley, Malak, Yogg, DeChristopher, Boselli, Allansmith,

Drew, Sievert, Smith, Spatz, Williams, Korn, Kalus-

Bystricky, Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 49:** All documents and things concerning scorecards and second scorecards in regard to O'Malley, other MBAs and any of the [91 Comparators] prepared or maintained in the period since January 1, 1999.

**Response No. 49:** Putnam objects...overbroad, burdensome and... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** If the documents referenced in Morgan's testimony at

p. 95, l. 24 - p. 96, l. 6 are different from documents in

the format of documents LS 503-506, then such documents

should be produced as they enable comparisons between one

person and another.  They should be produced.

Svensson limits the scope of the category to the

following of the 91 Comparators:  Bukovac, Bogar, O'Malley,

Malak, Yogg, DeChristopher, Boselli, Allansmith, Drew,

Sievert, Smith, Spatz, Williams, Korn, Kalus-Bystricky,

Cervone, Lannum, Marrkand, Mehta and Norchi.

**Request No. 50**: The "notes" prepared by Tibbetts, which, "according to the Putnam privilege log, **concerned "female partners**."

**Response No. 50:** Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, *as* so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in

its Amended Privilege Log has Putnam made the showings

required to support the claims of attorney-client privilege

or work product.

Accordingly Svensson requests the court first to order

Putnam to disclose to Svensson and the court the relevant

information necessary to enable Svensson and the court to

assess the applicability of the claims.  Svensson requests

the court after the disclosure of this information to

review in camera the withheld documents to assist the court

in making its determinations as to these categories.

**Request No. 51:** The "undated" "notes" by an "unknown" author to an unidentified recipient, which, according to the Putnam privilege log, concerns "Svensson employment history."

**Response No. 51:** Putnam objects to this Request on the grounds these documents were created by Putnam's Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus, are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims. Svensson request the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

**Request No. 52:** The 1998 "maternity leave summary" prepared, according to the Putnam privilege log, by an "unknown" author for an unidentified recipient.

**Response No. 52:** Putnam objects to this Request on the grounds these documents were created by Putnam's Human Resources Office at the request of outside counsel, Louis Rodrigues, and thus, are protected by the attorney-client privilege and

the work-product doctrines, as so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in its Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims.  Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to these categories.

**Request No. 53:** The September 3, 2003, "e-mail re: litigation forwarded with e-mail from [Attorney] Rodrigues..." authored by McNamee and sent to the recipient, Brooks, as referred to in the Putnam privilege log but redacted so *as* to not disclose only the words used by the author or Attorney Rodrigues in a "communication," within the meaning of U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), each other, but disclosing the other words and information in either of the e-mails, including, without limitation, the identity of the author, the identity of the recipient(s), the date and time of the transmission and the words in the subject line.

**Response No. 53:** Putnam objects to this Request on the grounds that such documents are protected by the attorney-client privilege and the work-product doctrines, as so noted in Putnam's privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in

its Amended Privilege Log has Putnam made the showings
required to support the claims of attorney-client privilege
or work product.

Accordingly Svensson requests the court first to order
Putnam to disclose to Svensson and the court the relevant
information necessary to enable Svensson and the court to
assess the applicability of the claims.  Svensson requests
the court after the disclosure of this information to
review in camera the withheld documents to assist the court
in making its determinations as to these categories.

**Request No. 54:** The August 27, 2003, "e-mail re: Draft termination
agreement" from author Hadley to recipients McNamee and
Attorney Rodrigues, as referred to in the Putnam privilege
log but redacted so as to not disclose the words used by the
author or Attorney Rodrigues in a "communication," within
the meaning of U.S. v. United Shoe Machiner$^y$ Corp., 89 F.
Supp. 357, 358-59 (D. Mass. 1950), with each other but
disclosing the other words and information in the e-mail,
including, without limitation, the identity of the author,
the identity of the recipient(s), the date and time of the
transmission, the words in the subject line and the
attachment.

