UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * *  *    Civil Action No. 04-12711-PBS
                         *
LISA SVENSSON            *
                         *    BBO No. 351000
        Plaintiff,      *
                         *    Affidavit
v.                       *    of
                         *    Kevin F. Moloney
PUTNAM INVESTMENTS,      *
LLC f/k/a PUTNAM INVEST- *    (Declaration pursuant
MENTS, INC. and LAWRENCE *    to 28 U.S.C. § 1746)
J. LASSER,               *
                         *
        Defendants.      *
                         *
* * * * * * * * * * * *  *
```

1.   My name is Kevin F. Moloney.  I am co-counsel for plaintiff

     Lisa Svensson ("Svensson") in this case.  I have personal

     knowledge of the facts set forth herein.

2.   Filed herewith as Exhibit "A," is a copy of the transcript

     of the hearing on January 4, 2007, as prepared by the court

     reporter.  Due to technical difficulties at the court, the

     transcript as noted in an e-mail to me from the court

     reporter, "is not a complete transcript."

     Signed under penalty for perjury on this 14th day of
February 2007.

                              /s/ Kevin F. Moloney
                              BARRON & STADFELD, P.C.
                              100 Cambridge Street, Suite 1310
                              Boston, Massachusetts 02114
                              Tel.: 617.723.9800/531.6569
Dated: February 13, 2007

Certificate of Service.

This document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin F. Moloney_____
Kevin F. Moloney BBO No. 351000

Dated: February 14, 2007

[386827.1]

I - 2

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

LISA SVENSSON                 .      CIVIL ACTION NO. 04-12711-PBS

    Plaintiff                 .
                              .
        V.                    .      BOSTON, MASSACHUSETTS
                              .      JANUARY 4, 2007
PUTNAM INVESTMENTS, et al     .
    Defendants                .
. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the plaintiff:      John K. Weir, Esquire
                        John K. Weir Law Offices, LLC
                        300 Park Avenue, Suite 1700
                        New York, NY 10022
                        212-572-6374

                        Kevin F. Moloney
                        Barron & Stadfeldt PC
                        100 Cambridge Street
                        Suite 1310
                        Boston, MA 02114
                        617-723-9800

For Putnam:             Joseph Kociubes, Esquire
                        Bingham McCutchin, LLP
                        150 Federal Street
                        Boston, MA  02110
                        617-951-8000
                 **TRANSCRIPT NOT FILED IN COURT**

Court Reporter:

Proceedings recorded by digital sound recording, transcript
produced by transcription service.

---

**I N D E X**

Proceedings                                             3

I - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                          P R O C E E D I N G S

25        (Court called into session)

I-4

1          THE CLERK:  Today is January 4th, 2007 in the case

2    of Lisa Svensson v. Putnam Investments.  Civil Action No. 04-

3    12711 will now be heard.  Will counsel please identify

4    themselves for the record.

5          MR. MOLONEY:  Kevin Moloney from Barron and Stadfeld

6    for Lisa Svensson.

7          MR. KOCIUBES:  Joe Kociubes, Your Honor – #3:24:22.

8          THE COURT:  Thank you very much.  All right.  I think

9    we start with docket entry number 130, the motion for

10   protective order.

11         #3:24:48-#3:34:06.

12         THE COURT:  We tried here.  We sat here.  We had this

13   phone.  We tried I think four or five times.  Okay.

14         MR. RODRIQUES:  And for whatever reason that call did

15   not make it #3:30:21.  At that point we suspended the

16   deposition.  As we were leaving the deposition, Mr. Moloney

17   indicated #3:30:33, he indicated that the reason why they were

18   asking these questions that they had asked prior were because

19   there were inconsistencies in the testimony of the prior

20   witness' #3:30:48.  One, nowhere on the 30(b)(6) topic list

21   were there any indication of what inconsistencies were going to

22   be the subject of question so the witness could figure out what

23   the right answer would be.  Two, we deposed Mr. Tibbetts for

24   five hours before we finished.  Never once was he asked

25   #3:31:13.  Third, as we were leaving and Mr. Moloney said there

I - 5

1   are inconsistencies, never once did he identify with his

2   #3:31:22.  And four, he's now produced in his opposition

3   examples of the inconsistencies and that's attached to

4   #3:31:34.  He lists four, three of them are not

5   inconsistencies.  It was people testified somewhat differently,

6   but they're not inconsistent.  The one example of the

7   inconsistency that he sites is that in Putnam's interrogatory

8   answers it answered that the testimony of another one, the

9   attorney #3:31:55 was involuntary, and in the third and sixth

10  deposition, Mr. Tibbetts testified that #3:32:03.  Now,

11  curiously he didn't use the deposition to resolve the

12  inconsistency.  He used #3:32:11, that is, the inconsistency

13  between a sworn #3:32:14 and the 30(b)(6) deposition itself.

