UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA SVENSSON,

Plaintiff,

v.

PUTNAM INVESTMENTS LLC, f/k/a PUTNAM INVESTMENTS, INC. and LAWRENCE J. LASSER,

Defendant.

CIVIL ACTION
NO. 04-12711 PBS

**DEFENDANT PUTNAM INVESTMENTS' RESPONSE TO THE PLAINTIFF'S SECOND REQUEST FOR DOCUMENTS AND THINGS**

## I. INTRODUCTION

Pursuant to the opportunity afforded by this Court at the February 15, 2007 hearing on plaintiff Lisa Svensson's ("Ms. Svensson") Objection to Magistrate-Judge Bowler's order terminating discovery, defendant, Putnam Investments LLC ("Putnam"), hereby summarizes in a single document its objections to the requests Ms. Svensson believes were not ruled upon by Magistrate Judge Bowler regarding the Second Request for Documents and Things. In addition, Ms. Svensson, in her Memorandum in Response to the Directions and Questions of the Court, filed on February 22, 2007 at Docket # 168, ("Svensson Response"), now raises additional discovery issues stemming from Magistrate Judge Bowler's discovery rulings -- issues without merit and which she has not timely appealed. Putnam responds to those issues, infra. at 32.

Before turning to the specific issues and discovery requests, some context is appropriate. By issuing her Order terminating discovery on January 9, 2007, Magistrate Judge Bowler did essentially two things. First, she denied any further electronic discovery, a ruling that this Court affirmed at the February 15, 2007 hearing. Second, the Magistrate Judge denied any further production of non-electronic documents with respect to the remainder of the 76 document requests not addressed at the October 26, 2006 hearing. While this may seem to be a blanket ruling, in fact, as the discussion below indicates, there actually were fewer requests at issue than meets the eye once the electronic discovery was disposed of. Many of the requests concerned electronic discovery only. Others had been fully complied with or called for the production of documents that did not exist. Still others called for privileged materials. As to those requests calling for non-electronic documents that did not fall into the above categories, Putnam argued, and argues below, that the requests called for cumulative information or information that had no conceivable relationship to any of Ms. Svensson's claims. In this context, at the October 26 hearing Magistrate Judge Bowler warned Ms. Svensson to narrow and focus her pending requests for production because this Court "is not about to allow much more." October 26, 2006 Hearing Transcript at 50. Ms. Svensson ignored this instruction, demanding all of the documents that she had requested at the October 26 hearing. It is in this context that, in January, Magistrate Judge Bowler terminated further discovery. Thus, while the Magistrate Judge's ruling appears to be a blanket ruling unconnected to particular requests, the ruling makes perfect

sense in the context of the discovery history in the case, and should be affirmed.

Indeed, of the 76 initial requests, only 14 appear to remain at issue: Requests 29, 31 - 34, 36, 37, 40, 43, 62, 63, 65, 70 and 74. The balance of the requests fall into the following categories:

1. Requests that Ms. Svensson explicitly stipulated in her Opposition to Putnam's Motion to Terminate Discovery (the "Opposition"), at fn. 1, would require Putnam to conduct electronic discovery (Requests 2-6, 12, 13, 15-19, 38, 39, 45-49, 56-60, 66-69, and 71-73). At the hearing on February 15, 2007, the court ruled that no further electronic discovery is to be conducted;

2. Requests withdrawn by Ms. Svensson prior to filing her motion to compel (Requests 20, 21, 41, and 42);

3. Requests for documents that either (a) do not exist, or (b) already have been produced (Requests 28, 30, 35);

4. Requests for documents that Putnam has designated as protected by the attorney-client privilege and/or work-product doctrine, as so noted in its privilege log. (Requests 50-55, 61, 75 and 76); and finally

5. Requests that Ms. Svensson withdrew with respect to non-electronic documents in the recently filed Svensson Response (Requests 22-27, 44, 55, and 64).

## II. SPECIFIC RESPONSES

REQUEST NO. 16

> All documents and things concerning the results of the application of the criteria [for demotion] to Svensson, any of the identified males and/or any of the identified females who were Portfolio Managers, ADRs, CIOs or holders of other IMD investment professional positions.

RESPONSE NO. 16

> Ms. Svensson limited the scope of this request, stating that "Svensson seeks in this category only the e-mails of [the 10] decision-makers in regard to the 22 comparators referred to." *See*, Ms. Svensson's Reply to Putnam's

Opposition to Svensson's Motion to Compel, Docket # 126, at 31 (the "Svensson Reply"). Ms. Svensson further stipulated in fn. 1 of her Opposition (Docket #142), attached hereto as Exhibit A, that this request calls for Putnam to conduct electronic discovery. At the hearing on February 15, 2007, the court ruled that no further electronic discovery is to be conducted, rendering this request moot.

To the extent this request as originally written sought non-electronic discovery, Putnam has already produced all the criteria actually utilized in determining transfers, if any, along with non-electronic documents evidencing the entire employment histories of all 91 of Ms. Svensson's alleged comparators, including all positions and officer titles that they held, which necessarily reflects the results of the application of any such criteria to the 91.

REQUEST NO. 17

In regard to Svensson, any of the identified males and/or any of the identified females who were selected for consideration for possible demotion to take place in the period since January 1, 2002 (whether or not actually demoted) from Managing Director or from Portfolio Manager or other professional position in the IMD, all documents and things concerning communication between or among the persons participating at any time or from time to time in the decision making process to so consider Svensson, any of the identified males and/or any of the identified females, and which communication concerned evaluation of, or action or decision made, taken, recommended or proposed to be made or taken, in regard to any of such persons.

RESPONSE NO. 17

Ms. Svensson narrowed the scope of this request, stating that "Svensson seeks in this category only the e-mails in regard to the [10] decision-makers . . . [and 22] comparators referred to above. Svensson Reply at 33. Ms. Svensson further stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. See Exhibit A. At the hearing on February 15, 2007, the court ruled that no further electronic discovery is to be conducted, rendering this request moot.

To the extent this request as originally written sought non-electronic discovery, Putnam has already produced all documents with respect to any transfer of the Plaintiff (including electronic documents, as ordered by this court in December 2005). Moreover, in response to Ms. Svensson's interrogatories, Putnam already has produced the entire employment

histories of all of Ms. Svensson's 91 alleged comparators, which necessarily includes information about any transfers of the 91.

REQUEST NO. 18

In regard to Svensson, any of the identified males and/or any of the identified females who were considered for demotion to take place in the period since January 1, 2002 (whether or not actually demoted) from Managing Director of from Portfolio Manager or other professional position in the IMD, all documents and things concerning communication between or among the persons participating in the decision making process to so consider Svensson, any of the identified males and/or any of the identified females, and which communication concerned evaluation of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to, any of such persons.

