UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,<br><br>                              Plaintiff,<br><br>         v.<br><br>PUTNAM INVESTMENTS, LLC,<br>and LAWRENCE LASSER.,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       CIVIL ACTION<br>NO.  04-12711 -PBS |

**DEFENDANT PUTNAM INVESTMENTS'
EMERGENCY MOTION FOR A PROTECTIVE ORDER AND FOR
CLARIFICATION OF THIS COURT'S APRIL 10, 2007 ORDER
AND REQUEST FOR ORAL ARGUMENT**

Defendant, Putnam Investments, LLC ("Putnam"), moves for a protective order and for clarification of the Court's Order of April 10, 2007 (the "Order"), a copy of which is attached as Exhibit A hereto.  Specifically, Putnam requests that this Court (i) clarify the specific review costs that plaintiff, Lisa Svensson ("Ms. Svensson"), must reimburse Putnam for, and (ii) order Ms. Svensson to narrow her list of search terms.

Putnam states the following in support of its motion:

1.      In its April 10 Order, this Court directed Putnam to conduct a second wave of e-discovery.  In granting Ms. Svensson's e-discovery request, this Court ordered that she incur the cost of the e-discovery "because this is the second document request, *the word search is broad*, and defendants have already paid for

one e-mail search." Order at p. 3 (emphasis added). This Court also noted that Putnam's search should be guided by "appropriate word searches." Order at p. 2. The word searches that Ms. Svensson had proposed, and that this Court characterized as "broad," consisted of 27 nonspecific search terms including words and phrases such as "approve," and "take out." See Exhibit B. Because her search terms were generic (and largely unhinged from Ms. Svensson's specific claims), a search for any e-mail containing any of the 27 terms would likely "hit" thousands of documents for relevance and privilege that would have to be produced for relevance and privilege.

2.     Complying with this Court's Order, Putnam reconstructed e-mail accounts for the 10 identified present or former Putnam employees for the period from 1999-2003. This process required Putnam to identify and retrieve 205 back-up hard drives that stored the electronic data, download the data to a set of local computers, transfer the data to an external hard drive and finally, deliver the data to a vendor to process "hits" based on Ms. Svensson's search terms.

3.     Putnam completed its restoration of backed-up e-mails on or about May 22, 2007. Putnam informed Ms. Svensson of that fact and asked how Ms. Svensson would like to proceed, given that the search process could begin. See Exhibit C. Ms. Svensson did not furnish suggested search terms because the size of the database was indeterminable at that time. See Exhibit D. Thereafter, Putnam offered to conduct a second download, at its own expense, to determine the size of the database. See Exhibit E. Due to system constraints, the download process

- 2 -

consumed additional time and the second download was completed on June 14.  See Exhibit F.  The database consisted of 22 GB to be searched.

4.      On June 29, 2007, Ms. Svensson furnished her list of search terms. Rather than narrowing the search given the breadth of her original 27 search terms, Ms. Svensson *increased* the number of search terms five-fold -- adding 100 new words -- for a new total of 127 search terms.  These search terms again included words (and variations of words) such as "Steve" "role" and "approve."  See e-mail and search list attached as Exhibit G.  Moreover, Ms. Svensson did not include any "Boolean" searches (for example, X within 5 words of Y), thereby increasing the likelihood that the overwhelming majority of "hits" would be non-responsive.

5.      On July 2, 2007, Putnam asked Ms. Svensson to consider refining her list.  See Exhibit H.  Ms. Svensson declined.  See Exhibit I.

6.      Putnam next asked its vendor to apply the 127 search terms to the database so that the search could begin.  That process has been completed and has resulted in a list of 126,551 records.  See vendor's summary of search hits, attached as Exhibit J.  Many of these records consist of multiple page e-mails and lengthy attachments.  To give the Court some indication of the problematic nature of the search terms, a search for "Svensson" yields a total of 747 records out of 126,551.  In contrast, a search for "Steve" yields 43,104 records, and a search for "approve" (and variations of that word) yields 8,447 records.

- 3 -

7.     Assuming an attorney or paralegal can review one hit per 30 seconds (a pace that is unlikely to be maintained over eight or nine hour days), the review process will require some 1,050 review hours (126,000 hits / 120 hits per hour).  Put another way, the task, assuming 40 hours of reviewing time per week will require the equivalent of *26 weeks* of reviewer time using a 30 second review figure.  Thirty seconds per record is also overly optimistic given that the reviewer must determine whether a document is responsive to one of dozens of requests, is non-responsive, or is privileged.   Given  the  standard  billing  rates  for  the  junior  attorneys  and paralegals  involved  in  this  matter,  the  review  process  will  cost  in  excess  of $300,000.  In any event, the review process cannot be completed by August 31, 2007 (the current deadline) unless the search terms are narrowed.

8.     Putnam  explained  this  problem  to  Ms.  Svensson  and  asked  Ms. Svensson to narrow her search terms.  See Exhibit K.  Ms. Svensson has replied, authorizing  Putnam  to  delete  four  search  terms  (and  their  variations)  from  the database, "as they have references … to more than 10,000 [hits]."  See Exhibit L. Yet removing these four search terms from the list of 127 search terms does not materially reduce the size of the database or the search burden.  In fact, removing these four words and their variations from the database still results in a database of over 109,733 records. (Putnam's vendor is still attempting to determine the exact size of the resulting database).  This is because the deleted terms are commonly used, and thus also appear in documents that contain another search term.

A/72099390.1/0398860-0000312913

9.     The only way to noticeably reduce the size of the database is to reduce significantly the number of search terms, and to use the terms in Boolean searches which seek documents that have *more than one word* in the same sentence, paragraph, or document.  (For example, using "Steve" or "promotion" alone might each hit 500 or 5000 documents but using "Steve" *in the same sentence* as "promotion" might turn up 10.)   The overbroad and time consumption review process generated by the search terms is demonstrated, for example, by the kinds of emails which turn up even when "Svensson" is run.  Among the emails identified for review are items such as Ms. Svensson's participation in a fantasy football league. The absence of Boolean searches consume lawyer time in reviewing this kind of material.  Putnam has suggested Boolean searches to Ms. Svensson repeatedly, but she continues to refuse to use them.   Because a database of over 109,733 records will still require over 900 hours of review time, Ms. Svensson's "concession" does not change Putnam's need for relief.

