UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA SVENSSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PUTNAM INVESTMENTS, LLC, | ) |
| and LAWRENCE LASSER., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

CIVIL ACTION
NO.  04-12711 - PBS

**PUTNAM'S STATUS REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S SEARCH TERMS AND PROPOSAL TO REVISE THOSE
TERMS AND THE SCHEDULING ORDER**

In accordance with the Court's Order of July 25, 2007, Defendant, Putnam

Investments, LLC ("Putnam"), submits this Report and Recommendation regarding

Plaintiff Lisa Svensson's proposed e-discovery search terms, together with a

proposal for revising those terms. Specifically, Putnam seeks to modify Plaintiff's

proposed search to (a) remove four common words from Plaintiff's list of 127 search

terms (Plaintiff previously expressed a willingness to delete those terms), (b)

remove first names from the list of names to be searched, (c) remove the asterisk (*)

from the front of each name to avoid retrieving email addresses, and (d) run the

proposed search so as to locate only those documents that contain words from

Plaintiff's proposed list of names and her proposed list of adjectives/verbs that

appear within five words of each other. Putnam further requests that the Court

order the parties to submit a proposed revised Scheduling Order within ten days of the Court's ruling on the scope of the e-discovery search, thereby enabling Putnam to determine the time necessary to conduct the search and produce responsive documents.  In support of this proposal, Putnam states the following:

1.     In its April 10 Order, this Court permitted Plaintiff to conduct a second wave of e-discovery; however, because the Court concluded that Plaintiff's then-proposed 27 search terms were broad, the Court ordered her to pay the costs of that e-discovery.  As a result, Putnam engaged in a multi-step process of restoring and processing a vast amount of electronic data and asked Plaintiff to submit her revised search terms.

2.     Rather than modify her list of 27 terms to narrow her list, or to use Boolean searches to minimize the number of documents "hit" by those terms, on June 29, 2007, Plaintiff submitted a new list of *127* search terms and informed Putnam that she wanted Putnam to determine how many documents contained *any one of* those 127 terms.  Putnam conducted that search and informed Plaintiff that 126,551 documents would have to be reviewed, which would require approximately 1,050 hours to review (assuming a review pace of 30 seconds a document, or 120 documents per hour).  Because Plaintiff was unwilling to consider narrowing her 127 terms, Putnam filed an Emergency Motion for a Protective Order on July 23, 2007.  See Docket, no. 183.  That same day, this Court ordered that "Svensson shall confer with Putnam to narrow the search," and that "[f]ailure to reach agreement means that the Court will determine reasonableness."  Id.

3.    On July 25, 2007, after Plaintiff sought an extension of time to respond to the Emergency Motion, this Court (Docket no. 185) gave Plaintiff until August 9, 2007 to submit "appropriate Boolean searches" to Putnam, or to file her opposition to Putnam's emergency motion. See Order, following Docket no. 185 (emphasis added).    Further, the Court gave Putnam until August 17, 2007 to "evaluate the effect of those searches" and "propose an e-discovery schedule to the Court." Id. This status report responds to that Order.

4.    On August 8, 2007, Plaintiff sent Putnam a new list of proposed search terms.  See Exhibit A.  The search terms divided Plaintiff's original terms into two lists, one that contained 47 adjectives and verbs and their variations ("List 1"), and a second comprised of 87 first and last names ("List 2").  See Id.  Plaintiff indicated that she wanted Putnam to produce any responsive document that contains a word on both List 1 and List 2.  Putnam has determined that this search would require review of 75,235 documents, and would require approximately 625 review hours (at a review rate of 30 seconds per document).  See Exhibit B, which is a screen snapshot listing the number of documents that contain each of Plaintiff's proposed terms.

5.    A variety of factors appear to be causing this high number of hits:

(i)  Plaintiff has increased her absolute number of search terms from 27 to two lists that consist of 87 first or last names, and any variation of one of 47 adjectives and verbs.

- 3 -

(ii)  Many of the terms are in common usage, especially at a mutual fund house.  Words such as "issue", "approve", "change", "recommend", "volatility", "move", and others on List 1 occur frequently given the nature of Putnam's business.  See Exhibit A, List 1.

(iii)  Plaintiff has included a significant number of common names in her proposed list, such as "Steve", "Mike", "Dan", "Miller", "Scott", etc. (See Exhibit A, List 2.).  When these common names are searched, the resulting documents include emails to or from *every* Steve, Mike, Dan, Scott, and Miller in the database – not just those particular people Plaintiff thinks somehow are relevant.   For example, "Steve" appears in 48,000 documents, Scott in 47,000 and Miller in 44,000.  See Exhibit B.

(iv)  Plaintiff proposes using a search format with an asterisk (*) before and after each name (see Exhibit A, List 2).  This format will return any document containing any email address that includes that name (whether in the "to", "from", "cc", or "bcc" fields).  In other words, a search for **Michael** returns all emails that are sent to, from, or copied to *any* person named Michael, *regardless of whether it is the Michael contemplated by Plaintiff.*

6.    Faced with these overbroad search results, on August 8, 2007, and again on August 15, 2007, Putnam asked Plaintiff to consider narrowing her search

- 4 -

terms.[1]  Putnam suggested a number of search configurations that would result in a more manageable number of documents to review.  See Exhibits C and D.  Putnam's proposal was the following:

(a)    delete four of the 47 verbs and adjectives (and their variations) due the fact that they are in such common usage:  "change", "move", "recommend", and "issue".  Plaintiff previously indicated her willingness to remove these four terms from her list of 127 search terms (See Exhibit E);

(b)    delete first names from Plaintiff's list of names, since so many of the names are common and result in literally tens of thousands of irrelevant hits;

(c)    delete the asterisk (*) in front of each first and last name (searching Michael* instead of *Michael*), which would still capture possessive nouns and the appearance of that name in the text of any document, but not every email address of any "Michael" who worked at Putnam;

(d)    run the search using the "NEAR5" connector rather than a simple "AND" connector so that the search terms are used in proximity.  Use of the NEAR5 connector would return any document in which a word from List 1 appears within 5 words of any word on List 2.  Because Plaintiff is searching for names with action verbs and adjectives, words from the two lists are very likely to appear in the

---

[1] Due to a technical glitch, on August 8, 2007, Putnam misstated that Plaintiff's search resulted in 32,214 documents to be searched, when, in fact, there are 75,235 resulting documents. Putnam corrected the error on August 15, 2007.

same sentence.[2]  This search (with the other limitations discussed above) returns 6,015 documents (including emails and their attachments).   See Exhibit D.

