STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | | Civil Action No. 04-12711-PBS |
| | * | |
| | * | |
| LISA SVENSSON, | * | BBO Bo. 351000 |
| | * | |
| Plaintiff, | * | |
| | * | Memorandum |
| | * | of Plaintiff Lisa |
| v. | * | Svensson in Support of |
| | * | Her Opposition to Defendant |
| | * | Putnam Investments, LLC's |
| | * | Motion, Filed Friday, August |
| PUTNAM INVESTMENTS, LLC, et | * | 17, 2007, That Putnam has |
| al., | * | Titled "Putnam's Status |
| | * | Report and Recommendation |
| Defendants. | * | Regarding Plaintiff's Search |
| | * | Terms and Proposal to |
| | * | Revise Those Terms and |
| * * * * * * * * * * * * * * * * | | the Scheduling Order" |

Plaintiff Lisa Svensson ("Svensson") submits this memorandum in support of her opposition to defendant Putnam Investments, LLC ("Putnam")'s motion, filed Friday, August 17, 2007, that Putnam has titled "Putnam's Status Report and Recommendation Regarding Plaintiff's Search Terms and Proposal to Revise Those Terms and the Scheduling Order."

1. <u>Facts</u>.

The present motion, which seeks to deny Svensson access to relevant Putnam e-mails, is but a part of Putnam's multi-year, concerted effort to prevent Svensson from discovering information necessary to her case. From the beginning, Putnam has done everything possible to obscure the manner in which it

really made its decisions to, among other things, demote and then fire Svensson and how it treated her male and female comparators, resisting Svensson's reasonable discovery requests at every turn.  Given this course of conduct by Putnam, Svensson, as the docket in this case shows, was required repeatedly in numerous hearings since December 2005 to seek the aid of the magistrate judge and this court to force Putnam to answer interrogatories and to produce documents.

On April 10, 2007, on Svensson's objections to the January 2007 rulings of the magistrate judge, this court (Saris, D.J.) ordered Putnam, among other things, to produce relevant e-mails by conducting electronic searches requested by Svensson.

The process for locating relevant Putnam e-mails involved the following steps:  First, the archived media on which the t e-mails of the ten key Putnam officials were stored were transferred to a computer hard drive, resulting in an initial universe of 22 gigabytes ("GB") of data (the "22 GB database"). Next, the 22 GB database was reduced in size by removing from that database all duplicate copies of both e-mails and attachments, a process known in the technology trade as "de-duping," thereby creating a "de-duped database."  That de-duped database, according to information Putnam has supplied, was a

reduction to either 16.6 GB or to between 22 GB and 16.6 GB.[1]  On June 29, 2007, Svensson requested that Putnam search the de-duped database for documents containing one or more of 127 search terms, thereby further reducing the volume of data.

That search, performed across the de-duped database, identified 126,551 documents.

Either as the result of the de-duping process alone, or through a combination of de-duping and the performance of the 127 term search, the total volume of data was reduced from 22 GB to at most 16.6 GB, an almost 25% reduction from the original 22 GB database.

In response to Putnam's motion filed July 23, 2007, which claimed that the results of the 127-term search were too broad, this court required Svensson by August 9 to submit "appropriate Boolean searches" or an opposition to Putnam's motion.  In accordance with that order, Svensson's counsel, on August 8, 2007, sent Putnam a request for a Boolean search:

> Please see the attachment for the Boolean search that we would like your vendor to perform.  We would like the results from the intersection of LIST 1 and LIST 2 that are set out in the attachment....

As set out in the attachment, a copy of which is Exhibit "A" to this memorandum, LIST 1 consists of adjectives, verbs and their

---

[1] It is not possible, based on the information provided by Putnam, to determine with precision the size of the de-duped database.

variations designed to produce relevant information and LIST 2 consists of the names of comparators and others relevant to Svensson's claims.

In order to ensure that the search would capture e-mails that mentioned the relevant persons, the names list includes first names (e.g. "Manuel") and nicknames used for them at Putnam (e.g. "Manny").  In addition, because it is likely that documents mentioning the e-mail addresses of relevant persons would concern those persons, the names list also placed an asterisk ("*") prior to each name.

