UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*  *  *  *  *  *  *  *  *  *  *  *  *    *
                                        *
LISA SVENSSON,                          *
                                        *
                  Plaintiff,            *
                                        *
                                        *
v.                                      *
                                        *
                                        *
PUTNAM INVESTMENTS, LLC, et             *
al.,                                    *
                                        *
                  Defendants.           *
                                        *
*  *  *  *  *  *  *  *  *  *  *  *  *    *
```

Civil Action No. 04-12711-PBS

BBO No. 351000


Plaintiff Svensson's
Memorandum in Support of
Her Opposition to Putnam's
Motion for Summary Judgment

    Plaintiff Lisa Svensson ("Svensson") submits this memorandum in support of her opposition to the motion of defendant Putnam Investments, LLC ("Putnam") for summary judgment.  As set forth more fully below, this court should deny Putnam's motion because there exist genuine issues of material fact and Putnam is not entitled to judgment as a matter of law.

1.    Facts.

    Svensson relies of the facts set forth in her "Response to Defendant Putnam's Local Rule 56.1 Statement of Fact"  ("Response to Putnam's Statement of Fact"), filed herewith, and the facts set out in her Fifth and Sixth Affidavits, filed herewith.  She also relies upon the facts set forth in her First, Second, Third and Fourth Affidavits, previously filed.  In addition, she relies upon the report of her expert Paul F. White, Phd., submitted herewith.

2.    Argument.

    2.1    This court should deny Putnam's motion for summary judgment because the evidence produced by Svensson, as more particularly set forth in Svensson's Response to Putnam's Statement of Fact, filed herewith, raises genuine issues of material fact as to Svensson's claims and Putnam is not entitled to judgment as a matter of law.

The court should deny Putnam's motion for summary judgment unless "the record demonstrates that there is no genuine issue of material fact and that...[Putnam is] entitled to judgment as a matter of law."[1] In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.[2]

In ruling on a motion for summary judgment, a court,

> must decide "whether, viewing the aggregate package of proof offered by [plaintiff] and taking all inferences in [plaintiff's] favor, [the plaintiff] has raised a `genuine` issue of fact as to whether the termination was motivated by [sex] discrimination." If there is sufficient evidence in the record from which a jury could infer that [defendant's] proffered reasons for firing [plaintiff] were pretextual and that it made its decision because of discriminatory animus, summary judgment is inappropriate.

Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000), quoting Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431 (1st Cir. 2000); Harlow v. Potter, 353 F.Supp.2d 109, 114 (D.Me. 2005).

"[C]ourts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." Santiago, 217 F.3d at 54; Dominguez, 202 F.3d at 433; Harlow, 353 F.Supp.2d at 114. See also Patrick v. Jansson Corp., 392 F.Supp.2d 49, 54 (D.Mass. 2005) ("[i]n Massachusetts, [s]ummary judgment is a disfavored remedy in the context of discrimination cases based upon disparate treatment. Thus, the issue of discriminatory intent in the great majority of cases is a question of fact." (internal quotation marks and citations omitted)); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005) ("In cases involving claims of employment discrimination, a defendant employer faces a heavy burden if it seeks to obtain summary judgment: summary judgment is disfavored in discrimination cases based on disparate treatment because the question of the employer's state of mind (discriminatory motive) is elusive and rarely is established by other than circumstantial evidence." (internal quotation marks omitted)).

---

[1] Devlin v. WSI Corporation, 833 F.Supp. 69, 73 (D. Mass. 1993). See also, LeBlanc v. Great American Insurance Company, 6 F.3d 836, 841 (1st Cir. 1993).

[2] LeBlanc, 6 F.3d at 841. See also, Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993).

In the present case, the court should deny Putnam's motion for summary judgment because the evidence, as more particularly set forth in Svensson's Response to Putnam's Statement of Fact, filed herewith, raises genuine issues of material fact and Putnam is not entitled to judgment as a matter of law.

    2.2    <u>The record contains sufficient evidence of gender discrimination to raise a genuine issue of material fact as to Svensson's Title VII and c. 151B discrimination claims under the Price Waterhouse mixed motive test or the McDonnell Douglas pretext analysis.</u>

Although Putnam claims that its termination, promotion, demotion and compensation decisions concerning Svensson were "sex neutral," the record shows otherwise.  At a minimum, the facts set forth above and in Svensson's Response to Putnam's Statement of Fact raise genuine issues of material facts as to whether those decisions were motivated by discriminatory animus.

Under both federal and Massachusetts law, gender discrimination may be proven through either direct or circumstantial evidence of discrimination.[3]  Both federal and Massachusetts courts analyze Title VII and c. 151B claims under either the pretext test enunciated in <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792 (1973), or the "mixed motive" test enunciated in <u>Price Waterhouse</u> v. <u>Hopkins</u>, 490 U.S. 228 (1989), as modified in <u>Desert Palace, Inc.</u> v. <u>Costa</u>, 539 U.S. 90 (2003).

    2.2.1    <u>Svensson's evidence raises a genuine issue of material fact as to discrimination under the mixed motive analysis.</u>

    (a).    <u>The mixed motive test.</u>

Under the Title VII mixed motive analysis, Svensson,

> must present evidence of discrimination on the basis of a forbidden bias, at which point defendants must then either "deny the validity or the sufficiency of the [employee's] evidence, and [have] the jury ... decide [ ] whether the [employee] has proved discrimination by a preponderance of the evidence, or prove that it would have made the same decision even if it had not taken the protected characteristic into account."[4]

"[A]ny evidence, whether direct or circumstantial, may be amassed to show, by preponderance,

---

[3] <u>Santiago-Ramos</u>, 217 F.3d at 53.  <u>See also</u> <u>Pope</u> v. <u>Potter</u>, 2005 WL 3178179, * 5 (D.R.I. 11/28/05); <u>Harlow</u>, 353 F.Supp.2d at 114; <u>Sullivan</u>, 444 Mass. at 39-40.

[4] <u>Burton</u> v. <u>Town of Littleton</u>, 426 F.3d 9, 19, quoting <u>Dominguez-Cruz</u>, 202 F.3d at 429 (second and third alterations and omission in original, internal quotation marks omitted).

discriminatory motive.[5]

Svensson need only "present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias."[6] The burden of <u>proof</u>, not just production, then shifts to Putnam to deny Svensson's evidence or to prove that it would have made the same decision absent consideration of Svensson's gender.[7]

Notably, 1991 amendments to Title VII provide that even if Putnam were able to show that it would have made the same decision absent any discrimination, this affirmative defense is only partial, shielding Putnam from damages and reinstatement, but leaving Putnam liable to pay Svensson's attorneys fees and to declaratory and injunctive relief.[8]

The c.151B mixed motive analysis is similar. Prior to the United States Supreme Court's decision in <u>Desert Palace</u>, the Title VII analysis had required that mixed motive be proven via "direct evidence." <u>Desert Palace</u> made clear that direct or circumstantial evidence would suffice. Although the Massachusetts courts, following <u>Wynn & Wynn, P.C.</u> v. <u>Massachusetts Commn. Against Discrimination</u>, 431 Mass. 655 (2000), continue to require that mixed motive be established via "direct evidence," in practice this means only that the evidence must be "strong" and must "demonstrate that at least one factor motivating the employer's decision is illegitimate."[9] Under Massachusetts law, direct evidence is that which "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace."[10]

---

[5] <u>Id</u>. at 20, citing <u>Desert Palace</u>, 539 U.S. at 101-02, 123 S.Ct. 2148 (2003).
