UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| * * * * * * * * * * * * *   * | Civil Action No. 04-12711-PBS |
| LISA SVENSSON,                * | BBO No. 351000 |
| Plaintiff,                    * | |
|                               * | Plaintiff Svensson's Response to |
|                               * | Defendant Putnam's Reply to |
| v.                            * | Svensson's Memorandum in Support |
|                               * | of Her Opposition to Putnam's |
|                               * | Motion for Summary Judgment |
| PUTNAM INVESTMENTS, LLC, et al., * | |
| Defendants.                   * | |
| * * * * * * * * * * * * *   * | |

Plaintiff Lisa Svensson ("Svensson") submits this memorandum in response to the reply ("Reply") of defendant Putnam Investments, LLC ("Putnam") to her opposition ("Opposition") to Putnam's motion for summary judgment. This Response is necessary because Putnam's Reply brief, once again, misstates the facts of this case and misinterprets applicable case law. For the reasons set forth herein, and in Svensson's Opposition memorandum, this court should deny Putnam's motion because there exist genuine issues of material fact and Putnam is not entitled to judgment as a matter of law.

1.  Facts.

Svensson relies of the facts set forth in her "Response to Defendant Putnam's Local Rule 56.1 Statement of Fact" ("Response to Putnam's Statement of Fact"), her "Response to Defendant Lasser's Local Rule 56.1 Statement of Fact" ("Response to Lasser's Statement of Fact"), the facts set out in her First through Sixth Affidavits, and the facts set out in report of her expert Paul F. White, Phd. ("White"), as supplemented herein..

2. <u>Argument</u>.

    2.1 <u>Contrary to Putnam's assertion, Svensson has directed the court to specific facts providing strong evidence of discrimination sufficient to withstand summary judgment under either the Price Waterhouse mixed motive test or the McDonnell Douglas pretext analysis, including statements of Putnam decision makers and those with influence over decision makers</u>.

Putnam asserts that, rather than direct the court to the facts in the summary judgment record which create a genuine issue of material fact, "Svensson simply dumps over 450 pages of material on this Court and asks this Court to find evidence of a material factual dispute …." Putnam Reply, p. 13. Svensson has, in fact, culled from the record the material facts which establish genuine issues precluding summary judgment, and has presented those facts clearly and concisely.[1]

Svensson's Response to Putnam's Statement of Fact and Response to Lasser's Statement of Fact respond on a paragraph-by-paragraph and subparagraph-by-subparagraph basis to defendants' Local Rule 56.1 Statements of Fact, indicating whether defendants' facts are disputed or undisputed. Where disputed, Svensson's Responses to Putnam's and Lasser's Statements of Fact direct the court to specific Putnam authored documents, produced by Putnam in discovery (the "PRM documents"), to deposition testimony, identified by witness, page and line numbers or to Svensson's affidavits.

Svensson's Sixth Affidavit provides a chronology of her employment at Putnam, including the factual circumstances evidencing gender discrimination. Her Fifth Affidavit sets forth specific events and statements, not appearing in the Sixth Affidavit, which directly evidence the discriminatory nature of , and motivation for, Putnam's adverse employment actions against Svensson. The report of Svensson's expert, White, provides further specific evidence of discrimination, opining that:

> <u>Termination 2003</u>: Appendix I of this report provides the detailed calculations for the comparison between the plaintiff and her male named comparators for the plaintiff's termination claim. As can be seen from the

---

[1] It should be noted that the only way in which Putnam could calculate Svensson's submissions as consisting of 450 pages is to count the approximately 250 pages "PRM documents," which Putnam itself produced during discovery. While Putnam suggests that Svensson is asking the court to sift through the PRM documents in search of material facts, that is not correct. Svensson's Response to Putnam's Statement of Fact directs the court to specific PRM pages. Those documents are submitted merely for the court's convenience, just as are the pages of deposition transcripts cited by Svensson.

Case 1:04-cv-12711-PBS    Document 255    Filed 02/25/2008    Page 3 of 14

> table, most of the male named comparators are above the plaintiff with respect to total compensation, but below the plaintiff with respect to base salary. Most male named comparators are below the plaintiff for the final ratings but slightly more than half are above the plaintiff for the manager rating. Most of the male named comparators are below the plaintiff with respect to investment experience and Putnam tenure.

