UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON, <br><br> Plaintiff, <br><br> v. <br><br> PUTNAM INVESTMENTS LLC, f/k/a <br> PUTNAM INVESTMENTS, INC. and <br> LAWRENCE J. LASSER, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CIVIL ACTION
NO. 04-12711 PBS

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HER OPPOSITIONS TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, TOGETHER WITH ALL SUPPORTING MATERIAL (DOCKET NUMBERS 262-295)

Defendants, Putnam Investments, LLC ("Putnam") and Lawrence J. Lasser ("Lasser") move to strike both Plaintiff Lisa Svensson's ("Svensson") Supplemental Memoranda in Support of her Oppositions to Defendants' Motions for Summary Judgment and all supporting material filed therewith (Docket Nos. 262-295). Defendants state the following in support of its motion:

1.      At the hearing on Defendants' Motions For Summary Judgment on February 26, 2008, this Court informed Svensson's counsel that her oppositions failed to inform the Court of the particular adverse actions that she was complaining of, the identity of the decision-maker with respect to each such action, and her basis for believing that Putnam's reasons for each such alleged adverse action were pretextual. This Court gave Svensson an opportunity to submit a supplemental filing within one week that provided this missing factual information. This Court's instructions were explicit: Svensson was to submit no more than 1-2 pages per each adverse action, simply citing the relevant facts such as the identity of the decision-maker and the facts supporting the existence of pretext, with simple cites to the existing record:

THE COURT:  I'm not looking - you've given me this.  I just need a page on each job, either promotion, demotion, failure to give job to, employment, salary --

MR. MOLONEY:  Basically you want a score card of people.

THE COURT:  A score card.

MR. MOLONEY:  All right.

THE COURT:  *I don't want one legal thing cited, just the who's who.  Who was the decision-maker, what was the decision, when did it happen, what gives rise to an inference of discrimination, with a cite to the paragraph in her affidavit or some document.*  And I think it could be fairly easy to do because you probably came in here with all of this stuff.  It's easier for you to go through than me, and I am not going to spend the time.  *So if it's there, it's there.  If it's not, it's not.*
(Transcript of February 26, 2008 hearing (Exhibit A hereto), p. 54 (emphasis added))

****

This Court also was clear that further briefing of the law was prohibited, including on the statute of limitations issues:

MR. MOLONEY:  Your Honor, if you're only looking at Mr. Kociubes' chart, I would agree with you.  But what the chart fails to take into account are equitable tolling and the discovery rule, *so we will give you that as well.*

THE COURT:  *No, want no case citation.*

MR. MOLONEY:  Not law, facts.

THE COURT:  Facts.

MR. MOLONEY:  Facts.  (Exhibit A, p. 56; emphasis added)

Finally, this Court made clear that failure to comply with its instructions would result in Svensson's submissions being stricken:

THE COURT:  Yes, you can respond.  If you want another week, another week.  And then it's over.  No more replies, surreplies, sur-surreplies, rebuttals to the surreplies.  *I think I've got enough here, and, as I said, a page or two per adverse action, adverse employment action.  And that's all I want in response, or I'll strike it, because at this point I have enough.*  It's just somebody needs to organize it for me.  (Exhibit A, p. 56; emphasis added).

A/72461261.4/0398860-0000312913

2.    Svensson chooses to treat this Court's instructions as advisory. She has not filed 1-2 pages of facts for each claim detailing the identity of the decision-maker and the facts tending to show discrimination, with citations to the existing record. Instead, she submitted another 20 page brief, a seventh affidavit, and hundreds of pages of new material – a new record – much of which is not admissible, relevant or (in many cases) even cited by Svensson. Once again, Svensson simply refers the Court to the new and previously-filed records, rather than create the 1-2 page road map per action which this Court requested.

Even when Svensson attempts to analyze a particular adverse action, she fails to follow the Court's instructions. As just one example, in Exhibit G to her Seventh Affidavit, Svensson asserts (for the first time in the nearly 4 years of this litigation) that 6 portfolio manager positions became available between May 6, 2003 (the key date for statute of limitations purposes with respect to her ch. 151B and Title VII claims) and her termination on September 15, 2003. Yet she fails to identify the decision-maker for each such position, or any evidence that *that particular decision-maker* was motivated by gender animus in filling that specific position (or even that she applied for any of those 6 positions).

