## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON, )<br><br>Plaintiff, )<br><br>v. )<br><br>PUTNAM INVESTMENTS LLC, f/k/a PUTNAM )<br>INVESTMENTS, INC. and LAWRENCE J. LASSER, )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 04-12711 PBS |

### LAWRENCE J. LASSER'S SECOND REPLY
### MEMORANDUM IN SUPPORT OF
### HIS MOTION FOR SUMMARY JUDGMENT

Lawrence J. Lasser submits this Second Reply Memorandum in Support of His Motion

for Summary Judgment with respect to Count 12 of the Amended Complaint. In this

memorandum, Mr. Lasser will respond briefly to Ms. Svensson's Supplemental Memorandum in

Support of Her Opposition to the Putnam and Lasser Motions for Summary Judgment

("Svensson's New Memo").[1]

**1. Svensson's New Memo Defeats Her Termination Claim Against Mr. Lasser,**
**Since it Proves that Mr. Lasser Did Not Participate in the Decision to Terminate**
**Her Employment.**

---

[1]    Ms. Svensson's counsel have chosen to burden this Court and counsel for the defendants with another rambling, unfocused brief; yet another affidavit from Ms. Svensson (her Seventh); and scores of pages of documents, deposition transcript pages and charts. This presentation is not at all what the Court asked for at the hearing on February 26, 2008. Apart from this non-compliance, all of this material could have been presented by Ms. Svensson's counsel prior to the hearing in accordance with Fed. R. Civ. P. 56 regarding oppositions to motions for summary judgment. Having failed to comply with the Court's Order and Fed. R. Civ. P. 56, the Court should reject and strike Svensson's counsel's most recent avalanche of paper in its entirety, as the Court suggested would happen if this type of presentation were provided by Ms. Svensson's counsel to the Court. (Hearing Transcript, page 56). Mr. Lasser therefore joins in Putnam's Motion to Strike Plaintiffs' Supplemental Memorandum In Support of Her Oppositions to Defendants' Motions for Summary Judgment, Together with all Supporting Material (Docket Numbers 262-295) (the "Motion to Strike").

- 2 -

Svensson's New Memo contains a long recitation of alleged "facts" regarding exactly how the decision to terminate her employment was made, and who made the decision. Mr. Lasser was not involved, based on her own version of the events. See pages 3-7 of Svensson's New Memo. Incredibly, the only reference to Mr. Lasser in this entire chronology is a snippet – an out of context snippet at that – from the deposition of Joshua Brooks. Mr. Brooks' testimony in full, at pages 185-187, is as follows:

> Q.      Do you recall ever having a discussion with Larry Lasser?
>
> A.      I remember *once the decision had been made* that we were going to offer Lisa these alternatives, I do remember that Larry mentioned to me he had heard about that. I assumed at the time he had heard from HR, but I wasn't certain and I didn't ask.
>
> Q.      Was this a face-to-face meeting or a telephone discussion?
>
> A.      No, it would have been face to face.
>
> Q.      Do you remember the context?
>
> A.      It was, I believe, at the end of a regular meeting I would have had with Ed, Steve and Larry, the purpose of which was to discuss progress on research, how things were going, et cetera.
>
> Q.      Was this a regular meeting?
>
> A.      It was.
>
> Q.      And then at some point you got around to discussion of Lisa Svensson?
>
> A.      No, not – That wasn't part of that meeting, it was more a – I remember it being after the meeting, walking out of the room, Larry mentioned to me that he had heard about this.
>
> Q.      *That's all he said, he'd heard about it?*
>
> A.      *Yeah. I described it a little bit to him.*
>
> Q.      What did you say to him?

> A.      I described it as I – much as I already have, that it appeared that Lisa had been acting egregiously towards the people who worked for her in her management capability and that –
>
> Q.      Are those – Is that a quote, acting egregiously?
>
> A.      No, but it's directionally correct.  And that I was endeavoring to create an alternative for her to continue to – to allow her to continue to play a meaningful role, but not be in a position to cause us to lose employees or create an environment in which we couldn't successfully invest.
>
> Q.      And did Larry respond in any fashion to that?
>
> A.      I'm sure he did.  *I don't remember, though.*
>
> Q.      *You don't remember what he said?*
>
> A.      *No.*
>
> Q.      Did he indicate that he was on board with the idea?
>
> A.      I'm sure that he did.  (emphasis supplied).

This testimony shows that the decision was made by Mr. Brooks, not Mr. Lasser.  This testimony shows that the only discussion Mr. Brooks had about his (Mr. Brooks') decision to offer Ms. Svensson "alternatives" was "once the decision had been made" by Mr. Brooks.  Brooks Dep. 185: 5-13.  He (Mr. Brooks) told Mr. Lasser about his (Mr. Brooks') decision to offer Ms. Svensson various alternatives, obviously because Mr. Lasser did not know what had occurred to cause Mr. Brooks to make his decision.  Brooks Dep. 186: 13-19.  He (Mr. Brooks) did not remember what Mr. Lasser said in response, if anything.  Brooks Dep. 187: 5-13.  This testimony has been transformed, by totally misleading editing, into "Lasser had been 'on board with the idea'."  Svensson's New Memo at p. 7.[2]

---

[2]      Curiously, as part of her most recent presentation, Ms. Svensson includes additional pages from Mr. Brooks' deposition transcript, none of which assist her in her claim against Mr. Lasser.  In fact, they reinforce the fact that Mr. Brooks, not Mr. Lasser, made the *decision* to offer Ms. Svensson the various alternatives which led, ultimately, to her leaving Putnam.  See Brooks Dep. 159: 21 to 160: 1 ("Q. Did there come a time when *you*

*(Footnote continued on next page)*

After the Court generously gave Ms. Svensson an opportunity to remake her brief and her case, this selective quotation is the best she can do as to Mr. Lasser.  Ms. Svensson's problem is that she has no facts on which to base her aiding and abetting claim, and the only thing she can do is take words out of context in an effort to cobble together a claim where none exists. Summary judgment for Mr. Lasser should be allowed on this record.

