UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA SVENSSON,
        Plaintiff,


        v.                                          CIVIL ACTION NO.
                                                    04-12711-PBS


PUTNAM INVESTMENTS, LLC and
LAWRENCE J. LASER,
        Defendants.


**REPORT AND RECOMMENDATION RE:
MOTION OF PLAINTIFF LISA SVENSSON FOR SANCTIONS
PURSUANT TO 28 U.S.C. § 1927
(DOCKET ENTRY # 212)[1]**

**MEMORANDUM AND ORDER RE:
MOTION OF PLAINTIFF LISA SVENSSON TO COMPEL CONCERNING
EXPERT DEPOSITION AND SANCTIONS PURSUANT
TO FED. R. CIV. P. 37(c)
(DOCKET ENTRY # 214)**

**March 11, 2008**

**BOWLER, U.S.M.J.**

        After conducting a hearing on February 11, 2008, on the

above styled motions (Docket Entry # 212 & 214), this court took

the motions under advisement.  This ruling follows.

        The crux of plaintiff Lisa Svensson's arguments is that

defendant Putnam Investments, LLC ("defendant") denied her access

to discovery regarding the appropriate comparators to assess the

---

        [1]    See Plante v. Fleet National Bank, 978 F.Supp. 59, 64
(D.R.I. 1997) (characterizing a decision imposing sanctions under
Rule 11 and 28 U.S.C. § 1927 as dispositive for purposes of 28
U.S.C. § 636 where neither party objected).

gender discrimination claim[2] she brings against defendant, her former employer. According to plaintiff Lisa Svensson ("plaintiff"), Putnam's excessive redacting of documents compounded the failure to provide information relative to the comparators. In addition, Putnam's expert used documents not provided to plaintiff during discovery to prepare an April 2007 expert report.

In the motion to compel (Docket Entry # 214), plaintiff seeks sanctions under Rule 37(c) and 37(b), Fed. R. Civ. P. ("Rule 37"), because during discovery Putnam thwarted her ability to access a broader universe of comparator data used by Putnam's expert, David Bloom, Ph.D. ("Bloom"). The sanctions sought under Rule 37 for the failure to comply with discovery obligations, including the duty to supplement and the failure to provide the data reviewed by Bloom until November 26, 2007 at the earliest, are as follows: (1) striking the answer, denying Putnam's summary judgment motion and setting the case for a trial limited to damages; (2) denying the summary judgment motion and entering an evidentiary finding relative to Putnam's gender discrimination; (3) staying these proceedings and (a) requiring the production of unredacted documents responsive to all of plaintiff's interrogatories and document requests provided or discussed with Bloom; (b) convening a Rule 30(b)(6), Fed. R. Civ.

---

[2] The gender discrimination claim includes allegations of discriminatory compensation, promotion and termination.

P. ("Rule 30"), deposition of Putnam not subject to the day and hour time limits of Rule 30(d)(2) regarding any issue raised by the information produced; and (c) allowing plaintiff's expert, Paul F. White, Ph.D. ("White"), to prepare a supplemental report within a reasonable period of time after transcription of the Rule 30(b)(6) deposition; (4) striking the April 2007 Bloom report; (5) awarding costs, including reasonable attorney's fees, resulting from the additional discovery and trial preparation as well as Putnam's refusal to comply with its discovery obligations between November 2005 and January 2008; and (6) awarding the costs incurred by plaintiff for White's January 2007 report.

In the motion for sanctions under 28 U.S.C. § 1927 ("section 1927"), plaintiff seeks monetary sanctions and "other relief under the circumstances." (Docket Entry # 212). The monetary relief consists of costs, including reasonable attorney's fees, occasioned by the failure and refusal of Putnam to provide the discovery regarding the comparators. The motion additionally seeks a monetary award equivalent to the costs plaintiff incurred for White's January 2007 report.

BACKGROUND

Plaintiff worked at Putnam from 1994 to 2003. In July 1994 she worked in the Investment Management Division ("IMD") "as Vice President, Supervisory Analyst, in the global equity research

department." (Docket Entry # 57, ¶ 1).[3]  In 1997, Putnam
elevated her to the position of a Senior Vice President,
Portfolio Manager, for the Putnam Global Growth Fund.  In 2002,
however, Putnam demoted plaintiff to the position of Senior Vice
President, Associate Director of Research, in the global equity
research department.  In September 2003, Putnam terminated her
employment.

Discovery began with plaintiff propounding overly broad
interrogatories and requests for production of documents seeking
comparator data for Putnam's entire work force.  For example,
interrogatory number three in plaintiff's first set of
interrogatories sought the names of each job category, the names
of all female employees in each job category and the names of
each female employee with children in each job category spanning
the time period "from January 1, 1994 to date" for "Putnam's
entire exempt work force."  (Docket Entry # 215, Ex. A).  In
2002, Putnam employed an estimated 7,500 employees and by 2005
employed an estimated 3,000 employees.

