UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Lisa Svensson, <br><br> Plaintiff, <br><br> v. <br><br> Putnam Investments LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION <br> NO. 04-12711-PBS |

**PUTNAM INVESTMENTS' OPPOSITION TO
PLAINTIFF'S OBJECTIONS TO THE RULINGS OF THE MAGISTRATE JUDGE**

**INTRODUCTION**

In her 22-page Objection to Magistrate Judge Bowler's March 11, 2008 rulings on her motions to compel and for sanctions, plaintiff, Lisa Svensson ("Svensson"), asks this Court to overturn the Magistrate's 28 pages of detailed factual and legal conclusions to avoid reaching, much less analyzing, the merits of Svensson's claims. She asks this Court (as she asked the Magistrate Judge) to enter judgment in her favor on liability, without the bother of ruling on summary judgment or even conducting a trial. Svensson's Objections to Magistrate Judge's March 11, 2008 Recommendation and Order (the "Objection"), p. 22. Svensson does so, as she did before the Magistrate Judge, by disregarding previous rulings of this Court; by rehashing discovery disputes long since resolved by compromise or judicial rulings; by misrepresenting the record; by ignoring applicable law; and by distorting the history of expert discovery. The Magistrate Judge properly rejected Svensson's extraordinary pleas, concluding that there was simply no basis for compelling further discovery or imposing sanctions.

Svensson's Objection pays little more than lip service to the clearly erroneous standard required to reverse the Magistrate Judge's 28-page rulings ("Order")[1]. In conclusory fashion, Svensson suggests that the Magistrate Judge "erroneously ruled," yet offers no legal analysis, let alone evidence from the record, to support that assertion. Svensson's Objection, encumbered by invective but not by reference to legal authorities, cannot point to a single discovery order disobeyed by Putnam or even a single document request which seeks the material which she *concedes* that she received, but now complains she received only belatedly. Svensson confuses Putnam's discovery obligations (which are triggered by an appropriate discovery request) with its production of material considered by its expert (which is triggered by the filing of an expert's report).

Worse, much of the "misconduct" alleged by Svensson relates to hearings before the very Magistrate Judge who, after painstaking review of the record, found that no such misconduct occurred. And, even though this Court, on July 10, 2007, ruled that "there shall be ... no motions to compel based on past events," much of Svensson's Objection, as well as her underlying motions, continues to be predicated upon discovery and disputes which occurred nearly two years ago, and certainly well before July 10, 2007. Contrary to Svensson's assertion, the Magistrate Judge did not "fundamentally misunderstand[] the facts of this discovery dispute," nor "make facially inconsistent findings." Objection at 3, 15. The Magistrate Judge had intimate knowledge of discovery in this case, having supervised that discovery since December 2005, during which time she conducted 12 hearings. Magistrate Judge Bowler's findings and conclusions are amply supported by the record before her and by the requirements of the Federal Rules of Civil Procedure. Svensson's Objection should be denied.

---

[1] Magistrate Judge Bowler's "Report and Recommendation" on Svensson's Motion for Sanctions Pursuant to 28 U.S.C. § 1927, and her "Memorandum and Order" on Svensson's Motion to Compel and Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) are identical as she wrote one consolidated document. For ease of reference, both are referred to herein as the Magistrate's "Order."

## BACKGROUND

A summary of the factual background and procedural history concerning this appeal are set forth in detail in the Magistrate's Order at 3-15.

## ARGUMENT

I.  **SVENSSON HAS NOT MET HER BURDEN OF ESTABLISHING THAT THE MAGISTRATE'S ORDER WAS CLEARLY ERRONEOUS**

   A.  **The Highly Deferential "Clearly Erroneous" Standard Governs the Court's Review of the Magistrate Judge's Order**

Svensson's motion to compel concerning expert deposition and sanctions pursuant to Fed. R. Civ. P. 37(c) is a non-dispositive motion. *See* Order at 1, n.1. A motion for reconsideration of a magistrate's non-dispositive discovery order is reviewed pursuant to 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Rules for U. S. Magistrates in the U. S. Dist. Court for the Dist. of Mass. 2(b). A district court should modify or set aside a magistrate's order only when it is found to be "clearly erroneous or contrary to law." *Jackson v. Harvard University*, 111 F.R.D. 472, 473 (D.Mass.1986); s*ee also In re Administrative Subpoena,* 400 F. Supp. 2d 386, 388 (D. Mass. 2005) (Saris, J.). The standard is "highly deferential," *Derthick v. Bassett-Walker Inc.*, 1992 WL 249951 (S.D.N.Y., Sept. 23, 1992), and a reviewing court must be "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). Magistrate Judge Bowler predicates her 28-page Order upon 12 pages of detailed findings, Order at 3 - 15, all of which are supported by the record, and virtually none of which are contested by Svensson.

