UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA SVENSSON,<br><br>        Plaintiff,<br><br>        v.<br><br>PUTNAM INVESTMENTS LLC, f/k/a<br>PUTNAM INVESTMENTS, INC. and<br>LAWRENCE J. LASSER,<br><br>        Defendants. | CIVIL ACTION NO. 04-12711-PBS |

**MEMORANDUM AND ORDER**

April 9, 2008

Saris, U.S.D.J.

    After a hearing and review of the extensive submissions, including the supplemental memoranda, I order as follows:

    1.  I **DENY** the motion for summary judgment with respect to Plaintiff's claim of unlawful termination. Plaintiff has set forth evidence of a prima facie case (although it is disputed) and there are hotly disputed issues of fact as to whether management's reasons for termination are true or a pretext for gender discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.")

    2.  I **ALLOW** the motion for summary judgment on the Title VII

and Mass. Gen. Laws ch. 151B ("ch. 151B") "failure to promote to managing director" claims prior to May 2003 on the ground that they are time-barred.  Plaintiff argues that her claims of discrimination involving Putnam's decision not to promote her in 2000, 2001, and 2002 are timely under the equitable exception to the statute of limitations for systemic continuing violations. In support of this argument, she presents expert evidence[1] that she has been harmed by the application to her of a general discriminatory "glass ceiling" policy of Putnam aimed at all women.  Putnam argues that each failure to promote is a discrete discriminatory act, which triggers the 300 day statute of limitations.

In National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), the Court considered whether acts that fall outside of the statutory time period of filing charges of discrimination are actionable under Title VII.  536 U.S. at 108. The Court announced two different standards, one for claims arising from "discrete" discriminatory acts and another for "hostile environment claims" whose "very nature involves repeated conduct."  Id. at 110, 115.  The former (claims arising out of discrete acts of discrimination) are not actionable if the acts

---

[1] It is worth noting that Plaintiff's expert states that there is "no statistically significant pattern of promotions adverse to females who hold officer titles," (Docket No. 231, at 14), although there are other kinds of disparate treatment in areas including demotions and levels of compensation.

fall outside the limitations period, even if they are related to acts that fall within the limitations period.  Id. at 113.  The Morgan Court explained that discrete acts, such as "termination, failure to promote, denial of transfer, or refusal to hire are "easy to identify" and individually actionable; each discrete discriminatory act, therefore, starts a new clock for filing charges and is treated independently.  Id. at 113-14.

The Eighth and Ninth Circuits have since rejected the possibility of using a systemic policy argument to save otherwise untimely failure to promote claims by an individual plaintiff.  Both courts emphasized that the language in Morgan explicitly included "failure to promote" within the list of "discrete" acts which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Morgan, 536 U.S. at 113.  See Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir. 2003); Lyons v. England, 307 F.3d 1092, 1105-07 (9th Cir. 2002).  In a related context, the First Circuit has relied on the same language in Morgan when refusing to allow the systemic/continuing violation doctrine to save a plaintiff's discriminatory transfer claim.  See Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 188 (1st Cir. 2003) (concluding that the transfer at issue was a "time-barred discrete act" because the Supreme Court in Morgan "made plain that '[d]iscrete acts such as termination, failure to promote, denial of *transfer*, or

refusal to hire . . . constitute[] a separate actionable unlawful employment practice'") (emphasis in Rivera); see also Miller v. N.H. Dept. of Corr., 296 F.3d 18, 21-22 (1st Cir. 2002) (concluding that plaintiff's claim of an unlawful transfer (as retaliation) was untimely because, under Morgan, "it is clear that the . . . transfer is a discrete act and is time barred").

The discovery rule does not save these failure to promote claims. In an employment discrimination case under federal law, the limitations period begins to run when the claimant learns of the adverse employment action, not when a plaintiff learns of the improper motives. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748-50 (1st Cir. 1994). One court in this district has construed Morris narrowly. See Commonwealth of Mass. v. Bull HN Info. Sys., Inc., 143 F. Supp. 2d 134, 153-54 (D. Mass. 2001) (holding that an employee's cause of action accrues when he has "sufficient information" to recognize that the action may have been discriminatory, yet the employee "need not 'know all the facts that support his claim.'").

