UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA SVENSSON,<br><br>                Plaintiff,<br><br>    v.<br><br>PUTNAM INVESTMENTS, LLC AND LAWRENCE J. LASSER,<br><br>                Defendants | CIVIL ACTION<br>NO. 12711-PBS |

**PUTNAM'S MOTION *IN LIMINE* TO EXCLUDE STRAY COMMENTS BY NON-DECISION MAKERS AND TO PREVENT SVENSSON FROM REFERRING TO THEM UNLESS AND UNTIL THEY HAVE BEEN ADMITTED**

Defendant, Putnam Investments ("Putnam"), moves *in limine* to exclude evidence of various irrelevant and unduly prejudicial "stray comments" by Putnam employees, unless and until plaintiff, Lisa Svensson ("Svensson"), lays a foundation that the statements are relevant to the particular adverse employment actions about which she complains. Putnam also seeks an order precluding Svensson from referring to such remarks until they have been admitted.

Based upon some of the allegations in Svensson's Amended Complaint, affidavits and deposition testimony, she apparently seeks to rely upon alleged comments by Putnam personnel which are irrelevant to her specific claims and which were not made by the decision makers at issue.[1] For example, Svensson alleges that: (i) at various times in 1998 and 2000 her then supervisor, Robert Swift, as well as another Putnam employee (Quintin Price) made various inappropriate, gender-related comments; (ii) in 2001, her then-supervisor, Robert Swift, told her

---

[1] For purposes of this motion, Putnam focuses only on such allegations in Svensson's Amended Complaint ("Am. Compl.").

it was a bad year for her to be promoted to Managing Director because she had been on maternity leave (Am. Compl. ¶ 25); (iii) in 2002, Putnam's Head of Investments, Ed Haldeman, when asked what type of investor he was, prefaced his answer by saying that his answer "had not been vetted by the EEOC" (Am. Compl. ¶ 31); and (iv) at a 2001 lunch with Larry Lasser, Putnam's then CEO, Lasser allegedly asked Svensson whether her stay-at-home husband felt uncomfortable explaining his role at a cocktail party. None of this evidence is admissible absent some foundation that establishes its relevance to the matters at issue in this case.

### A.    None of Swift, Price, Haldeman or Lasser Played Any Role in the Employment Actions at Issue.

Svensson should not be permitted to introduce evidence of the alleged statements by Swift, Price, Haldeman or Lasser to refute Putnam's proffered, non-discriminatory reasons for taking the employment actions at issue because none of these individuals made the related employment decisions. Unless and until Svensson lays a foundation establishing that a statement was made by a decision maker or someone with adequate knowledge, and related to the employment action at issue, this Court should exclude such comments. While "stray remarks" may be relevant to a pretext inquiry in some contexts, the First Circuit has held that "their probativeness is circumscribed if they . . . were not related to the employment decision in question, or were made by nondecisionmakers." *McMillan v. Mass. Society for Prevention of Cruelty to Animals*, 140 F.3d 288, 301 (1st Cir. 1998). Indeed, the alleged statements raised in the Amended Complaint are exactly the type of "stray comments" the First Circuit proscribes. *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 31 (1st Cir. 2007) (trial court properly precluded statements by plaintiff's supervisor because there was no evidence the supervisor "had something to do with the discharge decision."); *Torrech-Hernández v. General Electric*, 519 F.3d 41, 55 (1st Cir. 2008) (in an age-discrimination case, manager's remark about "dinosaurs" was nothing more than a "stray workplace remark," which , standing alone, did not "establish either pretext or the requisite discriminatory animus").

1.     **The Swift and Price Statements**

Svensson alleges that in 2001, her then-supervisor, Robert Swift, told her it had been a bad year for her to be promoted to Managing Director because she had been on maternity leave (Am. Compl. ¶ 25).  The Court has already ruled that Svensson's claim that Putnam failed to promote her to MD on account of her sex is time-barred.  Moreover, whether Swift made this statement is immaterial, because Swift did not decide whether to promote Svensson.  Officer promotions were made by members of the Investment Management Division's senior members.  Tibbetts Affidavit in Support of Putnam's Motion for Summary Judgment ("Tibbetts Aff"), ¶ 5.  Swift was never a member of that electing group.  As a threshold matter, Svensson needs to establish that Swift was in a position to know why the decision makers acted as they did.  Conjecture or speculation by a non-decision maker is insufficient to establish pretext or to refute a legitimate, non-discriminatory reason for an adverse employment action.  *Bennett,* 507 F.3d at 24.  Furthermore, Swift's comment in 2001 simply is not probative of the reason that different decision makers made decisions years later.

Similarly, Svensson alleges that in 1998 through 2000, Swift and another employee, Quintin Price, made various inappropriate comments about women.  Apart from the fact that any alleged remarks occurred years before any of the alleged adverse actions at issue in this case, Svensson has not asserted a hostile work environment claim.  Moreover, none of these remarks relates, directly or indirectly, with the specific adverse actions at issue here, and neither Swift nor Price was the decision maker with respect to those decisions.

2.     **The Haldeman and Lasser Statements**

Svensson alleges that in 2002, Putnam's Head of Investments, Ed Haldeman, when asked what type of investor he was, replied that his answer "had not been vetted by the EEOC" and explained why he belonged with his wife to illustrate that investors should stick with investment styles with which they are comfortable. (Am. Compl. ¶ 31).  In addition, Svensson alleges that at a 2001 lunch with Larry Lasser, Putnam's then CEO, Lasser allegedly asked Svensson whether her stay-at-home husband felt uncomfortable explaining his role at a cocktail party.

- 3 -

- 4 -

Once again, a legal nexus between these comments and Svensson's termination in 2003, and her demotion and compensation in 2002, simply does not exist. Until foundational evidence exists -- *e.g.*, Haldeman was involved in the decision to terminate Svensson -- the comment simply is neither relevant nor probative. Haldeman and Lasser's remarks do not "materially erode[ ] the stated rationale for the challenged action." *Straughn v. Delta Airlines, Inc.,* 250 F.3d 23, 36 (1st Cir. 2001).

      **B.**    **Admission of these and other similar "stray remarks" unduly prejudices Putnam.**

These kinds of remarks become admissible, if at all, only subject to a proper foundation. On the other hand, permitting Svensson, whether in opening or otherwise, to refer to these kinds of alleged comments (absent a foundation which may never be established) creates the potential of distracting and confusing a jury and prejudicing Putnam. Neither this Court nor Putnam should be forced to try to put the genie back in the bottle after these kinds of comments are made in the presence of the jury if it turns out that a foundation cannot successfully be laid for them.

- 5 -

## CONCLUSION

For the reasons stated herein, Putnam moves that this Court exclude stray comments of Putnam personnel until Svensson lays an adequate evidentiary foundation for them, and rule that Svensson may not refer to them until they have been admitted.

**PUTNAM INVESTMENTS, LLC,**

By its attorneys,

/s/ Joseph L. Kociubes
Joseph L. Kociubes, BBO #276360
joe.kociubes@bingham.com
Louis A. Rodriques, BBO #424720
louis.rodriques@bingham.com
Allyson E. Kurker, BBO #665231
allyson.kurker@bingham.com
Jennifer L. Holden, BBO #663467
jennifer.holden@bingham.com
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
617.951.8000

Dated: April 22, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 22, 2008.

/s/ Allyson E. Kurker, BBO #665231
allyson.kurker@bingham.com

A/72474341.6/0398860-0000312913