UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * *    Civil Action No. 04-12711-PBS
                         *
LISA SVENSSON            *
                         *    BBO No. 351000
         Plaintiff,      *
                         *    Plaintiff Svensson's
v.                       *    Opposition to Putnam's
                         *    Motion in Limine, to Exclude
                         *    "Anecdotal Evidence Concerning
PUTNAM INVESTMENTS, LLC, *    Other Employees"
et al.,                  *    and
                         *    Memorandum in Support
         Defendants.     *    and
                         *    Request for Hearing and
* * * * * * * * * * * * * *    Oral Argument
```

<u>Opposition.</u>

Plaintiff Lisa Svensson ("Svensson") opposes the motion <u>in</u> of defendant Putnam Investments, LLC ("Putnam") to exclude "anecdotal evidence concerning other employees, including comparator and 'me too' evidence, unless and until plaintiff ... establishes that the employee is similarly situated to her, and that the proffered evidence is relevant to her claim" (the "motion <u>in</u> <u>limine</u>").  The grounds for this opposition are set forth in the following memorandum.

<u>Memorandum.</u>

Svensson submits this memorandum of law in support of her opposition to Putnam's motion <u>in</u> <u>limine</u>.  In part "A" of its motion <u>in</u> <u>limine</u>, Putnam argues that evidence as to its treatment of other employees should be excluded unless and until

an adequate foundation is laid by establishing that the other employees are Svensson's valid comparators.  This court should reject Putnam's incorrect and excessively narrow definition of which employee's are Svensson's valid comparators.  As set forth below, the employees about whom Svensson intends to submit evidence are similarly situated.

In Part "B" of its motion in limine, Putnam seeks to exclude so-called "me too" testimony by other employees about Putnam's discrimination against them.  Putnam incorrectly suggests that such evidence seldom is admissible.  In so arguing, however, Putnam ignores controlling 2008 United States Supreme Court precedent.  Because the admissibility of "me too" evidence lies entirely within the trial judge's discretion, because the evidence in question is clearly relevant to Svensson's claims, and because admission of such evidence will not unduly prejudice Putnam, this court should deny Putnam's motion in limine.

<div align="center">Argument.</div>

1.   The other employees about whom Svensson intends to offer evidence are similarly situated, valid comparators.

Putnam's definition of Svensson's comparators is wrong in two respects.  First, contrary to Putnam's assertion, whether two employees are similarly situated for purposes of a disparate treatment discrimination claim is a question of fact to be decided by the jury.  Cordi-Allen v. Conlon, 494 F.3d 245, 251

<div align="center">2</div>

(1st Cir. 2007) (Stating, with regard to equal protection claim: "to be sure, the ultimate determination as to whether parties are similarly situated is a fact-bound inquiry and, as such, is normally grist for the jury's mill").[1]

Putnam also defines too narrowly the universe of valid comparators. A plaintiff relying on comparative evidence of disparate treatment to raise an inference of discrimination, "must provide a suitable provenance for the evidence by showing

---

[1] See also Oakstone v. Postmaster General, 397 F.Supp.2d 48, 58 (D, Me. 2005) (denying defendant's motion for summary judgment in Title VII gender discrimination case because the plaintiff's proposed comparators "could be considered similarly situated"); Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 791 (7th Cir. 2007) (reversing summary judgment for employer in Title VII/Equal Pay Act case, noting that "a reasonable jury could find, based on Boumehdi's evidence, that she and Milbrandt were indeed similarly situated"); Heller v. Elizabeth Forward School, 182 Fed.Appx. 91, 2006 WL 1489179, *3 (3ed Cir. 5/31/06) (holding that district court did not err in denying summary judgment on Equal Pay Act claim "and concluding that whether the jobs are similarly situated is a fact issue appropriate for the jury"); Graham v. Long Island Rail Road, 230 F.3d 34, 43 (2nd Cir. 2000) ("Further, the district court's conclusion that DiPersia's second and third last chances were not for drug or alcohol violations and therefore that he and Graham were not similarly situated improperly resolved a fact question. .... Whether these employees were similarly situated presented a material question of fact"); McHugh v. Papillon Airways, Inc., 2008 WL 182259, *3 (D. Nev. 1/16/08) (stating, in gender discrimination wrongful termination case: "Whether individuals are similarly situated is a factual question for the jury"); Jackson-Hall v. Gulfport School District, 2007 WL 2406971, *4 (S.D.Miss. 8/20/07) (similar, race discrimination case); Williams v. Home Depot U.S.A., Inc., 2005 WL 2429421, *9 (S.D.N.Y. 9/30/05) (Stating, in Title VII race discrimination case: "Additionally, unless 'it is clear that no reasonable jury could find the similarly situated prong met,' whether two employees are similarly situated 'is a factual issue that should be submitted to the jury.'" Quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2nd Cir.2001)); Martin v. Town of Westport, 329 F.Supp.2d 318, 329 (D. Conn. 2004).

