```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * *    Civil Action No. 04-12711-PBS
                         *
LISA SVENSSON            *
                         *   BBO No. 351000
          Plaintiff,     *
                         *   Plaintiff Svensson's
v.                       *   Opposition to Putnam's
                         *   Motion, in limine, to Exclude
                         *   Evidence of any Settlements,
PUTNAM INVESTMENTS, LLC, *   Separation Documents, or
et al.,                  *   Subsequent Corporate
                         *   Transactions
          Defendants.    *   and
                         *   Memorandum in Support
* * * * * * * * * * * * *   and
                             Request for Hearing and
                             Oral Argument
```

Opposition.

Plaintiff Lisa Svensson ("Svensson") opposes the motion of defendant Putnam Investments, LLC ("Putnam"), in limine, to exclude "Evidence of any Settlements, Separation Documents, or Subsequent Corporate Transactions" (the "motion in limine"). The grounds for this opposition are set forth in the following memorandum.

Memorandum.

Svensson submits this memorandum of law in support of her opposition to Putnam's motion in limine.

1.  Facts.

As part of her proof that Putnam's proffered legitimate reasons for its adverse employment actions against her are in

fact merely pretexts for gender discrimination, Svensson expects to introduce evidence that Putnam disciplined her more severely than it did her male comparators, who were guilty of far more serious misconduct.  Svensson expects the evidence to establish: (1) that Putnam knew for at least three years prior to Svensson's termination that its officers Justin Scott ("Scott") and Omid Kamshad ("Kamshad"), who were Svensson's comparators, were involved in "excessive short-term trading," sometimes referred to as "market timing," a serious legal/regulatory violation that ultimately resulted not only in their terminations in late 2003, but also the departure of Putnam CEO Lawrence Lasser in October 2003, and in Putnam's agreements with the Securities Exchange Commission and the Massachusetts Securities Division to pay $5,000,000 of disgorgement and a civil fine of $50,000,000 and to pay to Massachusetts Securities Division $5,000,000 in restitution and an administrative fine of $50,000,000in addition to restitution as determined pursuant to another agreement with the SEC; (2) that, despite such knowledge, Putnam took no action against Scott and Kamshad for at least three years; and (3) that Putnam took the adverse employment actions against Svensson immediately and despite the fact that her alleged misconduct (purportedly misrepresenting to her superior (Joshua Brooks) the identities of Putnam employees to whom she had spoken prior to her drafting a warning

memorandum concerning one of her subordinates, Christopher O'Malley, a claim by Putnam that is untrue and even if true Svensson's conduct was a far less serious in nature.

Specifically, Svensson expects to offer evidence that, while Kamshad and Scott were terminated, but this occurred in late 2003 only after their conduct at Putnam, which had been ongoing since at least 2000, had become a public scandal and the Securities and Exchange Commission, The <u>Boston Globe</u>, the <u>New York Times</u> and the <u>Wall Street Journal</u> were in hot pursuit.  For at least three years Putnam had allowed Kamshad and Scott, both males, to pursue their wrongful conduct.  According to defendant Lasser,

> I knew there was a problem....  I didn't ask for details."[1]

In marked contrast, Putnam in the summer of 2003 "investigated" Svensson on a complaint from a junior male analyst for alleged deficiencies in her "management style" and terminated her employment within weeks, allegedly due to her poor management and alleged misrepresentations about whom she had spoken to concerning O'Malley's performance.

---

[1] Lasser letter to George Putnam, November 5, 2003, <u>Boston Globe</u>, March 24, 2004, p. C4.

3

2. <u>Argument</u>

2.1 <u>This court should deny Putnam's motion in limine to exclude evidence of Putnam's Settlement Agreements with state and federal securities regulators arising from the misconduct of Scott, Kamshad and others in "rapid ____" or market timing, because Svensson offers such evidence not to establish Putnam's liability for such misconduct, but merely to establish the serious nature of Scott and Kamshad's misconduct and that Putnam regarded their conduct as a serious transgression</u>.

In section "A" of its motion <u>in limine</u>, Putnam seeks to exclude "any settlement agreement, including between Putnam and any securities regulator." In support of exclusion, Putnam relies on Fed.R.Evid. 408 which states:

> (a) Prohibited uses.--Evidence of the following <u>is not admissible</u> on behalf of any party, <u>when offered to prove liability for</u>, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> (b) <u>Permitted uses</u>.--<u>This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)</u>. Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis added.)  Putnam also invokes public policy.

4

Putnam's arguments in its motion in limine misses the mark because they are based entirely on the incorrect assumption that Svensson seeks to introduce evidence of Putnam's settlement with securities regulators concerning the "excessive short-term trading" claims in order to establish Putnam's liability on those claims. However, as set forth in the factual section of this memorandum, that is not Svensson's purpose. Instead, she intends to use evidence of any settlement with securities regulators to establish only that the conduct of Scott and Kamshad was serious and that Putnam recognized the seriousness of their misconduct. That recognition on Putnam's part is highly relevant to Svensson's argument that it disciplined her more severely than it did her male comparators even when they were accused of much more serious misconduct.

