```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * *   Civil Action No. 04-12711-PBS
                        *
LISA SVENSSON           *
                        *   BBO No. 351000
         Plaintiff,     *
                        *   Plaintiff Svensson's
v.                      *   Opposition to Putnam's
                        *   Motion, in limine, to Exclude
                        *   Statistically Insignificant
PUTNAM INVESTMENTS, LLC,*   Evidence
et al.,                 *   and
                        *   Memorandum in Support
         Defendants.    *   and
                        *   Request for Hearing and
* * * * * * * * * * * * *   Oral Argument
```

## Opposition.

Plaintiff Lisa Svensson ("Svensson") opposes the motion of defendant Putnam Investments, LLC ("Putnam"), in limine, to exclude "Statistically Insignificant Evidence" (the "motion in limine"). The grounds for this opposition are set forth in the following memorandum.

## Memorandum.

Svensson submits this memorandum of law in support of her opposition to Putnam's motion in limine.

## Argument

Putnam seeks to preclude Svensson from introducing (1) "purported statistical evidence" produced by her expert, Paul F. White ("Dr. White") unless such evidence shows statistically

significant gender disparities; and, (2) Svensson's testimony about that evidence.

1.  <u>Svensson's expert statistical evidence is statistically significant and admissible</u>.

1.1 <u>Contrary to Putnam's assertion, Svensson's expert, Dr. White, did find statistically significant, gender based disparities in Putnam's employment practices</u>.

Putnam claims that "Dr. Dr. White concedes that he could find no statistically significant pattern with respect to Putnam's compensation, demotion and termination practices." That is incorrect and misleading.

At the outset, it should be noted that Dr. White wrote his report, filed in March 2007, based only on information produced by Putnam concerning the 91 persons identified as Svensson's comparators. Dr. White was not afforded the opportunity to review for his March 2007 report all of the documents which Putnam provided to its own expert, Professor David E. Bloom, and which Professor Bloom used in his report. Putnam failed to provide those additional documents to Svensson (and hence to Dr. White), until November 2007, eight months after Dr. White filed his report and only one month prior to Dr. White's deposition.

By its order affirming the March 11, 2008, order of Magistrate Judge Bowler, the court allowed Dr. White to submit a supplemental report based on his review of the documents Professor Bloom reviewed but which were not produced to Svensson

2

until November 2007.  Putnam should not be permitted to attack Dr. White's report based on a lack of statistical significance until Dr. White has reviewed the late produced documents and prepare and filed a supplemental report.  Any other result would reward Putnam for its own misconduct.

By claiming that Dr. White found no "statistically significant pattern with respect to Putnam's compensation, demotion and termination practices," Putnam also grossly misrepresents the conclusions of Dr. White's March 2007 report, where Dr. White finds numerous statistically significant, gender based disparities:

> Of the changes in representation rates from 1998-2002, the <u>decrease in the SVP representation is statistically significant</u> at -2.58 standard deviations.  [Dr. White Report, p.8]
>
> As can be seen from the above table, the female representation of all Investment Division officers has decreased from 22% in 1998 to 14% in 2002. Although the number of male officers has increased by 65 during this time period, the number of females has decreased by 9. <u>Using a test of proportions, the difference in female representation among all Investment Division officers between 1998 and 2002 is statistically significant</u> at -2.24 standard deviations.  [Dr. White Report, p. 9]
>
> In fact, when we focus our analysis on the promotion and demotion rates of female Investment Division officers, we see that the promotion rates are neutral with respect to gender but the <u>demotion rates are significantly adverse to females</u>.  [Dr. White Report, pp. 9-10]
>
> As can be seen from the table, in genera, females received on average lower compensation levels, but had

>similar performance evaluation measures, more years of investment experience and similar year of Putnam tenure. <u>The results that are statistically significant are: females had a significantly lower bonus payment in 2002 and females had significantly more years of investment experience</u>. [Dr. White Report, p. 10]
>
>As can be seen from the table, in general, females received on average lower compensation levels and performance evaluations, but had more years of investment experience and Putnam tenure. <u>The results that are statistically significant are: total compensation 2000-2003, total incentive payments 2000-2002, bonus payments 2000-2002, equity in 2003, previous year final rating in 2000, and previous year manager rating in 2001</u>. [Dr. White Report, pp. 10-11]

