UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| * * * * * * * * * * * * * * <br> LISA SVENSSON <br><br> Plaintiff, <br><br> v. <br><br><br> PUTNAM INVESTMENTS, LLC, <br> et al., <br><br> Defendants. <br> * * * * * * * * * * * * * * | Civil Action No. 04-12711-PBS <br><br><br> BBO No. 351000 <br><br> Plaintiff Svensson's <br> Opposition to Putnam's <br> Motion, in limine, to Exclude <br> Stray Comments by Non-Decision <br> Makers <br> and <br> Memorandum in Support <br> and <br> Request for Hearing and <br> Oral Argument |

### Opposition.

Plaintiff Lisa Svensson ("Svensson") opposes the motion of defendant Putnam Investments, LLC ("Putnam"), in limine, to exclude "Stray Comments by Non-Decision Makers" (the "motion in limine"). The grounds for this opposition are set forth in the following memorandum.

### Memorandum.

Svensson submits this memorandum of law in support of her opposition to Putnam's motion in limine.

### Argument.

Putnam asks this court to preclude Svensson from introducing evidence of discriminatory, gender related comments made by Svensson's direct superior (Robert Swift), Putnam's Head of Investments (Ed Haldeman) and Putnam's CEO Lawrence Lasser, urging

this court to adopt an extremely narrow, and very incorrect approach to the admissibility of such comments.  This court should not accept Putnam's invitation to ignore established precedent.

Nor should the court, having determined on summary judgment that there are genuine issues of material fact warranting a trial, preclude the jury from deciding if the comments at issue are "stray."

1. <u>Swift, Haldeman and Lasser were decision makers with respect to Putnam's discriminatory actions against Svensson</u>.

Putnam incorrectly claims that neither Swift, Haldeman nor Lasser played any role in the discriminatory employment decisions of which Svensson complains.  That is not correct.

Swift in the period 1997-early 2002 was Svensson's direct supervisor.  In order to be considered for a raise or promotion, Svensson had to have Swift's recommendation in order to be placed in the pool of persons eligible to be given a raise or be promoted.  For example, Swift submitted written recommendations that Svensson be appointed MD (PRM 50-51 for 2000 and PRM 12552-53 for 2002).  Thus, even if Swift was not a member of the committee that made the ultimate decisions as to Svensson, he was in a position to influence, and in fact did influence, those decision makers.  First Circuit case law makes clear that discriminatory remarks by one in a position to influence the decision maker are relevant evidence of discriminatory animus.  <u>Rodriguez</u> v.

2

Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 79 1st Cir. 2005) ("discriminatory comments may be probative of pretext if a plaintiff can show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." (Emphasis added.)[1]

From October 2002 through her termination on September 15, 2003, Haldeman and Oristaglio were Co-Heads of Investments, reporting directly to Lasser, the CEO.  Haldeman took part in decisions as to Svensson's promotion and employment status.  Tibbetts dep., Day One, p. 25, l. 14 - p. 26, l. 14.  He and Oristaglio also were involved in the discussion leading to Svensson's termination.  Oristaglio dep., Day One, p. 209, l. 13 - p. 210, l. 9.

Even if Haldeman or Lasser took no personal part in the decisions with regard to Svensson, they still were sufficiently involved in those decisions so that their comments are those of decision-makers because Haldeman and Lasser strongly influenced, and in some cases had themselves made members of, the Putnam

---

[1] Straughn v. Delta Airlines, Inc., 250 F.3d 23, 35 (1st Cir. 2001) ("The burden of persuasion on pretext may be met, inter alia, by showing that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker"); Santiago, 217 F.3d at 55 (same); Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 676 (1st Cir. 1996); Russell v. McKinney Hospital, 235 F.3d 219, 229 (5th Cir. 2000) ("Age-related remarks are appropriately taken into account when analyzing the evidence supporting the jury's verdict (even if not in the direct context of the decision  and even if uttered by one other than the formal decisionmaker, provided that the individual is in a position to influence the decision)").

committee who made the decisions concerning Svensson. See <u>Duval v. Callaway Golf Ball Operations, Inc</u>., 501 F.Supp.2d 254, 267 (D. Mass. 2007) ("... Defendant makes much of the fact that Penicka, although president of the company, was neither Plaintiff's supervisor nor the one who personally decided that he should be laid off. It is undisputed, however, that Penicka hand-picked the three new 'thirty-something' OCM members, that the OCM members were collectively pressured to cut staff, and that Plaintiff, an older employee, was one of the office staff targeted for layoff by one of the new, and as it turns out younger, OCM members.").

