```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| * * * * * * * * * * * * * * * <br> * <br> LISA SVENSSON  * <br>  * <br>        Plaintiff,  * <br>  * <br> v.  * <br>  * <br> Putnam Investments, LLC,  * <br> et al.  * <br>        Defendants.  * <br>  * <br> * * * * * * * * * * * * * * * | Civil Action No. 04-12711-PBS <br><br> BBO No. 351000 <br><br> Plaintiff Svensson's <br> Proffer Re: Omid Kamshad <br> and Justin Scott |

Plaintiff Lisa Svensson ("Svensson") makes the following proffer re: Omid Kamshad and Justin Scott.

1. <u>Introduction</u>.

All matters referenced herein were testified to by Richard Tibbetts, Putnam's Head of Human Resources, at his deposition on September 26, 2006; testified to by Konstantin Stoev ("Stoev") at his deposition on August 16, 2006; were derived from documents produced by Putnam in this case; or are matters of public record in this Court.

2. <u>Omid Kamshad</u>.

Omid Kamshad ("Kamshad") came to Putnam on January 5, 1996, with ten prior years of investment experience. (Svensson had arrived at Putnam on July 18, 1994, with seven prior years investment experience.)  By 1998, Kamshad had become a Managing Director ("MD") of Putnam, and remained an MD until December 2,

2003.  His functional title during that period, until 1999, was Senior Portfolio Manager ("SPM") and Chief Investment Officer (CIO) of the International Core Team thereafter.  Kamshad's compensation during the period 1999 through 2002 was as follows: (1) $6,095,135 (1999); (2) $8,772,265 (2000); (3) $9,565,140 (2001); and, (4) $8,214,987 (2002).

In January 2000, Putnam's Human Resources Department ("HR") became aware of large and frequent movement in Kamshad's personal share of Putnam's omnibus employee deferred compensation account ("Putnam's deferred account").  Richard Tibbetts ("Tibbetts") of HR brought this matter to the attention of his then superior in HR (Ms. Cathie Collman), Mitchell Schultz ("Schultz"), Putnam's Head of Compensation and Benefits, and Timothy Ferguson ("Ferguson"), Putnam's Head of Investments at the time.  They discussed the fact that some questionable trading had been picked up on Putnam's internal monitors, and that Kamshad had been participating in rapid trading in his share of Putnam's deferred account.  Ferguson expressed the concern that these large and frequent movements were inconsistent with Putnam's general philosophy of being an investor for the long term, and directed Tibbetts to talk to Kamshad about ceasing this activity.  Tibbetts then met with Kamshad, at which time Kamshad stated to Tibbetts that he

2

(Kamshad) had no intention of engaging in such activity, and that he would cease this activity going forward.

By memorandum, dated February 18, 2000, Tibbetts, at the direction of Ferguson, documented the meeting several weeks after it occurred, and sent the memorandum for imaging and inclusion in Kamshad's personnel file, with copies to, among others, Joseph Cassaro, Chief Administrative Officer, Schultz and Justin Scott ("Scott"), CIO, Global Core.  In 2003, Charles E. Haldeman, Jr. ("Haldeman") and Stephen Oristaglio ("Oristaglio"), then Putnam's Co-Heads of Investments, asked Tibbetts to locate the memorandum in Kamshad's file, but the memorandum was not in the file.  Tibbetts later located the memorandum in a file he maintained on Putnam's investment professionals' trading.

Kamshad's rating on his annual review for the year 2000 was 4.5 out of 5 and the review document did not include any reference to his activities concerning Putnam's deferred account.

On October 27, 2003, the Securities and Exchange Commission ("SEC") commenced a legal proceeding against Kamshad in this Court arising out of the on-going rapid trading in Kamshad's accounts.  According to Tibbett's deposition testimony, Tibbetts, prior to October, 2003, had not undertaken any steps to determine if Kamshad had carried through on his promise to

3

cease rapid trading in the Putnam deferred account, and had undertaken no other steps to determine if Kamshad's activities concerning the Putnam deferred account were illegal or in breach of Putnam's Code of Ethics.  Gains in the Putnam deferred compensation account were income to Putnam until such time as each individual became vested in his or her respective share of the account.

3.   Justin Scott.

Justin Scott ("Scott") came to Putnam in 1988 and, as of 1999, was a MD and the CIO of Global Core, and remained in that capacity until December 2003.  Scott's compensation during the 1999-2002 period was as follows: (1) $10,195,135 ($1,695,135 of which was in stock and options) (1999); (2) $14,352,415 ($2,602,415 of which was in stock and options) (2000); (3) $11,090,103 ($2,340,103 of which was in stock and options) (2001); and (4) $8,449,919 ($3,349,919 of which was in stock and options) (2002).

When Ferguson expressed his concern at the meeting referenced above about Kamshad's trading activities, there was discussion that Scott also had been involved in similar large and frequent trading in the Putnam deferred account, and Ferguson indicated that he would speak to Scott on the subject. Ferguson later advised Tibbetts that he had spoken to Scott, and had directed him to cease such activity.

4

   Prior to 2003, Tibbetts became aware of similar trading in by Geir Lode ("Lode") in his account and in the fall of 2003, Tibbetts became aware of similar trading by James Prusko ("Prusko") in his account, and, as referenced above, of continued trading by Scott and Kamshad.  Kamshad, Scott, Prusko and Lode are comparators of Svensson for this purpose.

   On October 27, 2003, Lawrence J. Lasser, then Putnam's president and CEO, sent an e-mail to Konstantin Stoev,

> ...Yes, <u>fiduciary standards are black and white</u>.  What the punishment should be may be less so.  As I reconstruct what took place three years ago, high principled, honest <u>people believed they had dealt with a problem appropriately and severely</u>....

(Emphasis added.)

                    LISA SVENSSON, plaintiff,

                    By her attorneys,

                    BARRON & STADFELD, P.C.


                    /s/ Kevin F. Moloney_____
                    Kevin F. Moloney  BBO No. 351000
                    100 Cambridge Street, Suite 1310
                    Boston, Massachusetts  02114
                    Tel.: 617.723.9800/531.6569

                    and

                    /s/ John K. Weir_____
                    John K. Weir, Admitted PHV
                    John K. Weir Law Offices, LLC
                    300 Park Avenue, Suite 1700
                    New York, New York, 10022
                    Tel.: 212.572.6374
Dated: May 18, 2008

[430528.1]