UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | Civil Action No. 04-12711-PBS |
| | * | |
| LISA SVENSSON, | * | |
| | * | BBO No. 351000 |
| Plaintiff, | * | |
| | * | Plaintiff Svensson's |
| v. | * | Supplemental Proposed |
| | * | Jury Instructions. |
| | * | |
| PUTNAM INVESTMENTS, LLC, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| * * * * * * * * * * * * * | | |

Plaintiff Lisa Svensson ("Svensson") offers the following supplemental proposed jury instructions concerning:

Liability:

a.   the mixed motive analysis;

b.   whether the jury may find that investment professional with different direct supervisors are similarly situated to Svensson.

c.   what constitutes an adverse employment action

d.   what constitutes a demotion

e.   the use of statistical evidence to prove disparate treatment claims.

f.   the use of cohort analysis as evidence of discrimination

Damages:

a.   front pay damages for Svensson's federal law claims

b.   front pay damages for Svensson's state law claims

c.   mitigation of damages

d.   the "good faith" defense to punitive damages

For the court's convenience, the instructions are sequentially numbered beginning at No. 37, following the last of Svensson's proposed initial jury instructions.

**Instruction No. 37  (Mixed Motive)**

Svensson alleges that Putnam discriminated against her on the basis of her gender, in violation of Title VII  and Massachusetts law when it failed to promote her, demoted  her, terminated her employment, and paid her less than similarly situated males.  In order to establish that Putnam discriminated against her because of her gender, Svensson must only demonstrate that her gender was a motivating factor in Putnam's adverse employment actions against her. She need not establish that her gender was the only, or even the primary, reason for Putnam's actions against her.

If you find that Svensson has presented evidence which may be viewed as reflecting discriminatory attitudes, whether such evidence is direct (in the form of statements by persons involved in or in a position to influence the decision-making process) or circumstantial evidence,  and you also conclude that a discriminatory attitude was more likely than not a motivating factor in Putnam's decisions not to promote, to demote, to terminate and/or to pay Svensson less than similarly situated males, then Svensson has proven that gender was a motivating factor in Putnam's adverse employment actions against her; she need not demonstrate that the non-discriminatory reasons offered by Putnam are untrue.

If you find that Svensson's gender was a motivating factor in Putnam's decision to take adverse actions against her, Svensson is entitled to your verdict, even if you find that Putnam's conduct was also motivated by a lawful reason.  However, if you find that Putnam's

adverse employment actions against Svensson were motivated both by gender and a lawful reason, you must then decide whether Svensson is entitled to damages. Svensson is entitled to damages unless Putnam proves by a preponderance of the evidence that it would have made the same decision or decisions, and taken the same action or actions against Svensson, even if Svensson's gender had played no role in the employment decision.  It is not enough for Putnam to show that it was motivated only in part by a legitimate reason. Instead, Putnam must show that a legitimate reason, standing alone, would have induced it to make the same decision.  Putnam bears the burden of proof on this issue.


Civil Rights Act of 1991, 42 U.S.C. §1981, Sec. 107; 42 U.S.C. §2000e-2(a); 42 U.S.C. §2000e-5(g)(2)(B); Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Burton v. Town of Littleton, 426 F.3d 9, 19 (1st Cir. 2005); Weston-Smith v. Cooley Dickinson Hospital, Inc., 282 F.3d 60, 64 (1st Cir. 2002), Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429 (1st Cir. 2000); Wynn & Wynn, P.C. v. MCAD, 431 Mass. 655 670 (2000). See also Keelan v. Majesco Software, Inc., 407 F.3d 332, 340 (5th Cir. 2005); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); Thomas v. Denny's Inc., 111 F.3d 1506, 1511 (10th Cir. 1997); Ostrowski v. Atlantic Mut. Ins. Co., 968 F.2d 171 (2d Cir. 1992); Model Jury Instructions (Civil) Ninth Circuit §12.2 (2002)

**Instruction No. 38  (different direct supervisors)**

In determining whether Svensson and another Putnam investment professional are similarly situated, if you find that employment decisions concerning the promotion, demotion, termination and/or compensation of both Svensson and the other investment professionalwere made by the same person, group or committee, then the fact that Svensson and the other investment professional reported to different direct (first level) supervisors does not prevent you from finding that they are similarly situated.