**Response No. 54:** Putnam objects to this Request on the grounds that
such documents are protected by the attorney-client privilege
and the work-product doctrines, *as* so noted in Putnam's
privilege log.

**Argument:** Neither in its responses to Category Nos. 50-54 nor in
its Amended Privilege Log has Putnam made the showings
required to support the claims of attorney-client privilege

or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims.  Svensson requests the court, after the disclosure of this information, to review in camera the withheld documents to assist the court in making its determinations as to these categories.

**Request No. 55:** All documents and things concerning the amounts and types of compensation, including, without limitation, salary and bonus, paid or payable to Svensson [and the 91 Comparators] for each of the years 1999-2004.

**Response No. 55:** With respect to the Plaintiff, Putnam has already produced documents....  With respect to the balance ...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** Total compensation paid or payable over time whether in cash, securities other things of value to Svensson and the 91 Comparators is highly relevant as, among other things, evidencing comparisons made by Putnam between and among the 91 Comparators.  The information requested is relevant to, among others, the Svensson equal pay claim. The documents that should be produced in response to this category include documents evidencing the total compensation including bonus compensation paid or payable to any of the 91 Comparators whether he or she was a participant in the

partners' pool, so-called, and/or in the A&P pool, so-

called, plus any compensation derived from Putnam equity

partnership units or stock options, or MMC restricted stock

or stock options of the parent holding company ("MMC").

**Request No. 56:** All documents and things <u>identifying any of the</u>
<u>[91 Comparators who] left the employ of Putnam on a voluntary</u>
<u>basis</u> in the period 1999 to date.

**Response No. 56:** Putnam objects to this Request on the grounds that
it is overbroad, burdensome and seeks information that is
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and on the grounds set forth
in Putnam's Opposition on file with the Court.

**Argument:**  Category Nos. 56-60 seek documents concerning the

circumstances of and reasons for any one or more of the 91

Comparators who left their employment at Putnam whether on

an involuntary or voluntary basis.  This is a highly

relevant area of inquiry, as the reasons and circumstances

affecting Svensson must be compared to those affecting

others of the 91 Comparators who left Putnam, either

"voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of

the 91 Comparators who departed Putnam during the period

since January 1, 1999, and to those instances in which the

decision to depart was initiated by Putnam unless Svensson

contends that the decision was initiated by the comparator.

Svensson expects that included as investment

professionals whose departure was initiated by Putnam are, at least, the following of the 91 Comparators: Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

**Request No. 57:** All documents and things concerning the circumstances and reasons for the voluntary terminations referred to in the immediately preceding category.

**Response No. 57:** Putnam objects... overbroad, burdensome and ...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:**  Category Nos. 56-60 seek documents concerning the circumstances of and reasons for any one or more of the 91 Comparators leaving of the employ of Putnam whether involuntary or voluntary.  This is a highly relevant are of inquiry as the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either "voluntarily" or "involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the

decision to depart was initiated by Putnam unless Svensson

contends that the decision was initiated by the comparator.

Svensson expects that included as investment

professional whose departure initiated by Putnam are at

least the following of the 91 Comparators: Allansmith,

Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen,

Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler

and Williams.  If Putnam contends otherwise, then Putnam

also must produce documents evidencing that the decision to

depart was initiated by the comparator.

**Request No. 58:** All documents and things <u>identifying any of the identified males and any of the identified females who left the employ of Putnam on an involuntary basis</u> in the period 1999 to date.

**Response No. 58:** Putnam objects to this Request on the grounds that the Request is overbroad, burdensome and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition on file with the Court.

**Argument:**  Category Nos. 56-60 seek documents concerning the

circumstances of and reasons for any one or more of the 91

Comparators whose departure was initiated by Putnam whether

involuntary or voluntary.  This is a highly relevant area of

inquiry as the reasons and circumstances affecting Svensson

must be compared to those affecting others of the 91

Comparators who left Putnam either "voluntarily" or

"involuntarily."