14  So from our standpoint, Your Honor, the deposition went on for

15  five hours.  Mr. Tibbetts answered the last question.  The

16  deposition broke down when Mr. Tibbetts was being asked to

17  simply answer the questions that he, Mr. Brooks, #3:32:34 had

18  already all answered them.  We offered to have our separate

19  #3:32:40.

20          THE COURT:  Mr. Moloney?

21          MR. MOLONEY:  Yes, Your Honor.  #3:34:10-#3:34:19.  I

22  gave to my good friends on the other side the main telephone

23  number of the firm (617) 723-9800 and the direction that when

24  the called got answered that #3:34:33-#3:34:47.  There is no

25  direct dial.  The call came in.  I picked up the phone and told

I - 6

1  her to forward this call in and the call #3:34:54.  It

2  happened again.  The call stopped.  I went out to the

3  receptionist station #3:35:04, and Heidi War (ph), one of our

4  Northeastern coop students #3:35:15 was filling in for the

5  receptionist #3:35:18.

6          I thought there was something wrong with the

7  conference room phone.  #3:35:42.  I complained in my office

8  about that and so I say, #3:35:48.  I found out and I have not

9  done this before, that there's a different say on the phone,

10  the button block on the phone #3:35:59.  You have to hit

11  different buttons in a different sequence #3:36:05 people on

12  the other side to accuse me of concocting a plot to interfere

13  with these calls is absurd and I take it as professionally

14  insulting.  #3:36:37.  In terms of this deposition, the reason

15  that it is not the center point as yet again #3:36:62, it is in

16  the introduction and it's there to illustrate from out point of

17  view the hardball #3:36:59 attitude that is driving their

18  client #3:37.07.  The remarks from Mr. Tucker who was sitting

19  across the table from Ms. Svensson, who was sitting #3:37:13

20  stood up and he said, let's go, let's go, and then looking at

21  her he said, "I hope you aren't paying #3:37:23 by the hour.

22  It would be very, very expensive."  That remarked was not made

23  to me.  That remark was not made to Mr. Weir.  That remark was

24  made directly about eight feet away from my client, Lisa

25  Svensson.  She took it and I think reasonably so not only that

I-7

1  he's arrogant and unprofessional but a threat.  What I think

2  it really illustrates beyond that is the attitude that Putnam

3  has taken throughout discovery in this case.

4           Let me just--

5           THE COURT:  As a threat, I -#3:38:05.

6           MR. MOLONEY:  Making it very expensive.  If you take

7  a look, Your Honor, at the attachment to our memorandum, you

8  will find chapter and verse as to what happened here.  Back in

9  January there was an issue of a confidentiality order which we

10 worked out.  Then the next thing was negotiating about the

11 scope of discovery in terms of comparators.  In working out the

12 confidentiality order, we also worked out the terms of what we

13 called the side letter, a letter not filed in court but between

14 counsel.  The idea of that side letter was to allow us to work

15 out discovery as to comparators.  Well, we've worked very, very

16 hard.  We gave them the information that they wanted.  Who are

17 the people that you say in your complaint and this one and this

18 one and this one, they're comparators.  Then they say, oh,

19 that's not good enough.  You're going to have to reorganize it

20 and send it in another way.  Well, we sent it in another way,

21 and we find out at the end of the month, at the end of March,

22 they're not going to want to redact and that's why we filed our

23 motion on the answers to interrogatories.  The only reason, the

24 single, only reason that we've got answers to interrogatories

25 was because this Court in a hearing on June 21 and July 11,

I-8

1  then they said, oh, now we may as well #3:39:27.  Then they

2  said, oh, we'll unredact the redacted document.  We got them 52

3  days later.  That's an example of what I mean.

4  Mr. Rodriguez said, oh, Mr. Tibbetts testified in two prior

5  occasions.  He did.  The second time was only because this

6  Court ordered him back because his counsel improperly had

7  directed him not to answer questions.  He didn't come back

8  voluntarily.  He came back only because counsel for the other

9  side had acted improperly and that's what this Court did, and

10  it wasn't just Mr. Tibbetts.  It was their other witness.  So

11  we had two of their witnesses testify twice under those same

12  circumstances.