RESPONSE NO. 18

Ms. Svensson narrowed the scope of this request, stating that "Svensson seeks in this category only the e-mails in regard to the [7] decision-makers referred to above and the . . . [91] comparators [who were considered for demotion.]". Svensson Reply at 35. Ms. Svensson further stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. See Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

To the extent this request as originally written sought non-electronic discovery, Putnam has already produced all documents with respect to any transfer of the Plaintiff (including electronic documents, as ordered by this Court in December 2005). Moreover, in response to Ms. Svensson's interrogatories, Putnam already has produced the employment histories of all of Ms. Svensson's 91 alleged comparators, which necessarily includes information about any transfers of the 91.

REQUEST NO. 19

In regard to Svensson, any of the identified males and/or any of the identified females who actually were demoted in the period since January 1, 2002, from Managing Director or from Portfolio Manager or other professional position in the IMD, all documents and things concerning communication between or among the persons participating in the decision making process as to who of Svensson, any of the identified males and/or any of the identified females actually would be demoted, and which communication concerned evaluation

of, or action or decision made, taken or recommended or proposed to be made or taken, in regard to, any one or more of such persons.

RESPONSE NO. 19

Ms. Svensson narrowed the scope of this request, stating that "Svensson seeks in this category only the e-mails in regard to the [7] decision-makers referred to above and the . . . comparators [considered for demotion.]." Svensson Reply at 37. Ms. Svensson further stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. See Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

To the extent this request as originally written sought non-electronic discovery, Putnam has already produced all documents with respect to any transfer of the Plaintiff (including electronic documents, as ordered by this Court in December 2005). Moreover, in response to Ms. Svensson's interrogatories, Putnam already has produced the employment histories of all of Ms. Svensson's 91 alleged comparators, which necessarily includes information about any transfers of the 91.

REQUEST NO. 20

All documents and things concerning this criteria actually used in the period since January 1, 1999, for selection of any of Svensson, any of the identified males and/or any of the identified females for appearances on television investment programs or interviews.

RESPONSE NO. 20

"Prior to filing her motion to compel, Svensson withdrew category No. 20." Svensson Reply at 38.

REQUEST NO. 21

All documents and things concerning the appearances of Svensson, any of the identified males and/or any of the identified females in the IMD on television investment programs or interviews.

RESPONSE NO. 21

"Prior to filing her motion to compel, Svensson withdrew category No. 21." Svensson Reply at 38.

REQUEST NO. 22

All documents and things concerning the Putnam policy in the period since January 1, 1999, in regard to persons of the status and position of persons such as Darren Peers (Peers) concerning payment or reimbursement of tuition costs for the MBA degree.

RESPONSE NO. 22

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 23

All documents and things concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ Investment Management Company, LLC ("NWQ"), any affiliate of NWQ and/or any other persons) concerning Peers' leaving his employment at Putnam, compliance with, or satisfaction, fulfillment or other disposition of, the terms, provisions and/or condition of Peers' employment at Putnam, or financial obligations.

RESPONSE NO. 23

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. Indeed, she described it as a category "requesting discrete documents where there is no email issue." *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 24

All documents and things concerning the payment to, or reimbursement of, any person concerning tuition costs of Peers' MBA degree.

RESPONSE NO. 24

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. Indeed, she described it as a category "requesting discrete documents where there is no email issue." *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 25

All document and things prepared or received by Putnam concerning the satisfaction, fulfillment or other disposition of the terms and conditions of Peers' employment in regard to the payment to, or reimbursement of, any person or tuition costs of Peers' MBA degree.

RESPONSE NO. 25

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. Indeed, she described it as a category "requesting discrete documents where there is no email issue." *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 26

All documents and things concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other persons concerning the making, maintaining and/or furnishing by Peers to, or receipt by, Putnam, of any diary, notes or other documents or things concerning Svensson or any of the identified males and/or of the identified females prepared by Peers.

RESPONSE NO. 26

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one

calling for electronic discovery. Indeed, she described it as a category "requesting discrete documents where there is no email issue." *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 27

All documents and things concerning communication between or among Putnam, any affiliate of Putnam, Peers, NWQ, any affiliate of NWQ and/or any other persons(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Peers or by any of the identified males and/or any of the identified females who at the time of such communication were no longer in the employ of Putnam.

RESPONSE NO. 27

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 28

All documents and things concerning the factual basis of any numerical or other rating, evaluation, analysis or score concerning Svensson in connection with consideration of her by Putnam in the period since January 1, 1999, for promotion; demotion; salary or other compensation increase; salary or other compensation decrease; and/or other employment action.

RESPONSE NO. 28

Putnam has heretofore produced all documents responsive to this request.

REQUEST NO. 29

The terms and conditions offered by Putnam in the period since January 1, 2002, to any of the identified males and/or any of the identified females in connection with leaving the employ of Putnam by any of such persons, whether voluntarily or involuntarily.

RESPONSE NO. 29

Ms. Svensson argues she needs the separation agreements of those of the 91 who left Putnam's employ to determine "[w]hether and to 'what' extent Putnam has required any of the 91 Comparators who have left Putnam either voluntarily or involuntarily to agree to conditions that might affect their testimony." Svensson Reply at 48. Putnam objects on relevance grounds. First, as several witnesses have testified, Putnam requires every employee leaving its employ who receives a separation package to sign a waiver of claims against the company. Putnam never has offered a departing male or female employee a severance package without signing such a release. Thus, there is no distinction between people who are or are not potential witnesses in this case. Second, this request seeks all separation agreements concerning the 91 -- it does not differentiate between former employees who are or are not potential witnesses in this case. Third, many of the 91 who left Putnam's employ did so before Ms. Svensson's departure. Thus, their separation packages could have no bearing upon their willingness to provide "candid and accurate testimony" in her case. Finally, Ms. Svensson has not raised a claim that Putnam's severance offer to her was a product of her gender. Thus, determining who was offered what has no bearing on any of her claims.

REQUEST NO. 30

All documents and things concerning any notes, minutes or other document of or in regard to meetings or decisions of the Putnam trustees in the period May - September 2003 concerning directed brokerage commissions.

RESPONSE NO. 30

Putnam has reviewed the trustee minutes for May - September 2003, and no documents responsive to this request exist.

REQUEST NO. 31

All documents and things concerning communication between or among, Haldeman, Lasser and any of the Putnam trustees in the period May - September 2003 concerning directed brokerage commissions.

RESPONSE NO. 31

Putnam has reviewed the trustee minutes for May - September 2003, and the minutes do not reflect any communication between or among Haldeman, Lasser and any of the Putnam trustees concerning directed brokerage commissions.

REQUEST NO. 32

All documents and things concerning coverage reports for O'Malley and the identified males and/or the identified females for each of the reporting periods in 2002, 2003, 2004, 2005 and 2006.