10.     Further, late on Friday, July 20, 2007, Ms. Svensson added to the already overwhelming search burden by requesting that two more names be added to the original search database.  See Exhibit M.  These additions will require a second search by the vendor, incur additional costs, and increase the number of records to be searched.  Putnam has filed this motion as an emergency motion given the August 31 deadline for completing the e-discovery.

11.     Finally, notwithstanding the Court's April 10 Order, Ms. Svensson has yet to pay the costs incurred to date in conducting this second wave of e-discovery.

A/72099390.1/0398860-0000312913

She has also indicated that she does not intend to pay the enormous cost associated with searching through the voluminous records generated by her overly broad search terms to locate responsive documents, despite the fact that, had she made a request, for example, for any **paper** document containing any variation of the word "approve" the Court would likely not have permitted such a non-specific search. Given that Ms. Svensson quintupled (to 127) her search terms after the Court ordered her to pay Putnam's e-discovery costs in part due to the broad nature of her original 27 search terms, Putnam requests that this Court clarify that Ms. Svensson must reimburse Putnam for **all** search and review costs.

## <u>Request for Relief</u>

WHEREFORE, Putnam respectfully requests that this Court:

1. Clarify its April 10, 2007 Order and expressly require Ms. Svensson to bear all costs associated with the electronic search and the review of the documents generated by the search;

2. Order Ms. Svensson to refine and narrow her search terms to a set focusing on the relevant employment actions at issue, and to implement Boolean searches;

3. Afford Putnam a reasonable time to complete the e-discovery after the search terms are narrowed;

4. Grant Putnam such other relief as is just.

**<u>Request for Oral Argument</u>**

Putnam hereby requests an oral argument on this motion.

**PUTNAM INVESTMENTS, LLC,**

By its attorneys,

<u>/s/ Joseph L. Kociubes, BBO #276360</u>
Joseph L. Kociubes, BBO #276360
Louis A. Rodriques, BBO #424720
Allyson E. Kurker, BBO #665231
Jennifer L. Holden, BBO #663467

BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
617.951.8000

Dated: July 23, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 23, 2007.