7.    Plaintiff responded to Putnam's proposal to narrow the search terms a week later on the evening of August 15, 2007, see Exhibit F, by saying only that Putnam's proposal is "unworkable."  Id.  Rather than suggesting a different search, Plaintiff insists that her proposal, as submitted to Putnam on August 8 (resulting in 75,235 documents to review) contains "appropriate" Boolean searches.   Id.  Recognizing that her approach resulted in 75,235 documents, Plaintiff suggested that Putnam "review the results only for privilege, if you think necessary, and turn over the post-privilege review results, which would put any burden of a review for relevancy on our side rather than your side."  Id.[3]  This is simply not a reasonable option.

8.    First, to conduct a privilege review, Putnam still has to review all 75,235 documents, since there is simply no other reliable way of finding all privileged documents.   Second, the documents likely contain sensitive business

---

[2]    Westlaw has designed this same type of proximity search for legal research.   For example, if attempting to find case law concerning "reasonable accommodation" under the ADA, one might search for "reasonable" within 5 words of "accommodation," as compared to searching for the words "reasonable" and "accommodation" in the same document.   The later search, which would include the results from the former search, would also include an indeterminable number of irrelevant cases.

[3]    Plaintiff also requests that Putnam go back to the original database to have its vendor perform Plaintiff's proposed search, rather than search the 126,551 documents that have already been retrieved from the original database.   This is unnecessary, however, as the 126,551 documents contain at least one of Plaintiff's search terms.   Therefore, the results of two of Plaintiff's terms in the same document should all be located in the 126,551 documents in the current database.

information unrelated in any way to this case (the email boxes in question are those of senior management), as well as personal communications (potentially including emails from parents to children and husbands to wives, emails containing personal medical information, emails containing personal financial information, emails relating to performance issues for persons not involved in this case, etc.). Producing this kind of material, unreviewed, is neither contemplated by the discovery rules nor responsible. This is to say nothing of the fact that, if the documents are produced in discovery, Putnam will still need to spend an enormous amount of time and money reviewing them to find those documents needed to prepare witnesses for trial, for example. Rather than come up with reasonable Boolean search parameters, Plaintiff essentially asks Putnam to waive all its discovery objections, and produce concededly irrelevant documents. Such a request fundamentally is inconsistent with Fed. R. Civ. 26(b)' s requirement that parties may obtain discovery of any matter *"relevant"* to any claim or defense.

9. Plaintiff also objected to Putnam's proposal to use a NEAR5 connector, indicating that this connector may not catch every document. See Exhibit F. She also objected to the elimination of first names and of the asterisk before any name, saying that the search might miss some relevant documents. Yet any search risks missing relevant documents since sentences can be created in a variety of ways, and a particular email can use any number of synonyms instead of Plaintiff's search words (e.g., "let go" instead of "terminate"). Putnam's NEAR5 proposal was

- 7 -

designed to retrieve those documents that are *most likely* to be responsive, without creating an undue search burden and expense.

10.    Plaintiff did not provide a counterproposal to Putnam's suggested revised search.  Nonetheless, on August 16, 2007, in an effort to meet Plaintiff's objection to the NEAR5 connector, Putnam expressed a willingness to expand the search to include documents that are within ten words of each other (NEAR10), along with the other limitations discussed in paragraph 6 above.  See Exhibit G. This search returns 7,469 documents to be reviewed (including attachments).  As of the time of the filing of this report, Plaintiff has not responded to this proposal.

### Request for Relief

Putnam hereby requests that this Court clarify its order allowing electronic discovery, and permit Putnam to run the search using Plaintiff's List 1 and List 2, but with (a) a NEAR5 connector, (b) first names removed, (c) the terms "change", "move", "recommend", and "issue" (and their variations) deleted, and (d) removal of the asterisk (*) in front of any name to avoid capturing email addresses.  Further, Putnam requests this Court order the parties to submit a proposed revised Scheduling Order within 10 days of a ruling on this matter.

**PUTNAM INVESTMENTS, LLC,**

By its attorneys,

/s/ Joseph L. Kociubes, BBO #276360
Joseph L. Kociubes, BBO #276360
Louis A. Rodriques, BBO #424720
Allyson E. Kurker, BBO #665231
Jennifer L. Holden, BBO #663467

BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
617.951.8000

Dated: August 17, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 17, 2007.

/s/ Joseph L. Kociubes, BBO #276360

- 9 -

# EXHIBIT A

August 8, 2007

Joe and Lou:

This is the Boolean search that we would like your vendor to perform.  We would like the results from the intersection of LIST 1 and LIST 2:

LIST 1

abrasive* or egregious* or aggress* or approv* or assertive* or attitud* or chang* or (coverage ADJ load) or credibility or credible or demot* or domin* or disrupt* or distinguish* or downsiz* or emot* or fire* or firing* or gift* or (go ADJ getter*) or (hard ADJ charg*) or ((highly or well) NEAR3 regarded) or ((good or excellent) NEAR3 reputation) or invisible or issu* or lead* or (management ADJ style*) or (money ADJ maker) or mov* or nominat* or packag* or promot* or (push* ADJ back*) or recogni* or recommend* or repetitive* or role* or separat* or (stock ADJ pick*) or (tak* ADJ out*) or talent* or terminat* or (took ADJ out) or transfer* or volatil*

AND

LIST 2

*Allansmith* or *Bogar* or *Boselli* or *Bukovac* or *Byrne* or *Cervone* or *Clark* or *Cotner* or *DeChristopher* or *Dexter* or *Drew* or *Eigerman* or *Elizabeth* or *England* or *Farrell* or *Gerber* or *Gillis* or *Gorman* or *Hadden* or *Haslett* or *Joseph* or (*Kalus* ADJ *Bystricky*) or *Kamshad* or *King* or *Korn* or *Kuenster* or *Lindsey* or *Lannum* or *Leichter* or *Lode* or *MacElwee* or *McCormack* or *McMullen* or *Makino* or *Malak* or *Marrkand* or *Mehta* or *Melhuish* or *Miller* or *Mockard* or *Moore* or *Morris* or *Mufson* or *Mullin* or *Norchi* or *O'Malley* or *Peters* or *Santos* or *Scott* or *Sellitto* or *Sievert* or *Smith* or *Sorenson* or *Spatz* or *Stack* or *Stairs* or *Swift* or *Thomsen* or *Warren* or *Weiss* or *Wetlaufer* or *Wheeler* or *Williams* or *Yogg* or *RJ* or *Josh* or *Rich* or *Beth* or *Steve* or *Debb* or *Tom* or *Joe* or *Dav* or *Jeff* or *Cole* or *Geir* or *Shag* or *Sandy* or *Nicholas*

or *Nick* or *Dan* or *Mike* or *Michael* or *Terry*
or *Chris* or *Tino* or *Manny*

Please note that the search terms include words that may appear on the default "stop list" of words that are not indexed by some database software. These words will need to be removed from the stop list and the database reindexed prior to executing the search.