Although in many respects similar, the terms used in the Boolean search lists differed in important respects from the 127 terms that produced the 16.6 GB database.  While the 127 search terms were merely names, adjectives and verbs in their standard forms, the Boolean search used the "root expander" asterisk to search for multiple variants of the adjectives or verbs (e.g. "demot*" to search for variants including "demotion" and "demoted") and to locate persons' names as a part of e-mail addresses (e.g. "*Elizabeth").

Notably, while some of the individual terms in LIST 1 of the Boolean search request were thus broader than they had been in the non-Boolean 127 term search, the number of documents retrieved by the Boolean search (the results of the intersection of LIST 1 and LIST 2) was expected to be far less

4

than the number of documents retrieved by the non-Boolean
search because the Boolean search is to retrieve only documents
that contain terms from both lists at the same time.

Because the Boolean search terms differ from the 127 non-
Boolean search terms, Svensson's Boolean search is intended to
be run across the de-duped database i.e. the same database
across which the 127-term search was run, not across the
smaller database comprising only the results of the 127 term
non-Boolean search.

By requesting the "results from the intersection of LIST 1
and LIST 2," Svensson's Boolean search seeks to identify the
Putnam documents that contain words from both the name list and
the adjective/verb list (e.g. the search would "hit" a document
containing both the name "O'Malley" and the verb "terminate").
According to Putnam, that search "hits" 75,235 documents,
"including attachments."  This is a very substantial reduction
of about 40% from the 126,551 documents hit by the original non-
Boolean search.

Despite this reduction, Putnam, still complaining that to
review these search results for privilege and relevance would
be too burdensome, now asks this court to further restrict
Svensson's search of Putnam's e-mail records to virtually
meaningless proportions by imposing the following four
restrictions and limitations: (1) removing from LIST 1, the

adjective/verb list, the terms "change", "move", "recommend" and "issue" and their variations; (2) removing all first names and nicknames from LIST 2, the name list; (3) removing the asterisk from before each name on the name list to avoid retrieving e-mail addresses; and, (4) restricting the search to hit only documents in which a term on the name list appears within five words of a term on the adjective/verb list by using the "near5" connector.  Putnam represents that a search incorporating <u>all</u> <u>four</u> of its limitations would retrieve only 6,015 documents.  Putnam does not provide, nor could it, the number of relevant documents that would remain hidden from view if such a restrictive search were to be required.

    2.   <u>Argument</u>.

   2.1  <u>The Boolean search provided by Svensson, is</u>
       <u>"appropriate" within the meaning of the court's</u>
       <u>orders and reviewing the documents retrieved by</u>
       <u>that search is not unduly burdensome to Putnam.</u>

This court should reject Putnam's claim that the Boolean search provided by Svensson is too broad because Putnam's pre-production privilege and relevance reviews of the retrieved documents would be unduly burdensome because Putnam's arguments in support of this claim do not withstand scrutiny for the following three reasons.  First, Putnam claims it would be required to "review all 75,235 documents" for privilege "since there is simply no other reliable way of finding all privileged

documents." Putnam Motion, p. 6. That is not correct. A document is privileged only if it is a communication from client to attorney or attorney to client for the purpose of providing legal advice. Rent Control Board of Cambridge v. Praught, 35 Mass. App. Ct. 290, 296 (1992) (the Massachusetts Appeals Court identified the limited class of attorney client communications protected by the privilege: "What the attorney-client privilege protects is communication between the lawyer and the client ... ... made in confidence [f]or the purpose of obtaining [on the part of the client] or providing [on the part of the lawyer] legal assistance for the client."). See also District Judge Wyzanski's discussion of the privilege in U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950).

Thus, e-mails (or attachments) that might be privileged will be either to or from an attorney. Of course, such a review would be optional on the part of Putnam and Putnam easily could conduct its own electronic search of the documents retrieved by Svensson's Boolean search to isolate the small subset of documents that might be communications to or from an attorney. If Putnam chooses to review them for this purpose, such a review would not be burdensome. Moreover, the parties could enter into the customary "clawback" agreement whereby if any privileged document, notwithstanding reasonable efforts on the part of

7

Putnam, were to be produced accidentally, it would have to be returned by Svensson.