[6] <u>Burton</u>, 426 F.3d at 20, citing <u>Hillstrom</u> v. <u>Best W. TLC Hotel</u>, 354 F.3d 27, 31 (1st Cir.2003). <u>See</u> <u>also</u> <u>Desert Palace</u>, 539 U.S. at 101, 123 S.Ct. 2148 (holding that the plaintiff must "present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice") (internal quotation marks omitted).
[7] <u>Weston-Smith</u> v. <u>Cooley Dickinson Hospital, Inc.</u>, 282 F.3d 60, 64-65 (1st Cir. 2002) (mixed motive analysis benefits employee because it "imposes on the employer the burdens of production and persuasion").
[8] <u>Weston-Smith</u>, 282 F.3d at 64.
[9] <u>Connolly</u> v. <u>Suffolk County Sheriff's Dept.</u>, 62 Mass. App. Ct. 187, 194 (2004).
[10] <u>Connolly</u>, 62 Mass. App. Ct. at 194, quoting <u>Wynn & Wynn</u>, 431 Mass. at 667.

(b).   <u>Svensson's evidence is strong enough to warrant application of the mixed motive test and creates a genuine issue of material fact precluding summary judgment</u>.

In the present case, Svensson's evidence, both direct and circumstantial, is sufficiently strong to warrant use of the mixed motive analysis under both Title VII and c.151B, and to create genuine issues of material fact precluding summary judgment on both discrimination claims. As is clearly demonstrated by Svensson's Response to Putnam's Statement of Fact, filed herewith, her Fifth and Sixth Affidavits, filed herewith, her First, Second, Third and Fourth Affidavits, previously filed, and the report of Paul F. White, Phd., submitted herewith, Svensson has raised a genuine issue of material fact with respect to her claim that the adverse employment actions taken against her were motivated in substantial part by gender discrimination..

2.2.2   <u>Svensson's evidence raises a genuine issue of material fact as to discrimination under the McDonnell Douglas burden shifting test</u>.

Even if the court rules that Svensson's evidence is insufficient to warrant application of a mixed motive analysis, Svensson's evidence of discrimination satisfies the three part burden shifting test enunciated in <u>McDonnell Douglas</u> and establishes genuine issues of material fact precluding summary judgment on Svensson's Title VII and c.151B discrimination claims.

(a).   <u>Svensson has established a prima facie case</u>.

The Title VII and c.151B versions of the <u>McDonnell Douglas</u> test are almost identical. In the first stage, the plaintiff employee must establish a <u>prima facie</u> case:

> An employee alleging sex discrimination must first establish a <u>prima facie</u> case by showing that: (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person.[11]

---

[11] <u>Santiago</u>, 217 F.3d at 54; <u>Pope</u>, 2005 WL 3178179, * 5; <u>Harlow</u>, 353 F.Supp.2d at 114. <u>See also</u> <u>Frederick</u> v. <u>Richardson Electronics, LTD.</u>, 2005 WL 2542929, *5 (Mass. Super. Sep 19, 2005), quoting <u>Lipchitz</u> v. <u>Raytheon Co.</u>, 434 Mass. 493, 502 (2001) (Massachusetts G.L. c. 151B "sets out four elements of a <u>prima facie</u> case for discrimination based on gender: membership in a protected class, harm, discriminatory animus, and causation.").

The plaintiff's task "is not onerous."[12]  In making a prima facie showing, the "plaintiff is not required to demonstrate she was treated differently from similarly situated employees who were not in the protected class."[13]

As is clearly demonstrated by Svensson's Response to Putnam's Statement of Fact, filed herewith, her Fifth and Sixth Affidavits, filed herewith, her First, Second, Third and Fourth Affidavits, previously filed, and the report of Paul F. White, Phd., submitted herewith, Svensson has established a prima facie case that Putnam's conduct in terminating her, failing to promote her, demoting her and in setting her compensation was discriminatory.

(b).    Putnam's proffered non-discriminatory reasons.

Svensson having made out a prima facie case,

> the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action....  The employer's burden is merely a burden of production; the employee maintains the burden of proof throughout....  If the employer meets its burden, the presumption of discrimination evaporates.[14]

In the present case, Putnam apparently asserts that Svensson was terminated because: (1) she lied to Mr. Brooks about individuals with whom she had consulted in preparing a report concerning one of her subordinates and (2) that she was not a good manager of her team.  For the reasons set forth in Svensson's Response to Putnam's Statement of Fact, filed herewith, her Fifth and Sixth Affidavits, filed herewith, her First, Second, Third and Fourth Affidavits, previously filed, and the report of Paul F. White, Phd., submitted herewith, Svensson has created a genuine issue of material fact with respect to the falsity of Putnam's proffered reasons and whether they are a pretext for discrimination.

(c).    Svensson's evidence of pretext.

Assuming, without admitting, that Putnam has proffered legitimate, non-discriminatory reasons satisfying its stage two burden, in the third stage of the McDonnell Douglas test,

---

[12] Santiago, 217 F.3d at 54; Pope, 2005 WL 3178179, * 5; Harlow, 353 F.Supp.2d at 114; Sullivan, 444 Mass. at 46.
[13] Harlow, 353 F.Supp.2d at 114.
[14] Santiago, 217 F.3d at 54.  See also Sullivan, 444 Mass. at 50; Pope, 2005 WL 3178179, * 5.

> with the initial `presumption` of discrimination removed, it falls upon
> [Svensson] to "present sufficient evidence to show both that [Putnam's]
> articulated reason....is a pretext and that the true reason is discriminatory."[15]

Under Massachusetts law, a plaintiff can satisfy the third stage of the <u>McDonnell Douglas</u> test by showing

that even one of many reasons asserted by the employer is a pretext.[16]

    "There is no mechanical formula for finding pretext."[17]  To establish pretext, the plaintiff need only

create a genuine dispute as to whether the employer actually believed the proffered reason.[18]  The

employer's proffered reasons for the adverse employment action, even if "unsound or even absurd ... and

arbitrary or unwise"  are not by virtue of that alone shown to be pretexts.[19]

    Pretext can be established by showing "either that [plaintiff's] dismissal was (i) 'more likely

motivated' by discrimination than by the explanation proffered by [the employer] or (ii) the proffered

'explanation [was] unworthy or credence' in circumstances where the suspect denial, taken together with

other facts, suggests such a motivation."[20]  The plaintiff can show that the employer's proffered reasons are

pretextual by various means, including evidence of "discriminatory comments made by a decisionmaker or

those in a position to influence the decisionmaker,"[21] by showing that the proffered "nondiscriminatory

reasons were after-the-fact justifications, provided subsequent to the beginning of legal action"[22] by

"showing 'weaknesses... or contradictions in the employer's proffered legitimate reasons'..."[23] or by

showing that the employer has altered its proffered reasons for the employment action.[24]

---

[15] <u>Santiago</u>, 217 F.3d at 54, quoting <u>Thomas</u> v. <u>Eastman Kodak Co.</u>, 183 F.3d 38, 56 (1st Cir. 1999).  <u>See also</u> <u>Pope</u>, 2005 WL 3178179, * 5; <u>Harlow</u>, 353 F.Supp.2d at 115; <u>Frederick</u>, 2005 WL 2542929, *5.