White Report, Exhibit "A" to Affidavit (February 15, 2008) of Kevin F. Moloney, p. 13.

It is, therefore, grossly unfair and inaccurate to suggest that Svensson has "dumped" a mass of undifferentiated material on this court. Instead, she has complied fully and in detail with her obligation to direct the court to those material facts which establish the existence of genuine issues precluding summary judgment. Those facts establish strong evidence of discrimination sufficient to withstand summary judgment under either the Price Waterhouse mixed motive test or the McDonnell Douglas pretext analysis, including statements of Putnam decision makers and those with influence over decision makers.

  2.2 <u>Svensson's discrimination claims based on Putnam's conduct in failing to promote her, demoting her and in setting her compensation are not time barred</u>.

As set forth in Svensson's Opposition, her discrimination claims arising from Putnam's failing to promote her, demoting her, and setting her compensation are <u>not</u> time barred because: (1) much of the Putnam conduct on which Svensson relies occurred within 300 days prior to March 1, 2004, the date on which Svensson filed her charge with the Massachusetts Commission Against Discrimination ("MCAD"); (2) the statute of limitations is extended by application of the discovery rule because, although Svensson was aware of the adverse employment actions taken against her, she neither knew nor had reason to know of Putnam's discriminatory motivation for such actions until less than 300 days prior to filing her MCAD charge; (3) Putnam's discriminatory conduct formed a part of its general policy and standard operating procedure of discriminating against women in promotions, demotions, compensation and other employment matters and Svensson has presented facts establishing a systemic continuing violation; and (4) the limitations period applicable to Svensson's claims based upon her demotion should be equitably

3

tolled because Putnam's notice to Svensson of the demotion decision was equivocal as to whether the demotion was permanent or merely temporary.

        2.2.1    <u>Contrary to Putnam's assertion, Svensson offered evidence that much of Putnam's promotion, demotion and compensation related conduct on which Svensson relies occurred within 300 days prior to the filing of her MCAD charge and claims based on such conduct are, therefore, timely</u>.

Although Putnam claims otherwise, Svensson has directed this court to evidence, in the form of her Fifth and Sixth Affidavits, that many of Putnam's actions relative to her claims concerning promotion, demotion, termination and compensation occurred within 300 days prior to her filing of the MCAD charge.

        2.2.2    <u>The discovery rule delayed accrual of Svensson's discrimination claims based on promotion, demotion and compensation until within 300 days of her MCAD filing and claims based on such conduct are, therefore, timely</u>.

            2.2.2.1    <u>The Massachusetts discovery rule applies to Svensson's c.151B claims</u>.

In its Reply, Putnam claims that the Massachusetts discovery rule does not extend the limitations period applicable to Svensson's G.L. c.151B discrimination claims, ignoring the clear message of the Supreme Judicial Court's decision in <u>Silvestris</u> v. <u>Tantasqua Regional School District</u>, 446 Mass. 756, 767 (2006). There, the court explained that the defendant's conduct, by itself, is not enough to set the statute running. What is required is knowledge, or reason to know, of the discriminatory nature of that conduct.[2]

Putnam first argues (Reply, p. 4 n.2) that <u>Silvestris</u> does not apply to Svensson's c.151B claims because the claim at issue in that case was brought under the Massachusetts Equal Pay Act ("MEPA"), not c.151B. This is a distinction without a difference and ignores both the language of <u>Silvestris</u> and

---

[2] <u>Silvestris</u>, 446 Mass. at 767 (holding that plaintiffs' MEPA claim, based on assertion that they received less credit for past work experience and education than male counterparts, accrued only when plaintiffs had reason to know of the starting salaries of male workers and their levels of experience and education); <u>Wheatley</u> v. <u>American Telephone and Telegraph Co.</u>, 418 Mass. 394, 398 (1994); <u>Soriano</u> v. <u>City of Lawrence Police</u>, 2000 WL 1584852, *3 (Mass. Super. 10/23/00); <u>Soo Tang Tan</u> v. <u>Stonehill College</u>, 2001 WL 1602828, * 14 (MCAD 1/30/01). <u>See also</u> <u>Harrison</u> v. <u>Kraft Foods, Inc.</u>, 2007 WL 3232552, *2-3 (D. Mass. 10/30/07); <u>Kimball</u> v. <u>Spencer-East Brookfield Regional School District</u>, 2005 WL 4881100, *3 (Mass. Super. 6/7/05); <u>Ackerson</u> v. <u>Harte-Hanks Data Tech.</u>, 1995 WL 1146237, *1 (Mass. Super. 11/16/95).