3.    Svensson also ignores this Court's explicit instruction (quoted above) that she not re-brief legal issues, including the statute of limitations issues. Instead she again argues the systemic violation doctrine, the discovery rule and the equitable tolling doctrines. *See, e.g.*, Supplemental Memorandum, pp. 16, 17-21.

4.    Unless Svensson's filings are stricken, Defendants will be unfairly prejudiced. Defendants plan to file a reply to Svensson's supplemental filings. If Defendants follow the Court's instructions and limit themselves to a short factual statement per adverse action, they will be forced to leave unanswered some of Svensson's legal arguments (including a number which have just been made for the first time). Nor will they be able to correct the many ways in which Svensson distorts the factual record and submits inadmissible material. A few examples illustrate the prejudice to Defendants.

A.  First, after apparently abandoning her compensation claims under ch. 151B and Title VII (no doubt because it cannot be disputed that Putnam made all compensation decisions relating to Svensson before May 6, 2003, the statute of limitations cut-off date for her Title VII and ch. 151B claims), Svensson asserts that she has viable compensation claims under the Massachusetts Equal Pay Act ("MEPA).  Supplemental Memorandum, p. 19.  She also asserts that MEPA has a one year statue of limitations.  She then counts back from March 1, 2004, (when she filed her charge with the MCAD) and argues that since Putnam's 2003 compensation decisions were made in March 2003, they fall within MEPA's one year limitations period.  The fallacy of this argument (which she makes for the first time in her Supplemental Memorandum) is that *the MCAD does not enforce MEPA*.  M.G.L. ch. 149, §105A (MEPA) provides that any "Action to recover such liability [under MEPA] may be *maintained in any court of competent jurisdiction…*" (emphasis added), and that any MEPA claim shall be instituted within one year after the date of the alleged violation."  Because MEPA is enforced by the courts (and not the MCAD), MEPA's one-year statute of limitations runs from the date on which Svensson filed *this action* – December 28, 2004.  Svensson was terminated on September 15, 2003, more than a year before the date she filed this action, and thus her MEPA claims are time-barred.  She simply has no viable compensation claim given (as she now appears to concede) that her ch. 151B and Title VII claims are also barred.  None of this could be set out by Defendants in a submission that complies with the Court's instructions.

B.  Second, Svensson's voluminous filings repeatedly distort the factual record, including the new record she submitted in contravention of this Court's instructions.  For example, in Exhibit E to her newly-filed Seventh Affidavit, Svensson argues (in support of her claim that she was wrongfully denied promotion to Managing Director in 2000) that 6 men and only 3 women were nominated for MD in 2000.  However, the actual 2000 MD promotion ballot (which Svensson attaches to her filings but does not reference) makes clear that 6 men and *4 women* (not 3 as Svensson asserts) were nominated, *and that all of the women besides Svensson were elected MD*.  *See* Appendix in support of Putnam's Motion for Summary Judgment

-4-

("Putnam's Appendix"), Tab 7.  Svensson also offers no evidence that performance ratings were relied upon or even reviewed by the MD electors.  Worse, Svensson simply glides over the undisputed fact that *Morgan nominated her* for MD and (as the ballot at Tab 7 of Putnam's Appendix demonstrates) *Morgan voted for the other three women (all of whom were elected) and against two of the male nominees.*  How this record evidences gender discrimination (other than Svensson's *ipse dixit*) is unstated.  Svensson's multiple distortions of the factual record are difficult to address in a paper which complies with this Court's instructions that Svensson and Putnam limit themselves to the basic *McDonnell Douglas* facts.