### 2.   No one, Male or Female, Was Considered for Promotion to MD in 2003.

Svensson's New Memo confirms the undisputed fact that no one, male or female, was promoted to MD in 2003.  New Svensson Memo, page 15.  This undisputed fact has somehow been transformed into "Lasser, who made the decision not to promote any women to MD in 2003 . . . "  Mr. Lasser's gender-neutral decision to put a hold on all MD promotions for everyone, male and female alike, cannot possibly constitute aiding and abetting gender discrimination as a matter of law.[3]

Ms. Svensson apparently contends that Putnam had an affirmative duty to promote her in 2003 *because she is female,* even though no one else was even considered that year.  The contention is obviously ludicrous and has absolutely no support in the law.

---

*(Footnote continued from previous page)*

*decided* that you wanted to terminate or demote Lisa Svensson?  A. Yes"); Brooks Dep. 160: 7-11:  (A:  "*I decided that I needed to ask* Lisa to give up her managerial responsibilities. . . ").  (emphasis supplied).  After Mr. Brooks' lengthy discussion about the legitimate, non-discriminatory reason for *his* decision, Ms. Svensson's attorney asked Mr. Brooks the following question:  "Q: Prior to making *your* determination to deprive Lisa Svensson of her management responsibilities, did *you* prepare any written documentation concerning that decision?"  Brooks Dep. 183: 23 – 184: 3 (emphasis supplied).  All of the evidence in this case has been absolutely clear that Mr. Brooks made the decision to terminate, not Mr. Lasser, and Ms. Svensson's counsel's question reflects this fact.  These pages from Mr. Brooks' deposition transcript appear as part of Document Number 287 filed by Mr. Moloney on March 5, 2008.

[3]    Indeed, Ms. Svensson makes the point in Exhibit E to her Seventh Affidavit (page 11), that nine males (who apparently were eligible for elevation to MD in 2003) were also not promoted in 2003.  Where is the gender discrimination in this data?

In any event, the failure to promote in 2003 claim, like all of Ms. Svensson's other claims except the termination claim, are time barred, for the reasons explained in Putnam's and Lasser's prior briefs.

### 3. Even if Not Time-Barred, There Are No Facts to Support Aiding and Abetting Liability Against Mr. Lasser with Respect to the Other Adverse Employment Actions.

As in her original brief, Ms. Svensson has produced no specific facts on which to base a claim against Mr. Lasser with respect to the other Adverse Employment Actions which comprise her case, even if those other claims were not time-barred – and they are.  A review of Svensson's New Memo contains no evidence regarding Mr. Lasser – *not as a decision maker*, and not as *an active participant in the decisions regarding Ms. Svensson*.  On the contrary, the charts attached as exhibits make it very clear that the decision maker with respect to each of the Adverse Employment Actions was *not Mr. Lasser*.[4]  In the absence of such evidence, summary judgment must be granted to Mr. Lasser.

---

[4]    For example:  The chart with respect to the "Failure to Promote Svensson to MD – 2002" (Exhibit E to Svensson's Seventh Affidavit, page 8), identifies the "Investment Division Partners" as the decision makers with respect to this Adverse Employment Action.  Mr. Lasser is somehow "liable" because he allegedly "chose" these partners during some unspecified period of time, for unspecified reasons unrelated to Lisa Svensson.  As another example:  Ms. Svensson makes much of the assertion that Jack Wagner wrote down Ms. Svensson's performance rating in 2000; that is *Mr. Wagner, not Larry Lasser*.  He also wrote down the scores of other candidates, including several males.  Svensson Chronology, Exhibit E to Svensson's Seventh Affidavit, page 2; Rosenthal Aff. Ex. 7.  Importantly, in her chronology Ms. Svensson admits that the write-down "was the idea of Jack Morgan."  Contrast this to the unsupported assertion in Svensson's Response to Mr. Lasser's Statement of Undisputed Facts in which she makes the fallacious and unsupported contention that the write-down was the result of "pressure" from Mr. Lasser.  There is no evidence to support this contention, which Ms. Svensson has now abandoned.  Ms. Svensson's <u>inconsistencies</u> serve to highlight the lack of merit in her claims against Mr. Lasser, and certainly do not suffice to create <u>genuine</u> issues of material fact.  On this issue, the Court is respectfully referred to Putnam's Motion to Strike, pages 4-5, which demonstrates beyond dispute that gender bias was not involved in Mr. Morgan's conduct.

- 6 -

Respectfully submitted,

LAWRENCE J. LASSER

By his attorneys,

/s/David S. Rosenthal
David S. Rosenthal (BBO No. 429260)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000
(617) 345-1300 (FAX)

Dated: March 10, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

/s/ David S. Rosenthal
David S. Rosenthal