Document request number two in plaintiff's first set of
document requests sought a similarly broad category of

---

[3]  In support of the motion to compel, plaintiff cites to
numerous filings in the record, including the above affidavit,
and incorporates them by reference.  Citations to the record are
provided only for direct quotes.  Facts presented in this motion
are used to decide only the two pending motions (Docket Entry ##
212 & 214) and are not to be used or considered as the law of
this case for the purpose of resolving any dispositive motion.

information.  It requests "[a]ll documents and records concerning Putnam's terminations, denials of promotion, and demotions of Putnam employees from January 1, 2004 to the present including names, addresses, job titles, job descriptions, seniority and gender of the persons affected by each such adverse employment decision."  (Docket Entry # 215, Ex. A).  Putnam objected on the basis of over breadth, relevance, undue burden and confidentiality concerns.

Counsel for both parties proceeded to conference in an effort to forestall the first of several motions to compel seeking comparator information.  After narrowing the requested information to a limited degree, plaintiff filed a motion to compel production of documents in November 2005.  Putnam opposed production complaining, in part, that plaintiff "continues to insist on production of documents concerning investment professionals in Putnam's Domestic or International Value, Core and Growth Teams" even though she "was never a member of any of these teams."  (Docket Entry # 28).  Putnam remained "willing to produce documents concerning relevant comparators, including the other Portfolio Managers in Global Growth from 2000 and 2001, and the Analysts in GER[4] in 2002."  (Docket Entry # 28).

At the December 2005 hearing on the motion to compel, Putnam offered to produce the termination and promotion information for

---

[4]  GER refers to the global equity research department.

employees in the above two departments but refused to produce comparator information outside the decision making unit to which plaintiff belonged.  As stated at the hearing, this court was "inclined to agree" with Putnam's position.  (Docket Entry # 215, Ex. E).  This court then directed Putnam only to provide plaintiff with the comparator information for the ten to 15 individuals in the relevant departments "at this time" thereby leaving the issue open for further consideration if necessary.

Seeking to widen the scope of comparator information, plaintiff filed a motion to compel answers to interrogatories, including interrogatory number three and a number of additional interrogatories directed at acquiring comparator information. (Docket Entry # 53).  In support of the April 20, 2006 motion, plaintiff filed two affidavits wherein she averred to identifying the relevant male and the relevant female comparators.[5]  She therefore proved willing to reduce the scope of the requested "exempt work force" to the male and female comparators she

---

[5]  As stated in the supporting memorandum:

> Svensson contends that the male investment professionals at Putnam, including those who were promoted to the Putnam position of, or were hired from the outside as a Managing Director, who are identified in Exhibit 2 to the Svensson Second Affidavit, are, for the reasons referred to in that Analysis of Male Comparators, her male comparators. Svensson contends that the female investment professionals identified in Exhibit 2 to the Svensson Third Affidavit, are, for the reasons set forth in that Analysis of Female Comparators, her female comparators.

(Docket Entry # 54, p. 2).

identified in the foregoing second and third affidavits.
Plaintiff also noted and understood that documents produced thus
far "confirm that Putnam maintains a centralized structure for
promotions and demotions" notwithstanding Putnam's argument to
the contrary.  (Docket Entry # 54, n. 5).

    In opposing the motion in May 2006, Putnam refused to
produce even the 91 comparators identified by plaintiff as the
relevant group.  Putnam contended that a number of the
individuals did not occupy the same or similar positions as
plaintiff and/or "managed wholly different investment products in
wholly different business units."  (Docket Entry # 66).

    On June 21, 2006, this court held a hearing on the motion to
compel interrogatories.  At the hearing, plaintiff argued that
the documents produced by Putnam evidence that "for purposes of
compensation and bonus," Putnam compares individuals "across
teams throughout the division."  (Docket Entry # 215, Ex. G).

    In addition, plaintiff vigorously argued in favor of
producing the comparator information for the 91 identified
individuals.  With respect to those 67 males and 24 females,
plaintiff explained that:

> We have picked[,] objectively measured and objectively
> understood criteria for purposes of establishing that there
> are people in that division with whom she should be compared
> in this case because she was compared with the very same
> people when they made the decision to promote her initially,
> when they failed to promote her to managing director, when
> she was demoted and when she was terminated.

(Docket Entry # 215, Ex. G).  Plaintiff also represented that she

7

had "limited the scope of the interrogatories . . . to the
investment division . . . and we have now reduced the scope of
that even further for purposes of this motion to . . . the 67
males and the 24 females who are identified in" a fourth
affidavit filed by plaintiff.  (Docket Entry # 106, p. 7).