   B.  **Svensson's Objections Do Not Satisfy the Clearly Erroneous Standard**

In conclusory fashion, Svensson repeatedly suggests that the Magistrate Judge "erroneously ruled," without offering legal support or analysis, let alone evidence from the record, to support such assertions. Svensson posits a myriad of complaints (mostly rehashing prior discovery disagreements), but three central allegations form the core of her Objection. First, Svensson argues that Putnam should have produced its expert data in the summer of 2006,

*a year before it produced its expert report*. Second, she asserts that Putnam still has not produced all of the expert data it is obligated to produce. Finally, she submits that Putnam has employed unreasonable and vexatious discovery tactics throughout this litigation.

The Magistrate Judge rejected all of Svensson's core assertions. First, Magistrate Judge Bowler concluded that, in producing its expert data after it produced its expert report instead of in the summer of 2006, "Putnam did not violate any duty to supplement with respect to plaintiff's interrogatories and requests for documents" (Order at 18). Second, Magistrate Judge Bowler explicitly found that Putnam had produced all of its expert data, concluding that "[a]s a factual matter, this court does not agree with plaintiff that Putnam withheld production of documents considered by Bloom in forming his opinions after the November 26, 2007 production" (Order at 12, n.9). Finally, Magistrate Judge Bowler rejected Svensson's repeated assertions that Putnam acted unreasonably and vexatiously in discovery, finding that "[c]ontrary to plaintiff's belief, Putnam has not acted obstreperously or committed a series of discovery violations" (Order at 24). Magistrate Judge Bowler's conclusions are amply supported by the record.

### 1. Putnam Had No Duty Under the Discovery Rules to Produce the Data Bloom Considered in July 2006

Svensson contends that because Putnam made certain data "available to Bloom 'early on in the [expert report] process,'" Putnam "should have produced the data to Svensson at that earlier time." Objection at 3, ¶¶ 2, 4. Svensson fails to identify the source of any such duty to produce to the other party material made available to an expert at the time when it is made available to one's expert. The source of any duty to produce documents or information must be derived from either the rules governing interrogatories and the production of documents (Rules 33, 34, and 26(e)(1)), the rules governing expert discovery (Rules 26(a) and 26(e)(2)), or court orders. The Magistrate Judge properly concluded that Putnam had no duty, under *any* of these sources, to provide Svensson with the data made available to Professor Bloom at the time when it made the data available to him.

        **a.    Svensson served no document request or interrogatory asking for the data she now seeks**

Putnam was not obligated to produce the data made available to Professor Bloom during the course of normal discovery, prior to filing its expert report, because there was no outstanding discovery request seeking it (and Svensson points to none). The information that Svensson now seeks – whether data about Putnam's entire Investment Management Division or the subset considered by Professor Bloom – simply was never requested by Svensson during the discovery period, and the Magistrate Judge so found. See Order at 18 ("Putnam did not violate any duty to supplement with respect to plaintiff's interrogatories and requests for documents.").[2]

Svensson *did* ask for information concerning the thousands of employees in "Putnam's entire exempt workforce." Putnam timely objected to this overbroad request, and discussions and motions ensued. Ultimately, as the Magistrate Judge correctly found, "[a]lthough plaintiff initially asked for information broader than the 91 comparators identified in her fourth affidavit, she reduced the scope of the first set of interrogatories to seek only information about this set of 91 comparators." Order at 16. "Putnam then agreed to produce the information," and "answered the interrogatories … and provided unredacted documents concerning these 91 individuals." Order at 9. This finding is not contested. Moreover, "Putnam consistently maintained that it would produce the information relative to the 91 comparators but was not conceding that the 91 individuals was the appropriate universe of comparators" (Order at 16, 8, n. 6).

That these findings of the Magistrate Judge are clearly correct should not be surprising since most of the discovery disputes that Svensson now seeks to re-hash *occurred before the Magistrate*. Magistrate Bowler knew that Svensson made very clear that Svensson had carefully selected 91 employees about whom she insisted on information, and not some other group.