Under state law, "pursuant to the so-called 'discovery rule,' the statute of limitations . . . does not begin to run until the plaintiff knows, or should have known" facts sufficient to permit an individual to suspect that an employment action was adverse and discriminatory. See Silvestris v. Tantasqua Sch. Dist., 847 N.E.2d 328, 336-37 (Mass. 2006) (involving a MEPA claim). When, as here, the defendant has demonstrated that the

action was brought more than 300 days from the date of the adverse employment action, "the burden of proving facts that take the case outside the statute of limitations falls to the plaintiff."  Id.  The pertinent question – when the plaintiff knew or when a "reasonable person in the plaintiff's position" should have known of the existence of a cause of action – is "one of fact that will be decided by the trier of fact."  Id. (internal quotation marks omitted).

In support of her position that she did not know and had no reason to know that a discriminatory animus was behind Putnam's failure to promote her, Svensson points to the fact that she was nominated on several occasions, had been promised that she would again be nominated, and generally was told that she was qualified for both the Managing Director and the portfolio management positions.  (Pl.'s Opp'n to Putnam Mot. for Summ. J., Docket No. 221, at 13-14.)  Svensson also asserts that, until discovery, she was not aware that her internal Putnam rating had been changed by Putnam officials.  (Docket No. 221, at 14.)  However, even under the Massachusetts standard, a plaintiff "need not apprehend the full extent or nature of an injury in order for a cause of action to accrue"; the claim accrues once a plaintiff has "sufficient information . . . to believe that [she] . . . has been subjected to discriminatory treatment."  Silvestris, 847 N.E.2d at 337-38 (holding that the statute of limitations began to run on female teachers' claims when they "came to believe" or suspect that they

had been discriminated against and explicitly rejecting lower court's finding that it did not begin to run until they received documentation supporting their suspicions).  Moreover, Defendants point out that, in her deposition, Svensson stated that there were different times during her employment at Putnam when she felt that she was being treated differently because of her gender, including "when [she] was denied promotion the second time."  (Putnam Reply, Docket No. 248, at 6) (quoting Svensson Dep. 79:13-80:12.)  Because the second denial of promotion occurred in 2002, this statement proves that, well ahead of May 2003, Svensson believed and reasonably should have suspected that discriminatory animus was behind her promotion troubles.

     Accordingly, while evidence of a glass ceiling is admissible at trial, the Plaintiff's claims regarding failure to promote in 2000, 2001, and 2002 are time-barred under state and federal law.

     3.  I **ALLOW** the motion for summary judgment on the claim of the failure to promote to a Managing Director position in 2002-2003 as there is no evidence that a position was filled during this time period, and Defendant did not have an affirmative duty to promote under any caselaw cited by Plaintiff.

     4.  I **DENY** Putnam's motion for summary judgment with respect to Svensson's claims under Title VII and ch. 151B based on the demotion from a portfolio manager to an analyst in March 2002. Putnam argues that this claim is time-barred, but there is a dispute as to whether it is equitably tolled.  Svensson asserts

that her demotion claim should be equitably tolled because Putnam's notice of the demotion was equivocal as to whether it was a permanent demotion or a temporary placement until another Portfolio Management position was available.

"Equitable tolling is available in circumstances in which the plaintiff is excusably ignorant . . . or where the defendant or the MCAD has affirmatively misled the plaintiff." Andrews v. Arkwright Mut. Ins. Co., 673 N.E.2d 40, 41 (Mass. 1996); see Davis v. Lucent Tech., Inc., 251 F.3d 227, 234 (1st Cir. 2001) (explaining that the filing period for section 5 of chapter 151B and Title VII violations are subject to equitable tolling and quoting the Andrews court's definition of the doctrine). In federal courts, and particularly in the discrimination context, "equitable tolling is reserved for exceptional cases." Davis, 251 F.3d at 234; see Jensen v. Frank, 912 F.2d 517, 521 (1st Cir. 1990) (stating that the First Circuit has taken a "narrow view of equitable modification in Title VII cases").