that others similarly situated to him in all relevant respects were treated differently by the employer." <u>Conward</u> v. <u>Cambridge School Comm.</u>, 171 F.3d 12, 19 (1st Cir. 1999).[2]  "Reasonableness is the touchstone: while the plaintiff's case and the comparison cases that he advances <u>need not be perfect replicas</u>, they must closely resemble one another in respect to relevant facts and circumstances." <u>Conward</u>, 171 F.3d at 19.  (Emphasis added.)[3] "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." <u>Conward</u>, 171 F.3d at 19, quoting <u>Dartmouth Review</u> v. <u>Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir. 1989).[4]

Courts have defined "all relevant respects" (often referred to as "relevant aspects"), by analogy to "... the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result."[5]  Thus, employees need not be the same or

---

[2] <u>See also Rathbun</u> v. <u>Autozone, Inc.</u>, 361 F.3d 62, 76 (1st Cir. 2004); <u>Kosereis</u> v. <u>State of Rhode Island</u>, 331 F.3d 207, 214 (1st cir. 2003); <u>Straughn</u> v. <u>Delta Air Lines, Inc.</u>, 250 F.3d 23, 44 (1st Cir. 2001); <u>Rodriguez-Cuervos</u> v. <u>Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 21 (1st Cir. 1999).
[3] <u>See also Kosereis</u>, 331 F.3d at 214; <u>Straughn</u>, 250 F.3d at 44; <u>Rodriguez-Cuervos</u> v. <u>Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 21 (1st Cir. 1999).
[4] <u>See also Goodman</u> v. <u>Bowdoin College</u>, 380 F.3d 33, 45 (1st Cir. 2004); <u>Rathbun</u>, 361 F.3d at 76; <u>Thomas</u> v. <u>Eastman Kodak Co.</u>, 183 F.3d 38, 63 (1st Cir. 1999); <u>Rodriguez-Cuervos</u>, 181 F.3d at 21.
[5] <u>Conward</u>, 171 F.3d at 19, quoting <u>Dartmouth Review</u>, 889 F.2d at 19; <u>Evans</u>, 2004 WL 2075132, *12 (R. I. Super. 8/21/04).

even similar in all respects, but only in those respects which are relevant.

Proof that a comparator is similarly situated requires an examination of "performance, qualifications and conduct" and the absence of "differentiating or mitigating circumstances that would distinguish their situations."[6] However, "exact correlation is neither likely nor necessary, but the cases must be fair congeners." Conward, 171 F.3d at 19, quoting Dartmouth Review, 889 F.2d at 19. (Emphasis added.)[7] All that is required is that "apples should be compared with apples."[8]

As the foregoing indicates, the issue whether a proposed comparator is "similarly situated" is highly fact specific. A court will look beyond the similarity, or difference, in job title, to determine whether the plaintiff and the comparator are actually performing similar same employment duties and stand in the similar situations. In City of Boston v. MCAD, 47 Mass. App.

---

[6] Benham, 118 F.Supp.2d at 147. See also Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996) (no differentiating facts); Traux v. City of Portsmouth, 2001 WL 716120, *15 (D.N.H. 6/18/01) (without differentiating facts); Cardona v. U.P.S., 79 F.Supp.2d 35, 43 (D.P.R. 2000) (without differentiating facts); v. Franklin Medical Center, 71 F.Supp.2d 1, 12 (D. Mass. 1999) ("performance, qualifications and conduct"); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 130 (1997); ("The plaintiff must identify other employees to whom he is similarly situated in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations."(internal quotation marks omitted)).