It is clear that a settlement agreement between Putnam and securities regulators is admissible for this limited purpose. In Berke v. Presstek, Inc., 188 F.R.D. 179, 180-81 (D.N.H. 1998), the court stated:

> The parties agree that the SEC's factual findings, included in the consent decrees, cannot be used to prove liability. See Fed.R.Evid. 408.... Nevertheless, consent decrees may be admissible for other purposes, such as to show knowledge or intent.

See also Sheppard v. River Valley Fitness One, L. P., 428 F.3d 1, 12 (1st Cir. 2005). In Starter Corp. v. Converse, Inc., 170 F.3d 286, 293 (2nd Cir. 1999), the court explained:

5

> Rule 408 bars the use of settlement evidence to establish the validity or invalidity of a claim of trademark infringement....
>
> However, evidence of a settlement agreement and its surrounding circumstances "though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' i.e., for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle."

See also J. Weinstein and M. Berger, Weinstein's Federal Evidence, §408.08[1] at 408-27 ("Rule 408 does not require exclusion if the evidence is offered for some purpose other than proving liability for, the invalidity of, or the amount of a disputed claim").

Although the court must take into account the public interest in encouraging settlements, any such balancing of interests strongly favors admission in this case of evidence of Putnam's settlement of market timing claims. Such evidence is highly relevant to Svensson's claim that Putnam treated similarly situated males more favorably than it treated her. The evidence is an important component of Svensson's proof that Putnam's proffered legitimate reasons for its adverse actions against her are mere pretexts for discrimination.

Moreover, allowing evidence of the settlement to be introduced for the limited purpose of establishing that Scott and Kamshad's violations were serious and regarded by Putnam as serious would not confuse or mislead the jury, nor would doing

6

so make either Putnam or future defendants less inclined to enter into settlements.

2.2 <u>Svensson should be allowed to introduce evidence of separation agreements between Putnam and former Putnam employees, for the purpose of showing bias on the part of witnesses who are former Putnam employees</u>.

Putnam seeks to preclude Svensson from introducing evidence of separation agreements between it and its former employees. According to Putnam, such evidence is irrelevant because Svensson never signed such an agreement. Again, Putnam misses the point,

This court should allow Svensson to introduce evidence of Putnam's separation agreements with former employees who are witnesses in this case, for the limited purpose of showing potential bias on the part of such witnesses. Each such separation agreement provides for substantial monetary payments to a former Putnam employee, and also require that the employee agree to cooperate with Putnam in any proceeding. While the separation agreement does not condition the payments to the former employee on the content of the employee's testimony, the fact that the testifying employee is required to testify as a condition of receiving substantial payments is some evidence of bias.

The relevance of a separation agreement requiring testimony to the issue of a former employee's bias as a witness was recognized in Sheppard, where the court stated:

> Settlement agreements with related parties-absent a showing of identity of issues or factual stipulations having bearing on the subsequent case-are generally held inadmissible as not relevant….
>
> ***
>
> ... The general proposition ... is valid. However, his motion is more notable for what it does not acknowledge: namely, that settlement agreements may be used to impeach a witness like Aubin, whose testimony- which, to be sure, was supposed to be "truthful"- entitles him to a $49,900 discount on a judgment of $50,000.

428 F.3d at 12.

Nor would admission of evidence of a witness' separation agreement with Putnam confuse the jury. The issue of bias is one a jury intuitively understands and the relevance of an agreement in which the defendant corporation agrees to pay a witness, conditioned upon the witness testifying, is obvious.

2.3 <u>Svensson does not intend to introduce evidence of the price paid by Power Corporation</u>.

As Svensson does not intend to introduce evidence of the price paid for Putnam's subsequent acquisition by Power Corporation, Svensson does not oppose Putnam's motion <u>in limine</u> insofar as it purports to prevent admission of the purchase price. However, Svensson does intend to introduce evidence of the impact on Putnam's stock after the Power takeover as the

price per share of Putnam stock increased dramatically and Svensson, if she prevails on her claims for damages should be entitled to be made whole and not be deprived of the increase in the value of the equity occasioned by the Power takeover.

3. <u>Conclusion</u>.

 For all of the foregoing reasons, this court should deny Putnam's motion <u>in</u> <u>limine</u> to exclude "Evidence of any Settlements, Separation Documents, or Subsequent Corporate

Transactions."

<u>Request for Hearing and Oral Argument</u>.

Svensson requests a hearing and oral argument.

LISA SVENSSON, plaintiff,

By her attorneys,

BARRON & STADFELD, P.C.


/s/ Kevin F. Moloney_____
Kevin F. Moloney   BBO No. 351000
Roger T. Manwaring BBO No. 548614
100 Cambridge Street, Suite 1310
Boston, Massachusetts  02114
Tel.: 617.723.9800/531.6569

and

/s/ John K. Weir_____
John K. Weir, Admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York, 10022
Tel.: 212.572.6374

Dated: April 29, 2008

<u>Certificate of Service</u>.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin F. Moloney_____

Dated: April 29, 2008
[428908.1]

10