(Emphasis added.)  Dr. White summarized his conclusions as

follows:

>Based upon the data and information reviewed in conducting my analysis, my genera conclusions are the following:
>
>--Although there is no statistically significant pattern of promotions adverse to females who hold officer titles, there has been a statistically significant decrease in the representation of females among officer (A VP to SMD) in the Investment Division between 1998 and 2002. There is also a statistically significant pattern of demotions adverse to females during this same time period.
>
>--There has been a statistically significant decrease in the representation of females among Senior Vice-Presidents in the Investment Division from 1998 to 2002.
>
>--Although there are a small number of exceptions, the general finding from the data is that among the disparate impact comparators named by the plaintiff, females tend to have lower levels of compensation, but comparable levels of performance ratings and more year of investment experience and Putnam experience.

4

> --Although there are a small number of exceptions, the
> general finding from the data is that the plaintiff
> had lower levels of compensation, comparable
> performance reviews, and more year of investment and
> Putnam-specific experience than her male named
> comparators for her disparate treatment claims.

Dr. White Report, p. 14.

    1.2 <u>Putnam's definition of "statistically significant" fails to recognize this court's broad discretion in determining what is statistically significant</u>.

Putnam claims that "as a general rule" disparities are not statistically significant unless the difference between the expected value (in the absence of discrimination) and the observed number is greater than two or three standard deviations.  That is wrong and ignores recent precedent from the United States Supreme Court, from the First Circuit, and from this court.  In <u>Watson</u> v. <u>Fort Worth Bank and Trust</u>, 487 U.S. 977 (1988), the Supreme Court held that statistical significance must be determined on a case by case basis:

> We have emphasized the useful role that
> statistical methods can have in Title VII
> cases, <u>but we have not suggested that any
> particular number of "standard deviations"
> can determine whether a plaintiff has made
> out a prima facie case in the complex area of
> employment discrimination</u>….  Nor has a
> consensus developed around any alternative
> mathematical standard. <u>Instead, courts appear
> generally to have judged the "significance"
> or "substantiality" of numerical disparities
> on a case-by-case basis</u>. See <u>Clady</u>, <u>supra</u>, at
> 1428-1429; B. Schlei & P. Grossman,
> Employment Discrimination Law 98-99, and n.
> 77 (2d ed. 1983); <u>id</u>., at 18-19, and n. 33

>(Supp. 1983-1985). At least at this stage of the law's development, <u>we believe that such a case-by-case approach properly reflects our recognition that statistics "come in infinite variety and ... their usefulness depends on all of the surrounding facts and circumstances</u>."

<u>Id</u>. at 995 n.3. (Emphasis added.) <u>See</u> <u>also</u> <u>Langlois</u> v. <u>Abington Housing Authority</u>, 207 F.3d 43, 50 (1st Cir. 2000) ("no single test". EEOC "four-fifths" rule also a "pertinent benchmark"); <u>Bradley</u> v. <u>City of Lynn</u>, 443 F. Supp.2d 145, 160-65 (D. Mass. 2006) (Saris, D. J.) (Applying both standard deviation and EEOC "four-fifths" rule and noting that the Supreme Court "has said that no single test controls").

Contrary to what Putnam would have this court believe, statistical evidence is broadly admissible in Title VII cases, including those alleging disparate treatment. <u>Currier</u> v. <u>United Technologies Corp.</u>, 393 F.3d 246, 251 (1st Cir. 2004) ("Statistical analyses have been held admissible in disparate treatment discrimination cases unless they are so incomplete as to be inadmissible as irrelevant" (internal quotation marks omitted)); <u>McMillan</u> v. <u>Mass. Soc'y for the Prevention of Cruelty to Animals</u>, 140 F.3d 288, 303 (1st Cir.1998). In fact, "as evidence that a proffered reason is pretext for discrimination, statistical evidence may ... be highly relevant". <u>Bloomfield</u> v. <u>Bernardi Automall Trust</u>, 170 F.Supp.2d 36, 45 (D. Mass. 2001)

6

(internal quotation marks omitted); Flebotte v. Dow Jones & Co., Inc., 2000 WL 3539238, *3, 6 (D. Mass. 12/6/00).