In addition, William Landes, whose testimony Svensson may also introduce, was a decision-maker with regard to Svensson. After she was demoted to the research department in March 2002, Landes was her direct supervisor. Like Swift, Landes' recommendation was required for Svensson to be placed in the pool of persons eligible to be nominated for promotion to Managing Director. He also recommended her January 2003 promotion to Associate Director of Research and nominated her for appointment as a Managing Director. He was, therefore, in a position to influence the ultimate decision-makers.

Notably, the remarks Svensson seeks to introduce are not those of lower level, regular employees but, instead, are those of a relatively small group of upper level corporate officers. Such remarks are admissible to show pretext and Putnam should not be

4

allowed to treat each comment in isolation from the rest when claiming that they lack relevance.  In Carey v. Mt. Desert Island Hospital, 156 F.3d 31 (1st cir. 1998), the court stated:

> MDI in its briefs and argument compartmentalizes the above evidence, isolating each incident, relationship, or statement, arguing that each has no bearing on any animus that could have influenced Hawkins. But all of the evidence was presented to the jury and we would find it very difficult indeed to say that the totality fell below a triable threshold. The statements and incidents did not relate to miscellaneous low level employees but to a fairly tight group of top officials. We therefore hold that there was sufficient evidence to support a finding that deficiencies in Carey's handling of financial controls were not the real reason for his discharge but instead covered an action stemming from gender discrimination.

Id. at 38.

2.  <u>Even if one or more of the persons whose remarks Svensson seeks to introduce were not decision-makers, such remarks are admissible (1) to show discriminatory animus in combination with other relevant evidence and (2) to establish the existence of a discriminatory atmosphere</u>.

Putnam claims that the remarks of Swift, Haldeman and Lasser are inadmissible because such remarks did not relate directly to the particular employment decisions at issue and, Putnam asserts, were made by non-decision makers.

In support of its position, Putnam cites Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st cir. 2007) and Torrech-Hernandez v. General Electric, 519 F.3d 41, 55 (1st Cir. 2008).  Neither case is on point.  In each case, the court indicated that the stray remarks of a non-decision-maker, <u>standing alone</u>, could not

provide evidence of discrimination sufficient to block a motion for summary judgment. It is well established in the First Circuit that so-called stray comments can be considered by the jury, in combination with other evidence. In <u>Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc</u>., 473 F.3d 11 (1st cir. 2007), the court stated:

> On appeal, Horizon argues that the anti-military comments were just "stray remarks," and as such cannot be sufficient evidence of discriminatory animus…. But Horizon's argument oversimplifies the analysis. First, it is only true that " 'stray workplace remarks' ... normally are insufficient, <u>standing alone</u>, to establish ... the requisite discriminatory animus." … Here, Velázquez points not only to the remarks by co-workers, but also to complaints by Batista and others about the difficulty of adjusting Velázquez's work schedule, and to the timing of his firing (which we address below). <u>See</u> <u>McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals</u>, 140 F.3d 288, 300-01 (1st Cir.1998) ("stray remarks may properly constitute evidence of discriminatory intent for the jury to consider in combination with other evidence").

<u>Id</u>. at 18. (Emphasis in original.)

In the present case, unlike the cases cited by Putnam, the remarks Svensson seeks to introduce are not her only evidence of discrimination. In addition to those remarks, Svensson will introduce statistical and other evidence of both disparate impact and treatment.

Putnam also fails to acknowledge that even remarks of non-decision-makers, not directly concerning the employment decisions at issue, are nevertheless relevant and admissible to show the

6

existence of a discriminatory corporate atmosphere.  In Conway v. Electro Switch Corp., 825 F.2d 593 (1st Cir. 1987), the United States Court of Appeals for the First Circuit held that the female plaintiff employee, in support of her gender discrimination claim, could introduce testimony by another employee as to discriminatory statements made to her by a corporate officer, which did not concern the plaintiff, as evidence of corporate state of mind or discriminatory atmosphere, even though the statement had been made 22 months prior to plaintiff's termination:

> Patricia LaRose, a quality control supervisor, testified to a statement made to her by Franklin Meissner, the company's president at the time of Ms. Conway's termination. Ms. LaRose testified that sometime in 1981, she sought and was refused a raise from her supervisor. Ms. LaRose appealed this decision to Mr. Meissner, who, at that time, was her supervisor's superior, but had yet to become the company's president. Ms. LaRose testified that Mr. Meissner responded, "Well, no, I don't think so, Pat. For a woman supervisor, you do very well." The district judge permitted the testimony ... ruling that [it was] relevant to the "corporate state-of-mind."
>
> Electro Switch appeals the propriety of the district judge's ruling, alleging that the statement[] [was] extremely prejudicial to its cause. ... The appellant contends that for evidence of a "corporate state-of-mind" to be relevant it must be indicative of the consciousness of the individuals who took the employment action at issue....
>
> Rule 401 of the Federal Rules of Evidence provides that any evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." This standard affords the trial judge considerable latitude in making discretionary determinations as to relevancy and "[o]nly in exceptional cases will reversible error be found in

the district court's determination of the probative value of testimony in a particular case." ...