**Instruction No. 39 (Adverse employment action)**

An "adverse employment action" is one that, standing alone, actually causes damage, tangible or intangible, to an employee. The fact that an employee is unhappy with something his or her employer did or failed to do is not enough to make that act or omission an adverse employment action. An employer takes adverse action against an employee only if it: (1) takes something of consequence away from the employee, for example, by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a customary benefit of the employment relationship, for example, by failing to follow a customary practice of considering the employee for promotion after a particular period of service.  An adverse employment action by a supervisor is an action of the employer.

Proposed Civil Pattern Jury Instructions - Employment Discrimination (Disparate Treatment), Judge Hornby, United States District Court, District of Maine, §1.1 (2004); Lewis v. City of Chicago, __F.3d__, 2007 WL 2128308, at *6 (7th Cir. 2007) ("We have noted that materially adverse employment action can be categorized into three groups of cases involving: (1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the

employee's work conditions including subjecting her to 'humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in [her] work place environment.'").

**Instruction No. 40 (What is a demotion)**

You must decide whether Putnam's employment action against Svensson resulting in her deasing to be a Portfolio Manager and returning to the research department as an analyst, was a demotion.  I instruct you that in order "to be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse-such as being less prestigious or less interesting or providing less room for advancement."[1]  A transfer may be a demotion when it results in an objectively less prestigious job, or a job requiring lesser experience, tenure or qualifications.[2]

---

[1] <u>Alvarado</u> v. <u>Texas Rangers</u>, 492 F.3d 605, 613 (5th Cir. 2007.  <u>See also</u> <u>Hinson</u> v. <u>Clinch County, Ga., Bd. Of Educ.</u>, 231 F.3d 821, 829 (11th Cir. 2000).
[2] <u>Billings</u> v. <u>Town of Grafton</u>, 515 F.3d 39, 53-54 (1st Cir. 2008).

**Instruction No. 41 (statistical proof of disparate treatement)**

Svensson has introduced statistical evidence in support of her discrimination and equal pay claims. You may find that such evidence supports her so called "disparate impact" claims (i.e. that Putnam uses one or more employment practices which, alhtough neutral on their face in their treatment of women, nevertheless have a significant adverse impact on women).

You may also find that such statistical evidence supports Svensson's claim that Putnam intentionally discriminated against her personally (the "disparate treatment" claim). In that regard, you may find that Svensson's statistical evidence supports an inference that Putnam's articulated non-discriminatory reasons for its actions against her are not Putnam's real reasons, but instead are pretexts for discrimination.[3] For example, if you find, based on Svensson's statistical evidence, that the upper ranks of Putnam's employment hierarchy are closed (of substantially closed) to women, you may infer that Putnam's employment actions against Svensson were motivated by discriminatory animus.[4]

---

[3] Currier v. United Technologies Corp., 393 F.3d 246, 251 (1st Cir. 2004); Bloomfield v. Bernardi Automall Trust, 170 F.Supp.2d 36, 45 (D. Mass. 2001); Flebotte v. Dow Jones & Co., Inc., 2000 WL 3539238, *3, 6 (D. Mass. 12/6/00).
[4] Luciano v. Coca-Cola Enterprises, Inc., 307 F.Supp.2d 308, 322 (D. Mass. 2004).

**Instruction No. 42 (cohort analysis as Evidence of discrimination)**

If you find that the cohort analysis offered by Svensson's expert witness (Dr. Paul White) is an appropriate statistical technique for comparing Putnam's treatment of males and females with regard to promotion, demotion, termination and/or compensation, then you may find that the results of that cohort analysis support an inference that Putnam's actions against Svensson were motivated by discriminatory animus.

**Instruction No. 43 (front pay damages -- federal law claims)**

In addition to Svensson's proposed Instruction No. 35, previously filed, Svensson requests that the court instruct the jury as follows concerning the award of front pay damages on her federal claims:

If Svensson proves to you by a preponderance of the evidence that Putnam unlawfully discriminated against her because she is a woman, Svensson may be entitled to front pay damages. Front pay awards compensate the plaintiff from the conclusion of trial until she reasonably can obtain comparable employment elsewhere.