Plaintiff will limit the respective category to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose leaving was initiated by Putnam are at least the following of the 91 Comparators: Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also must produce documents evidencing that the decision to depart was initiated by the comparator.

**Request No. 59:** All documents and things concerning the circumstances and reasons for the involuntary terminations referred to in the immediately preceding category.

**Response No. 59:** Putnam objects...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:**  Category Nos. 56-60 seek documents concerning the circumstances of and reasons for any one or more of the 91 Comparators leaving of the employ of Putnam whether involuntary or voluntary.  This is a highly relevant are of inquiry as the reasons and circumstances affecting Svensson

must be compared to those affecting others of the 91
Comparators who left Putnam either "voluntarily" or
"involuntarily."

Plaintiff will limit the respective category to any of
the 91 Comparators who departed Putnam during the period
since January 1, 1999, and to those instances in which the
decision to depart was initiated by Putnam unless Svensson
contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose
leaving was initiated by Putnam are at least the following
of the 91 Comparators: Allansmith, Cotner, Farrell,
MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith,
Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam
contends otherwise, then Putnam also must produce documents
evidencing that the decision to depart was initiated by the
comparator.

**Request No. 60:** All documents and things concerning any severance
package agreed to buy Putnam and any of the [91 Comparators]
in regard to his or her leaving the employ of Putnam (whether
voluntarily or involuntarily) in the period 1999 to date.

**Response No. 60:** With respect to the Plaintiff, Putnam has
already produced documents....  With respect to the balance
...overbroad, burdensome and irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence,
and on the grounds...in Putnam's Opposition....and
duplicative of the documents sought in Request No. 29.

**Argument:**  Category Nos. 56-60 seek documents concerning the

circumstances of, and reasons for, any one or more of the 91 Comparators leaving of the employ of Putnam, whether on a voluntary or involuntary basis.  This is a highly relevant area of inquiry as the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either "voluntarily" or "involuntarily."

Plaintiff will limit the respective categories to any of the 91 Comparators who departed Putnam unless Putnam contends that the decision was initiated by the comparator.

Svensson expects that included as comparators whose leaving was initiated by Putnam are at least the following of the 91 Comparators: Allansmith, Cotner, Farrell, MacElwee-Jones, Kuenstner, McMullen, Peters, Parker, Smith, Spatz, Thomsen, Leichter, Wheeler and Williams.  If Putnam contends otherwise, then Putnam also should be ordered to produce documents evidencing that the decision to depart was initiated by the comparator.

**Request No. 61:** All documents and things concerning communication between or among Putnam, any affiliate of Putnam, and Landes, Eckland and/or Oristaglio/or any other person(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Landes, Eckland and/or Oristaglio.

**Response No. 61:** Putnam objects...not discoverable due to the attorney-client privilege and the attorney work-product doctrine.

**Argument:** Neither in its response to this category nor in its

Amended Privilege Log has Putnam made the showings required to support the claims of attorney-client privilege or work product.

Accordingly Svensson requests the court first to order Putnam to disclose to Svensson and the court the relevant information necessary to enable Svensson and the court to assess the applicability of the claims.  Svensson requests the court after the disclosure of this information to review in camera the withheld documents to assist the court in making its determinations as to this category.

**Request No.62:** All documents and things concerning identifying or stating the total bonus pool available to Putnam for each year since January 1, 1999.

**Response No.62:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**Argument:** The information sought is relevant because it is necessary to know the total bonus pool available for each year in order to enable the court and the jury at trial to determine if Putnam acted lawfully in its decisions to divide up the bonus pool among the 91 Comparators, and to know if there was any additional money or anything of value available from the total that might have been or should have been distributed to one or more of the 91 Comparators.