13        Now, this is the third attempt on Putnam to shut off

14  the 30(b)(6) deposition.  They filed one back last, early last

15  summer, late last spring.  This Court said, I'm allowing your

16  motion for a protective order on the 30(b)(6) without prejudice

17  and you directed us to retailer our request because the Court

18  had ruled that there was too many too #3:40:42.

19        That brings us back to the fall with our retailer's

20  list of subjects.  There were 15 of which one was

21  authentication of privileged documents and we said we really

22  don't want to ask about that because #3:40:59 authentication

23  issue, but all the other subjects were there and this Court

24  denied the motion for a protective order, thus indicating, at

25  least to us, as we understood the Court's order, that the

I-9

1    notice is valid, the subjects are proper within the meaning

2    of Rule 30(b)(6) and inquiry can we had on any other.  The

3    Court also said, you're going to get one witness, one day and

4    then the Court said you'd better prioritize your time because

5    you may not have time enough to get to what you want.  The

6    Court did not say, please sit down with Mr. Rodriguez and get

7    his approval on the subject matters that you are going to ask.

8    Sit down with Mr. Kociubes and Mr. Rodriguez and review with

9    them the questions.  The Court did not say that as the Court

10   could not say that.  What the Court had the right to do and the

11   duty to do is to rule on the validity of the subject of that

12   notice, and that's exactly what the Court did.  Now the Court

13   in its discretion said, I'm going to give you one day.  Well,

14   that's fine.  The Court said, you'd better prioritize.  As I

15   read the transcript and as I heard the Court that day with

16   direction to me and Attorney Weir, you'd better get your act

17   together and work out the subjects because you're going to get

18   one day.  You're not coming back to the well and you'd better

19   get done what you want to get done.  So #3:42:31 the portion of

20   14 or 15 subjects in #3:42:37 whatever equally, whatever, but

21   prioritize because I'm not giving you more time.

22          We sent an email over to them where we said point

23   number one, the subjects that the Court ruled upon are the

24   subjects of this deposition and the Court having "denied" your

25   motion for a protective order, those are going to be the

I - 10

1    subjects.  The second part of that email said, this is the

2    priority of the subjects that we're going to work on, and we've

3    got this number and that number and whatever.  That was the

4    priority that we told them we were going to be inquiring about.

5    We did not tell them nor were we required to tell them we're

6    going to devote five minutes to topic one, 15 minutes to topic

7    14 and a half an hour on topic 6.  We gave them the priority,

8    the order of preference, which is what that word means and

9    that's what we did.  I notice that now the Putnam attorney

10   permitting the deposition in fact went on for only five hours.

11   If you read their motion papers filed two weeks ago they were

12   saying after six hours, but that was because they hadn't

13   figured out the breaks.  It was four hours and 53 minutes if

14   you look at the transcript and you count the minutes full

15   length and the minutes for this recess and whatever.  I'm going

16   to us the word hutzpa, which kind of gets at what I'm trying to

17   get across, but a stronger word for which I can't really grasp

18   at the moment is probably a better word.  If you look at what

19   was going on here, the Court ruled that we were entitled to

20   take 30(b)(6) inquiry on 14 subjects.  The Court said

21   prioritize in the letter, but you get seven hours of testimony.

22   One of the very topics that Mr. Rodriques now complains about

23   and supposedly was the cause of his terminating the deposition,

24   was that we were asking questions about the termination of Lisa

25   Svensson and that is relating to her termination which is at

I - 11

1  the heart of this very case and it was one of the subjects

2  in the notice that the Court said you can take deposition

3  testimony on, and he gets up here and he said, I don't want you

4  asking Mr. Tibbetts any more questions.  Here, take this

5  stipulation.  What a phony deal that was.  First of all, we are

6  not required to accept any stipulation under any circumstances

7  unless it's ordered by a court, certainly not from counsel on

8  the other side.  Even – let me put it this way, it is such a

9  phony proposition.  The witnesses that he says we have taken

10 depositions of two of them were taken before we had any of

11 unredacted documents.  They were taken before we had any

12 answers to any interrogatories and we're supposed to say, well,

13 that's my Putnam, what a wonderful institution you are.  We'll

14 take your stipulation and we'll agree that that testimony is

15 binding.  If I accepted that or if Mr. Weir accepted that,

16 Ms. Svensson would have a right to have us in the state court

17 on a claim illegal malpractice.