RESPONSE NO. 32

Ms. Svensson limited the scope of this request to Ms. Svensson and 10 of her comparators. Svensson Reply at 51. Ms. Svensson claims "the information contained in 'coverage reports' will show whether or not one or more males in Global Equity Research had fewer stocks under coverage and thereby were less productive than Svensson. This information, with other documents and evidence, will show that to the extent these males nonetheless were rewarded and not demoted or fired, Putnam engaged in unequal treatment and gender discrimination." *Id.* at 51-52. Putnam objects on relevance grounds. First, Putnam did not terminate Ms. Svensson's employment because she had fewer stocks under her coverage. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position after Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Second, Ms. Svensson was terminated in September, 2003. To the extent this requests seeks coverage reports for 2004, 2005 and 2006, it seeks documents neither relevant nor calculated to lead to the discovery of admissible documents and information.

REQUEST NO. 33

All documents and things concerning communication between or among Stoev and Morgan or other persons at Putnam in regard to the termination of Stoev's employment and the stated reasons for it.

RESPONSE NO. 33

Ms. Svensson states she wants this information because "what was testified in depositions or told to Stoev or others by Putnam officials differed from what they told Stoev, each other or the Federal immigration authorities in regard to, among other things, Stoev's 'green card' and his termination." Svensson Reply at 52. This request seeks documents neither relevant nor calculated to lead to the discovery of admissible information. First, Mr. Stoev was one of four analysts supervised by Ms. Svensson. Putnam has never asserted any mismanagement by Ms. Svensson of Mr. Stoev. Second, Mr. Stoev's green card application is completely irrelevant to any of the claims raised by Ms. Svensson: at best, the application demonstrates that, at one

point in time, Putnam supported his application to remain in the United States and working at Putnam. Months later, Mr. Stoev, along with dozens of other employees, was laid off as part of a reduction in force. Putnam's reasons for terminating Mr. Stoev and what Putnam may have said to the INS regarding Mr. Stoev in connection with his application for green card status, have no bearing whatsoever on Ms. Svensson's claims concerning her compensation, promotion, transfer and termination.

REQUEST NO. 34

All documents and things concerning the "green card" application for Stoev that Morgan filled out.

RESPONSE NO. 34

Ms. Svensson argues she "is entitled to know if Stoev's high opinion of Svensson and her management skills, based upon Svensson's supervision of Stoev while at Putnam, had any effect on Putnam's decision to terminate Stoev." Svensson Reply at 52-53. Ms. Svensson further argues that Mr. Stoev's green card application will "enable the court and the jury determine if what Putnam told the government in 2003 about Stoev to assist in his staying in the U.S. and working for Putnam, is consistent with what its deposition witnesses have testified to about Stoev and whether it is consistent with what Putnam told Stoev directly concerning termination of his employment at Putnam." *Id.* at 53. Mr. Stoev's green card application is completely irrelevant to any of the claims raised by Ms. Svensson: at best, the application demonstrates that, at one point in time, Putnam supported his application to remain in the United States and working at Putnam. Months later, Mr. Stoev, along with dozens of other employees, was laid off as part of a reduction in force. Putnam's reasons for terminating Mr. Stoev and what Putnam may have said to the INS regarding Mr. Stoev in connection with his application for green card status, have no bearing whatsoever on Ms. Svensson's claims concerning her compensation, promotion, transfer and termination.

REQUEST NO. 35

All documents and things concerning calendar entry(ies) (Lotus notes or otherwise) for Haldeman concerning any communication with Peers.

RESPONSE NO. 35

No responsive documents exist. Moreover, this request is not addressed in Ms. Svensson's Reply.

REQUEST NO. 36

All documents and things concerning communication between Morgan and Allansmith in the period 2002-2004 concerning comments upon or other feedback as to Allansmith's work performance.

RESPONSE NO. 36

First, one female's opinion (Morgan) about another female's work performance (Allansmith) has no relevance to any of the claims brought by Ms. Svensson. Second, in response to Ms. Svensson's interrogatories, Putnam has already produced the entire work histories for each of Ms. Svensson's 91 alleged comparators, including Ms. Allansmith. Finally, even if any such "communication" between Morgan and Allansmith existed, it almost certainly would have been via electronic mail. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted.

REQUEST NO. 37

All documents and things concerning communication in the period 2002-2004 between Morgan and McNamee, Scordato and/or Brooks concerning Svensson's or Allansmith's work performance or reasons or justifications for Svensson or Allansmith leaving Putnam's employment.

RESPONSE NO. 37

*See* Putnam's response to Request 36, above.

REQUEST NO. 38

All documents and things concerning GER Active Portfolio Performance in the period January 1, 1999, through September 15, 2003, for Svensson or any of the identified males and/or the identified females.

RESPONSE NO. 38

Ms. Svensson limited the scope of this request to herself and 20 of her alleged comparators. Svensson Reply at 57. She argues that the "performance in the work place of Svensson as compared to the others is highly relevant." *Id.* First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam

did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position after Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Finally, Ms. Svensson only worked in GER for last 18 months of the time period at issue, and thus, her request not only lacks relevance, but it is overbroad.

REQUEST NO. 39

All documents and things concerning comparisons in work performance in the period January 1, 1999, through September 15, 2003, of Svensson, any of the identified males and/or any of the identified females.

RESPONSE NO. 39

Ms. Svensson limited the scope of this request to herself and 20 of her alleged comparators. Svensson Reply at 59. She argues that the "performance in the work place of Svensson as compared to the others is highly relevant." *Id.* First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position after Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Finally, in response to Ms. Svensson's Rule 30(b)(6) notice, Putnam produced at deposition a spreadsheet evidencing the managers' ratings for each of her alleged 91 comparators for 1999 - 2003, to the extent those ratings were captured in the employees' personnel files. Putnam knows of no other documents that might compare work performance amongst investment professionals.

REQUEST NO. 40

All documents and things, including, without limitation Human Resources Action Request and Requisition for Employee documents, concerning the move or transfer of any of the identified males out of GER in the period since January 1, 1999.

RESPONSE NO. 40

Ms. Svensson limited this request to 7 of her alleged comparators. Svensson Reply at 61. Ms. Svensson argues that "[d]ocuments concerning the move or transfer of any of the [7] comparators is a highly relevant subject." *Id.* First, Putnam objects on relevance grounds since Ms. Svensson did not work in GER between January 1, 1999 and March 2002. Second, Putnam objects on relevance grounds because Ms. Svensson never was "transferred out" of GER. Finally, Ms. Svensson has already been provided with the job histories for all of her alleged 91 comparators which show transfers between departments, and thus provides her with the information she seeks.

REQUEST NO. 41

All documents and things concerning YTD Attribution Analysis for the reporting periods between January 1, 1999 through September 30, 2003, concerning any teams of which Svensson, any of the identified males and/or identified females were members.