<u>/s/ Joseph L. Kociubes, BBO #276360</u>

- 7 -

A/72099390.1/0398860-0000312913

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
LISA SVENSSON,                  )
                                )
          Plaintiff,            )
                                )
     v.                         )  CIVIL ACTION NO. 04-12711-PBS
                                )
PUTNAM INVESTMENTS LLC, f/k/a   )
PUTNAM INVESTMENTS, INC. and    )
LAWRENCE J. LASSER,             )
                                )
          Defendants.           )
_____)
```

**ORDER**

April 10, 2007

Saris, U.S.D.J.

This is an employment discrimination action brought by plaintiff Lisa Svensson, an investment analyst, who alleges that defendant Putnam unfairly compensated, failed to promote, demoted, and terminated her because of her gender. Plaintiff objects to the orders of the magistrate judge entered on January 9, 2007 and January 17, 2007. The magistrate judge ruled on the motion to compel the production of documents for 15 of the 76 document requests, urging the parties to work out the rest. She also granted Putnam's motion to terminate discovery.

As background, discovery has been ongoing for three years, and the time period has been extended twice. It has been rancorous and contentious, necessitating lengthy hearings before the magistrate judge.

The parties do not agree about what matters are still in dispute, and the record is often confusing. Plaintiff contends that there are 91 comparators, a number which defendants did not dispute for discovery purposes only. Plaintiff has winnowed down the number of comparators for the different employment actions, and has filed multiple memoranda withdrawing or modifying many categories of document requests.

On February 15, 2007, I ruled I was not going to begin discovery again under the 2006 e-discovery amendments to the Federal Rules of Civil Procedure and would not require defendants to answer new interrogatories about the computer system. Defendants believe that I also ruled that production of e-documents was not required at all. I clarify that if an e-document is responsive to a document request, and retrievable with reasonable effort, it must be produced. Putnam must make reasonable efforts to find electronic documents through appropriate word searches with respect to the 10 decisionmakers and the comparators specified by plaintiff for the years 1999 to 2003 for each allegedly unlawful action.

Putnam argues that the word searches requested by plaintiff are too broad and expensive. Plaintiff disputes this contention and the parties' experts disagree on expense. The electronic discovery shall be paid for by plaintiff, but shall be reimbursable by defendants if plaintiff prevails. Plaintiff may

2

select the technical consultant to do the search if the amount
charged is less than defendant's consultant.  Alternatively
defendant may pay the difference between the expense if it wants
to use its own technical expert.  I find that plaintiff should
bear the expense as an initial matter because this is the second
document request, the word search is broad, and defendants have
already paid for one e-mail search.

With this background in mind, I rule as follows:

 Svensson Request No. 8: **ALLOWED**, including PDPRs.

 Svensson Request No. 15: **ALLOWED**.

 Svensson Request No. 16: **ALLOWED**

 Svensson Request No. 17: **ALLOWED**.

 Svensson Request No. 18: **ALLOWED**.

 Svensson Request No. 19:  **ALLOWED**.

 Svensson Request No. 28:  **DENIED** as defendants state the
documents have been produced.

 Svensson Request No. 29: **DENIED**, but defendants shall
produce its standard release.

 Svensson Request No. 30, 31: **DENIED** as none exists.

 Svensson Request No. 32: **ALLOWED**

 Svensson Request No. 33: **DENIED** unless the documents mention
plaintiff.

 Svensson Request No. 34: **DENIED**.

Svensson Request No. 36-37: <u>ALLOWED</u>.

Svensson Request No. 38: <u>ALLOWED</u>.

Svensson Request No. 39: <u>ALLOWED</u>.

Svensson Request No. 40: <u>ALLOWED</u>.

Svensson Request No. 43: <u>DENIED</u>.

Svensson Request No. 45-49: <u>ALLOWED</u> to the extent the documents reference plaintiff or the stocks she picked.

Svensson Request No. 50-54, 61, 75, 76: Defense counsel shall submit an affidavit supporting the claim of attorney-client privilege or protection under the work-product doctrine.

Svensson Request No. 56-60: <u>ALLOWED</u>.

Svensson Request No. 62: <u>DENIED</u>.

Svensson Request No. 63: <u>ALLOWED</u>.

Svensson Request No.65-69: <u>DENIED</u>.

Svensson Request No.70: <u>DENIED</u> as none exists.

Svensson Request No. 71-73: <u>ALLOWED</u>.

Svensson Request No. 74: <u>DENIED</u> except as related to performance evaluations and employment actions.  Private personal data need not be produced.

All supplementation shall be made in 60 days.  Within 30 days after production, plaintiff may take 7 hours of a deposition under Fed.R.Civ.P. 30(b)(6) regarding the new documents.  The

4

parties shall prepare an alternative briefing schedule consistent
with this timetable.


                                   /s/ Patti B. Saris
                                  PATTI B. SARIS
                                  United States District Judge

# EXHIBIT B

<u>Email Search Terms</u>

"Take out"

"Took out"

Make

Appoint

Elect

Issue*

Promot*

Move

Terminat*

Chang*

Downsiz*

Coverage

"Coverage loads"

"Make a change"

Credibility

Leader

Approv*

Recommend*

Nominat*

Fire*

Demot*

Separat*

Packag*

Role

Distinguish*

Recognize

"Push* back"

Pushback

EXHIBIT C

## Rodriques, Louis A.

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Tuesday, May 22, 2007 10:44 AM |
| **To:** | 'kevin f. moloney'; Kociubes, Joseph L.; KFM Home |
| **Cc:** | john k. weir; Kurker, Allyson E. |
| **Subject:** | RE: Svensson v Putnam |

Kevin:

In his last email to you Joe explained the general basis for the restoration cost of $4,125.  The details are as follows.  The email that needed to be restored from the backup tapes was located on three separate backup systems: Netbackup, Arcserve, and cc:Mail.  For all three backup systems, the media was recalled from storage and the data on the media was located and cataloged.  From that point, the email was archived and indexed into Putnam's Email Extender database.  The Netbackup system media, which consisted of email files from 2002 to the present, was processed to the email archive server and indexed into the Email Extender database.  The Arcserve system media, which consisted of email files for the years 2000 and 2001, was restored from approximately 40 Arcserve tapes, processed to the email archive server and indexed into the Email Extender database.  The cc:Mail system, which consisted of email files for the year 1999, had two sets of media.  The first set of media is called  cc:Mail hub Post Office.  Once located, the email files were merged into an Arcserve database in an isolated environment and indexed into the Email Extender database.  Each merger took approximately 6-8 hours to complete.  The second set of media is called  cc:Mail databases.  Once located, the media was migrated to an isolated Lotus Notes server.  The media was then exported to tape and processed to the email archive server.  The restored email files were then indexed into the Email Extender database.  The work was performed by Gardner Resources, a vendor that Putnam uses to perform work of this type from time to time.