-- KFM

# EXHIBIT B

Results from Ms. Svensson's Proposal to search List 1 AND List 2

A/72164370.1/0398860-000031 2913

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
|---|---|---|---|
| 00000 | 126,551 | 126,551 | <Entire Database> |
| 00001 | 3,413 | 1,524 | *Allansmith* |
| 00002 | 4,771 | 1,718 | *Bogar* |
| 00003 | 4,003 | 1,475 | *Boselli* |
| 00004 | 5,010 | 1,884 | *Bukovac* |
| 00005 | 6,724 | 4,242 | *Byrne* |
| 00006 | 4,966 | 1,860 | *Cervone* |
| 00007 | 7,368 | 4,289 | *Clark* |
| 00008 | 11,748 | 5,772 | *Cotner* |
| 00009 | 4,040 | 1,467 | *DeChristopher* |
| 00010 | 4,847 | 3,083 | *Dexter* |
| 00011 | 22,256 | 10,516 | *Drew* |
| 00012 | 4,067 | 2,140 | *Egerman* |
| 00013 | 19,998 | 9,869 | *Elizabeth* |
| 00014 | 13,466 | 5,361 | *England* |
| 00015 | 2,935 | 1,412 | *Farrell* |
| 00016 | 4,411 | 2,961 | *Gerber* |
| 00017 | 13,393 | 7,266 | *Gilla* |
| 00018 | 11,824 | 6,255 | *Gorman* |
| 00019 | 2,885 | 1,985 | *Hadden* |
| 00020 | 7,158 | 4,874 | *Haslett* |
| 00021 | 24,748 | 11,939 | *Joseph* |
| 00022 | 4 | 2 | ("Kalus" ADJ "Dystricky") |
| 00023 | 10,863 | 5,666 | *Kamstad* |
| 00024 | 141,623 | 42,093 | *King* |
| 00025 | 3,948 | 1,874 | *Korn* |
| 00026 | 272 | 76 | *Kuenster* |
| 00027 | 9,457 | 5,340 | *Lindsey* |
| 00028 | 3,341 | 1,757 | *Lannum* |
| 00029 | 2,947 | 2,165 | *Leichter* |
| 00030 | 5,920 | 2,830 | *Lode* |
| 00031 | 6,059 | 3,977 | *MacEwee* |
| 00032 | 3,341 | 1,386 | *McCormack* |
| 00033 | 3,655 | 1,864 | *McMullen* |
| 00034 | 2,890 | 2,156 | *Maldivo* |
| 00035 | 6,001 | 2,406 | *Malal* |
| 00036 | 4,866 | 3,828 | *Merrland* |
| 00037 | 2,798 | 1,293 | *Mehta* |



A/72164370.1/0398860-000312913

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
| --- | --- | --- | --- |
| 00038 | 2,262 | 1,217 | *McElhash* |
| 00039 | 117,507 | 44,327 | *Miller* |
| 00040 | 3,264 | 2,296 | *Woddard* |
| 00041 | 11,181 | 6,078 | *Moore* |
| 00042 | 8,659 | 4,135 | *Morris* |
| 00043 | 9,540 | 4,920 | *Mulison* |
| 00044 | 9,257 | 6,654 | *Mullin* |
| 00045 | 1,790 | 1,017 | *Mullin* |
| 00046 | 1,608 | 602 | *O'Malley* |
| 00047 | 9,695 | 6,649 | *Norchi* |
| 00048 | 8,226 | 3,698 | *Peters* |
| 00049 | 72,204 | 47,883 | *Santos* |
| 00050 | 5,083 | 2,474 | *Scott* |
| 00051 | 3,936 | 1,452 | *Selitto* |
| 00052 | 63,507 | 17,141 | *Sievert* |
| 00053 | 3,071 | 2,777 | *Smith* |
| 00054 | 2,694 | 777 | *Sorenson* |
| 00055 | 3,296 | 2,340 | *Spatz* |
| 00056 | 5,463 | 3,320 | *Stack* |
| 00057 | 8,337 | 5,791 | *Starr* |
| 00058 | 5,436 | 4,751 | *Swift* |
| 00059 | 18,227 | 10,193 | *Thomsen* |
| 00060 | 9,694 | 4,972 | *Warren* |
| 00061 | 13,871 | 8,088 | *Weiss* |
| 00062 | 940 | 631 | *Wetzlaufer* |
| 00063 | 10,088 | 4,405 | *Wheeler* |
| 00064 | 7,901 | 2,386 | *Williams* |
| 00065 | 37,881 | 3,194 | *RJ* |
| 00066 | 27,182 | 11,591 | *Josh* |
| 00067 | 80,751 | 28,600 | *Kurt* |
| 00068 | 44,620 | 18,094 | *Seth* |
| 00069 | 130,794 | 48,578 | *Steve* |
| 00070 | 107,330 | 9,257 | *Deb* |
| 00071 | 14,455 | 35,121 | *Tom* |
| 00072 | 34,889 | 15,843 | *Joe* |
| 00073 | 110,455 | 29,582 | *Day* |
| 00074 | 71,248 | 25,464 | *Jeff* |
| 00075 | 10,951 | 5,812 | *Cole* |