Second, Svensson suggested to Putnam that Putnam could avoid any alleged burden arising from reviewing the documents retrieved by the Boolean search for relevance by reviewing them only for privilege and then producing all non-privileged documents.  This would place any burden of relevance review on Svensson.  Putnam has rejected this solution, asserting that the documents might contain "sensitive business information unrelated in any way to this case ... as well as personal communications."  Putnam Motion, p. 6-7.  Putnam conveniently ignores the fact that with the parties' agreement, the court (Bowler, M.J.), on February 23, 2006, entered an order (see Clerk's notes for February 23, 2006, re: Docket No. 50) that controls access to, and use of, confidential documents or information and thereby prohibits the parties from disseminating or using in any way other than for purposes of this case any produced information or documents designated by a party as confidential.  Thus, Svensson may not use irrelevant documents at trial in this case due to the rules of evidence, and she is prohibited from using or disseminating any document, relevant or not, to any person not allowed access by the confidentiality order that Putnam agreed to.

Third, Putnam argues that if it produced the entire non-privileged results of Svensson's Boolean search, it would "still need to spend an enormous amount of time and money reviewing them to find those documents needed to prepare witnesses for trial...." Putnam Motion, p. 7. That is not correct. As this case moves toward the trial on the merits, Svensson will be required in pre-trial filings to notify the court and Putnam well before the start of the trial of the documents that she intends to offer into evidence during the trial. Notably, Putnam's argument in this regard undermines its primary claim that the more restrictive search it proposes will adequately locate relevant documents. If Putnam is so confident of its restrictive search, it can use that search in its own relevance review of the documents retrieved by Svensson's Boolean search.

2.2  <u>The search modifications suggested by Putnam unreasonably restrict the scope of Svensson's electronic discovery, and are tailored to prevent disclosure and production of highly relevant documents essential to Svensson's case</u>.

Putnam is a huge corporation with operations worldwide. It has elected, entirely voluntarily, to conduct a large portion of its internal decision-making via e-mail but not to tag or index its archived e-mails in a manner that would facilitate its identification of privileged or relevant documents when Putnam is involved in litigation. It now seeks to use its own poor choices as a bludgeon to cripple Svensson's legitimate

discovery.  By proposing unduly restrictive search parameters, Putnam seeks to prevent Svensson from discovering relevant electronically stored documents.

The restrictions proposed by Putnam appear tailor-made to exclude from the search results highly relevant documents.  For example, while use of the "near5" connector, as proposed by Putnam, would retrieve a document in which a term on LIST 2, the name search list, appeared one, two, three, four or five words away from a term on LIST 1, the adjective/verb search list, it would exclude from production a document in which the terms appeared six or more words apart.  Thus, a document with the sentence,

> We should fire Elizabeth because she is a
> woman and has young children,

would be required to be produced (because "fire" and "Elizabeth" appear within five words of each other) but a document with the sentence,

> Because Elizabeth is a woman and the mother
> of young children, we should fire her,

would not be required to be produced (because "fire" and "Elizabeth" appear more that five words apart).  Putnam's suggested use of the "near10" connector suffers from the same problem.[2]

---

[2] Putnam refers to the fact that Westlaw offers a proximity search option.  While that is true, there are significant differences between

In like manner, elimination of the asterisk before each name on the name list would result in a failure to retrieve documents with e-mail addresses in which the searched for name was a part. Putnam's suggested deletion of first or nicknames from the search likely would keep hidden from view many other otherwise responsive documents. E-mails within a business about internal management matters are likely to be informal and likely to refer to other officers/employees by first names or nicknames.

Finally, there is no reason to remove from the adjective/verb search list the terms "change", "move", "recommend" and "issue" and their variations, as Putnam suggests. While Svensson was willing to remove those terms from her original non-Boolean search, the Boolean search, unlike the original search, ensures that retrieved documents in which those terms appear are likely to be relevant because it requires that those terms appear in conjunction with one of the searched for names.

Putnam's proposed search is far too restrictive and unduly prejudicial to Svensson. It would reduce the universe of

_____

conducting legal research on Westlaw and searching Putnam's database of e-mails. A legal researcher who locates some cases or statutes but fails to retrieve others because of a restrictive proximity connector is able to locate additional authorities not retrieved by the search by Shepardizing the cases or statutes that were retrieved, or by using a digest or other non-keyword based research method. Unlike legal research via Westlaw, the Putnam e-mail database can be searched only by use of key words and a document not retrieved by such a search will never see the light of day.

relevant documents potentially available to Svensson from the
126,551 retrieved by a simple non-Boolean search, by more than
95%, to just 6,015 documents.  In doing so, it virtually
guarantees that Putnam could keep hidden from the jury numerous
highly relevant documents, including even potential "smoking
guns" that would establish explicitly that Putnam discriminated
against Svensson on the basis of her gender.