[16] <u>Abramian</u> v. <u>President and Fellows of Harvard College</u>, 432 Mass. 107, 117 (2000); <u>Dragonas</u> v. <u>School Committee of Melrose</u>, 64 Mass. App. Ct. 429, 442 (2005), quoting <u>Lipchitz</u>, 434 Mass. at 498.

[17] <u>Che</u> v. <u>MBTA</u>, 342 F.3d 31, 39 (1st Cir. 2003).

[18] <u>Iorio</u> v. <u>Aramark Servicemaster</u>, 2005 WL 3728715, *16 (D. Mass. 9/30/05).

[19] <u>Matthews</u> v. <u>Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 128 (1997).  <u>See also</u> <u>Iorio</u>, 2005 WL 3728715, *15.

[20] <u>Straughn</u> v. <u>Delta Air Lines, Inc.</u>, 250 F.3d 23, 35 (1st Cir. 2001).

[21] <u>Santiago</u>, 217 F.3d at 55.

[22] <u>Id.</u> at 56.

[23] <u>Id.</u>

[24]  <u>Dominguez-Cruz</u>, 202 F.3d at 432; <u>Clark</u> v. <u>Lincare, Inc.</u>, 2005 WL 1721213, * 12 (D. Mass. 7/21/05).  <u>See also</u> <u>Webber</u> v. <u>Int. Paper Co.</u>, 417 F.3d 229, 234 (Applying Maine Human Rights Act)(circumstantial evidence of pretext includes, without limitation, "evidence of differential treatment, evidence of discriminatory comments, statistical evidence and comparative evidence"); <u>Thompson</u> v. <u>Southwest Airlines Co.</u>, 2006 WL 287850, *7 (D.N.H. 2/6/06) ("Pretext ... can be proven: (1) by 'show[ing] that discriminatory comments were made by the key

Under Title VII and Massachusetts law, a plaintiff may establish that the defendant's stated reasons for terminating him are a pretext by "identify[ing] and relat[ing] specific instances where persons similarly situated in all relevant aspects were treated differently."[25]  "A plaintiff must typically point to another person, similarly situated to him in all relevant respects, who was treated differently by the employer."[26] "A direct showing that a similarly situated [male] employee was treated differently is 'the most probative means of establishing that the [female] plaintiff's termination was a pretext for gender discrimination.'"[27] "The plaintiff must identify other employees to whom he is similarly situated in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations."[28]

However the identity between the differently treated workers need not be exact.  According to the Clark court,

> the comparator that a plaintiff provides need not be a "perfect replica[ ]," but she must bear a reasonably close resemblance with respect to the pertinent `facts` and circumstances.  At bottom, a court must determine "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."[29]

Evidence that,

> a terminated plaintiff has `been` ranked or evaluated above a younger or male coworker working in the same position who is not laid off is precisely the kind of indirect evidence of discriminatory intent that discovery elicits, which will permit a plaintiff to establish a prima facie case.[30]

The Sullivan court concluded:

> Specifically, there is undisputed, admissible evidence that Liberty retained

---

decisionmaker or those in a position to influence the decisionmaker,' ...; (2) by 'show[ing] that [the] nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action,' ...; (3) 'by presenting evidence of disparate treatment,' ...; or (4) 'by showing that the [defendant's] proffered explanation is unworthy of credence.' ...").

[25] Matthews, 426 Mass. at 129 (internal quotation marks omitted).

[26] Id. at *11, citing Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999); Matthews, 426 Mass. 122, 686 N.E.2d 1303 at 1309-10.

[27] Clark, 2005 WL 1721213, *10.

[28] Id. at 130, citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994).

[29] 2005 WL 1721213, *11, citing Conward, 171 F.3d at 20.

[30] Sullivan, 444 Mass. at 46.

> in its Boston office male attorneys with the same job classification as
> Sullivan, who had been rated lower than she had in the last performance
> evaluation conducted before the reduction in force.  That Liberty retained
> lower-rated, similarly situated male employees eliminates one of the "most
> obvious explanations for the discharge"-- her "lower proficiency." ...  This
> evidence alone, and certainly in combination with other admissible
> evidence, would permit a jury reasonably to conclude that Liberty's
> termination of Sullivan, "if otherwise unexplained, [is] more likely than not
> based on the consideration of impermissible factors."[31]

Also valid as proof of pretext is evidence that the employer relied upon sexual stereotypes in making the adverse employment decision.  In <u>Centola</u> v. <u>Potter</u>, 183 F.Supp.2d 403 (D.Mass. 2002), the District Court stated: "If an employer acts upon stereotypes about sexual roles in making employment decisions, or allows the use of these stereotypes in the creation of a hostile or abusive work environment, then the employer opens itself up to liability under Title VII's prohibition of discrimination on the basis of sex."  <u>Id</u>. at 409.

While Putnam claims (Putnam Brief pp. 19-20) that IMD officers who served in different investment groups from Svensson are not valid comparators, that is not correct.  IMD employees with comparable job functions who served in different groups are valid comparators.  <u>Diamond</u> v. <u>T. Rowe Price Assoc., Inc.</u>, 852 F.Supp. 372 (D.Md. 1994)  (court allowed the plaintiff investment professional, who was denied a promotion to Managing Director, to use as comparators other portfolio managers who had been promoted to Managing Director, despite the fact that they managed a range of funds in different areas of the company); <u>Sobol</u> v. <u>Kidder Peabody & Co.</u>, 49 F.Supp.2d 208 (S.D.N.Y 1999).[32]

Once pretext is established, the "same evidence used to show pretext can support a finding of discriminatory animus if it enables a factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action."  <u>Straughn</u>, 250 F.3d at 34; <u>Patrick</u>, 392 F.Supp.2d at 54, quoting <u>Lattimore</u> v. <u>Polaroid Corp.</u>, 99 F.3d 456, 465 (1st Cir. 1996) ("When the <u>prima facie</u> case

---

[31] <u>Id</u>. at 48-49.

[32] <u>See</u> <u>also</u> <u>Nakai</u> v. <u>Wickes Lumber Co.</u>, 906 F.Supp. 698, 704-05 (D. Me. 1995)  (held that the plaintiff in an ADEA suit had submitted sufficient evidence of pretext based partly on a comparison of the plaintiff store manager to managers of other area stores); <u>Rossiter</u> v. <u>IBM Corp.</u>, 2005 WL 2722929, *10 (D. Mass. 10/24/05) (co-workers who directly compete against each other for promotion are valid comparators).

is very strong and disbelief of the proffered reason provides cause to believe that the employer was motivated by a discriminatory purpose, proof of pretext 'may' be sufficient [without the introduction of any additional evidence of discrimination]." (Bracketed text in original)).  Thus, although the plaintiff must prove that the employer's real reason is discriminatory, evidence of pretext warrants an inference that the real reason was discrimination.