other cases law cited by Svensson. As support for application of the discovery rule to MEPA claims, the Silvestris court cited Wheatley v. American Telephone and Telegraph Co., 418 Mass. 394 (1994), a case that applied the discovery rule to a c.151B claim. Each and every one of the other cases cited by Svensson in support of application of the Massachusetts discovery rule also applied that rule to c.151B claims[3], with the United States District Court in Harrison citing Wheatley for that proposition. In any event, Putnam offers no reason why the Massachusetts courts would apply the discovery rule to MEPA claims but not to c.151B claims.

      2.2.2.2      The federal discovery rule applies to Svensson's Title VII claims.

Relying primarily on Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746 (1st Cir. 1994), Putnam asserts that the discovery rule does not apply to Svensson's Title VII discrimination claims because "the rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action)." Id. at 749. That is not correct.

First, the Morris court's statement, quoted above, pertained not to whether the discovery rule delayed accrual of the limitations period until the plaintiff employee knew or should have known of both the adverse employment decision and the discriminatory motivation underlying it, but to an entirely different issue. The plaintiff in Morris argued that the limitations period did not begin when he received an October 9 letter notifying him of his suspension, but only when he received a December 26 letter notifying him of the continuance of the suspension, a letter which, the court said, "signifies a particularly painful point in the process." The court uttered the language upon which Putnam relies to express the rule, which is not disputed in the present case, that "the point in time at which the consequences of the act become hardest to bear – which may or may not coincide with the occurrence of the act itself – has no

---

[3] Soriano v. City of Lawrence Police, 2000 WL 1584852, *3 (Mass. Super. 10/23/00); Soo Tang Tan v. Stonehill College, 2001 WL 1602828, * 14 (MCAD 1/30/01). See also Harrison v. Kraft Foods, Inc., 2007 WL 3232552, *2-3 (D. Mass. 10/30/07); Kimball v. Spencer-East Brookfield Regional School District, 2005 WL 4881100, *3 (Mass. Super. 6/7/05); Ackerson v. Harte-Hanks Data Tech., 1995 WL 1146237, *1 (Mass. Super. 11/16/95)

relevance for purposes of framing the limitations period." Id., citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980).

The Morris court then signaled that it was considering a different issue by stating, "Appellant has another string to his bow…." The court only then considered the separate issue, as to whether appellant's claim "did not accrue until he knew of both the suspension and the defendant's discriminatory animus." Morris, 27 F.3d at 749. (Emphasis in original). It was as a part of the discussion of this issue that the Morris court made clear that despite the general rule that the limitation period starts "to run when the employer's decision is made and communicated to the affected employee" (Id. at 750), a plaintiff's employment discrimination claim does not accrue if the plaintiff lacks sufficient information to enable him to bring a claim. Commonwealth of Massachusetts v. Bull HN Information Systems, Inc., 143 F.Supp.2d 134 (D. Mass. 2001) (in which the United States District Court for the District of Massachusetts noted that in Morris and its earlier decision in American Airlines, Inc. v. Cardoza-Rodrguez, 133 F.3d 111 (1st Cir. 1998), the Court of Appeals for the First Circuit had softened the effect of the general rule by reiterating that a cause of action does not accrue at the time of an adverse employment action unless the employee has "sufficient information" to recognize that the adverse action was discriminatory). See Svensson's Opposition, pp. 12-13.[4, 5]

        2.2.2.3        There is a genuine issue of material fact as to whether Svensson knew or should have known that she was the victim of gender discrimination more than 300 days prior to filing her MCAD claims.

Contrary to Putnam's assertion, neither Svensson's Affidavits, nor her deposition testimony, nor her notes (which Putnam refers to as a diary), evidence that she knew or should have known more than

---

[4] Putnam claims (Reply at p. 4) that the general rule set forth in Morris applies "in all employment discrimination contexts." While this is correct insofar as it means that the teachings of Morris apply to claims under the various federal discrimination laws, it does not mean that the general rule stated in Morris applies to all factual situations. As just discussed, Morris made clear that the discovery rule applies when the plaintiff lacks sufficient information to recognize that the adverse employment action was discriminatory.