   C.  Third, Svensson continues to submit material which is not appropriately part of the summary judgment record.  She again attaches literally hundreds of pages of documents (some produced by Putnam; some not).  She provides no evidentiary foundation for many of these documents, many of which are not business records and which contain hearsay and other inadmissible material.  "[T]o be admissible on a motion for summary judgment, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) *and the affiant must be a person through whom the exhibits would be admitted into evidence.*" *Bonacorso Construction Co., v. Master Builders, Inc.,* 1991 WL 72796, *3, Civ. A. No. 87-1827 (D. Mass. 1991) (quotations omitted; emphasis added); *Nolla Morell v. Riefkohl*, 651 F.Supp. 134, 140 (D.P.R. 1986) (same); *Fremaint v. Ford Motor Co.,* 258 F.Supp.2d 24, 28 (D.P.R. 2003) (granting summary judgment where "[w]orse yet for plaintiff, contrary to Rule 56(e) requirements, the documents submitted with his opposition are unsubstantiated, conjectural, and fail to set forth the competency of the persons providing the statements."); *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998) ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.").  The mere fact that some of these documents were produced in discovery does not make them admissible.  *Dodi v. The Putnam Companies*, 94 F.3d 640, 1996 WL 489998, *3 (1st Cir. 1996) (unpublished) (affirming district court decision granting motion to strike portions of a documents submitted in support of summary judgment, noting "[w]e fail to see how the fact that a document was presented in

-5-

discovery suffices to authenticate the document or lay the foundational requirements of Rule 803(6) or Rule 801(d)(2)(D).").

        D.   Finally, Svensson attaches to her Seventh Affidavit a number of exhibits which appear to be her own pseudo-statistical analyses of promotion and compensation decisions, as well as the presence of women at various levels of the organization historically. Apart of her complete lack of competence to perform any expert statistical analysis, Svensson bases her analysis on "facts" cherry-picked from the report of her expert witness, Dr. Paul F. White.  Svensson offers no affidavit from Dr. White endorsing her analysis, agreeing with her methodology (which ignores the notion of statistical significance) or attesting to the basis for or accuracy of her "facts".  Nor could Svensson rely on Dr. White since her conclusions are at odds with his.  For example, Svensson attempts to show that the percentage of women in Putnam's officer ranks declined over time, presumably because she believes that that fact tends to show that Putnam's reasons for not promoting her to MD were pretextual.  *See* Svensson's Seventh Affidavit, Exhibit E.  This, she cannot do.  *See Hillstrom v. Best Western Hotel,* 354 F.3d 27 (1st Cir. 2003) (affirming grant of summary judgment, holding plaintiff's evidence – that roughly 75% of all individuals terminated by [the decision-maker] were over 40 and that 87% of those terminated were male – invalid because "absent evidence of the characteristics of the universe of employees supervised by [the decision-maker], those figures are not probative"); s*ee also Morales v. ICI Paints, Inc.,* 383 F.Supp.2d 304 (D.P.R. 2005) ("The numbers submitted by plaintiff, even if admissible, in and of themselves have no meaning nor has [s]he submitted any other admissible evidence pointing to a disparity probative of discriminatory intent.").  Further, Dr. White, on whose data Svensson purports to rely, reached exactly the *opposite* conclusion: "when we did the promotion analysis among officer titles, we found that there was *no statistically significant disparity* between men and women."  White Dep. 39 (emphasis added) (Putnam's Appendix at Tab 21).  The "facts" set forth in Svensson's Seventh Affidavit have no statistical significance and should be stricken.  *See Hazelwood Sch. District v. United States,* 433 U.S. 299, 308 n.14 (1977) (as a general rule, statistical significance is shown when the difference

between the expected value and the observed number is "greater than two or three standard deviations") (cited in White Report at 5, Putnam's Appendix, Tab 21).  Nor do the assertions of "averages" bolster the admissibility of Svensson's statements.  *See Lamphere v. Brown University,* 685 F.2d 743, 750 (1st Cir. 1982) (holding that "the numerical disparity between men and women at particular job levels at Brown by itself is not probative," as "[t]he statistics, though striking upon first reading, may simply reflect an absence of qualified female applicants, rather than pervasive sex discrimination.")