Putnam, in turn, argued that there were no comparators with
respect to the termination claim because "plaintiff was
terminated for a reason for which nobody else" was terminated.
As to the other claims of gender discrimination, however, Putnam
argued that there were comparators, just not the ones "cherry
picked" by plaintiff.[6]  (Docket Entry # 215, Ex. G).

After hearing argument relative to the 91 comparators then
sought by plaintiff as well as Putnam's refusal to produce, this
court gave the parties additional time to determine if they could
jointly agree on the comparators.  Hence, this court did not make
a definitive ruling on the discovery request.  Instead, this
court set a further hearing for the motion to compel for July 11,
2006.

At the July 11, 2006 hearing, plaintiff reiterated her

---

[6]   Plaintiff's assertion that Putnam took the position that
there were no comparators is therefore not entirely correct.
Plaintiff additionally maintains that Putnam misleadingly failed
to disclose that it would eventually employ a much larger
universe of comparators and that its expert would review and
analyze that universe.  Plaintiff insists it is fundamentally
unfair for Putnam to provide information to Bloom, including
information Bloom considered but did not use, that Putnam failed
to provide to plaintiff during discovery.

8

position that she had reduced the scope of the interrogatories to
the 91 individuals, consisting of 67 males and 24 females
identified in plaintiff's fourth affidavit filed on June 8, 2006.
(Docket Entry # 105, p. 4).  The fourth affidavit made a few
minor changes to the analysis of the comparators but otherwise
"restate[d] and reaffirm[ed] the contents of the Second and Third
Affidavits."  (Docket Entry # 75, ¶ 7).  At the hearing, Putnam
agreed to produce the comparator information relative to these 91
individuals and plaintiff's counsel confirmed that "we've reached
agreement on the 91."  (Docket Entry # 215, Ex. H).  Putnam's
counsel added that it would answer the interrogatories with
respect to the 91 individuals "without in any way agreeing that
this is the appropriate universe of comparators."  (Docket Entry
# 106).  Putnam additionally stated that it was still free to
argue a narrower scope of comparators.

On September 1, 2006, Putnam answered the interrogatories,
as modified, with respect to the 91 comparators in the IMD
identified by plaintiff.  Putnam also unredacted documents
concerning these 91 individuals.  Accordingly, with respect to
the identified 91 comparators, Putnam agreed to answer the
relevant interrogatories with respect to the first set of
interrogatories as well as to unredact the corresponding
documents with respect to the first request for production of
documents.

Putnam proceeded to produce documents regarding individuals

outside this group in redacted form to protect personal information. According to plaintiff, the redacting prevented her "from obtaining any information about any other investment professionals at Putnam" and curtailed or hampered testimony during depositions. (Docket Entry # 211). According to plaintiff, the redacted information "would have provided Svensson on a timely basis with much of the information she sought about other officers in the IMD." (Docket Entry # 211).

Plaintiff thereafter served Putnam with additional document requests.[7] Discovery disputes ensued particularly with respect to the use of appropriate search terms for electronic discovery. Plaintiff nevertheless understood that Putnam was reserving its right to argue a different universe of comparators.

For example, an October 19, 2006 opposition to plaintiff's second motion to compel discloses that:

> Putnam continues to assert its position that these 91 are not Ms. Svensson's legal comparators. For example, among Ms. Svensson's 91 comparators are her boss, a subordinate who reported to her, people who worked at different times in wholly different departments, individuals whose tenure at Putnam never overlapped with hers, people performing different jobs, and people reporting to wholly different supervisors. Solely in an effort to resolve discovery disputes and keep the discovery process moving, Putnam agreed to provide certain information about these individuals in response to Ms. Svensson's interrogatories. Putnam also agreed to unredact previously produced documents with respect to those 91. At no time, however, has Putnam conceded -- for purposes of discovery or otherwise -- that these individuals are Ms. Svensson's legal comparators.

---

[7] The second request for production of documents primarily limited the requests to the 91 identified individuals.

(Docket Entry # 117, n. 1).  Likewise, in a 123 page reply memorandum, plaintiff reiterates that, "The phrase '91 comparators' refers collectively to the 91 identified males and identified females that Putnam and Svensson agreed at the July 11, 2006, hearing would be deemed comparators for discovery purposes, Putnam reserving the right to contest this characterization for purposes other than discovery."  (Docket Entry # 124, n. 3).  Having produced the information, Putnam continued to assert the position that the 91 individuals was not the appropriate universe of comparators.[8]

Returning to the discovery process, this court's January 9, 2007 allowance of a motion for protective order filed by Putnam (Docket Entry # 130) terminated further fact discovery.  Also in January 2007, this court extended the expert discovery and issued the following deadlines:  March 14, 2007, for the filing of plaintiff's expert report and April 13, 2007, for the filing of Putnam's expert report.