---

[2] Svensson also argues that any document potentially thought to be "relevant" by one party must therefore be produced (immediately) to the other party. *See i.e.* Objection at 3, ¶ 4 (arguing that Putnam knew in July 2006 "that such documents were relevant and, therefore, should have produced the data to Svensson at that earlier time"). Svensson cites to no support for this assertion.

- 5 -

Thus, on July 11, 2006, at one of 12 discovery hearings before the Magistrate Judge, Svensson's counsel, Mr. Moloney, clearly stated Svensson's position concerning comparator discovery:

> We have set forth in the exhibits to the fourth affidavit the names of the *67 males and the 24 females which we say are comparators* of Ms. Svensson and we have apportioned them into smaller groups based upon the four key employment acts in said issue, failed to pay equally, failed to promote to managing director, demotion and then termination. … *We have picked objectively measured and objectively understood criteria for purposes of establishing that there are people in that division with whom she should be compared in this case*…."

June 21, 2006 Hearing Transcript at 5-6, 14 (emphasis added), Docket #215, Ex. G.  Solely for purposes of moving forward with discovery, Putnam agreed to provide data concerning the 91 individuals to Svensson:

> [W]e have been arguing since day one that this universe, it was 16, then 34, now 91 individuals are not within the guidelines of the First Circuit, the appropriate universe of comparators.  *For purposes of trying to get beyond this dispute, Your Honor, or moving out as much of it as we can, we have agreed that we will answer the interrogatories with respect to the 91 which plaintiffs have chosen without in any way agreeing that that is the appropriate universe of comparators.*

July 11, 2006 Hearing Transcript at 5, Mr. Kociubes (emphasis added), attached hereto at Exhibit H.  That Svensson understood that it was Putnam's intention to challenge her comparator analysis is evident from Mr. Moloney's statements to Magistrate Bowler at the October 26, 2006, discovery hearing:

> So we see no reason why [Putnam] should not continue maintaining obviously their right to contest at summary judgment stage or at trial that none of these folks are Comparators. But at least for discovery purposes we say that [the unredacting] should continue.

Oct. 26, 2006 Transcript, at 5.  Indeed, that Putnam's position has long been clear is evident from this Court's April 2007 omnibus discovery ruling:

> Plaintiff contends that there are 91 comparators, a number *which defendants did not dispute for discovery purposes only*. Plaintiff has winnowed down the number of comparators for the different

> employment actions, and has filed multiple memoranda withdrawing or modifying many categories of document requests.

April 10, 2007 Order (Saris, J.)(emphasis added).  In light of this history, the Magistrate Judge correctly concluded that "Putnam did not violate any duty to supplement with respect to plaintiff's interrogatories and requests for documents."  Order at 18.

Svensson also asserts that her expert, Dr. Paul White, has utilized 760 hours on her case, at a cost of approximately $200,000.  See White Aff., ¶ 6.  Dr. White argues, in the hypothetical, that "[h]ad the data that Bloom selected for his review been available to me … the number of hours inputting work would have been reduced by approximately 476 hours and at a cost savings to the client of approximately $119,000.  *Id*. at ¶ 11.  This statement is inexplicable.

First, whatever time Dr. White spent was not spent analyzing the Bloom data, since, by his own admission, Dr. White has never analyzed that data, despite having had it since November 2007.  (Putnam also offered to produce the Bloom data in electronically readable format in exchange for a similar production of Dr. White's data by Svensson, but received no response to that request; see email attached to Docket #215, Ex. K)  Dr. White's expenses can only relate to his work on Svensson's hand-picked universe of 91 comparators, which Mr. Moloney assured the court were picked using *objectively measured and objectively understood criteria*…."  June 21, 2006 Hearing Transcript at 5-6, 14 (emphasis added).  Having chosen that universe, Svensson now seeks to charge Putnam inappropriately for the cost of analyzing it.

Second, to the extent that Svensson *now* complains that she incurred expense due to the fact that the data concerning her alleged 91 comparators was not produced in electronically readable format, she neglects to disclose that she never requested that production in electronic format at the time of production in the summer of 2006, nor did she complain about the format of that production at any time prior to her filing her current Objection with this Court.  (Indeed, Svensson did not even raise this issue with the Magistrate in connection with her present motions.)