In an employment discrimination case, "the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act." Morris, 27 F.3d at 749. If notice is equivocal, however, the clock may be tolled or simply never start to tick. See McConnell v. Gen. Tel. Co. of Cal., 814 F.2d 1311, 1317 (9th Cir. 1987); Wheatley v. Am. Tel. & Tel. Co., 636 N.E.2d 265, 268 (Mass. 1994); see also Angeles-Sanchez v. Alvarado, 1993 WL 147472, *3 (1st Cir. 1993) ("[A]

7

decision to terminate employment must be 'unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination.'"). Not surprisingly, the heart of the matter for courts is often determining what qualifies as "equivocal." As both parties point out, much of the caselaw on this issue centers on notices of termination, as opposed to notice and effectuation of a demotion, as is at issue here. Despite these differences, the caselaw still provides a useful compass to this Court.

"Representations of possible alternative employment within the company may toll the statute of limitations under the doctrine of equitable estoppel when the representations lull the employee into an untimely filing." McConnell, 814 F.2d at 1317. As the Supreme Judicial Court has commented, "a reasonable person who has been informed that his or her employment would be terminated on a specified date if he or she did not obtain another position within the organization by that date might not file an employment discrimination claim during this 'transition period' because '[t]he filing of such a charge may prejudice any pending reconsideration of the [termination] decision.'" Wheatley, 636 N.E.2d at 268 n.8 (commenting on McConnell) (quoting Del. State Coll. v. Ricks, 449 U.S. 250, 266 n.2 (1980) (Stevens, J., dissenting)). But see Ricks, 449 U.S. at 261 (holding that when it is otherwise clear that the employer has resolved to take the disputed action, an indication by that

employer that it will allow the employee to pursue a formal grievance or appeals process, and even that it will consider the results of that process, is not enough to render the termination decision equivocal).

When the employer holds out the possibility of employment in other divisions or positions, the question becomes whether a reasonable person would have believed that there was a possibility that there "might be a retreat or change in position prior to the termination." Angeles-Sanchez, 1993 WL 147472, at *3. When, for example, the notice establishes a transition period during which the employee may seek other opportunities within the company prior to termination, or contains a promise to be reinstated to a specific position in the future, courts have deemed the notice equivocal. See Wheatley, 636 N.E.2d at 268 (applying federal case law to construing the federal anti-discrimination statutes to interpret ch. 151B claims);[2] Harrison v. Kraft Foods, Inc., 2007 WL 3232552, *3 (D. Mass. Oct. 30, 2007) (promise to reinstate employee when DUI charges were resolved rendered termination notice equivocal). However, at least one Massachusetts court has concluded that an employer's "statement that it would attempt to provide job opportunities

---

[2] Because Massachusetts courts apply federal case law construing federal anti-discrimination statutes in interpreting ch. 151B, Wheatley, 636 N.E.2d at 268, their decisions are persuasive authority. Messina v. Araserve, Inc., 906 F. Supp. 34, 38 (D. Mass. 1995).

cannot be construed as an equivocal termination notice" because an employee, reading the letter in context, "could not reasonably expect that reassignment assistance meant that the employer might change the decision regarding the closure." Adamczyk v. Augat, Inc., 755 N.E.2d 824, 829 (Mass. App. Ct. 2001).

As support for her argument that notice of her demotion was equivocal, Svensson provides evidence that, at the time she was notified, Oristaglio (the Deputy Head of Investments) promised her that she would be considered for Portfolio Management positions as they became available. (See Svensson's Sixth Aff., Docket No. 228, ¶ 14 (recounting oral promise from Oristaglio.)) Svensson cites to an email from Oristaglio to her, stating: "I will consider alternatives on an additive basis, especially if the large cap team or international growth team loses people to resignations, or if we underestimated the number of people required." Id. Svensson argues that these promises suffice to render the notice equivocal and created a situation where it was reasonable for her to delay filing, so as not to jeopardize her eligibility for these promotions. There is also evidence that, when informed of the decision to transfer her, she was told that this was her only "opportunity" and that if she did not want it, they would have to have a "different kind of conversation." (Pl.'s Resp. to Putnam's Statement of Fact, Docket No. 224, ¶ 18 (explaining that Svensson interpreted "another kind of conversation" to mean "termination".))  As such, the evidence on

10

reasonableness is disputed.