[7] See also Thomas, 183 F.3d at 63.
[8] Conward, 171 F.3d at 19, quoting Dartmouth Review, 889 F.2d at 19; Molloy v. Blanchard, 115 F.3d 86, 91 (1st Cir. 1997).

Ct. 816 (1999), the Massachusetts Appeals Court upheld the MCAD's position that,

> [similarly] situated employees, for purposes of disparate treatment analysis, <u>need not hold identical job descriptions or tenure</u>. <u>What counted</u>, in the MCAD's view, <u>was the "actual job performance and content--not job titles, classifications or descriptions</u>."

<u>Id</u>. at 822, citing <u>Equal Employment Opportunity Commn.</u> v. <u>Sears, Roebuck & Co.</u>, 839 F.2d 302, 344 (7th Cir. 1988).[9]  (Emphasis added.)

Courts also have ruled that employees holding different positions or holding similar positions in different divisions of the same company, <u>are</u> similarly situated (or not similarly situated for a reason other than that they served in different divisions).  In <u>Nakai</u> v. <u>Wickes Lumber Co</u>., 906 F.Supp. 698, 704-05 (D. Me. 1995), the court held that the plaintiff in an ADEA suit had submitted sufficient evidence of pretext based partly on a comparison of the plaintiff store manager to managers of other area stores.  In <u>Swallow</u> v. <u>Fetzer Vineyards</u>, 46 Fed. Appx. 636, 648-49 (1st cir. 2002), the court held that the plaintiff division manager was not similarly situated to comparator

---

[9] <u>See also</u> <u>Carey</u> v. <u>Mt. Desert Island Hosp</u>., 156 F.3d 31, 38 (1st Cir. 1998) (holding that plaintiff vice president and comparator managers were similarly situated despite having different positions, because, like the plaintiff, the comparator managers served on the management committee); <u>Benham</u>, 118 F.Supp.2d at 148-49 (plaintiff was similarly situated to comparators despite fact that they were her subordinates, where all were senior bank officers and all had authority to approve loans).

managers of different divisions, but not because they were in
different divisions.  The <u>Swallow</u> court implicitly acknowledged
that, had the complaints made against the plaintiff not been more
numerous and more serious than those made against the other
managers, those other managers would have been valid comparators.

Notably, in gender discrimination cases against investment
houses, courts have held that it was appropriate for the
plaintiff executive to use as comparators others holding the same
position in different divisions of the company.  In <u>Diamond</u> v. <u>T.
Rowe Price Assoc., Inc.</u>, 852 F.Supp. 372 (D. Md. 1994), the
plaintiff, a female portfolio manager, was denied a position as
Managing Director.  The court expressly allowed her to use as
comparators other portfolio managers who had been promoted to
Managing Director, despite the fact that they managed a range of
funds in different areas of the company.  While the court
ultimately held that the plaintiff and the other fund managers
were dissimilar for other reasons (relating to the actual scope
of their duties), had their duties been the same, they would have
been similarly situated despite working in different departments
and managing different kinds of funds.  The <u>Diamond</u> court stated:

> Plaintiff, Debra J. Diamond, is a portfolio manager
> and financial analyst who worked for defendant, T.
> Rowe Price Associates, Inc. ("T. Rowe Price"), from
> 1977 until 1992.  Headquartered in Baltimore, T. Rowe
> Price is an investment management firm that is known
> nationally for its large, publicly held mutual funds.
> Alleging gender and religious discrimination, Diamond

> sued her former employer under the Equal Pay Act of
> 1963 and Title VII of the Civil Rights Act of 1964.
>
> * * *
>
> Finally, Diamond's claim for failure to be designated
> a Managing Director also fails.  The term "Managing
> Director" is largely an honorary title given to a
> relative handful of T. Rowe Price's senior management
> employees in recognition of their exceptional
> responsibility within the firm.  Generally speaking,
> Managing Directors either run entire departments or
> manage funds valued in the hundreds of millions or
> even billions of dollars.  Diamond, in comparison,
> managed two successive limited partnerships, each
> valued at approximately $20 million, and supervised
> two employees.  Diamond's responsibility within the
> firm, while substantial, simply did not approach the
> managing director level.  Additionally, T. Rowe Price
> demonstrated that a male portfolio manager with a more
> successful investment record and more responsibility
> than Diamond has also not been named Managing
> Director.