Generally, any alleged infirmities or flaws in the statistical analysis go to its weight rather than admissibility.[1] It is the opposing party's obligation to highlight any such flaws through vigorous cross examination. Currier, 393 F.3d at 252; McMillan, 140 F.3d at 303.

Notably, statistics showing that the upper ranks of a corporate defendant are closed to the group of which the plaintiff is a member may support an inference that employment decisions concerning the plaintiff were motivated by discriminatory animus. Luciano v. Coca-Cola Enterprises, Inc., 307 F.Supp.2d 308, 322 (D. Mass. 2004).

In the present case, the gender disparities identified in Dr. White's report are, under the circumstances of this case, statistically significant. As set forth in the preceding section, Dr. White found statistical significance. In any

---

[1] Currier, 393 F.3d at 252 ("Pratt's related argument that Gupta's analysis was meaningless because it failed to take into account the wide differences in circumstances among the terminated employees was a point made clearly and repeatedly by Pratt through cross-examination of Gupta and in the testimony of the company's own expert witness. We see no abuse of discretion in the district court's decision to view this weakness in Gupta's analysis as a matter of weight rather than admissibility and thus properly a subject of argument and jury judgment. As the Supreme Court has observed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence'"); Flebotte, 2000 WL 3539238, *3-4.

7

event, Putnam has not challenged, much less refuted, Dr. White's conclusions that his findings were statistically significant.

> 2. Pursuant to Fed. R. Evid. 611(a), this court should allow Svensson to utilize the charts attached hereto as Exhibits 1-26 in order to summarize and make more accessible to the jury the content of documents which by stipulation, court order or otherwise, will be in evidence, and should allow Svensson to testify as to the method by which she compiled those charts and to summarize the documents which are referred to in the charts.

Putnam claims that Svensson should not be allowed to introduce "pseudo-statistical raw data, anecdotes, averages or other legally insufficient statistical evidence." In so arguing, Putnam is apparently asking the court to preclude Svensson from introducing certain charts in which she summarizes the information contained in numerous Putnam, SEC and otherwise independently admissible documents which she intends to offer as evidence. Putnam also appears to ask this court to preclude Svensson from testifying about the charts or the underlying documents.

For the reasons set forth in the accompanying motion pursuant to Fed. R. Evid. 1006, the court should admit Svensson's summary charts, annexed hereto as Exhibits 1-26[2], in

---

[2] Because the charts, Exhibits 1-26, may contain confidential information, Svensson, in compliance with this court's confidentiality order, is filing this motion via the court's ECF system without the charts and is filing paper copies of the charts with the court, under seal, together with a motion to

evidence as trial exhibits.  Even if the court denies the Rule 1006 motion, however, it should allow Svensson to utilize the charts as chalks to assist the jury by summarizing documents already admitted inn evidence by stipulation, court order or otherwise.

The charts merely summarize, condense and organize the information contained in an extensive array of documents which, by stipulation, court order or otherwise, will already be in evidence.  Svensson's testimony will not offer expert opinion, but will simply consist of her own observations, based on personal knowledge, concerning, among other things, Putnam's conduct towards her; persons whom she observed to have been terminated, demoted or promoted; the representation of women at various levels of employment at Putnam; and Putnam's relevant employment practices.  Svensson also intends to testify as to how she compiled the charts and to summarize the information set forth in the charts and the underlying documents.

This court has broad discretion to permit a litigant to offer summary testimony or chalks which summarize evidence already admitted.  Fed. R. Evid 611 states, in relevant part:

> Rule 611. Mode and Order of Interrogation and Presentation
>
> (a) Control by court. The court shall exercise reasonable control over the mode and

---

impound.  Paper copies of the charts are also being served on counsel for Putnam.