... As this court has ruled, circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff. ...  Thus, we cannot say that the district court erred in permitting [the] testimony as [it] tend[s] to highlight the atmosphere and institutional state-of-mind present at Electro Switch during the plaintiff's period of employment.

The appellant has argued that the relationship between the ... Meissner statement[] and the events and actors involved in the plaintiff's termination is too attenuated to support the district judge's assessment of the statements' probative value....  In addition to claiming that Mr. Meissner was not involved in the plaintiff's termination, the appellant notes that the statement was made ten to twenty-two months before the events of October 1982, and that the statement refers to a different subject matter with respect to a different employee who worked in a separate department.

It is our view, however, that evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment. The rationale underlying the admission of such evidence militates against its exclusion on those grounds. Evidence of institutional state-of-mind may be presented for the consideration of the trier-of-fact because an employer's willingness to consider impermissible factors such as race, age, sex, national origin, or religion while engaging in one set of presumably neutral employment decisions-in this case, pay scales-might tend to support an inference that such impermissible considerations may have entered into another area of ostensibly neutral employment decisions-here, an employee's termination. While this court has

8

<blockquote>
recognized that "<u>proof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual</u>," it may be one <u>indication that the reasons given for the employment action at issue were "implicitly influenced" by the fact that the plaintiff was of a given race, age, sex or religion</u>.
</blockquote>

825 F.2d at 596-98.  (Emphasis added.)

In <u>Cummings</u> v. <u>Standard Register Co</u>., 265 F.3d 56 (1st Cir. 2001), the United States Court of Appeals for the First Circuit upheld the trial court's decision to admit in evidence the deposition testimony of two other employees concerning age discrimination they had suffered.  The evidence was admitted despite the fact that one of the other employees held the same position as the plaintiff but at a different location with a different supervisor, and the other worked at the same location as plaintiff but held a different position and had a different supervisor.  Citing <u>Conway</u>, the <u>Cummings</u> court stated:

> To this end, evidence of a discriminatory "atmosphere" may sometimes be relevant to showing the corporate state-of-mind at the time of the termination. ... While such evidence does not in itself prove a claim of discrimination, ..., "[it] does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff."

<u>Id</u>. at 63.  The <u>Cummings</u> court rejected the defendants claim that the treatment of the other employees was irrelevant because their testimony covered different time periods, different supervisors and different areas of the company:

9

> Standard Register challenges the relevancy of the testimony on the ground that it covered different time periods, different supervisors, and different areas of the company. It is true that evidence of discrimination can be "too attenuated" to justify admission, ... and that testimony to this effect should be let in sparingly. However, "evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific claim that generated a claim of discriminatory treatment."  ... Rather, the trial court must consider the evidence in light of the entire case and determine whether it provides a basis for reasonable inferences related to the plaintiff's claim....

Id.

Recently, the Court of Appeals for the First Circuit, in Velazquez, explained that the remarks of a non-decision maker can be admitted as evidence of discriminatory atmosphere:

> Furthermore, stray remarks by nondecisionmakers, while insufficient standing alone to show discriminatory animus, may still be considered "evidence of a company's general atmosphere of discrimination," and thus can be relevant.

473 F.3d at 18-19.

3.  Conclusion.

For all of the foregoing reasons, this court should deny Putnam's motion in limine to exclude "Stray Comments by Non-Decision Makers."

### Request for Hearing and Oral Argument.

Svensson requests a hearing and oral argument on Putnam's

10

motion in limine.

                                         LISA SVENSSON, plaintiff,

                                         By her attorneys,

                                         BARRON & STADFELD, P.C.


                                         /s/ Kevin F. Moloney_____
                                         Kevin F. Moloney   BBO No. 351000
                                         Roger T. Manwaring BBO No. 548614
                                         100 Cambridge Street, Suite 1310
                                         Boston, Massachusetts  02114
                                         Tel.: 617.723.9800/531.6569

                                         and

                                         /s/ John K. Weir_____
                                         John K. Weir, Admitted PHV
                                         John K. Weir Law Offices, LLC
                                         300 Park Avenue, Suite 1700
                                         New York, New York, 10022
                                         Tel.: 212.572.6374

Dated: April 29, 2008

                         Certificate of Service.

    This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


                                         /s/ Kevin F. Moloney_____

Dated: April 29, 2008


[428907.1]