In determining whether, and if so when in the future Svensson will obtain "comparable employment" elsewhere, you should keep in mind that only certain jobs are comparable to the position which Svensson held at Putnam.  If you find that Putnam improperly demoted Svensson from Portfolio Manager to Research Analyst, then the other employment opportunity must be comparable to a Portfolio Manager position at Putnam.  If you find that the demotion was not improper, but that the termination was discriminatory, then the other position must be comparable to a Research Analyst position at Putnam.

The comparability of other jobs turns on numerous factors – e.g. stature, amount of compensation, job responsibilities, and working conditions."[5]  You should keep in mind that "plaintiff is not obliged to go into another line of work, accept a demotion, or take a demeaning position … or take a job that is not substantially

---

[5] <u>Lavely</u> v. <u>Trustees of Boston University</u>, 1987 WL 17539, *7 (D. Mass. 8/28/87).

equivalent to [her] former one…."[6]  Nor was Svensson required to look for, or accept, employment opportunities unreasonably distant from her home.  A job located beyond reasonable commuting distance is not "comparable," nor is one that would have required Svensson to relocate her home.[7]

An award of front pay, however, is not supposed to catapult the plaintiff into a better position than she would have enjoyed had she not been terminated.  Like all other elements of damages in this case, front pay damages may not be speculative. The award must be based on just and reasonable inferences from the evidence.  Because front pay necessarily involves an attempt to predict the future, you should be sure that plaintiff has demonstrated by a preponderance of the evidence that she will suffer has suffered front pay damages in the amount that she seeks.[8]

In determining whether to award front pay, and the length of the potential award, you should consider and weigh the following factors:

    1.    Whether plaintiff has produced evidence sufficient to establish that she would have remained employed at defendant through the time until which you award front pay;

---

[6] Id.

[7] Id. at *6-7.  See also Harding v. Cianbro Corp., 498 F.Supp.2d 344, 358 (D.Me. 2007) (Duty to mitigate extends only to other substantially equivalent employment "in the relevant geographic area"); Currier v. United Technologies Corp., 326 F.Supp.2d 145, 157 (D. Mass. 2004); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 185-86, 478 N.E.2d 1292, 1301 (1985) (applicant for nurses aid position in nurses home not required to look for other employment outside of city in which she lived); Pub Ventures, Ltd v. MCAD, 1994 WL 902935, *4 (Mass. Super. 11/17/94) (bartender not required to take position in Franklin Massachusetts where he had been employed in Newton Massachusetts.); Seraphin Occean v. Marriott Corp., 1994 WL 878962, * (Mass. Super. 10/4/94) (executive chef was not required to take position hundreds of miles away).

[8] Cummings v. Standard Register Co., 265 F.3d 56, 66 (1st Cir. 2001).

2.    The amount of compensation plaintiff probably would have earned (including reasonable increases in her total aggregate compensation (salary, bonus and the value of other compensation) while employed by Putnam between now and the date through which you award front pay; and

3.    The amount of earnings that Svensson probably will have received from another employer during the period for which you award front pay damages. This, of course, would reduce any front pay award to Svensson.[9]

Although your award of front pay damages may not be speculative, (i.e. it must be based on the evidence, or reasonable inferences from the evidence) you may award front pay damages for whatever period of time that you find Svensson would have remained employed at Putnam in the absence of Putnam's adverse actions against her and would have been unable to obtain comparable employment elsewhere.  While an award of front pay for a longer period of time, or through retirement is more likely to be speculative, there is no rule limiting the number of years for which you may award front pay damages.[10]

---

[9] Horney v. Westfield Gage Co., 211 F.Supp.2d 291, 323 (D. Mass. 2002).