**Request No. 63.** All documents and things concerning identifying or stating the total bonus pool available to the Investment Management Division for each year since January 1, 1999.

**Response No. 63:** Putnam objects... overbroad, burdensome...
    irrelevant and not reasonably calculated to lead to the
    discovery of admissible evidence.

**Argument:** The information sought is relevant because it is

    necessary to know the total bonus pool available for each

    year in order to be enable the court to determine if Putnam

    acted lawfully in its decisions to divide up the bonus pool

    among the 91 Comparators.

**Request No. 64:** All documents and things concerning the amounts of
    the bonuses allocated for each year since January 1, 1999, to
    such of the [91 Comparators] receiving a bonus.

**Response No. 64:** Putnam objects... overbroad, burdensome...
    irrelevant and not reasonably calculated to lead to the
    discovery of admissible evidence.

**Argument:** The information sought is relevant because it is

    necessary to know the total bonus pool available for each

    year in order to be enable the court to determine if Putnam

    acted lawfully in its decisions to divide up the bonus pool

    among the 91 Comparators.

**Request No. 65:** The "anonymous" letter concerning Warren, which
    is referred to at p. 357 of the McNamee deposition.

**Response No. 65:** Putnam objects... overbroad, burdensome...
    irrelevant and not reasonably calculated to lead to the
    discovery of admissible evidence.

**Argument:** The conduct of Paul Warren, one of the 91 Comparators,

    described in the letter referred to (see McNamee deposition

    p. 357 ("...And what bad behavior over the years did it

allege Paul Warren had [engaged in]?  That he frequented

strip clubs...[a]nd that he over -- he utilized

entertainment from brokers excessively and accepted gifts

from brokers excessively")) is relevant to show the nature

of the conduct of this person and to be able to compare his

conduct in the workplace to that alleged of Svensson.

**Request No. 66:** <u>All documents and things concerning the language used and/or the behavior of Warren of the type referred to at pp. 18-21 and 357 of the McNamee deposition</u>.

**Response No. 66:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**Argument:** The conduct of Paul Warren, one of the 91 Comparators,

described in the letter referred to (<u>see</u> McNamee deposition

p. 357 ("...And what bad behavior over the years did it

allege Paul Warren had [engaged in]?  That he frequented

strip clubs...[a]nd that he over -- he utilized

entertainment from brokers excessively and accepted gifts

from brokers excessively")) and at pp. 18-2 ("They were

talking about a --someone leaving the group and that would

leave a hole in the work...and he stood up and grabbed his

crotch and said, "You could fill it with this") is relevant

to show the nature of the conduct of this person and to be

able to compare his conduct in the workplace to that

alleged of Svensson.

**Request No. 67:** All documents and things <u>concerning communication</u>

between Lasser or Haldeman and the Human Relations Department at Putnam and/or any other person concerning the language used by and/or behavior of Warren referred to at pp. 18-21 and 357 of the McNamee deposition.

**Response No. 67:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**Argument:** Communication at Putnam concerning the conduct of Paul Warren, one of the 91 Comparators, described in the letter referred to (see McNamee deposition p. 357 ("...And what bad behavior over the years did it allege Paul Warren had [engaged in]?  That he frequented strip clubs...[a]nd that he over -- he utilized entertainment from brokers excessively and accepted gifts from brokers excessively")) and at pp. 18-2 ("They were talking about a --someone leaving the group and that would leave a hole in the work...and he stood up and grabbed his crotch and said, "You could fill it with this") is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females among the 91 Comparators.

**Request No. 68:** All documents and things concerning the investigation of Warren by Tibbetts, which is referred to at p. 358 of the McNamee deposition.