18      So returning to deposition at four hours and 53

19 minutes, they make the threat, the insult to my client, they

20 insult me and Mr. Weir, but I can take it and so can Jack Weir,

21 when Mr. Tucker called, Mr. Tucker didn't say, may I speak

22 directly to your client?  May I have your permission to write

23 her a note?  Would you please tell your client I am embarrassed

24 because I acted unprofessionally?  He didn't do that.  He

25 apologized to me and to Mr. Weir and they expected this to all

1 go away like it never happened, like we can't refer to the

2 record where it's plainly stated. It is bizarre. We are

3 entitled, Your Honor, under the rules and under your ruling for

4 a full seven hours of deposition. We got four hours and 53

5 minutes. We did not get a chance to complete or even

6 substantially go through all of the topics. I point out in our

7 motion papers some of the subjects that we didn't have a chance

8 to get to. We think that their termination of the deposition

9 was improper, it was a violation of the rule. We think we're

10 entitled to an order for them to bring them back or bring some

11 other witness back to finish the testimony for the full two

12 hours and seven minutes, plus whatever time that Your Honor in

13 the Court's discretion may have.

14          MR. RODRIQUES: #3:47:46. Mr. Tibbetts, the 30(b)(6)

15 witness testified twice why she was terminated, and now he's

16 being asked again as a 30(b)(6) witness why was she terminated.

17 I believe that question has been asked and answered multiple

18 times by the very people and the only people who know. If

19 Mr. Moloney sat down and said, there are 10 or 15 questions we

20 need answers to on the basis of intervening discovery, that

21 would be worth it. But this is covering the same grounds over

22 and over again. I recite, Your Honor, #3:49:49 at one point

23 Mr. Weir literally asked the following question: Mr. Tibbetts,

24 I know you testified about this very subject before, but I'm

25 going to ask you again, #3:49:58 with no explanation for what

I - 13

1   the reason is for asking him the question again.  We're not

2   saying that Mr. Moloney was required to accept that

3   stipulation.  Of course, he's not required to accept our

4   stipulation.  We're asking why he wouldn't accept our

5   stipulation.  Our stipulation was designed to make this case go

6   more smoothly.  This was before he testified.  Now, what you'll

7   learn about is #3:50:31.  We'll give you that so you don't have

8   to spend the next hour asking the very questions you've asked

9   him already just so you can have him as 30(b)(6) witness.  And

10  so far #3:50:46.  I don't know what to say other than that.

11              THE COURT:  You don't need to say anymore.

12              MR. RODRIQUES:  Fine.  And the last point I'd make,

13  is Mr. Foley totally #3:50:51.  That's the point, Judge.  We

14  didn't walk out of the deposition saying we're terminating it.

15  We pushed hard to reach you so that we could do it that day

16  #3:51:08.  He'll be held to answer.  Then we suspended the

17  deposition.  #3:51:29.

18              MR. MOLONEY:  Briefly, Your Honor, what I think

19  Mr. Rodrigues chooses #3:51:35.  We have two hours left to go.

20  We have 57 subjects not yet inquired about, and I think that

21  we're entitled to have that deposition resumed to obtain as

22  much testimony on our subjects, on our priorities #3:52:27.

23              THE COURT:  All right.  Mr. Kociubes, are you going

24  to address?

25              MR. KOCIUBES:  Yes, Your Honor.  It's the motion

I - 14

1   ##3:52:42.

2            THE COURT:   #3:52:43.

3            MR. KOCIUBES:   It's the motion for protective order

4   terminating further discovery as far as substantiality,

5   electronic discovery, Your Honor, #3:52:52 last time.  Let me,

6   if I might, Your Honor, since this is a matter that you had

7   resolved, it was originally addressed a year ago, put this in

8   some context.

9            Your Honor will recall that discovery in this case

10   was originally going to end in February of 2006, and both

11   parties in advance of that served various discovery, including

12   the document requests.  The documents were responded to by both

13   parties and plaintiff, as she was entitled to, filed a motion

14   to compel with respect to the objections made by Putnam.  That

15   resulted in a hearing before you more than a year ago now on

16   December 13th, 2005.  At that hearing, Your Honor, you resolved

17   any document disputes and you addressed the issue of email.

18   The upshot of that hearing, Your Honor, is that some hundred

19   thousand emails were restored and you'll recall #3:53:56 email

20   system because this goes back to 1999, so a thousand emails, a

21   hundred thousand were restored from the period 1999 to 2003.