RESPONSE NO. 41

"Prior to filing her motion to compel, Svensson withdrew category No. 41." Svensson Reply at 62.

REQUEST NO. 42

All documents and things concerning all Trustee Fact Sheets produced for the Putnam trustees on a quarterly basis in the period since 1994 concerning the performance of the various Putnam funds, including without limitation, the Putnam Growth and Income Fund, New Value Fund and the Global Growth Fund.

RESPONSE NO. 42

"Prior to filing her motion to compel, Svensson withdrew category No. 42." Svensson Reply at 62.

REQUEST NO. 43

Putnam's Officers' Directories for the years 2003-2005.

RESPONSE NO. 43

Ms. Svensson argues that she needs this information because the Officer Directories provide "title and job responsibilities" of the 91. Svensson Reply at 62. Not only does Ms. Svensson fail to explain how this information is related to any of her claims, she also ignores that Putnam already has provided this information (and much more) in response to other discovery requests -- information that would enable Ms. Svensson to compare "one person to another and positions and responsibilities from one year to another." *Id.* at 63. Furthermore, these directories contain highly personal information such as home addresses and private phone numbers that have no bearing on the claims raised in this case.

REQUEST NO. 44

All documents and things concerning bonus worksheets prepared or maintained at any time or from time to time in the period since January 1, 1999, in regard to the teams of which Svensson, any of the identified males and/or any of the identified females were members, including, without limitation, Core International, Core Domestic, Core Growth (later called Large Cap Growth), Value, Specialty Growth and GER.

RESPONSE NO. 44

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. Indeed, she described it as a category "requesting discrete documents where there is no email issue." *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 45

All documents and things concerning the reports, analyses, measurements and/or rankings of the types included in documents LS-501, 503-506 for any of the identified males and any of the identified females, prepared in the period since January 1, 1999.

RESPONSE NO. 45

Ms. Svensson narrowed the scope of this request to 20 of her alleged comparators. Svensson Reply at 65. She argues she needs this information

because "[d]ocuments such as reports, analyses, measurements and/or rankings are highly relevant as they provide ways to compare one person from another." *Id.* First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position when Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Finally, Putnam has produced the managers' ratings for each of the 91 alleged comparators for the years at issue (to the extent such ratings appeared in the employees' personnel files).

REQUEST NO. 46

All documents and things concerning the reports, analyses, measurements and/or rankings of the types included in document LS-502 for the fund referred to and for the other Putnam funds, which were prepared in the period since January 1, 1999.

RESPONSE NO. 46

Ms. Svensson narrowed the scope of this request to 20 of her alleged comparators. Svensson Reply at 67. She argues she needs this information because "[d]ocuments such as reports, analyses, measurements and/or rankings are highly relevant as they provide ways to compare one person from another." *Id.* First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position when Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years.. Finally, Putnam has produced the managers' ratings for each of the 91 for the years at issue (to the extent such ratings appeared in the employees' personnel files).

REQUEST NO. 47

All documents and things concerning attribution reports of the type included in LS-507-512 for the fund referred to and any other funds, which were prepared in the period since January 1, 1999.

RESPONSE NO. 47

Ms. Svensson narrowed the scope of this request to 20 of her alleged comparators. Svensson Reply at 68. She argues she needs this information because "[d]ocuments such as the requested attribution reports are highly relevant as they provide bases for comparing one investment professional with another." *Id.* First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position after Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Finally, Putnam has produced the managers' ratings for each of the 91 for the years at issue (to the extent such ratings appeared in the employees' personnel files.)

REQUEST NO. 48

All documents and things concerning sector level performance index ranks of the type included in LS-513-515 prepared in the period since January 1, 1999.

RESPONSE NO. 48

Ms. Svensson narrowed the scope of this request to 20 of her alleged comparators. Svensson Reply at 70. She argues she needs this information because "[d]ocuments such as the requested sector level performance index ranks are highly relevant as they provide bases for comparing one with another." *Id.* at 70-71. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position after Putnam learned that she

was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Finally, Putnam has produced the managers' ratings for each of the 91 for the years at issue (to the extent such ratings appeared in the employees' personnel files).

REQUEST NO. 49

All documents and things concerning scorecards and second scorecards in regard to O'Malley, other MBAs and any of the identified males and/or any of the identified females prepared or maintained in the period since January 1, 1999.

RESPONSE NO. 49

Ms. Svensson narrowed the scope of this request to 20 of her alleged comparators. Svensson Reply at 73. Ms. Svensson argues these documents are relevant because "the documents sought (concerning scorecards and second scorecards) in all likelihood will show that Putnam terminated the employment of Svensson, an extremely high-performing female investment professional and in doing so did not take into account her actual performance." *Id.* at 74. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam did not terminate Ms. Svensson's employment because she was a poor stock picker. It terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position when Putnam learned that she was mismanaging subordinates (causing at least one highly-valued analysts to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Finally, Putnam has produced the managers' ratings for each of the 91 for the years at issue (to the extent such ratings appeared in the employees' personnel files.)

REQUEST NO. 50

The "notes" prepared by Tibbetts, which, "according to the Putnam privilege log, concerned "female partners."

RESPONSE NO. 50

Putnam objected to this request because it seeks documents prepared for counsel and thus are protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on

December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

REQUEST NO. 51

The "undated" "notes" by an "unknown" author to an unidentified recipient, which, according to the Putnam privilege log, concerns "Svensson employment history."

RESPONSE NO. 51

Putnam objected to this request because it seeks documents prepared for counsel and thus are protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

REQUEST NO. 52

The 1998 "maternity leave summary" prepared, according to the Putnam privilege log, by an "unknown" author for an unidentified recipient.

RESPONSE NO. 52

Putnam objected to this request because it seeks documents prepared for counsel and thus are protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

REQUEST NO. 53

The September 3, 2003, "e-mail re: litigation forwarded with e-mail from [Attorney] Rodriques…" authored by McNamee and sent to the recipient, Brooks, as referred to in the Putnam privilege log but redacted so as to not disclose only the words used by the author or Attorney Rodriques in a "communication," within the meaning of U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), each other, but disclosing the other words and information in either of the e-mails, including, without limitation, the identity of the author, the identity of the recipient(s), the date and time of the transmission and the words in the subject line.

RESPONSE NO. 53

Putnam objected to this request because it seeks documents prepared for counsel and thus are protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

REQUEST NO. 54

The August 27, 2003, "e-mail re: Draft termination agreement" from author Hadley to recipients McNamee and Attorney Rodriques, as referred to in the Putnam privilege log but redacted so as to not disclose the words used by the author or Attorney Rodriques in a "communication," within the meaning of U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), with each other but disclosing the other words and information in the e-mail, including, without limitation, the identity of the author, the identity of the recipient(s), the date and time of the transmission, the words in the subject line and the attachment.