Before turning to the remaining questions in your email, let me explain the nature and status of the database.  What Putnam has done so far is to ensure that all of the emails for the individuals in question have been restored from the back-up tapes to Putnam's Lotus Notes Email Extender database.  This required a restoration from some 205 different back-up tapes.  It is important to note, however, that these 205 tapes contained only a fraction of the email universe in question.  That is because a number of these individuals had had substantial portions of their emails restored previously in connection with other matters.  Had Putnam needed to restore all emails for all 10 individuals for the entire period in question, Putnam would have been required the review a substantial number of additional tapes.  Obviously, the $4,125 charge includes only the cost of restoring those tapes for the time period for which those individuals had not already had their email restored.

Now that the emails have been restored, they can be searched.  There are two ways to do that.  First, they can be searched internally (at Putnam that is) using the Email Extender software.  There is no way to tell the volume of the email universe to be searched, however, because all of the emails that have been restored for this and any other matter now exist on the same server in one large mass of emails.  That is simply how Email Extender works.  Short of running a search that is intended to retrieve all emails to and from each individual for the entire time period in question, there is no way to know the size of the 10 email accounts for the years in question.  The way we would proceed with an internal search would be that a Bingham paralegal would take the search terms that you provide and would run the searches on the Email Extender system.  The results would be reviewed for

responsiveness, privilege and the like, and would be produced. The cost would be the cost of the paralegal's time in running these searches, and lawyers' time reviewing the emails, etc. There is no way to know the cost of that search since we still have no idea what you propose as search terms.

There is a second option. We could run a search that is intended to retrieve all emails to and from each individual for the entire time period in question, regardless of content, and download all of those emails from the Email Extender system to a hard drive. We could then deliver that drive to a vendor hired by Putnam. The vendor could then run the searches and deliver the results to Bingham for review and production. This option will allow us to learn the actual size of the 10 email universes in question, but only at the additional cost of doing the download, which needn't be done to run the searches on the Email Extender system. The cost associated with this approach would be (a) the cost of the download (a Bingham paralegal would do the download), (b) the vendor's cost in running the searches, and (c) Bingham's charges in connection with the review and production. There is no way to know what we are talking about in terms of cost without knowing the size of the download and the search terms.

In short, the first option eliminates the cost of the download (which is not necessary to doing the searches on Email Extender), substitutes the cost of a Bingham paralegal for the cost of a vendor, but offers no information about the actual size of the 10 email universes being searched. The second option will allow us to determine the overall size of the 10 email universes to be searched, but only at the additional cost of doing the download. If it is important to you to know the size of the database to be searched in order to decide what searches you want to run, I would suggest that we perform the download, determine the size of the resulting universe of emails, and then deliver the hard drive to a vendor for an estimate of the cost of a search. It should not take more than a couple of days of a paralegal's time to run the download (which may have to take place over several days given the demands on the system). Let me know how you would like to proceed

Lou


Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial: 617-951-8340
Direct Fax: 617-345-5050


*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

# EXHIBIT D

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Thursday, May 24, 2007 2:46 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** john k. weir
**Subject:** ... In order to fulfill the requirements that Judge Saris....

Joe and Lou:

I write in response to Lou's 05 22 07 e-mail. In order to fulfill the requirements that Judge Saris set down concerning cost shifting if there is to be a search of the e-mails of the ten decision-makers, and to estimate in any reliable way the cost of such an actual search, we need to be advised, as I have mentioned in prior communications, of the total amount of GBs of data that will have to be searched.

In order to determine the number of GBs, which is necessary for obtaining reliable and competitive vendor costs for the actual search (we are reviewing our original search terms for revision and refinement purposes), the e-mails of the ten decision-makers, on a to, from, cc and bcc basis, should be retrieved from all of the other e-mail data, and downloaded to a hard drive. However, before requesting you to do this, we need to know how many hours and at what hourly rate you estimate the cost of a paralegal's time would be to retrieve and download to a hard drive the e-mails of the ten decision-makers. We see this process as basically a machine endeavor not requiring much in the way of people time.

Once that downloading has been accomplished, both sides will be able to know the amount of GBs involved.

Moving to the other aspect of your e-mail, that Putnam intends to try to saddle plaintiff with Putnam's costs for your firm's review and analysis of the e-mails that the actual search process brings to light for attorney-client privilege and other reasons, we reject that suggestion as it is not based upon relevant case law (see the memorandum attached); and the April 10 order of the court states nothing to the contrary.

Please provide the information requested in the second paragraph, above.

Thank you.

/s/ *Kevin F. Moloney*

BARRON
&STADFELD PC