A/72164370.1/0398860-000312913



| Search Number | Number of Hits | Number of Docs | Search Term(s) |
|---|---|---|---|
| 0076 | 3,096 | 2,156 | "Get*" |
| 0077 | 409 | 206 | "Shag" |
| 0078 | 20,908 | 12,291 | "Sandy*" |
| 0079 | 5,802 | 2,370 | "Nicholas*" |
| 0080 | 7,891 | 3,751 | "Nick*" |
| 0081 | 142,630 | 39,578 | "Dan*" |
| 0082 | 28,486 | 12,949 | "Mike*" |
| 0083 | 88,589 | 24,853 | "Michael*" |
| 0084 | 2,854 | 1,204 | "Terry*" |
| 0085 | 69,653 | 22,769 | "Chris*" |
| 0086 | 11,037 | 6,634 | "Tino*" |
| 0087 | 6,886 | 4,168 | "Manny*" |
| 0088 | 55,887 | 14,629 | 1 or 2 or 3 or 4 or 5 or 6 or 7 or 8 or 9 or 10 |
| 0089 | 102,431 | 32,627 | 11 or 12 or 13 or 14 or 15 or 16 or 17 or 18 or 19 or 20 |
| 0090 | 203,122 | 53,021 | 21 or 22 or 23 or 24 or 25 or 26 or 27 or 28 or 29 or 30 |
| 0091 | 151,353 | 49,765 | 31 or 32 or 33 or 34 or 35 or 36 or 37 or 38 or 39 or 40 |
| 0092 | 177,252 | 55,420 | 41 or 42 or 43 or 44 or 45 or 46 or 47 or 48 or 49 or 50 |
| 0093 | 123,658 | 31,071 | 51 or 52 or 53 or 54 or 55 or 56 or 57 or 58 or 59 or 60 |
| 0094 | 368,433 | 72,576 | 61 or 62 or 63 or 64 or 65 or 66 or 67 or 68 or 69 or 70 |
| 0095 | 372,947 | 67,184 | 71 or 72 or 73 or 74 or 75 or 76 or 77 or 78 or 79 or 80 |
| 0096 | 350,058 | 58,354 | 81 or 82 or 83 or 84 or 85 or 86 or 87 |
| 0097 | 1,836,088 | 116,080 | 88 or 89 or 90 or 91 or 92 or 93 or 94 or 95 or 96 |
| 0098 | 28 | 26 | abrasive* |
| 0099 | 50 | 45 | egregious* |
| 0100 | 13,010 | 5,311 | aggress* |
| 0101 | 22,557 | 8,396 | approv* |
| 0102 | 47 | 38 | assertive* |
| 0103 | 1,489 | 639 | attitud* |
| 0104 | 87,452 | 24,044 | chang* |
| 0105 | 40 | 20 | (coverage ADJ load) |
| 0106 | 61 | 598 | credibility |
| 0107 | 362 | 324 | credible |
| 0108 | 96 | 65 | demo* |
| 0109 | 4,748 | 2,543 | domat* |
| 0110 | 1,024 | 736 | disrupt* |
| 0111 | 975 | 771 | distinguish* |
| 0112 | 253 | 261 | downsiz* |
| 0113 | 460 | 356 | emot* |



**Putnam - Concordance**

File  Edit  Search  Documents  Tools  Help

Open  Join  Search  Browse  Table  Sort  Review  All  Edit  Global  Tagging  Print  Report  Help

<Quick search>

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
|---|---|---|---|
| 00113 | 460 | 336 | emot* |
| 00114 | 3,945 | 1,582 | fire* |
| 00115 | 198 | 164 | firing* |
| 00116 | 3,550 | 1,277 | gift* |
| 00117 | 0 | 0 | (go ADJ getter*) |
| 00118 | 0 | 0 | (hard ADJ charg*) |
| 00119 | 0 | 0 | ((highly well) NEAR3 regarded) |
| 00120 | 0 | 0 | ((good excellent) NEAR3 reputation) |
| 00121 | 74 | 56 | invisible |
| 00122 | 71,767 | 22,912 | issu* |
| 00123 | 38,995 | 12,370 | lead* |
| 00124 | 260 | 115 | (management ADJ style*) |
| 00125 | 6 | 2 | (money ADJ maker) |
| 00126 | 37,134 | 15,275 | mov* |
| 00127 | 2,126 | 694 | nominat* |
| 00128 | 7,533 | 2,943 | packag* |
| 00129 | 4,900 | 2,562 | promot* |
| 00130 | 714 | 319 | (push* ADJ back*) |
| 00131 | 6,493 | 3,536 | recog* |
| 00132 | 26,435 | 10,452 | recommend* |
| 00133 | 92 | 69 | role* |
| 00134 | 12,425 | 6,922 | repetitive* |
| 00135 | 12,277 | 6,426 | separat* |
| 00136 | 1,316 | 497 | (stock ADJ pick*) |
| 00137 | 874 | 352 | (tak* ADJ out*) |
| 00138 | 2,770 | 1,630 | talent* |
| 00139 | 23,878 | 5,069 | terminat* |
| 00140 | 158 | 77 | (took ADJ out) |
| 00141 | 15,075 | 5,301 | transfer* |
| 00142 | 19,035 | 4,857 | volatil* |
| 00143 | 125,736 | 31,772 | 98 or 99 or 100 or 101 or 102 or 103 or 104 or 105 or 106 or 107 |
| 00144 | 15,299 | 6,827 | 108 or 109 or 110 or 111 or 112 or 113 or 114 or 115 or 116 or 117 |
| 00145 | 150,362 | 37,626 | 118 or 119 or 120 or 121 or 122 or 123 or 124 or 125 or 126 or 127 |
| 00146 | 73,059 | 24,610 | 128 or 129 or 130 or 131 or 132 or 133 or 134 or 135 or 136 or 137 |
| 00147 | 60,916 | 13,841 | 138 or 139 or 140 or 141 or 142 |
| 00148 | 62,920 | 14,345 | 143 or 144 or 145 or 146 or 147 |
| 00149 | 425,372 | | |

For Help, press F1

Active query: 149 of 149

Start    Concord...    10:20 AM

A/72164370.1/0398860-000312913

A/72164370.1/0398660-000312913

**Putnam Concordance**

File   Edit   Search   Documents   Tools   Help

Open   Join   Search   Browse   Table   Sort   Review   All   Edit   Global   Tagging   Print   Report   Help