    2.3  <u>Svensson's Boolean search should be run in the
de-duped database against which the 127 term
non-Boolean search was run.</u>

As set forth in the factual section of this memorandum,
the terms in the Boolean search requested by Svensson, while
similar to the 127 terms in the original non-Boolean search,
are not identical.  Therefore, Putnam is incorrect when it
claims that the Boolean Search need only be run against the
126,551 documents identified by the 127 term non-Boolean
search.  The Boolean search, to be fully effective in locating
relevant documents, must be run across the full de-duped
database.

    3.  <u>Conclusion</u>.

For all of the foregoing reasons, this court should deny
Putnam's motion and should order Putnam to:

    1.  Run Svensson's Boolean search across the de-duped
database; and,

    2.  Produce to Svensson all relevant, non-privileged

documents retrieved or, in the alternative, to produce

all non-privileged documents retrieved, together with,

in either case, a privilege log.

LISA SVENSSON, plaintiff

By her attorneys

BARRON & STADFELD, P.C.


/s/ Kevin F. Moloney_____
Kevin F. Moloney   BBO No. 351000
Roger T. Manwaring BBO No. 548614
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir_____
John K. Weir, admitted PHV
JOHN K. WEIR LAW OFFICES, LLC
300 Park Avenue, Suite 1700
New York, New York 10022
Tel.: 212.572.6374

Dated: August 31, 2007

## Certificate of Service.

    This document is filed through the ECF system and will be
sent electronically to the registered participants as identified
on the Notice of Electronic Filing (NEF).


/s/ Kevin F. Moloney_____

Dated: August 31, 2007


[410917.1]

13

# Exhibit A

August 8, 2007

Joe and Lou:

This is the Boolean search that we would like your vendor to perform.  We would like the results from the intersection of LIST 1 and LIST 2:

LIST 1

abrasive* or egregious* or aggress* or approv* or assertive* or attitud* or chang* or (coverage ADJ load) or credibility or credible or demot* or domin* or disrupt* or distinguish* or downsiz* or emot* or fire* or firing* or gift* or (go ADJ getter*) or (hard ADJ charg*) or ((highly or well) NEAR3 regarded) or ((good or excellent) NEAR3 reputation) or invisible or issu* or lead* or (management ADJ style*) or (money ADJ maker) or mov* or nominat* or packag* or promot* or (push* ADJ back*) or recogni* or recommend* or repetitive* or role* or separat* or (stock ADJ pick*) or (tak* ADJ out*) or talent* or terminat* or (took ADJ out) or transfer* or volatil*

AND

LIST 2

*Allansmith* or *Bogar* or *Boselli* or *Bukovac* or *Byrne* or *Cervone* or *Clark* or *Cotner* or *DeChristopher* or *Dexter* or *Drew* or *Eigerman* or *Elizabeth* or *England* or *Farrell* or *Gerber* or *Gillis* or *Gorman* or *Hadden* or *Haslett* or *Joseph* or (*Kalus* ADJ *Bystricky*) or *Kamshad* or *King* or *Korn* or *Kuenster* or *Lindsey* or *Lannum* or *Leichter* or *Lode* or *MacElwee* or *McCormack* or *McMullen* or *Makino* or *Malak* or *Marrkand* or *Mehta* or *Melhuish* or *Miller* or *Mockard* or *Moore* or *Morris* or *Mufson* or *Mullin* or *Norchi* or *O'Malley* or *Peters* or *Santos* or *Scott* or *Sellitto* or *Sievert* or *Smith* or *Sorenson* or *Spatz* or *Stack* or *Stairs* or *Swift* or *Thomsen* or *Warren* or *Weiss* or *Wetlaufer* or *Wheeler* or *Williams* or *Yogg* or *RJ* or *Josh* or *Rich* or *Beth* or *Steve* or *Debb* or *Tom* or *Joe* or *Dav* or *Jeff* or *Cole* or *Geir* or *Shag* or *Sandy* or *Nicholas*

or *Nick* or *Dan* or *Mike* or *Michael* or *Terry*
or *Chris* or *Tino* or *Manny*

Please note that the search terms include words that may appear
on the default "stop list" of words that are not indexed by some
database software. These words will need to be removed from the stop
list and the database reindexed prior to executing the search.

-- KFM