In the present case, Svensson's evidence strongly supports an inference that the reasons proffered by Putnam for terminating her, failing to promote her, demoting her and as to her compensation are mere pretexts for discrimination.  For the reasons set forth in Svensson's Response to Putnam's Statement of Fact, filed herewith, her Fifth and Sixth Affidavits, filed herewith, her First, Second, Third and Fourth Affidavits, previously filed, and the report of Paul F. White, Phd., submitted herewith, Svensson has created a genuine issue of material fact with respect to the falsity of Putnam's proffered reasons and whether they are a pretext for discrimination.[33]

2.2.3   <u>Svensson's discrimination claims based on Putnam's conduct in failing to promote her, demoting her and in setting her compensation are not time barred.</u>

Putnam claims that Svensson's discrimination claims arising from Putnam's failing to promote her, demoting her, and setting her compensation are time barred.   Putnam is wrong for a number of reasons.  First, much of the Putnam conduct on which Svensson relies occurred within 300 days prior to March 1, 2004, the date on which Svensson filed her charge with the Massachusetts Commission Against Discrimination ("MCAD").  Charges based on such conduct were, therefore, unquestionably timely filed.

Second, even to the extent Svensson's claims are based on Putnam conduct occurring more than 300 days prior to the MCAD filing, the statute of limitations is extended by application of the discovery rule because, although Svensson was aware of the adverse employment actions taken against her, she

---

[33] Konstantin Stoev, one of Svensson's research department team members, testified to the high quality of Svensson's management skills.  ("Lisa's appointment to manage ... [us] ... was the best thing that happened to the team ….  Drawing on her talent and initiative, she reversed the degenerative processes that had set in, inspired the members to show excellent work and attracted new members." Deposition of Konstantin Stoev, August 24, 2006, p. 30, ll. 12-17.).

neither knew nor had reason to know of Putnam's discriminatory motivation for such actions until less than 300 days prior to filing her MCAD charge.

Third, the statute of limitations does not bar Svensson's claims arising from failure to promote, demotion or compensation, because Putnam's discriminatory conduct formed a part of its general policy and standard operating procedure of discriminating against women in promotions, demotions compensation and other employment matters.  Because that policy (as well as Putnam's discriminatory conduct against Svensson) continued into the period less than 300 days prior to Svensson's MCAD charge, Svensson has established a systemic continuing violation and her claims are timely.

Finally, the limitations period applicable to Svensson's claims based upon her demotion should be equitably tolled because Putnam's notice to Svensson of the demotion decision was equivocal as to whether the demotion was permanent or merely temporary until Putnam placed Svensson in another Portfolio Manager position.

      2.2.3.1      <u>Much of Putnam's promotion, demotion and compensation related conduct on which Svensson relies occurred within 300 days prior to the filing of her MCAD charge and claims based on such conduct are, therefore, timely</u>.

Based upon the facts set out in Svensson's Fifth and Sixth Affidavits, many of Putnam's actions relative to her claims concerning promotion, demotion, termination and compensation occurred within 300 days prior to her filing of the MCAD charge.

      2.2.3.2      <u>The discovery rule delayed accrual of Svensson's discrimination claims based on promotion, demotion and compensation until within 300 days of her MCAD filing and claims based on such conduct are, therefore, timely</u>.

Svensson's claims based on Putnam's failure to promote her to MD and other positions, her demotion to the analyst position, and Putnam's discriminatory decisions with regard to her compensation are not time barred because such claims accrued only when Svensson discovered that discriminatory animus motivated Putnam's actions.  Massachusetts law with regard to the accrual of c.151B claims is clear:  a claim does not accrue until the plaintiff knows or reasonably should know <u>both</u> of the adverse

11

employment actions <u>and</u> that such actions were discriminatory.  Only then can a plaintiff reasonably be

expected to file an administrative claim.

In <u>Silvestris</u> v. <u>Tantasqua Regional School District</u>, 446 Mass. 756, 767 (2006), the Supreme

Judicial Court explained that the defendant's conduct, by itself, is not enough to set the statute running.

What is required is knowledge, or reason to know, of the discriminatory nature of that conduct.[34]  In

<u>Soriano</u>, the court stated:

> In <u>Wheatley</u>, where age discrimination was alleged, the Supreme Judicial
> Court held that "the limitations period does not start to run until the
> employee knows or should know that he or she has been or will be replaced
> by a person outside the protected age group." <u>Wheatley v. American
> Telephone & Telegraph Co.</u>, 418 Mass. at 398. For all practical purposes,
> this means that the limitations period does not begin to run until the
> employee knows or should know information sufficient to make out a <u>prima
> facie</u> case of discrimination. In other words, the Supreme Judicial Court in
> <u>Wheatley</u> decided to <u>start the limitations clock running, not when the
> adverse employment action took place, but when the plaintiff knew or
> should have known facts sufficient to permit an inference that the adverse
> employment action was motivated by discrimination.</u>[35]

With regard to federal law, Putnam cites <u>Marrero-Gutierrez</u> v. <u>Molina</u>, 491 F.3d 1 (1st Cir.

2007) for the proposition that the discovery rule does not apply.  However, that is not the full

story.  The <u>Marrero</u> court relied on the decision in <u>Morris</u> v. <u>Government Development Bank of

Puerto Rico</u>, 27 F.3d 746 (1st Cir. 1994).  However, <u>Morris</u> and its progeny do <u>not</u> categorically

reject application of the discovery rule.  In <u>Commonwealth of Massachusetts</u> v. <u>Bull HN

Information Systems, Inc.</u>, 143 F.Supp.2d 134 (D. Mass. 2001), the United States District Court

for the District of Massachusetts explained that both <u>Morris</u> and its predecessor, <u>American

Airlines, Inc.</u> v. <u>Cardoza-Rodriguez</u>, 133 F.3d 111 (1st Cir. 1998), held that a plaintiff's

---

[34] <u>Silvestris</u>, 446 Mass. at 767 (holding that plaintiffs' MEPA claim, based on assertion that they received less credit for past work experience and education than male counterparts, accrued only when plaintiffs had reason to know of the starting salaries of male workers and their levels of experience and education); <u>Wheatley</u> v. <u>American Telephone and Telegraph Co.</u>, 418 Mass. 394, 398 (1994); <u>Soriano</u> v. <u>City of Lawrence Police</u>, 2000 WL 1584852, *3 (Mass. Super. 10/23/00); <u>Soo Tang Tan</u> v. <u>Stonehill College</u>, 2001 WL 1602828, * 14 (MCAD 1/30/01).  <u>See also</u> <u>Harrison</u> v. <u>Kraft Foods, Inc.</u>, 2007 WL 3232552, *2-3 (D. Mass. 10/30/07); <u>Kimball</u> v. <u>Spencer-East Brookfield Regional</u> <u>School District</u>, 2005 WL 4881100, *3 (Mass. Super. 6/7/05); <u>Ackerson</u> v. <u>Harte-Hanks Data Tech.</u>, 1995 WL 1146237, *1 (Mass. Super. 11/16/95).
[35] 2000 WL 1584852, *3. (Emphasis added.)

employment discrimination claim does not accrue if the plaintiff lacks sufficient information to

enable him to bring a claim:

> Significantly, the <u>Morris</u> court then tempered this statement by suggesting
> that a different outcome might have been appropriate had Morris lacked
> "sufficient information" at the time of his suspension "to enable him to
> bring a discrimination claim against the bank." <u>Morris</u>, 27 F.3d at 750.