[5] Putnam claims that Bull HN Info. Systems is distinguishable because it concerned a claim under the Older Workers Benefit Protection Act. However, the court's discussion of Morris was general and separate from the court's more specific comments about the OWBPA, a discussion prefaced by the introductory phrase "In addition…." 143 F.Supp.2d at 154.

6

300 days prior to filing her MCAD claim that she was the victim of discrimination.  For example, in March 2002, just prior to her demotion, Svensson met with Putnam's Oristaglio and "asked him why [she] could not remain on the Growth team as a portfolio manager, since that was [her] career goal.  He told [Svensson] that the team needed "certain skills."  [She] noted to him that [her]my skills were better than the people they were keeping.  Oristaglio told [Svensson] that [she] needed to go back to Research, but he promised to consider [her] for PM jobs as they became available.  The next week, on March 12, 2002, Oristaglio sent [Svensson] an e-mail confirming this promise, stating 'I will consider alternatives on an additive basis, especially if the large cap team or international growth team loses people to resignations, or if we underestimated the number of people required…' PRM-00661." Sixth Affidavit of Lisa Svensson, ¶14.  Further, at the beginning of 2003, after Svensson had been demoted, received a promotion to Associate Director of Research ("ADR").  In view of Oristaglio's promises and her promotion to ADR, it was reasonable for Svensson not to know or suspect at that time, or until less than 300 days prior to filing her claims, that her demotion had been motivated by discriminatory animus.  In fact, given the possibility that she would regain her PM position, it was not clear at that time that she had suffered any adverse employment action with regard to her demotion.

> 2.2.3   <u>Putnam's discriminatory conduct against Svensson formed a part of its general policy and standard operating procedure of discriminating against women and Svensson has established a systemic continuing violation rendering her promotion, demotion and compensation claims timely</u>.

While accepting that a systemic continuing violation would toll the statute of limitations, Putnam argues in its Reply that Svensson has not provided evidence of a systemic continuing violation.  However, Svensson's evidence is more than sufficient to create a genuine issue of material fact as to whether Putnam's conduct towards Svensson was a part of a policy to discriminate against women generally.

Putnam relies on <u>Grotlisch</u> v. <u>General Dynamics Defense Systems, Inc.</u>, 28 Fed. Appx. 3, 2002 WL 253928 (1st Cir. 2002), for the proposition that "discrete discriminatory acts against an individual

7

employee, even if repeated, do not constitute a general practice….” Reply p. 8. However, Putnam misses the point. Here, Svensson is not relying only on repeated acts of Putnam directed only against her.[6]

Instead, Svensson has offered evidence establishing that Putnam also discriminated against other similarly situated females. See Svensson's Response to Putnam's Statement of Fact, her Fifth and Sixth Affidavits, and the report of Paul F. White, Phd. Svensson also has offered evidence of statements of decision makers or those with influence over decision makers to the effect that Putnam was discriminating against women. Id.

> 2.2.4  The limitations period applicable to Svensson's claims based upon her demotion to GER should be equitably tolled because Putnam's notice to Svensson of the demotion decision was equivocal as to whether the demotion was permanent or merely temporary until Putnam placed Svensson in another PM position.

In her opposition, Svensson argues that the limitations period for her demotion claim was equitably tolled because Putnam's notice to "Svensson of the demotion decision was equivocal as to whether the demotion was permanent or merely temporary until Putnam placed Svensson in another PM position." Opposition, p. 18. Putnam now claims (1) that Svensson has failed to provide evidence that its communication of the demotion decision to Svensson was equivocal and (2) that equitable tolling based on equivocal notice of an adverse employment decision is not available to toll the statute of limitations for the time period after the adverse decision has been put into effect (i.e. after Svensson was demoted). Neither assertion is meritorious.