5.    Addressing all of Svensson's non-complying, argumentative filings cannot fairly be done if Defendants are to comply with this Court's instructions.  Moreover, the inadmissible and irrelevant materials filed by Svensson provide an independent ground for striking the new "evidentiary" material.

**WHEREFORE**, Putnam and Lasser move that this Court strike those filings (Docket Nos. 262 –295) in their entirety and grant such other and further relief as is just.

**PUTNAM INVESTMENTS LLC,**
By its attorneys,


/s/ Joseph L. Kociubes, BBO #276360
Joseph L. Kociubes, BBO #276360
joe.kociubes@bingham.com
Louis A. Rodriques, BBO #424720
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
617.951.8000

and

**LAWRENCE J. LASSER**
By his attorneys,

/s/ David S. Rosenthal
David S. Rosenthal (BBO #429260)
drosenthal@nixonpeabody.com
Erika M. Collins (BBO #657243)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

Dated: March 10, 2008

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, counsel for Putnam hereby certifies that it has conferred with counsel for Lisa Svensson and has attempted in good faith to resolve or narrow the issue.

/s/ Louis A. Rodriques
Louis A. Rodriques, BBO #424720

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 10, 2008.

/s/ Jennifer L. Holden
Jennifer L. Holden, BBO #663467

A/72461261.4/0398860-0000312913

EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LISA SVENSSON,                      )
                                    )
            Plaintiff               )
                                    )
      -VS-                          ) CA No. 04-12711-PBS
                                    ) Pages 1 - 60
PUTNAM INVESTMENTS, et al,          )
                                    )
            Defendants              )


MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 26, 2008, 2:10 p.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

Page 54

1    tried in May.  I need it fast.

2              MR. MOLONEY:  Two weeks?

3              THE COURT:  Well, then I get two weeks from them.

4    One week, get me just a page on each incident.

5              MR. MOLONEY:  Okay.

6              THE COURT:  I'm not looking -- you've given me

7    this.  I just need a page on each job, either demotion,

8    promotion, failure to give job to, employment, salary --

9              MR. MOLONEY:  Basically you want a score card of

10   people.

11             THE COURT:  A score card.

12             MR. MOLONEY:  All right.

13             THE COURT:  I don't want one legal thing cited,

14   just the who's who:  Who was the decision-maker, what was the

15   position, when did it happen, what gives rise to an inference

16   of discrimination, with a cite to the paragraph in her

17   affidavit or some document.  And I think it could be fairly

18   easy to do because you probably came in here with all this

19   stuff.  It's easier for you to go through than me, and I'm

20   not going to spend the time.  So if it's there, it's there.

21   If it's not, it's not.

22             Just to sum this up, I think you've got a serious

23   statute of limitations problem, and I think you've got a

24   serious problem with Mr. Lasser.  I think that I am right on

25   the edge about whether or not there are enough fact disputes

1    McDonnell Douglas test, particularly on the termination,

2    because I think the others have serious statute of

3    limitations issues.

4              MR. MOLONEY:  Your Honor, if you're looking only at

5    Mr. Kociubes' chart, I would agree with you.  But what the

6    chart fails to take into account are equitable tolling and

7    the discovery rules, so we will give you that as well.

8              THE COURT:  No, want no case citation.

9              MR. MOLONEY:  Not law, facts.

10             THE COURT:  Facts.

11             MR. MOLONEY:  Facts.

12             MR. KOCIUBES:  A procedural question, your Honor?

13   Thereby, a week from tomorrow they're going to have their

14   list to you.  Do we have a few days or something in the event

15   just to point you to some record cites, depending on what

16   they do?

17             THE COURT:  Yes, you can respond.  If you want

18   another week, another week.  And then it's over.  No more

19   replies, surreplies, sur-surreplies, rebuttals to the

20   surreplies.  I think I've got enough here, and, as I said, a

21   page or two per adverse action, adverse employment action.

22   And that's all I want in response, or I'll strike it, because

23   at this point I have enough.  It's just somebody needs to

24   organize it for me.

25             MR. KOCIUBES:  Are you anticipating other argument