Plaintiff produced the report of her expert, White, in the middle of March 2007.  White analyzed the data relative to the 91 comparators.  Putnam, in turn, produced the report of its expert, Bloom, in the middle of April 2007.  The parties agree that neither report included production of the data the expert

---

[8]  Plaintiff, however, mistakenly interpreted Putnam's position as arguing that there were either no comparators or that there was a number of comparators smaller than the 91 identified by plaintiff.

considered and reviewed.

In order for Bloom to prepare the April 2007 report, Putnam provided him with numerous documents to review and consider.  The documents include a larger group of potential comparators than the 91 individuals identified by plaintiff.  During discovery, Putnam had not provided all of these documents to plaintiff.

Bloom "review[ed] and consider[ed]" the documents Putnam provided.  (Docket Entry # 215, Ex. C).  He also listed all of the documents he reviewed and considered in an exhibit attached the April 2007 report.  (Docket Entry # 215, Ex. C).

The report did not, however, contain the data or documents listed in the exhibit.  Instead of producing the data at the time of the expert report, Putnam provided plaintiff all of the documents "Bloom considered in forming his opinions" on November 26, 2007.[9]  (Docket Entry # 215, Ex. 5).  The documents produced for the first time on November 26, 2007, include job related data, including compensation data, for a larger sample of officer level individuals in the IMD for 1998 to 2003.  In particular, the new documents include data relative to 344 IMD officers who

---

[9]  As a factual matter, this court does not agree with plaintiff that Putnam withheld production of documents considered by Bloom in forming his opinions after the November 26, 2007 production.  Without producing an affidavit, documents or other evidence, plaintiff simply alleges that certain information was not produced until Bloom's December 18, 2007 deposition.  The November 26, 2007 email from Putnam's counsel to plaintiff's counsel forthrightly and succinctly states that, "Attached is the data that Bloom considered in forming his opinions."  (Docket Entry # 215, Ex. D).

were in the employ of Putnam at the end of 2002 and at the end of 2003 as well as a list of IMD officers terminated during the 2000 to 2003 time period.  Bloom also reviewed compensation data relative to IMD analysts, senior analysts, portfolio managers, senior portfolio managers and associate directors for the 2002 to 2003 time period.[10]

Meanwhile, in January 2007, plaintiff appealed a number of discovery rulings to the trial judge.  In April 2007, the trial judge issued rulings with respect to more than 40 document requests and allowed certain limited, additional discovery including electronic discovery.  Notably, the trial judge confirmed that, "Plaintiff contends that there are 91 comparators, a number which defendants did not dispute for discovery purposes only."  (Docket Entry # 175).

Thereafter, the parties sought additional time to complete discovery.  On July 9, 2007, the trial judge allowed a joint motion to revise the schedule.  (Docket Entry # 182).  The July 9, 2007 scheduling order thereby set a deadline of November 2, 2007, for plaintiff to supplement her expert reports; December 3,

---

[10]  Plaintiff complains that Putnam is using the foregoing data, which Putnam did not provide to plaintiff during discovery before November 26, 2007, as evidence to support Putnam's summary judgment motion.  Plaintiff also takes issue with the criticism Putnam lodges against White and the inappropriate data used and considered by White.

2007, for Putnam to supplement its expert reports;[11] December 21,
2007, for the completion of expert depositions; January 15, 2008,
for the filing of summary judgment motions; and February 26, 2008
for a hearing on the summary judgment motions.  She also allowed
a further Rule 30(b)(6) deposition of Putnam to take place during
the period of October 1 to 4, 2007.

     In no uncertain terms, the trial judge further ordered that,
"There shall be no further discovery (fact or expert) and no
motions to compel based on past events.  Any motion to compel
regarding the 30 (b)(6) deposition shall be filed by October 11.
Any motion to compel regarding expert deposition shall be filed
by 12/27."[12]

     Plaintiff's counsel informally requested the data used by
Bloom "but not provided to plaintiff and her expert" in an email
to Putnam's counsel on June 30, 2007.[13]  On July 2, 2007,
Putnam's counsel replied that he would try to track down Bloom
who was traveling overseas.  Plaintiff's counsel reminded
Putnam's counsel about the email request in emails on July 17 and

---

[11]  On September 24, 2007, the trial judge slightly altered
these dates.

[12]  Putnam maintains that the motion to compel (Docket Entry
# 214) contravenes this Order and is therefore untimely.

[13]  Instead of attaching the email as an exhibit, plaintiff
quotes the email in the body of a reply memorandum (Docket Entry
# 217).  Putnam, however, does not contend that the transcription
is inaccurate.  This court accepts the representation absent
evidence to the contrary filed within seven days of this opinion.