- 7 -

Finally, the Magistrate Judge correctly concluded that Putnam had no duty to produce Bloom's expert data prior to April 2007. Magistrate Judge Bowler did rule that Putnam eventually could be responsible for costs, if any, attributable to the delay in producing Bloom's data from April 2007 to November 2007, but that it was logically unlikely that Svensson could demonstrate the existence of any such costs. Order at 26. Thus, contrary to his present assertion, Dr. White could not possibly have saved $119,000 in preparing his *March 2007* report. In any event, the Magistrate made clear that "the issue of the amount of the foregoing reasonable expenses is reserved to the *conclusion of this case*, i.e., after any allowance of summary judgment or a verdict." Order at 26 (emphasis added).

### b. Putnam has met its obligations under the expert discovery rules

Putnam also had no duty under Rule 26(a) or 26(e)(2) to produce the data considered by Professor Bloom prior to submission of Bloom's expert report (in April 2007). Svensson argues that "a correct analysis [by the Magistrate] would have taken into account Putnam's obligation to supplement under Rule 26(e)." Objection at 20. Under Rule 26(e), however, Putnam is required to supplement "information included in the [expert] report" and "information given during the expert's deposition." *See* Fed. R. Civ. P. 26(e)(2). Putnam produced all such information on November 26, 2007, long before Rule 26(e)'s deadline requiring that all supplementations "be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3)." *See id.*[3]

---

[3] The Magistrate Judge did conclude that Putnam should have produced its expert data in April 2007 rather than in November 2007, but that the delay was "more than likely harmless." Order at 23. It is undisputed, however, that Svensson also did not produce her expert data with her expert report, even though her expert report came first. "The parties agree that neither report included production of the data the expert considered and reviewed." Order at 11-12. Putnam ultimately agreed with Svensson that both parties would produce the data that each expert considered on November 27, 2007. Docket #215, Ex. J. Putnam produced its data on November 26, 2007. Docket #215, Ex. D. Svensson, without explanation, delayed production of her data for several additional weeks. Despite the fact that Svensson -- the plaintiff – actually delayed *longer* in producing its expert data than did Putnam, Putnam has not objected to that portion of the Magistrate's Order that concluded that Putnam should have produced its data sooner because, as the Magistrate correctly noted, the data production delay was "more than likely harmless." Order at 23.

### c. The Court never ordered Putnam to produce the expert data

Finally, no court order required Putnam to produce the Bloom data in the summer of 2006. The Magistrate Judge concluded that the "court never ordered Putnam to produce comparator information beyond the aforementioned ten to 15 comparators except to the extent of approving the agreement for Putnam to supply information relative to the 91 comparators." Order at 17. Without a court order, or an obligation under the Federal Rules of Civil Procedure, Putnam had no duty to produce the Bloom data "made available" to its expert in the summer of 2006. Svensson's Objection should thus be denied.

### 2. Putnam Had No Duty to Produce Data Bloom Theoretically Could Have Requested, But Did Not Request or Consider.

Putnam has produced all of the data and information considered by Professor Bloom (and did so by November 26). "The November 26, 2007 email from Putnam's counsel to plaintiff's counsel forthrightly and succinctly states that, 'Attached is the data that Bloom considered in forming his opinions.'" Order at 12, n.9; *see also id.* ("As a factual matter, this court does not agree with plaintiff that Putnam withheld production of documents considered by Bloom in forming his opinions after the November 26, 2007 production.").[4] Svensson asserts, again without reference to authority, that material that Professor Bloom neither saw nor requested, but which he theoretically *could have requested,* should have been produced. The problem with this argument is that, theoretically, Professor Bloom could have asked for any information in the possession of Putnam or that Putnam possibly could have obtained.

---

[4] *See also* Transcript of Summary Judgment hearing before Judge Saris (February 26, 2008), 51: 24-25; 52:1-3:

Judge Saris: There is a dispute about whether your expert saw documents that were not turned over. Did your expert look at any documents that were not turned over to them?

Mr. Kociubes: No, period. None, zero.

The starting point is that all data and information *actually* considered by Professor Bloom was listed in Exhibit 4 of his *April* 2007 report and subsequently produced to Svensson. As Svensson knows because she deposed Professor Bloom, he testified that "Exhibit 4 is a complete list of all of the documents that I reviewed in connection with my report." Docket #215, Ex. C (Bloom Dep. Transcript). Only by ignoring these undisputed *facts* can Svensson assert, from whole cloth and without even a passing attempt at satisfying the clearly erroneous standard, that the Magistrate's Order "ignores the fact … that Putnam has never produced at all some of the relevant data which was considered by its expert." Objection at 20-21.