Defendants argue that, even if the notice to Svensson was equivocal, once she was actually transferred, it had to be clear to her that the transfer was permanent.  However, whether it was reasonable for Plaintiff to believe that this was a temporary move is a determination for the jury.  Plaintiff has presented enough significantly probative evidence to raise a material issue of fact as to whether it was reasonable for Svensson to believe that the transfer was temporary and/or that the promises "lulled" Svensson into not filing a claim.  See McConnell, 814 F.2d at 1317.  If either is the case, equitable tolling would be appropriate.

Plaintiff also states that, because Putnam suggested that she would be considered for other opportunities as a Portfolio Manager, she was unaware of Putnam's alleged discriminatory animus with respect to her demotion (and/or other adverse employment actions taken against her).  If the jury finds this assertion is affirmatively misleading, it opens the door to equitable tolling.  Davis, 251 F.3d at 234.  See also Morris, 27 F.3d at 750 (rejecting argument that a discrimination claim did not accrue until he knew of both the act and the discriminatory animus as contrary to a "well established" rule that limitations periods "start to run when the employer's decision is made and communicated to the affected employee").  Thus, Plaintiff's argument that equitable tolling is appropriate for her demotion-

based claims is persuasive.

Whether Plaintiff has set forth evidence of a prima facie case and raised a material issue of fact as to whether Putnam's proffered reasons for the demotion / transfer are true or a pretext for gender discrimination is a closer call.  Plaintiff has alleged that she was performing at a level meeting Putnam's expectations (even if the group itself was not) and that males with lesser qualifications were allowed to remain in portfolio management while she and another woman were transferred off of the Global Growth team to research positions.  Arguing that Putnam's proffered reasons for demoting her are pretext, Plaintiff does not point to specific incidents surrounding her demotion, but rather asserts that the rebuilding that led to her demotion "disproportionately adversely affected female PM's." (Pl.'s Supp. Mem., Docket No. 262, at 17.)  Defendants attack Plaintiff's evidence as merely anecdotal and lacking statistical analysis, and point to testimony by Svensson's expert that fewer females were demoted from the PM position than he had expected to be the case.  (Putnam's Reply to Pl.'s Supp. Mem., Docket No. 303, at 14.)  The report of Svensson's expert, however, concludes that there was a "statistically significant pattern of demotions adverse to females" between 1998 and 2002.  (Docket No. 231, at 14).  This conclusion, coupled with Svensson's anecdotal evidence and the admissible evidence of the alleged "glass ceiling" is sufficient to raise a material issue of fact as whether Putnam's

proffered reasons for demotion are true or merely a pretext. Accordingly, Plaintiff's demotion-based claims survive.

    5.  I decline to address the claims of failure to fill six portfolio manager managing positions between May 6, 2003 and September 15, 2003. Defendants maintain that these claims were raised in an untimely way. However, in her First Amended Complaint, Svensson did allege that, after her demotion to GER, she continued to search for money management opportunities within Putnam to no avail, while "more junior male analysts and Portfolio Managers with lesser performance records, obtained or retained such promotions or transfers." (First Am. Compl. ¶ 33.) In addition, Svensson included Defendants' "refusals to allow her even to interview for positions outside of GER" in a general list of grievances detailed in her complaint. (First Am. Compl. ¶ 41.) The subsequent briefing of the parties does not explicitly address these failure to promote to PM positions as distinct claims, but given that Svensson was responding to Defendants' motions for summary judgment as opposed to outlining her claims, this absence may be excusable.

    Nonetheless, there is insufficient evidence in the existing summary judgment record to suggest the portfolio manager decisions were impermissibly motivated. Significantly, I have no evidence as to who the decision-makers were even if I considered the new materials attached to the supplemental brief. Moreover, I struck the portions of the record submitted in connection with

Ms. Svensson's Seventh Affidavit as significantly beyond the scope of this Court's order to supplement the briefing to explain existing claims.

    6. I **ALLOW** Defendant Lasser's motion for summary judgment. While there is admissible evidence that he ratified the decision to terminate Svensson, there is no evidence that his decision was gender based. The random comments that he made during Svensson's employment were isolated and not related to the termination or demotion decision. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) ("'[S]tray workplace remarks,' as well as statements made . . . by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus."); Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996) ("Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent.").