852 F.Supp. 376, 378.  In a footnote, the court summarized a

prior order it had made, stating:

> Further, regarding the [failure to promote] claim, the
> Court ruled that the plaintiff could compare herself
> to all individuals who had been named Managing
> Directors.

Id. at 388 n.79.  Later, the court examined the proffered

comparators:

> As part of her case, Diamond identified 11 male
> employees at T. Rowe Price (her "comparators") whom
> she alleges have been named Managing Directors
> although their responsibilities and contributions are
> comparable to her own.  Their promotion in preference
> to her, Diamond contends, demonstrates discrimination.
> The Court disagrees.  While Diamond had considerable
> responsibilities at T. Rowe Price, she simply lacked
> the level of fund and personnel management of the 11
> Managing Director comparators.

Five of the names on Diamond's list may be summarily disregarded....  Four others are members of the Board of Directors of T. Rowe Price.... Diamond cannot reasonably compare herself to these persons.

Diamond's own analysis focuses on the responsibilities and contributions of the remaining six individuals. They are:

John Laporte, who manages the New America Growth Fund ($500 million in assets), the New Horizons Fund ($1.5 billion in assets), the Science & Technology Fund ($300 million in assets), and private accounts worth more than $200 million.

Richard Swingle, who manages the High Yield Fund ($1.7 billion in assets) and private accounts worth more than $48 million.

Charles Smith, who manages the New Income Fund ($1 billion in assets), the U.S. Treasury Intermediate Fund ($150 million in assets), and private accounts worth more than $1.4 billion.

Peter Van Dyke, who manages the U.S. Treasury Long Term Fund ($60 million in assets), the Spectrum Growth Fund and the Spectrum Income Fund ($500 million in assets), the GNMA Fund ($950 million in assets), and private accounts worth more than $3 billion.

William Reynolds, who manages the Tax-Free High Yield Fund ($950 million in assets), Tax-Free Income Fund ($1 billion in assets), Tax-Exempt Money Fund ($1 billion in assets), New York and New Jersey Tax-Free Bond Funds, Tax-Free Short Intermediate Fund, and private accounts worth more than $100 million. Reynolds also directs the Tax-Free Bond Division and is thus responsible for 15 mutual funds.

Brian Rogers, who manages the Equity Income Fund ($2.7 billion in assets), the T. Rowe Price Growth Stock Fund ($1 billion in assets), the T. Rowe Price Dividend Growth Fund, and private accounts worth more than $300 million.

> Diamond, on the other hand, managed one portfolio
> valued at $25 million.   One secretary and one
> research assistant reported to her.   The Court
> concludes that Diamond's contributions to T. Rowe
> Price, while noteworthy, did not satisfy the third and
> fourth criteria for promotion in to Managing Director-
> namely, sufficient responsibilities and contributions.

Id. at 406-07.  As the foregoing indicates, the portfolio

managers whom the court allowed Diamond to use as comparators,

were not limited to those managing small company growth funds of

the kind she managed.[10]  Their funds ran the gamut from large

company stocks to tax free bonds.  The Diamond court rejected

them as comparators not due to these differences, but only

because the actual day-to-day duties performed by the other

managers, and the scope of their responsibilities, differed

significantly from Diamond's.

In Sobol v. Kidder Peabody & Co., 49 F.Supp.2d 208 (S.D.N.Y

1999), the plaintiff investment banker was forced to resign her

position as head of the utilities finance group.  She brought an

age discrimination claim, and proffered as comparators the heads

of other departments within the company.  Although the court

rejected her comparators, it did so not because they managed

different divisions but due to the very dissimilar duties of the

other managers.  Id. at 219.

---

[10] "NFFI would concentrate on the common stock of small
(capitalization under $35 million) publicly traded "growth"
companies."  Id. at 379.