9

> order of interrogating witnesses and
> presenting evidence so as to (1) <u>make the
> interrogation and presentation effective for
> the ascertainment of the truth</u>, (2) <u>avoid
> needless consumption of time</u>, and (3) protect
> witnesses from harassment or undue
> embarrassment.

The Court of Appeals for the First Circuit has recognized that, under Rule 611, a trial court judge may allow the use of so-called "pedagogical devices" to aid the jury. In <u>United States v. Milkiewicz</u>, 470 F.3d 390, 397 (2006), the court stated:

> A trial judge also may allow use of a chart
> or other summary tool under Fed.R.Evid.
> 611(a), which gives the trial court "control
> over the mode ... [of] presenting
> evidence."... Such summaries most typically
> are used as "pedagogical devices" to "clarify
> and simplify complex testimony or other
> information and evidence or to assist counsel
> in the presentation of argument to the court
> or jury." ...

(internal citations omitted).

Rule 611 also allows witness testimony which summarizes information contained in documents already admitted in evidence. <u>See</u> <u>FDIC</u> v. <u>Key Financial Services, Inc.</u>, 1999 WL 34866812, *9 (D. Mass. 12/23/99) ("Often this type of summary evidence takes the form of a <u>witness</u> or exhibit" (emphasis added)); <u>Weinstein's Federal Evidence</u>, 2d ed., §611.02[2][a], p.. 611-25 ("oral testimony summarizing other evidence already in the record is admissible in the trial court's discretion under Rule 611(a) on

the same grounds and under the same conditions as are applicable to the use of summary charts").

In the present case, this court should allow Svensson to use summary charts and offer summary testimony. Svensson's pretrial disclosures list more than 450 separate exhibits, totaling thousands of pages. Putnam has identified approximately 60 additional documentary exhibits. Many of the documents consist of emails from one Putnam officer to one or more others. The summary charts and testimony offered by Svensson will greatly aid the jury and the jury in accessing and understanding the "big picture."

      3.   <u>Svensson will provide adequate context to establish the relevance and significance of her evidence</u>.

Finally, Putnam asserts that Svensson's testimony and summary charts will provide only bare percentages or averages, without the contextual information necessary to determine the relevance or significance of such data. Svensson expects to offer the necessary contextual information through her expert, Dr. White, via her own testimony based on personal knowledge, through the testimony of her other witnesses, through examination of Putnam's witnesses, and via the documents themselves, the vast majority of which are Putnam documents. If Putnam believes an inadequate foundation in that regard has been laid, it is free to object at trial.

In any event, Putnam is again attempting to profit from its own wrongdoing.  Having improperly deprived Svensson of information which might have enabled Dr. White to have rendered an opinion on data provided to Professor Bloom but not to him, to identify additional statistically significant disparities and to provide contextual information supporting the evidence Svensson is offering, Putnam is now seeking to exclude Svensson's statistical evidence on the ground that such contextual information is lacking.  That is patently unfair.

Conclusion.

For all of the foregoing reasons, this court should deny Putnam's motion in limine to exclude "Statistically Insignificant Evidence."

Request for Hearing and Oral Argument.

Svensson requests a hearing and oral argument on Putnam's

motion in limine.

          LISA SVENSSON, plaintiff,

          By her attorneys,

          BARRON & STADFELD, P.C.

          /s/ Kevin F. Moloney_____
          Kevin F. Moloney   BBO No. 351000
          100 Cambridge Street, Suite 1310
          Boston, Massachusetts  02114
          Tel.: 617.723.9800/531.6569

          and

          /s/ John K. Weir_____
          John K. Weir, Admitted PHV
          John K. Weir Law Offices, LLC
          300 Park Avenue, Suite 1700
          New York, New York, 10022
          Tel.: 212.572.6374

Dated: April 29, 2008

          Certificate of Service.

    This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

          /s/ Kevin F. Moloney_____

Dated: April 29, 2008

[428850.1]