[10] Numerous federal courts have awarded or upheld the award of front pay damages for periods extending many years into the future, including through retirement. Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 671-72 (6th cir. 2003) (under title VII, as opposed to the parties arbitration agreement, plaintiff could have obtained an award of front pay through her retirement. The Court cited decision of the Ninth and Second Circuits upholding awards of 22 and 20 years front pay); Padilla v. Metro-North Commuter Railroad, 92 F.3d 117, 126 (2nd Cir. 1996) ("We acknowledge that the award of front pay in this case is for a lengthy period of time-the district court ordered that Padilla receive front pay from July 1, 1994 until he becomes eligible at the age of 67 to receive a full pension. This award entitles Padilla to receive front pay for a period of well over 20 years. However, this Court and other circuits previously have affirmed awards of front pay for substantial periods of time when necessary to provide whole relief for victims of employment discrimination."); Bates v. Board of Education of the Capital School District, 2000 WL 376405, *10 (D. Del. 3/31/00) (upholding award of front pay for 17 years until plaintiff reached 65); Tanzini v. Marine Midland Bank, 978 F.Supp. 70, 81 (N.D.N.Y. 1997) (award of front pay for 20 years is not speculative on its face).

In calculating front pay, you must take into account any increases in her total aggregate compensation (salary, bonus and the value of other compensation) which she could reasonably expect to have received during the years for which you are awarding front pay damages.

However, in accordance with Svensson's duty to mitigate her damages, which I have instructed you about, you must reduce your award of front pay to Svensson by any amounts you find she would have earned during the front pay period at any other job.

**Instruction No. 44 (front pay damages – state law claims)**

In addition to Svensson's proposed Instruction No. 35, previously filed, Svensson requests that the court instruct the jury as follows concerning the award of front pay damages on her Massachusetts state law claims:

The purpose of so-called "front pay" damages is to compensate Svensson for wages and other compensation which she would have earned but for the Putnam's discriminatory actions during the period from the date of your verdict to the date when she reasonably can be expected to obtain comparable employment elsewhere.

In determining whether, and if so when in the future, Svensson will obtain "comparable employment" elsewhere, you should keep in mind that only certain jobs are comparable to the position which Svensson held at Putnam.  If you find that Putnam improperly demoted Svensson from Portfolio Manager to Research Analyst, then the other employment opportunity must be comparable to a Portfolio Manager position at Putnam.  If you find that the demotion was not improper, but that the termination was discriminatory, then the other position must be comparable to a Research Analyst position at Putnam.

The comparability of other jobs turns on numerous factors – <u>e.g.</u> stature, amount of compensation, job responsibilities, and working conditions."[11]  You should keep in mind that "plaintiff is not obliged to go into another line of work, accept a demotion, or take a

---

[11] <u>Lavely</u> v. <u>Trustees of Boston University</u>, 1987 WL 17539, *7 (D. Mass. 8/28/87).

demeaning position … or take a job that is not substantially equivalent to [her] former one…."[12]  Nor was Svensson required to look for, or accept, employment opportunities unreasonably distant from her home.  A job located beyond reasonable commuting distance is not "comparable", nor is one that would have required Svensson to relocate her home.[13]

You must determine, based upon the evidence, for how many years into the future to award front pay damages.  While your award of front pay damages must be supported by the evidence, "Massachusetts law is clear that uncertainty in the award of future damages does not bar their recovery…."[14]

If you find that Svensson, more probably that not, will never again be able to obtain employment comparable to the position she held at Putnam, then you may award front pay damages for the entire period she would have worked for Putnam had she not been discriminated against.  If you find, based on the evidence, that she would have

---

[12] Id.

[13] Id. at *6-7.  See also Harding v. Cianbro Corp., 498 F.Supp.2d 344, 358 (D.Me. 2007) (Duty to mitigate extends only to other substantially equivalent employment "in the relevant geographic area"); [13] Currier v. United Technologies Corp., 326 F.Supp.2d 145, 157 (D. Mass. 2004); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 185-86, 478 N.E.2d 1292, 1301 (1985) (applicant for nurses aid position in nurses home not required to look for other employment outside of city in which she lived); Pub Ventures, Ltd v. MCAD, 1994 WL 902935, *4 (Mass. Super. 11/17/94) (bartender not required to take position in Franklin Massachusetts where he had been employed in Newton Massachusetts.); Seraphin Occean v. Marriott Corp., 1994 WL 878962, * (Mass. Super. 10/4/94) (executive chef was not required to take position hundreds of miles away).