**Response No. 68:** Putnam objects... overbroad, burdensome... irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.

**Argument:** Documents concerning the investigation at Putnam

concerning the conduct of Paul Warren, one of the 91

Comparators, described in the letter referred to (see

McNamee deposition p. 357 ("...And what bad behavior over

the years did it allege Paul Warren had [engaged in]?  That

he frequented strip clubs...[a]nd that he over -- he

utilized entertainment from brokers excessively and

accepted gifts from brokers excessively")) and at pp. 18-2

("They were talking about a --someone leaving the group and

that would leave a hole in the work...and he stood up and

grabbed his crotch and said, "You could fill it with this")

is relevant to show the nature of the conduct of this

person and to be able to compare his conduct in the

workplace to that alleged of Svensson, and to determine if

there has been any gender discrimination in the treatment

of Svensson and the females among the 91 Comparators.

**Request No. 69:** If the "investigation" of Warren was not "handled"
as the McNamee deposition states, by Tibbetts, but was
"handled" in whole or in part by one or more other persons,
all documents and things concerning the investigation of
Warren by such other person or persons.

**Response No. 69:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.

**Argument:** Documents concerning the investigation at Putnam

concerning the conduct of Paul Warren, one of the 91

Comparators, described in the letter referred to (<u>see</u>
McNamee deposition p. 357 ("...And what bad behavior over
the years did it allege Paul Warren had [engaged in]?  That
he frequented strip clubs...[a]nd that he over -- he
utilized entertainment from brokers excessively and
accepted gifts from brokers excessively")) and at pp. 18-2
("They were talking about a --someone leaving the group and
that would leave a hole in the work...and he stood up and
grabbed his crotch and said, "You could fill it with this")
is relevant to show the nature of the conduct of this
person and to be able to compare his conduct in the
workplace to that alleged of Svensson, and to determine if
there has been any gender discrimination in the treatment
of Svensson and the females among the 91 Comparators.

**Request No. 70:** All documents and things <u>concerning the
compensation figures, studies and statistics referred to in
the Allansmith deposition at pp. 88-90</u>.

**Response No. 70:** The compensation figures, studies and statistics
referenced in the Allansmith deposition were performed by Ms.
Allansmith, and Putnam does not possess any documents
concerning such information.  Putnam further objects...
overbroad, burdensome... irrelevant and not reasonably
calculated to lead to the discovery of admissible evidence.

**Argument:** Assuming for the sake of argument that Putnam was
correct in representing in June and July to Svensson and
the court that it did not keep statistics on which males
and females had children, it simply cannot be that Putnam

"does not possess any documents concerning (which, as per

Local Rule 26.5, means "referring to, describing,

evidencing, or constituting". [the] other information

referred to by Ms. Allansmith in her deposition, which

includes, as more particularly set forth in the excerpt from

the Allansmith deposition, Exhibit "A" to this memorandum, the

following from her testimony:

89

4 ... Almost
5 all men were promoted. The number of
6 terminations -- even though women made up
7 a quarter or less of the department,
8 almost all of the terminations in that
9 five-year period were 100 percent women.
10 I think only two men were terminated. I
11 also had some compensation figures and I
12 ran some statistics on those as well.
13 ...I'm not sure what violates my
14 severance agreement with Putnam so I'm
15 going to remain quiet on the results of
16 those.
17 Q. What was the group, was that the
18 class of 2000?
19 A. For which?
20 Q. For your study. I mean, what group y
21  were you using?
22 A. I did extensive statistics. I used
23 the class of 2000 and tracked them. I
24 tracked the department for every year. I

90

1 tracked senior analysts and what happened
2 to those. I tracked junior analysts and

3 <u>what happened to them</u>. I mean, I did --
4 you know, I'm an analyst.
5 Q. Did you retain hard copies of those
6 studies?
7 A. Yes
8 Q. Do you still have them?
9 A. I do

      ***

22 ...<u>the penalties are quite</u>
23 <u>severe if I violate [my Putnam severance] agreement.</u>

The documents requested are relevant and Putnam should

be required to produce them

**Request No. 71:** All documents and things <u>concerning the Women's</u>
<u>leadership Forum referred to at p. 180 of the Haldeman</u>
<u>deposition</u>.