22   They were then put in a condition where they could be searched

23   for Lisa Svensson's name to Weiner, from Weiner, or cc Weiner

24   and so forth, and documents were produced.  There were 14

25   people who were searched for Lisa Svensson and those people,

1   the identities of those people came from the #3:54:2.  We

2   didn't decide who was #3:54:32.  We went through that entire

3   process.  Your Honor ordered that that be done by early January

4   of last year.  That was done and thereafter, discovery was

5   underway.  Presumably whatever documents you think are

6   important, you should do that before deposition.  Depositions

7   then continued at a pace.  The discovery period by Your Honor

8   was extended until May 1 and then because of scheduling

9   conflict to June 1.  The second document request, which is the

10  issue that we're here now, which contains 76 new categories

11  were served in April so that the response would literally be

12  due at the very end of the discovery period when the

13  depositions were all done.  That was a tactical decision made

14  by the plaintiff not by us, and you heard me say, I don't know

15  how many times now, Your Honor, that I can't think of this in

16  the kind of categories in any way other than to keep discovery

17  open forever.  Ultimately, Your Honor, on July 12 I think,

18  Mr. Moloney said the 11th, the 11th or the 12th, there was a

19  hearing before Your Honor on a motion to compel.  At that point

20  we had responded to that second document some request six weeks

21  earlier.  The only thing they moved on were interrogatories.

22  We were here in July.  Your Honor issued rulings on the

23  interrogatories and we complied.  Meanwhile, we thought we were

24  resolving the document requests as well.  You'll recall that

25  they came up with an idiosyncratic, their own list of 91

I - 16

1    individuals they said were comparators.  Your Honor told us

2    to work it out.  We said we would go back and redact

3    information about those 91 people from the documents.  We did

4    that, unredact rather.  We then gave them schedules for each of

5    the five years for those 91 people, title, gender, salary,

6    bonus, all the other confident, all the other objective

7    information so anybody who wants to do any kind of analysis,

8    whether there's a gender bias to prepare a case, can do that.

9    We thought that resolved the document request.  What then

10    happens is a half year later, after that document request was

11    served and after a couple of hearings before this Court, for

12    the first time after we thought we had compromised as Your

13    Honor indicated, we got the motion to compel on the document

14    request, which was filed the previous April and  which had been

15    responded to in a timely fashion, and there we went through

16    with Your Honor the last time about the breadth of the

17    categories, some of which Your Honor resolved, and then Your

18    Honor told us to go ahead and resolve at the hearing on October

19    26th quickly the email, the electronic discovery issue.  Your

20    Honor, this is the context where we've already heard thousands

21    of dollars have been spent having done the electronic

22    reconfiguration the previous year.  We explained that to Your

23    Honor.  Your Honor at that hearing said to Mr. Moloney because

24    the issue were the search terms, held up the key terms.  Mr.

25    Moloney said, we'd have to go back to the office.  He didn't

I - 17

1  want to shoot from the hip.  Fine.  Your Honor then says,

2  sit down quickly and confer because all this is going to have

3  to be done before January 4th, discovery ends at 12:31 January

4  4th, today's hearing.  It went on to indicate you're not to

5  #3:57:52.  One would have thought we would have gotten a call

6  the next day or the day after with the terms or some discussion

7  about it.  Essentially on this issue, nothing happened.  On

8  Friday evening, November 17th, having lost three weeks of the

9  two weeks that were left in the discovery period, Your Honor,

10 we got an email which contained no search terms, but

11 essentially another interrogatory, which was pages long and

12 wanted to know what kind of sports mechanism there might be for

13 cell phones, for PDA's, for Blackberries, over the email

14 systems, and attached to the bottom of the first page is a list

15 of Mr. Moloney and we've attached that to the paper before you,

16 it lists the search.  We were supposed to list the search terms

17 that they want.  We continued to press for those search terms

18 and finally, Your Honor, on the Wednesday afternoon before

19 Thanksgiving, when it's perfectly perceivable that nobody is

20 going to be around on Thursday, Friday, Saturday, Sunday, we

21 got an email which lists 27 common verbs with the occasional

22 noun thrown in, and the verbs were things like, make, take out,

23 #3:59:04.  This issue, this is a company that is--

24        THE COURT:  I know.  This case is really beginning to

25 test my patience.

I - 18

1          MR. KOCIUBES:  If you take a look at, Your Honor,

2   the affidavit filed by Mr. Moloney's expert, Ms. Tarno (ph),

3   she in her affidavit indicates essentially that these are

4   useless terms which you would have to couple them as #3:59:30.

5   So here we are January 4 and on his expert we still don't have

6   search terms despite the clear instruction that Your Honor

7   gave.  Now, you have two affidavits and I'm happy to either

8   summarize them.  If you've read them, I don't need to.