RESPONSE NO. 54

Putnam objected to this request because it seeks documents prepared for counsel and thus are protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

REQUEST NO. 55

All documents and things concerning the amounts and types of compensation, including, without limitation, salary and bonus, paid or payable to Svensson, the identified females and the identified females for each of the years 1999-2004.

RESPONSE NO. 55

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. *See* Exhibit A. At the hearing on February

15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 56

All documents and things identifying any of the identified males and any of the identified females who left the employ of Putnam on a voluntary basis in the period 1999 to date.

RESPONSE NO. 56

Ms. Svensson narrowed this request to "to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator." Svensson Reply at 83. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has already provided spreadsheets detailing which of the 91 left Putnam's employ on a voluntary or involuntary basis.

REQUEST NO. 57

All documents and things concerning the circumstances and reasons for the voluntary terminations referred to in the immediately preceding category.

RESPONSE NO. 57

Ms. Svensson narrowed this request to "to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator." Svensson Reply at 86. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam already has provided spreadsheets detailing which of the 91 left Putnam's employ on a voluntary or involuntary basis. Finally, the "circumstances" regarding every other employee's termination is not relevant: Putnam did not terminate any other employee because that employee refused to accept a non-managerial position after the company learned of that employee's mismanagement of his or her subordinates.

REQUEST NO. 58

All documents and things identifying any of the identified males and any of the identified females who left the employ of Putnam on an involuntary basis in the period 1999 to date.

RESPONSE NO. 58

Ms. Svensson narrowed this request to "to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator." Svensson Reply at 89. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has already provided spreadsheets detailing which of the 91 left Putnam's employ on a voluntary or involuntary basis.

REQUEST NO. 59

All documents and things concerning the circumstances and reasons for the involuntary terminations referred to in the immediately preceding category.

RESPONSE NO. 59

Ms. Svensson narrowed this request "to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator." Svensson Reply at 92. Ms. Svensson argues she needs this information because "the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either 'voluntarily' or 'involuntarily.'" *Id.* First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has already provided spreadsheets detailing which of the 91 left Putnam's employ on a voluntary or involuntary basis. Finally, the "circumstances" regarding every other employee's termination is not relevant: Putnam did not terminate any other employee because that employee refused to accept a non-managerial position after the company learned of that employee's mismanagement of his or her subordinates.

REQUEST NO. 60

All documents and things concerning any severance package agreed to by Putnam and any of the identified males and/or any of the identified females in regard to his or her leaving the employ of Putnam (whether voluntarily or involuntarily) in the period 1999 to date.

RESPONSE NO. 60

Ms. Svensson narrowed this request to "to any of the 91 Comparators who departed Putnam during the period since January 1, 1999, and to those instances in which the decision to depart was initiated by Putnam unless Svensson contends that the decision was initiated by the comparator." Svensson Reply at 97. Ms. Svensson argues she needs this information because "the reasons and circumstances affecting Svensson must be compared to those affecting others of the 91 Comparators who left Putnam either 'voluntarily' or 'involuntarily.'" *Id.* First, the request does not call for the reasons and circumstances affecting the termination of other individuals -- it simply calls for the terms of the severance packages. Putnam objects to turning over the severance packages for the reasons stated in Response 29. Second, even if this request did call for the reasons and circumstances surrounding any employee's departure, Putnam did not terminate any other employee because that employee refused to accept a non-managerial position after the company learned of mismanagement of subordinates. Third, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. See Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Finally, Putnam has already provided spreadsheets detailing which of the 91 left Putnam's employ on a voluntary or involuntary basis.

REQUEST NO. 61

All documents and things concerning communication between or among Putnam, any affiliate of Putnam, and Landes, Eckland and/or Oristaglio/or any other person(s) concerning the testimony or possible testimony in a deposition or at trial in this case by Landes, Eckland and/or Oristaglio.

RESPONSE NO. 61

No one at Putnam has had any non-electronic, non-privileged communication with Messieurs Landes, Eckland and/or Oristaglio about testimony at deposition or at trial in this case. Finally, none of these three individuals remain in Putnam's employ.

REQUEST NO. 62

All documents and things concerning identifying or stating the total bonus pool available to Putnam for each since January 1, 1999.

RESPONSE NO. 62

Ms. Svensson argues this information "is relevant because it is necessary to know the total bonus pool available for each year in order to enable the court and the jury at trial to determine if Putnam acted lawfully in its decisions to divide up the bonus pool among the 91 Comparators, and to know if there was any additional money or anything of value available from the total that might have been or should have been distributed to one or more of the 91 Comparators." Svensson Reply at 98. Putnam has provided the bonus awards for each of Ms. Svensson's 91 alleged comparators. Putnam objects on relevance grounds to discovery of the total bonus pool available to thousands of Putnam employees for 5 years. Whether other money might have been left over is irrelevant, since there is no obligation on Putnam's part to distribute the entire bonus pool to anyone.

REQUEST NO. 63

All documents and things concerning identifying or stating the total bonus pool available to the IMD for each year since January 1, 1999.

RESPONSE NO. 63

Ms. Svensson argues that "it is necessary to know the total bonus pool available for each year in order to enable the court to determine if Putnam acted lawfully in its decisions to divide up the bonus pool among the 91 Comparators." Svensson Reply at 100. Putnam has provided the bonus awards for each of Ms. Svensson's 91 alleged comparators. Putnam objects on relevance grounds to discovery of the total bonus pool available to thousands of Putnam employees for 5 years. Whether other money might have been left over is irrelevant, since there is no obligation on Putnam's part to distribute the entire bonus pool to anyone.

REQUEST NO. 64

All documents and things concerning the amounts of the bonuses allocated for each year since January 1, 1999, to such of the identified males and the identified females persons receiving a bonus.

RESPONSE NO. 64

"Svensson has considered further Category Nos. 22-27 . . .44. . . 55 . . .and 64, and, without waiving her position that email documents should be produced, withdraws those categories insofar as they concern non-email documents." Svensson Response at 3. Ms. Svensson never designated this category as one calling for electronic discovery. Indeed, she described it as a category "requesting discrete documents where there is no email issue." *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot.

REQUEST NO. 65

The "anonymous" letter concerning Warren, which is referred to at p. 357 of the McNamee deposition.

RESPONSE NO. 65

Ms. Svensson argues that "[t]he conduct of Paul Warren, one of the 91 Comparators . . . is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson." Svensson Reply at 103. Putnam has objected to producing an "anonymous" letter about another employee who no longer works at Putnam and whose termination was for reasons entirely different from Ms. Svensson's. Mr. Warren did not supervise Ms. Svensson nor did she supervise him. Since Mr. Warren, like Ms. Svensson, was terminated by Putnam, by definition he cannot be a legal comparator.

REQUEST NO. 66

All documents and things concerning the language used and/or the behavior of Warren of the type referred to at pp. 18-21 and 357 of the McNamee deposition.