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

# EXHIBIT E

**Rodriques, Louis A.**

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Friday, May 25, 2007 2:26 PM |
| **To:** | 'kevin f. moloney'; Kociubes, Joseph L.; kfm @ h |
| **Cc:** | john k. weir; Kurker, Allyson E. |
| **Subject:** | RE: ... In order to fulfill the requirements that Judge Saris.... |

Kevin:

In the interest of moving this along cost-effectively, Putnam is prepared to do the download internally. Given the size of the universe to be searched and downloaded, and competing demands on the system and the personnel involved, Putnam expects that the download will be accomplished over a several day period. Putnam is closed Monday, but nonetheless hopes to be able to accomplish this next week. I will keep you informed of the progress as I learn of it.

Lou


Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050


*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Thursday, May 24, 2007 2:46 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** john k. weir
**Subject:** ... In order to fulfill the requirements that Judge Saris....

Joe and Lou:

I write in response to Lou's 05 22 07 e-mail. In order to fulfill the requirements that Judge Saris set down concerning cost shifting if there is to be a search of the e-mails of the

ten decision-makers, and to estimate in any reliable way the cost of such an actual search, we need to be advised, as I have mentioned in prior communications, of the total amount of GBs of data that will have to be searched.

In order to determine the number of GBs, which is necessary for obtaining reliable and competitive vendor costs for the actual search (we are reviewing our original search terms for revision and refinement purposes), the e-mails of the ten decision-makers, on a to, from, cc and bcc basis, should be retrieved from all of the other e-mail data, and downloaded to a hard drive. However, before requesting you to do this, we need to know how many hours and at what hourly rate you estimate the cost of a paralegal's time would be to retrieve and download to a hard drive the e-mails of the ten decision-makers. We see this process as basically a machine endeavor not requiring much in the way of people time.

Once that downloading has been accomplished, both sides will be able to know the amount of GBs involved.

Moving to the other aspect of your e-mail, that Putnam intends to try to saddle plaintiff with Putnam's costs for your firm's review and analysis of the e-mails that the actual search process brings to light for attorney-client privilege and other reasons, we reject that suggestion as it is not based upon relevant case law (see the memorandum attached); and the April 10 order of the court states nothing to the contrary.

Please provide the information requested in the second paragraph, above.

Thank you.

/s/ *Kevin F. Moloney*

BARRON & STADFELD P.C.

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

# EXHIBIT F

**From:** Rodriques, Louis A.
**Sent:** Thursday, June 14, 2007 3:43 PM
**To:** 'moloneys'; Kociubes, Joseph L.; kfm @ b&s
**Cc:** john k. weir; Kurker, Allyson E.
**Subject:** Svensson Electronic Discovery

Kevin:

The download is completed and the resulting file has been transferred to an external hard drive. The file is approximately 22GB in size.

The next step is to process the emails to Concordance so that they can be searched. Bingham uses a large national vendor to process searches such as this, from which we get very good pricing. I am told that there are two types of conversions that can be done. The first, called "native file extraction" costs approximately $850 per GB. There are limits to what can be done when producing the resulting emails, however. For example, they cannot be batch printed, bates numbered or redacted without converted each page to a TIFF file at $.04 per page. That costs adds up quickly with large productions. The second form of conversion is a full "TIFF conversion" from the outset, which eliminates some of the later cost. The TIFF conversion route costs approximately $1500 per GB.

Our IT people tell us that full TIFF conversions generally prove to be more economical when a significant number of documents are to be produced, and recommend that we go that route here. Since the conversion process is an expense that Lisa has to bear, we wanted to get your agreement as to both the pricing ($1500 per GB) and the conversion method (full TIFF). Please advise as soon as possible so that we can get the hard drive to our vendor and proceed with the conversion.

Apart from the conversion cost, there is still the cost of the searches themselves of course. To get an estimate of that cost, we still need your search terms. Please advise as soon as possible so that we can get that information to our vendor as well.

Finally, having not heard from you in response to my June 11 and June 13 requests by voice mail and email that we discuss an extension of the deadline set in the April 10 Order, we will just go ahead and file a motion of our own.

I look forward to hearing from you.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial: 617-951-8340
Direct Fax: 617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

7/20/2007

# EXHIBIT G

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, June 29, 2007 5:29 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Subject:** As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you...

Lou:

    As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you will be having the previously identified vendor process and search the native e-mail files. You will then receive the native e-mail files in Concordance format and then you plan on a Putnam review. Following the review, the documents to be produced will then be reconstituted into a native NSF file and delivered to us on a CD/DVD/Hard Drive as size dictates. We also expect to receive a log for any complete or partial redactions for privilege, work product, etc.; and we reserve our right to return to court if we determine that any improper redactions or withholdings have been made.

    Attached are our search terms.

    This e-mail does not waive or amend our position that plaintiff is not liable for any of Putnam's costs for its reviews of any kind and that Svensson's responsibility is capped at the $7,850 figure we received from TLC and the $4,125 that was mentioned in the May 18, 2007, e-mail.

/s/ *Kevin F. Moloney*

BARRON
& STADFELD pc
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

## e-mail search terms 2007 06 29

| | |
|---|---|
| 1.  Abrasive | 41.  Transfer* |
| 2.  "Acting Egregiously" | 42.  Volatile |
| | 43.  Allansmith |
| 3.  Aggressive | 44.  Bogar |
| 4.  Approv* | 45.  Boselli |
| 5.  Assertive | 46.  Bukovac |
| 6.  Attitud* | 47.  Byrne |
| 7.  Change* | 48.  Cervone |
| 8.  "Coverage load*" | 49.  Clark |