<Quick search>

| Search Number | Number of Hits | Number of Docs | Search Term(s) |
|---|---|---|---|
| 00000 | 126,551 | 126,551 | <Entire Database> |
| 00001 | 58,251 | 58,251 | "Tagging 'zz L1 and L2x" |
| 00002 | 1 | 1 | BEGATTACH = "00000011" |
| 00003 | 1 | 1 | BEGATTACH = "00000002" |
| 00004 | 1 | 1 | BEGATTACH = "00000003" |
| 00005 | 1 | 1 | BEGATTACH = "00000004" |
| 00006 | 1 | 1 | BEGATTACH = "0000005" |
| 00007 | 1 | 1 | BEGATTACH = "0000006" |
| 00008 | 1 | 1 | BEGATTACH = "0000007" |
| 00009 | 2 | 2 | BEGATTACH = "0000008" |
| 00010 | 1 | 1 | BEGATTACH = "0000009" |
| 00011 | 1 | 1 | BEGATTACH = "0000012" |
| 00012 | 2 | 2 | BEGATTACH = "0000017" |
| 00013 | 1 | 1 | BEGATTACH = "0000018" |
| 00014 | 1 | 1 | BEGATTACH = "0000019" |
| 00015 | 1 | 1 | BEGATTACH = "0000022" |
| 00016 | 1 | 1 | BEGATTACH = "0000023" |
| 00017 | 1 | 1 | BEGATTACH = "0000024" |
| 00018 | 1 | 1 | BEGATTACH = "0000025" |
| 00019 | 2 | 2 | BEGATTACH = "0000028" |
| 00020 | 1 | 1 | BEGATTACH = "0000029" |
| 00021 | 1 | 1 | BEGATTACH = "0000031" |
| 00022 | 2 | 2 | BEGATTACH = "0000033" |
| 00023 | 1 | 1 | BEGATTACH = "0000034" |
| 00024 | 2 | 2 | BEGATTACH = "0000035" |
| 00025 | 1 | 1 | BEGATTACH = "0000037" |
| 00026 | 2 | 2 | BEGATTACH = "0000038" |
| 00027 | 7 | 7 | BEGATTACH = "0000039" |
| 00028 | 7 | 7 | BEGATTACH = "0000044" |
| 00029 | 7 | 7 | BEGATTACH = "0000045" |
| 00030 | 7 | 7 | BEGATTACH = "0000046" |
| 00031 | 3 | 3 | BEGATTACH = "0000047" |
| 00032 | 3 | 3 | BEGATTACH = "0000058" |
| 00033 | 3 | 3 | BEGATTACH = "0000059" |
| 00034 | 3 | 3 | BEGATTACH = "0000059" |
| 00035 | 3 | 3 | BEGATTACH = "0000062" |
| 00036 | 1 | 1 | BEGATTACH = "0000065" |
| 00037 | 1 | 1 | BEGATTACH = "0000066" |

For Help, press F1

Active query: 58255 of 58255

Start    DeskSp...    Internet...    Microsoft...    Microsoft...    Concorda...    10:16 AM    NUM



A/72164370.1/0398860-000012913

# EXHIBIT C

**From:** Rodriques, Louis A.
**Sent:** Wednesday, August 08, 2007 5:32 PM
**To:** kevin f. moloney; Kociubes, Joseph L.; kfm @ h
**Cc:** Roger Manwaring; Kurker, Allyson E.; Holden, Jennifer L.
**Subject:** RE: Please see the attachment for the Boolean search that we....

Kevin:

We have reviewed the Boolean search terms that you provided this morning and have the following reactions and proposal:

1. If we search the 16GB database using a simple combination of any of the terms on List 1 paired with any of the terms on List 2, that search results in 32,214 hits. While that is better than the 125,000+ hits that the original 127 terms produced, it still produces both a substantial number of documents and, more importantly, a large number or irrelevant and nonresponsive materials. Not surprisingly, even a cursory glance at the first few of the resulting hits reveals that they are, for the most part, wholly irrelevant. That is because they sweep in emails where, for example, "Michael" discusses stock market "volatility," or "promotional" materials, or a "good" method for valuing a stock. At an average rate of 30 seconds per document (and remember that each "hit" is not one page - it is one document, which could be many pages long), the search will consume 270 hours - or nearly 7 weeks - of attorney or paralegal review time, assuming that the reviewer works 40 hours a week without any breaks.

2. If, instead, we search the 16GB database using a combination of any of the terms on your List 1 paired with any of the terms on your List 2, but also use a NEAR5 link that produces only those documents where the paired words occur within 5 words of each other, the search results in 4740 hits. This is still a substantial number of documents, but it is obviously more manageable. This review would still require approximately 40 hours of attorney review time (still assuming a rate of 30 seconds per document). It is also a more sensible search because, as a practical matter, if "Mike" thinks that "Allansmith" should be "promoted", "transferred", "demoted" or "terminated," for example, those words foreseeably would appear in close proximity. We would propose, therefore, that we use your two lists but with a NEAR5 connector.

If our suggestion is agreeable, let us know. We can then advise the Court that we have reached agreement and can propose a schedule adjustment that allows us to complete the search. We continue to reserve our rights with respect to Lisa's obligation to reimburse us for attorney review costs, especially if the search produces, as we expect, very few relevant documents. We also would like to know when we can expect to be reimbursed for the costs that Putnam has incurred to date, as outlined in our July 23 email to you before you left on vacation.

Joe/Lou


Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial: 617-951-8340


8/16/2007

Direct Fax: 617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Wednesday, August 08, 2007 11:28 AM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** Roger Manwaring
**Subject:** Please see the attachment for the Boolean search that we....

Joe and Lou:

Please see the attachment for the Boolean search that we would like your vendor to perform. We would like the results from the intersection of LIST 1 and LIST 2 that are set out in the attachment.

Note that the search terms include words that may appear on the default "stop list" of words that are not indexed by some database software. These words will need to be removed from the stop list and the database reindexed prior to executing the search.

/s/ *Kevin F. Moloney*



100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

# EXHIBIT D

# Holden, Jennifer L.

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Wednesday, August 15, 2007 3:30 PM |
| **To:** | Rodriques, Louis A.; 'kevin f. moloney'; Kociubes, Joseph L.; 'kfm @ h' |
| **Cc:** | 'Roger Manwaring'; Holden, Jennifer L.; Kurker, Allyson E. |
| **Subject:** | RE: Boolean Searches |

Kevin:

Following up on my email of yesterday afternoon, it seems that due to a glitch in the way the searches were run last week, the numbers that I gave you for the AND and NEAR5 searches were way too low. Searching for documents that contains any word from your List 1 AND List 2 yields at least 58,251 hits (before pulling attachments), not the 32,214 hits that I referenced in last Wednesday's email. Similarly, using the NEAR5 connector that I previously mentioned yields 30,501 hits (including attachments), not the 4740 that I indicated in my email.

We have been spending time trying to figure out what the cause is of the high number of hits. It appears to be due to a combination of several factors. First, there is simply a large number of search terms. Second, many of the terms are in common usage, especially in a mutual fund house. Words like issue, approve, change, recommend, etc., occur frequently given the nature of Putnam's business. Third, there are a large number of names involved, many of which are common names (e.g., Steve, Mike, Dan, Miller, etc.). Finally, using the *NAME* search format picks up any email address that uses that name, even if that name is not the person that you are interested in searching - that is, *Michael* picks up any email to, from or copied to any person named Michael, regardless of whether it's the correct Michael. There may be some other factors at work, but all of these clearly are.