>
> The First Circuit walked a similarly fine line in discussing the ADEA
> claims at issue in <u>American Airlines</u>.... American filed a complaint in
> federal district court seeking a declaratory judgment that the waivers were
> valid. The employees then counterclaimed, alleging violations of the
> ADEA, the OWBPA, and state law. The court agreed with the employees
> that the waivers violated the OWBPA. In holding the respondents' ADEA
> counterclaims time-barred, however, the court indicated that the employees'
> claims accrued at the time they accepted the [early retirement plan], even
> though American did not replace them with younger workers until a later
> date. <u>American Airlines</u>, 133 F.3d at 123....
>
> <u>Again, however, as in Morris, the American Airlines court then softened the
> effect of its ruling by reiterating that a cause of action does not accrue at the
> time of an adverse employment action unless the employee has "sufficient
> information" to recognize that the adverse action was discriminatory.</u> <u>Id</u>.
>
> <u>The rule that emerges from these cases is slippery at best. To trigger the
> ADEA's statute of limitations, an employee clearly must have enough
> information to "know[ ] or ha[ve] reason to know of the discriminatory act
> that underpins his cause of action.</u>" <u>Morris</u>, 27 F.3d at 749. On the other
> hand, the employee need not "know all the facts that support his claim." <u>Id</u>.;
> <u>accord</u> <u>American Airlines</u>, 133 F.3d at 123.[36]

Thus, like Massachusetts law, under federal law Svensson's claims based on failure to promote, demotion

and compensation did not accrue until Svensson knew or should have known that she was the victim of

discrimination.

   In the present case, although Svensson knew of Putnam's adverse actions with regard to her

employment, she neither knew nor had reason to know knew that those actions were motivated by

discriminatory animus.  For example, with regard to Putnam's failure to promote her to managing

Director ("MD"), Svensson had been told that she had been nominated to MD on more than one occasion;

had been promised by her superior in 2002 to be nominated again; did not become aware that no

---

[36] 143 F.Supp.2d at 153-54.  (Emphasis added.)

nominations for 2003 would be made until August 2003; and did not become aware until discovery in this case that her internal Putnam rating as an investment professional had been changed by Putnam officials, for reasons unexplained, from 4.78 to 3.0.

Similarly, with regard to Putnam's failure to promote Svensson to head of the research department, as demonstrated in Svensson's Fifth and Sixth Affidavits, Mr. Landis left as Director of Research in March 2003 and Mr. Brooks was hired to replace him in April 2003. As she had just been made Associate Director of Research in January 2003, Svensson was clearly qualified to assume that position. While she clearly knew of Brooks' assumption of the job by April 2003, Svensson did not discover the discriminatory motivation for his selection until the time of her own termination.

Nor did Svensson have reason to know more than 300 days prior to filing her MCAD charge that Putnam's failure to offer her other portfolio management positions as they became available after her demotion was motivated by discriminatory animus, as she was told continually that she was qualified and would be considered for appointment to those positions. In addition, Putnam failed to appoint her to such positions as they occurred during the 300 day period prior to the filing of her MCAD charge.

The discovery rule also applies to Svensson claims based on Putnam's decisions with respect to her compensation, especially in regard to compensation information about other investment professionals not revealed by Putnam until the discovery phase of this case, including information which Putnam's expert admitted he reviewed but which Putnam did not furnish to Svensson until November 26, 2007.

Because the discovery rule delayed accrual of Svensson's claims for discrimination based on failure to promote, demotion and compensation until less than 300 prior to the date on which she filed her MCAD claim, all such claims are timely.[37]

> 2.2.3.3    Putnam's discriminatory conduct against Svensson formed a part of its general policy and standard operating procedure of discriminating against

---

[37] Putnam claims (Putnam Brief, p. 13 n.3) that Svensson's diary shows that she knew as early as 1998 that she was being discriminated against. That is not correct. Svensson's notes describe certain events that took place, but Svensson, prior to her termination, did not understand that the Putnam employment actions against her were motivated by gender discrimination.

women and Svensson has established a systemic continuing violation
rendering her promotion, demotion and compensation claims timely.

Svensson's claims based on failure to promote, demotion and compensation also were timely filed

with the MCAD because the continuing violation doctrine tolls the statute of limitations.  Putnam claims

that Svensson cannot establish a continuing violation because promotion, demotion or compensation

decisions are discrete acts as to each of which a separate statute of limitations begins to run on the date of

the act.  However, Putnam simply misses the point and fails to take into account the nature of Svensson's

discrimination claims.

In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002) the United

States Supreme Court held that a "discrete discriminatory act transpires only at the time it takes place,

even if it was related to acts that were timely filed" and that "each discriminatory act starts a new clock

for filing charges alleging that act." Id. at  2072-73.  See also Ocean Spray, 441 Mass. at 643 n.16.  In

claiming that the employment actions of which Svensson complains were "discrete," Putnam is

attempting to apply that rule to this case.  However, even assuming that the Putnam promotion, demotion

and compensation decisions regarding Svensson were discrete acts, that would be relevant only if

Svensson were asserting a continuing violation based upon a so called "serial violation," one in which a

series of discrete acts occurs and those outside the limitations period are motivated by the same

discriminatory animus as at least one act within the limitations period.

Svensson is not asserting such a continuing violation. Rather, as is clear from her Amended

Complaint, Svensson asserts a so-called systemic continuing violation, arguing that she has been harmed

by the application to her of a general discriminatory policy at Putnam aimed at all women, which policy

continued to exist into the limitations period.  See Amended Complaint p. 8, ¶23.

The Massachusetts and federal courts recognize two kinds of continuing violation, "systemic" and

"serial":

A systemic violation is the maintenance of a general practice or policy aimed
at members of a protected class of employees. ... By contrast, a serial
violation is comprised of an interlinked succession of related events,

15

stemming from a common discriminatory animus, with at least one act of harassment occurring within the limitations period.[38]

A systemic violation,

> occurs where there exists a discriminatory policy or practice that itself continues into the limitation period, regardless of whether there is an identifiable act of discrimination within the period. … Systemic violations refer to the general practices and policies of an employer, such as systems of hiring, promotion, training….[39]

To prove a systemic violation,

> a plaintiff must convincingly allege that she has been harmed by the application of a discriminatory practice or policy that continued or is continuing into the statutory time period.[40]

While the holdings in Morgan and Ocean Spray may reject application of the continuing violations doctrine to discrete acts where a serial violation is alleged, the discrete nature of the discriminatory acts does not preclude the existence of a systemic continuing violation. For example, the Ocean Spray decision itself recognizes that had the facts shown systemic violation, the continuing violation doctrine would have been applicable. In Ocean Spray, where the court held the continuing violation exception inapplicable to plaintiff's claims that defendant had failed to make a reasonable accommodation his disability, the Supreme Judicial Court distinguished its earlier decision in Lynn Teachers Union Local 1037 v. MCAD, 406 Mass. 515 (1990), on the ground that, in Lynn, the improper conduct was pursuant to a generally applicable, system-wide policy:

> Our decision in Lynn ... is not to the contrary. That case arose because the school committee of Lynn had a rule in the 1960's and 1970's requiring teachers to resign if they became pregnant.... The teachers who had been forced to resign during pregnancy lost seniority credit for all of the years that they taught before being forced to resign.... We upheld the

---

[38] Ocean Spray, 441 Mass. at 643 n.14.  (Emphasis added).  See also Arroyo-Audifred v. Verizon Wireless, Inc., 431 F.Supp.2d 215, 218-219 (D.P.R. 2006).