There is ample evidence in the summary judgment record to establish that Putnam's notice to Svensson that she would be demoted to GER was equivocal in that it left open the possibility that the

---

[6] Putnam cites Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997), for the similar proposition that the systemic violation doctrine is "inapplicable to discrete acts of discrimination against a specific individual…. Rather, it applies only to a general (typically facially discriminatory) system-wide policy." Putnam Reply, p. 9 (Emphasis in original). In so arguing, Putnam ignores the fact that Svensson is not basing her systemic violation claim solely on Putnam's conduct towards her, but has provided evidence establishing a policy of discrimination against women generally. Putnam is incorrect in claiming that the policy must be "facially" discriminatory. In explaining why a continuing violation existed in Lynn Teachers Union Local 1037 v. MCAD, 406 Mass. 515 (1990), but not in the case before it, the Ocean Spray court focused on the fact that in Lynn, there was a system-wide policy: ".... The crucial difference between the 'refusal to credit' at issue in the Lynn case and the 'refusal to accommodate' at issue in this case is that the 'refusal to credit' was the union's generally applicable, system-wide policy, while a refusal to accommodate is, necessarily, a determination made on a case-by-case basis." The Ocean Spray court's reasoning did not depend on whether the policy was "facially" discriminatory.

move to GER was not a true demotion (and thus not truly adverse to her), but merely a temporary transfer to a position which Svensson would occupy only until another PM position would be found for her. See Svensson's Response to Putnam's Statement of Fact and her Fifth and Sixth Affidavits.

Putnam also claims that equitable tolling based on equivocal notice only tolls the statute of limitations during the time after notice of the adverse employment decisions but before that decision is implemented. According to Putnam, any equitable tolling ceases once the adverse act occurs, in this, case after Svensson was actually demoted to GER. The case law does not support this argument. The rationale for equitable tolling was set out in Wheatley, where the court stated "We comment, however, that a reasonable person who has been informed that his or her employment would be terminated on a specified date might not file an employment discrimination claim during this 'transition period' because 'the filing of such a charge may prejudice any pending reconsideration of the [termination] decision.'" Wheatley, 418 Mass. at 399 n.8, quoting Ricks, 449 U.S. at 266 n.2. (Emphasis added). Thus, equitable tolling applies where, because the employer continues to hold out the possibility of continued employment, it would be unreasonable to expect the employee to file a discrimination claim and thereby "prejudice any pending reconsideration of the [adverse] decision."

Where the adverse decision in question is termination, the employee's delay in filing a discrimination claim due to the possibility of continued employment with the employer necessarily becomes unreasonable at the time of termination. Thus, in cases such as Wheatley and Ross v. Raytheon Co., 2001 WL 1455863 (Mass. Super. 11/1/01), where the adverse action of which the employee received equivocal notice was termination, the courts tolled the statute of limitations only for the time after notice but before termination.

The present case is different in that the adverse action of which Svensson received equivocal notice was not termination but a demotion/transfer. Unlike the plaintiffs in Wheatley or Ross, it was reasonable for Svensson to delay filing a claim against Putnam even after the her demotion because Putnam led her to believe that the demotion was merely temporary and that she would be considered for

9

future PM position as they became available. See Hill v. Suntory Water Group, Inc., 2003 WL 25278767 (1/30/03) (equitable tolling applied for period after employer had sent employee home in violation of c.151B's handicap discrimination provisions, because the employer had held out the possibility of reemployment).

Because Putnam's notice to Svensson's of her demotion was equivocal as to the nature of the act (was it a necessary step towards another PM position or a permanent demotion?), it was not clear whether the action in question was in fact adverse to Svensson until it later became clear to Svensson that she was not being considered for PM positions and that the demotion was in fact permanent. Equitable tolling should apply for the period until Svensson reasonably should have understood the nature of her move to GER.

  2.3  This court should deny summary judgment on Svensson's Massachusetts Equal Rights Act ("MERA") claim.

In its motion for summary judgment, Putnam claims that it is entitled to summary judgment on Svensson's MERA claim because that claim is preempted by c.151B, §9. In her Opposition, Svensson cited numerous recent Massachusetts decision holding that, where the plaintiff employee has complied with c.151B's administrative claims procedure, a MERA claim is not preempted.[7] Putnam, in its Reply, continues to press its flawed preemption argument. It also, for the first time, asserts that the MERA claim is factually deficient, claiming that Svensson has not shown evidence of "gender animus." Putnam Reply, p. 16.