October 1 and 4, 2007.[14]

In a November 2, 2007 email, plaintiff's counsel proposed exchanging "via electronic copy the things used to form the respective [expert] opinions." (Exhibit, Feb. 11, 2007 Hearing). Putnam's counsel replied that he was prepared to exchange the data only if it was reciprocal. Similarly, plaintiff's counsel was prepared to exchange the documents relied upon by White for "a similar production from Bloom" on Tuesday, November 27, 2007. (Docket Entry # 215, Ex. D). Putnam's counsel emailed the data considered by Bloom to plaintiff's counsel on November 26, 2007.[15]

On January 15, 2008, Putnam filed a motion for summary judgment. On January 18, 2008, plaintiff filed the motion to compel concerning expert depositions and the motion for sanctions.[16] Trial is scheduled to begin on May 12, 2008. In setting this date and allowing a motion to continue the previously scheduled date, the trial judge warned that, "This is an old case" and "There will be no further continuances."

---

[14]   See the previous footnote.

[15]   Putnam argues that the November 26, 2007 production of the data considered by Bloom was timely because there was an agreed date for reciprocal exchange.

[16]   On September 24, 2007, the trial judge set a deadline of January 4, 2008, for the filing of motions to compel concerning the expert depositions. On January 2, 2008, the trial judge extended the deadline to January 18, 2008.

DISCUSSION

In seeking to invoke the sanction machinery of Rule 37, plaintiff repeatedly emphasizes that Putnam failed to produce the discovery relative to the larger universe of comparators.  She complains, in particular, that Putnam never produced the information relative to the 344 IMD officers, excluding any overlap of individuals from the 91 identified comparators, that Bloom used to perform his analysis until November 26 or December 13, 2007.

Plaintiff also maintains that Putnam disguised and misled her by maintaining that there were no comparators.  To the contrary, however, Putnam consistently maintained that it would produce the information relative to the 91 comparators but was not conceding that the 91 identified individuals was the appropriate universe of comparators.[17]  Thus, Putnam never foreclosed the opportunity to argue that a larger universe of comparators was the legally appropriate set.

Although plaintiff initially asked for information broader than the 91 comparators identified in her fourth affidavit, she reduced the scope of the first set of interrogatories to seek only information about this set of 91 comparators.  Putnam then agreed to produce the information.  On September 1, 2006, Putnam answered the interrogatories, as modified to apply only to the 91

_____

[17]    See footnote number six.

16

comparators, and provided unredacted documents concerning these
91 individuals.  In response to the motion to compel with respect
to the first set of document requests (Docket Entry # 24), this
court never ordered Putnam to produce comparator information
beyond the aforementioned ten to 15 comparators except to the
extent of approving the agreement for Putnam to supply
information relative to the 91 comparators.[18]

   Rule 37(b)(2)(C) "requires two things as conditions
precedent to engaging the gears of [Rule 37(b)(2)(C)'s] sanction
machinery:  a court order must be in effect, and then must be
violated."  <u>R.W. International Corporation v. Welch Foods, Inc.</u>,
937 F.2d 11, 15 (1st Cir. 1991); <u>see generally</u> <u>Marx v. Kelly,
Hart & Hallman, P.C.</u>, 929 F.2d 8, 10-11 (1st Cir. 1991).  Rule
37(b)(2)(B) therefore "contemplate[s] a threshold determination
by the court that the offending party has failed to comply with a
court order issued under Rule 37(a)."  <u>Ortiz-Lopez v. Sociedad
Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico</u>, 248
F.3d 29, 33 (1st Cir. 2001).

_____

[18]  As aptly noted by Putnam at the June 11, 2006 hearing:

      So, the issue, Your Honor, is not whether [plaintiff] should
      get comparators.  We've never said there are no comparators
      other than with one claim, the termination claim, . . . but
      we've never said with respect to the other claims that
      they're no comparators.  What we have said is that she has
      never asked for them and we've taken that position since day
      one, and all she had to do was read the cases and ask by
      categories and she gets a response.

(Docket Entry # 106).

                              17

Rule 37(a), as its title suggests, applies to a motion to compel.  Rule 37(b), as its title suggests, applies to the violation of a court order.  Because this court never ordered Putnam to produce the information about which plaintiff complains, Rule 37(b) by itself does not apply.  Likewise, Putnam did not violate any duty to supplement with respect to plaintiff's interrogatories and requests for documents.

The April 2007 expert report of Bloom, however, did not "contain . . . the data or other information considered by the [expert] witness in forming the opinions." Rule 26(a)(2)(B), Fed. R. Civ. P.  Rule 26(a)(2) requires an expert to file a report which contains, inter alia, "'the data or other information considered by the witness in forming the opinions.'" B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc., 171 F.R.D. 57, 65 (S.D.N.Y. 1997) (quoting Rule 26(a)(2)(B)).  The provisions of Rule 26(a)(2) are self executing.  Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo, 248 F.3d at 33 (Rule 37(c)(2) sanction "is a self-executing sanction for failure to make a disclosure required by Rule 26(a)").  Whereas Rule 37(b) requires the presence of a court order under Rule 37(a) and a violation of that order, "the same is not true where automatic discovery provisions of Rule 26(a) and 26(e) are violated, triggering subsection (c) of the same Rule 37." Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d at 33.