Svensson's fallacy is that she replaces the sense in which the Federal Rules (and case law) use the word "consider" with a more colloquial usage. Colloquially, a person may "consider" something merely by thinking about it. Fed. R. Civ. P. 26 uses the term to refer to "whatever materials are given to [the expert] to review in preparing his testimony." *See* Order at 21 (citations omitted). Putnam thus satisfied its discovery duties.[5] The Magistrate concurs. *See* Order at 12, n. 9 ("As a factual matter, this court does not agree with plaintiff that Putnam withheld production of documents considered by Bloom in forming his opinions after the November 26, 2007 production … The November 26, 2007 email from Putnam's counsel to plaintiff's counsel forthrightly and succinctly states that, 'Attached is the data that Bloom considered in forming his opinions.'"). The Magistrate Judge correctly concluded that Putnam has fully met its obligations under Rule 26(a)(2), and that there is no further expert data to produce.[6]

---

[5] *See also* Transcript of Summary Judgment hearing before Judge Saris (February 26, 2008), 53:12-15 ("I'll leave this up to Judge Bowler. If you've got everything the expert looked at and you got everything that you asked for, I'm not getting in the middle of this."). Putnam maintains, and Judge Bowler has found, that Svensson has received everything Bloom "looked at" everything she has asked for.

### 3. Putnam Has Not Abused Discovery

In her Objection, Svensson makes miscellaneous attacks on Putnam, declaring outright (and also insinuating) that Putnam has been disingenuous and has abused the discovery process. The Magistrate Judge who supervised discovery rejected these assertions. *See* Order at 24 ("Contrary to plaintiff's belief, Putnam has not acted obstreperously or committed a series of discovery violations."). Svensson now revisits the same allegations, but cites no support for her contention that the ruling is clearly erroneous.

For example, Svensson argues that Putnam misled the court concerning its position on the 91 comparators, that it had Professor Bloom analyze a broader set of data than Svensson's "carefully chosen" 91, and that "it was Putnam and its counsel who decided what data would be produced to Svensson…." Objection at 13. As discussed above, Svensson "vigorously argued in favor of producing the comparator information for the 91 individuals" (Order at 7) and Putnam then produced information concerning the 91 "without in any way agreeing that this is the appropriate universe of comparators." Order at 9, quoting Docket Entry #106. The Magistrate Judge understood that Putnam reserved its rights as to the appropriate universe of comparators. *See* Order at 11 ("Having produced the information, Putnam continued to assert the position that the 91 individuals was not the appropriate universe of comparators."), as apparently did this Court. See Docket #175 ("Plaintiff contends that there are 91 comparators, a number which defendants did not dispute for discovery purposes only."). In any event, Svensson has had the Bloom data since November 2007. She obtained it "two months before the summary judgment hearing and more than five months prior to trial." Order at 24.

Svensson also claims that Putnam produced "heavily redacted documents to prevent Svensson from obtaining virtually any information [sic] other investment professionals in the IMD." Objection at 7. (The issue, of course, is not whether a document has been redacted, but whether the redacted material is objectionable, responsive or even has ever been requested.) She then asserts that had Putnam and its counsel not redacted certain unspecified documents, "production of unredacted documents would have provided Svensson on a timely basis with

much of the information she sought about the other officers in the IMD." Objection at 8. This is simply a re-hash of a discovery dispute resolved *in the summer of 2006*. Putnam originally redacted the documents because they contained information about employees who were irrelevant to this case. After the parties agreed (and so reported to the Magistrate Judge) to compromise the pending discovery dispute in July 2006 by producing information concerning the 91 comparators, *Putnam produced unredacted copies of the documents to the extent they contained information about the 91*. *See* Order at 9 ("At the hearing, Putnam agreed to produce the comparator information relative to these 91 individuals and plaintiff's counsel confirmed that 'we've reached an agreement on the 91.'"). Facing this troubling fact, Svensson asserts that the original production "hampered Svensson in taking depositions." Objection at 7. She, of course, had a remedy at the time. Svensson proceeds to distort the issue further by quoting defendant Lasser's deposition transcript where he says "[y]ou showed me a bunch of blank pages, so it's hard to remember." Objection at 8. Svensson fails to mention that she *chose* to conduct the Lasser deposition before she resolved the redaction issue, that she *never* sought to re-open the Lasser deposition after the documents were un-redacted, and that she has since had had ample opportunity to question Putnam concerning any un-redacted document in *two* subsequent 30(b)(6) depositions. To the extent that any documents ultimately remained redacted it is because they were not responsive to any of Svensson's document requests or interrogatories, or because they did not concern the 91 alleged comparators. On this record, it is no surprise that the Magistrate Judge found that Putnam had met its discovery obligations.[7]

---

[7] *See* Order at 9 ("Putnam answered the interrogatories, as modified, with respect to the 91…Putnam also unredacted documents concerning these 91 individuals," and "Putnam agreed to answer the relevant interrogatories with respect to the first set of interrogatories as well as to unredact the corresponding documents with respect to the first request for production of documents.").