    However, in addition to arguing that Lasser was actively involved in the discrimination, Plaintiff seeks to hold Lasser liable for his failure to stop the alleged discriminatory acts against her. Relying on chapter 151B § 4(4A) (allowing individual liability for "interfere[nce]" with another's rights) and ch. 151B § (5) (allowing individual liability for aiding and abetting violations of ch. 151B), Svensson asserts that Lasser is personally liable because he was aware that discrimination was occurring, had a duty to prevent it, and, with "deliberate

14

indifference to the rights of Svensson and other women," chose not to act.  (Pl.'s Opp'n to Lasser's Mot. for Summ. J., Docket No. 223, at 14.)  In response, Lasser first asserts that, in her complaint, Plaintiff did not allege a claim under 151B § 4(4A); as a result, he contends, she is barred from doing so now.  (Lasser Reply, Docket No. 253, at 11.)

It is true that Plaintiff does not explicitly assert a count based on 151B § 4(4A).  However, Count II of the First Amended Complaint, generally states a violation of 151B § 4.  Yet nowhere in Count II does Plaintiff specifically articulate a claim based on "interference" or even mention Lasser.  (First Am. Compl. ¶ 32.)  In the complaint, the only connection drawn between Lasser and Count II comes within the prayer for relief, when Plaintiff asks that both Putnam and Lasser be found liable for damages on Count II.  (First Am. Compl. ¶ 115.)

Even if I were to allow both of Plaintiff's theories to go forward, her claims against Lasser still fail.  Under the legal standard articulated by Svensson, to establish personal liability of Lasser on the nonfeasance theory, she must show that he had knowledge that discrimination was occurring, was in the position to stop the discrimination, and had a duty to stop the discrimination.  (Docket No. 223, at 12.)  Plaintiff's evidence again falls short.  At best, Plaintiff suggests that, by the nature of his position, Lasser must have known what was happening.  Notably, Svensson does not present any evidence that

15

she personally complained to Lasser about alleged gender discrimination or even that anyone else ever reported his or her suspicions or knowledge of the alleged discriminatory behavior to him.

7.  I defer deciding the motion for summary judgment regarding the claims of unequal compensation under the Massachusetts Equal Pay Act, Mass. Gen. L 149, § 105A ("MEPA"). Defendant argues that each of these claims is time-barred. However, Plaintiff has alleged that Putnam made discriminatory payments within one year prior to filing of the action. (Pl.'s Opp'n to Putnam's Mot. for Summ. J., Docket No. 221, at 22, 22 n.53.) She asserts that the Supreme Judicial Court's holding in Silvestris, 84 N.E.2d at 769, that separate claims arise at the time of each discriminatory payment remains the law for MEPA, even though Ledbetter v. Goodyear Tire & Rubber Co., 127 S.Ct. 2162 (2007), has foreclosed that interpretation for federal law. In addition, Plaintiff maintains that the "discovery rule," would render all of her MEPA claims timely. The record is unclear when she had reason to know of the alleged pay discrimination.[3] However, Plaintiff did not present any specific evidence in her supplemental memorandum to support her claims under MEPA and the

---

[3] Plaintiff also argues that the continuing violation doctrine renders her MEPA claims timely. In Silvestris, however, the Supreme Judicial Court explicitly declined to extend the continuing violation doctrine to unequal wage claims under MEPA. 847 N.E.2d at 338-39. This avenue is therefore closed to Plaintiff.

16

expert report does not indicate statistically significant compensation differences except with respect to bonuses in 2002. (Docket No. 231, at 10.)  Moreover, Defendants contend that Plaintiff has abandoned her claims for 1999-2001.  (Putnam's Mem. in Supp. of Mot. Summ. J., Docket No. 206, at 17.)  Plaintiff shall clarify by April 14, 2008, whether she is pressing the MEPA claim and, if so, for what years.