Nor, contrary to Putnam's assertion, need two employees have engaged in the "same or substantially identical" behavior in order to be valid comparators. An employer's less severe discipline of a similarly situated employee is relevant so long as the conduct of the other employee is of comparable or greater seriousness. A number of First Circuit cases have considered evidence that the employer failed to discipline other workers not within the plaintiff's protected class, for conduct of the same or a more serious nature. In Conward v. Cambridge School, 1998 WL 151248 (D. Mass. 3/24/98), the court said that in making a prima facie case,

> [t]he question is whether Conward has offered sufficient proof that the Cambridge Public Schools and Superintendent McGrath have not terminated teachers outside the protected class who engaged in misconduct as serious or more serious than Conward's.

1998 WL 151248, *3. (Emphasis added.) See also Che v. MBTA, 342 F.3d 31, 38-39 (1st Cir. 2003); Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003); Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 447 (1995); Lopez v. Target Corp., 2005 WL 1812466, *4 (Mass. Super. 6/9/05); Davis v. Jenny Craig, Inc., 1998 WL 1181152, * 11 (Mass. Super. 11/30/98)(all considering evidence that others who engaged in conduct of comparable seriousness were not disciplined as severely).

In Lynn v. Deaconess Medical Center-West Campus, 160 F.3d 484 (8th Cir. 1998), the court explained:

11

As proof of pretext, <u>Lynn presented evidence that
Deaconess disciplined female nurses in the Rehab Unit
less severely than he was disciplined for conduct that
was more egregious than his</u>. Primarily, Lynn points to
his supervisors' favorable treatment of another
registered nurse in the Rehab Unit, Karen Mohr.
Instances of disparate treatment can support a claim
of pretext, but Lynn has the burden of proving that he
and the disparately treated female nurses were
"similarly situated in all relevant respects."...

\* \* \*

We think that the district court applied the
"similarly situated" concept too narrowly when it
stated that because Lynn had not engaged in the
offense of sleeping, Deaconess's treatment of Mohr was
not relevant to the issue of whether Lynn had been
discriminated against. To show that employees are
similarly situated, a plaintiff need only establish
that he or she was treated differently than other
employees whose violations were of "comparable
seriousness." ...  <u>To require that employees always
have to engage in the exact same offense as a
prerequisite for finding them similarly situated would
result in a scenario where evidence of favorable
treatment of an employee who has committed a different
but more serious, perhaps even criminal offense, could
never be relevant to prove discrimination. Common
sense as well as our case law dictate that we reject
such an approach. We think that Mohr's sleeping on the
job was at least comparable to, if not much more
serious than, the misconduct alleged against Lynn.
Under the circumstances, we find that Lynn and Mohr
were similarly situated</u>.

<u>Id</u>. at 487-88. (Emphasis added, footnotes omitted.)  Similarly,

in <u>Dickson</u> v. <u>Labcorp</u>, 396 F.Supp.2d 1298 (M.D. Ala. 2005), the

court stated:

<u>The requirement that misconduct be "nearly identical"
cannot be taken too literally.  For example, a
completed assault is not nearly identical to a
threatened assault, because one is more serious than
the other.  Nonetheless, an employer would not be</u>

<u>justified in punishing the less serious conduct while</u>
<u>ignoring the more serious offense</u>.  Here, Dickson's
threat was reported while the actual physical
altercation between Morgan and Gates was not.  LabCorp
has failed to adequately explain the reason for this
disparate treatment of white employees.

... Accordingly, the court concludes that a
reasonable fact-finder could find that the different
treatment was "because of" Dickson's race and
LabCorp's proffered reason is pretextual.

<u>Id</u>. at 1305-06.  (Emphasis added.)

In the present case, Svensson may introduce evidence about
Putnam's discriminatory treatment of female investment
professionals, including the 24 female comparators identified
previously by Svensson, and who were similarly situated and thus
valid comparators.

2.  <u>Testimony of other employees that they were discriminated</u>
<u>against by Putnam (so-called "me too" evidence) is</u>
<u>admissible in this court's discretion because the evidence</u>
<u>in question is clearly relevant to Svensson's claims, and</u>
<u>because admission of such evidence will not unduly prejudice</u>
<u>Putnam</u>.