[14] Kelley v. Airborne Freight Corp., 140 F.3d 335, 355 (1st Cir. 1998) (affirming award of front pay for period until retirement).  See also Larch v. Mansfield Municipal Electric Dept., 272 F.3d 63, 74 (1st Cir. 2001) (affirming award of front pay until age 65); Selgas v. American Airlines, Inc., 104 F.3d 9, 14 n.6 (1st Cir.1997).

remained employed by Putnam until her retirement, then you may award front pay damages to the date on which you find she would have retired.[15]

In calculating front pay, you must take into account any increases in her total aggregate compensation (salary, bonus and the value of other compensation) which she could reasonably have expected to receive during the years for which you are awarding front pay damages.

However, in accordance with Svensson's duty to mitigate her damages, which I have instructed you about, you must reduce your award of front pay to Svensson by any amounts you find she would have earned during the front pay period at any other job.

---

[15] Stephens v. Global Naps, 70 Mass. App. Ct. 676, 686 (2007) (finding that there was "no merit" in defendant employer's claim that front pay award for 33.5 years was too speculative); Handrahan v. Red Roof Inns, Inc., 48 Mass. App. Ct. 901, 902 (1999) (affirming trial court judges reduced front pay award which was based upon jury's award of front pay for 30 years jury found plaintiff would have worked for defendant until her retirement); Powers v. H.B. Smith Co., Inc., 42 Mass. App. Ct. 657, 665 (1997) (holding that front pay to age 65 was not excessive); Smith v. Bell Atlantic, 2003 WL 1962900, *7 (Mass. Super. 3/4/03) (denying defendant's motion for relief from front pay damage award, holding that jury properly could award 22 years of front pay, covering period until 43 year old plaintiff turned 65, based on expert testimony and that of plaintiff that she intended to work until she was 65); Walsh v. Carney Hospital Corporation, 1998 WL 1470698, *4-5 (Mass. Super. 6/10/98) (denying defendant's motion for JNOV, or in the alternative for new trial or remittitur, from jury verdict awarding plaintiff 25 years front pay to age 65. Court noted that defendant had not cited any Massachusetts case limiting front pay to short time periods).

**Instruction No. 45 (Mitigation of Damages)**

If Putnam proves that Svensson failed to make reasonable efforts to obtain other comparable employment (_i.e._ failed to mitigate her damages), and that she would in fact have obtained other comparable employment had she made such efforts, then you should reduce the amount of damages you award to Svensson by the amount she reasonably would have earned in that other employment.  In determining whether Svensson made reasonable efforts to mitigate her damages, you should keep in mind that the burden is on Putnam to prove that Svensson acted unreasonably, not on Svensson to prove the reasonableness of her conduct.[16]  You cannot find that Svensson failed to mitigate her damages unless Putnam proves that: "(a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) [Svensson] unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that [Svensson] would obtain one of those comparable jobs."[17]

Your job is to determine whether Svensson made reasonable efforts to find other comparable employment, not whether she applied the greatest possible effort to her job search.  Svensson "is only required to use reasonable efforts to mitigate damages, and is not

---

[16] <u>Currier</u> v. <u>United Technologies Corp.</u>, 326 F.Supp.2d 145, 157 (D. Mass. 2004); <u>Lavely</u> v. <u>Trustees of Boston University</u>, 1987 WL 17539, *3 (D. Mass. 8/28/87); <u>Buckley Nursing Home, Inc.</u> v. <u>MCAD</u>, 20 Mass. App. Ct. 172, 185, 478 N.E.2d 1292, 1301 (1985).

[17] <u>Buckley Nursing Home</u>, 20 Mass. App. Ct. at 185, quoting <u>Black</u> v. <u>School Comm. of Malden</u>, 369 Mass. 657, 661-662, 341 N.E.2d 896 (1976).

held to the highest standards of diligence…. All [Svensson] must exhibit is an 'honest good faith effort'"[18]

In determining whether Svensson conducted a reasonable search for other comparable employment, you should take into account Svensson's individual characteristics and the prevailing job market.[19] Evidence tending to establish that Svensson's job search was reasonable may include a showing that Svensson consulted trade journals for job opportunities, or kept in contact with other persons she knew in the financial services filed in order to ensure that she was aware of open positions.[20] In order to prove that Svensson's job search was unreasonably limited, or conducted by improper methods, Putnam must show that a job search conducted as it suggests would have located a comparable position and that Svensson would, more likely than not, have been offered such a position.[21]

Svensson was not required to accept other employment unless the other position was comparable to the position she held at Putnam. If you find that Putnam improperly demoted Svensson from Portfolio Manager to Research Analyst, then the other employment opportunity must be comparable to a Portfolio Manager position at Putnam. If you find that the demotion was not improper, but that the termination was discriminatory, then the other position must be comparable to a Research Analyst position at Putnam.