**Response No. 71:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.  Putnam further objects on
the ground that the Women's Leadership Forum (referred to at
p. 180 of the Haldeman deposition) was not formed until after
the plaintiff's termination.

**Argument:** Documents concerning the Women's Leadership Forum at

Putnam are relevant to show the concerns and complaints of

women at Putnam and what, if anything, Putnam did in

response to those complaints and concerns.  That, if true,

the Forum was formed after Svensson's termination is beside

the point.  Evidence as to actions and omissions even

taking place after the Svensson termination are relevant. [4]

---

[4] Case law from the First Circuit and elsewhere also makes clear that
evidence of an employer's discriminatory conduct towards other
similarly situated employees is relevant even if such conduct took

place well before or after the conduct giving rise to the
plaintiff's action.  The United States Court of Appeals for the
First Circuit stated in the Conway case that, "evidence of a
corporate state-of-mind or a discriminatory atmosphere is not
rendered irrelevant by its failure to coincide precisely with the
particular actors or timeframe involved in the specific events
that generated a claim of discriminatory treatment. 825 F.2d at
597.  (Emphasis added.)  See also Carey, 156 F.3d at 37. In
Conway, the court allowed the introduction of evidence of
discriminatory statements made up to 22 months prior to the
plaintiff's termination.  In Jackson, the District Court expanded
the time period for which the plaintiff was allowed to seek
discovery as to tenure decisions in the Harvard Business School
from three to 10 years, including 7 years prior to the time tenure
consideration of the plaintiff had begun, stating, "In the court's
view, this three-year time period is unduly restrictive and
contrary to the law governing the scope of permissible discovery.
Fed. R. Civ. P. 26(b)(1).... Accordingly, a time frame which
merely brackets the contested employment action would foreclose
plaintiff from elucidating past practices or identifying a pattern
which might suggest that defendants' reasons for denying plaintiff
tenure are pretextual. Relevancy for discovery purposes is much
broader than for admissibility purposes at trial. If the
information sought appears reasonably calculated to lead to the
discovery of admissible evidence, it is within the limits set
forth in Fed. R. Civ. P. 26(b)(1). Therefore, the court expands
the time frame ordered by the magistrate from three years to ten,
commencing June, 1974 and ending June, 1984. 111 F.R.D. at 475.
And in Hernandez, the District Court noted that "a variety of
courts 'have held that *prior* discriminatory conduct is recognized
as probative in an employment discrimination case on the issue of
motive or intent.'" 190 F.Supp.2d at 271-72. (italics in
original).  See also Briddell, 233 F.R.D at 60 (allowing discovery
as to other acts of discrimination for three year period including
14 months prior to any discriminatory acts against the
plaintiff.).
     Conduct occurring entirely after the discrimination
complained of by plaintiff also is relevant and admissible.  In
Brown, the United States Court of Appeals for the First Circuit
admitted statements made by the university president to another
professor being considered for tenure, even though those
statements were made after the decision on plaintiff's tenure
application had been made.  According to the Brown court: "That
the remarks occurred subsequent, rather than prior, to the
allegedly discriminatory conduct does not alter their
admissibility. The jury was entitled to infer that any
discriminatory animus toward women manifested in 1982 and 1983
would have existed in 1980 and 1981, when President Silber acted
on Brown's case.  891 F.2d at 350.  See also Briddell, 233 F.R.D
at 60 (Court cited a case from the District of Kansas in which the
time period extended two years after the discrimination alleged by

**Request No. 72:** All documents and things <u>concerning studies,</u>
<u>analyses and reports and the results thereof by or on behalf</u>
<u>of the above referred to Women's Leadership Forum</u>.