9          THE COURT: #3:59:46.

10         MR. KOCIUBES:  They talk about all of the various

11  steps and the potential of hundreds of thousands of dollars to

12  go do this.  They put everybody in the position where it it's

13  not possible to do it by January 4, and, moreover, you've got

14  the, a huge amount of time.  The plaintiff's name was already

15  searched for so that all of this is #4:00:04.  So at this

16  point, Your Honor, I suggest there has been an abuse of various

17  orders that Your Honor has made along the way in terms of

18  producing documents and those have been complied with.  There

19  has been no motion to the contrary, and we suggest it is time

20  now to cut off and we need to move forward with the case on the

21  merits.  There comes a time, we've got an extra year of

22  discovery, there comes a time when we've got to get to the

23  merits.  As Mr. Rodriques indicated, #4:00:36.  We took one

24  deposition of the plaintiff.  It didn't last seven hours and

25  one document request.  That's, we're ready to go.  We have been

I - 19

1  ready to go, and I simply urge Your Honor it is time to

2  complete.  You've got, you had promulgated a while ago other

3  timetables for expert discovery, which is coming up, summary

4  judgment motion and so forth, it is time to proceed with all of

5  that.

6          THE COURT: I must say, I have a lot of cases.  I have

7  a lot of very serious cases, and I have a lot of cases that

8  involve a lot more money, but for some reason on both sides it

9  seems to be a very emotional case, and counsel seem to be

10 invested in it on an emotional level, and I'm seeing the degree

11 of hostility on both sides that I seldom see and I'm bothered

12 by it, and it's not what we like to see here and I've had

13 enough of it.  I think what I'm going to do, and I have

14 reviewed the cases #4:01:54 I'm going to take these motions

15 under advisement and give you an order.  But this is a warning

16 that on both sides conduct has degenerated to a level that I

17 don't like to see, and I was looking back through the docket.

18 It was early on in order for mediation.  It went to Judge

19 Alexander.  It was continued.  Was there an #4:02:32.

20          MR. RODRIQUES:  $4:02:32.

21          MR. MOLONEY:  The beginning of January, the end of

22 December there was, it didn't work out.

23          THE COURT:  How long did you stick it out?

24          MR. MOLONEY:  I wasn't involved in the case at that

25 time. I came in later in January.

I - 20

1          MR. RODRIQUES:  #4:02:49.

2          THE COURT:  Well, I just wonder whether or not

3   #4:03:08 with this case.

4          MR. MOLONEY:  We're not opposed to mediation, Your

5   Honor.

6          THE COURT:  Well, you both have to agree.  You both

7   have to agree, but you don't have to make up your mind right

8   now.  What I'd like you to do at least is think about it,

9   because my experience has been sometimes when cases get to this

10  point #4:03:31.  I had a case yesterday, it started at 10:00.

11  At 2:00 they #4:03:55 settle and wanted to go home and I said I

12  won't let you go home, and by 4:00 they settled the case.  So

13  think about it.

14         MR. MOLONEY:  We will, Your Honor.

15         THE COURT:  You both have to agree.  But this is a

16  warning to both sides that I do not want to #4:04:13.

17         MR. MOLONEY:  Your Honor, may I just respond to

18  Mr. Kociubes because I think that he has left out some key

19  things.  The motion papers indicate that they have, on the

20  filed motion papers that they have produced everything

21  according to them.  They didn't.  That was a sworn statement

22  and, the sworn statement was #4:04:57.  We got something not,

23  it was yesterday, and what it is is not a statement that the

24  documents don't exist.  They are statements #4:05:14 are

25  statements that produced all documents #4:05:24 to locate and

I-21

1   then there's the #4:05:28 at the end.  #4:05:33 affidavit is

2   based on and necessarily limited by either my own personal

3   knowledge for the record #4:05:38, presently recollect #4:05:41

4   and inherently available, subject to those limitations.  This

5   is not a sworn statement that the documents do not exist.

6   Number 2, the Court ordered that with respect to the reduced

7   number of the people #4:05:55, that they were to produce for us

8   the reports of #4:06:02.  They produced some.  They did not

9   produce the records, and the ones that they did produce for one

10  year were incomplete in that they were lacking #4:06:13.  And

11  in fact they took the position at one point when I complained

12  that they hadn't produced all of the 360s for a couple of

13  years, #4:06:29.  I wrote back and I invite the Court, and I've

14  given the other sides a copy, if you just review the emails and

15  the letters, Your Honor, I invited them to go back and check

16  and the evidence that I had were the documents that they had

17  produced from Ms. Svensson showing that they had produced for

18  the year they said the documents didn't exist a 360 report for

19  her and as deposition testimony #4:06:57, that the 360 reports

20  exist.  They did not produce those.  So from the beginning of

21  the motion phases they're incorrect.