RESPONSE NO. 66

Ms. Svensson argues that "[t]he conduct of Paul Warren, one of the 91 Comparators . . . is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson." Svensson Reply at 105. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has objected to producing documents about

another employee who no longer works at Putnam and whose termination was for reasons entirely different from Ms. Svensson's. Mr. Warren did not supervise Ms. Svensson nor did she supervise him. Finally, since Mr. Warren, like Ms. Svensson, was terminated by Putnam, by definition he cannot be a legal comparator.

REQUEST NO. 67

All documents and things concerning communication between Lasser or Haldeman and the Human Relations Department at Putnam and/or any other person concerning the language used by and/or behavior of Warren referred to at pp. 18-21 and 357 of the McNamee deposition.

RESPONSE NO. 67

Ms. Svensson argues that "[c]ommunication at Putnam concerning the conduct of Paul Warren, one of the 91 Comparators, described in the letter referred to . . . is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females among the 91 Comparators." Svensson Reply at 106-107. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has objected to producing communication about another employee who no longer works at Putnam and whose termination was for reasons entirely different from Ms. Svensson's. Mr. Warren did not supervise Ms. Svensson nor did she supervise him. Finally, since Mr. Warren, like Ms. Svensson, was terminated by Putnam, by definition he cannot be a legal comparator.

REQUEST NO. 68

All documents and things concerning the investigation of Warren by Tibbetts, which is referred to at p. 358 of the McNamee deposition.

RESPONSE NO. 68

Ms. Svensson argues that "[d]ocuments concerning the investigation at Putnam concerning the conduct of Paul Warren. . . is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females

among the 91 Comparators." Svensson Reply at 108. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has objected to producing documents concerning the investigation of another employee who no longer works at Putnam and whose termination was for reasons entirely different from Ms. Svensson's. Mr. Warren did not supervise Ms. Svensson nor did she supervise him. Finally, since Mr. Warren, like Ms. Svensson, was terminated by Putnam, by definition he cannot be a legal comparator.

REQUEST NO. 69

If the "investigation" of Warren was not "handled" as the McNamee deposition states, by Tibbetts, but was "handled" in whole or in part by one or more other persons, all documents and things concerning the investigation of Warren by such other person or persons.

RESPONSE NO. 69

Ms. Svensson argues that "[d]ocuments concerning the investigation at Putnam concerning the conduct of Paul Warren. . . is relevant to show the nature of the conduct of this person and to be able to compare his conduct in the workplace to that alleged of Svensson, and to determine if there has been any gender discrimination in the treatment of Svensson and the females among the 91 Comparators." Svensson Reply at 110. First, Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted, rendering this request moot. Second, Putnam has objected to producing documents concerning the investigation of another employee who no longer works at Putnam and whose termination was for reasons entirely different from Ms. Svensson's. Mr. Warren did not supervise Ms. Svensson nor did she supervise him. Finally, since Mr. Warren, like Ms. Svensson, was terminated by Putnam, by definition he cannot be a legal comparator.

REQUEST NO. 70

All documents and things concerning the compensation figures, studies and statistics referred to in the Allansmith deposition at pp. 88-90.

RESPONSE NO. 70

Ms. Svensson argues that "the documents requested are relevant to show the treatment Putnam as affecting females as compared to males." Svensson Reply at 113. Putnam objects to this request on relevance grounds: Ms. Allansmith is a former employee of Putnam who was one of hundreds of people who were terminated by Putnam as part of a reduction in force. The compensation figures, studies and statistics referenced in the Allansmith deposition were documents prepared by Ms. Allansmith after her departure from Putnam and apparently shared by Ms. Allansmith with Ms. Svensson. Putnam neither requested nor relied upon Ms. Allansmith's analyses, and has no idea how she prepared the documents or what information she relied upon in doing her analysis. Thus, Putnam has no documents responsive to this request.

REQUEST NO. 71

All documents and things concerning the Women's leadership Forum referred to at p. 180 of the Haldeman deposition.

RESPONSE NO. 71

Ms. Svensson argues that "[d]ocuments concerning the Women's Leadership Forum at Putnam are relevant to show the concerns and complaints of women at Putnam and "what", if anything, Putnam did in response to those complaints and concerns." Svensson Reply at 115. Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted. To the extent this request seeks non-electronic documents, Ms. Svensson fails to demonstrate how such documents, even if they existed, would be relevant to her claims regarding compensation, transfer, promotion, termination or retaliation, particularly considering the group was not formed until after Ms. Svensson's departure from Putnam.

REQUEST NO. 72

All documents and things concerning studies, analyses and reports and the results thereof by or on behalf of the above referred to Women's Leadership Forum.

RESPONSE NO. 72

Ms. Svensson argues that “[d]ocuments concerning the Women's Leadership Forum at Putnam are relevant to show the concerns and complaints of women at Putnam and "what", if anything, Putnam did in response to those complaints and concerns.” Svensson Reply at 116. Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted. To the extent this request seeks non-electronic documents, Ms. Svensson fails to demonstrate how such documents, even if they existed, would be relevant to her claims regarding compensation, transfer, promotion, termination or retaliation, particularly considering the group was not formed until after Ms. Svensson’s departure from Putnam.

REQUEST NO. 73

All documents and things concerning communication from Haldeman to any other person and to Haldeman from any other person in regard to any one or more of the subject matters of the two immediately preceding categories.

RESPONSE NO. 73

Ms. Svensson argues that “[d]ocuments concerning the Women's Leadership Forum at Putnam are relevant to show the concerns and complaints of women at Putnam and "what", if anything, Putnam did in response to those complaints and concerns.” Svensson Reply at 117. Ms. Svensson stipulated in fn. 1 of her Opposition that this request calls for Putnam to conduct electronic discovery. *See* Exhibit A. At the hearing on February 15, 2007, the Court ruled that no further electronic discovery is to be conducted. To the extent this request seeks non-electronic documents, Ms. Svensson fails to demonstrate how such documents, even if they existed, would be relevant to her claims regarding compensation, transfer, promotion, termination or retaliation, particularly considering the group was not formed until after Ms. Svensson’s departure from Putnam.

REQUEST NO. 74

The personnel files of Allansmith, DeChristopher, O’Malley, Peers and Warren.

RESPONSE NO. 74

Putnam objected to this request on relevance grounds. Ms. Svensson neither supervised nor was supervised by Ms. Allansmith or Messieurs DeChristopher and Warren. Ms. Svensson does not contend that these employees had anything to do with any of her claims. Ms. Svensson does not explain why the content of the personnel files of Messrs. Peers and O'Malley is relevant to any of her claims. Putnam terminated Ms. Svensson after Ms. Svensson refused to accept a non-managerial position after Putnam learned that she was mismanaging her subordinates, including Peers and O'Malley (causing Peers to quit), and instead demanded a promotion, a raise and a guaranteed bonus of $1 million for each of the next two years. Why Peers' and O'Malley's files are relevant to this or any other issue is not explained.