| | 50.  Cotner |
| 9.  Credibility | 51.  DeChristopher |
| 10.  Demot* | 52.  Dexter |
| 11.  Domin* | 53.  Drew |
| 12.  Disrupt* | 54.  Eigerman |
| 13.  Distinguish* | 55.  England |
| 14.  Downsiz* | 56.  Farrell |
| 15.  Emot* | 57.  Gerber |
| 16.  Fire* | 58.  Gillis |
| 17.  Gifted | 59.  Gorman |
| 18.  "Go Getter" | 60.  Hadden |
| 19.  "Hard Charging" | 61.  Haslett |
| | 62.  Joseph |
| 20.  "Highly Regarded" | 63.  Kalus-Bystricky |
| 21.  Invisible | 64.  Kamshad |
| 22.  Issue* | 65.  King |
| 23.  Leader | 66.  Korn |
| 24.  "Management style" | 67.  Kuenster |
| | 68.  Lindsey |
| 25.  "Money Maker" | 69.  Lannum |
| 26.  Move* | 70.  Leichter |
| 27.  Nominat* | 71.  Lode |
| 28.  Package* | 72.  MacElwee-Jones |
| 29.  Promot* | 73.  McCormack |
| 30.  "Push* back" | 74.  McMullen |
| 31.  Recogni* | 75.  Makino |
| 32.  Recommend* | 76.  Malak |
| 33.  Repetitive | 77.  Marrkand |
| 34.  Role* | 78.  Mehta |
| 35.  Separat* | 79.  Melhuish |
| 36.  "Stock Picker" | 80.  Miller |
| 37.  "Take out" | 81.  Mockard |
| 38.  Talent* | 82.  Moore |
| 39.  Terminat* | 83.  Morris |
| 40.  "Took out" | 84.  Mufson |

85.  Mullin
86.  Norchi
87.  O'Malley
88.  Peters
89.  Santos
90.  Scott
91.  Sellitto
92.  Sievert
93.  Smith
94.  Sorenson
95.  Spatz
96.  Stack
97.  Stairs
98.  Swift
99.  Thomsen
100. Warren
101. Weiss
102. Wetlaufer
103. Wheeler
104. Williams
105. Yogg
106. RJ

107. Josh
108. Rich
109. Beth
110. Steve
111. Debb*
112. Tom
113. Joe
114. Dave
115. Jeff
116. Cole
117. Geir
118. Shag*
119. Sandy
120. Nick
121. Dan
122. Mike
123. Terry
124. Chris
125. Tino
126. Mike
127. Manny

[404100.1]

EXHIBIT H

## Holden, Jennifer L.

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Monday, July 02, 2007 2:11 PM |
| **To:** | 'kevin f. moloney'; Kociubes, Joseph L.; kfm @ h |
| **Cc:** | Kurker, Allyson E.; Holden, Jennifer L. |
| **Subject:** | RE: As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you... |

Kevin:

With respect to the technical aspects of the first two sentences of the first paragraph of your email, your understanding is correct. We will also produce a privilege log. I want to reiterate what you and I spoke about in our call last week - namely, that, because we will be producing native NSF files, once we produce the files to you a vendor will have to reconstitute the files into Concordance-readable format. That cost is over and above the $7,850 estimate that you received from TLC, since TLC's figure is just the initial cost to prepare the files for searching. If that is not your understanding, let me know.

We have reviewed your search terms and, frankly, are stunned. In her April 10 Order, Judge Saris noted that your original 27 search terms were broad, which was part of the reason for her Order that Lisa pay the search costs. You've now added 100 new terms, bringing the total to 127. When you add variations on those terms, as your list contemplates, the number is higher still. Many of the terms are so broad ("move", "issue") that they will appear in a huge number of documents that we would both agree are absolutely irrelevant and non-responsive. (How may times do you think that a mutual fund house refers to a stock "issue" for example?) You have also not cured that problem by giving us Boolean searches that might narrow the resulting hits (e.g., X within 10 words of Y). Finally, you gave us a huge list of names, but have not indicated that you intend to have us search only for emails where those names appear in the text of the email (as opposed to the to, from, etc. fields), which means that we will "hit" every company-wide or division-wide email, for example, regardless of its subject matter. The result is almost certainly that we will "hit" and be be forced to review the bulk of the 22 GB.

Given the above, we do not agree that Lisa's costs are limited to the numbers referenced in the last paragraph of your email. As I explained in our prior discussions, if we were doing a paper search, we would never be required to look for, review and produce every document at Putnam that contains the word "make". The result is no different with email searches, especially since Judge's Saris' Order clearly states that Lisa must pay for the e-discovery costs in part because, in her words, "the word search is broad" - a phrase she used when your list was 27 words long, not 127+. If, as is evident will be the case, this search returns a huge number of hits, we will ask Judge Saris to require payment of our review costs attributable to the overbroad search terms.

If you would like to review and truncate your list of search terms, please advise ASAP. Otherwise, we will proceed with the reconstitution of the NSF files, the review and the searching.

Lou


Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

---

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please*

*notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, June 29, 2007 5:29 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Subject:** As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you...

Lou:

As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you will be having the previously identified vendor process and search the native e-mail files. You will then receive the native e-mail files in Concordance format and then you plan on a Putnam review. Following the review, the documents to be produced will then be reconstituted into a native NSF file and delivered to us on a CD/DVD/Hard Drive as size dictates. We also expect to receive a log for any complete or partial redactions for privilege, work product, etc.; and we reserve our right to return to court if we determine that any improper redactions or withholdings have been made.

Attached are our search terms.

This e-mail does not waive or amend our position that plaintiff is not liable for any of Putnam's costs for its reviews of any kind and that Svensson's responsibility is capped at the $7,850 figure we received from TLC and the $4,125 that was mentioned in the May 18, 2007, e-mail.

/s/ *Kevin F. Moloney*

BARRON
& STADFELD PC
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

EXHIBIT I

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Thursday, July 05, 2007 11:13 AM
**To:** Rodriques, Louis A.; Kociubes, Joseph L.; KFM Home
**Cc:** Kurker, Allyson E.; Holden, Jennifer L.
**Subject:** RE: As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you...

Lou:

    We are content at least for the present with the search terms. We will consider revisions based upon our analysis of a hit list.

/s/ *Kevin F. Moloney*



100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

---

**From:** Rodriques, Louis A. [mailto:louis.rodriques@bingham.com]
**Sent:** Monday, July 02, 2007 2:11 PM
**To:** kevin f. moloney; Kociubes, Joseph L.; KFM Home
**Cc:** Kurker, Allyson E.; Holden, Jennifer L.
**Subject:** RE: As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you...

Kevin:

With respect to the technical aspects of the first two sentences of the first paragraph of your email, your understanding is correct. We will also produce a privilege log. I want to reiterate what you and I spoke about in our call last week - namely, that, because we will be producing native NSF files, once we produce the files to you a vendor will have to reconstitute the files into Concordance-readable format. That cost is over and above the $7,850 estimate that you received from TLC, since TLC's figure is just the initial cost to prepare the files for searching. If that is not your understanding, let me know.

We have reviewed your search terms and, frankly, are stunned. In her April 10 Order, Judge Saris noted that your original 27 search terms were broad, which was part of the reason for her Order that Lisa pay the search costs. You've now added 100 new terms, bringing the total to 127. When you add variations on those terms, as your list contemplates, the number is higher still. Many of the terms are so broad ("move", "issue") that they will appear in a huge number of documents that we would both agree are absolutely irrelevant and non-responsive. (How may times do you think that a mutual fund house refers to a stock "issue" for example?) You have also not

cured that problem by giving us Boolean searches that might narrow the resulting hits (e.g., X within 10 words of Y). Finally, you gave us a huge list of names, but have not indicated that you intend to have us search only for emails where those names appear in the text of the email (as opposed to the to, from, etc. fields), which means that we will "hit" every company-wide or division-wide email, for example, regardless of its subject matter. The result is almost certainly that we will "hit" and be be forced to review the bulk of the 22 GB.

Given the above, we do not agree that Lisa's costs are limited to the numbers referenced in the last paragraph of your email. As I explained in our prior discussions, if we were doing a paper search, we would never be required to look for, review and produce every document at Putnam that contains the word "make". The result is no different with email searches, especially since Judge's Saris' Order clearly states that Lisa must pay for the e-discovery costs in part because, in her words, "the word search is broad" - a phrase she used when your list was 27 words long, not 127+. If, as is evident will be the case, this search returns a huge number of hits, we will ask Judge Saris to require payment of our review costs attributable to the overbroad search terms.

If you would like to review and truncate your list of search terms, please advise ASAP. Otherwise, we will proceed with the reconstitution of the NSF files, the review and the searching.

Lou


Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050


*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, June 29, 2007 5:29 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Subject:** As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you...

Lou:

As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you will be having the previously identified vendor process and search the native e-mail files. You will then receive the native e-mail files in Concordance format and then you plan on a Putnam review. Following the review, the documents to be produced will then be reconstituted into a native NSF file and delivered to us on a CD/DVD/Hard Drive as size dictates. We also expect to receive a log for any complete or partial redactions for privilege, work product, etc.;

and we reserve our right to return to court if we determine that any improper redactions or withholdings have been made.

   Attached are our search terms.

   This e-mail does not waive or amend our position that plaintiff is not liable for any of Putnam's costs for its reviews of any kind and that Svensson's responsibility is capped at the $7,850 figure we received from TLC and the $4,125 that was mentioned in the May 18, 2007, e-mail.

/s/ *Kevin F. Moloney*


BARRON
&STADFELD PC
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com


================================================================================
Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
================================================================================

EXHIBIT J

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
|---|---|---|---|
| 00000 | 150,153 | 150,153 | <Entire Database> |
| 00001 | 28 | 26 | Abrasive |
| 00002 | 0 | 0 | Acting Egregiously |
| 00003 | 10,148 | 4,326 | Aggressive |
| 00004 | 22,778 | 8,447 | Approv* |
| 00005 | 38 | 33 | Assertive |
| 00006 | 1,490 | 639 | Attitud* |
| 00007 | 83,575 | 22,680 | Change* |
| 00008 | 68 | 34 | Coverage load* |
| 00009 | 693 | 600 | Credibility |
| 00010 | 96 | 65 | Demot* |
| 00011 | 4,774 | 2,555 | Domin* |
| 00012 | 1,035 | 743 | Disrupt* |
| 00013 | 976 | 772 | Distinguish* |
| 00014 | 293 | 261 | Downsiz* |
| 00015 | 465 | 357 | Emot* |
| 00016 | 4,023 | 2,020 | Fire* |
| 00017 | 28 | 25 | Gifted |
| 00018 | 2 | 1 | Go Getter |
| 00019 | 10 | 5 | Hard Charging |
| 00020 | 214 | 91 | Highly Regarded |
| 00021 | 74 | 56 | Invisible |
| 00022 | 68,837 | 22,568 | Issue* |
| 00023 | 5,428 | 2,259 | Leader |
| 00024 | 232 | 106 | Management style |
| 00025 | 6 | 2 | Money Maker |
| 00026 | 29,296 | 12,550 | Move* |
| 00027 | 2,187 | 702 | Nominat* |
| 00028 | 5,283 | 2,436 | Package* |
| 00029 | 4,938 | 2,581 | Promot* |
| 00030 | 746 | 334 | Push* back |
| 00031 | 6,550 | 3,583 | Recogni* |
| 00032 | 26,519 | 10,457 | Recommend* |
| 00033 | 101 | 62 | Repetitive |
| 00034 | 12,437 | 6,426 | Role* |
| 00035 | 12,305 | 6,946 | Separat* |
| 00036 | 176 | 64 | Stock Picker |
| 00037 | 420 | 179 | Take out |
| 00038 | 2,778 | 1,631 | Talent* |
| 00039 | 24,572 | 5,075 | Terminat* |
| 00040 | 158 | 77 | Took out |
| 00041 | 15,386 | 5,466 | Transfer* |
| 00042 | 2,929 | 1,628 | Volatile |
| 00043 | 2,029 | 484 | Allansmith |
| 00044 | 3,330 | 560 | Bogar |
| 00045 | 2,757 | 663 | Boselli |
| 00046 | 3,248 | 670 | Bukovac |
| 00047 | 2,921 | 1,318 | Byrne |
| 00048 | 3,502 | 622 | Cervone |
| 00049 | 3,735 | 1,709 | Clark |
| 00050 | 6,333 | 1,933 | Cotner |
| 00051 | 2,748 | 476 | DeChristopher |
| 00052 | 2,328 | 1,063 | Dexter |
| 00053 | 3,597 | 2,130 | Drew |
| 00054 | 2,590 | 1,076 | Eigerman |
| 00055 | 10,732 | 2,937 | England |
| 00056 | 1,534 | 443 | Farrell |
| 00057 | 1,212 | 524 | Gerber |
| 00058 | 6,229 | 2,269 | Gillis |

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
| --- | --- | --- | --- |
| 00058 | 6,229 | 2,269 | Gillis |
| 00059 | 4,755 | 2,809 | Gorman |
| 00060 | 1,193 | 468 | Hadden |
| 00061 | 2,707 | 1,471 | Haslett |
| 00062 | 19,538 | 9,462 | Joseph |
| 00063 | 0 | 0 | Kalus-Bystricky |
| 00064 | 5,512 | 2,282 | Kanshad |
| 00065 | 6,737 | 3,171 | King |