We have also been spending time in the last several days while we have been awaiting feedback from you trying to figure out alternative ways to use your search terms that reduce the total number of hits without compromising the essence of your search. Based on our work, we suggest the following: (1) we delete from your list the 4 words that you agreed to delete in your proposal to us a few weeks ago (i.e., chang*, mov*, recommend* and issu*); (2) we delete first names from the list, since many are so common that we are picking up tons of totally irrelevant hits, (3) we delete the * in front of each last name (e.g., we run Michael* instead of *Michael*), which means that we will still pick up possessives but we won't pick up every email address that uses that name regardless of whether it is the correct person, and (4) we run the search using the NEAR5 connector so that the words are used in proximity. This combination generates 6015 hits (including attachments), more than the 4740 hits we talked about last week, but still a manageable number.

Let us know as soon as possible if this makes sense so that we can report the result to the Court and suggest a schedule revision.

Finally, we are still waiting to hear when we can expect to receive payment of the search expenses incurred to date.

Lou

Louis Rodriques
Bingham McCutchen LLP

8/16/2007

150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above.  Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.  Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion.  A formal opinion could reach a different result.  We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

8/16/2007

# EXHIBIT E

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, July 20, 2007 1:42 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** Jack Weir
**Subject:** We have reviewed the three attachments to your e-mail. you are aauthorized to ....

Lou:

    We have reviewed the three attachments to your e-mail. You are authorized to delete from the search terms the following:  "change*", "issue*", "move*" and "recommend*" as they have references in column 3 to more than 10,000.

/s/ *Kevin F. Moloney*

BARRON
&STADFELD pc
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

8/16/2007

# EXHIBIT F

**Subject:**                  RE: We have reviewed the information and the proposal set out in your e-mail this
                              afternoon....

```
-----Original Message-----
From: kevin f. moloney <kfm@barronstad.com>
To: Kociubes, Joseph L. <joe.kociubes@bingham.com>; kfm @ h <moloneys@verizon.net>;
Rodriques, Louis A. <louis.rodriques@bingham.com>
CC: rc.manwaring@verizon.net <rc.manwaring@verizon.net>; rogerman@Work (E-mail)
<rtm@barronstad.com>
Sent: Wed Aug 15 21:11:02 2007
Subject: We have reviewed the information and the proposal set out in your e-mail this
afternoon....
```

    Joe and Lou:


    We have reviewed the information and the proposal set out in your e-mail this
afternoon.


    The starting point for us is the deduped database that your vendor, DTI, prepared.
We asked you to have DTI run our original search on that deduped database.  Your side
objected to that original search as too broad given the resulting number of "hits" you
reported to us and suggested that we use instead a Boolean search.


The court's July 25 procedural order required us to submit by August 9 "appropriate
Boolean searches."  We believe that the Boolean search we provided to you on August 9 (the
"August 9 Boolean search"), which we intend for a search of the deduped database, not a
database containing the results of the original search, is an "appropriate" Boolean search
within the meaning of the July 25 order.


    The proposals in your e-mail to limit the search resu;.ts generated by the August 9
Boolean search are unworkable, as they would result in our being deprived of documents
responsive to the court's April 10 order.  For example, your proposed "near5" approach,
while including a term if it were to be word one, two, three, four or five away from
another search term, would exclude from production a document in which the terms appeared
six or more words apart in the document.  Thus a document with the sentence, "We should
fire Elizabeth because she is a woman and has young children" would be required to be
produced but a document with the sentence, "Because Elizabeth is a woman and the mother of
young children, we should fire her" would not be required to be produced.  Elimination of
the * before a name would not result in required production of documents with e-mail
addresses in which the name was a part.  Deletion of first or nicknames from the search
likely would keep hidden from view many other otherwise responsive documents.


    The simplest thing for you to do is to run the August 9 Boolean search, review the
results only for privilege, if you think necessary, and turn over the post-privilege
review results, which would put any burden of a review for relevancy on our side rather
than on your side.


    We request again that your vendor perform the August 9 Boolean search of the deduped
database.   We are advised by our consultant, TLC, that TLC would charge us for the August
9 Boolean search of the deduped database $100 per GB, as the major part of the work is in

getting to the deduped database and that work, once done, is not needed a second time.


/s/ Kevin F. Moloney


100 Cambridge Street, Suite 1310

Boston, Massachusetts 02114

Tel.: 617.723.9800/531.6569

Fax: 617.523.8359

e-mail: kfm@barronstad.com

# EXHIBIT G

## Holden, Jennifer L.

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Thursday, August 16, 2007 1:24 PM |
| **To:** | kevin f. moloney; Kociubes, Joseph L.; kfm @ h |
| **Cc:** | rc.manwaring@verizon.net; rogerman@Work (E-mail); Kurker, Allyson E.; Holden, Jennifer L. |
| **Subject:** | Boolean Searches |

Kevin:

We have reviewed your email of last night and have the following responses:

1. Your email asserts that your proposed Boolean search is "appropriate," but offers no explanation as to why. Our view is that, to be appropriate, the search must be reasonable in scope and must be reasonably calculated to "hit" documents that are responsive to outstanding document requests. Your proposed search is neither. The final total of documents in the existing database that are hit by your search terms is 75,235 (including attachments). Moreover, as we have explained on several prior occasions, nearly all of these documents are irrelevant and non-responsive, since they are the product of the use of search terms containing common first and last names (such as Steve, Dan, Tom, Michael, Miller, Scott), and words in common usage at an investment management firm (such as issue, recommend, change, approve, etc.).

2. Your response to the above is to suggest that we simply produce all of the 75,000+ documents without reviewing them "except for privilege." This is unacceptable.

Reviewing the 75,000+ documents for privilege means reviewing them all, since there is simply no other reliable way of ensuring that we catch all privileged documents. Second, the documents likely contain sensitive business information unrelated in any way to this case (the email boxes in question are those of senior management), as well as personal communications (such as emails from parents to children and husbands to wives, emails containing personal medical information, emails containing personal financial information, emails relating to performance issues for persons not involved in this case, etc.). Producing this kind of material, unreviewed, is neither contemplated by the discovery rules nor responsible. This is to say nothing of the fact that, if the documents are produced in discovery, we will still need to spend an enormous amount of time and money reviewing them to find those documents needed to prepare witnesses for trial, etc.

3. You raise several objections to our proposed revision of your search, but offer no alternative other than to say that you want what you asked for originally. Specifically, you indicate that the NEAR5 connector is too limiting since it might miss some documents. Obviously, any document request contains some risk that a relevant document will be missed because of the way the request is framed - that is true both for paper discovery and e-discovery. The solution is not to ask for wholesale production of large portions of the company's files and then to rummage through them in the hopes that something relevant turns up, whether or not it is responsive to a prior request. E-discovery search terms must be calculated to produce relevant documents responsive to outstanding requests, and must not be unreasonably burdensome - the same standard that applies to paper discovery. If, for example, you asked for all paper documents authored by anyone named "Michael" that use the word "issue," we would have objected. This is no less true for e-discovery.