[39] Id. at 282.
[40] Id. citing, inter alia, Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir.1994).   See also Grotlisch v. General Dynamics Defense Systems, Inc., 28 Fed. Appx. 3, 5, 2002 WL 253928 (1st Cir. 2/11/02) (unreported) (a "policy" for purposes of systemic violation requires "a showing of a general practice aimed at members of a protected class of employees'); Figueroa-Garay v. Municipality of Rio Grande, 364 F.Supp.2d 117, 124 (D.P.R. 2005) (noting that for a systemic violation the plaintiff is not required to show an identifiable discrete act of discrimination transpiring within the limitations period so long as the policy continues to exist into the limitations period).

> commission's application of the continuing violation doctrine.... The crucial
> difference between the "refusal to credit" at issue in the <u>Lynn</u> case and the
> "refusal to accommodate" at issue in this case is that the "refusal to credit"
> was the union's generally applicable, system-wide policy, while a refusal to
> accommodate is, necessarily, a determination made on a case-by-case basis.
> There, we saw the incorporation of a prior discriminatory rule into an
> existing <u>system</u> as "breath[ing] new life" into a prior illegal system.... When
> an employer engages in systemic discrimination, the "true character and
> enormity of the discriminatory environment" can only be understood by
> examining the continuing system as a whole.[41]

Federal courts also have held that <u>Morgan</u> did not undermine the continued vitality of the systemic continuing violation doctrine. For example, the court in <u>Arroyo-Audifred</u> held "that <u>Morgan</u> supplants First Circuit jurisprudence on systemic violations in hostile work environment cases," but not otherwise. Noting that the plaintiff in that case did not assert a claim for hostile work environment, the court held that he had stated a claim under the systemic continuing violation and that his claim was not, therefore, time barred.[42]

In the present case, Svensson has alleged and established a systemic continuing violation. She has presented evidence that Putnam maintained, into the 300 day limitations period, a general policy or standard operating procedure, of discriminating against women. Pursuant to that policy,

> highly qualified, intelligent and experienced women, such as Svensson,
> were repeatedly and consistently denied promotional opportunities granted
> to male colleagues with lesser qualifications, experience and intelligent,
> particularly promotions to the level of Managing Director and Partner, at
> which level women, who were underrepresented in all non-clerical and
> managerial employment at Putnam, were even more egregiously short
> changed. This deliberate under-representation of women imposed a so-
> called "glass ceiling" on their career opportunities, especially married
> women with children or who had plans to have children, including
> Svensson.

Amended Complaint, p. 8 ¶23. Svensson has provided evidence that this policy was applied to female Putnam employees generally, and to herself in particular, and that the policy continued to be applied into

---

[41] 441 Mass. at 646 n.18.

[42] <u>See</u> <u>also</u> <u>Johnson</u> v. <u>Spencer Press of Maine, Inc.</u>, 211 F.R.D. 27, 30 (2002) (same); <u>Gulino</u> v. <u>The Board of Education of the City School District of the City of New York</u>, 236 F.Supp.2d 314, 324-26 (S.D.N.Y. 2002) (holding that except for hostile work environment cases, <u>Morgan</u> did not alter the law of systemic violations); <u>Moore</u> v. <u>Chertoff</u>, 437 F.Supp.2d 156, 161 (D.D.C. 2006) (same).

the limitations period.   See Svensson's Response to Putnam's Statement of Fact, filed herewith, her Fifth and Sixth Affidavits, filed herewith, her First, Second, Third and Fourth Affidavits, previously filed, and the report of Paul F. White, Phd., submitted herewith.

Because Svensson has established a systemic continuing violation, her claims for failure to promote, demotion and discriminatory compensation are not time barred.[43]

> 2.2.3.4    The limitations period applicable to Svensson's claims based upon her demotion to GER should be equitably tolled because Putnam's notice to Svensson of the demotion decision was equivocal as to whether the demotion was permanent or merely temporary until Putnam placed Svensson in another PM position.

"Equitable tolling is available in circumstances in which the plaintiff is excusably ignorant about the six-month [or 300 day as the case may be] statutory filing period ... or where the defendant or the MCAD has affirmatively misled the plaintiff."[44]   Where an employer's notice to the plaintiff employee of the adverse employment action is equivocal, the limitations period is tolled until the employee reasonably should know that a specific adverse action is definitely going to occur.  In the present case,  Putnam held out to Svensson the possibility that, after an undefined time in GER, she would be allowed to return to a Portfolio Manager position within the company.   See Svensson's Response to Putnam's Statement of Fact and her Fifth and Sixth Affidavits, filed herewith.

Putnam's notice to Svensson of her demotion was equivocal.  It failed to advise Svensson that the demotion was to be permanent, as opposed to the GER position being simply a short term place to "park" Svensson until another PM position could be found for her.  In addition, Putnam's statements to Svensson holding out to her a possibility of future promotion to a PM position at Putnam, thereby created a situation

---

[43] Putnam's reliance on Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162 (2007), in misplaced. Ledbetter simply states that the focus in a discriminatory compensation claim should be on the compensation decision and that each pay check does not give rise to a new limitations period.  Here, Svensson is not relying on the so-called paycheck accrual rule.  Rather, she asserts (1) that the discovery rule applies because she neither knew nor had reason to know that Putnam's compensation decisions were discriminatory until within the limitations period and (2) that the compensation decisions were part of a systemic continuing violation.

[44] Andrews v. Arkwright Mutual Insurance Co., 423 Mass. 1021, 1022 (1996).  See also Wheatley v. American Telephone and Telegraph Co., 418 Mass. 394, 399 n.8 (1994); Ross v. Raytheon Co., 2001 WL 1455863, *2-3 (11/1/01); Hill v. Suntory Water Group, Inc., 2003 WL 25278767 (Mass. Super. 1/30/03); Davis v. Lucent Technologies, Inc., 251 F.3d 227, 234 (1st Cir. 2001); Harrison v. Kraft Foods, Inc., 2007 WL 3232552, *2-3 (D. Mass. 10/30/07); Siegal v. Mascot Petroleum Co., 2005 WL 1862623, *1 (D.Mass. 8/3/05).

18

where it was reasonable for Svensson to delay filing discrimination charges against Putnam which would

likely jeopardize her eligibility for the potential promotion.