---

[7] Ross, 2001 WL 1455863, *3 (MERA claim not preempted. "The procedural requirements include the filing of the initial complaint with MCAD within the six-month statute of limitations period. G.L. c. 151B, § 5. The purpose of this rule is to ensure that plaintiffs do not attempt to circumvent the filing requirements of G.L. c. 151B by simply filing claims under MERA…. Ross is permitted to assert his MERA claim because, as discussed in the previous section, he has complied with the procedural requirements of G.L. c. 151B and its statute of limitations provision. As such, Raytheon's motion for summary judgment as to Count II is DENIED."); Sabel v. Armstrong, 2001 WL 1313757, *4 (Mass. Super. 10/18/01) (same); DeBarboza v. Cablevision of Boston, Inc., 1999 WL 65489, *2 (Mass. Super. 1/29/99) (same); Rowe v. Town of North Reading, 2001 WL 170655, *8 (Mass. Super. 1/5/01). See also Jancey v. School Committee of Everett, 421 Mass. 482, 498-99 (1995) (MEPA claim not preempted by c.151B exclusivity provision); Cuddi v. Gallery Gift Shoppes, 2003 WL 22700536, * 2 (Mass. Super. 10/24/03) (Massachusetts civil rights Act ("MCRA") claim not preempted by c.151B where plaintiff has complied with c.151B administrative filing requirements); Obrien v. Avis Rent A Car System, Inc., 1997 WL 260515, *4-6 (Mass. Super. 5/1/97) (same).

10

As set forth above, and in her Opposition, Svensson has offered evidence to establish that Putnam's employment actions against her were motivated by discriminatory animus. See Svensson's Response to Putnam's Statement of Fact and her Fifth and Sixth Affidavits.

With regard to the preemption issue, Putnam continues to misinterpret Massachusetts law. It now asserts that the preemption issue was settled in its favor by Supreme Judicial Court's decision in Green v. Wyman-Gordon Co., 422 Mass. 551 (1996), that "where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive." Putnam Reply, p. 16.

However Green, and Charland v. Muzi Motors, Inc., 417 Mass. 580 (1994), also cited by Putnam, concern an entirely different issue that is not before the court in this case. In both Green and Charland, the plaintiff seeking to maintain a MERA claim had failed to comply with the c.151B administrative procedure. In the present case, Svensson fully complied with c.151B. Green and Charland do not address the issue presently before the court: whether a plaintiff who has complied with c.151B may also maintain a parallel MERA claim. In Jancey the Supreme Judicial Court strongly implied that a MERA claim would not be preempted in such circumstances, holding that a plaintiff who has complied with c.151B's procedural requirements can bring a claim under MEPA, and limiting Charland to its "core holding" that a claimant who fails to comply with c.151B cannot subsequently assert a MERA claim.

The cases cited by Svensson deal with this precise issue. However, the cases relied upon by Putnam each blindly rely on the inapplicable holdings of Green and/or Charland, and therefore do not offer any reasoned analysis of whether a MERA claim is preempted where the plaintiff has complied with c.151B. Because Svensson complied with the c.151B administrative procedure requirements, the MERA claim is not preempted and this court should deny Putnam's motion for summary judgment.

    2.4    This court should deny summary judgment on Svensson's Massachusetts Equal Pay Act ("MEPA") claim.

In its motion for summary judgment, Putnam claimed that Svensson's MEPA claim was time barred. Svensson argued in her Opposition that, under Silvestris, 446 Mass. at 767, the statute of limitations period for the MEPA claim did not accrue until Svensson knew or should have known how her

11

pay and qualifications compared to those of similarly situated males, facts critical to understanding that she was the victim of a MEPA violation. Putnam appears to concede that the discovery rule applies to MEPA claims. It argues only that Svensson has not offered sufficient evidence to establish her lack of knowledge. However, the evidence offered by Svensson raises at least a genuine issue of material fact as to when she knew or should have known of the MEPA violation. The evidence supports an inference that she neither knew nor should have known how her pay and qualifications compared to those of similarly situated males until within the limitations period, especially compensation information about other investment professionals not revealed by Putnam until the discovery phase of this case, including information which Putnam's expert admitted he reviewed but which Putnam did not furnish to Svensson until November 26, 2007.

Svensson also argued in her Opposition that the statute of limitations for the MEPA claim was tolled because she had provided evidence establishing a systemic continuing violation. Putnam now asserts, citing <u>Silvestris</u>, "that the continuing violation approach 'is not pertinent to an unequal compensation claim under [MEPA] <u>which is based on discrete acts</u>.'" Putnam Reply, p. 17. (Emphasis added). Here, Putnam looses sight of the fact that Svensson is claiming a systemic continuing violation, rather than a serial violation based on a series of discrete acts. As the language relied on by Putnam clearly indicates, the court in <u>Silvestris</u> was not considering whether a systemic continuing violation would toll the MEPA limitations period.