Rule 26(a)(2)(C) also mandates that the "disclosures shall be made at the times and in the sequence directed by the court." Rule 26(a)(2)(C), Fed. R. Civ. P.; see Santiago-Diaz, 456 F.3d 272, 275 (1st Cir. 2006) ("disclosures are to be made 'at the times and in the sequence directed by the [district] court'"). With April 13, 2007 as the deadline for filing the expert report, Bloom filed the report but the report was not complete. Putnam did not provide all of the data considered by Bloom in forming his opinions until November 26, 2007.

It is true that the parties informally discussed a simultaneous exchange of data that their respective experts considered. There was, however, no stipulation at the time the report was due or thereafter that the April 13, 2007 deadline set by this court would not apply to the data considered by the expert.[19]  See Tomazic v. City of Cleveland, 2006 WL 2612736 at *

---

[19]  Rule 26(a)(2)(B) unquestionably allows the parties to stipulate that the expert report not contain the data considered by the expert.  Thus, the rule prefaces the duty to provide a report that "shall contain . . . the data or other information considered by" the testifying expert, with the words, "Except as otherwise stipulated or directed by the Court . . .."  Rule 26(a)(2)(B), Fed. R. Civ. P.  Rule 26(a)(2)(C) requires the production of the expert report on the date set by this court in the absence of a "stipulation by the parties."  Rule 26(a)(2)(C), Fed. R. Civ. P.  Simply put, at the time of production in April 2007, there was no stipulation between the parties that the report not contain the data considered.  Nor was there a stipulation extending the date of production of the report.  This court finds that the facts do not support the presence of such stipulations.
Alternatively and in any event, Putnam does not explicitly argue that the parties "otherwise stipulated" or entered into a "stipulation" within the meaning of Rule 26(a)(2)(B) and (C).

1 (N.D.Ohio Sept. 11, 2006) (agreement "not to have the court impose a specific deadline" does not "equate to a formal stipulation between the parties sufficient to supercede the default deadlines established by Fed. R. Civ. P. 26(a)(2)(C)"); Flagstar Bank, FSB v. Federal Insurance Co., 2006 WL 2466250 at * 2 (E.D.Mich. Aug. 24, 2006) ("[t]hough the parties clearly contemplated entering a stipulation to require expert disclosure by February 1 and March 1, no such stipulation was ever filed with the Court"); see also Rule 29, Fed. R. Civ. P. Accordingly, the production of the data considered by Bloom on November 26, 2007, seven months after the April 13, 2007 deadline for filing the expert report, was untimely.

The fact that plaintiff never formally requested the information in a document request and only informally asked for the material beginning in June 2007 does not obviate the duty of Putnam to provide the material in the expert report. Rule 26(a)(2) expressly requires the report to "contain" the "data" that the expert "considered." The Advisory Notes to the 1993 Amendments with respect to Rule 26(a) explain that a discovery request is not required to invoke production.

> **Subdivision (a).** Through the addition of paragraphs (1)-(4), this subdivision imposes on parties a duty to disclose without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informal decision about settlement . . . . Nor are the parties precluded from using traditional discovery methods to obtain further information regarding these matters . . . .

Advisory Committee Notes, 1993 Amendments, Rule 26.  Subdivisions
(1) through (4) of Rule 26(a) thus concern required disclosures.
Corrigan v. Methodist Hospital, 158 F.R.D. 54, 58 (E.D.Pa. 1994).
A separate subdivision, Rule 26(a)(5), separately provides the
"methods to discover additional matter."  Rule 26(a)(5) (quoting
title with bolding and capitalization omitted).

It is also true that the 1993 amendments to Rule 26(a)
accomplished a "broader scope of disclosure by rejecting the
previous term 'relied upon' and using, instead, the term
'considered.'"  Trigon Ins. Co. v. United States, 204 F.R.D. 277,
282 (E.D.Va. 2001); accord Karn v. Ingersoll-Rand Co., 168 F.R.D.
633, 635 (N.D.Ind. 1996) ("'[c]onsidered,' which simply means 'to
take into account,' clearly invokes a broader spectrum of thought
than the phrase 'relied upon,' which requires dependence on the
information").  A testifying expert must therefore "disclose and
. . . retain whatever materials are given him to review in
preparing his testimony."  Fidelity National Title Insurance Co.
of New York v. Intercounty National Title Insurance Co., 412 F.3d
745, 751 (7th Cir. 2005).  The Bloom report should, but did not,
"contain" the "data" "considered" by him including the data given
to him by Putnam's counsel.