**II.   THE MAGISTRATE'S REPORT AND RECOMMENDATION DENYING SANCTIONS PURSUANT TO 28 U.S.C. § 1927 SHOULD BE AFFIRMED**

After reviewing the detailed record, the Magistrate's Report and Recommendation found that Svensson's request for sanctions under § 1927 was "inappropriate." Report and Recommendation at 28. Svensson argues that the "Magistrate Judge erroneously found that Putnam's counsel had not violated 28 U.S.C. § 1927, because the record is replete with misrepresentations, failures to disclose, failures to supplement and improper conduct during depositions, all of which caused Svensson great expense." Objection at 3, ¶ 7. Yet applying an "objective standard," the Magistrate Judge held that "[t]he conduct of Putnam's counsel falls substantially short of multiplying these proceedings." *Id*. The Magistrate Judge found that "Putnam's counsel did not in any manner act unreasonably and vexatiously," but rather "he has simply vigorously and studiously defended his client." *Id.* As discussed above, all of these findings and rulings are consistent with the record before the Magistrate. Svensson's argument reduces to the proposition that the Magistrate Judge, who supervised the very discovery proceedings that form the basis for Svensson's motion, simply did not realize what was happening before her.

The irony of Svensson's § 1927 motion is that it is she, not Putnam, who multiplied these proceedings. Putnam has conducted a deposition of Svensson and her two experts. In contrast, and as just a few examples, Svensson (a) conducted 13 depositions, including 2 Rule 30(b)(6) depositions; (b) served 76 document requests on the very last day of the discovery period, after having twice sought to extend that period; (c) forced Putnam to conduct two rounds of electronic discovery (resulting in the production of over 15,000 documents), in the latter of which she insisted (until the Court ordered otherwise) that Putnam search its email files for words like "make," "take out" and "issue;" (d) insisted on production of information concerning 91 alleged comparators and then, after receiving Putnam's summary judgment motion, arguing that Putnam should have produced data concerning a different universe sooner; (e) breached the parties' agreement to exchange expert data on November 27, 2007, and then complained to the Magistrate Judge that Putnam should have produced *its* data sooner; (f) sought to delay the

summary judgment hearing on several occasions; (g) filed a summary judgment opposition that failed to make even a passing attempt at analyzing her claims using applicable legal standards; and (g) failed to comply with the requirements of Rule 56 and the Court's Order regarding supplemental summary judgment submissions by repeatedly dumping on the Court hundreds of pages of irrelevant and inadmissible submissions. *Svensson* – not Putnam – has multiplied these proceedings and the Magistrate's Report and Recommendation denying sanctions pursuant to 28 U.S.C. § 1927 should be affirmed.[8]

## CONCLUSION

Based on the foregoing, Putnam respectfully requests that this Court affirm the Magistrate's Report and Recommendation and its Memorandum and Order.

**PUTNAM INVESTMENTS, LLC,**

By its attorneys,

/s/ Joseph L. Kociubes, BBO #276360
Joseph L. Kociubes, BBO #276360
joe.kociubes@bingham.com
Louis A. Rodriques, BBO #424720
Allyson E. Kurker, BBO #665231
Jennifer L. Holden, BBO #663467
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: April 4, 2008

---

[8] According to the Magistrate, such a motion is deemed dispositive, and it is therefore subject to *de novo* review. *See id.* at 1, n.1;  *see also In re Administrative Subpoena,* 400 F. Supp. 2d 386 (D. Mass. 2005) (Saris, J.) ("If the motion is dispositive… then the Court must engage in *de novo* review of the magistrate judge's order.").

- 15 -

## CERTIFICATE OF SERVICE

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 4, 2008.

    /s/ Jennifer L. Holden
    Jennifer L. Holden, BBO #663467

A/72484192.7/0398860-0000312913