    8.  I defer deciding the motion for summary judgment regarding the claims of unequal compensation under Title VII and ch. 151B.  In her Opposition and Sur-reply, Plaintiff argued that her Title VII and ch. 151B compensation claims were not time-barred and were factually sufficient.  However, in her supplemental memorandum, Plaintiff does not specifically address the compensation claims under Title VII and ch. 151B.  Instead, her only reference to compensation claims are the generalized statements about MEPA.  By April 14, 2008, Plaintiff shall clarify whether she is pressing the Title VII and ch. 151B claims and, if so, for what years.

    9. I **ALLOW** the motion for summary judgment on the MERA claims.  Defendants contend that all of Plaintiff's MERA claims are preempted because the exclusivity provision of ch. 151B bars any MERA claim for which a ch. 151B claim is or ever was available.  <u>Agin v. Fed. White Cement, Inc.</u>, 632 N.E.2d 1197, 1199 (Mass. 1994) ("[S]hould a judge decide that G.L. c. 151B is or was available to the plaintiff, the plaintiff would have no

17

viable c. 93, § 103, [a provision of MERA] claim."). See Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996) ("Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive . . . . Otherwise, "[t]o permit such duplication of remedies would allow claimants to bypass the procedural prerequisites . . . , crippling the effectiveness of this specific statutory remedy for discrimination in employment.") (internal quotation marks ommitted); Charland v. Muzi Motors, Inc., 631 N.E.2d 555, 558-59 (Mass. 1994) ("The plaintiff contends that the equal rights act [MERA] provides alternative remedies for employment discrimination in concert with c. 151B. We do not agree . . . . [Instead, we] conclude that, where applicable, G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections, and that the plaintiff's failure to adhere to the requirements of G.L. c. 151B required the dismissal of his complaint."); see also Ahanotu v. Mass. Tpk. Auth., 466 F. Supp. 2d 378, 388-389 (D. Mass. 2006) ("Chapter 151B . . . provides the comprehensive and exclusive statutory scheme for resolving employment discrimination claims under Massachusetts law.").

Plaintiffs, however, maintain that while MERA claims are precluded when the plaintiff has failed to comply with the ch. 151B administrative procedures, a plaintiff who has fully complied with the ch. 151B requirements may also bring a parallel

MERA claim. Cf. Jancey v. Sch. Comm. of Everett, 658 N.E.2d 162, 497-99, 498 n.14 (Mass. 1995) (explaining that Charland's "core holding" was designed to prevent complainants from "bypass[ing] . . . administrative procedures merely by claiming a violation of [MERA]" and holding that, in a case where the plaintiffs complied with the procedural requirements of c. 151B, a MEPA claim was not automatically preempted); see also Rowe v. Town of N. Reading, 2001 WL 170655, *8 (Mass. Super. Ct. Jan. 5, 2001); Ross v. Raytheon Co., 2001 WL 1455863, *3 (Mass. Super. Ct. Nov. 1, 2001). While the ultimate answer to this legal question is not crystal clear and the caselaw is evolving, until the state appellate courts rule otherwise, this Court follows Green and Charleton and finds that Chapter 151B provides the exclusive remedy for the employment discrimination claims here.

10. I **ALLOW** Defendants' motion for summary judgment on the following claims: Breach of Covenant of Good Faith and Fair Dealing (Count V), Breach of Contract (Count VI), Fraudulent Inducement and Misrepresentation (Count IX). Defendants moved for summary judgment on each count on the grounds that the claims are preempted by ch. 151B's exclusivity provision and that each claim is legally defective. Plaintiff never opposed these motions by the Defendant.

11. Defendants also moved for summary judgment on the Retaliation claim (Count VII), ERISA claim (Count X), and Conversion / Unjust Enrichment Claim (Count XI). Plaintiff never

opposed these motions by the Defendants, and they are **ALLOWED**.

12.  As the trial date is May 12, 2008, and counsel have just finished briefing this case and have submitted a voluminous record, I reserve the right to write a more expansive opinion post-trial, if necessary.

## ORDER

I **ALLOW-IN-PART** and **DENY-IN-PART** Defendant Putnam's Motion for Summary Judgment (Docket No. 205.)  I **ALLOW** Defendant Lasser's Motion for Summary Judgment (Docket No. 202.)

**S/PATTI B. SARIS**
United States District Judge