Putnam incorrectly suggests that such evidence seldom is
admissible. In so arguing, however, Putnam ignores controlling
2008 Supreme Court precedent.  In <u>Sprint/United Management Co</u>. v.
<u>Mendelsohn</u>, ___ U.S. ___, 128 S.Ct. 1140, 76 USLW 4107 (2008),
the United States Supreme Court held that the admissibility of
testimony by co-workers that they too were discriminated against
by the defendant employer must be decided on a case by case
basis.  <u>Id</u>. at 1147.  Application of a rule of <u>per se</u> exclusion

13

would be an abuse of discretion.  <u>Id</u>.  According to the
<u>Mendelsohn</u> court, admissibility "depends on many factors,
including how closely related the evidence is to the plaintiff's
circumstances and theory of the case.  Applying Rule 403 to
determine if evidence is prejudicial also requires a fact-
intensive, context-specific inquiry."  <u>Id</u>.

 Even Prior to the <u>Mendelsohn</u> decision, testimony of other
employees about their treatment by the defendant employer was
deemed relevant and admissible.  The United States Court of
Appeals for the First Circuit, in <u>Koster</u> v. <u>Trans World Airlines,</u>
<u>Inc.</u>, 181 F.3d 24 (1999), made clear that so-called "me too"
evidence is admissible because it helps to establish corporate
state of mind or discriminatory atmosphere:

> TWA argues that the anecdotal testimony is not
> indicative of age discrimination or of pretext and
> should not have been admitted.  TWA portrays the
> evidence as irrelevant and highly prejudicial,
> warranting reversal.
>
> In <u>Goldman</u> v. <u>First National Bank</u>, 985 F.2d 1113,
> 1119-21 (1st Cir.1993), we held that plaintiff's
> anecdotal evidence was insufficient to form the basis
> for a finding of age animus. ...
>
> Contrary to TWA's argument, <u>Goldman did not hold that</u>
> <u>anecdotal evidence is not admissible and always</u>
> <u>prejudicial.  Goldman simply held that the anecdotal</u>
> <u>evidence presented could not, by itself, establish age</u>
> <u>animus</u>....  Indeed, we recently observed that "while
> <u>proof of a general atmosphere of discrimination is not</u>
> <u>the equivalent of proof of discrimination ... it may</u>
> <u>add color to an employer's decision-making process.</u>"
> <u>Brennan</u> v. <u>GTE Gov't Sys. Corp.</u>, 150 F.3d 21, 28 (1st
> Cir.1998) (internal quotations omitted).  Here, as in

> Brennan, Koster's anecdotal evidence was just a part
> of his age discrimination picture.  The admissibility
> of Koster's anecdotal evidence was a judgment call, as
> was the refusal of the requested instruction.
> Exclusion would not have been an abuse of discretion,
> but neither was admission.

Id. at 33-34.  (Emphasis added.)  Indeed, "as a general rule,

... the testimony of other employees about their treatment by

the defendant is relevant to the issue of the employer's

discriminatory intent."  Mickelson v. New York Life Ins. Co.,

460 F.3d 1304, 1315 (10th Cir. 2006).

In the present case, the testimony of other Putnam employees

concerning Putnam's discrimination against them is relevant and

admissible.  The witnesses, Beth Cotner, Margaret Smith and

Deborah Kuenstner, were similarly situated to Svensson.

Further, evidence that Putnam discriminated against other

similarly situated female employees is relevant to Svensson's

effort to establish a discriminatory atmosphere at Putnam, and

to the jury's determination concerning Putnam's intent to

discriminate against Svensson.

Nor is such testimony unduly prejudicial to Putnam, in that

it arises from their own acts and conduct

3.    Conclusion.

For all of the foregoing reasons, this court should deny

Putnam's motion in limine to exclude anecdotal evidence

concerning other employees.

<u>Request for Hearing and Oral Argument</u>.

Svensson requests a hearing and oral argument on Putnam's motion <u>in</u> <u>limine</u>.

<div style="margin-left: 40%;">

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.


/s/ Kevin F. Moloney_____
Kevin F. Moloney   BBO No. 351000
Roger T. Manwaring BBO No. 548614
100 Cambridge Street, Suite 1310
Boston, Massachusetts  02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir_____
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.6374

</div>

Dated: April 29, 2008

<u>Certificate of Service</u>.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<div style="margin-left: 40%;">

/s/ Kevin F. Moloney_____

</div>

Dated: April 29, 2008


[428909.1]