---

[18] Lavely, 1987 WL 17539, *2-3.
[19] Lavely, 1987 WL 17539, *2.
[20] Id. at *4.
[21] Id. at *4, 8.

The comparability of other jobs turns on numerous factors – e.g. stature, amount of compensation, job responsibilities, and working conditions."[22]  You should keep in mind that Svensson "is not obliged to go into another line of work, accept a demotion, or take a demeaning position … or take a job that is not substantially equivalent to [her] former one…."[23]  Nor was Svensson required to look for, or accept, employment opportunities unreasonably distant from her home.  A job located beyond reasonable commuting distance is not "comparable", nor is one that would have required Svensson to relocate her home.[24]

---

[22] Id. at *7.

[23] Id.

[24] Id. at *6-7.  See also Harding v. Cianbro Corp., 498 F.Supp.2d 344, 358 (D.Me. 2007) (Duty to mitigate extends only to other substantially equivalent employment "in the relevant geographic area"); Currier, 326 F.Supp.2d at 157; Buckley Nursing Home, 20 Mass. App. Ct. at 185-86 (applicant for nurses aid position in nurses home not required to look for other employment outside of city in which she lived); Pub Ventures, Ltd v. MCAD, 1994 WL 902935, *4 (Mass. Super. 11/17/94) (bartender not required to take position in Franklin Massachusetts where he had been employed in Newton Massachusetts.); Seraphin Occean v. Marriott Corp., 1994 WL 878962, * (Mass. Super. 10/4/94) (executive chef was not required to take position hundreds of miles away).

**Instruction No. 46 ("good faith" defense to punitive damages)**

If the court instructs the jury on a good faith defense to punitive damages (see Putnam proposed jury instruction No. 26), Svensson requests that the court also give the following instruction:

I have instructed you that you may not award punitive damages if you find that Putnam has proven that it made a good faith effort to implement an antidiscrimination policy.

However, in order to have made such a good faith effort, Putnam must do more than simply show that such an antidiscrimination policy existed, or even that such a policy was in writing. A "written statement, without more, is insufficient to insulate an employer from punitive damages liability."[25]  Instead, Putnam "must also show that [it made] efforts … to implement its antidiscrimination policy, through education of its employees and active enforcement of its mandate."[26]

You must also keep in mind that Putnam bears the burden of proof to establish its good faith efforts.[27]  You are not barred from assessing punitive damages unless Putnam has met its burden of proving to you both: (1) that it had an anti-discrimination policy and (2) that it made efforts to implement that policy.

---

[25] Romano v. U-Haul Intern., 233 F.3d 655, 670 (1st Cir. 2000).
[26] Id. See also Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 64-65 (1st Cir. 2005).
[27] Rodriguez-Torres., 399 F.3d at 64; Romano, 233 F.3d at 670.

Svensson reserves the right to further supplement these proposed jury instructions.

                        LISA SVENSSON, plaintiff,

                        By her attorneys,

                        BARRON & STADFELD, P.C.

                        /s/ Kevin F. Moloney_____
                        Kevin F. Moloney    BBO No. 351000
                        Roger T. Manwaring  BBO NO. 548614
                        100 Cambridge Street, Suite 1310
                        Boston, Massachusetts  02114
                        Tel.: 617.723.9800/531.6569

                        and

                        /s/ John K. Weir_____
                        John K. Weir, Admitted PHV
                        John K. Weir Law Offices, LLC
                        300 Park Avenue, Suite 1700
                        New York, New York, 10022
                        Tel.: 212.572.6374

Dated: May 23, 2008

                    Certificate of Service.

    This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


                        /s/ Kevin F. Moloney_____


Dated: May 23, 2008




[431071.1]