**Response No. 72:** Putnam objects... overbroad, burdensome...
irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence.  Putnam further objects on
the ground that the Women's Leadership Forum (referred to at
p. 180 of the Haldeman deposition) was not formed until after
the plaintiff's termination.

**Argument:** Documents concerning the Women's Leadership Forum at

Putnam are relevant to show the concerns and complaints of

women at Putnam and what, if anything, Putnam did in

response to those complaints and concerns.  That, if true,

the Forum was formed after Svensson's termination is beside

the point.  Evidence as to actions and omissions even

---

the plaintiff); <u>Ryder</u>, 128 F.3d at 130-33 (allowing introduction
of statements made one year after plaintiff's termination);
<u>Stumph</u>, 770 F.2d at 95, 97 (allowing testimony of other employees
as to discrimination they encountered after plaintiff was
terminated); <u>Cordova</u> v. <u>State Farm Ins. Companies</u>, 124 F.3d 1145,
1149(9th Cir. 1997) (Mexican plaintiff, alleging that she was not
promoted to trainee agent due to national origin discrimination,
allowed to introduce evidence that after hiring decision had been
made, manager made discriminatory comment about another Mexican
employee); <u>Stacks</u> v. <u>Southwestern Bell Yellow Pages</u>, 27 F.3d 1316,
1327 n.5 (8th Cir. 1994) (in sexual harassment case, evidence that
after plaintiff's termination a sexual video involving other
female employees had been shown at a company function was relevant
and admissible); <u>Martinez</u> v. <u>Potter</u>, 347 F.3d 1208, (10th Cir.
2003) (incidents of retaliation against plaintiff occurring after
plaintiff filed Title VII complaint, as to which administrative
remedies had not been exhausted, could still be introduced as
background evidence to support exhausted claims set forth in
complaint); <u>Schindler</u> v. <u>Bierwirth Chrysler/Plymouth</u>, 15 F.Supp.2d
1054, 1059 (D. Kan. 1998) (defendant's decisions to discharge two
other 60+ year old employees months after plaintiff's termination
"lend support to plaintiff's pretext argument"); <u>Wilson</u> v. <u>Seven</u>
<u>Seventeen HB Philadelphia Corp</u>., 2003 WL 22709073, * 10 (E.D. Pa.
11/14/03) (allowing introduction of corporate memoranda and notes
reflecting procedures in effect more than a year after plaintiff's
termination).

taking place after the Svensson termination are relevant.[5]

**Request No. 73:** All documents and things <u>concerning communication</u> <u>from Haldeman to any other person and to Haldeman from any</u> <u>other person in regard to any one or more of the subject</u> <u>matters of...categor[y] [Nos. 71 and 72, above].</u>

**Response No. 73:** Putnam objects...overbroad, burdensome and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence [and]...further [that] the Women's Leadership Forum (referred to at p. 180 of the Haldeman deposition) was not formed until after the plaintiff's termination.

**Argument:** Documents concerning the Women's Leadership Forum at

Putnam are relevant to show the concerns and complaints of

women at Putnam and what, if anything, Putnam did in

response to those complaints and concerns.  That, if true,

the Forum was formed after Svensson's termination is beside

the point.  Evidence as to actions and omissions even

taking place after the Svensson termination are relevant.[6]

**Request No. 74:** <u>The personnel files of Allansmith,</u> <u>DeChristopher, O'Malley, Peers and Warren.</u>

**Response No. 74:** Putnam objects...overbroad, burdensome and...irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds set forth in Putnam's Opposition....

**Argument:** The files requested are relevant in order to show in

comparison to the treatment of Svensson: (1) the treatment

of DeChristopher who, according to PRM 4026, had "poor

three years performance record" and a "volatile

---

[5] <u>See</u> note 4, <u>supra.</u>
[6] <u>See</u> note 4, <u>supra.</u>

personality" yet was promoted in 2003 while Svensson was

terminated; (2) the treatment of Allansmith who was fired

and had been demoted while on maternity leave; (3) the

treatment of O'Malley, who, complained about Svensson, and

whose complaints, at least in part, according to Putnam,

provoked her termination and later received a promotion and

took over some of her responsibilities; and, (4) The

treatment of Warren's behavior. See Nos. 65-69, supra.