22          Secondly, Your Honor, Mr. Kociubes says, would have

23  you believe that suddenly in the fall big surprise to him we

24  were seeking a motion to compel production of documents in our

25  second request.  He fails to tell you that negotiations over

1    the second request for production of documents began in

2    June, late June after we had this hearing on the 21st and they

3    continued after the hearing on the 11th, and at the end of July

4    Mr. Kociubes said to Mr. Weir, well, why don't you make a

5    proposal and tell us what we really need the prove the case.

6    Early in August, August #4:07:49, we revised our second request

7    and now word, and made other changes in it and sent it over to

8    Mr. Kociubes indicating that this is what we really think we

9    need to prove the case.  Mr. Kociubes said, well, that's your

10   bottom line, we'll have to go to court.  The same pattern has

11   occurred time and time again.  The Court wants us to sit down

12   and work things out and once again we say fine we'll sit down

13   and work things out, negotiate.  We make a proposal.  We

14   withdraw from the position that we've taken.  We said we'll

15   take this.  What do we get?  We don't get a counterproposal.

16   We get the back of the hand.  The subjects on the motion to

17   compel as set out in the reply memorandum that the Court looked

18   at back in October were they reduced them so #4:08:48.  No,

19   it's not enough.  Negotiate against yourself.  #4:08:56.

20   Mr. Kociubes characterized the statements of Ms. Tarno, I term

21   amusing in the affidavit.  He says that it's useless.  The

22   Court did that in October and our suggestion was to invite the

23   spirit of the new discovery rules to apply to this #4:09:31.

24   He said sit down within a week.  The other side complains that

25   it was 11 days rather than 7 days that they heard from us and

I - 23

1   what they heard from us on giving us another copy to the

2   other side, and I invite the Court to #4:09:48, this is a

3   questionnaire that we sent over to the other side in order to

4   get the basic information about their computer system and their

5   email situation and their storage situation so that we would be

6   able to begin to find out what's going on.  A few days later,

7   it was three or four days later, I think that Mr. Kociubes, I'm

8   confused #4:10:14 that he's questioning saying well, you didn't

9   give us search terms.  You didn't give us the information that

10  we're asking for.  He asked the question.  The question in

11  search terms if you read it, Your Honor, was our asking them

12  what search terms do you propose to do if you were going to do

13  this #3:10:30.  We have never, ever gotten any of the answers

14  to these questions.  The affidavit of Ms. Tarno, who's been at

15  this a good long time, indicates that it's impossible to

16  evaluate the accuracy and integrity of the claims of Putnam,

17  that this is going to take weeks and cost over $200,000.  Now,

18  what does the Court do?  The Court has affidavits from the

19  in-house fellow at Putnam, and if you read that closely, it

20  could take as long as, he hasn't even counted the tapes.  Then

21  you have the affidavit from the fellow at Bingham McCutchen,

22  their in-house person, filled with hearsay, and I've objected

23  to that #4:11:23, but that's filled with hearsay and #4:11:27.

24  We have the affidavit of Ms. Tarno who said it's impossible to

25  figure this out without the information, and she goes on to

I - 24

1    talk about the cause aspects of it and points out that some

2    people charge $1,000 a tape, other people charge a couple

3    hundred dollars a tape.  #4:11:47.  The way, Your Honor, it

4    seems to me, and we've laid out the basics of the new discovery

5    rules which now apply to this case #4:11:57, and what the new

6    rules and the commentary is and what the case law is as to how

7    the court is supposed to #4:12:02, what it does say to me, Your

8    Honor, that the Court requires or is entitled to facts.  The

9    way to get the facts, it seems to me, is for the Court to

10   appoint #4:12:19.  It would be a person qualified, appointed by

11   the Court to look at the facts.  The interviews that the techy

12   people at Putnam, the secret of their $4:12:32, are they

13   labeled, what kind of labels, do the tapes include only emails

14   or do they also include attachments, can we de-dupe, that's a

15   new term I've learned, de-duplication is a word to take a look

16   at the data stored on tape and get rid of multiple copies of

17   the same things so when we're searching we're searching a lot

18   less material, but the neutral would be able to, for good or

19   for bad for the parties' sake, but at least for good of the

20   Court's sake, would be able to determine what the facts are.

21   Then, once we know what the facts are, then we could begin to

22   decide, is this data inaccessible?  Is this data inaccessible

23   because Putnam knowing we had this litigation made it

24   inaccessible anyway or not?  How many tapes, how many gigabytes

25   or whatever of the tapes control?  That kind of stuff it seems

1   to me is essential to the Court to have from a person

2   qualified to do that that both sides would say, we'll #4:13:45.