REQUEST NO. 75

All documents and things concerning communication within Putnam in regard to the issue of "deprivation of [Svensson's] management responsibilities,"[1] which communication took place in the period prior to the Brooks' presenting to Svensson on August 28, 2003, of a document with three options concerning the status of her employment.

RESPONSE NO. 75

Putnam has produced all non-privileged documents responsive to this request. Putnam further objected to this request because it seeks documents protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

REQUEST NO. 76

All documents and things concerning communication within Putnam in regard to the issue of "deprivation of [Svensson's] management responsibilities" and/or termination of her employment, which communication took place in the period following the Brooks presentation to Svensson referred to in the immediately preceding category, and the termination of Svensson's employment on September 15, 2003.

[1] As used in the Brooks deposition at p. 184.

RESPONSE NO. 76

> Putnam has produced all non-privileged documents responsive to this request. Putnam further objected to this request because it seeks documents protected by the attorney-client privilege and work-product doctrine. Putnam produced a privilege log to Ms. Svensson on December 13, 2005 and amended that log on February 28, 2006. Ms. Svensson offers the Court no basis to believe that the documents at issue are not privileged.

## III. PUTNAM'S RESPONSE TO DISCOVERY ISSUES RAISED BY MS. SVENSSON IN HER FEBRUARY 22, 2007 RESPONSE

In her new pleading filed on February 22, 2007, her third in connection with her Objections to Magistrate Bowler's Order, Ms. Svensson attempts to reargue issues previously ruled upon by the Magistrate Judge -- issues she has not timely appealed -- rather than limiting her argument to those requests that Ms. Svensson believes Magistrate Judge Bowler did not reach. Apart from the impropriety of the pleading generally, Ms. Svensson is wrong on the merits.

### A. The Sworn Statement

Ms. Svensson first complains that the sworn statement by Putnam that certain documents do not exist or already have been produced is insufficient. Ms. Svensson made this same argument to the Magistrate Judge, who did not order any further sworn statement by Putnam. Ms. Svensson now asks this Court to rule, in effect, that Magistrate Judge Bowler was wrong in concluding that Putnam has adequately complied with *her* Order. The facts are as follows.

In response to Ms. Svensson's Second Request for Documents and Things, Putnam responded to certain requests stating that documents either did not exist or

had already been produced. Ms. Svensson, not satisfied with this response, demanded that Putnam produce a "sworn statement" to the same effect. The Federal Rules of Civil Procedure, of course, contain no such requirement. Nevertheless, Putnam, after the October 26 hearing, produced a category-by-category response to the requests at issue stating that "[b]ased on a reasonable search of its files, Putnam has heretofore produced all documents that it was able to locate that are responsive to this request." The sworn statement, signed under oath by Putnam Human Resources manager, Mary McNamee, also included the following language:

> The Sworn Statements set forth are based on, and therefore necessarily limited by, either my own personal knowledge or the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these answers, and currently available to Putnam. Subject to the limitations set forth herein, the foregoing Statements are accurate to the best of my present knowledge. Signed under pains and penalties of perjury this 3rd day of January, 2007.

Ms. Svensson takes issue with the phrases "produced all documents that it was able to locate" and "has not discovered any documents or things" as well as the aforementioned language. Svensson Response at 9. First, the Federal Rules of Civil Procedure do not impose a discovery obligation to produce a "sworn statement" that certain documents do not exist or have already been produced. Second, Putnam reviewed all the files and folders in which responsive documents were likely to have resided. Putnam is a large company, employing thousands of individuals: that responsive documents may exist in a non-logical area of the company is a remote possibility. Third, it is possible that responsive documents

exist electronically. Pursuant to the parties' disagreement over electronic discovery (which both Magistrate Judge Bowler and this Court ruled should not be conducted), Putnam did not search its back-up email hard drives for responsive documents. Any limitations to Putnam's "sworn statement" that documents either did not exist or have already been produced simply reflect these circumstances.

Furthermore, Ms. Svensson raised her complaint about the sworn statement at the January 4, 2007 hearing on Putnam's motion to terminate discovery (transcript unavailable from this Court). At that hearing, Putnam described the reasons for the limiting language. Magistrate Judge Bowler never ruled that Putnam's sworn statement was deficient in any respect and Ms. Svensson has not appealed that ruling. Having failed to appeal that ruling, Ms. Svensson now asks the Court to rule that Magistrate Judge Bowler was wrong in concluding that Putnam had complied with her request for a sworn statement that the rules do not otherwise require. Putnam respectfully suggests that such a ruling would be inappropriate.

**B. The 360 Peer Reviews (Request No. 7)**

At the October 26, 2006 hearing on Ms. Svensson's motion to compel, this Court ordered Putnam to produce "360s" for certain of Ms. Svensson's alleged comparators for 1999 – 2003 (a "360" is an anonymous review of an employee's performance prepared by juniors and peers). When put on notice of Ms. Svensson's claims, Putnam took steps to preserve documents relevant to Ms. Svensson -- including her 360 peer review forms, and those documents have been produced.

With respect to 360 peer review forms Ms. Svensson sought in Request 7, Putnam has produced all such forms it has located,

**C. The "PDPRs" (Request No. 8) ruled upon by this Court on October 26, 2006.**

Ms. Svensson argues that Magistrate Judge Bowler denied her request for so-called "PDPRs" based on a misrepresentation by Putnam as to the nature of the documents. Svensson Response at 5. First, Magistrate Judge Bowler ruled on this issue on October 26, 2006, some *two months* before Ms. Svensson raised the issue with the Court, and Ms. Svensson never appealed that ruling. Any appeal of the Magistrate Judge's ruling on this request is thus untimely. Fed. R. Civ. P. 72(a) ("Within 10 days after being served with a copy of the magistrate judge's order [on a non-dispositive motion], a party may serve and file objections to the order; *a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.*") *See also, Phinney v. Wentworth Hospital*, 199 F.3d 1, 3 (1st Cir. 1999) ("It is a firmly settled rule that a party's appeal of a magistrate judge's order to the district court delimits his right to appellate review.")