| 00066 | 2,229 | 361 | Korn |
| 00067 | 157 | 60 | Kuenster |
| 00068 | 6,723 | 3,340 | Lindsey |
| 00069 | 1,870 | 639 | Lannum |
| 00070 | 1,319 | 618 | Leichter |
| 00071 | 3,659 | 1,145 | Lode |
| 00072 | 0 | 0 | MacElwee-Jones |
| 00073 | 910 | 358 | McCormack |
| 00074 | 1,169 | 839 | McMullen |
| 00075 | 1,023 | 722 | Makino |
| 00076 | 3,461 | 943 | Malak |
| 00077 | 1,717 | 1,100 | Markland |
| 00078 | 1,523 | 465 | Mehta |
| 00079 | 1,415 | 546 | Melhuish |
| 00080 | 56,427 | 38,936 | Miller |
| 00081 | 1,321 | 617 | Mockard |
| 00082 | 4,544 | 1,878 | Moore |
| 00083 | 4,506 | 1,827 | Morris |
| 00084 | 4,558 | 1,798 | Mufson |
| 00085 | 4,591 | 2,787 | Mullin |
| 00086 | 914 | 351 | Norchi |
| 00087 | 1,240 | 267 | O'Malley |
| 00088 | 3,571 | 1,999 | Peters |
| 00089 | 3,969 | 1,075 | Santos |
| 00090 | 35,759 | 20,765 | Scott |
| 00091 | 3,179 | 1,003 | Sellitto |
| 00092 | 2,670 | 491 | Sievert |
| 00093 | 43,897 | 8,120 | Smith |
| 00094 | 1,624 | 1,533 | Sorenson |
| 00095 | 2,159 | 355 | Spatz |
| 00096 | 1,411 | 903 | Stack |
| 00097 | 2,833 | 1,031 | Stairs |
| 00098 | 3,238 | 1,801 | Swift |
| 00099 | 1,193 | 803 | Thomsen |
| 00100 | 7,909 | 3,791 | Warren |
| 00101 | 5,623 | 1,485 | Weiss |
| 00102 | 6,211 | 2,698 | Wetlaufer |
| 00103 | 504 | 260 | Wheeler |
| 00104 | 7,278 | 2,936 | Williams |
| 00105 | 5,641 | 760 | Yogg |
| 00106 | 2,957 | 832 | RJ |
| 00107 | 23,752 | 10,768 | Josh |
| 00108 | 9,468 | 5,671 | Rich |
| 00109 | 21,853 | 11,099 | Beth |
| 00110 | 99,551 | 43,104 | Steve |
| 00111 | 14,375 | 9,217 | Debb* |
| 00112 | 26,192 | 13,380 | Tom |
| 00113 | 31,876 | 15,365 | Joe |
| 00114 | 8,251 | 4,194 | Dave |
| 00115 | 46,575 | 19,795 | Jeff |
| 00116 | 3,974 | 2,154 | Cole |

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
|---|---|---|---|
| 00077 | 1,717 | 1,100 | Marrkand |
| 00078 | 1,523 | 465 | Mehta |
| 00079 | 1,415 | 546 | Melhuish |
| 00080 | 56,927 | 38,936 | Miller |
| 00081 | 1,321 | 617 | Mockard |
| 00082 | 4,544 | 1,878 | Moore |
| 00083 | 4,506 | 1,827 | Morris |
| 00084 | 4,558 | 1,798 | Mufson |
| 00085 | 4,591 | 2,787 | Mullin |
| 00086 | 914 | 351 | Norchi |
| 00087 | 1,240 | 267 | O'Malley |
| 00088 | 3,571 | 1,999 | Peters |
| 00089 | 3,969 | 1,075 | Santos |
| 00090 | 35,759 | 20,765 | Scott |
| 00091 | 3,179 | 1,003 | Sellito |
| 00092 | 2,670 | 491 | Sievert |
| 00093 | 43,897 | 8,120 | Smith |
| 00094 | 1,624 | 1,533 | Sorenson |
| 00095 | 2,159 | 355 | Spatz |
| 00096 | 1,411 | 903 | Stack |
| 00097 | 2,833 | 1,031 | Stairs |
| 00098 | 3,238 | 1,801 | Swift |
| 00099 | 1,193 | 803 | Thomsen |
| 00100 | 7,909 | 3,791 | Warren |
| 00101 | 5,623 | 1,485 | Weiss |
| 00102 | 6,211 | 2,698 | Wetlaufer |
| 00103 | 504 | 260 | Wheeler |
| 00104 | 7,278 | 2,936 | Williams |
| 00105 | 5,641 | 760 | Yogg |
| 00106 | 2,957 | 832 | RJ |
| 00107 | 23,752 | 10,768 | Josh |
| 00108 | 9,468 | 5,671 | Rich |
| 00109 | 21,853 | 11,099 | Beth |
| 00110 | 99,551 | 43,104 | Steve |
| 00111 | 14,375 | 9,217 | Debb* |
| 00112 | 26,192 | 13,380 | Tom |
| 00113 | 31,876 | 15,365 | Joe |
| 00114 | 8,251 | 4,194 | Dave |
| 00115 | 46,575 | 19,795 | Jeff |
| 00116 | 3,974 | 2,154 | Cole |
| 00117 | 2,712 | 1,900 | Geir |
| 00118 | 305 | 199 | Shag* |
| 00119 | 20,673 | 12,250 | Sandy |
| 00120 | 4,169 | 2,223 | Nick |
| 00121 | 79,387 | 25,489 | Dan |
| 00122 | 26,348 | 12,773 | Mike |
| 00123 | 2,702 | 1,158 | Terry |
| 00124 | 30,635 | 13,539 | Chris |
| 00125 | 5,116 | 2,255 | Tino |
| 00126 | 26,348 | 12,773 | Mike |
| 00127 | 6,854 | 4,151 | Manny |
| 00128 | 130,734 | 32,385 | 1 Or 2 Or 3 Or 4 Or 5 Or 6 Or 7 Or 8 Or 9 Or 10 Or 11 Or 12 Or 13 Or 14 Or 15 Or 16 Or 17 Or 18 Or 19 Or 20 |
| 00129 | 203,043 | 44,615 | 21 Or 22 Or 23 Or 24 Or 25 Or 26 Or 27 Or 28 Or 29 Or 30 Or 31 Or 32 Or 33 Or 34 Or 35 Or 36 Or 37 Or 38 Or 39 Or 40 |
| 00130 | 83,088 | 19,268 | 41 Or 42 Or 43 Or 44 Or 45 Or 46 Or 47 Or 48 Or 49 Or 50 Or 51 Or 52 Or 53 Or 54 Or 55 Or 56 Or 57 Or 58 Or 59 Or 60 |
| 00131 | 118,096 | 48,636 | 61 Or 62 Or 63 Or 64 Or 65 Or 66 Or 67 Or 68 Or 69 Or 70 Or 71 Or 72 Or 73 Or 74 Or 75 Or 76 Or 77 Or 78 Or 79 Or 80 |
| 00132 | 135,086 | 33,433 | 81 Or 82 Or 83 Or 84 Or 85 Or 86 Or 87 Or 88 Or 89 Or 90 Or 91 Or 92 Or 93 Or 94 Or 95 Or 96 Or 97 Or 98 Or 99 Or 100 |
| 00133 | 342,020 | 74,786 | 101 Or 102 Or 103 Or 104 Or 105 Or 106 Or 107 Or 108 Or 109 Or 110 Or 111 Or 112 Or 113 Or 114 Or 115 Or 116 Or 117 Or 118 Or 119 Or 120 |
| 00134 | 1,163,109 | 116,034 | 121 Or 122 Or 123 Or 124 Or 125 Or 126 Or 127 Or 128 Or 129 Or 130 Or 131 Or 132 Or 133 |
| 00135 | 126,551 | 126,551 | *** FIND EXTENDED HITS *** |

# EXHIBIT K

**Holden, Jennifer L.**

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Thursday, July 19, 2007 8:55 AM |
| **To:** | Kociubes, Joseph L.; Kurker, Allyson E.; Holden, Jennifer L. |
| **Subject:** | A possible email to Moloney re e-discovery |

Kevin:

As I mentioned in my last e-discovery email update, your 127 search terms have "hit" 126,551 records. This is an enormous number and says nothing about the page size of each record. Even assuming, optimistically, that it takes only 30 seconds to review each record, we are looking at over 1265 hours of review time. Putting aside the enormous cost of that review - for which we intend to seek reimbursement given the huge number of inappropriate search terms - it will not be possible to get this done in any reasonable time frame unless we cut down the volume of material to be reviewed.

In our exchanges prior to having the data processed, you indicated that, depending on hit results, you would consider additional screens designed to reduce the volume of material to be reviewed. We need those additional screens immediately. Otherwise, we will need to seek scheduling or other relief from Judge Saris.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

# EXHIBIT L

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, July 20, 2007 1:42 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** Jack Weir
**Subject:** We have reviewed the three attachments to your e-mail. you are aauthorized to ....

Lou:

   We have reviewed the three attachments to your e-mail. You are authorized to delete from the search terms the following:  "change*", "issue*", "move*" and "recommend*" as they have references in column 3 to more than 10,000.

/s/ *Kevin F. Moloney*

BARRON
& STADFELD PC
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

7/20/2007

# EXHIBIT M

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, July 20, 2007 10:38 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Subject:** There is a typo in the search terms. Please substitute ....

Lou:

There is a typo in the search terms. Please substitute MacElwee Jones and Jones for search, including hit list, purposes, MacElwee-Jones.

/s/ *Kevin F. Moloney*



100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com