Our NEAR5 connector was designed to try to locate documents that use your 127 terms in a

relevant context. If NEAR5 concerns you, we are prepared to talk to you about using NEAR10 (coupled with our other suggested limitations in my email yesterday), which yields 7,469 documents (including attachments).

You also object to eliminating the * before each name, saying that such a limitation "would not result in required production of documents with e-mail addresses in which the name was a part." You don't explain why that is an issue, however. Remember that each name will still appear in the document, since we will still be running NAME*. We will only be eliminating any email in which the *only* appearance of the name is in the email address. We thereby eliminate any email in which, for example, an email from, to or copied to *anyone* named "Michael" uses the word "issue" in any context, but emails where someone has an "issue with Michael" would still be hit. (As an aside, because Putnam employs at least one employee named "Chang", we are hitting nearly every email that is to, from or copied to Mr. Chang (because of your search term chang*), since it is often the case that such emails are also to, from or copied to someone with one of the other names on your list. That is, we are hitting hundreds if not thousands of emails in which the *only* hits occur in the list of email addresses.)

You also object to the elimination of first names, saying that it may miss some documents. Again, the question is how likely that is to be the case, weighed against the fact that, for example, the names you include are so common that we are hitting literally tens of thousands of emails about, from or to people that have nothing to do with this case. For example, "Steve" alone appears in over 48,000 documents, "Scott" in 47,000 and "Miller" in 44,000.

4. You indicate that we should be searching the original 22 GB, and not the current 16GB database. We do not understand your point. The 16GB database contains any document from the 22 GB database in which any one of your original 127 search terms appears. We understand that your August 9 list of Boolean search terms simply pairs those 127 terms (names with adjectives/verbs). If that is the case, the current 16GB database necessarily contains any document that contains any pair of those words.

Given that we need to report to the Court tomorrow, as a final effort to resolve this we are prepared to discuss using a NEAR10 connector with the other limitations that we suggested yesterday (no first names; eliminate issu*, recommend*, chang* and mov*, to which you agreed previously; and eliminate the * before any name). That yields 7,469 total documents (including attachments). Let us know if this is acceptable.

Lastly, we have asked repeatedly when we can expect to receive payment for Putnam's expenses incurred to date. As the Court directed, we have provided the back-up for those expenses, and you agreed in June that the bulk of those expenses would be paid when we commenced the initial search. Thus far, we have received nothing. Please advise.

Joe/Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
Direct Dial:  617-951-8340
Direct Fax:  617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Wednesday, August 15, 2007 9:11 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** rc.manwaring@verizon.net; rogerman@Work (E-mail)
**Subject:** We have reviewed the information and the proposal set out in your e-mail this afternoon....

Joe and Lou:

We have reviewed the information and the proposal set out in your e-mail this afternoon.

The starting point for us is the deduped database that your vendor, DTI, prepared. We asked you to have DTI run our original search on that deduped database. Your side objected to that original search as too broad given the resulting number of "hits" you reported to us and suggested that we use instead a Boolean search.

The court's July 25 procedural order required us to submit by August 9 "appropriate Boolean searches." We believe that the Boolean search we provided to you on August 9 (the "August 9 Boolean search"), which we intend for a search of the deduped database, not a database containing the results of the original search, is an "appropriate" Boolean search within the meaning of the July 25 order.

The proposals in your e-mail to limit the search resu;.ts generated by the August 9 Boolean search are unworkable, as they would result in our being deprived of documents responsive to the court's April 10 order. For example, your proposed "near5" approach, while including a term if it were to be word one, two, three, four or five away from another search term, would exclude from production a document in which the terms appeared six or more words apart in the document. Thus a document with the sentence, "We should fire Elizabeth because she is a woman and has young children" would be required to be produced but a document with the sentence, "Because Elizabeth is a woman and the mother of young children, we should fire her" would not be required to be produced. Elimination of the * before a name would not result in required production of documents with e-mail addresses in which the name was a part. Deletion of first or nicknames from the search likely would keep hidden from view many other otherwise responsive documents.

The simplest thing for you to do is to run the August 9 Boolean search, review the results only for privilege, if you think necessary, and turn over the post-privilege review results, which would put any burden of a review for relevancy on our side rather than on your side.

We request again that your vendor perform the August 9 Boolean search of the deduped database. We are advised by our consultant, TLC, that TLC would charge us for the August 9 Boolean search of the deduped database $100 per GB, as the major part of the work is in getting to the deduped database and that work, once done, is not needed a second time.

/s/ *Kevin F. Moloney*

Barron & Stadfeld pc
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

8/16/2007

# EXHIBIT H

## Holden, Jennifer L.

| | |
|---|---|
| **From:** | Rodriques, Louis A. |
| **Sent:** | Monday, July 23, 2007 6:32 PM |
| **To:** | kevin f. moloney; Kociubes, Joseph L.; kfm @ h |
| **Cc:** | Jack Weir; Kurker, Allyson E.; Holden, Jennifer L. |
| **Subject:** | Search Costs to Date |
| **Attachments:** | Moloney email.pdf; DocTechInvoice.pdf |

Kevin,

As per the judge's order dated July 23, 2007, the following (with attachments) summarizes payment owed by Ms. Svensson to Putnam for costs associated with electronic discovery.

1. The cost to retrieve the electronic data from Putnam was $4,125. You already have agreed to pay this amount. See first attachment.

2. The vendor costs to be paid by Ms. Svensson total $7180 ($6885 plus $295 in taxes). The attached invoice dated July 18, 2007 itemizes the costs incurred. Please note that Ms. Svensson is being charged at $350 per GB (instead of the $800 indicated) and is only taxed on the costs associated with that rate.

3. Jeremy Breen (a litigation technology specialist) has worked a total of 7.6 hours on various search-related tasks such as discussions with the vendor, time spent copying and building the Concordance database, time spent preparing the database for search, and time spent determining the effect of the deletion the 4 terms that you proposed to have deleted. Jeremy's hourly rate is $210 per hour, and the costs associated with his work total $1,596

This does not include attorney time spent reviewing documents for responsiveness and privilege.

The total of the costs incurred *to date* and owed by Ms. Svensson, exclusive of attorney review time, is: $12,901.

Lou

Louis Rodriques
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Direct Dial: 617-951-8340
Direct Fax: 617-345-5050

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

*You should recognize that responses provided by means of this email are akin to ordinary telephone or face-to-face conversations and do not reflect the level of factual or legal inquiry or analysis which would be applied in the case of a formal legal opinion. A formal opinion could reach a different result. We would, of course, be happy to prepare such a definitive statement or formal opinion if you would like us to.*

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, July 20, 2007 1:42 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** Jack Weir
**Subject:** We have reviewed the three attachments to your e-mail. you are aauthorized to ....