Massachusetts courts have recognized that equitable tolling should apply in such a situation.  In

Wheatley, the Supreme Judicial Court held that "the statute of limitations is only triggered by an

unequivocal discharge [or demotion], and that an individual is not unequivocally discharged if an

employer continues to hold out the possibility of employment."[45]   In a footnote, the Wheatley court stated

"We comment, however, that a reasonable person who has been informed that his or her employment

would be terminated on a specified date might not file an employment discrimination claim during this

'transition period' because  'the filing of such a charge may prejudice any pending reconsideration of the

[termination] decision.'"[46]

The Ross court applied equitable tolling where the company had held out the possibility of future

employment:

> This court concludes that the period between November 1997 and
> September 1998 is not unreasonably long and should be considered a
> transition period during which the statute of limitations is tolled. In light of
> Ross's continued attempts at employment within Raytheon during this
> transition period and the possibility that Ross may have prejudiced his
> employment efforts had he filed his claim with the MCAD, the limitations
> period should be tolled until September 4, 1998, the date of his termination.
> This result is consistent with the reality of the situation: if Ross had been
> successful in obtaining other employment with Raytheon, it is highly
> unlikely that he would have brought a discrimination claim.[47]

Similarly, in Hill, where the employer had sent the employee home in violation of c.151B's handicap

discrimination provisions, the court applied equitable tolling because the employer had held out the

possibility of reemployment:

> The defendant additionally claims that its act in sending Hill home on May
> 11, 1999, triggered the six-month statute of limitations under G. L. c. 151B,
> § 5. The plaintiff counters that the limitations period was equitably tolled
> until November 11, 1999, by Belmont Springs' leading him to believe until
> then that the company might take him back and/or restructure his position.

---

[45] Ross, 2001 WL 1455863, *2, citing Wheatley, 418 Mass. at 398.
[46] Wheatley, 418 Mass. at 399 n.8, quoting Delaware State Coll. v. Ricks, 449 U.S. 250, 266 n.2 (1980).
[47] 2001 WL 1455863, *3.  (Emphasis added.)

> See Wheatley …; Ross …. There was enough evidence presented at trial
> from which a jury could infer that Hill was induced to forbear filing a claim
> during this "transition period" for the court to deny the defendant's motion
> on this score.[48]

And in Harrison, the court equitably tolled the limitations period where the employer had told the

employee that he would be reinstated after his DUI charges had been resolved, either in his current

position or a different position within the company.[49] [50]

Because Putnam held out the potential for future promotion back to a PM position, and failed to

make clear to Svensson that the demotion was permanent rather than simply a short detour on her path as

a PM, Putnam induced Svensson to delay filing her demotion related MCAD charges and the limitations

period should be equitably tolled.

    2.3    <u>This court should deny summary judgment on Svensson's Massachusetts Equal Rights Act ("MERA") claim.</u>

Putnam claims that it is entitled to summary judgment on Svensson's MERA claim because that

claim is preempted by c.151B, §9.  In support of that contention, Putnam sites but a single case, Gasior v.

Massachusetts Gen. Hosp., 446 Mass. 645, 646 (2006).  Putnam Brief, p. 24.  Not only does Putnam

misinterpret Massachusetts law, its citation to Gasior is grossly misleading.

Putnam purports to quote the Supreme Judicial Court in Gasior for the proposition that "MERA

claim was barred by the exclusivity provision of G.L. c. 151B."  However, the Supreme Judicial Court in

Gasior made no such ruling.  In fact, it expressly stated that it was <u>not</u> deciding that issue. Id. at 645, n.2

("The judge allowed MGH's motion to dismiss as to that claim, but did not report that aspect of her order

to the Appeals Court.  <u>We therefore do not consider it.</u>" (Emphasis added)).  What Putnam attempts to

pass off as the ruling of the Supreme Judicial Court is in fact only a summary of what the defendant in

contended in the trial court.

---

[48] 2003 WL 25278767.

[49] 2007 WL 3232552, *3.

[50] Adamczyk v. Augat, Inc., 52 Mass. App. Ct. 717 (2001), in which the court declined to apply equitable tolling, is distinguishable.  In that case, the nature of the adverse employment action, a permanent plant closure, was absolutely clear while, in the present case, Putnam was equivocal as to whether Svensson's demotion to GER was permanent or merely short term until a new PM position could be found for her.

In any event, there is significant Massachusetts case law holding that c.151B does not preempt claims under MERA, so long as the plaintiff complies with the c.151B administrative procedure and limitations period.[51]  In Rowe, the court stated:

> Relying on Supreme Judicial Court precedent in an analogous case, however, this court holds that a plaintiff who complies with the procedural requirements of c. 151B may also bring suit pursuant to the MERA. In Jancey …, the SJC held that a plaintiff who had complied with the procedural requirements of c. 151B was not thereafter barred from bringing a claim under the Massachusetts Equal Pay Act, G.L.c. 149, § 105A. The O'Brien court has suggested that Jancey stands for the proposition that "where a plaintiff satisfies the requirements of c. 151B, he may thereafter proceed to bring an action in the Superior Court under relevant statutes." O'Brien, 1997 WL 260515 at *4. The court agrees. Accordingly, Rowe's discrimination claims brought under the MERA are not barred by the exclusivity provision of c. 151B because procedural requirements were met.[52]

Putnam has not argued that Svensson's MERA claim fails on the merits.  Therefore, because Svensson complied with the c.151B administrative procedure requirements, the MERA claim is not preempted and this court should deny Putnam's motion for summary judgment.

   2.4    This court should deny summary judgment on Svensson's Massachusetts Equal Pay Act ("MEPA") claim.

Putnam claims that Svensson's MEPA claims are time barred because not brought within one year of the discriminatory act.  Notably, Putnam does not seek summary judgment on the merits of the MEPA claim.

---

[51] Ross v. Raytheon Co., 2001 WL 1455863, *3 (Mass. Super. 11/1/01) (MERA claim not preempted. "The procedural requirements include the filing of the initial complaint with MCAD within the six-month statute of limitations period. G.L. c. 151B, § 5. The purpose of this rule is to ensure that plaintiffs do not attempt to circumvent the filing requirements of G.L. c. 151B by simply filing claims under MERA…. Ross is permitted to assert his MERA claim because, as discussed in the previous section, he has complied with the procedural requirements of G.L. c. 151B and its statute of limitations provision. As such, Raytheon's motion for summary judgment as to Count II is DENIED."); Sabel v. Armstrong, 2001 WL 1313757, *4 (Mass. Super. 10/18/01) (same); DeBarboza v. Cablevision of Boston, Inc., 1999 WL 65489, *2 (Mass. Super. 1/29/99) (same); Rowe v. Town of North Reading, 2001 WL 170655, *8 (Mass. Super. 1/5/01).  See also Jancey v. School Committee of Everett, 421 Mass. 482, 498-99 (1995) (MEPA claim not preempted by c.151B exclusivity provision); Cuddi v. Gallery Gift Shoppes, 2003 WL 22700536, * 2 (Mass. Super. 10/24/03) (Massachusetts civil rights Act ("MCRA") claim not preempted by c.151B where plaintiff has complied with c.151B administrative filing requirements); Obrien v. Avis Rent A Car System, Inc., 1997 WL 260515, *4-6 (Mass. Super. 5/1/97) (same).