Because Svensson has presented sufficient evidence to establish that Putnam had a general policy to discriminate against women, that the policy was applied to her, and that the policy continued into the limitations period, she has established a systemic continuing violation rendering all of her MEPA claims timely.

    2.5    <u>If the court does not deny the motion for summary judgment it should defer ruling on the motion pursuant to Fed. R. Civ. P. 56(f) until Svensson has had the opportunity to conduct additional necessary discovery</u>.

Although Putnam claims that Svensson has not filed the required Rule 56(f) affidavit, that is not the case. See "Second Affidavit (February 15, 2008) of Kevin F. Moloney." That affidavit verifies that "The facts set forth in Svensson's memorandum in support of her motion to compel concerning expert depositions and for Rule 37(c) sanctions and in her memorandum in support of her motion for sanctions, pursuant to 28 U.S.C. 1927, both as modified by counsel's letter, dated February 8, 2008, to the court, are true." Id. at ¶2.

This court also should reject Putnam's claim that Rule 56(f) relief should be denied because it produced the data which its expert, Bloom, considered in November 2007. Putnam retained its expert in July 2006, and thereafter made available to him detailed information on its treatment of the hundreds of the IMD officers, the rest of the very comparator information that Putnam had claimed to the court should be denied to Svensson. Putnam offers no reason why, having concluded that the information was relevant to its own expert, it waited until November 2007 to provide the same information to Svensson.

Further, as set forth more fully in Svensson's memorandum in support of her "Motion to Compel Concerning Expert Deposition and for Sanctions, Pursuant to Fed. R. Civ. P. 37(c)", her "… Memorandum in Reply to Putnam's Opposition to Svensson's Motion to Compel Concerning Expert Deposition and for Sanctions" and her memorandum in support of her "Motion .. for Sanctions Pursuant to 28 U.S.C. §1927," Putnam also failed entirely to produce to Svensson important data which clearly was available to Bloom, and which he clearly considered. See Svensson's Reply on Motion to Compel Concerning Expert Deposition, pp. 5-10. Putnam still has not produced to Svensson that critical data.

Given the importance of the comparator data improperly withheld by Putnam to Svensson's proof of her discrimination claims, and the fact that such information is entirely within the control of, and readily available to Putnam, there is no doubt that: (1) there is a plausible basis for the belief that specified discoverable material facts exists which are not yet in evidence; (2) a realistic prospect exists that the additional facts can be obtained within a reasonable time; (3) that the additional facts will create a trial-

worthy issue which is both genuine and material; and (4) that Svensson has shown good cause (Putnam's improper conduct) to explain why she did not obtain the information earlier via discovery.[8]

3.   Conclusion.

For all of the foregoing reasons, and those stated in Svensson's Opposition, this court should deny Putnam's motion for summary judgment or, if the motion is not denied, should defer ruling on the motion pursuant to Fed. R. Civ. P. 56(f) until Svensson has had the opportunity to conduct additional necessary discovery.

```
                                    LISA SVENSSON, plaintiff,
                                    By her attorneys,
                                    BARRON & STADFELD, P.C.

                                    /s/ Kevin F. Moloney_____
                                    Kevin F. Moloney    BBO No. 351000
                                    Roger T. Manwaring BBO No. 548614
                                    100 Cambridge Street, Suite 1310
                                    Boston, Massachusetts 02114
                                    Tel.: 617.723.9800/531.6569

                                    and

                                    /s/ John K. Weir_____
                                    John K. Weir, Admitted PHV
                                    John K. Weir Law Offices, LLC
                                    300 Park Avenue, Suite 1700
                                    New York, New York, 10022
                                    Tel.: 212.572.5374
```

Dated: February 25, 2008

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                              /s/ Kevin F. Moloney_____

Dated: February 25, 2008
[423486.1]

---

[8] Even if this court denies Putnam's motion for summary judgment, it should still require Putnam to produce to Svensson the documents it has improperly withheld but which were considered by its expert. Svensson's pending Motion to Compel Concerning Expert Deposition and for Sanctions, Pursuant to Fed. R. Civ. P. 37(c) seeks such production as well as other relief.