Rule 37(c)(1) enforces the disclosures required under Rule
26(a) and Rule 26(e)(2).  Poulis-Minott v. Smith, 388 F.3d 354,
358 (1st Cir. 2004).  Although "traditionally invoked to preclude
expert testimony at trial, it can also be applied to motions for

21

summary judgment." Id.  Rule 37(c)(1) provides that, "A party
that without substantial justification fails to disclose
information required by Rule 26(a) . . . is not, unless such
failure is harmless, permitted to use as evidence . . . any
witness or information not so disclosed."  Rule 37(c)(1), Fed. R.
Civ. P.  "'The required sanction in the ordinary case is
mandatory preclusion'" of the expert testimony.  Poulis-Minott v.
Smith, 388 F.3d at 358; accord Pena-Crespo v. Commonwealth of
Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005) ("'exclusion of
evidence is a standard sanction for a violation of the duty of
disclosure under Rule 26(a)'").

"In addition to or in lieu of [the preclusion] sanction,"
however, "the court . . . may impose other appropriate
sanctions."  Fed. R. Civ. P. 37(c)(1) (emphasis added).
Accordingly, "preclusion is not a strictly a mechanical
exercise."  Santiago-Diaz, 456 F.3d 272, 276 (1st Cir. 2006).

It is also important "to best match the degree of non-
compliance with the purpose of Rule 26's mandatory disclosure
requirements."  Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo
Y Beneficiencia de Puerto Rico, 248 F.3d at 34.  "The purpose of
a 'detailed and complete' expert report . . . is, in part, to
minimize the expense of deposing experts, and to shorten direct
examination and prevent an ambush at trial."  Id. at 35; accord
Poulis-Minott v. Smith, 388 F.3d at 358 ("Rules 26(a) and
37(c)(1) seek to prevent the unfair tactical advantage that can

22

be gained by failing to unveil an expert in a timely fashion, and thereby potentially deprive a plaintiff of the opportunity to 'depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-related discovery'").

First and foremost, Putnam's insistence that it need not produce the data because plaintiff did not produce the data does not provide "substantial justification." Carr v. Deeds, 453 F.3d 593, 604 (4th Cir. 2006) (rejecting argument that the plaintiff's "refusal to provide the [expert] information was 'substantially justified' because [the] defendants did not comply with Rule 26(a)(2)(B)"); 6 James Wm. Moore Moore's Federal Practice § 26.23[2][a][iii] (2007) ("[o]ne party's failure to comply with the expert disclosure requirements does not excuse noncompliance by another party"). The failure of the April 2007 report to contain the data Bloom considered, however, was more than likely harmless thereby warranting a sanction less severe that the preclusion of the report and/or Bloom's testimony from the summary judgment record or at trial.

Pertinent factors to consider in assessing the appropriate sanction include "the history of the litigation, the proponent's need for the challenged evidence . . . and the opponent's ability to overcome its adverse effects." Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006). "Surprise and prejudice are [also] important integers" in the calculation. Id.

23

Contrary to plaintiff's belief, Putnam has not acted
obstreperously or committed a series of discovery violations.
See Santiago-Diaz, 456 F.3d at 277 & n. 4 (considering discovery
abuses other than those related to expert witnesses in evaluating
history of litigation factor).  The prejudice experienced by
plaintiff can be mollified by allowing White to consider and
submit a supplemental report with the additional information
while having Putnam bear the reasonable cost and expense for the
endeavor.  Plaintiff can thereby overcome to a degree the adverse
effects of the late disclosure of the data.[20]  Moreover, the late
production of the data is not as deleterious as a complete
failure to produce or an identification of a new expert on the
eve of trial.  Plaintiff obtained most, if not all, of the data
two months before the summary judgment hearing and more than five
months prior to trial.  Although plaintiff may profess surprise
about the data considered by Bloom and produced in November 2007,
Bloom listed the material in the April 2007 report including, for
example, the job related data for IMD officers during the period
of 1998 to 2003.

That said, there little justification for tardy production
and the effect of the late disclosure of the data does not bode
well for the trial court's docket.  See Gagnon v. Teledyne
Princeton, Inc., 437 F.3d at 198 (noting as a "pertinent factor"

---

[20]    See fn. 21.

an "assessment of what the late disclosure portends for the court's docket").  The summary judgment hearing took place on February 26, 2008.[21]  On the other hand, the late production of the data should not impact the May 12, 2008 trial date.