**Request No.75:** All documents and things concerning communication within Putnam in regard to the issue of "deprivation of [Svensson's] management responsibilities," as used in the Brooks deposition at p. 184), which communication took place in the period prior to the Brooks' presenting to Svensson on August 28, 2003, of a document with three options concerning the status of her employment.

**Response No.75:** Putnam has already produced non-privileged communications and...  All privileged communications have been noted in Putnam's privilege log [and]...further ... this court, in response to Plaintiff's November 5, 2005 Motion to Compel Defendant's Production of Documents has already limited Putnam's obligation to produce communications between and among its personnel; and Putnam has already produced such.....

**Argument:** Neither in its responses to this Category nor in its

Amended Privilege Log has Putnam made the showings required

to support the claims of attorney-client privilege or work

product.

Accordingly Svensson requests the court first to order

Putnam to disclose to Svensson and the court the relevant

information necessary to enable Svensson and the court to

assess the applicability of the claims.  Svensson requests

the court after the disclosure of this information to

review <u>in camera</u> the withheld documents to assist the court

in making its determinations as to these categories.

**Request No. 76:** All documents and things <u>concerning communication</u>
<u>within Putnam in regard to the issue of "deprivation of</u>
<u>[Svensson's] management responsibilities" and/or termination</u>
<u>of her employment, which communication took place in the</u>
<u>period following the Brooks presentation to Svensson referred</u>
<u>to in the immediately preceding category, and the</u>
<u>termination of Svensson's employment on September 15, 2003</u>.

**Response No. 76:** Putnam has already produced non-privileged
communications and documents responsive to this request....
All privileged communications have been noted in Putnam's
privilege log [and] further...that this court, in response
to Plaintiff's November 5, 2005 Motion to Compel... has
already limited Putnam's obligation to produce communications
between and among its personnel; and Putnam has already
produced such....

**Argument:** Neither in its responses to this Category nor in its

Amended Privilege Log has Putnam made the showings required

to support the claims of attorney-client privilege or work

product.

Accordingly Svensson requests the court first to order

Putnam to disclose to Svensson and the court the relevant

information necessary to enable Svensson and the court to assess

the applicability of the claims.  Svensson requests the court

after the disclosure of this information, to review <u>in camera</u>

the withheld documents to assist the court in making its

determinations as to these categories.

_____

On September 29, 2006, in accordance with the revised schedule approved by the court (Bowler, U.S.M. J.), Svensson sent a notice, a copy of which accompanies this memorandum as Exhibit "B, to point out to Putnam four instances in which Svensson contends that the Putnam responses to the First Interrogatories and the First Request for Production of Documents, were insufficient, as Svensson believes that the agreements reached at the June and July hearings in this case, required Putnam to respond to the first three items on the list[7] by supplying the additional information referred to.  Putnam takes the position that it did not agree to  do so.

As the items are covered by Category Nos. 8 and 55 of the Second Request for Production, to the extent the court order Putnam to produce the documents described in those categories it will not be necessary for the court to resolve this dispute as to the scope of the agreements reached in July. .

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.

/s/ Kevin F. Moloney_____

_____

[7] Putnam has agreed in regard to item No, 4 to furnish a  legible copy of the document at issue.

Kevin F. Moloney BBO No. 351000
BARRON & STADFELD, P.C.
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir_____
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.5374

Dated: October 10, 2006

<u>Certificate of Service</u>.

    This document, filed through the ECF system, will be sent
electronically to the registered participants as identified on
the Notice of Electronic Filing.

/s/ Kevin F. Moloney_____

Dated: October 10, 2006

[373580.1]