3   This way we could come up with a list of three, maybe five

4   people that we should be able to agree upon and give the Court

5   a list of three or whatever and the Court would pick a person,

6   and then I would suggest that the cost of this is not going to

7   be #4:14:00, maybe 10, 12 hours.  It maybe $100 to $250 an hour

8   for this, and let the parties agree #4:14:09 without any

9   implication at all – the last consideration that the Court gets

10  under #4:14:14.

11          What I want to finally--

12          THE COURT:  Two minutes.

13          MR. MOLONEY:  --impress upon the Court--

14          THE COURT:  Two minutes I said several minutes ago.

15          MR. MOLONEY:  I know you did and I'm grateful for the

16  time.  We filed our second request for documents so that the

17  responses would come in before the end of discovery.  Within a

18  day, Putnam also filed a second request for production of

19  documents so that they'd have a response before the end of

20  discovery.  We have not asked for additional discovery.  We

21  have not asked for additional discovery time.  We have asked

22  only that the Court order the other side to answer the

23  questions and produce the documents.  The questions that we

24  asked in our interrogatories during discovery, to produce the

25  documents that we asked for during discovery, unredacted

1  documents that we say are improper--

2          THE COURT:  It seems to me we're getting far a field

3  of the motions here today.

4          MR. MOLONEY:  But the point is, Your Honor, they're

5  trying to cut off so called discovery in saying that somehow

6  it's our fault and that we're harassing this $3.9 billion

7  institution.  The fact of the matter is we're just trying to

8  get the discovery we asked for in a timely fashion, and on this

9  email business is I do, which I emphasize for the Court really

10  isn't possible for the Court to be put in a position where it's

11  impossible to make an informed #4:16:04.

12          MR. KOCIUBES:  Two minutes on the last matters.

13          THE COURT:  Last word.

14          MR. KOCIUBES:  Your Honor, on the certification, the

15  reason for the #4:16:11 certification is something you and I

16  discussed and you heard about today.  We haven't the searched

17  all those people.  We said that forever so for her to say that

18  nowhere in any one of millions of emails could there, for

19  example, be a comment on the organizational structure, is not

20  possible.  That's the reason for the language.  There isn't

21  anything beyond that nor any time it's going to be one person

22  signing on behalf of the entire corporation #4:16:37 employees,

23  obviously she's going to be relying on other information.

24  That's the reason for that.

25          With respect to the 360's, Your Honor, those are sort

I - 27

1   of peer reviews.  It is data which is not always kept.

2   We've given them the ones to be found.  Putnam moved a couple

3   years ago.  When this litigation came into place, there was a

4   hold and a preservation put on plaintiff's material but not on

5   every other employee nor was there any other way to know which

6   employee they might think is a comparator at the time.  It

7   didn't come up.  That's why we gave them the ones that exist.

8   We don't have the other ones.

9           The last point I would make, with respect to starting

10  now after discovery is over this new e-procedure with some kind

11  of expert, was that not a matter which should have been raised

12  before Your Honor in December of 2005 when Your Honor refereed

13  and issued orders on e-discovery, it not ought to be started

14  over, an excuse to start over the discovery now at the end of

15  the process.

16          THE COURT:  All right.  Under advisement.

17          MR. MOLONEY:  Thank you.

18          MR. KOCIUBES:  Thank you, Your Honor.

19  //

20  //

21  //

22  //

*YOUNG TRANSCRIPTION SERVICES*
*(508) 384-2003*

I - 27

## CERTIFICATION

I, Maryann V. Young, court approved transcriber, certify that the foregoing is a **PARTIAL\*** transcript from the official digital sound recording of the proceedings in the above-entitled matter.

_____                    February 6, 2007

Maryann V. Young

**\*According to the P.C. Systems Administrator at the courthouse, the digital recording equipment used to record these proceedings malfunctioned thereby making a complete transcript impossible.  This transcript will not be filed with the Court as an official transcript of the proceedings held on 1-4-07.**

*YOUNG TRANSCRIPTION SERVICES*
(508) 384-2003