Second, any confusion about the documents at issue was created at the hearing because Ms. Svensson chose to use an acronym not used at Putnam, "PDPR," which was unfamiliar even to Putnam's Head of Human Resources.[2] No

[2] Indeed, at the November 29, 2006 Rule 30(b)(6) deposition (a month after the hearing at issue), Richard B. Tibbetts, Putnam's Head of Human Resources, was asked about these so-called "PDPRs"

surprise that the term engendered confusion in the hearing before the Magistrate Judge. Putnam's counsel understood Ms. Svensson's counsel to be referring to certain other documents that were the subject of the same request, and was addressing those. (Request 8 sought all documents concerning the evaluation of work performance, including "[a]ll documents and things concerning <u>year end reviews</u>, <u>performance reviews</u>, <u>Investment Division & ISD Human Resources Updates</u>, <u>PDPRs</u> and <u>other documents analyzing or evaluating work performance in the IMD</u>. . . .")(emphasis added). Neither at nor after the hearing did Ms. Svensson clarify that her counsel was referring to performance reviews, nor did she move for reconsideration or appeal the ruling. Instead, she has waited 4 months and now wants this Court to overrule Magistrate Bowler's Order.

Third, Ms. 'Svensson' s argument is based on the false premise that Magistrate Judge Bowler was misled. There is no reason to assume that that is the case. Magistrate Judge Bowler's denial of Ms. Svensson's request for the performance reviews occurred in the context of a hearing that largely concerned the appropriate scope of discovery for 91 alleged comparators that Putnam has consistently argued could never be Ms. Svensson's legal comparators (for example,

---

Q. Do you know what a PDPR is?
A. Not off the top of my head, no.
Q. Okay. Do you know whether the forms for which the managers gave ratings to their employees at any point during the period 1999 to 2003 was designated as a PDPR?
A. That's a term I'm not familiar with.

*See* Rule 30(b)(6) deposition transcript at page 67, lines 6-12, attached hereto as Exhibit B.

Ms. Svensson has identified her boss and two of her supervisees as "comparators.") At the time of the October 26 hearing, Putnam already had provided a wealth of information about the 91 alleged comparators (including complete job histories and compensation information). Magistrate Judge Bowler thus had ample basis for concluding that a request seeking additional performance information about 91 individuals over a 5 year period was unnecessary or improper. The one thing that the Court *does* know about the Magistrate Judge's ruling is that she ruled explicitly 4 months ago, and that Ms. Svensson did not seek timely reconsideration of this particular ruling.

Finally, in response to Ms. Svensson's Rule 30(b)(6) notice, Putnam produced at deposition a spreadsheet demonstrating the managers' ratings for each of the 91 for 1999-2003 (to the extent the same appeared in the personnel files of the 91). Ms. Svensson has ample performance-related information that should enable her to determine if Putnam treated its male and female investment professionals differently based on gender.

## IV. CONCLUSION

Based on the foregoing, Putnam respectfully requests that this Court deny Ms. Svensson's Objection to Magistrate Judge Bowler's order granting Putnam a protective order terminating discovery.

**PUTNAM INVESTMENTS, LLC,**

By its attorneys,

/s/ Joseph L. Kociubes, BBO #276360
Joseph L. Kociubes, BBO #276360
Louis A. Rodriques, BBO #424720
Allyson E. Kurker, BBO #665231
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

Dated: February 26, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 26, 2007.

/s/ Joseph L. Kociubes, BBO #276360

# EXHIBIT A

Case 1:04-cv-12711-PBS Document 142 Filed 12/27/2006 Page 1 of 18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12711-PBS

LISA SVENSSON

Plaintiff,

v.

PUTNAM INVESTMENTS, LLC, et al.,

Defendants.

Plaintiff Lisa Svensson's Memorandum in Support of:
(1) Her Opposition to Defendant Putnam's Motion to Terminate Discovery;
and,
(2)(A) Her Cross Motion, Pursuant to Fed. R. Civ. P. 37 for Sanctions Against Putnam and Counsel for Violation of the October 26, 2006, Order for Production and of the Court's Series of Directions to Engage in Negotiations and Exchanges of Information as to Svensson's Second Request for Production; and,
(2)(B) Her Renewed Motion for Orders Compelling Production of Certain Items of her Second Request for Production[1]

and
Request for Hearing and Oral Argument

1. Introduction.

In its motion to terminate discovery, Putnam makes both the preposterous claim that Svensson "has used a second request [for production of documents] as a mechanism to insure

[1] Except to the extent actually produced, categories where Putnam claims no documents exist and a sworn statement to that effect (9 items) will be accepted, 9, 10, 11, 13, 14, 27, 28, 49; Categories re: email issues (31 items): 2, 3, 4, 5, 6, 12, 13, 15, 16, 17, 18, 19, 38, 39, 45, 46, 47, 48, 49, 56, 57, 58, 59, 60, 66, 67, 68, 69, 71, 72, 73; Categories requesting discrete documents where there is no email issue (33 items):7, 8, 12, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 37, 40, 43, 44, 50, 51, 52, 53, 54, 61, 62, 63, 64, 65, 70, 74, 75, 76, including the request for the "PDPRs" which was ruled upon by the court but upon a misrepresentation of fact by Putnam.

Case 1:04-cv-12711-PBS Document 142 Filed 12/27/2006 Page 17 of 18

and the discrete items not ruled upon by the court on October 26,l 2006, as to the Second Request for Production; and for orders compelling, except to the extent produced production of the documents requested by the second request for production, which are referred to in note 1 on p. 1 hereof.

Request for Hearing and Oral Argument

Svensson requests a hearing and oral argument

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.

/s/ Kevin F. Moloney
Kevin F. Moloney BBO No. 351000
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.5374

Dated: December 27, 2006

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the

# EXHIBIT B

components of the qualitative score, and through math that would come out to be a certain number, and then you were instructed to round it to the whole numbers or the half numbers.
Q. And was there a designation given to the form that was filled out by the manager? Is there a title to the document?
A. Certainly during '99 through 2004 there have been different types of performance review documents. The generic title was performance review form.
Back in '99 there were multiple versions of those forms and all the way through 2004 that were customized for each of the

a
00067

different groups and teams.
Within the investment organization there were multiple forms that were used depending upon the different groups that you were in.
Q. Do you know what a PDPR is?
A. Not off the top of my head, no.
Q. Okay. Do you know whether the forms for which the managers gave ratings to their employees at any point during the period 1999 to 2003 was designated as a PDPR?
A. That's a term I'm not familiar with.
Q. Okay. And these various forms that were distributed to managers, the instructions were to rate the investment professional in question in the range of one to five?
A. Yes.
Q. One being the poorest rating and five being the best rating?
A. Yes.
Q. Okay. And once the form had been prepared, comments made and the rating given, what was the manager in question instructed to do with the form?

a
00068

A. Well, let me see if I can just try to describe the general process because it did change from year to year in terms of the timing.
Q. Okay.
A. And from group to group people adopted slightly different versions of this, but the general practice was that managers would complete a performance review form that would have the individual rated.
Those would be shared with their managers and in some instances with human resources representatives, managers.
And then those ratings would be summarized along with compensation information and rolled up for review with the senior management of the respective divisions.
That was a process where feedback was given by managers of the direct supervisors or managers as well as from human resources, and then those review forms would be finalized and then ultimately delivered in a performance