Lou:

    We have reviewed the three attachments to your e-mail. You are authorized to delete from the search terms the following: "change*", "issue*", "move*" and "recommend*" as they have references in column 3 to more than 10,000.

*/s/ Kevin F. Moloney*



100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

8/16/2007

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Friday, June 29, 2007 5:29 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Subject:** As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you...

Lou:

    As I understand it, following the conversation between Nicole Panos and Jeremy Breen, you will be having the previously identified vendor process and search the native e-mail files. You will then receive the native e-mail files in Concordance format and then you plan on a Putnam review. Following the review, the documents to be produced will then be reconstituted into a native NSF file and delivered to us on a CD/DVD/Hard Drive as size dictates. We also expect to receive a log for any complete or partial redactions for privilege, work product, etc.;

and we reserve our right to return to court if we determine that any improper redactions or withholdings have been made.

    Attached are our search terms.

    This e-mail does not waive or amend our position that plaintiff is not liable for any of Putnam's costs for its reviews of any kind and that Svensson's responsibility is capped at the $7,850 figure we received from TLC and the $4,125 that was mentioned in the May 18, 2007, e-mail.

/s/ *Kevin F. Moloney*

BARRON
&STADFELD PC
ATTORNEYS

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.



**Document Technologies, Inc.**

101 Federal Street
Suite 701
Boston, MA 02110
Phone : 617-737-5300
Fax : 617-737-5301
Fed. ID No. : 58-2413793

**INVOICE**

Invoice Number: 334848

Invoice Date: 07/18/07

COPY

Bill To:
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
Jeremy Breen

Ship To:
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

| | | | |
|---|---|---|---|
| Customer ID | 19474 | Client / Matter No. | 0000312913 Putnam |
| Terms | Net 15 Days | Job No. | I7016 |
| SalesPerson | BOS HSE | Nat'l Acct Name | |
| SalesPerson 2 | | Nat'l Acct Ref. No. | |
| Cust. P.O. | | | |

| Quantity | Description | Unit Price | Total Price |
|---|---|---|---|
| 16.6 | EDD - DATA | 800.00 | 13,280.00 |
| 7 | EDD Tech Time - Culling | 135.00 | 945.00 |
| 2 | IMG - DVD Master | 50.00 | 100.00 |
| 1 | Shipping/Delivery | 30.00 | 30.00 |

Thank you for choosing Document Technologies, Inc.
Past due invoices are subject to 1.5% interest per month

| | |
|---|---|
| Subtotal: | 14,355.00 |
| Total Sales Tax: | 669.00 |
| Total: | 15,024.00 |

Accepted By: _____

**Remit To:** Document Technologies Boston
P.O. Box 934583
Atlanta, GA 31193-4583

# EXHIBIT I

---

**From:** kevin f. moloney [mailto:kfm@barronstad.com]
**Sent:** Wednesday, June 20, 2007 5:35 PM
**To:** Kociubes, Joseph L.; kfm @ h; Rodriques, Louis A.
**Cc:** john k. weir
**Subject:** In furtherance of our communications on e-discovery, attached is a copy of ..

Joe and Lou:

　　In furtherance of our communications on e-discovery, attached is a copy of a Statement of Work, including cost and time estimate, from Target Litigation Consulting, Inc., 286 Summer Street, Boston, Massachusetts 02110 ("TLC"), which, in summary, states that the cost for the e-discovery project concerning the search of the reported 22 GBs of data is $7,850 and the length of time to be involved is one week.  More particularly, TLC states:

"This project currently consists of 22 GB of email data for processing and loading to Concordance in native format.  Our $350.00 per gigabyte pricing includes the following services: transfer of data from supplied media to TLC servers; cataloging of electronic documents and email repositories and assigning unique DOCID numbers; extraction of text and metadata; deduplication across the entire dataset; keyword searching and export of resulting deduped set to a Concordance database with links to the native files.
"

| Task | Cost per unit | Total Cost |
|---|---|---|
| Project Set Up | No Charge | No Charge |
| Pick Up & Delivery | No Charge | No Charge |
| Presave & Dedupe 22 GB | $350.00 | $7,700.00 |
| Media Mastering – HardDrive | $150.00 | $150.00 |
| Estimated Project Total | | $7,850.00 |

"We estimate we can complete this project in one week...."

　　I am advised that it is more economical to review and produce native files, as they are already electronic, searchable and have "coding" - to, from, cc, bcc, date sent, date created, etc. These are all processes that, if run on paper collections, can become very costly.

　　Concordance has a feature that allows a search to be run (e.g. for all responsive documents) with export of the results of that search and the associated files to a subset database

that can be produced directly for review. As I am advised that native files cannot be Bates stamped or redacted, if Putnam intends to redact any of the documents, Putnam's vendor will have to convert the affected native files to TIFF images with extracted text and metadata, and redact them electronically. In that event, we will require the production of the redacted documents in electronic format (TIFFs/Text/Metadata) as a separate, redacted production (together with the required privilege, etc. log). We will require confirmation from Putnam that for purposes of any redactions, that procedure will be followed.

Plaintiff also requires that Putnam identify the "national vendor" that it says it has engaged for this project and the location where the work will be done. We require that Putnam confirm in writing to us that the scope of work to be performed by that vendor's personnel (not by that of Putnam or Bingham-McCutchen) includes: transfer of data from supplied media to the vendor's servers; cataloging of electronic documents and email repositories and assigning unique DOCID numbers; extraction of text and metadata; deduplication across the entire dataset; keyword searching and export of resulting deduped set to a Concordance database with links to the native files; with confirmation also to include identification of search engine/program to be used.

Neither the April 10, 2007, order of Judge Saris nor the relevant case law (see the memorandum attached to this e-mail) requires plaintiff in this case to pay the cost of Putnam's review of the results of the search for attorney-client privilege, work product or any other reason. Such reviews would be for Putnam's convenience, purposes and benefit and are not chargeable to plaintiff

Upon receipt of the identifications and confirmations referred to above, we will supply you with our revised search terms (which were furnished to TLC prior to its preparation of the attached Statement of Work) and plaintiff will make payment to Putnam's attorneys of the above referred to $7,850 and the $4,125 that was mentioned in the May 18, 2007, e-mail.

/s/ *Kevin F. Moloney*

100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569
Fax: 617.523.8359
e-mail: kfm@barronstad.com

8/16/2007