[52] 2001 WL 170655, *8

The court should reject Putnam's statute of limitations argument for multiple reasons. First, Putnam incorrectly assumes that the discriminatory acts at issue are its decisions as to the amount of compensation to award Svensson. To the contrary, the Massachusetts Supreme Judicial Court has expressly held that MEPA violations occur, and separate claims arise, at the time of each discriminatory payment. Silvestris, 446 Mass. 756, 767 (2006) ("pay claims do give rise to a cause of action each time they occur"). Putnam made discriminatory payments to Svensson within one year prior to the filing of this action. As to those payments, the MEPA claim is not time barred.[53]

Second, even if the pay decision rather than each payment were the discriminatory act under MEPA, Putnam ignores the applicability of the discovery rule. The court in Silvestris applied the discovery rule to MEPA claims, holding that plaintiffs' MEPA claim, based on assertion that they received less credit for past work experience and education than male counterparts, accrued only when plaintiffs had reason to know of the starting salaries of male workers and their levels of experience and education. Application of the discovery rule renders all of Svensson's MEPA claims timely because she neither knew nor should have known how her pay and qualifications compared to those of similarly situated males until within the limitations period, especially compensation information about other investment professionals not revealed by Putnam until the discovery phase of this case, including information which Putnam's expert admitted he reviewed but which Putnam did not furnish to Svensson until November 26, 2007.

Further, because Svensson has presented sufficient evidence to establish that Putnam had a general policy to discriminate against women, that the policy was applied to her, and that the policy continued into the limitations period, she has established a systemic continuing violation rendering all of her MEPA claims timely.

---

[53] While in Ledbetter, the United States Supreme Court held that under the federal Equal Pay Act each pay check does not give rise to a new limitations period, Svensson's asserts her claim under MEPA. Silvestris remains the authoritative interpretation of MEPA.

2.5    If the court does not deny the motion for summary judgment it should defer ruling on the motion pursuant to Fed. R. Civ. P. 56(f) until Svensson has had the opportunity to conduct additional necessary discovery.

Fed.R.Civ.P. 56(f) states,

> When affidavits are unavailable.  Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In Bird v. Continental Insurance Company, 1993 WL 485781 (1st Cir. 12/1/93), the Court of Appeals stated,

> Rule 56(f) offers an "'escape hatch'" to a party opposing a summary judgment motion who "genuinely requires additional time to marshall 'facts essential to justify its opposition'".[54]

The general rule in the First Circuit is that a court should grant a Rule 56(f) motion where the party seeking discovery submits a Rule 56(f) affidavit showing:  (1) a plausible basis for the belief that specified discoverable material facts exists which are not yet in evidence; (2) a realistic prospect that the additional facts can be obtained within a reasonable time; (3) that the additional facts will create a trial-worthy issue which is both genuine and material; and (4) good cause to explain why the party seeking discovery did not conduct discovery earlier.[55]

Finally, it is settled law in the First Circuit, and elsewhere, that a court should liberally apply Rule 56 where the interests of justice would be served,[56] and Rule 56(f) motions should be granted routinely

---

[54] Id. at *6, quoting Mattoon v. City of Pittsfield, 980 F.2d 1, 7 (1st Cir. 1992), which quoted Patterson-Leitch Co. v. Massachusetts Municipal Whole Sale Electric Co., 840 F.2d 985, 988 (1st Cir. 1988).
[55] Bird, 1993 WL 485781, *6; Mattoon, 980 F.2d at 7-8; Bank One Texas, N.A. v. A. J. Warehouse, Inc., 968 F.2d 94, 100 (1st Cir. 1992); Nestor, Colon, Medina & Sucessores, Inc. v. Custodio, 964 F.2d 32, 38 (1st Cir. 1992); Price v. General Motors Corporation, 931 F.2d 162, 164 (1st Cir. 1991); Patterson-Leitch, 840 F.2d at 988-990; Strahm v. WSI Corporation, 1993 WL 540566, *9 (D. Mass. May 14, 1993).
[56] Patterson-Leitch, 840 F.2d at 989; Hebert v. Wicklund, 744 F.2d 218, 222 (1st Cir. 1984).

where the party moving for summary judgment has sole possession of the facts needed to oppose the motion.[57]

The present case cries out for application of Rule 56(f). As set forth more fully in Svensson's memorandum in support of her "Motion to Compel Concerning Expert Deposition and for Sanctions, Pursuant to Fed. R. Civ. P. 37(c)" and her memorandum in support of her "Motion .. for Sanctions Pursuant to 28 U.S.C. §1927," evidence of Putnam's treatment of Svensson's comparators, officers in Putnam's Investment Management Division ("IMD"), is essential to Svensson's proof of her discrimination claims. Putnam resisted Svensson's efforts to obtain discovery concerning Putnam's treatment of the officer level employees in the IMD who were similarly situated to Svensson during the relevant period. Even after it agreed at the July 11, 2006, hearing (after pressure from the Magistrate Judge at the June 21, 2006, hearing to produce information concerning only 91 of the IMD officers[58]), Putnam, continued to maintain the position that Svensson had no or virtually no comparators.

Yet at the same time, without disclosing its doings to Svensson or to the court, Putnam, in "July 2006,"[59] engaged an expert, David Bloom ("Bloom") and thereafter made available to him detailed information on its treatment of the hundreds of the IMD officers, the rest of the very comparator information that Putnam had claimed to the court should be denied to Svensson. Putnam's conduct is grossly unfair and has violated the rules, and has seriously impaired Svensson's ability to gather evidence sufficient to defeat Putnam's motion for summary judgment.

Given the importance of the comparator data improperly withheld by Putnam to Svensson's proof of her discrimination claims, and the fact that such information is entirely within the control of, and

---

[57] Hebert, 744 F.2d 222 n.4, citing Ward v. United States, 471 F.2d 667, 670 (3rd. Cir. 1973); Concord Laboratories, Inc. v Concord Medical Center, 552 F.Supp. 549, 554 (N.D. Ill. 1982). See also, International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991); Strahm, 1993 WL 540566, *6; C-B Kenworth, Inc. v. General Motors Corporation, 118 F.R.D. 14, 16-17 (D. Me. 1987) ("continuances under Rule 56(f) are particularly appropriate where the cause of action is complex, and where the facts essential to the opposing party's affidavit are within the other party's exclusive control.").

[58] "THE COURT: I'm inclined to permit some discovery here, but what I'm suggesting is that I give you 14 days to sit down together and to see if you can come up jointly with comparators...." Tr., Hearing, June 21, 2006, p. 14, l. 23 – p. 15, l. 1.

[59] Tr., deposition of David Bloom ("Bloom dep."), p. 24, l. 18.

readily available to Putnam, there is no doubt that: (1) there is a plausible basis for the belief that specified discoverable material facts exists which are not yet in evidence; (2) a realistic prospect exists that the additional facts can be obtained within a reasonable time; (3) that the additional facts will create a trial-worthy issue which is both genuine and material; and (4) that Svensson has shown good cause (Putnam's improper conduct) to explain why she did not obtain the information earlier via discovery.

3.    <u>Conclusion</u>.

For all of the foregoing reasons, this court should deny Putnam's motion for summary judgment or, if the motion is not denied, should defer ruling on the motion pursuant to Fed. R. Civ. P. 56(f) until

Svensson has had the opportunity to conduct additional necessary discovery.

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.

/s/ Kevin F. Moloney
Kevin F. Moloney     BBO No. 351000
Roger T. Manwaring BBO No. 548614
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.5374

Dated: February 15, 2008

Certificate of Service.

　　This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin F. Moloney

Dated: February 15, 2008

[422714.1]

26