On balance and having considered the existence of substantial justification and harmlessness, the noncompliance at issue does not warrant preclusion as a sanction.  It also does not provide a basis to further stay the proceedings in this 2004 case.  Rather, this court finds that allowing White to consider and submit a supplemental report with the additional information while having Putnam bear the reasonable expense is appropriate.  See Old Country Toyota Corp. v. Toyota Motor Distributors, Inc., 168 F.R.D. 134, 137 (E.D.N.Y. 1996) (allowing party to take additional deposition of expert as sanction for insufficient expert report and requiring recalcitrant party to pay "the cost and expense of the deposition, including expert fees and" attorney's fees).

Rule 37(c)(1) also authorizes the payment of "reasonable expenses, including attorney's fees, *caused* by the failure."  Rule 37(c)(1), Fed. R. Civ. P. (emphasis added).  Because Putnam produced the data on November 26, 2007, the reasonable expenses only include those caused by this delay.  The delay should not

---

[21]    This court defers to the trial judge to determine whether to consider any supplemental report by White in another supplemental summary judgment filing made prior to rendering any decision on Putnam's summary judgment motion.

25

engender additional depositions and the reasonable expenses do not include expenses that plaintiff would incur regardless of the delay such as preparing White for his deposition or for his testimony at trial.  Because White would have undertaken a review of the data in any event, if at all, plaintiff is also not entitled to the reasonable expenses for White to review the new data.  Accordingly, although this court will require Putnam to pay the "reasonable expenses" of plaintiff, "including attorney's fees, caused by the failure," of the April 2007 report to contain the data that Bloom considered, there is little, if any, indication that plaintiff incurred any such expense.

In lieu of deciding the items of reasonable expenses caused by the failure at this time, this court directs the parties to confer and attempt to reach an agreement about such items. Absent such an agreement, the issue of the amount of the foregoing reasonable expenses is reserved to the conclusion of this case, i.e., after any allowance of summary judgment or a verdict.

Contrary to Putnam's position, the motion to compel concerning expert deposition and sanctions (Docket Entry # 214) as well as the motion for sanctions under section 1927 (Docket Entry # 212) do not constitute "motions to compel based on past events" within the meaning of the July 9, 2007 Order.  The plain meaning of the language refers to motions to compel under Rule 37(a), a rule captioned "Motion for Order Compelling Disclosure

or Discovery." Rule 37(a), Fed. R. Civ. P. (bolding omitted).

In addition, both motions seek sanctions as opposed to compelling

a disclosure or production.

As a final matter, sanctions under section 1927 are

inappropriate. The intent of section 1927 is "to eliminate

flagrant abuses of the litigation process." Equal Employment

Opportunity Commission v. Tandem Computers, Incorporated, 158

F.R.D. 224, 227 (D.Mass. 1994). The statute provides that:

> Any attorney or person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy
> personally the excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"Under section 1927, an attorney's conduct must multiply the

proceedings and be 'unreasonable and vexatious' to warrant the

imposition of sanctions." Cruz v. Savage, 896 F.2d 626, 631 (1st

Cir. 1990). "[S]ection 1927's requirement that the

multiplication of the proceedings be 'vexatious' necessarily

demands that the conduct sanctioned be more severe than mere

negligence, inadvertence, or incompetence." Id. at 632.

A "showing of an attorney's subjective bad faith" is not,

however, required to satisfy the section 1927 standard. McLane,

Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 44

(1st Cir. 2002). Hence, an "attorney need not intend to harass

or annoy by his conduct nor be guilty of conscious impropriety to

be sanctioned" under section 1927.    <u>Cruz v. Savage</u>, 896 F.2d at

632.    Rather, it is sufficient if "an attorney acts in disregard

of whether his conduct constitutes harassment or vexation, thus

displaying a 'serious and studied disregard for the orderly

process of justice.'"    <u>Id</u>.    In assessing whether the conduct of

Putnam's counsel is "unreasonable and harassing or annoying," an

objective standard applies.    <u>McLane, Graf, Raulerson & Middleton,</u>

<u>P.A. v. Rechberger</u>, 280 F.3d at 44.

    The conduct of Putnam's counsel falls substantially short of

multiplying these proceedings.    Throughout discovery, Putnam's

counsel did not in any manner act unreasonably and vexatiously.

Rather, he has simply vigorously and studiously defended his

client.


CONCLUSION

    Accordingly, in light of the above discussion, this court

**RECOMMENDS**[22] that the motion for sanctions under section 1927

(Docket Entry # 212) be **DENIED**.    The motion for sanctions under

Rule 37(c) (Docket Entry # 214) is **ALLOWED** in part and **DENIED** in

---

[22]    Any objections to this Report and Recommendation must be
filed with the Clerk of Court within ten days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection.    Any party may respond to another
party's objections within ten days after service of the
objections.    Failure to file objections within the specified time
waives the right to appeal the order.    <u>United States v. Escoboza</u>
<u>Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v.</u>
<u>Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

part.


   /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge